# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH**<br>1400 Michigan Ave., NE<br>Washington, DC 20017<br><br>On behalf of herself and all others similarly situated,<br><br>**Plaintiff**,<br><br>  v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br><br>SERVE:<br><br>Mayor Muriel Bowser<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>and<br><br>Attorney General Karl Racine<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>**Defendant**. | Civil Action No.: 15-737 |

## CLASS ACTION

## COMPLAINT FOR JUDGMENT AND MONEY DAMAGES AND INJUNCTIVE RELIEF AND EQUITABLE RELIEF AND DECLARATORY RELIEF AND JURY DEMAND

## **(§ 1983 Civil Rights Claims)**

### Introduction

1.	Maggie Smith, on behalf of herself and the Prosecution Class and the Nonresident Class (both defined below), brings this action against the Government of the District of Columbia (the "District" or the "District of Columbia") under 42 U.S.C.A. § 1983 for injuries she suffered during the Class Period because the District, through its unconstitutional gun registration laws[1], caused her and the other members of the Prosecution Class and the Nonresident Class to be arrested, prosecuted, or arrested and prosecuted in the District of Columbia Superior Court for violations of those unconstitutional gun laws in violation of their Second and Fifth Amendment rights.

### Jurisdiction and Venue

2.	This Court has jurisdiction over plaintiff's § 1983 claims under 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343(3)-(4).

3.	Venue is proper in this jurisdiction pursuant to 28 U.S.CA. §1391(b) because the events or omissions underlying the claims occurred in this judicial district.

### Parties

4.	 Plaintiff Ms. Smith and the proposed classes are persons who were arrested, charged or arrested and charged and prosecuted under the District's unconstitutional gun registration laws as they relate to pistols in violation of their Second and Fifth Amendment rights.

---

[1] D.C. Code § 22-4504(a) (2001)(carrying a pistol without a license), D.C. Code § 7-2502.01 (2001) (banning unregistered firearms), and D.C. Code § 7-2506.01(3) (2001) (banning unlawful possession of ammunition).

5. Defendant District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

# FACTUAL ALLEGATIONS

### The District's pre-Heller, pre-Palmer gun laws

6. For years the District has maintained the most restrictive gun laws in the nation.

7. Essentially the District has maintained a total ban on gun ownership by private citizens including a total ban on the public carrying of ready-to-use handguns outside the home.

8. The District implemented the ban by establishing a registration scheme for possession of hand guns and ammunition which basically made it impossible for ordinary law abiding citizens to qualify for registration of pistols and ammunition and by criminalizing violations of the registration scheme.

9. The registration scheme simultaneously precluded citizens from registering their pistols while imposing a criminal penalty for possessing or carrying an unregistered firearm in the District of Columbia.

10. The registration scheme also specifically excluded individuals who did not reside in the District of Columbia because the gun statute required gun registration applicants to submit proof of residency in the District of Columbia.

11. Enforcement of the registration scheme fell particularly hard on non-residents because since most states allow their citizens to carry pistols outside the home many otherwise law abiding citizens unwittingly became felons when they carried their pistols to the District as they would have at home and were arrested for felony "CPWL" (carrying a pistol without a license).

12. Moreover, many citizens visit the District every year because it is our nation's capitol and they wish to see their government in action and visit their representatives. Many states which allow their citizens to carry pistols actually have places at their legislative assemblies and high courts where citizens can check their guns. In fact some nonresidents have been arrested at the Capitol when they produced their pistols and asked where they should check their pistols.

13. Moreover, the District placed no warnings or notifications of its draconian gun laws to persons entering the District.

14. Ms. Smith typifies the type of law abiding citizen who unwitting ran afoul of the District's unconstitutional gun laws.

15. Ms. Smith is a registered nurse. At the time of her arrest she was licensed to carry a pistol in her then home state[2] of North Carolina. She had no prior arrests.

16. She brought along her pistol with her when she traveled to the District.

17. She was stopped by the MPD while driving in the District and as she had been taught in her gun ownership course at home she immediately informed the officer that she was carrying a pistol licensed in her home state.

18. The officer arrested her for violation of the District's gun registration scheme and she was subjected to prosecution for various felony and misdemeanor gun related offenses for almost

---

[2] At the time of Ms. Smith's conduct, D.C. Code § 7-2502.02(a)(4) generally prohibited registration of any pistols "not validly registered to the current registrant in the District prior to September 24, 1976," but made an exception for retired MPD officers, organizations employing special police officers, and "[a]ny person who seeks to register a pistol for use in self-defense *within that person's home.*" See D.C. Code § 7-2502.02(a)(4)(C) (2010) (emphasis added). Any nonresident who wished to possess a pistol in the District of Columbia for self-defense would have to do so outside his or her home and therefore could not fall within the exception in D.C. Code § 7-2502.02(a)(4)(C). Moreover, at the time of Ms. Smith's conduct, the District maintained a custom, practice, and policy of refusing to entertain gun registration applications by individuals who did not reside in the District of Columbia. See D.C. Mun. Reg. § 24-2320.3(c)(1)(C) (requiring firearm registration applicants to provide proof of D.C. residency).

a year (even after the Palmer decision, discussed below) before the District dismissed her charges.

19. D.C. Code § 22-4504(a), governing carrying of a pistol outside the home, provides that "[n]o person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed." The first violation of this section by a non-felon is punishable by a fine up to $5,000 and imprisonment of up to five years.

20. D. C. Code § 7-2507.01 et seq. governs among other things possession of pistols and ammunition and sets forth a registration scheme. A first violation of the District of Columbia's ban on the ownership or possession of unregistered handguns was punishable as a misdemeanor by a fine of up to $1,000, imprisonment of up to one year, or both. D. C. Code § 7-2507.06.

21. Neither the government of the District of Columbia or either of the two prosecuting[3] agencies who prosecuted Ms. Smith's cases has ever offered any type of diversion program to her or other law-abiding residents or nonresidents who happen to get arrested for possessing an unregistered firearm or ammunition in the District.

22. As a result of the District's strict enforcement of the felony statute many otherwise law abiding citizens became, or like Ms. Smith, almost became, felons and so lost valuable civic privileges such as the right to vote, the right to serve on juries, and their civil licenses to practice their professions, or saw those rights placed in jeopardy.

23. For example, had Ms. Smith been convicted of a felony in the District her nursing license would have been automatically revoked. Thus, she would have been deprived not only of her right to vote but of her right to practice her profession.

---

[3] Generally the United States Attorney's Office prosecutes violations of D.C. Code § 22-4504(a). the District of Columbia OAG prosecutes violations of D. C. Code § 7-2507.01 et seq.

24.     Had she been convicted of a misdemeanor offense under D. C. Code § 7-2507.01 she would have had to go before the licensing board and defend her license. She will still have to explain her arrest and prosecution when her license comes up for renewal next year even though her case was dismissed because she was arrested and prosecuted under unconstitutional laws.

25.     Prior to December 16, 2008, former D.C. Code § 22-4506 empowered the District of Columbia's police chief to issue licenses to carry handguns to individuals, including to individuals not residing in the District of Columbia. However, it was Defendant District of Columbia's policy for many years not to issue such licenses.

26.     But, on December 16, 2008, the District of Columbia's City Council and Mayor repealed the Police Chief's authority to issue handgun carry licenses. Accordingly, until changes made by City Council in October 2014, discussed below, the District of Columbia lacked any mechanism to issue handgun *carry* licenses to individuals.

### District of Columbia v. Heller

27.     In 2008 the United States Supreme Court issued its opinion in District of Columbia v. Heller, 554 U.S. 570 (2008) which declared the District's gun registration scheme unconstitutional with respect to the registration of guns by law abiding citizens for use in the home for personal protection.

28.     Although the holding in Heller was confined to registration of guns for use in the home for personal protection the rationale of Heller clearly put the District on notice that its registration scheme for carrying hand guns outside the home was also unconstitutional.

29.     Nevertheless, the District continued to arrest and prosecute citizens for carrying unregistered pistols and ammunition used outside the home for lawful purposes.

## Palmer v. District of Columbia

30.     On July 24, 2014, the Honorable Frederick James Scullin, Jr., senior United States District Court Judge for the United States District Court for the Northern District of New York, sitting by designation in this Court, issued a decision in Palmer v. District of Columbia, No. 1:09-CV-1482 (D.D.C. 2014) [Document # 51] declaring the District of Columbia's Carrying a Pistol statute facially unconstitutional because the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home was unconstitutional under any level of scrutiny.

31.     Judge Scullin also issued a permanent injunction barring the District from enforcing its registration scheme until the District adopted a licensing mechanism consistent with constitutional standards.  Judge Scullin further enjoined[4] the District from "completely banning the carrying of handguns in public for self-defense by otherwise qualified non-residents based solely on the fact that they are not residents of the District."

32.     Ultimately, the District decided not to pursue an appeal of the Palmer decision.

33.     The United States Attorney's Office for the District of Columbia ("USAO"), apparently recognizing that the Palmer decision had invalidated the District's gun registration scheme, dropped hundreds of cases against people charged with felony carrying a pistol then pending in DC Superior Court and stopped prosecuting persons under the District's gun registration laws.

34.     In contrast, the Attorney General's Office for the District of Columbia ("OAG") chose to double down and re-filed misdemeanor charges against most of the people whose felony carrying a pistol charge had been dismissed by the USAO.

---

[4] On July 29, 2014, the Palmer Court granted the District's Motion to Stay enforcement of the Court's Order so that the District could enact legislation that complied with the Palmer injunction.  The Court's Order staying the injunction expired on October 22, 2014.

35. The OAG has jurisdiction over two misdemeanor gun charges— possessing and carrying unregistered firearms, D.C. Code § 7-2502.01, and possessing and carrying unregistered ammunition, D.C. Code § 7-2506.01(3) (2001).

36. So, while many people were fortunate to have their felony charges dropped, like Ms. Smith they still faced prosecution for two serious misdemeanors.

37. The prosecutions injured Ms. Smith and the other members of the Prosecution Class and the Nonresident Class because they had to defend themselves, they suffered limits on their freedom pending disposition of their cases, and they suffered other injuries.

38. In response to <u>Palmer</u> the District of Columbia City Council enacted certain changes to its registration scheme which the District contends brings the scheme within the scope of reasonable registration allowed by <u>Heller</u> and <u>Palmer</u>. "License to Carry a Pistol Emergency Amendment Act of 2014," D.C. Act 20-447 (October 9, 2014).

39. The emergency legislation allows qualified individuals, including nonresidents, to obtain licenses to carry concealed pistols in public if they can demonstrate "a special need for self-protection distinguishable from the general community." The Council also amended D.C. Code § 7-2502.02(a)(4) to allow registration of a pistol for "use in self-defense within [the applicant's] home or place of business," or "as part of the application process for a license to carry a concealed pistol."

40. Currently pending before Judge Scullin is the <u>Palmer</u> plaintiffs' motion to hold the District in contempt of orders issued in <u>Palmer</u> for enforcing its registration scheme as amended by the emergency legislation. [Document # 83].

**Ms. Smith's arrest, prosecution and the dismissal of her case**

41. On June 29, 2014, Ms. Maggie Smith, a 34 year-old registered nurse with no criminal record and then a nonresident of the District, was pulled over by MPD while she was driving her car in the District of Columbia.

42. Ms. Smith promptly informed the police that she was carrying a pistol for self-defense and that she had a lawful permit from her home state of North Carolina to carry a pistol. MPD arrested Ms. Smith for possessing an unregistered firearm and unlawful possession of ammunition.

43. At presentment on June 30, 2014, the United States Attorney's Office ("USAO"), by Criminal Complaint, charged Ms. Smith Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a).

44. On July 17, 2014, the USAO indicted Ms. Smith for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01.

45. Ms. Smith was arraigned on those charges before Judge Josey-Herring in the District of Columbia Superior Court.

46. In light of the Palmer decision, issued on July 24, 2014, the USAO dismissed the indictment on September 29, 2014 after her previous counsel, PDS, filed a motion to dismiss the felony charge in light of Palmer.

47. But, despite the Palmer decision and the injunction Judge Scullin issued in support of his decision, on September 12, 2014, the Office of Attorney General for the District of Columbia ("OAG") filed a criminal information re-charging Ms. Smith with violations of D.C. Code § 7-

2502.01 (possession of an unregistered firearm) and D.C. Code § 7-2506.01 (unlawful possession of ammunition of unregistered ammunition).

48. On October 8, 2014, Ms. Smith was arraigned in Superior Court on those charges before Magistrate Judge Brandt.

49. On February 2, 2015, Ms. Smith, through counsel, filed a motion to dismiss the information and a motions hearing was set for March 20, 2015 and rescheduled for May 29, 2015.

50. On April 20, 2015, the OAG filed a Notice of Intent to Dismiss and on April 21, 2015, the OAG dismissed the Criminal Information against Ms. Smith.

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS

### Claim 1

### § 1983 Liability of District of Columbia for violations of the Second Amendment

51. The preceding paragraphs are incorporated as though fully stated herein.

52. By requiring a permit to carry a handgun in public, yet refusing to issue such permits and refusing to allow the possession of any handgun that would be carried in public, the District maintains a complete ban on the carrying of handguns in public by almost all individuals.

53. The District 's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983.

54. Plaintiffs are therefore entitled to the relief described below.

### Claim 2

### § 1983 Liability of District of Columbia for violations of the Fifth Amendment

55. The preceding paragraphs are incorporated as though fully stated herein.

56. The District's laws, customs, practices and policies generally refusing the registration of firearms by individuals who live outside the District of Columbia violate the rights to travel and equal protection secured by the Due Process Clause of the Fifth Amendment to the United States Constitution, facially and as applied against the individual plaintiff in this action, and the class members, thereby damaging plaintiffs in violation of 42 U.S.C. § 1983.

57. Plaintiffs are therefore entitled to the relief described below.

## RULE 23 ALLEGATIONS

58. Ms. Smith on behalf of herself and the Prosecution Class and the Nonresident Class brings this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following two classes consisting of each person who:

59. Prosecution Class: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was arrested and/or subjected to prosecution in the District of Columbia for violation of any of the District's gun registration laws, including but not limited to D.C. Code § 22-4504(a) (2001)(carrying a pistol without a license), D.C. Code § 7-2502.01 (2001) (banning unregistered firearms), and D.C. Code § 7-2506.01(3) (2001) (banning unlawful possession of ammunition); (iii) while carrying a pistol.

60. Nonresident Class: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was arrested and/or subjected to prosecution in the District of Columbia for violation of any of the District's gun registration laws, including but not limited to D.C. Code § 22-4504(a) (2001)(carrying a

pistol without a license), D.C. Code § 7-2502.01 (2001) (banning unregistered firearms), and D.C. Code § 7-2506.01(3) (2001) (banning unlawful possession of ammunition); (iii) while carrying a pistol; and (iv) while a nonresident of the District of Columbia at the time of the arrest or prosecution.

61.     Certification of these classes under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

62.     The classes are entitled to injunctive relief including sealing of their arrest and prosecution records and declaring their arrests as legal nullities.

63.     The classes are entitled to injunctive relief including enjoining the District from implementing any provision of its gun laws as they relate to carrying a pistol.

64.     Certification of the classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

65.     The classes are entitled to monetary relief.

66.     Regarding Ms. Smith and the Prosecution Class and the Nonresident Class, there are no individual questions on the issue of liability, because all members of the Prosecution Class and the Nonresident Class are injured by the same policy and practices.

67.     Among the questions of law and fact common to the classes are:

1) whether the District's gun registration scheme as set forth in D.C. Code § 22-4504 and D.C. Code § 7-2507.01 violates the Second Amendment;

2) whether the District's gun registration scheme as set forth in D.C. Code § 22-4504 and D. C. Code § 7-2507.01 as applied to nonresidents violates the Fifth Amendment;

3) whether the District has or had a policy, custom, or practice of never allowing nonresidents to register pistols during the class period;

4) whether plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief;

5) whether determination of damages suffered by the class can be awarded by a jury setting a damages matrix the class provides the basis for determination of all class members' damages; and

6) whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages.

68. The Prosecution Class and the Nonresident Class are both so numerous that joinder of all members is impracticable. The exact number of Prosecution Class and the Nonresident Class members is unknown to plaintiffs at this time, but the District of Columbia Superior Court's online docketing system, CourtView, shows that each year over the last 3 years hundreds of people were arrested and prosecuted for violations of the District's unconstitutional gun registration scheme.

69. Ms. Smith's claims are typical of the claims of the other members of the Prosecution Class and the Nonresident Class, because Ms. Smith and all other members of the Prosecution Class and the Nonresident Class were injured by exactly the same means, that is, by District's unconstitutional gun registration scheme.

70. Ms. Smith on behalf of herself and the Prosecution Class and the Nonresident Class will fairly and adequately protect the interests of the members of the Prosecution Class and the Nonresident Class and has retained counsel who are competent and experienced in complex federal civil rights class action litigation and criminal defense law including the District's unconstitutional gun registration scheme.

71. Ms. Smith on behalf of herself and Prosecution Class and the Nonresident Class has no interests that are contrary to or in conflict with those of the class or Prosecution Class and the Nonresident Class.

## CLASS RELIEF DEMANDS

Ms. Smith as named plaintiff on behalf of herself and all other members of the Prosecution Class and the Nonresident Class respectfully requests that this Court grant the following relief:

**A.** Enter judgment in their favor on all of their claims;

**B.** Declare the District's registration scheme as it existed before the passage of the emergency legislation and after passage of the emergency legislation unconstitutional.

**C.** Award Ms. Smith and the putative class members' nominal damages in connection with any declaration that the District's gun registration scheme is or was unconstitutional.

**D.** Grant a jury trial on all claims so triable.

**E.** Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Prosecution Class and the Nonresident Class, and designating Ms. Smith as the proper representative of the Prosecution

Class and the Nonresident Class and appointing William Claiborne and Joseph Scrofano as class counsel.

**F.** Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**G.** Award all Prosecution Class and Nonresident Class named plaintiffs and class members injunctive relief in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities;

**H.** Award all named plaintiffs and class members compensatory and consequential damages in an amount to be determined at trial;

**I.** Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.** Grant such other relief as this Court deems just and proper.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579 | /s/ Joseph A. Scrofano<br>JOSEPH A. SCROFANO<br>D.C. Bar # 994083 |
| Counsel for Ms. Smith on behalf of herself and the putative class members | Counsel for Ms. Smith on behalf of herself and the putative class members |
| 2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | 406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiff and the classes