UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )
MAGGIE SMITH, *et al.*                          )
                                                         )
                    Plaintiffs,                        )
                                                         )
        v.                                              )        Civil Action No. 15-737 (RCL)
                                                         )
DISTRICT OF COLUMBIA,                   )
                                                         )
                    Defendant.                        )
_____  )

## DEFENDANT'S MOTION TO DISMISS

Defendant the District of Columbia moves to dismiss Plaintiffs' Complaint, with prejudice. *See* Fed. R. Civ. P. 12(b)(1), (6). As explained in the Memorandum of Points and Authorities accompanying this Motion, Plaintiff has clearly failed to state a claim: She has not alleged any cognizable injury warranting relief against the District under § 1983; even if she had, she has not actually stated a predicate constitutional violation under either the Second or Fifth Amendments. Additionally, because the District's firearms-registration laws have been substantially amended to allow what Plaintiff demands, she has no standing to challenge current District law, and her challenge to the prior version of the District's firearm laws is substantially moot, which warrants dismissal, in part, for lack of jurisdiction.

A proposed order also accompanies this Motion. Because this Motion is dispositive of the Complaint, the District has not sought Plaintiff's consent to the relief requested. *See* LCvR 7(m).

DATE: July 20, 2015                  Respectfully submitted,

                                               KARL A. RACINE
                                               Attorney General for the District of Columbia

                                               ELIZABETH SARAH GERE
                                               Acting Deputy Attorney General

Public Interest Division

_____/s/ Toni Michelle Jackson_____
TONI MICHELLE JACKSON
Chief, Equity Section
Bar Number 453765
Office of the Attorney General
One Judiciary Square
Sixth Floor South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 442-9784
E-mail: toni.jackson@dc.gov

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

_____/s/ Matthew R. Blecher_____
MATTHEW R. BLECHER, D.C. Bar No. 1012957
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Fax:  (202) 730-0586
Email: matthew.blecher@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MAGGIE SMITH, *et al.*                    )
                                          )
                    Plaintiffs,           )
                                          )
            v.                            )        Civil Action No. 15-737 (RCL)
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
                    Defendant.            )
_____   )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiff Maggie Smith was a North Carolina resident who was arrested on June 29, 2014, for violating the firearm registration laws then in effect in the District of Columbia ("District"). Her pleadings concede that her actions were prohibited under the laws as they were written. Even so, she was never tried or convicted for any of her offenses. In fact, the criminal charges against her were dismissed after the laws underlying her arrest were held unconstitutional and subsequently amended.  Nevertheless, she now seeks redress for injuries apparently resulting from her exposure to the District's criminal justice system (*i.e.*, the expense of defending herself and for "limits on [her] freedom" while her case was pending). She brings this action against the District under 42 U.S.C. § 1983, alleging violations of her right to bear arms, to travel, and to equal protection under the law.

However, Plaintiff's Complaint suffers from a critical analytical flaw: It erroneously assumes that the District is automatically liable under 42 U.S.C. § 1983 when its employees enforce a law that is later determined to violate the Constitution. The Fourth, Sixth, and Tenth Circuits have all uniformly rejected that assumption in similar cases. In reality, the Constitution

simply does not safeguard against erroneous prosecutions brought under a presumptively valid municipal law, and the result is no different if the law is ultimately held to be unconstitutional. What that means is that Plaintiff here might be entitled to recover for injuries caused by the deprivation of the rights she asserts in the Complaint (to bear arms, to travel, and to equal protection), if she can prove them, but absent some indication that her prosecution was constitutionally suspect, she cannot recover for injuries caused by the prosecution itself. Because all the relief she requests is tied to injuries falling into the latter category, her Complaint fails to state a claim under Rule 12(b)(6).

But that is not the only justification for dismissing the Complaint. To the extent Plaintiff challenges the current firearms laws in the District (*i.e.* those developed after *Palmer*) she fails as a matter of law to state a Second Amendment violation; the new licensing scheme clearly withstands "intermediate scrutiny." And, she cannot state a claim under the Fifth Amendment as to a violation of her right to equal protection or to travel. She also cannot satisfy the heavy burden for an injunction sealing or expunging her criminal records. All of the foregoing also justifies dismissal of her Complaint under Rule 12(b)(6).

Even if the Complaint survives dismissal on these grounds, the Court should not entertain Plaintiff's requests for broad retrospective or prospective relief. The former request is moot given that the laws underlying Plaintiff's arrest and prosecution were substantially amended in *Palmer* to allow what they previously prohibited. And, Plaintiff lacks Article III standing as to the latter: she cannot challenge the *new* gun laws—or represent a class bringing such a challenge—because she alleges no injury that was caused or will be caused by their existence. All of those claims must be dismissed pursuant to Rule 12(b)(1).

## BACKGROUND

According to the Complaint, Ms. Smith was pulled over by officers of the Metropolitan Police Department ("MPD") on June 29, 2014, while driving in the District. Compl. ¶ 41. She told the police that she was carrying a pistol, for which she possessed a permit from her home state of North Carolina. *Id.* at ¶ 42. She was then arrested for carrying a pistol without a license, in violation of D.C. Official Code § 22-4504(a) (2013). *Id.* at ¶ 43. She was subsequently indicted by the U.S. Attorney's Office on that charge, plus possession of an unregistered firearm (D.C. Official Code § 7-2502.01 (2013)), and unlawful possession of ammunition (D.C. Official Code § 7-2506.01 (2013)). *Id.* at ¶ 44.

On or about July 24, 2014, the Court issued its decision in *Palmer v. District of Columbia*, No. 09-1482 (FJS) (D.D.C.), holding that the District's "total ban on the public carrying of ready-to-use handguns outside the home" violated the Second Amendment to the Constitution. *Palmer v. District of Columbia*, 59 F.Supp.3d 173, 183 (D.D.C. 2014). The Court enjoined the District from enforcing D.C. Official Code § 7-2502.02(a)(4), which prohibited "registration of handguns to be carried in public for self-defense by law-abiding citizens"; from enforcing D.C. Official Code § 22-4504(a), which prohibited carrying a weapon in public without a license; and from enforcing either statute "against individuals based solely on the fact that they are not residents of the District of Columbia." *Id.* The Court also enjoined the District from enforcing those statutes "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.* (footnote omitted).On July 29, 2014, the Court granted, in part, the District's motion to stay, staying the injunction until October 22, 2014. *See* Doc. No. 53, *Palmer v. District of Columbia*, No. 09-1482 (FJS) (D.D.C.).

Moving swiftly to comply, on September 23, 2014, the Council of the District of Columbia voted unanimously to pass Bill 20-926, the License to Carry a Pistol Emergency Amendment Act of 2014. *See* 61 D.C. REG. 10765 (Oct. 17, 2014). The bill was signed by the Mayor on October 9, 2014, and became effective on signing. *See* D.C. Official Code § 1-204.12(a) (2014 Supp.). The Council subsequently passed a series of additional emergency and temporary statutes, to maintain a public-carry regime pending enactment of permanent legislation and congressional review. *See, e.g.*, "License to Carry a Pistol Second Emergency Declaration Resolution of 2014," Res. 20-741 (Dec. 17, 2014), 62 D.C. Reg. 1964 (Feb. 13, 2015).

The permanent legislation, the License to Carry a Pistol Amendment Act of 2014, Law No. 20-279 ("the Act"), became effective—after passing the period of congressional review—on June 16, 2015. *See* http://lims.dccouncil.us/Legislation/B20-0930?FromSearchResults=true (last visited July 20, 2015). The Act establishes a regime for granting licenses to carry concealed handguns in the District. It sets forth, among other things, substantive requirements for applicants, including training in firearm safety, usage, and storage. Act at § 2(e) (adding a new Title IX, §§ 901–911, to the Firearms Control Regulations Act of 1975, *codified as amended at* D.C. Official Code §§ 7-2501.01 *et seq.*). Applicants for a license must show "a good reason to fear injury to his or her person, which shall at a minimum require a showing of a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life[.]" *Id.* at § 911(1)(A) (*to be codified at* D.C. Official Code § 7-2509.11(1)(A)).

Alternatively, applicants may demonstrate "any other proper reason" for carrying a concealed pistol, including "types of employment that require the handling of cash or other

valuable objects that may be transported upon the applicant's person[.]" *Id.* at § 7-2509.11(1)(B). The Act also establishes a process by which non-District residents may obtain such licenses. *Id.* at § 6; §§ 22-4506(a), (b). On October 22, 2014, as required by the Act, the MPD issued detailed regulations to establish procedures for the licensing of persons to carry concealed firearms. 61 D.C. Reg. 11,519–11,533 (Oct. 31, 2014).

Plaintiff Smith contends that the U.S. Attorney's Office dismissed her indictment on September 29, 2014, in light of *Palmer*. Compl. ¶ 46.[1] On September 12, 2014, the District, through the OAG, filed a criminal information charging Ms. Smith for violations of D.C. Official Code §§ 7-2502.01 and 7-2506.01. *Id.* at ¶ 47. On April 21, 2015, the OAG dismissed the charges against Ms. Smith. *Id.* at ¶ 50.

Plaintiff filed her Complaint in this matter on May 15, 2015. She brings two substantive claims: (1) "the District maintains a complete ban on the carrying of handguns in public by almost all individuals[,]" *id.* at ¶ 52, which violates the Second Amendment; and (2) the District's "laws, customs, practices and policies" refusing to register the firearms of individuals who live outside the District "violate the rights to travel and equal protection[.]" *Id.* at ¶ 56.[2] Plaintiff demands, among other relief, a declaration that the District's regulatory scheme before *and* after the Act is unconstitutional. *Id.* at 14 14 ("CLASS RELIEF DEMANDS").

## LEGAL STANDARD

### I.  Motion To Dismiss Under Rule 12(b)(6)

---

[1] Prosecution for "major" crimes (*i.e.*, those with a possible sentence exceeding a year in prison) in the District of Columbia is the responsibility of the United States Attorney for the District of Columbia. *See In re Crawley*, 978 A.2d 608, 610 (D.C. 2009) (discussing D.C. Official Code § 23-101(c)). "In the District of Columbia, persons convicted of crimes and sentenced to terms of imprisonment in excess of one year are committed to the custody of the [United States] Attorney General who may designate a suitable jail or penitentiary for the sentence." *Millard v. Roach*, 631 A.2d 1217, n.10 (D.C. 1993) (citing D.C. Official Code § 24–402)). All other crimes are prosecuted by the District of Columbia's Office of the Attorney General (OAG). *See* D.C. Official Code §§ 23-101(a), (b).

[2] Paragraph 56 of the Complaint is a nearly identical copy of paragraph 42 of the *Palmer* complaint. *See Palmer*, 59 F.Supp.3d at 175.

Rule 12(b)(6) provides that a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint survives only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). However, only well-pleaded factual allegations are entitled to an assumption of veracity: Conclusory allegations devoid of factual enhancement, legal conclusions, and inferences unsupported by the facts must all be rejected. *See id.* at 678–79.

In addition to any well-pleaded facts, a court ruling on a 12(b)(6) motion may consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation and quotations omitted). Ultimately, a complaint that fails to "set forth information to suggest that there is some recognized legal theory upon which relief may be granted" must be dismissed pursuant to the Rule. *See District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984). The dismissal must be with prejudice if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

## II.  **Motion To Dismiss Under Rule 12(b)(1)**

Because the federal courts are courts of limited jurisdiction, they are at all times required to presume that they do not have subject matter jurisdiction over a case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (U.S. 1994) (citations omitted). Thus, on a

motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court's jurisdiction is proper by a preponderance of the evidence. *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 257 (D.D.C. 2013) (citations omitted); *Babb v. Chertoff*, 2006 U.S. Dist. LEXIS 29624 at *5 (D.D.C. May 16, 2006) (Lamberth, J.) (also describing Court's duty in ruling on jurisdictional challenges as "affirmative obligation"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## ARGUMENT

I. **The Court Should Dismiss The Complaint Under Rule 12(b)(6) Because It Fails To State A § 1983 Claim Against The District**

In order to state a municipal liability claim under 42 U.S.C. § 1983, Plaintiff bears the burden of establishing that (1) a municipal policy or custom deprived her of a right secured by the Constitution, and (2) that the deprivation "actually caused" her "ultimate injury." *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (providing that constitutional deficiency must have "actually caused" the "ultimate injury" to the claimant). As the following demonstrates, Plaintiff fails to carry her burden, in numerous respects.

A. *The District Is Not Liable Under § 1983 For Injuries Resulting From Plaintiff's Arrest and Prosecution*

There is no dispute that duly enacted municipal laws qualify as District policies under *Monell*. *See* 436 U.S. at 690. Nor is there any question that the District's pre-*Palmer* gun laws were held unconstitutional during the course of Plaintiff's criminal proceedings. However, that alone does not subject the District to liability in this case because the injuries for which Plaintiff seeks redress were not actually caused by the deprivation of the rights she asserts in the Complaint.

The Fourth, Sixth, and Tenth Circuits have all recognized this critical distinction. In *Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002), for example, the Fourth Circuit reviewed a grant of summary judgment to the defendant City on a First Amendment (speech) and Fourteenth Amendment (Due Process) challenge to the City's parade ordinance. There, as here, the plaintiff was charged and indicted but not convicted for violating the City ordinance at issue. *Id.* at 451. And, as here, the ordinance's constitutionality was questionable; it was also repealed by the City's legislative body within weeks of the filing of the plaintiff's § 1983 complaint. *Id.* at 452. After finding "no merit" to the plaintiff's allegation of a First Amendment injury (a "chilling" of his speech right), the Fourth Circuit easily disposed of what remained of the plaintiff's case—his contention that he was entitled to recover for his prosecution under an unconstitutional law. *See id.* at 456–57. The *Reyes* Court held that the complaint did not state an actionable claim: The plaintiff could not prosecute a civil action under § 1983 against the City for his indictment, trial, and acquittal under a municipal ordinance simply because the ordinance was later held to be unconstitutional. *Id.* at 455 (stating question), 457 (holding). *Rolfes v. City of Oklahoma City*, 1991 U.S. App. LEXIS 15496 (10th Cir., July 17, 1991), and *Richardson v. City of South Euclid*, 904 F.2d 1050 (6th Cir. 1990), reach substantially the same conclusion on similar facts.

Given the holdings of *Reyes*, *Rolphes*, and *Richardson*, Plaintiff here is foreclosed from recovery under 42 U.S.C. § 1983 for injuries related to her arrest and prosecution under the District's pre-*Palmer* gun laws. Those laws were valid when enforced, and the Constitution simply does not safeguard against erroneous enforcement of a presumptively valid municipal law. *See Reyes, supra*; *Thomas v. City of Talent*, 2006 U.S. Dist. LEXIS 54886 at *20 (D. Or. Aug. 7, 2006) (Following *Reyes and Richardson*, explaining, "[t]he Constitution does not require

a local government body to reimburse a defendant for his legal expenses, or his emotion[al] distress, merely because that person ultimately is acquitted of the charges"). Indeed, as the Tenth Circuit reminded in *Rolphes*: "[T]here are some mistakes legislators make and some impositions upon citizens that require expenditures of their time and money to resolve which are not compensable under § 1983. This is one of those situations." 1991 U.S. App. LEXIS 14596 at *3.

So too, Plaintiff cannot seek redress for her injuries under the guise of the Second or Fifth Amendments because of a critical failure of causation. Again, if she is to recover against the District under § 1983, those alleged constitutional deprivations must have "actually caused" her "ultimate injuries." *See City of Canton, supra.* However, the allegedly unconstitutional conduct she identifies—the enactment of a gun registration scheme that purportedly abridges the right to bear arms, to travel, etc.—simply does not fit the redress she seeks—compensation for her exposure to the District's criminal justice system; the former did not actually cause the latter in any meaningful sense. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (recognizing distinction between injuries caused by unreasonable search and seizure as opposed to those caused by subsequent criminal proceeding; permitting recovery for only the former). In other words, whatever relief Plaintiff might pursue for the inability to bear arms in public or to travel through the District does not extend to her post-arrest legal process because any injuries related to that process are too unrelated to the Second Amendment or the Fifth Amendment protections on which her Complaint rests. *See Hector v. Watt*, 235 F.3d 154, 157 (3rd Cir. 2001) ("damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns"). That conclusion is consistent with the Supreme Court's instruction that "[i]n order to further the purpose of § 1983, the rules governing compensation for injuries caused by the

deprivation of constitutional rights should be tailored to the interests protected by the particular right in question." *Carey v. Piphus*, 435 U.S. 247, 258-259 (U.S. 1978).

Applying that principle, Plaintiff should only be able to recover for injuries related to her arrest and prosecution if she was seized or her claims were pursued without probable cause or she was otherwise denied procedural Due Process. *See Richardson*, 904 F.2d at 1053 (acknowledging that claimant may be able to recover for injuries caused by prosecution under unconstitutional statute by establishing facts supporting claim of malicious prosecution). But Plaintiff makes no allegations of false arrest or malicious prosecution, and she received all the process she was constitutionally due. In fact, by her own account, she was given notice of the charges, and an opportunity to challenge them, *see* Compl. ¶¶ 43–50. And, as noted, when the laws underlying her criminal charges were invalidated and replaced the charges against her were dismissed. *Id.* ¶¶ 46, 50. In short, based on Plaintiff's account of the relevant facts, there is a clear disconnect between right and remedy, and that is fatal to her § 1983 claim against the District.

It is also noteworthy that Plaintiff made no effort whatsoever to comply with the District's gun registration laws or to even know what they required at the time she decided to carry her gun into the jurisdiction. *See* Compl. ¶¶ 13–14 ("unwittingly ran afoul" of District law). Given that fact, even if the Court applies a "but for" analysis to determine whether Plaintiff's alleged constitutional violations actually caused her ultimate injuries, her claim must fail because she would have been arrested and prosecuted even under a registration scheme that permitted concealed carry with a District-issued permit. *See Texas v. Lesage*, 528 U.S. 18, 20-21 (1999) (school admissions case; no § 1983 liability where state would have taken the same action in the absence of the constitutionally impermissible scheme); *Heil v. Santoro*, 147 F.3d 103 (2d Cir.

1998) (Plaintiff engaging in protected speech was not the cause of his discipline since he would have been disciplined for insubordination even in the absence of speech activities). In light of the foregoing, Plaintiff has failed to allege any cognizable injury warranting relief under § 1983, and so her claims against the District should be dismissed under Rule 12(b)(6).

B. *There Are Numerous Other Grounds For Dismissal Of Plaintiff's § 1983 Claim Against The District*

As mentioned, the gravamen of Plaintiff's 42 U.S.C. § 1983 claim against the District is that the District's firearm registration laws deprived her of her constitutional rights to bear arms, to travel, and to equal protection. As the following demonstrates, each of Plaintiff's alleged constitutional violations fail as a matter of law. Since she has failed to allege a viable, predicate constitutional violation, the Complaint does not state a claim under § 1983. *Monell*, 436 U.S. at 694. Additionally, on her own pleadings, Plaintiff cannot satisfy her burden to justify an injunction sealing or expunging her criminal records.

1.   Plaintiff Fails To State A Claim Under The Second Amendment

Plaintiff Smith was arrested and charged with carrying a firearm in public without a license, before there was such a "right" in the District. To the extent there is <u>*now*</u> such a right, it cannot be exercised without reasonable government regulation. That is precisely what the District's current firearm registration scheme was intended to accomplish.

Preliminarily, *Wrenn v. District of Columbia*, enjoined the District's current registration scheme in part on a motion for preliminary injunction. *See*___ F.Supp.3d ____, 2015 WL 3477748 (D.D.C. May 18, 2015) (enjoining "good reason/proper reason" requirement for concealed-carry licenses per D.C. Official Code § 22-4506(a)). The injunction, however, has been stayed pending appeal of the District Court's decision. *See* Order, *Wrenn v. District of Columbia*, No. 15-7057 (D.C. Cir. Jun. 29, 2015) (*per curiam*). Thus, if Plaintiff's vague

- 11 -

allegations of constitutional harm *can* be read to challenge the facial constitutionality of existing District law, her claims should be stayed, as that issue is currently being litigated in *Wrenn*. *See also infra* at 19–20 (Plaintiff has no standing to challenge current laws). Nevertheless, if the Court is inclined to entertain such a challenge here, it fails to state a claim, for the following reasons.

As a starting point, any such challenge must be analyzed under "intermediate scrutiny." *Heller v. District of Columbia*, 670 F.3d 1244, 1256–58 (D.C. Cir. 2011) ("*Heller II*"). In *Heller II*, the D.C. Circuit explained that "intermediate scrutiny" was applicable to the District's registration regulations because the gun-registration laws at issue there did "not affect the core right protected by the Second Amendment[,]" 670 F.3d at 1266, *i.e.*, "the right of law abiding, responsible citizens to use arms in defense of hearth and home." *Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Laws pass intermediate scrutiny if the government can show that the laws are "substantially related to an important government objective." *Heller II*, 670 F.3d at 1258 (quoting *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). *See also National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 195 (5th Cir. 2012).

The District's current firearm registration scheme clearly satisfies this standard. It is a regulatory measure, which does not affect the core right to bear arms protected by the Second Amendment, and the scheme is designed to combat the risks and dangers associated with the misuse and accidental use of handguns. Outside of the home, those risks and dangers are borne not only by the person seeking the permit, but by everyone he or she encounters. The Act provides a means to determine whether the increase in risk to the public is justified by the applicant's demonstrable need to carry a concealed handgun for self-defense.

The Supreme Court in *Heller* held that the Second Amendment secures an individual's right to carry a handgun for self-defense within one's home. *See* 554 U.S. 570, 635 (2008). But even assuming that this right extends outside the home, nothing in *Heller* suggests that there is a right to carry a loaded handgun in public without a demonstrable need to do so for self-defense. *See id.* at 626 (Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

Here, the legislative record is sufficient to withstand Plaintiff's attack, even at this stage of the proceedings, under intermediate scrutiny. The District need only present "some meaningful evidence" that its concealed-carry requirements "can reasonably be expected to promote" an important governmental interest. *Heller II*, 670 F.3d at 1259. The existing record contains more than enough such evidence. As the Council heard, research, data, and experience show that possession and carrying of handguns outside the home pose different dangers than inside the home. The same factors that make handguns the weapon of choice for defense of the home also make them the weapon of choice for criminal acts outside of the home. The District has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public. It also has an important interest in reducing the number of concealed handguns in public because of their disproportionate use in violent crimes committed in public places. The District's "good reason" requirement relates reasonably to these interests.

The Report from the Council's Committee on the Judiciary and Public Safety emphasized in detail the uniqueness of the District and its public-safety and security needs, a point invoked repeatedly by Chief Lanier, the United States Secret Service, and others. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SAFETY & THE JUDICIARY,

REPORT ON BILL 20-930, "License to Carry a Pistol Amendment Act of 2014," Nov. 25, 2014 ("Comm.Rep."), at 4–7.[3] The Report found that "[t]he circumstances unique to the District require a regulatory system different than perhaps any other jurisdiction, and especially, far different than what would be necessary for public safety in a rural place." *Id*. at 7. The Report also discusses the rationale behind the law's "good reason" requirement, and how it compares to the standards used in other jurisdictions, and describes the reasoning behind the law's specific requirements in detail. *Id*. at 8–17.

The Committee also examined the available empirical evidence on concealed-carry laws, noting that the best, most recent evidence on more lax "right-to-carry," or "shall issue" laws "'are associated with substantially higher rates' of aggravated assault, rape, robbery and murder." *Id*. at 17 (quoting Clifton B. Parker, *Right-to-carry gun laws linked to increase in violent crime, Stanford research shows*, STANFORD REPORT, Nov. 14, 2014) (available online at *http://news.stanford.edu/news/2014/november/donohue-guns-study-111414.html*).[4] The Report cited a study that examined the District's 1976 prohibition on handguns (overturned in *Heller*) and found that that "[r]estrictive licensing of handguns was associated with a prompt decline in homicides and suicides in the District of Columbia. [N]o [such] decline was seen in adjacent metropolitan areas where restrictive licensing did not apply." *Id*. at 18 (quoting Colin Loftin, David McDowell, Brian Wiersema, and Talbert J. Cotley, *Effects of Restrictive Licensing of Handguns on Homicide and Suicide in the District of Columbia*, 325 THE NEW ENGLAND J. OF

---

[3]   The Committee Report (188 pages long, including attachments) is available online at *http://lims.dccouncil.us/Download/32576/B20-0930-CommitteeReport1.pdf*.

[4] The research cited is an updated version of a comprehensive study first conducted in 2011. *See* Abhay Aneja, John J. Donohue, and Alexandria Zhang, *The Impact of Right to Carry Laws and the NRC Report: The Latest Lessons for the Empirical Evaluation of Law and Policy* (Sep. 4, 2014), Stanford Law and Economics Olin Working Paper No. 461, *available online at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2443681.

MED. 1615 (1991)).[5] The Report also found that "restrictions on access to guns in the District of Columbia prevented an average of 47 deaths each year after the law was implemented." *Id*.

The Committee heard evidence that allowing law enforcement the ability to ascertain an applicant's "good reason," to carry a concealed handgun, as in the cases of New York, New Jersey, and Maryland, is important

> because of the significant risks associated with a dangerous person carrying a concealed handgun in public. Numerous studies have shown that the unfettered carrying of firearms in public places augments the risks associated with gun violence. Studies analyzing the connection between increased gun prevalence and crime indicate that most states that broadly allow concealed firearms in public—that is states that don't provide law enforcement with discretion—appear to 'experience increases in violent crime, murder, and robbery when [those] laws are adopted' Importantly, 'guns did not seem to protect [even] those who possessed them from being shot in an assault.'

Hrg.Rec. at 14 (statement of Brian Malte, Senior National Policy Director, Brady Campaign to Prevent Gun Violence) (quoting John Donohue, *The Impact of Concealed-Carry Laws, Evaluating Gun Policy: Effects on Crime and Violence*, 289, 320 (Jens Ludwig & Phillip Cook eds. 2003) and Charles C. Branas, *et al.*, *Investigating the Link Between Gun Possession and Gun Assault*, 99 AM. J. PUB. HEALTH 2034 (2009)).

Even in cases alleging infringement of the First Amendment, the Supreme Court has "permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and simple common sense." *Edwards v. District of Columbia*, 755 F.3d 996, 1003 (D.C. Cir. 2014) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001)). The District has more than met that burden here. As the Report concludes, "[w]hen considering concealed carry in a densely populated city, it is clear that the balancing equation

---

[5]   The study is attached to the Committee Report, at 112, and also available elsewhere online at *http://www.nejm.org/doi/full/10.1056/NEJM199112053252305*.

must include the District's substantial governmental interest in public safety and crime prevention."[6] *Id.*

### 2. Plaintiff Fails To State A Fifth Amendment Equal Protection Claim

"The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." *Metropolitan Wash. Ch., Assoc. Builders & Contractors, Inc. v. District of Columbia*, 57 F.Supp.3d 1, 28 (D.D.C. 2014) ("*MWC*") (quoting *Jones v. Helms*, 452 U.S. 412, 423–24 (1981)). When a challenged classification impinges on a fundamental right or targets a suspect class, it is subject to strict scrutiny. *Id.* (citing *Hunt v. Comartie*, 526 U.S. 541, 546 (1999) and *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005)).

While the Supreme Court has described the "right to keep and bear arms" as "fundamental," *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the particular right asserted here—the right to carry an operable firearm in public—has not been determined to be fundamental, in a constitutional sense, by either the Supreme Court or the D.C. Circuit. Consequently, notwithstanding that the Act treats District residents and non-residents identically, to the extent there is any difference in treatment, the classification need only bear a "rational relation to some legitimate end." *Romer v. United States*, 517 U.S. 620, 631 (1996). *See also Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012) ("A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that

---

[6] The Report summarizes the testimony and written statements received in response to the legislation. *See* Comm.Rep. at 21–26. The witnesses' testimony and written statements are also online, as is a video of the public hearing of October 16, 2014, on the legislation. *See* http://lims.dccouncil.us/Download/32576/B20-0930-HearingRecord1.pdf ("Hrg.Rec.").

could provide a rational basis for the classification.") (internal quotation marks and citations omitted)).

"Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 479 (quoting *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994)). "Rational basis review is thus 'highly deferential,' *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000), and it 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,' *Heller v. Doe*, 509 U.S. 312, 319 (1993)." *MWC*, 57 F.Supp.3d at 28. Plaintiff here simply cannot overcome this presumption of rationality.

In fact, Plaintiff has not even alleged any facts that, if true, would show to whom she is "similarly situated." She uses that phrase only once—in the Complaint's caption. Simply put, "nonresidents" are not a suspect class. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 389–90 (1978). And Plaintiff's "unsupported and conclusory allegations are not enough" to make out an equal protection claim, "in the absence of actual evidence of disparate treatment . . . ." *Texas Border Coal. v. Napolitano*, 614 F.Supp.2d 54, 65–66 (D.D.C. 2009) (citing *Bois v. Marsh*, 801 F.2d 462, 466 n.5 (D.C. Cir. 1986) (noting in equal protection context that "vague allegations, especially when unsupported by an affidavit or other evidence . . . are insufficient to state a claim")). In short, it is well established that equal protection "does not require all persons everywhere be treated alike . . . [but rather] that the government not treat *similarly situated* individuals differently without a rational basis." *Noble v. U.S. Parol Comm'n*, 194 F.3d 152, 154 (D.C. Cir. 1999) (emphasis in original) (citing *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S.

432, 439 (1985)). Under this standard, Plaintiff's Complaint fails to allege a viable equal protection challenge.

      3.   Plaintiff Fails To State A Claim Under The Fifth Amendment For A Violation Of The Right To Travel

A law implicates the right to travel in three situations—when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that penalizes the exercise of the right. *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (*plurality*); *Pollack v. Duff*, ___ F.3d ___, 2015 WL 4079788, *9 (D.C. Cir. July 7, 2015); *Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994). On its face, the District's current gun registration scheme does none of these things. Notwithstanding that District law treats residents and non-residents exactly the same in this regard, travel through or into the District is not deterred in a meaningful sense: any citizen legally possessing a handgun may lawfully transport that weapon through the District under federal law.[7]

Nor is the Act *designed* to impede travel. Its purposes are the obvious and important ones of protecting public safety and providing minimal information to law enforcement. The potential inconveniences visited on Plaintiff and the putative class she seeks to represent by District law does not violate the right to travel. "[S]omething more than a negligible or minimal impact on the right to travel is required . . . ." *Kansas*, 16 F.3d at 442 (quoting *Soto-Lopez*, 476 U.S. at 921 (O'Connor, J., dissenting)).

Moreover, Plaintiff does not explicitly set forth any particular "burdens" that the Act's regulatory regime imposes on her right to travel. Indeed, she does not even actually allege that the District's requirement of a license to carry a gun in public impacts her "right" to self-defense.

---

[7] *See* the Firearms Owners' Protection Act, Pub. L. 99-360, § 1(a), 100 Stat. 766 (July 8, 1986), *codified at* 18 U.S.C. § 926A.

If Plaintiff cannot articulate any specific burden on her right to travel, the District's law does not have a logical impact. In *Pollack*, the Court held that"[a] law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate." 2015 WL 4079788 at *1. (citations omitted). Here, Plaintiff fails even to allege (much less show) that the District's scheme makes interstate travel less attractive and thus fails to state a claim in this regard.

       4.   Plaintiff Cannot Meet Her Burden To Justify Sealing Or Expunging Her Criminal Records

In connection with her constitutional challenges, Plaintiff demands the sealing of her criminal and prosecutorial records, and a declaration that her (and the putative class members') arrests were "legal nullities." Compl. at 15. But to obtain the sealing of criminal records in local courts for an arrest that was not ultimately prosecuted, a person must show by "clear and convincing evidence" either that the crime for which she was arrested did not occur, or that she did not commit it. *Sepulveda-Hambor v. District of Columbia*, 885 A.2d 303, 307 (D.C. 2005) (citing *District of Columbia v. Hudson*, 404 A.2d 175, 177–82 (D.C. 1979) (*en banc*)). On her own allegations, Plaintiff cannot meet that burden.

As noted above, Plaintiff was pulled over by an MPD officer and volunteered that she was carrying a pistol. Compl. ¶¶ 41–42. Probable cause thus existed for her arrest,  which occurred before the *Palmer* decision. The presence of an operable firearm outside a person's home or business was, at that time, *prima facie* evidence of a crime; hence her arrest was valid. *See, e.g., Bsharah v. United States*, 646 A.2d 993, 996–97 (D.C. 1994) ("[A] police officer who sees a non-uniformed person carrying a pistol in a public place could reasonably conclude that that person is violating the law and would therefore have probable cause to arrest the person for

carrying a pistol without a license."). This was the law for decades; it still is, absent a valid license. As a result, Plaintiff cannot qualify for the injunctive relief she seeks.

Moreover, to seal a criminal record *after* a case has proceeded to trial, a movant must meet an even *higher* standard. Not only must the movant show, by clear and convincing evidence that the arrest was based on mistaken identity or that no crime had been committed, as in *Hudson*, the movant must *also* show "the existence of some other circumstance that would make it manifestly unjust to decline to seal the arrest record in question." *Sepulveda-Hambor*, 885 A.2d at 307 (quoting *Rezvan v. District of Columbia*, 582 A.2d 937, 938 (D.C. 1990)). There is no indication in the pleadings that any member of the putative class—whether convicted after trial or not—could make such a showing. To the extent any particular request for such relief might succeed, it could only do so on an individualized showing, making class-wide relief inappropriate.

II. **The Court Should Dismiss The Complaint, In Part, Under Rule 12(b)(1), Because It Lacks Jurisdiction Over Plaintiff's Requests For Broad Equitable Relief Regarding The District's Firearm Registration Laws**

In addition to the foregoing, Plaintiff's equitable relief claims are either moot, she lacks standing to bring them, or they are not ripe for adjudication. The "most fundamental" limit to federal-court authority is supplied by Article III of the Constitution, and provides that the federal judicial power reaches only "Cases" and "Controversies." U.S. Const. Art. III, Sec. 2; *see Clapper v. Amnesty Int'l*, 568 U.S. __, 2013 WL 673253 at *7 (Feb. 26, 2013) ("[n]o principle is more fundamental"). One important element of the case-or-controversy requirement provides that courts must not adjudicate disputes that have been rendered moot. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335 (U.S. 1980) ("the definitive mootness of a case or controversy [ ] ousts the jurisdiction of the federal courts and requires dismissal of the case"). A second, related

component requires that a plaintiff establish that he has standing to pursue the claims in the complaint. *Clapper, supra.* Yet another provides that courts must avoid "premature adjudication," exercising jurisdiction only upon a showing that a claim is "ripe for review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Plaintiff here cannot satisfy these three prerequisites as to critical portions of her Complaint, as the following arguments demonstrate.

A. Plaintiff's Request For Declaratory Relief Regarding The District's Pre-*Palmer* Registration Scheme Is Moot

Plaintiff seeks an order declaring that "the District's registration scheme as it existed before the passage of the emergency legislation [*i.e.* pre-*Palmer*] . . . [is] unconstitutional." Compl. at 14 ("CLASS RELIEF DEMANDS"). However, as her Complaint acknowledges, the pre-*Palmer* firearm registration scheme has already been judged, *see Palmer*, 59 F.Supp.3d at 183-84; it was substantially amended to obviate constitutional infirmities, D.C. Official Code § 7-2501.01, *et seq.* There is also no reason to believe that the prior version of the firearm laws continue to have any residual effect. *See Daskalea v. Wash. Humane Soc'y*, 710 F.Supp.2d 32, 40 (D.D.C. 2010) (finding no live controversy where prior version of statute was "no longer in force" and there was no allegation that the prior version "continue[d] to have any residual effect"). Consequently, any declaratory relief that the Court might issue regarding the pre-*Palmer* laws could serve no useful purpose. *See Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980) (request for declaratory relief is discretionary and should be denied where it will not terminate a controversy or serve a useful purpose"); *accord Babb*, 2006 U.S. Dist. LEXIS 29624 at *9 (repeal of allegedly unconstitutional policy rendered claim for equitable relief moot;

acknowledging that "mootness, however it may have come about, simply deprives [the court] of [ ] power to act; there is nothing for [the court] to remedy, even if [it] were disposed to do so").[8]

That portion of Plaintiff's Complaint is moot and should be dismissed pursuant to Rule 12(b)(1). Additionally, because Plaintiff's claims are moot, the Court should not certify a class seeking retrospective relief. *See R.I.L-R v. Johnson*, ___ F.Supp.3d ____, 2015 WL 737117 (D.D.C. Feb. 20, 2015) ("[Class] Certification is ordinarily appropriate only if the named plaintiff has a live controversy at the time of certification.") (citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)). *See also, e.g., Kremens v. Bartley*, 431 U.S. 119, 128–29 (1977) ("there must be a live case or controversy before this Court, and we apply the law as it is now, not as it stood below. *Fusari v. Steinberg*, 419 U.S. 379 (1975). Thus the enactment of the new statute clearly moots the claims of the named appellees[.]") (citation omitted)).

B.  **Plaintiff Lacks Standing To Seek Equitable Relief Regarding The District's Post-*Palmer* Registration Scheme**

The Complaint also requests that the Court "[d]eclare the District's registration scheme as it existed . . . after passage of the emergency legislation unconstitutional." Compl. at 14 ("CLASS RELIEF DEMANDS"); *see also fn.* __, *supra* (regarding nominal damages). But it is settled that standing to seek such prospective equitable relief requires that a party show a "real or immediate threat" of future harm. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) (extending *Lyons* standard for injunctive relief to request for prospective declaratory relief); *Accord Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Homeland Sec.*, 527 F.Supp.2d 101, 107, n.7 (D.D.C. 2007) (finding no standing to seek prospective declaratory or injunctive relief because neither was capable of

---

[8] In support of its ruling on mootness, the Court in *Babb* referred to and quoted *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), and *Spencer v. Kemna*, 523 U.S. 1, 18 (U.S. 1998).

redressing the past injuries identified by the plaintiff). On Plaintiff's own allegations, she cannot meet this standard with respect to her claim for relief regarding the District's post-*Palmer* firearm registration scheme.

As mentioned, Plaintiff was arrested for violating the District's firearm laws that were in effect prior to October 9, 2014; a substantially revised registration scheme initially took effect on that date, and the permanent version has been in place since June 16, 2015. Yet, the only factual allegations supplied in the Complaint relate uniquely to Plaintiff's own arrest and prosecution under the *old* firearm laws. She does not allege any concrete injury caused by the current statutory framework or any threat whatsoever that she may be injured in the future. *See Lyons, supra.* Evidently, she has not even applied (or indicated any intent to apply) for a concealed-carry permit even though existing District law permits her to do so, whether she is a District resident or resides elsewhere and simply wants to visit the District with a permitted handgun. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of [ ] 'actual or imminent' injury" for standing purposes). Absent allegations of present or prospective harm, there is simply no basis for the Court to exercise jurisdiction over Plaintiff's request for forward-looking relief; that element of her Complaint should also be dismissed under Rule 12(b)(1).

C.   Alternatively, Plaintiff's Challenge To The District's Post-*Palmer* Registration Scheme Is Not Ripe For Review

To determine whether a claim is ripe for review, courts ordinarily "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Pfizer, Inc. v. Shalala*, 182 F.3d 975, 978 (1999) (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)). As the Circuit has explained, "the fitness analysis requires the

court to consider both whether the context in which the issue is presented is sufficiently concrete and conducive to judicial determination, and whether deciding the issue now would violate principles of judicial restraint and efficiency that counsel against spending scarce resources on what amounts to shadow boxing." *Alcoa Power Generating, Inc. v. FERC*, 643 F.3d 963, 967 (D.C. Cir. 2011) (internal quotations omitted). Clearly, here, any challenge Plaintiff might make to the District's current registration requirements lacks the immediacy and reality necessary to establish "fitness" for judicial resolution.

Again, Plaintiff alleges that the District's "policies generally refusing the registration of firearms by individuals who live outside" the District violate her rights to travel and equal protection. Compl.¶ 56. As noted above, Plaintiffs copied these allegations whole cloth from *Palmer.* And, in responding to these contentions in that case, Judge Scullin held:

> [A]s things now stand, Plaintiff [ ], and all others who are not residents of the District, are treated exactly the same as residents of the District[.] Thus, to the extent that Plaintiff['s ]right to travel and equal protection claims are not co-extensive with his Second Amendment claims, the Court finds that these claims are not ripe. [W]ith respect to [his] Second Amendment claim, the District of Columbia may not completely bar him, or any other qualified individual, from carrying a handgun in public for self-defense simply because they are not residents of the District.

*Palmer*, 59 F.Supp.3d at 184 & n.5.

The same is true here: If Plaintiff's right to travel and equal protection claims are not co-extensive with her Second Amendment claims, they are not ripe. Current District law treats Plaintiff—and every other non-resident—exactly the same as residents regarding the carrying of handguns in public. Any suitable person, regardless of residency, may obtain a permit to carry a handgun concealed in public. D.C. Official Code §§ 22-4560(a), (b). There is no allegation in the Complaint that Plaintiff (or anyone she purports to represent, for that matter) has applied for, much less been denied (and subsequently appealed), a concealed-carry license. As such, if

Plaintiff indeed seeks to challenge current District law, that claim is not ripe for review and should be dismissed for lack of jurisdiction.[9]

## CONCLUSION

For the reasons stated above, the District respectfully requests that the Court grant the Motion to Dismiss Plaintiffs' Complaint, and the Complaint be dismissed, with prejudice.


DATE: July 20, 2015                    Respectfully submitted,

                                       KARL A. RACINE
                                       Attorney General for the District of Columbia

                                       ELIZABETH SARAH GERE
                                       Acting Deputy Attorney General
                                       Public Interest Division


                                       _____/s/ Toni Michelle Jackson_____
                                       TONI MICHELLE JACKSON
                                       Chief, Equity Section
                                       Bar Number 453765
                                       Office of the Attorney General
                                       One Judiciary Square
                                       Sixth Floor South
                                       441 Fourth Street, N.W.
                                       Washington, D.C. 20001
                                       (202) 442-9784
                                       E-mail: toni.jackson@dc.gov


                                       _____/s/ Andrew J. Saindon_____
                                       ANDREW J. SAINDON, D.C. Bar No. 456987
                                       Senior Assistant Attorney General

---

[9] *See, e.g., Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) ("Exhaustion of administrative remedies is generally required before filing suit in federal court so that the [government] has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.") (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)); *ABA, Inc. v. District of Columbia*, 49 F.Supp.3d 153, 172 (D.D.C. 2014) ("The assertion of a constitutional right does not excuse exhaustion.") (citing *Wallace v. Lynn*, 507 F.2d 1186, 1190 (D.C. Cir. 1974) and *Marine Mammal Conservancy v. Dep't of Agriculture*, 134 F.3d 409, 413 (D.C. Cir. 1998)); *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1106–1107 (D.C. Cir. 2011) ("Prudence, however, 'restrains courts from hastily intervening into matters that may best be reviewed at another time or in another setting, especially when the uncertain nature of an issue might affect a court's "ability to decide intelligently."' This is especially true when the issue is one of constitutional import.") (citations omitted); *see id.* at 1107 ("A claim is not ripe where the "possibility that further consideration will actually occur before [implementation] is not theoretical, but real.") (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998)).

Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov


_____/s/ Matthew R. Blecher_____
MATTHEW R. BLECHER, D.C. Bar No. 1012957
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Fax:  (202) 730-0586
Email: matthew.blecher@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MAGGIE SMITH, *et al.*                    )
                                          )
                        Plaintiffs,       )
                                          )
            v.                            )        Civil Action No. 15-737 (RCL)
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
                        Defendant.        )
_____          )

## <u>ORDER</u>

Upon consideration of Defendant's Motion to Dismiss the Complaint, including all written and oral argument in support of and in opposition to the motion, it is:

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED**, and it is also

**ORDERED** that the Complaint is dismissed *with prejudice*.

**SO ORDERED.**


Dated: _____              _____
                                     ROYCE C. LAMBERTH
                                     United States District Court Judge

- 27 -