## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH**<br>1400 Michigan Ave NE<br>Washington, DC 20017<br><br>and<br><br>**GERARD "ROB" CASSAGNOL**<br>1400 Michigan Ave NE<br>Washington, DC 20017<br><br>and<br><br>**FREDERICK "CORNELIUS" ROUSE**<br>1112 Thompson Ave<br>Severn, MD 21144<br><br>On behalf of themselves and all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF<br>COLUMBIA**<br><br><br>Defendant. | Civil Action No.: 15-737 (RCL) |

## CLASS ACTION

## AMENDED COMPLAINT FOR JUDGMENT AND MONEY DAMAGES AND INJUNCTIVE RELIEF AND EQUITABLE RELIEF AND DECLARATORY RELIEF AND JURY DEMAND

### (§ 1983 Civil Rights Claims)

### Introduction

1.     Maggie Smith, Gerard Cassagnol, and Frederick Rouse (sometimes the "Named

Plaintiffs"), on behalf of themselves and the Second Amendment Class and the Nonresident Class

(defined below), bring this action against the Government of the District of Columbia (the "District" or the "District of Columbia") under 42 U.S.C.A. § 1983 for injuries they suffered during the Class Period because the District, by enforcing its unconstitutional gun registration laws, caused them and the other members of the Classes to be arrested, prosecuted, or arrested and prosecuted in the District of Columbia Superior Court for violations of those unconstitutional gun laws in violation of their Second and Fifth Amendment rights.

2.      Maggie Smith, Gerard Cassagnol, and Frederick Rouse and the other members of the Right to Return Class also bring this action against the District under 42 U.S.C.A. § 1983 for injuries they suffered during the Class Period because the District, by enforcing its unconstitutional gun registration laws, seized their handguns and ammunition and either destroyed them or refuse to give them back without notice and a hearing in violation of their 5th Amendment rights.

## Jurisdiction and Venue

3.      This Court has jurisdiction over the Named Plaintiffs' § 1983 claims under 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343(3)-(4).

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.CA. §1391(b) because the events or omissions underlying the claims occurred in this judicial district.

## Parties

5.      Named Plaintiffs and the members of the proposed classes are persons who were arrested, charged or arrested and charged and prosecuted under the District's unconstitutional gun registration laws as they relate to pistols in violation of their Second and Fifth Amendment rights.

6.      The Second Amendment Class and the Right to Return Class include both residents and non-residents of the District of Columbia. The Nonresident Class includes only non-residents of the District of Columbia.

7.      Defendant District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

## FACTUAL ALLEGATIONS

### The District's pre-Heller, pre-Palmer gun laws

8.      For years the District has maintained the most restrictive gun laws in the nation.

9.      Until passage of the License to Carry a Pistol Emergency Amendment Act of 2014, D.C. Act 20-447 (the "First Emergency Legislation"), the District maintained a total ban on carrying ready-to-use handguns outside the home or place of business.

10.     The registration scheme simultaneously precluded citizens from registering their pistols for use outside the home or place of business while imposing a criminal penalty for possessing or carrying an unregistered firearm or unregistered ammunition in the District of Columbia.

11.     The registration scheme also specifically excluded individuals who did not reside in the District of Columbia because the gun registration scheme required gun registration applicants to submit proof of residency in the District of Columbia.

12.     Enforcement of the registration scheme fell particularly hard on non-residents because since most states allow their citizens to carry pistols outside the home many otherwise law abiding citizens unwittingly became felons when they carried their pistols and ammunition to the District as they would have at home and were arrested for felony "CPWL" (carrying a pistol without a license) or UF (unregistered firearm) or UA (unregistered ammunition).

13.    Moreover, many citizens visit the District every year because it is our nation's capitol and they wish to see their government in action and visit their representatives and enjoy the national monuments. Many states which allow their citizens to carry pistols actually have places at their legislative assemblies and high courts where citizens can check their guns. In fact, some nonresidents have been arrested at the Capitol when they produced their pistols and asked where they should check their pistols.

14.    Moreover, the District placed no warnings or notifications of its draconian gun laws to persons entering the District.

15.    Ms. Smith, Mr. Cassagnol, and Mr. Rouse typify the type of law abiding citizen who ran afoul of the District's unconstitutional gun laws.

16.    Ms. Smith is a registered nurse. At the time of her arrest she was licensed to carry a pistol in her then home state of North Carolina. She had no prior arrests.

17.    She brought along her pistol with her when she traveled to the District.

18.    She was stopped by the MPD while driving in the District and as she had been taught in her gun ownership class at home she immediately informed the officer that she was carrying a pistol licensed in her home state.

19.    The arresting officer charged her with CPWL, a felony, and Ms. Smith was subjected to prosecution for various felony[1] and misdemeanor gun related offenses, first by the United States Attorney's Office for the District of Columbia ("USAO" or "US Attorney's Office"), and then by the Attorney General's Office for the District of Columbia ("OAG"), for almost a year (even after the Palmer decision, discussed below) before the District finally dismissed her charges.

---

[1] There are two prosecuting agencies who prosecute gun cases in the District. Generally the United States Attorney's Office prosecutes violations of D.C. Code § 22-4504(a). the District of Columbia OAG prosecutes violations of D. C. Code § 7-2507.01 *et seq*. But, the US Attorney's Office prosecutes only those gun cases in Superior Court referred to it for prosecution by the District.

20.     The government of the District of Columbia has virtually never offered any type of diversion program to otherwise law-abiding residents or nonresidents who happen to get arrested for possessing an unregistered firearm or ammunition in the District. The District virtually always referred gun cases to the prosecuting agency for prosecution.

21.     Both the District and the US Attorney's Office were committed to the same policy of prosecuting virtually every arrest for violations of the District's gun registration scheme.

22.     As a result of the District's strict enforcement of the felony statute many otherwise law abiding citizens became, or like Ms. Smith and the other named plaintiffs, almost became felons and so lost valuable civic privileges such as the right to vote, the right to serve on juries, and their civil licenses to practice their professions, or saw those rights placed in jeopardy.

23.     For example, had Ms. Smith been convicted of a felony in the District her nursing license would have been automatically revoked. Thus, she would have been deprived not only of her right to vote but of her right to practice her profession.

24.     Had Ms. Smith been convicted of a misdemeanor offense under D. C. Code § 7-2507.01 she would have had to go before the licensing board and defend her license. She will still have to explain her arrest and prosecution when her license comes up for renewal next year even though her case was dismissed because she was arrested and prosecuted under unconstitutional laws.

25.     Similarly, Mr. Rouse is a Senior Systems Engineer at the Defense Information Systems Agency. At the time of his arrest, he held a Top Secret Security Clearance. As a result of his arrest in the District his security clearance is currently "under review."

26.     Mr. Cassagnol was fired from his job with Comcast in Maryland as a result of his arrest here.

27.     Many residents of the District were also arrested and prosecuted under the District's unconstitutional gun registration scheme.

### District of Columbia v. Heller and the District's response

28.     In 2008 the United States Supreme Court issued its opinion in District of Columbia v. Heller, 554 U.S. 570 (2008) which declared the District's gun registration scheme unconstitutional with respect to the registration of guns by law abiding citizens for use in the home for personal protection.

29.     Although the holding in Heller was confined to registration of guns for use in the home for personal protection the rationale of Heller clearly put the District on notice that its registration scheme prohibiting carrying hand guns outside the home was also unconstitutional.

30.     Nevertheless, the District continued to arrest and prosecute citizens for carrying unregistered pistols and unregistered ammunition outside the home for lawful purposes.

31.     In 2008, as part of its response to the Supreme Court's decision in Heller, the D.C. Council repealed D.C. Code § 22-4506 (2001), the statute giving the Chief of Police authority to issue licenses to carry pistols under certain circumstances, and did not replace it with any new licensing scheme. Inoperable Pistol Amendment Act of 2008, D.C. Law 17-388 (codified at D.C. Code § 22-4504.01 (1) (Supp. 2010)).

32.     So, the felony offence of carrying a pistol without a license remained on the books even though there was no longer was a regulatory scheme in the District for people to obtain licenses to carry pistols.

33.     Then, in September 2012, the City Council again amended the statute to prohibit "carrying a pistol" period without regard to a license ("CPWL" became simply "CP"). Firearms Amendment Act of 2012, D.C. Law 19-170 (effective September 26, 2012).

34.     Moreover, the District continued to seize and destroy handguns and ammunition belonging to people arrested for violations of its unconstitutional gun registration scheme and retain or destroy the property as contraband.

35.     The District also continued to seize and forfeit cars on the basis of its unconstitutional gun registration scheme pursuant to its civil forfeiture scheme. D.C. Code § 7-2507.06a; D.C. Code § 48-905.02(d)(3)(A). *See e.g.*, <u>Simms v. District of Columbia</u>, 872 F. Supp. 2d 90, 92 (D.D.C. 2012)(District seized for civil forfeiture car of person arrested, prosecuted, and acquitted of CPWL).

## <u>Palmer v. District of Columbia and the District's response</u>

36.     On July 24, 2014, the Honorable Frederick James Scullin, Jr., senior United States District Court Judge for the United States District Court for the Northern District of New York, sitting by designation in this Court, issued a decision in <u>Palmer v. District of Columbia</u>, No. 1:09-CV-1482 (D.D.C. 2014) [Document # 51] declaring the District of Columbia's Carrying a Pistol statute facially unconstitutional because the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home was unconstitutional under any level of scrutiny.

37.     Judge Scullin also issued a permanent injunction barring the District from enforcing its registration scheme (which he later stayed on the District's motion) until the District adopted a licensing mechanism consistent with constitutional standards. Judge Scullin further enjoined the District from "completely banning the carrying of handguns in public for self-defense by otherwise qualified non-residents based solely on the fact that they are not residents of the District."

38.     Ultimately, the District decided not to appeal the <u>Palmer</u> decision.

39.     The US Attorney's Office, apparently recognizing that the <u>Palmer</u> decision had invalidated the District's gun registration scheme with respect to carrying hand guns outside the home or place of business, dismissed hundreds of cases against people charged with felony carrying a pistol (CPWL/CP) then pending in DC Superior Court and stopped prosecuting persons under the District's gun registration laws.

40.     In contrast, the OAG chose to double down and re-filed misdemeanor UF and UA charges against virtually every person whose felony CPWL charges had been dismissed by the US Attorney's Office.

41.     The OAG has jurisdiction over two misdemeanor gun charges — possessing unregistered firearms, D.C. Code § 7-2502.01 ("UF"), and possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA").

42.     So, while many people were fortunate to have their felony charges dropped, like Ms. Smith and Gerard Cassagnol, they still faced prosecution for two serious misdemeanors.

43.     The arrests and prosecutions injured Named Plaintiffs and the other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class because they had to defend themselves, they suffered limits on their freedom pending disposition of their cases, and they suffered other injuries, and loss of their property.

44.     Moreover, the District continued to seize and retain or destroy handguns and ammunition.

First Emergency Legislation

45.     Finally, in response to <u>Palmer</u>, on September 23, 2014, the District of Columbia City Council passed and the Mayor signed (on 10/9/2014) the First Emergency Legislation which enacted certain changes to the District's gun registration scheme, which the District contends brings its gun registration scheme within the scope of reasonable registration allowed by <u>Heller</u> and <u>Palmer</u>.

46.     Plaintiffs contend that the City Council and the Mayor should have enacted the First Emergency Legislation or similar legislation in response to <u>Heller</u>.

47.     The First Emergency Legislation allows qualified individuals, including nonresidents, to obtain licenses to carry concealed pistols in public if they can demonstrate "a special need for self-

protection distinguishable from the general community." The Council also amended D.C. Code §
7-2502.02(a)(4) to allow registration of a pistol for "use in self-defense within [the applicant's]
home or place of business," or "as part of the application process for a license to carry a concealed
pistol."

## NAMED PLAINTIFFS' ARREST AND PROSECUTION

## MAGGIE SMITH

### Ms. Smith's arrest by the MPD

48.     On June 29, 2014, Ms. Maggie Smith, a 34 year-old registered nurse with no criminal
record and then a resident of North Carolina, was pulled over by MPD while she was driving her
car in the District of Columbia.

49.     Ms. Smith promptly informed the police that she was carrying a pistol for self-defense and
that she had a lawful permit from her home state of North Carolina to carry a pistol.

50.     MPD arrested Ms. Smith for Carrying a Pistol, in violation of then-D.C. Code § 22-
4504(a).

51.     Ms. Smith was held in Central Cellblock overnight and presented in Superior Court the
next day.

### Ms. Smith's prosecution and the dismissal of her case

52.     The District through MPD referred the case to the US Attorney's Office for prosecution.

53.     At presentment on June 30, 2014, the US Attorney's Office, by complaint, charged Ms.
Smith with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a).

54.     On July 17, 2014, the USAO obtained an indictment of Ms. Smith for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and Ms. Smith was arraigned on those charges in Superior Court.

55.     In light of the <u>Palmer</u> decision, issued on July 24, 2014, the US Attorney's Office dismissed the indictment on September 29, 2014.

56.     But, despite the <u>Palmer</u> decision and the injunction Judge Scullin issued in support of his decision, by September 12, 2014, the OAG had already filed a criminal information charging Ms. Smith with violations of D.C. Code § 7-2502.01 (possession of an unregistered firearm) and D.C. Code § 7-2506.01 (unlawful possession of unregistered ammunition).

57.     On October 8, 2014, Ms. Smith was arraigned in Superior Court on those UF/UA charges.

58.     On February 2, 2015, Ms. Smith, through counsel, filed a motion to dismiss the information and a motions hearing was set for March 20, 2015 and rescheduled for May 29, 2015.

59.     On April 20, 2015, the OAG filed a Notice of Intent to Dismiss and on April 21, 2015, the OAG dismissed the Criminal Information against Ms. Smith.

### MPD's Seizure and retention of Ms. Smith's pistol after her cases were dismissed

60.     The MPD officers seized Ms. Smith's Bersa 380 worth approximately $400.00 when they arrested her on June 29, 2014.

61.     The pistol has remained in the custody of the Property Clerk since the date of her arrest.

62.     The pistol was not subject to forfeiture under the District's civil forfeiture scheme because it was classified as contraband.

63.     Despite the fact that all charges against Ms. Smith were dismissed on April 21, 2015, the District government has not returned Ms. Smith's property or given her notice and a hearing at

which she could challenge the District's retention of her pistol or the District could justify its continued retention of the pistol.

## GERARD "ROB" CASSAGNOL

64.     Gerard Cassagnol is a resident of the State of Maryland.

65.     He had no criminal convictions prior to his arrest and his only minimal contact with the police involved traffic offenses.

66.     He has two children, including a son with Downs syndrome that he cares for.

67.     At the time of his arrest here in the District on October 9, 2013 Mr. Cassagnol was a full-time employee of Cox Communications. He worked shifts varying in length from 8 to 15 hours per day.

68.     At the time of his arrest in the District Mr. Cassagnol owned a 9 millimeter pistol which he had licensed and registered in Maryland.

## Mr. Cassagnol's arrest by the MPD

69.     On October 9, 2013, Mr. Cassagnol drove from his home in Maryland into Southeast, Washington, D.C. District in his employer's Cox Communications truck to Southeast, Washington, D.C. on his way home from work.

70.     While there several MPD cars with sirens blaring converged on Mr. Cassagnol acting in response to a report to a 911operator by an anonymous caller who reported that Mr. Cassagnol had a gun.

71.      Several MPD officers exited the police cars with weapons drawn and pointed at Mr. Cassagnol and the officers ordered Mr. Cassagnol out of his truck.

72.     After Mr. Cassagnol got out of his truck an officer physically threw Mr. Cassagnol to the ground face down and handcuffed him.  When Mr. Cassagnol asked the officers what was going on and why he was being detained, an officer yelled at him to "Shut up!"

73.     The officers began to search the truck.  The officers asked Mr. Cassagnol whether he had a gun in the truck and Mr. Cassagnol told the officers he had his gun in the truck just as he had been taught. He explained that he had lawfully purchased and registered the pistol in the State of Maryland, his state of residence.

74.     Mr. Cassagnol cooperated fully with the officers answering their questions.  He told the officers he had a 9 millimeter pistol in a combination-lock gun safe in the bottom of a grey bin in the backseat of the truck.  He further told the officers that the clip was not inside the pistol.

75.     Mr. Cassagnol gave the officers the combination to the gun safe when they requested it.

76.     The officers recovered the pistol and stood Mr. Cassagnol up from where they had thrown him to the ground.

77.     Another officer took a photograph of Mr. Cassagnol's work identification card and told Mr. Cassagnol that he intended to report the incident to Mr. Cassagnol's employer to ensure that Mr. Cassagnol got fired.

78.     The police arrested Mr. Cassagnol on one count of Carrying a Pistol in violation of then-D.C. Code § 22-4504 (a) (1).

79.     The officers took him to the Sixth District station where he was booked and fingerprinted and placed in a cell with others. He spent the night in jail and was presented in Superior Court the next morning.

### Prosecution by the US Attorney

80.     The District through MPD referred the case to the US Attorney's Office for prosecution.

81.     On October 10, 2013, Mr. Cassagnol was presented in the District of Columbia Superior Court on a charge of Carrying a Pistol in violation of then-D.C. Code § 22-4504 (a) (1) brought by the US Attorney's office.

82.     Mr. Cassagnol was held without bond upon the AUSA's motion until October 11, 2013 in case 2013 CF2 017982.

83.     On October 11, 2013, Mr. Cassagnol was released under the supervision of the Pretrial Supervision Agency.

84.     On October 22, 2013, Mr. Cassagnol was fired from his job at Cox Communications because of his arrest in the District of Columbia for the constitutionally protected conduct of carrying a pistol outside the home.

85.     On October 23, 2013, the US Attorney's Office obtained an indictment of Mr. Cassagnol on three counts: (1) Carrying a Pistol in violation of then-D.C. Code § 22-4504 (a) (1); (2) Possession of An Unregistered Firearm in violation of D.C. Code § 7-2502.01; and (3) Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01.

86.     On November 7, 2013, Mr. Cassagnol was arraigned on those charges.

87.     Several status hearings occurred between November 8, 2013 and March 4, 2014.  On March 4, 2014, a trial date was set before the Honorable John McCabe.

88.     On July 29, 2014, apparently in light of the Palmer decision, the US Attorney's Office dismissed the indictment against Mr. Cassagnol without prejudice.

### Prosecution by the OAG

89.     That same day, the Office of the Attorney General for the District of Columbia filed a criminal information charging Mr. Cassagnol with Possession of An Unregistered Firearm in violation; of D.C. Code § 7-2502.01 and Unlawful Possession of Ammunition in violation of D.C.

Code § 7-2506.01 and the Superior Court Clerk opened a new case with a new docket number, 2014 CTF 13231.

90.     Mr. Cassagnol was arraigned on those charges before Magistrate Judge Elizabeth Wingo.

91.     On August 22, 2014, Mr. Cassagnol's defense attorneys filed a Motion to Dismiss based on the Palmer decision.  The government opposed the motion.

92.     On October 14, 2014, Magistrate Judge Elizabeth Wingo denied the motion and a trial date was set.

93.     On April 20, 2015, approximately nine months after the Palmer decision, the Office of the OAG *nolle'd* the case against Mr. Cassagnol without prejudice.

## Seizure and unlawful retention of Mr. Cassagnol's property by the MPD

94.     When the MPD arrested Mr. Cassagnol on October 9, 2013 they also seized from him a 9 mm pistol, make KIMBER, model DP51, worth approximately $500.00, and some ammunition.

95.     The MPD turned the items over to the Property Clerk and the Property Clerk booked the items into evidence.

96.     The Property Clerk still has custody of the gun.

97.     On July 22, 2015, Mr. Cassagnol called the Evidence Control Branch of the Metropolitan Police Department and he spoke to Technician Ferguson of the Evidence Control Branch, and requested the return of his property.

98.     Technician Ferguson informed Mr. Cassagnol that he would have to contact his lawyer if he wanted his property back.

99.     Technician Ferguson further stated that Mr. Cassagnol's lawyer would have to contact the prosecutor and request that the prosecutor to fill out a PD 81C form to get his property returned.

100.    Notwithstanding Mr. Cassagnol's July 22, 2015 request and the fact that the US Attorney's Office dismissed the case they had brought against Mr. Cassagnol and the Office of the Attorney General has dismissed the subsequent case against Mr. Cassagnol, the Property Clerk continues to hold his property.

101.    The handgun and ammunition were not subject to forfeiture under the District's civil forfeiture scheme because they were classified as contraband.

102.    Despite the fact that all charges against Mr. Cassagnol were dismissed on or about April 20, 2015, the District has not returned Mr. Cassagnol's pistol or given him notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of his pistol.

### FREDERICK "CORNELIUS" ROUSE

103.    Frederick "Cornelius" Rouse is a 32 year old man who is a resident of the State of Maryland.

104.    He served his country in the United States Army for more than four years.  He received an Honorable Discharge in 2007 with the rank of E-4 Corporal.

105.    He is currently a Senior Systems Engineer at the Defense Information Systems Agency.  At the time of his arrest, he held a Top Secret Security Clearance. As a result of his arrest in the District his security clearance is currently "under review."

106.    Prior to his arrest in the District on August 30, 2014 he had no adult criminal convictions.

## Mr. Rouse's arrest by the MPD

107.    On August 30, 2014, Mr. Rouse was staying in the District of Columbia at the Renaissance Washington, DC Downtown Hotel ("Renaissance Hotel") at 999 9th Street, Northwest, for a social event.

108.    Reportedly a maid for the Renaissance Hotel noticed two handguns in Mr. Rouse's room while Mr. Rouse was out of the room, and hotel staff notified the MPD that Mr. Rouse had two pistols in his room.

109.    The two handguns belonged to Mr. Rouse and he had lawfully purchased and registered them in the State of Maryland, his place of residence.

110.    The pistols were a Glock 33 Pistol worth approximately $550.00 and a FN Five-Seven Pistol worth approximately $1,200.00. Mr. Rouse also had a TLR2 Scope worth approximately $300.00.

111.    Mr. Rouse had brought the handguns into the hotel room in the same "lockup" carrying case which he used to transport the pistols when he traveled by plane. The case had a "Firearm(s) Declaration" sticker from United Airlines consistent with 49 CFR 1540.111 (c) from a trip in which he lawfully transported his weapons on a plane.

112.    When Mr. Rouse returned to the hotel MPD officers approached and detained him and questioned him about his guns.

113.    Mr. Rouse freely admitted to the officers that the guns in the hotel room belonged to him and were lawfully registered in the State of Maryland.

114.    Mr. Rouse was arrested on a Saturday and, as a result spent two nights in jail before being presented in Superior Court on the following Monday.

## Prosecution by the OAG

115.    On September 1, 2014, the OAG filed a Criminal Information charging Mr. Rouse with

Possession of an Unregistered Firearm in violation of D.C. Code § 7-2502.01 and Unlawful

Possession of Ammunition in violation of D.C. Code § 7-2506.01.

116.    Mr. Rouse was arraigned on those charges that same day in the District of Columbia

Superior Court.

117.    On November 26, 2014, in light of the Palmer decision, Mr. Rouse's defense attorney filed

a Motion to Dismiss.  On December 15, 2014, the Office of the Attorney General for the District

of Columbia filed an Opposition to the Defendant's Motion to Dismiss.

118.    Three days later, on December 18, without a hearing, the Honorable William Jackson

summarily denied the Defendant's Motion to Dismiss in a one paragraph order.

119.    A jury trial was set for March 16, 2015.

120.    On March 16, the trial was continued for a status hearing on April 22, 2015.

121.    On April 22, 2014, approximately nine months after the Palmer decision, the OAG

dismissed the charges against Mr. Rouse without prejudice.

## MPD seized Mr. Rouse's pistols and the Property Clerk retains them

122.    The MPD seized Mr. Rouse's pistols and the scope for evidence when they arrested him

on August 30, 2014.

123.    The MPD Property Clerk still has the pistols and the scope.

124.    The pistols and the scope were not subject to forfeiture under the District's civil forfeiture

scheme because they were classified as contraband.

125.    Mr. Rouse sent a letter by certified mail to the Property Clerk on August 4, 2015 asking for his pistol back but the Property Clerk still has not returned his pistols and scope to him.

126.    Despite the fact that all charges against Mr. Rouse were dismissed on or about April 20, 2015, the District has not returned Mr. Rouse's pistols or his scope or given him notice and a hearing at which he could challenge the District's retention of his pistols and scope or the District could justify its continued retention of his pistols and scope.

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS

### Claim 1

### Second Amendment

127.    The preceding paragraphs are incorporated as though fully stated herein.

128.    By requiring a permit to carry a handgun in public, yet refusing to issue such permits, and refusing to allow the possession and registration of any handgun that would be carried in public, the District maintained a complete ban on the carrying of handguns in public by almost all individuals up to the passage of the First Emergency Legislation which became effective on 10/9/2014.

129.    The District's laws, customs, practices and policies generally banning the carrying of handguns in public violated the Second Amendment to the United States Constitution, damaging Named Plaintiffs and the other class members in violation of 42 U.S.C. § 1983.

130.    Named Plaintiffs and the other class members suffered humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and defending against prosecution under an unconstitutional ordinance.

131.    Named Plaintiffs and the other class members are therefore entitled to the relief described below.

### Claim 2

## Fifth Amendment Right to Travel

132.    The preceding paragraphs are incorporated as though fully stated herein.

133.    The District's laws, customs, practices and policies generally refusing the registration of handguns by individuals who live outside the District of Columbia violate the rights to travel and equal protection secured by the Due Process Clause of the Fifth Amendment to the United States Constitution, facially and as applied against the individual plaintiff in this action, and the class members, thereby damaging plaintiffs in violation of 42 U.S.C. § 1983.

134.    Named Plaintiffs and the other class members suffered humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and defending against prosecution under an unconstitutional ordinance

135.    Named Plaintiffs and the other class members are therefore entitled to the relief described below.

## Claim 3

## Right to Return of Handguns and Ammunition

136.    The preceding paragraphs are incorporated as though fully stated herein.

137.    The District seized hand guns and ammunition belonging to the Named Plaintiffs and the other members of the Right to Return Class on the basis of its unconstitutional gun registration scheme for investigation and evidence and destruction as contraband and placed the property in the custody of the Property Clerk.

138.    The District never gave the Named Plaintiffs and the other members of the Right to Return Class notice when the District no longer needed the property for investigation or evidence even though the District's gun registration scheme was unconstitutional until at least 10/10/2014.

139.    The District never gave the owners hearings at which the owners could challenge the District's right to retain their hand guns and ammunition or the District could establish its right to treat the hand guns and ammunition as contraband.

140.    The District had no system in place during the Class Period for obtaining releases from the US Attorney's Office for hand guns and ammunition used in the prosecution of cases by the US Attorney's Office until someone made a demand for the property.

141.    The District has a policy and practice of seizing hand guns and ammunition for investigation and evidence and then holding it for months and years or destroying it without giving the owners a retention seizure hearing before destroying the property.

142.    The District's policy and practice is to not send notice to owners of such property informing them that their property is no longer needed by the District and informing owners how to retrieve their property when the District no longer needs the property or plans to destroy or otherwise dispose of it.

143.    The policy and practice and the failure to provide hearings when the District no longer needs the property or before destroying the property violates the due process of the Fifth Amendment.

144.    The Right to Return Named Plaintiffs and class members were injured thereby and suffered damages.

## RULE 23 ALLEGATIONS

145.    Named Plaintiffs  on behalf of themselves and the Second Amendment Class and the Nonresident Class and the Right to Return Class brings this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following three classes consisting of each person who:

146.   <u>Second Amendment Class</u>: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for violation of any of the District's gun registration laws prior to amendment by the First Emergency Legislation; (iii) while carrying a pistol outside their home or place of business.

147.   <u>Nonresident Class</u>: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for violation of any of the District's gun registration laws, including but not limited to; (iii) while carrying a pistol outside their home or place of business; and (iv) while a nonresident of the District of Columbia at the time of the arrest or prosecution.

148.   <u>Right to Return Class</u>: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was the owner of handguns or ammunition that was seized by the District or its agents on the basis of its unconstitutional gun registration scheme; (iii) which the District still retains or has destroyed or otherwise disposed of without giving the owner notice and a hearing at which the owner could challenge the retention or destruction or the District could establish its right to destroy or retain the property.

149.   Certification of these classes under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

150.   The classes are entitled to injunctive relief including sealing of their arrest and prosecution records and declaring their arrests as legal nullities.

151.    Certification of the classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

152.    The classes are entitled to monetary relief.

153.    Regarding Named Plaintiffs and the other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class, there are no individual questions on the issue of liability, because all members of the Second Amendment Class and the Nonresident Class and the Right to Return Class are injured by the same policy and practices.

154.    Among the questions of law and fact common to the classes are:

1) whether the District's gun registration scheme as set forth in D.C. Code § 22-4504 and D. C. Code § 7-2507.01 prior to amendment by the First Emergency Legislation violated the Second Amendment;

2) whether the District's gun registration scheme as set forth in D.C. Code § 22-4504 and D. C. Code § 7-2507.01 prior to amendment by the First Emergency Legislation violated the Fifth Amendment;

3) whether the District's seizing and retaining or destroying handguns and ammunition on the basis of its gun registration scheme prior to amendment by the First Emergency Legislation without notice and a hearing violated the Fifth Amendment;

4) whether the District has or had a policy, custom, or practice prior to amendment by the First Emergency Legislation of never allowing nonresidents to register pistols for carrying outside the home during the class period;

5) whether Named Plaintiffs and the members of the classes are entitled to equitable relief, and, if so, what is the nature of that relief; and

6)   whether a jury can determine the general damages for an entire class using a damages matrix on the basis of a trial using a sample of the class members.

155.    The Second Amendment Class and the Nonresident Class and the Right to Return Class are both so numerous that joinder of all members is impracticable. The exact number of Second Amendment Class and the Nonresident Class and Right to Return Class members is unknown to plaintiffs at this time, but the District of Columbia Superior Court's online docketing system, CourtView, shows that each year over the last 3 years hundreds of people were arrested and prosecuted for violations of the District's unconstitutional gun registration scheme.

156.    Ms. Smith, Mr. Cassagnol, and Mr. Rouse's claims are typical of the claims of the other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class, because Ms. Smith, Mr. Cassagnol, and Mr. Rouse and all other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class were injured by exactly the same means, that is, by District's enforcement of its unconstitutional gun registration scheme.

157.    Ms. Smith, Mr. Cassagnol, and Mr. Rouse on behalf of themselves and the Second Amendment Class and the Nonresident Class and the Right to Return Class will fairly and adequately protect the interests of the members of the Second Amendment Class and the Nonresident Class and the Right to Return Class and have retained counsel who are competent and experienced in complex federal civil rights class action litigation and criminal defense law including the District's unconstitutional gun registration scheme.

158.    Ms. Smith, Mr. Cassagnol, and Mr. Rouse on behalf of themselves and Second Amendment Class and the Nonresident Class and the Right to Return Class have no interests that are contrary to or in conflict with those of the class or Second Amendment Class and the Nonresident Class or the Right to Return Class.

## CLASS RELIEF DEMANDS

Ms. Smith, Mr. Cassagnol, and Mr. Rouse as Named Plaintiffs on behalf of themselves and all other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class respectfully request that this Court grant the following relief:

**A.**           Enter judgment in their favor on all of their claims;

**B.**           Declare the District's registration scheme as it existed before the passage of the First Emergency Legislation was unconstitutional.

**C.**           Award Ms. Smith, Mr. Cassagnol, and Mr. Rouse and the other members of the proposed classes nominal damages in connection with any declaration that the District's gun registration scheme as it existed before the passage of the First Emergency Legislation was unconstitutional.

**D.**           Grant a jury trial on all claims so triable.

**E.**           Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Second Amendment Class and the Nonresident Class, and designating Ms. Smith, Mr. Cassagnol, and Mr. Rouse as the proper representative of the Second Amendment Class and the Nonresident Class and the Right to Return Class and appointing William Claiborne and Joseph Scrofano as class counsel.

**F.**           Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**G.**           Award Ms. Smith, Mr. Cassagnol, and Mr. Rouse and all other members of the Second Amendment Class and Nonresident Class and Right to Return Class injunctive relief in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities;

**H.**          Award all named plaintiffs and class members compensatory and consequential

damages in an amount to be determined at trial;

**I.**          Award plaintiffs attorneys' fees and costs incurred in bringing this action under

42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.**          Grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>**WILLIAM CLAIBORNE**<br>D.C. Bar # 446579<br><br>Counsel for Ms. Smith, Mr. Cassagnol, and Mr. Rouse on behalf of themselves and the putative class members<br><br>2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email clairbornelaw@gmail.com | Respectfully submitted,<br><br>/s/ Joseph A. Scrofano<br>**JOSEPH A. SCROFANO**<br>D.C. Bar # 994083<br><br>Counsel for Ms. Smith, Mr. Cassagnol, and Mr. Rouse on behalf of themselves and the putative class members<br><br>406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne<br>
WILLIAM CLAIBORNE<br>
D.C. Bar # 446579<br>
Counsel for Plaintiff and the classes