UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
MAGGIE SMITH, *et al.,*                                          )
                                                                )
                                          Plaintiffs,           )
                                                                )
                          v.                                    )        Civil Action No. 15-737 (RCL)
                                                                )
DISTRICT OF COLUMBIA,                                           )
                                                                )
                                          Defendant.            )
_____                         )

### DEFENDANT'S MOTION TO DISMISS

Defendant the District of Columbia moves to dismiss plaintiffs' Amended Complaint (Complaint) with prejudice. *See* Fed. R. Civ. P. 12(b)(1), (6). As explained in the Memorandum of Points and Authorities accompanying this Motion, plaintiffs have asserted a number of claims over which the Court lacks Article III jurisdiction. Specifically, plaintiffs have no standing to assert Claims 1 and 2, both of which are also moot to the extent they seek broad declaratory relief. Additionally, plaintiffs have failed to state a claim upon which relief can be granted. Claims 1 and 2 both fail to allege causation sufficient to support a claim under 42 U.S.C. § 1983, and Claims 2 and 3 do not assert any actionable constitutional violation. Dismissal on these grounds is appropriate.

A proposed order also accompanies this Motion. Because this Motion is dispositive of the Complaint, the District has not sought plaintiffs' consent to the relief requested. *See* LCvR 7(m).

DATE: October 2, 2015                     Respectfully submitted,

                                          KARL A. RACINE
                                          Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

        /s/ Toni Michelle Jackson
TONI MICHELLE JACKSON
Chief, Equity Section

        /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

        /s/ Matthew R. Blecher
MATTHEW R. BLECHER, D.C. Bar No. 1012957
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Fax:  (202) 730-0586
Email: matthew.blecher@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MAGGIE SMITH, *et al.*,                 )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )        Civil Action No. 15-737 (RCL)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
                    Defendant.          )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiffs are a putative class of persons who were arrested, charged, and/or prosecuted for violating the firearm-registration laws in effect in the District of Columbia (District) prior to October 9, 2014, the effective date of emergency legislation establishing a concealed-carry licensing regime. The Complaint concedes that plaintiffs' actions were prohibited under the laws as they were written; what plaintiffs fail to acknowledge is that their actions are *still* prohibited by District law. Plaintiffs now seek redress for injuries apparently resulting from their exposure to the District's criminal justice system, and so they bring this action against the District under 42 U.S.C. § 1983, alleging violations of their right to bear arms (Claim 1), to travel and to equal protection (Claim 2), and to due process under the law (Claim 3).

However, the Complaint suffers from several critical defects. First, it attempts to assert claims—Claims 1 and 2, specifically—over which the Court lacks Article III jurisdiction. Additionally and relatedly, those claims are based on a fundamental analytical flaw: they erroneously assume that the District is automatically liable under 42 U.S.C. § 1983 when its employees enforce a law that is later determined to violate the Constitution. The Fourth, Sixth,

and Tenth Circuits have all uniformly rejected that assumption in similar cases, and the Court should follow suit here. Additionally, Claims 2 and 3 fail in substance to state any actionable constitutional violation that would otherwise support a challenge under § 1983. Finally, even if the Court had jurisdiction and plaintiffs had pled actionable claims, their allegations simply do not satisfy the heavy burden for an injunction sealing or expunging their criminal records. All of the foregoing justifies dismissal of the Complaint.

## BACKGROUND

According to the Complaint, plaintiff Smith was pulled over by officers of the Metropolitan Police Department (MPD) on June 29, 2014, while driving in the District. Complaint ¶ 48. She told the police that she was carrying a pistol, for which she possessed a permit from her home state of North Carolina. *Id.* at ¶ 49. She was then arrested for carrying a pistol without a license, in violation of D.C. Official Code § 22-4504(a) (2013). *Id.* at ¶ 50. She was subsequently indicted by the U.S. Attorney's Office (USAO) on that charge, plus possession of an unregistered firearm (D.C. Official Code § 7-2502.01 (2013)), and unlawful possession of ammunition (D.C. Official Code § 7-2506.01 (2013)). *Id.* at ¶ 54. The USAO subsequently dismissed the indictment. *Id.* at ¶ 55. The Office of Attorney General for the District of Columbia (OAG) filed a criminal information charging plaintiff Smith with possession of an unregistered firearm and unlawful possession of ammunition, and she was arraigned in Superior Court on those charges. *Id.* at ¶¶ 56, 57. OAG subsequently dismissed the criminal information. *Id.* at ¶ 59. Plaintiff Smith contends that MPD seized her pistol at the time of her arrest and has not returned it "or given her notice and a hearing at which she could challenge the District's retention of her pistol or the District could justify its continued retention of the pistol." *Id.* at ¶ 63.

Also according to the Complaint, plaintiff Cassagnol, a resident of Maryland,[1] was stopped by MPD on October 9, 2013, after an anonymous tip. *Id*. at ¶¶ 69–70. He admitted that he was carrying a gun in his truck (owned by Cox Communications, his then-employer), which he had registered in Maryland. *Id*. at ¶ 73. He was arrested and charged with carrying a pistol without a license. *Id*. at ¶ 78. He was subsequently indicted on that charge, and possession of an unregistered firearm and unlawful possession of ammunition) by the USAO. *Id*. at ¶¶ 81, 85.[2] Mr. Cassagnol was later arraigned, but the USAO eventually dismissed the indictment. *Id*. at ¶ 88. The OAG then charged him with possession of an unregistered firearm and unlawful possession of ammunition, and he was arraigned on those charges. *Id*. at ¶¶ 89–90. The OAG later declined to prosecute him on those charges. *Id*. at ¶ 93. Plaintiff Cassagnol contends that MPD seized his pistol and some ammunition and retains them. *Id*. at ¶¶ 94, 96, 100. He contends that MPD has not returned his pistol "or given him notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of the pistol." *Id*. at ¶ 102.

The Complaint also states that plaintiff Rouse, a resident of Maryland, was arrested on August 30, 2014, at a hotel in the District after hotel staff had apparently notified MPD that Mr. Rouse had two pistols in his room. *Id*. at ¶¶ 107–114. MPD apparently seized the pistols and a scope. Mr. Rouse alleges that his guns were lawfully registered in Maryland. *Id*. at ¶ 113. He was charged by OAG with possession of an unregistered firearm and unlawful possession of ammunition and arraigned in Superior Court. *Id*. at ¶¶ 115–16. The OAG subsequently dismissed the charges against Mr. Rouse. *Id*. at ¶ 121. MPD retains Mr. Rouse's pistol and scope. *Id*. at ¶

---

[1] The caption of the Complaint, however, lists Mr. Cassagnol's residence as the District of Columbia. It appears, however, to be a typo, as it is the same address listed as that for Ms. Smith.

[2] Plaintiff Cassagnol also alleges that he was fired from his job "because of" his arrest in the District. *See id*. at ¶ 84.

123. He alleges that he sent a certified letter to MPD's property clerk asking for his property back, but was unsuccessful. *Id*. at ¶ 125. He finally contends that MPD has not returned his property "or given him notice and a hearing at which he could challenge the District's retention of his pistols and scope or the District could justify its continued retention of the pistol." *Id*. at ¶ 126.

*The District's Firearms Laws*

On or about July 24, 2014, the Court issued its decision in *Palmer v. District of Columbia*, No. 09-1482 (FJS) (D.D.C.), holding that the District's "total ban on the public carrying of ready-to-use handguns outside the home" violated the Second Amendment to the Constitution. *Palmer v. District of Columbia*, 59 F.Supp.3d 173, 183 (D.D.C. 2014). The Court enjoined the District from enforcing D.C. Official Code § 7-2502.02(a)(4), which prohibited "registration of handguns to be carried in public for self-defense by law-abiding citizens"; from enforcing D.C. Official Code § 22-4504(a), which prohibited carrying a weapon in public without a license; and from enforcing either statute "against individuals based solely on the fact that they are not residents of the District of Columbia." *Id*. The Court also enjoined the District from enforcing those statutes "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id*. (footnote omitted). On July 29, 2014, the Court granted, in part, the District's motion to stay, staying the injunction until October 22, 2014. *See* Doc. No. 53, *Palmer v. District of Columbia*, No. 09-1482 (FJS) (D.D.C.).

Moving swiftly to comply, on September 23, 2014, the Council of the District of Columbia voted unanimously to pass Bill 20-926, the License to Carry a Pistol Emergency

Amendment Act of 2014 (Emergency Act). *See* 61 D.C. REG. 10765 (Oct. 17, 2014). The bill was signed by the Mayor on October 9, 2014, and became effective on signing. *See* Complaint ¶ 128; D.C. Official Code § 1-204.12(a) (2014 Supp.). The Council subsequently passed a series of additional emergency and temporary statutes, to maintain a public-carry regime pending enactment of permanent legislation and congressional review. *See, e.g.*, "License to Carry a Pistol Second Emergency Declaration Resolution of 2014," Res. 20-741 (Dec. 17, 2014), 62 D.C. Reg. 1964 (Feb. 13, 2015).

The permanent legislation, the License to Carry a Pistol Amendment Act of 2014, Law No. 20-279 (Concealed Carry Law or CCL), became effective—after passing the period of congressional review—on June 16, 2015. *See* http://lims.dccouncil.us/Legislation/B20-0930?FromSearchResults=true (last visited Oct. 1, 2015). The CCL establishes a regime for granting licenses to carry concealed handguns in the District. It sets forth, among other things, substantive requirements for applicants, including training in firearm safety, usage, and storage. CCL at § 2(e) (adding a new Title IX, §§ 901–911, to the Firearms Control Regulations Act of 1975, *codified as amended at* D.C. Official Code §§ 7-2501.01 *et seq.*).

The CCL also establishes a process by which non-District residents may obtain such licenses. *Id.* at § 6; D.C. Official Code §§ 22-4506(a), (b). On October 22, 2014, as required by the CCL, the MPD issued detailed regulations to establish procedures for the licensing of persons to carry concealed firearms. 61 D.C. Reg. 11,519–11,533 (Oct. 31, 2014).

Plaintiffs filed their original complaint in this matter on May 15, 2015. After the District filed a Motion to Dismiss, plaintiffs filed an Amended Complaint on September 15, 2015. Plaintiffs bring three substantive "claims" or counts: (1) the District's prohibition on carrying handguns in public violated the Second Amendment (until October 9, 2014), and caused injuries

to the putative class members who were arrested and prosecuted under the old law; (2) the District's prohibition on carrying handguns in public violated the rights to travel and equal protection of those plaintiffs who live outside the District; (3) the District's seizure of plaintiffs' property and failure to give plaintiffs "hearings at which the owners could challenge the District's right to retain" the property and failure to provide notice to the plaintiffs "informing [them] how to retrieve their property[,]" Complaint ¶¶ 128–142, violates Due Process.[3] Plaintiffs seek a declaration that District law prior to the Emergency Act was unconstitutional, and an award of nominal damages on that claim. *Id*. at 24. Plaintiffs also seek injunctive relief "in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities[.]" *Id*. Plaintiffs also seek "compensatory and consequential damages" and attorneys' fees and costs. *Id*. at 25.

## LEGAL STANDARDS

### I.  Motion To Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) provides that a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint survives only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). However, only well-pleaded factual allegations are entitled to an assumption of veracity: Conclusory allegations

---

[3] Paragraph 133 of the Complaint is a nearly identical copy of paragraph 42 of the *Palmer* complaint. *See Palmer*, 59 F.Supp.3d at 175. Paragraph 56 of the original complaint was likewise nearly identical.

devoid of factual enhancement, legal conclusions, and inferences unsupported by the facts must all be rejected. *See id.* at 678–79.

Ultimately, a complaint that fails to "set forth information to suggest that there is some recognized legal theory upon which relief may be granted" must be dismissed pursuant to the Rule. *See District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984). The dismissal must be with prejudice if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

## II.  Motion To Dismiss Under Rule 12(b)(1)

Because the federal courts are courts of limited jurisdiction, they are at all times required to presume that they do not have subject matter jurisdiction over a case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (U.S. 1994) (citations omitted). Thus, on a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court's jurisdiction is proper by a preponderance of the evidence.  *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 257 (D.D.C. 2013) (citations omitted); *Babb v. Chertoff*, 2006 U.S. Dist. LEXIS 29624 at *5 (D.D.C. May 16, 2006) (Lamberth, J.) (also describing Court's duty in ruling on jurisdictional challenges as "affirmative obligation"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## ARGUMENT

## I.  The Court Should Dismiss Claims 1 And 2 For Lack of Jurisdiction Pursuant To Rule 12(b)(1).

### A.  Plaintiffs' Do Not Have Standing To Bring Claims 1 And 2.

Plaintiffs have no standing to assert Claims 1 and 2 against the District. In order to establish standing, the party invoking federal jurisdiction bears the burden of demonstrating three "irreducible constitutional minimum" requirements:

> *First*, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (emphasis added). These basic requirements—injury-in-fact, causation, and redressability—must be proven separately as to each request for relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (U.S. 2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"); *see also Lewis v. Casey*, 518 U.S. 343, 358 (U.S. 1996) ("standing is not dispensed in gross"). Taken as a whole, the allegations of the Complaint fail to meet the causation and redressability prongs of this standard.

To be sure, the gravamen of the injury asserted in the Complaint is the economic and other harms that allegedly resulted from plaintiffs' arrests and prosecutions (*e.g.*, emotional distress, loss of earnings, legal expenses, *etc.*). And, under both Claims 1 and 2, the action that plaintiffs challenge is the District's maintenance of a gun registration scheme that allegedly ran afoul of the Second and Fifth Amendments (*i.e.* the rights to bear arms, travel, and equal protection). The nexus between *that* conduct and plaintiffs' alleged injuries is simply too attenuated to satisfy Article III causation. *See Freedom Republicans v. FEC*, 13 F.3d 412, 418

(D.C. Cir. 1994) ("fair traceability turns on the causal nexus between the agency action and the asserted injury").

Indeed, at a minimum, the injuries resulting from plaintiffs' arrests and prosecutions stand at the end of the following chain of events: (1) Plaintiffs—apparently oblivious to the existence of any registration scheme—bring their guns into the District; (2) MPD officers arrest and detain plaintiffs for violating the registration scheme; and (3) USAO and OAG separately decide to prosecute plaintiffs. Critically, however, plaintiffs are not challenging the conduct of USAO or OAG; they make no allegation of malicious prosecution.[4] Nor are they challenging the MPD officers' decisions to arrest them; they assert no claim for false arrest or false imprisonment. For standing purposes, the actions of these entities (which, again, plaintiffs *do not* purport to challenge) are each discrete, intervening events that independently caused the injuries for which plaintiffs seek redress and undermine any claim of Article III standing. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159–60 (D.C. Cir. 2005) (describing heightened burden for plaintiff attempting to show Article III standing where element of causation "hinge[s] on the independent choices of the regulated third party").

Plaintiffs' own conduct also severs the causal chain outlined above. Again, plaintiffs made no effort whatsoever to comply with the District's gun registration laws or to even know what the laws required prior to entering the jurisdiction with their weapons. *See* Complaint ¶ 12 ("law abiding citizens unwittingly became felons when they carried their pistols and ammunition

---

[4] Prosecution for "minor" crimes in the District is the responsibility of the OAG; all other crimes in the District are prosecuted by the USAO. D.C. Official Code §§ 23-101(a), (b); *In re Crawley*, 978 A.2d 608, 610 (D.C. 2009) (discussing D.C. Official Code § 23-101). Thus, plaintiffs' allegation that the USAO "prosecutes only those gun cases in Superior Court referred to it for prosecution by the District[,]" Complaint at n.1, is incorrect as a matter of law. Indeed, there are a number of federal law-enforcement agencies in the District that may refer suspected firearm crimes directly to the USAO for prosecution. *See, e.g., United States v. Garner*, 396 F.3d 438, 440 (D.C. Cir. 2005) (U.S. Park Police); *Patock v. U.S. Dept. of the Interior*, 873 F.Supp.2d 251, 255 (D.D.C. 2012) (U.S. Park Police); *Lucas v. United States*, 20 A.3d 737, 744 (D.C. 2011) (FBI); *In re R.M.C.*, 719 A.2d 491, 492 (D.C. 1998) (Secret Service); *Bieder v. United States*, 707 A.2d 781, 782 (D.C. 1998) (U.S. Capitol Police).

to the District"); *id.* at ¶ 14 ("the District placed no warnings or notifications of its draconian gun laws"). Generally speaking, injuries caused by a claimant's own actions will not be harms traceable to the government that satisfy Article III standing. *See e.g. ViroPharma, Inc. v. Hamburg*, 777 F.Supp.2d 140, 147 (D.D.C. 2011) (finding lack of Article III standing where plaintiff made changes to business practices in response to the challenged government action; reasoning that changes "are not harms that can be said to have been caused by the [government]"). That principle applies with unique force here.

In fact, given plaintiffs' willful disregard for District law, they would have suffered the injuries they allege even under the *current* gun registration scheme. Even now, after the passage of the Concealed Carry Law, there is no unqualified right to carry a concealed handgun in public; those desiring to do so must comply with the District's reasonable regulation of that right. Under the law, both nonresidents and residents are treated *exactly* the same and must apply for and be granted a permit before such concealed carrying may begin. D.C. Official Code § 22-4506(a), (b). Even persons possessing a valid concealed-carry license from another jurisdiction must obtain a District permit. *Id.*[5] Thus, even *after* the enactment of the new licensing regime, those persons who want to carry a concealed handgun in public must apply for a District license to do so. None of the plaintiffs did so, or have indicated any intent to do so. Hence, the lack of a concealed-carry regime at the time of plaintiffs' arrests did *not* cause their alleged injuries. It was illegal to carry a concealed handgun in the District without a license before *Palmer*, and remains illegal. Plaintiffs' own actions caused their asserted harms.

Relatedly, plaintiffs cannot demonstrate that a favorable decision on Claims 1 and 2 will redress the injuries they allege. Again, the injuries that underpin Claims 1 and 2 all flow from

---

[5] The only persons not required to obtain a District license to carry a concealed weapons are "qualified retired law enforcement officer[s]" carrying proper identification. 18 U.S.C. § 926C(a).

plaintiffs' arrests and prosecutions under then-valid District law. As a practical matter, even if the Court were to declare that the pre-*Palmer* gun laws violated plaintiffs' rights to bear arms, to travel, and to equal protection, that decision would have no effect whatsoever on the outcome of plaintiffs' criminal proceedings, which have all ended. Plaintiffs do not even challenge those proceedings as unlawful. In other words, plaintiffs' arrests by MPD and prosecutions by USAO and OAG were validly pursued, and so a favorable decision on Claims 1 and 2 could not disturb them. For all these reasons, the Court should dismiss Claims 1 and 2 for lack of Article III standing.

B. Alternatively, The Court Should Decline To Issue Declaratory Relief Under Claims 1 And 2 Because That Request Was Mooted By The Passage Of New Gun Registration Requirements.

Similarly and alternatively, the Court should refuse plaintiffs' invitation to determine the constitutionality of the pre-*Palmer* registration scheme because that request is moot. "[A] case is moot when the issues presented are no longer live[.]" *Gordon v. Holder*, 85 F.Supp.3d 78, __ (D.D.C. 2015), *appeal filed* (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). *See also Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (holding that courts should refrain from deciding cases if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."). In significant part, the Complaint seeks an order declaring that "the District's registration scheme as it existed before the passage of the First Emergency Legislation [*i.e.* pre-*Palmer*] was unconstitutional." Complaint at 24, para. B. However, the pre-*Palmer* firearm registration scheme has already been judged, *see Palmer*, 59 F.Supp.3d at 183–84; it was substantially amended to obviate the asserted constitutional infirmities, D.C. Official Code § 7-2501.01, *et seq*. There is also no reason to believe that the prior version of the firearm laws continue to have

any residual effect. *See Daskalea v. Wash. Humane Soc'y*, 710 F.Supp.2d 32, 40 (D.D.C. 2010) (finding no live controversy where prior version of statute was "no longer in force" and there was no allegation that the prior version "continue[d] to have any residual effect"). Thus, plaintiffs' request for broad declaratory relief under Claims 1 and 2 is not only moot, but also unlikely to become "live" ever again.

Furthermore, it is settled that a government's substantial amendment (or repeal) of a statute will end a challenge to it where, as here, plaintiffs seek declaratory and injunctive relief. *Northeastern Fl. Ch. of the Assoc. Gen'l Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993). *See also Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). Indeed, "[i]t is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending." *American Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) (citing *Dep't of Treasury v. Galioto*, 477 U.S. 556, 559–60 (1986)). Under these circumstances, plaintiffs' claims are saved from mootness only if they can present "evidence indicating that the challenged law likely will be reenacted." *Initiative & Referendum Inst. v. United States Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012) (quoting *Nat'l Black Police*, 108 F.3d at 349). Again, there is no such evidence and no reasonable expectation that the alleged violation will recur given the enactment of the District's current concealed carry law. And, "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Id*.

In short, the amendment of the District's law "completely and irrevocably eradicated the effects of the alleged violation" asserted in Claims 1 and 2, hence "declaratory and injunctive relief would no longer be appropriate." *Nat'l Black Police*, 108 F.3d at 350. Because the alleged

violations are unlikely to recur, there is no need *now* to rule on plaintiffs' claims regarding the prior version of the gun laws. *See Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006) ("the Supreme Court has occasionally addressed challenges to laws no longer in force, but it has done so only when the statute or ordinance in question has been replaced by a substantially similar enactment, or where the governing body expressed an intent to re-enact the allegedly defective law. Neither condition exists here . . . .") (citations omitted).

Moreover, suits seeking declaratory relief must present a "live controversy" justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). "An actual, justiciable controversy must exist not just at the moment that the suit is initiated, but also at the time that the party's entitlement to the requested relief is decided." *Bolger v. District of Columbia*, 510 F.Supp.2d 86, 92 (D.D.C. 2007) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). *See also id.* ("[A] past injury, without more, cannot form the basis for either injunctive or declaratory relief.") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) and *Green v. Mansour*, 474 U.S. 64, 74 (1985) (rejecting view that "declaratory judgments expressly adjudicating the question of past violations are routinely available")). As explained, plaintiffs seek a declaration that District law prior to October 9, 2014, violated the Second Amendment. But to obtain declaratory relief "for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). This plaintiffs cannot do. There is no continuing harm stemming from the alleged violation of plaintiffs' rights to bear arms, travel, and equal protection, and there is no immediate threat of repeated injury in the future: No plaintiff has alleged an intent to carry a concealed weapon in the District without a license, or a threat of arrest by the District if he or she does so. Plaintiffs seeking a declaratory judgment "must allege

a likelihood of future violations of their rights by [the defendant], not simply future *effects* from past violations." *Fair Employment Council of Greater Wash., Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (emphasis in original). Plaintiffs make no allegations that they face a real and imminent threat of being similarly injured again in the future. *See In re Iraq & Afghanistan Detainees Litigation*, 479 F.Supp.2d 85, 118 (D.D.C. 2007) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105–13 (1983)).

To the same end, there is no likelihood of future violations of the rights asserted in Claims 1 and 2 because plaintiffs have never had or applied for the licenses required by the new law. The Court should therefore reject their demand for declaratory relief. *See also Vanover v. Hantman*, 77 F.Supp.2d 91, 100 (D.D.C. 1999) ("[A] declaratory judgment is appropriate to declare the rights between the parties only where there is 'a very significant possibility of future harm; it is insufficient . . . to demonstrate only a past injury.'") (quoting *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). Here there is no significant possibility of future harm.

In light of the foregoing, there are numerous reasons why the Court lacks Article III jurisdiction over plaintiffs' request for broad declaratory relief. Consequently, that portion of the Complaint should be dismissed pursuant to Rule 12(b)(1). Additionally, given this result, it would be inappropriate for the Court to certify a class seeking the broad declaratory relief at issue in Claims 1 and 2. *See R.I.L-R v. Johnson*, ___ F.Supp.3d ____, 2015 WL 737117 (D.D.C. Feb. 20, 2015) ("[Class] Certification is ordinarily appropriate only if the named plaintiff has a live controversy at the time of certification.") (citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)). *See also, e.g., Kremens v. Bartley*, 431 U.S. 119, 128–29 (1977) ("there must be a live case or controversy before this Court, and we apply the law as it is now, not as it stood below. *Fusari v.*

*Steinberg*, 419 U.S. 379 (1975). Thus the enactment of the new statute clearly moots the claims of the named appellees[.]") (citation omitted)).

C.  Alternatively, The Court Should Decline To Issue Class-Wide Declaratory Relief Under Claims 1 And 2 As Permitted By The Declaratory Judgment Act Because Issuing Such Relief Could Have No Practical Effect.

Even if the Court concludes that it has jurisdiction over Claims 1 and 2, in whole or in part, it should exercise its discretion under 28 U.S.C. § 2201(a) and decline to issue broad declaratory relief. As stated, in Claims 1 and 2, plaintiffs seek a declaratory judgment that the District's laws prior to *Palmer* violated the right to bear arms, to travel, and to equal protection. *See* Complaint at 24, para. B. The Declaratory Judgment Act states that a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (emphasis added). The use of the word "may" makes such relief *permissive*, not mandatory: "[E]ven when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine 'whether and when to entertain an action.'" *Morgan Drexen, Inc. v. Consumer Financial Protection Bureau*, 979 F.Supp.2d 104, 116 (D.D.C. 2013) (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 282 (1995)).

Indeed, "[t]he fact that a court can enter a declaratory judgment does not mean that it should." *Hewitt v. Helms*, 482 U.S. 755, 762 (1987). "[A] declaratory judgment should be declined when it would serve only as a statement of law without any practical enforcement effect." *In re Iraq*, 479 F.Supp.2d at 118 (citing *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.*, 24 F.3d 427, 431 (2d Cir. 1994)). Stated differently, declaratory relief should be denied where "judicial pronouncement will [not] affect the defendant's behavior 'towards the plaintiff[s]." *Theodore Roosevelt Conservation Partnership v. Salazar*, 744 F.Supp.2d 151, 164 (D.D.C. 2010) (quoting *Hewitt*, 482 U.S. at 761). That is precisely the situation here.

The Court should decline to issue the declaration sought under Claims 1 and 2 because such a statement would have no practical enforcement effect. The District has already enacted a comprehensive concealed-carry licensing regime, and the behavior for which plaintiffs were arrested remains illegal. No plaintiff has applied for a District license or indicated any intent to do so. Thus, even if the Court were to declare that plaintiffs' rights were violated, it would change nothing about either party's actions.

In determining whether to grant declaratory relief, courts may consider "equitable, prudential, and policy arguments." *Id.* (quoting *Swish Mktg., Inc. v. FTC*, 669 F.Supp.2d 72, 76 (D.D.C. 2009) (quoting *MedImmune, Inc.*, 549 U.S. at 136). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). There is no such "immediacy" and "reality" here, because plaintiffs have never sought to obtain the required license to carry a concealed weapon in the District. Whether or not they could have prior to *Palmer* is beside the point. Their current request for declaratory relief cannot serve any meaningful purpose. *Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980) (request for declaratory relief "is discretionary with the court, and [the] request should be denied where it will not terminate the controversy or serve a useful purpose").

Moreover, as noted, plaintiffs' Second Amendment claims are moot. None of the plaintiffs alleged that they tried to obtain a permit pre-*Palmer*, and the law has been substantially amended to establish a regime for granting concealed-carry licenses:

> Plaintiffs cannot evade the mootness of their claim by requesting a declaratory judgment. While the Declaratory Judgment Act, 28 U.S.C. § 2201, 'permits a

federal court to declare the rights of a party whether or not further relief is or could be sought,' 'a declaratory judgment may not be used to secure judicial determination of moot questions.'

*Long v. Bureau of Alcohol, Tobacco & Firearms*, 964 F.Supp. 494, 497 (D.D.C. 1997) (quoting *Mansour*, 474 U.S. at 72 and *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994)).

Plaintiffs allege that the District's "policies generally refusing the registration of firearms by individuals who live outside" the District violate their rights to travel and equal protection. Complaint ¶ 133. As noted previously, plaintiffs copied these allegations whole cloth from *Palmer*. And, in responding to these contentions in that case, Judge Scullin held:

> [A]s things now stand, Plaintiff [ ], and all others who are not residents of the District, are treated exactly the same as residents of the District[.] Thus, to the extent that Plaintiff['s] right to travel and equal protection claims are not co-extensive with his Second Amendment claims, the Court finds that these claims are not ripe. [W]ith respect to [his] Second Amendment claim, the District of Columbia may not completely bar him, or any other qualified individual, from carrying a handgun in public for self-defense simply because they are not residents of the District.

*Palmer*, 59 F.Supp.3d at 184 & n.5.

The same is true here: If plaintiffs' right to travel and equal protection claims are not co-extensive with their Second Amendment claims, they are not ripe. Current District law treats plaintiffs—and every other non-resident—exactly the same as residents regarding the carrying of handguns in public; any suitable person, regardless of residency, may obtain a permit to carry a concealed handgun in public. D.C. Official Code §§ 22-4560(a), (b). There is no allegation in the Complaint that any plaintiff has applied for, much less been denied (and subsequently appealed), a concealed-carry license. In light of this, plaintiffs can make no valid case for a declaration of their right under either Claims 1 or 2, and that portion of the Complaint should be dismissed.

**II. Alternatively, All Three Claims Fail To State A Claim Upon Which Relief Can Be Granted And Dismissal Under Rule 12(b)(6) Is Appropriate.**

To state a claim under 42 U.S.C. § 1983 against the District, plaintiffs must plead facts sufficient to establish that (1) a right secured by the Constitution was (2) violated by a municipal policy or custom (3) resulting in the "ultimate injury" they allege. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). A failure to plead any of these elements is sufficient grounds to dismiss the Complaint pursuant to Rule 12(b)(6). *See Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C. 2012) ("[t]his pleading defect is fatal"). As the following demonstrates, Claims 1 and 2 fail on the third element (*i.e.* causation), while Claims 2 and 3 do not plead an actionable violation of any constitutional right. Additionally, the Complaint does not support plaintiffs' demand for an injunction sealing or expunging their arrest and prosecution records. Each of these defects warrants dismissal of a discrete portion of the Complaint.

A. <u>Claims 1 And 2 Fail To State A Claim In So Far As They Seek Damages For Injuries Flowing From Plaintiffs' Arrests And Prosecutions Because Those Injuries Are Not Causally-Related To Any Violation Of The Second Or Fifth Amendment.</u>

There is no dispute that the District's pre-*Palmer* gun laws were held unconstitutional. But, as explained, that alone does not subject the District to liability in this case. Similar to plaintiffs' burden to demonstrate Article III standing, to state a viable § 1983 claim plaintiffs must also establish that the District's gun laws "actually caused" the injuries for which they seek redress, namely, those allegedly flowing from their arrests and prosecutions. *City of Canton*, 489 U.S. at 391 (constitutional deficiency must have "actually caused" the "ultimate injury" to the claimant); Compl. ¶¶ 129, 134 ("Named Plaintiffs . . . suffered humiliation, emotional distress, physical harm, loss of earning, general damages, and legal expenses that resulted from being arrested and defending against prosecution under an unconstitutional ordinance"). They cannot

- 20 -

meet their burden. Again, the allegedly unconstitutional conduct plaintiffs identify—the enactment of a gun registration scheme that purportedly abridges the right to bear arms, to travel, and to equal protection—simply does not fit the redress they seek, compensation for their exposure to the District's criminal justice system. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (recognizing distinction between injuries caused by unreasonable search and seizure as opposed to those caused by subsequent criminal proceeding; permitting recovery for only the former). Stated differently, whatever relief plaintiffs might pursue for their inability to bear arms in the District does not extend to their post-arrest legal process because any injuries related to that process are too unrelated to the Second or Fifth Amendment protections on which the Complaint rests. *See Hector v. Watt*, 235 F.3d 154, 157 (3rd Cir. 2001) ("damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns"); *accord Carey v. Piphus*, 435 U.S. 247, 258–259 (1978) ("[i]n order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question").

The Fourth, Sixth, and Tenth Circuits have all recognized this critical distinction. In *Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002), for example, the Fourth Circuit reviewed a grant of summary judgment to the defendant City on a First Amendment (speech) and Fourteenth Amendment (Due Process) challenge to the City's parade ordinance. There, as here, the plaintiff was charged and indicted but not convicted for violating the City ordinance at issue. *Id.* at 451. And, as here, the ordinance's constitutionality was questionable; it was also repealed by the City's legislative body within weeks of the filing of the plaintiff's § 1983 complaint. *Id.* at 452. After finding "no merit" to the plaintiff's allegation of a First Amendment injury (a

"chilling" of his speech right), the Fourth Circuit quickly disposed of what remained of the plaintiff's case—his contention that he was entitled to recover for his prosecution under an unconstitutional law. *See id.* at 456–57. The *Reyes* Court held that the complaint did not state an actionable claim: The plaintiff could not prosecute a civil action under § 1983 against the City for his indictment, trial, and acquittal under a municipal ordinance simply because the ordinance was later held to be unconstitutional. *Id.* at 455 (stating question), 457 (holding). *Rolfes v. City of Oklahoma City*, 1991 U.S. App. LEXIS 15496 (10th Cir., July 17, 1991), and *Richardson v. City of South Euclid*, 904 F.2d 1050 (6th Cir. 1990), reach substantially the same conclusion on similar facts.

Given the persuasive holdings of the federal Circuits in *Reyes*, *Rolphes*, and *Richardson*, plaintiffs here should be foreclosed from recovery under 42 U.S.C. § 1983 for injuries related to their arrest and prosecution under the District's pre-*Palmer* gun laws. Those laws were valid when enforced, and the Constitution simply does not safeguard against erroneous enforcement of a presumptively valid municipal law. *See Reyes, supra*; *Thomas v. City of Talent*, 2006 U.S. Dist. LEXIS 54886 at *20 (D. Or. Aug. 7, 2006) (Following *Reyes and Richardson*, explaining, "[t]he Constitution does not require a local government body to reimburse a defendant for his legal expenses, or his emotion[al] distress, merely because that person ultimately is acquitted of the charges"). Indeed, as the Tenth Circuit reminded in *Rolphes*: "[T]here are some mistakes legislators make and some impositions upon citizens that require expenditures of their time and money to resolve which are not compensable under § 1983. This is one of those situations." 1991 U.S. App. LEXIS 14596 at *3. The same reasoning applies here. Claims 1 and 2 should be dismissed to the extent they seek damages for injuries flowing from plaintiffs' arrests and prosecutions. *Accord Texas v. Lesage*, 528 U.S. 18, 20–21 (1999) (school admissions case; no §

1983 liability where state would have taken the *same action* in the absence of the constitutionally impermissible scheme); *Heil v. Santoro*, 147 F.3d 103 (2d Cir. 1998) (Plaintiff engaging in protected speech was not the cause of his discipline since he would have been disciplined for insubordination even in the absence of speech activities).

B.   Claims 2 And 3 Fail To State A Predicate Constitutional Violation.

As mentioned, a predicate constitutional violation is an indispensable element of a claim under 42 U.S.C. § 1983. Claim 2 of the Complaint alleges violations of equal protection and the right to travel, and Claim 3 generally invokes due process principles. *See* Compl. ¶¶ 132–35, 136–44. As the following demonstrates, the Complaint fails in substance to state a claim for relief under any of these theories, and dismissal of Claims 2 and 3 is warranted.

1.   Claim 2 Fails To State An Equal Protection Claim Because Plaintiffs Have Not Pled Facts Establishing That There Is No Rational Basis For The Differential Treatment They Purport To Challenge.

"The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." *Metropolitan Wash. Ch., Assoc. Builders & Contractors, Inc. v. District of Columbia*, 57 F.Supp.3d 1, 28 (D.D.C. 2014) ("*MWC*") (quoting *Jones v. Helms*, 452 U.S. 412, 423–24 (1981)). When a challenged classification impinges on a fundamental right or targets a suspect class, it is subject to strict scrutiny. *Id.* (citing *Hunt v. Comartie*, 526 U.S. 541, 546 (1999) and *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005)). While the Supreme Court has described the "right to keep and bear arms" as "fundamental," *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the particular right asserted here—the right to carry an operable firearm in public—has *not* been determined to be fundamental, in a constitutional sense, by either the Supreme Court or the D.C.

Circuit. Consequently, notwithstanding that the Concealed Carry Law treats District residents and non-residents *identically*, D.C. Official Code §§ 22-4506(a), (b), to the extent there is any difference in treatment, the classification need only bear a "rational relation to some legitimate end." *Romer v. United States*, 517 U.S. 620, 631 (1996). *See also Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012) ("A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (internal quotation marks and citations omitted)).

"Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 479 (quoting *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994)). "Rational basis review is thus 'highly deferential,' *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000), and it 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,' *Heller v. Doe*, 509 U.S. 312, 319 (1993)." *MWC*, 57 F.Supp.3d at 28. Plaintiffs here simply cannot overcome this presumption of rationality.

Indeed, it is certainly rational—and eminently sensible—for the District to require certain basic information and training requirements for nonresidents who want to carry concealed weapons in public areas of the District. Likewise, it is not irrational to refuse to accept proffered non-District concealed-carry licenses on faith, without regard to the District's substantive requirements designed to protect public safety. Relatedly, plaintiffs have not even alleged any facts that, if true, would show to whom they are "similarly situated." They use that phrase only once—in the Complaint's caption. Simply put, "nonresidents" are not a suspect class. *Baldwin v.*

*Fish & Game Comm'n of Mont.*, 436 U.S. 371, 389–90 (1978); *cf. Banner v. United States*, 428 F.3d 303, 309 (D.C. Cir. 2005) (applying rational-basis scrutiny and rejecting equal protection challenge to federal law prohibiting the District from imposing a "commuter tax" on non-residents).

And plaintiffs' "unsupported and conclusory allegations are not enough" to make out an equal protection claim, "in the absence of actual evidence of disparate treatment . . . ." *Texas Border Coal. v. Napolitano*, 614 F.Supp.2d 54, 65–66 (D.D.C. 2009) (citing *Bois v. Marsh*, 801 F.2d 462, 466 n.5 (D.C. Cir. 1986) (noting in equal protection context that "vague allegations, especially when unsupported by an affidavit or other evidence . . . are insufficient to state a claim")). In short, it is well established that equal protection "does not require all persons everywhere be treated alike … [but rather] that the government not treat *similarly situated* individuals differently without a rational basis." *Noble v. U.S. Parol Comm'n*, 194 F.3d 152, 154 (D.C. Cir. 1999) (emphasis in original) (citing *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)). Under this standard, the Complaint fails to allege a viable equal protection challenge, and Claim 2 should be dismissed in this regard.

2. Claim 2 Fails To State A Claim For A Violation Of The Right To Travel Because Plaintiffs Have Not Pled Facts Suggesting That The District's Gun Laws Burden That Right.

A law implicates the right to travel in three situations—when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that penalizes the exercise of the right. *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (*plurality*); *Pollack v. Duff*, ___ F.3d ___, 2015 WL 4079788, *9 (D.C. Cir. July 7, 2015); *Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994). On its face, the District's Concealed Carry Law does none of these things. Notwithstanding that District law treats residents and non-residents exactly the same in this regard, *see supra*, travel through or into the District is not

deterred in a meaningful sense: any citizen legally possessing a handgun may lawfully transport that weapon through the District under federal law. *See* Firearms Owners' Protection Act, Pub. L. 99-360, § 1(a), 100 Stat. 766 (July 8, 1986), *codified at* 18 U.S.C. § 926A.

Nor is the Concealed Carry Law *designed* to impede travel. Its purposes are the obvious and important ones of protecting public safety and providing minimal information to law enforcement. The potential inconveniences visited on plaintiffs by the District law at issue clearly do not violate the right to travel. "[S]omething more than a negligible or minimal impact on the right to travel is required . . . ." *Kansas*, 16 F.3d at 442 (quoting *Soto-Lopez*, 476 U.S. at 921 (O'Connor, J., dissenting)).

Moreover, plaintiffs do not explicitly set forth any particular "burdens" that District law imposes on their right to travel. Indeed, they do not even allege that the District's requirement of a license to carry a gun in public impacts their "right" to self-defense. If plaintiffs cannot articulate any specific burden on their right to travel, the District's law, logically, does not have an impact on their rights. In *Pollack*, the Court held that "[a] law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate." 2015 WL 4079788 at *1 (citations omitted). Here, plaintiffs fail to allege (much less show) that the District's scheme makes interstate travel less attractive and thus fail to state a claim in this regard. As such, plaintiffs' right to travel challenge under Claim 2 should also be dismissed.

   3.  Claim 3 Fails To State A Procedural Due Process Claim Because District Law In Fact
       Provides Plaintiffs A Constitutionally Adequate Mechanism For Obtaining Return Of
       Their Guns.

Plaintiffs contend that the District seized guns, ammunition, and other property from them at the time of their arrests and has failed to return it or provide notice explaining how to get it back. Plaintiffs allege that the District did not give notice to them when it "no longer needed

the property for investigation or evidence" and "never gave the owners hearings at which the owners could challenge the District's right to retain" the property. Complaint ¶¶ 138–39. Plaintiffs contend that the District has a policy of holding such seized handguns and ammunition "for months and years or destroying it without giving the owners a retention seizure hearing before destroying the property." *Id*. at ¶ 141. Plaintiffs similarly contend that the District has a policy "to not send notice to owners of such property informing them that their property is no longer needed by the District and informing owners how to retrieve their property when the District no longer needs the property or plans to destroy or otherwise dispose of it." *Id*. at ¶ 142. Plaintiffs contend that such "policies" violate Due Process. Plaintiffs are incorrect.

Federal courts in this jurisdiction have determined that, with respect to seized guns and ammunition in particular, Superior Court Rule of Criminal Procedure 41(g) "provides the plaintiff with a constitutionally adequate mechanism for obtaining return of his seized property." *Baird v. Holton*, 806 F.Supp.2d 53, n.5 (D.D.C. 2011). *See also Leyland v. Edwards*, 797 F.Supp.2d 7, 10 (D.D.C. 2011) (Rule 41(g) "is a comprehensive scheme that provides a straightforward and adequate remedy—and one which avoids any constitutional deprivation.") (footnote omitted). Indeed, "the proper remedy for seeking the return of such property is to simply file a motion under Rule 41(g). A motion under Rule 41(g) can be filed with the Superior Court *after* the criminal case has ended." *Id*. at 10 & n.2 (emphasis added) (citing *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980)).[6] *See also District of Columbia v. Dunmore*, 749 A.2d 740, 742 (D.C. 2000) (when no forfeiture is being sought, and no trial has occurred, "[i]t is a simple enough matter for a judge to hold a hearing [on a motion for return of property], . . .

---

[6] *See Wilson*, 424 A.2d at 132 (judicial economy would be served by having the matter determined on motion before the criminal-case judge who is familiar with the circumstances of the seizure).

eliciting the facts just as would be done at trial.") (alterations in original) (quoting *Alleyne v. United States*, 455 A.2d 887, 889 (D.C. 1983)).

Brown v. District of Columbia ___ F.Supp.3d ___, 2015 WL 4467062, *5 (D.D.C. July 21, 2015), is not to the contrary. While that decision suggests that Rule 41(g) is only available in an ongoing criminal proceeding,[7] *Brown* is distinguishable for a number of reasons—it did not cite or distinguish either *Baird* or *Leyland*, and the property at issue there (vehicles and cash) was seized pursuant to the District's civil forfeiture statute, D.C. Official Code § 48-905.02. Here, in contrast, the property was seized pursuant to MPD's authority regarding "dangerous articles." D.C. Official Code § 22-4517. Thus, plaintiffs' repeated claim that their guns "were not subject to forfeiture under the District's civil forfeiture scheme because they were classified as contraband[,]" Complaint ¶ 101, is irrelevant. *See Leyland*, 797 F.Supp.2d at 11 ("[A]n unregistered firearm is contraband [and] an individual has no right to its return.") (citing cases).

Additionally, all the plaintiffs had, by definition and their own allegations, proper "notice" here. *See Leyland*, 797 F.Supp.2d at n.5 ("[P]laintiff had notice of the seizure and the reasons for the seizure—in fact, Plaintiff was prosecuted in a criminal proceeding for possessing the unregistered firearms. [R]ule 41(g) outlines the procedure by which seized items may be returned.").[8] And, it has long been the case that "[w]here adequate post-deprivation state remedies are available, no cognizable constitutional claim for procedural due process can be

---

[7] That conclusion—that Superior Court Rule of Criminal Procedure 41(g) is unavailable after the conclusion of a criminal proceeding—is specifically inapposite in the instant matter, because the case *Brown* cited for that proposition was discussing the federal rule. *Id.* (citing *United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990)). Moreover, *Price*, like *Brown*, involved property seized pursuant to a civil forfeiture statute, unlike here. Finally, while Fed. R. Crim. P. 54(b)(5) states that Rule 41 does not apply to civil forfeiture proceedings, "[t]here is no corresponding Superior Court rule." *Dunmore*, 749 A.2d at n.4.

[8] To the extent plaintiffs complain that some of them were unsuccessful in obtaining the property from MPD, *see Baird*, 806 F.Supp.2d at 59 ("[I]f and when [the plaintiff] seeks the return of his property, the proper recourse is for him to move the court under Rule 41(g)—not demand the property's return from the Park Police property office.") (quoting *Leyland*, 797 F.Supp.2d at 11).

stated." *Dukore v. District of Columbia*, 970 F.Supp.2d 23, 32 (D.D.C. 2013) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Because an adequate post-deprivation remedy exists here—in the form of a motion under Rule 41(g)—plaintiffs cannot state a procedural due process claim. *Id.* (citing *Dickson v. Mattera*, 38 Fed. App'x 21, 22 (D.C. Cir. 2002)).

Similarly, "[t]he Fifth Amendment does not require the defendants to notify the plaintiffs of these procedures." *Id.* (citing *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999) (Due Process does not require "individualized notice of state-law remedies which . . . are established by published, generally available state statutes"). *See also Lightfoot v. District of Columbia*, 2007 WL 148777, *8 (D.D.C. Jan. 16, 2007) (summarizing *City of West Covina*: owners of seized property were entitled to individualized notice of police seizure, but not to individualized notice of procedures for return of property, which were "established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him.") (quoting *City of West Covina*, 525 U.S. at 240–41 (citing *Atkins v. Parker*, 472 U.S. 115, 131 (1985)). "The City need not take other steps to inform him of his options." *City of West Covina*, 525 U.S. at 241.[9] In short, notice to plaintiffs was sufficient, and the process available to them is constitutionally adequate. Accordingly, Claim 3 fails to state a due process claim and should be dismissed.

C.   Claims 1 And 2 Fail To State A Claim In So Far As They Seek An Injunction Sealing Or Expunging Plaintiffs' Arrest/Prosecution Records Because Plaintiffs Cannot Meet The High Burden To Demonstrate Entitlement To Such Relief.

In connection with their constitutional challenges, plaintiffs demand the sealing of their criminal and prosecutorial records, and a declaration that their arrests were "legal nullities."

---

[9] The *City of West Covina* decision was unanimous, and included a comprehensive index of "Federal and State Laws Governing Execution of Search Warrants and Procedures for Return of Seized Property." 525 U.S. at 244. The entry for the District of Columbia reads: "D.C. Super. Ct. Rule Crim. Proc. 41 (1998)."

Complaint at 24. But to obtain the sealing of criminal records in local courts for an arrest that was not ultimately prosecuted (as in the case of each named plaintiff here), a party must show by "clear and convincing evidence" either that the crime for which she was arrested did not occur, or that she did not commit it. *Sepulveda-Hambor v. District of Columbia*, 885 A.2d 303, 307 (D.C. 2005) (citing *District of Columbia v. Hudson*, 404 A.2d 175, 177–82 (D.C. 1979) (*en banc*)). On their own allegations, plaintiffs cannot meet this burden.

Each of the named plaintiffs has conceded carrying a firearm in public in the District, without a District license. *See* Complaint ¶¶ 49, 73, 113. Probable cause thus existed for their arrests. The possession of an operable firearm outside a person's home or business was, before *Palmer*, *prima facie* evidence of a crime; hence plaintiffs' arrests were valid. *See, e.g., Bsharah v. United States*, 646 A.2d 993, 996–97 (D.C. 1994) ("[A] police officer who sees a non-uniformed person carrying a pistol in a public place could reasonably conclude that that person is violating the law and would therefore have probable cause to arrest the person for carrying a pistol without a license."). This was the law for decades, and remains accurate. As a result, plaintiffs cannot qualify for the injunctive relief they seek.

Moreover, to seal a criminal record *after* a case has proceeded to trial, a movant must meet an even *higher* standard. Not only must the movant show, by clear and convincing evidence that the arrest was based on mistaken identity or that no crime had been committed, as in *Hudson*, the movant must *also* show "the existence of some other circumstance that would make it manifestly unjust to decline to seal the arrest record in question." *Sepulveda-Hambor*, 885 A.2d at 307 (quoting *Rezvan v. District of Columbia*, 582 A.2d 937, 938 (D.C. 1990)). There is no indication in the pleadings that any member of the putative class—whether convicted after trial or not—could make such a showing. To the extent any particular request for such relief

might succeed, it could only do so on an individualized showing, making class-wide relief inappropriate.

## CONCLUSION

For the reasons stated above, the District respectfully requests that the Court grant the Motion to Dismiss Plaintiffs' Amended Complaint, and the Amended Complaint be dismissed, with prejudice.


DATE: October 2, 2015                Respectfully submitted,

                                     KARL A. RACINE
                                     Attorney General for the District of Columbia

                                     ELIZABETH SARAH GERE
                                     Acting Deputy Attorney General
                                     Public Interest Division

                                     _____/s/ Toni Michelle Jackson_____
                                     TONI MICHELLE JACKSON
                                     Chief, Equity Section

                                     _____/s/ Andrew J. Saindon_____
                                     ANDREW J. SAINDON, D.C. Bar No. 456987
                                     Senior Assistant Attorney General
                                     441 Fourth Street, N.W., Sixth Floor South
                                     Washington, D.C. 20001
                                     Telephone: (202) 724-6643
                                     Facsimile: (202) 730-1470
                                     E-mail: andy.saindon@dc.gov

                                     _____/s/ Matthew R. Blecher_____
                                     MATTHEW R. BLECHER, D.C. Bar No. 1012957
                                     Assistant Attorney General
                                     441 Fourth Street, N.W., Suite 600S
                                     Washington, D.C. 20001
                                     Phone: (202) 442-9774
                                     Fax:  (202) 730-0586
                                     Email: matthew.blecher@dc.gov