UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.** On behalf of themselves and all others similarly situated, Plaintiffs,    v. **GOVERNMENT OF THE DISTRICT OF COLUMBIA** Defendant. | Civil Action No.: **15-737 (RCL)** |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**PLAINTIFFS' FOR MOTION FOR CLASS ACTION TREATMENT**

## I.  INTRODUCTION

Maggie Smith, Gerard Cassagnol, and Frederick Rouse (sometimes the "Named Plaintiffs"),

were injured during the class period because the District, by enforcing its unconstitutional gun

registration laws, caused them and the other members of the Classes to be arrested, prosecuted, or

arrested and prosecuted in the District of Columbia Superior Court for violations of those

unconstitutional gun laws in violation of their Second and Fifth Amendment rights. The class period

for these two claims runs from three years before the date of the filing of the original complaint until

the day after the Mayor signed (10/9/2014) the First Emergency Legislation which enacted certain

changes to the District's gun registration scheme (the "2d Amendment Class Period"). These two

classes cover every person who was arrested for or was being subjected to a prosecution under the

District's pre-Palmer gun registration regime at any time during the 2d Amendment Class Period. The

Non-resident Class is limited to persons who were non-residents of the District when arrested.

Moreover, Maggie Smith, Gerard Cassagnol, and Frederick Rouse and the other members of the Right to Return Class were injured and continue to be injured during the class period up through the present because the District seized their handguns and ammunition and either destroyed them or refuses to give them back without notice and a hearing in which the District would be compelled to establish their right to retain the guns and ammunition or to return the guns and ammunition to their owners. The class period for this claim runs from three years before the date of the filing of the original complaint until the day the District stops its practice of seizing and retaining guns from persons or until the claim is settled (the "Right to Return Class Period"). The class covers every person from whom the District seized and retained guns or from whom the District seized guns and did not offer a procedure whereby the owner could appoint an agent for sale.

A typical case is Ms. Smith. Ms. Smith is a registered nurse. At the time of her arrest she was licensed to carry a pistol in her then home state of North Carolina. She had no prior arrests. She brought along her pistol with her when she traveled to the District believing that the District, the nation's capital, maintained a Constitutional gun registration system.

She was stopped by the MPD while driving in the District. As she had been taught in her gun ownership class at home she immediately informed the officer that she was carrying a pistol licensed in her home state when he asked.

The arresting officer charged her with CPWL, a felony, and Ms. Smith was subjected to prosecution for various felony and misdemeanor gun related offenses, first by the United States Attorney's Office for the District of Columbia ("USAO" or "US Attorney's Office"), and then by the Attorney General's Office for the District of Columbia ("OAG"), for almost a year (even after the Palmer decision, discussed below) before the District finally dismissed her charges. Finally, the District has never returned the handgun and ammunition it seized from her in accordance of its policy

2

and practice of virtually never returning guns and ammunition from people in connection with their arrests under the District's gun laws.

A.    BACKGROUND OF DISTRICT'S GUN LAWS

For years the District had virtually a complete ban on ownership of guns by private citizens.

There are two prosecuting agencies which prosecute violations of the DC Code (including gun cases) in the District. D.C. Code § 23-101(a)-(c); In re Prosecution of Crawley, 978 A.2d 608 (D.C. 2009). Generally speaking, the District prosecutes misdemeanors (defined as offenses punishable by not more than a year in jail) and the United States Attorney's Office prosecutes felonies (everything else), D.C. Code § 23-101(c), and misdemeanors joined with felonies. D.C. Code § 23-101(d). Section 23-101 is part of an "Act of Congress applicable exclusively to the District of Columbia," and thus is "considered to be a statute of the District of Columbia" for purposes of § 1983. 42 USCA § 1983.

Generally, under D.C. Code § 23-101, the District of Columbia OAG has jurisdiction over two misdemeanor gun charges — possessing unregistered firearms, D.C. Code § 7-2502.01 ("UF"), and possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA"), because the confinement penalties for these two offenses are not more than a year in jail. D.C. Code § 7-2507.06. See D.C. Code § 23-101. Generally, the United States Attorney's Office prosecutes violations of D.C. Code § 22-4504(a) ("CPWL" or "CP"), a felony. But, the US Attorney's Office also has jurisdiction over and usually prosecutes UF and UA charges when they are joined with felony charges such as CPWL. D.C. Code § 23-101(d).

In any event, the US Attorney's Office prosecutes only those gun cases in Superior Court referred to it for prosecution by the District or another referring agency. When the District refers gun

charges to the US Attorney's Office its MPD officers and technicians (e.g., evidence technicians, ballistics technicians) and Property Clerk support the prosecution. *See e.g.*, Ps. Ex. # 8 (Smith arrest / prosecution documents); Ps. Ex. # 6 (Delontay Davis' PD 81).

The government of the District of Columbia has virtually never offered any type of diversion program to otherwise law-abiding residents or nonresidents who happen to get arrested for possessing an unregistered firearm or ammunition in the District. The District virtually always referred gun cases to the prosecuting agency for prosecution.

Both the District and the US Attorney's Office were committed to the same policy of prosecuting virtually every arrest for violations of the District's gun registration scheme.

### 1.      District of Columbia v. Heller and the District's response.

In 2008 the United States Supreme Court issued its opinion in District of Columbia v. Heller, 554 U.S. 570, 635 (2008) which declared the District's gun registration scheme unconstitutional with respect to the registration of guns by law abiding citizens for use in the home for personal protection. Although the holding in Heller was confined to registration of guns for use in the home for personal protection the rationale of Heller clearly put the District on notice that its registration scheme prohibiting carrying hand guns outside the home was also unconstitutional.

Nevertheless, the District continued to arrest and prosecute citizens for carrying unregistered pistols and unregistered ammunition outside the home for lawful purposes.

Moreover, the District also continued to seize and forfeit cars on the basis of its unconstitutional gun registration scheme pursuant to its civil forfeiture scheme. D.C. Code § 7-2507.06a (cars used to transport guns or to facilitate gun charges subject to forfeiture); D.C. Code §

48-905.02(d)(3)(A). *See e.g.*, <u>Simms v. District of Columbia</u>, 872 F. Supp. 2d 90, 92 (D.D.C. 2012)(District seized for civil forfeiture car of person arrested, prosecuted, and acquitted of CPWL); PD 81 evidencing seizure of car belonging to Delontay Davis under D.C. Code § 7-2507.06a. Ps. Ex. # 6.

The District also continued to seize and to retain or destroy handguns and ammunition belonging to people arrested for violations of its gun registration scheme and other gun laws. D.C. Code § 22–4517(b). Ps. Ex. # 3, Mr. Cassagnol affidavit; Ps. Ex. # 1, affidavit regarding Property Clerk.

### 2.    <u>Palmer v. District of Columbia</u> and the District's response.

On July 24, 2014, the Honorable Frederick James Scullin, Jr., senior United States District Court Judge for the United States District Court for the Northern District of New York, sitting by designation in this Court, issued a decision in <u>Palmer v. District of Columbia</u>, No. 1:09-CV-1482 (D.D.C. 2014) [Document # 51] declaring the District of Columbia's Carrying a Pistol statute facially unconstitutional because the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home was unconstitutional under any level of scrutiny. <u>Id</u>. at 16.

Ultimately, the District decided not to appeal the <u>Palmer</u> decision.

The US Attorney's Office, apparently recognizing that the <u>Palmer</u> decision had invalidated the District's gun registration scheme with respect to carrying hand guns outside the home or place of business, dismissed hundreds of cases against people charged with felony carrying a pistol (CPWL/CP) then pending in DC Superior Court and stopped prosecuting persons under the District's gun registration laws. The US Attorney's Office dismissed Ms. Smith's and Mr. Cassagnol's cases. Ps. Ex. # 2 (Cassagnol arrest / prosecution documents); Ps. Ex. # 8 (Smith arrest / prosecution

documents).

In contrast, the OAG chose to double down and re-filed misdemeanor UF and UA charges against virtually every person whose felony CPWL charges had been dismissed by the US Attorney's Office. The OAG chose to refile Ms. Smith's and Mr. Cassagnol's prosecutions under UF and UA. Ps. Ex. # 2 (Cassagnol arrest / prosecution documents); Ps. Ex. # 8 (Smith arrest / prosecution documents). The OAG also filed charges against Mr. Rouse after the Palmer decision came down. Ps. Ex. # 4, pgs. 2-3.

Moreover, the District continued to seize and to retain or to destroy handguns and ammunition and even to seize vehicles.

### 3.  First Emergency Legislation.

Finally, in response to Palmer, on September 23, 2014, the District of Columbia City Council passed and the Mayor signed (on 10/9/2014) the First Emergency Legislation which enacted certain changes to the District's gun registration regime, which the District contends brings its gun registration scheme within the scope of reasonable registration allowed by Heller and Palmer.

## II.  LAW GOVERNING CLASS ACTION MOTIONS

A class may be certified if, "after a rigorous analysis," the District Court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met and that the class falls within one or more of the categories of Rule 23(b). Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013); McKinney v. United States Postal Serv., 2013 U.S. Dist. LEXIS 6246, *16-*17 (D.D.C. Jan. 16, 2013). But, the class certification analysis is not a merits inquiry. Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 2013 U.S. LEXIS 1862, 21 (U.S. 2013). "Merits questions may be considered to the

extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" DL v. District of Columbia, 713 F.3d 120, 125-26 (D.C. Cir. 2013) (quoting Amgen Inc., 133 S. Ct. at 1194-95).

The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one of the categories of Rule 23(b)." Franklin v. Barry, 909 F. Supp. 21, 30 (D.D.C. 1995).

## III.   EXISTENCE OF ASCERTAINABLE CLASSES

Although not expressly required by the text of Rule 23, courts generally hold that the party proposing class action treatment also bears the burden of showing the existence of an "ascertainable" class. See e.g., Barnes, 242 F.R.D. at 120.

The definitions of the proposed classes set forth in plaintiffs' Amended Complaint easily satisfy this requirement because plaintiffs' proposed class definitions sets forth general parameters that limit the scope of the class to such a degree that it is administratively feasible for the Court to determine whether a particular individual is a member of the class. Bynum v. District of Columbia ("Bynum I"), 214 F.R.D. 27, 32 (D.D.C. 2003); Thorpe v. D.C., 303 F.R.D. 120, 139 (D.D.C. 2014) citing Newberg on Class Actions § 3:3 (critical question is whether class membership "can be ascertained" with reference to "objective criteria").

The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. Thorpe, 303 F.R.D. at 139. It is not a particularly stringent test, but plaintiffs must at least be able to establish that the **general outlines** of the membership of the class are determinable at the outset of the litigation. Id. In other words, the class must be sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member. Id.

7

Plaintiffs' proposed classes as:

<u>Second Amendment Class</u>: Each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for a violation of D.C. Code § 7-2502.01 ("UF"), D.C. Code § 7-2506.01 ("UA"), or D.C. Code § 22-4504(a) ("CPWL" or "CP") prior to amendment of the District's gun registration regime by the First Emergency Legislation; (iii) for carrying a pistol outside their home or place of business.

<u>Nonresident Class</u>: Each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for violation of any of the District's gun registration laws, including but not limited to; (iii) while carrying a pistol outside their home or place of business; and (iv) while a nonresident of the District of Columbia at the time of the arrest or prosecution.

<u>Right to Return Class</u>: Each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is over or the District changes its policy and practice of confiscating and retaining handguns; (ii) was the owner of handguns or ammunition that was seized by the District or its agents; (iii) which the District still retains or has destroyed or otherwise disposed of without giving the owner notice and a hearing at which the owner could challenge the retention or destruction or appoint an agent to receive and sell the gun or the District could establish its right to destroy or retain the property.

Plaintiffs have sufficiently outlined the boundaries of the class because "by looking at the class

definition, counsel and putative class members can easily ascertain whether they are members of the class." <u>Bynum I</u>, 214 F.R.D. at 27, and so that each member can receive notice of their opt-out rights, and, later, to monetary relief. <u>Thorpe v. D.C.</u>, 303 F.R.D. at 139.

Anyone who has been arrested or prosecuted under the District of Columbia gun statutes in force during the Class Period can easily determine, simply by reading the definition, whether he or she was a member of the proposed 2d Amendment Class. *See* <u>Bynum I</u>, 214 F.R.D. at 27. Similarly, anyone who meets those criteria and who was not a resident of the District at the time of their arrests falls into the Nonresident Class. <u>Id</u>. Finally, anyone whose gun was seized and not returned or turned over to an agent for sale falls into the Right to Return Class.

There are no terms in the definitions that require further clarification, and nothing in the definitions would require the Court to hold individualized hearings to decide whether a particular individual fell within the scope of any of the definitions. <u>Id</u>. Moreover, the policies and practices that form the common questions of the class definitions are universally applied so that the class definition excludes uninjured persons. *See e.g.* <u>In re Rail Freight Fuel Surcharge Antitrust Litig.</u>, 725 F.3d at 253.

Plaintiffs are mindful that persons covered in some or all of the categories of persons established by D.C. Code § 22-4503(a) are excludable from the class definitions for the 2d Amendment Class and the Non-resident Class on a categorical basis. But, the burden is on the District to establish which categories of persons should be excluded[1]. Moreover, since such persons

---

[1] Plaintiffs' counsel does not have an obligation under Rule 23 to anticipate affirmative defenses which may be raised to a class claim. <u>Dellums v. Powell</u>, 566 F.2d 167, 189 n.57 (1977). If an affirmative defense is not raised by a defendant, it is not tried and no useful purpose would be served by burdening plaintiff with an obligation of putting the class suit in a posture to try claims that a defendant would never assert. <u>Id</u>.

would be excluded on a categorical basis the class definition could be easily amended to exclude them without destroying "ascertainability."

As explained in the motion for class action treatment plaintiffs proposed class definition for the Right to Return Class changes the class definition as pled in the First Amended Complaint, ¶ 148, by extending the duration of the Right to Return Class Period from 10/14/2014 until the District changes its policy or the case is over and by expanding the scope of persons covered to include all persons from whom the District confiscated and retained guns and ammunition. Plaintiffs address the legal basis for these amendments below in the discussion of common questions and in detail in plaintiffs' opposition to defendant's motion to dismiss [Document # 23] to be filed 11/19/2015.

## IV.   RULE 23(A) PREREQUISITES TO A CLASS CERTIFICATION

Rule 23 provides for treatment of an action as a class action when the plaintiff can show that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one of the categories of Rule 23(b). Hardy v. D.C., 283 F.R.D. 20, 25-26 (D.D.C. 2012). The requirements of Rule 23(b)(2) and Rule 23(b)(3) must be met separately. The requirements of Rule 23(a) are commonality, numerosity, typicality of claims, and adequacy of representation. Hardy, 283 F.R.D. at 25-26.

## V.   APPLICATION OF LAW TO THE CLASSES

### A.   THE CLASSES: NAMED PLAINTIFFS SATISFY RULE 23(A) PREREQUISITES TO A CLASS CERTIFICATION

Each of the classes satisfies these four elements.

#### 1.   The Proposed Classes are Sufficiently Numerous.

Rule 23(a)(1) provides that a class action may be maintained only if "[t]he class is so numerous that joinder of all members is impracticable." Plaintiffs easily meet this requirement for all three classes.

The party moving to certify the class need not supply the exact numbers of the class. Bynum I, 214 F.R.D. at 32-33. Moreover, the numerosity requirement "does [not] require that the exact number of class members or their identities be alleged." Johns v. DeLeonardis, 145 F.R.D. 480 (N.D. Ill. 1992) (numerosity requirement satisfied and class certified where approximately twenty-five women were subjected to illegal strip search by Chicago police officers in a police raid). To satisfy the numerosity requirement, "Plaintiffs need only show that the number is sufficiently large such that it would be extremely difficult or inconvenient to join all the members of the class." Franklin, 909 F. Supp. at 30, (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Numerosity is presumed at forty class members. McKinney v. United States Postal Serv., 2013 U.S. Dist. LEXIS 6246, *17 (D.D.C. Jan. 16, 2013); Neal v. Moore, 1994 U.S. Dist. LEXIS 21339, *24 (D.D.C. 1994).

Plaintiffs submit herewith a spreadsheet showing that at least 40 people were arrested during the Class Period on either CP or CPWL, UF, or UA (or all three), and at least one of the counts on which they were arrested and charged was dismissed. Ps. Ex. # 7. A person arrested on more than one charge of CPWL, UF, or, UA who receives a favorable disposition on at least one of the charges (e.g., person charged with CPWL, UF, and UA who pled to UF or UA) states a claim under the 2d Amendment or Non-resident Claim. See e.g., Posr v. Doherty, 944 F.2d 91, 100-101 (2d Cir. 1991)(where defendant was charged and convicted of one offense and charged but acquitted of a second offense, and he sued later for malicious prosecution, the unfavorable termination on the one charge charge does not preclude a finding of liability for maliciously prosecuting the other charge).

11

Plaintiffs address this issue in detail below in the discussion of plaintiffs' claims and in plaintiffs' opposition to defendant's motion to dismiss [Document # 23].

The spreadsheet creates direct evidence of numerosity for the Second Amendment Class because the District seized either guns or ammunition from each person in the Second Amendment Class. Numerosity is established for the Nonresident Class as well through the addresses on the biographical data in CourtView. Finally, numerosity is established for the Right to Return Class because the District has a policy of seizing and not returning guns seized from persons arrested on gun charges. D.C. Code § 22-4517(b).

### 2.    The Proposed Classes Presents Common Questions of Law and Fact.

Commonality under Rule 23(a)(2) requires the Court to determine whether there is at least one question of law or fact common to the class. <u>Moore v. Napolitano</u>, 926 F. Supp. 2d 8, 28-29 (D.D.C. 2013) *interlocutory review of class certification order under Rule 23(f) denied by* <u>In re Johnson</u>, 760 F.3d 66, 71 (D.C. Cir. 2014) *citing* <u>Wal-Mart</u>, 131 S. Ct. at 2556. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." <u>Bynum v. District of Columbia</u>, 217 F.R.D. 43, 46 (D.D.C. 2003)("<u>Bynum II</u>").

To satisfy this requirement, a plaintiff must "demonstrate that the class members 'have suffered the same injury[.]'" <u>Wal-Mart</u>, 131 S. Ct. at 2551 (*quoting* <u>Falcon</u>, 457 U.S. at 157). That is to say, "[t]heir claims must depend upon a common contention[.]" <u>Id</u>. The "common contention" must be "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id</u>. A plaintiff's burden is to "bridge the gap" between her individual claim and "the existence of a class of persons who have

suffered the same injury as that individual[.]" <u>Falcon</u>, 457 U.S. at 157.

Traditionally courts have routinely held that a policy or practice that uniformly affects all class members satisfies the commonality requirement. <u>Bynum I</u>, 214 F.R.D. at 47 (question whether defendant's policy of strip searching violates the Constitution raises questions of law and fact common to the class); <u>Hardy</u>, 283 F.R.D. at 24 (whether the District had a custom, practice or policy regarding sending notice constitutes a common question of fact).

Even after <u>Walmart</u> district courts in this Circuit have routinely found that the existence of a policy or practice that uniformly affects all members of the class makes out a common question, and the Circuit has denied review under Rule 23(f) when the common question is (1) whether there is a policy or practice, and (2) whether the policy or practice uniformly affects all members of the class.

For example, in <u>Thorpe v. D.C.</u> the district court held that a common question was present where plaintiffs alleged that the lack of "effective . . . transition assistance" constituted a specific discriminatory practice that has injured class members in the same manner. <u>Id.</u> at 148 *interlocutory review of class certification order under Rule 23(f) denied by* <u>In re D.C.</u>, 792 F.3d 96, 101 (D.C. Cir. 2015).

Even in <u>DL v. District of Columbia</u>, 713 F.3d at 120, an IDEA case where the Court of Appeals held that the District Court had erred by finding commonality, the Court of Appeals was quick to point out that, "We do not suggest that widespread policies and practices in violation of the IDEA could never satisfy Rule 23(a)(2)'s commonality requirement after <u>Wal-Mart</u> ..." <u>Id.</u> at 127-28.

On remand this Court certified subclasses. This Court in the remand decision synthesized the teachings of <u>Wal-Mart</u> and the Circuit decision on "commonality" as follows: To satisfy Rule 23(a)(2) the resolution of the common question of law or fact must "resolve an issue that is central to the

validity of each one of the claims in one stroke." In other words, class members must have suffered the same injury for the same reason, such as a uniform policy or practice that is illegal. Plaintiffs can satisfy this requirement in cases where plaintiffs allege widespread wrongdoing by a defendant because a "uniform policy or practice that affects all class members" bridges the gap between individual claims of harm and the "existence of a class of persons who have suffered the same injury as that individual." DL v. District of Columbia, 302 F.R.D. 1, 12 (D.D.C. 2013)(internal citations omitted).

       a.       *Common Question in Second Amendment Class*

The "uniform policy or practice that affects all class members" in the proposed Second Amendment Class is whether the District's unconstitutional gun registration laws (the CPWL/CP statute, the UF statute, and the UA statute) in effect during the 2d Amendment Class Period violated the 2d Amendment. The District's gun laws are policies of the government of the District of Columbia. Monell v. Dep't of Soc. Servs. of the City of New York,436 U.S. 658, 694, (1978). Those policies are the moving force behind injuries caused by the District's enforcement of the statutes. Id. An officer making arrests under a District of Columbia statute or a prosecutor prosecuting under a District of Columbia statute pursuant to a grant of authority by a DC statute executes the District's policy or custom as is discussed in detail in plaintiffs' opposition to defendants' motion to dismiss [Document # 23]. *See e.g.*, Lederman v. United States, 539 F. Supp. 2d 1, 4 (D.D.C. 2008)(District liable when OAG prosecutes plaintiff under unconstitutional DC regulation); Daskalea v. Wash. Humane Soc'y, 480 F. Supp. 2d 16, 26 (D.D.C. 2007)(specific grant of authority by the District pursuant to a DC statute to Humane Society to "prosecute all violations of the [District's] animal cruelty laws," made the Humane Society a state actor for purposes of § 1983 and subjected the District to liability for the Humane Society's prosecutions under DC statute.

Thus, where person was acting pursuant to a grant of authority by a DC statute, <u>Lederman</u>,;
<u>Daskalea</u>, the District's enforcement of its gun laws caused the arrest and prosecution of, and the
seizure of guns and ammunition from, every person arrested by the MPD and other agencies and
every person prosecuted under the CP statute, the UF statute, and the UA statute. *See* <u>In re Rail
Freight</u>, 725 F.3d at 253.

### b. Common Question in Nonresident Class

The "uniform policy or practice that affects all class members" in the proposed Nonresident
Class is whether the registration scheme, by facially excluding out of state residents under D.C. Code
§ 7-2502.02(a)(4) which provided that individuals who were not retired police officers may only
register a handgun "for use in self-defense within that person's home," violated the 5th Amendment.
The commonality analysis is the same as for the Second Amendment Class. At issue is a facially
invalid regulation which limited licenses to DC residents that applies equally to all non-resident
applicants. Therefore, there are no problems of proof. And, for the reasons stated above in the
analysis of the Second Amendment Class, the regulation uniformly affected all members of the class,
and it is a policy of the D.C. Council, so it was the moving force of each class member's injuries.
<u>Monell</u>, *supra*.

### c. Common Questions in Right to Return Class

The common questions for this class are whether the District has a policy or practice during
the Class Period of refusing to return guns and ammunition from persons arrested or charged under
the gun statutes pursuant to D.C. Code § 22-4517(b), and whether, as a matter of law, the law
requires the District to return the guns when they are no longer needed or to give owners notice and a
hearing at which the District has to establish its right to keep the guns and ammunition. The Class

15

Period for this class extends until the case is over or the District changes the challenged practice and policy. The District has an obligation to return guns and ammunition it no longer needs whether the owner was arrested under a constitutional or unconstitutional statute, and whether the owner is permitted to possess or own guns and ammunition in the District, provided the owner retains some ownership rights, as is discussed below and in detail in plaintiffs' opposition to defendant's motion to dismiss [Document # 23].

The first question is easily answerable by a single interrogatory or 30(b)(6) deposition or an examination of the Property Book[2] which shows the disposition of property including guns and ammunition coming into the passion of the Property Clerk, or Evidence on Cue, the District's property inventory database. Plaintiffs do not have to prove that a practice exists at this stage. "[S]uch proof is not a prerequisite to class certification." Amgen Inc., 133 S.Ct. at 1191. Plaintiffs do not have to first establish that they "will win the fray" before certification. Rather, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the "metho[d]" best suited to adjudication of the controversy "fairly and efficiently." Amgen Inc., 133 S.Ct. at 1191.

The second question, whether the District was obligated to return the guns and ammo when the District no longer needed them as evidence, is a legal question that has already been answered in the affirmative for the Right to Return plaintiffs. United States v. Wilson, 540 F.2d 1100 (1976)(district court has both the jurisdiction and duty to return property seized in connection with criminal proceedings once the proceedings have terminated and the property is no longer pertinent to a criminal prosecution); District of Columbia v. Dunmore, 749 A.2d 740, 742 (D.C. 2000) (court has duty to return property seized in connection with criminal proceedings once the proceedings have

---

[2] MPD General Order 601.1, F.1 (Recording, Handling and Disposing of Property Coming into the Custody of the Department).

terminated and the property is no longer pertinent to a criminal prosecution).

As discussed in detail in plaintiffs motion to dismiss, the District's seizures of guns and ammunitions actually involves two deprivations: the first being the initial seizure of the handgun and ammunition incident to plaintiffs' arrests, and the second being the District's subsequent and continued refusal to surrender the property following dismissal of the gun or ammunition charges without a court order. Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011). Plaintiffs are entitled to **pre-deprivation** process (notice and a hearing) for the second deprivations and requiring plaintiffs to file Rule 41 motions after the second deprivations is itself a violation of due process. Id. *See also* Brown, 2015 U.S. Dist. LEXIS 94323, *41,*42-43 (failing to return property seized for civil forfeiture after property determined to be not subject to forfeiture or failing to return property seized for evidence when it is no longer needed violates procedural due process) *citing* Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011) (city violated due process by rejecting a criminal defendant's request for his property after the underlying charges had been dismissed); McClendon v. Rosetti, 460 F.2d 111, 116 (2d Cir. 1972) (police violated due process by retaining money or property that was no longer needed as evidence).

D.C. Code § 22-4517(b), which is the District's basis for seizing and retaining guns in the first place, Memorandum, [Document # 23] p. 28, purports to designate pistols as "dangerous articles," thereby making pistols subject to summary seizure as "nuisances," violates the 2d Amendment. Heller, 554 U.S. at 635; Palmer, *supra*; *See also* Herrington v. United States, 6 A.3d 1237, 1244-45 (D.C. 2010)(UA statute unconstitutional because where the Constitution -- in this case, the Second Amendment -- imposes substantive limits on what conduct may be defined as a crime, a legislature may not circumvent those limits by enacting a statute that presumes criminality from constitutionally-

protected conduct and puts the burden of persuasion on the accused to prove facts necessary to establish innocence).

Similarly, pre-Palmer cases which categorized all firearm as contraband are no longer good law. Leyland v. Edwards, 797 F. Supp. 2d 7, 11 (D.D.C. 2011). Even a gun owner convicted under the federal "felon in possession" statute, 18 USCS § 922, retains an ownership right in their guns. Henderson v. United States, 135 S.Ct. 1780, 1783 (2015) (holding that Section §922(g) does not bar a transfer of a felon's guns to a sales agent unless it would allow the felon to later control the guns).

So, even if an owner from whom the District seized handguns or ammunition is prohibited by their conviction under a DC statute from owning or possessing a gun in the District, they still have ownership rights to own or possess a gun somewhere, or to at least receive the proceeds from its sale. *See* Henderson, 135 S.Ct. at 1783. Even owners who are no longer entitled to "possess" or "carry" pistols under either the federal "felon in possession" statute, 18 USCS § 922, or the District's "felon in possession" statute, D.C. Code § § 22-4503, are entitled to appoint a designee to receive their guns and ammunition and to sell them and then to deliver the proceeds to the owners. Id. Since the District lacked any sort of procedure whereby owners no longer entitled to "possess" or "carry" pistols because of a legal disability were entitled to appoint a sales agent are members of this class. Under the due process clause the District was obligated to have a procedure in place to protect their substantive rights. *See* Gates v. City of Chicago, 623 F.3d 389, 410 (7th Cir. 2010)(city's lack of *procedures* for the return of property seized as evidence which comport with due process actionable).

Moreover, D.C. Code § 22-4517(d) also violates the due process clause by inverting the burden of process by requiring owners to file claims and failing to require the District provide notice when the District no longer needs the guns and ammunition as evidence. Walters v. Wolf, 660 F.3d at

314; <u>Brown</u>, 2015 U.S. Dist. LEXIS 94323, *41, *42-43.

### 3. Named Plaintiffs Raise Typical Claims.

"The commonality and typicality requirements of Rule 23(a) tend to merge." <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2371 n.13, 72 L.Ed.2d 740 (1982). The "typicality" requirement ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate and it aims at ensuring that the class representatives have suffered injuries in the same general fashion as absent class members. <u>Thorpe</u>, 303 F.R.D. at 147.

Thus, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." <u>Bynum II</u>, 217 F.R.D. at 47.

The Named Plaintiffs for each class satisfy this requirement because each shares the same legal theories based upon the same set of facts as the members of each class. All representative plaintiffs seek recovery on the basis of the same theory of causation and right, and thus advance the interests of the class as a whole.

The following brief descriptions of the Named Plaintiffs' cases show how their experiences are typical of all persons who constitute the putative class:

<u>Plaintiff Maggie Smith</u>. On June 29, 2014, Ms. Maggie Smith, a 34 year-old registered nurse with no criminal record and then a resident of North Carolina, was pulled over by MPD while she was driving her car in the District of Columbia. Ps. Ex. # 8, p.6 (Smith arrest / prosecution documents). When she informed the officers that she was carrying a pistol licensed in her home state she was arrested

under then-D.C. Code § 22-4504(a) and her guns and ammunition were taken. <u>Id</u>. at p. 8. The MPD referred her case to the AUSA for prosecution and as a result, she was prosecuted. The AUSA initiated prosecution on June 30, 2014 under then-D.C. Code § 22-4504(a). <u>Id</u>. at p. 5. On July 17, 2014, the USAO obtained an indictment of Ms. Smith for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and unlawful possession of ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and Ms. Smith was arraigned on those charges in Superior Court (CP, UA, and UF). <u>Id</u>. In light of the <u>Palmer</u> decision, issued on July 24, 2014, the US Attorney's Office dismissed the indictment on September 29, 2014. <u>Id</u>. at 4. But, by September 12, 2014, the OAG had already filed a criminal information charging Ms. Smith with violations of D.C. Code § 7-2502.01 (possession of an unregistered firearm) and D.C. Code § 7-2506.01 (unlawful possession of unregistered ammunition). <u>Id</u>. at 3. The prosecution remained pending for about seven months until the OAG finally dismissed the criminal information against Ms. Smith on April 21, 2015. <u>Id</u>. at 1. The MPD Property Clerk still has not returned Ms. Smith's gun and ammunition.

<u>Plaintiff Gerard Cassagnol</u>. On October 9, 2013, Mr. Gerard Cassagnol, a resident of Maryland, was arrested by MPD for possession of a 9 millimeter pistol in a combination-lock gun safe in the bottom of a grey bin in the backseat of his truck and ammunition in a clip outside the gun and he was charged under then-D.C. Code § 22-4504(a) and his guns and ammunition were taken. Ps. Ex. # 3, ¶ ¶ 6-8. The MPD referred his case to the AUSA for prosecution and as a result, he was prosecuted. The AUSA initiated prosecution on October 10, 2013 under then-D.C. Code § 22-4504(a). On October 23, 2013, the USAO obtained an indictment of Mr. Cassagnol for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and unlawful possession of ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and he was arraigned on those charges in

Superior Court (CP, UA, and UF) on November 7, 2013. Ps. Ex. # 2, pgs. 6-7 (Cassagnol arrest / prosecution documents). In light of the <u>Palmer</u> decision, issued on July 24, 2014, the US Attorney's Office dismissed the indictment on July 29, 2014. <u>Id</u>.

But, on the same day, the OAG filed a criminal information charging Mr. Cassagnol with violations of D.C. Code § 7-2502.01 (possession of an unregistered firearm) and D.C. Code § 7-2506.01 (unlawful possession of unregistered ammunition). <u>Id</u>. at 3. The prosecution remained pending for about seven months until the OAG finally dismissed the criminal information against Mr. Cassagnol on April 20, 2015. <u>Id</u>. The MPD Property Clerk still has not returned Mr. Cassagnol's gun and ammunition, Ps. Ex. # 3 (Mr. Cassagnol's affidavit), even though he asked for it, <u>Id</u>.; Ps. Ex. # 1 (affidavit of investigator).

<u>Frederick "Cornelius" Rouse</u>. On August 30, 2014, after the decision in Palmer, Mr. Gerard Cassagnol, a resident of Maryland, was arrested by MPD for possession of a Glock 33 Pistol worth approximately $550.00 and a FN Five-Seven Pistol worth approximately $1,200.00. The MPD referred his case to the OAG for prosecution and as a result, he was prosecuted. Ps. Ex. # 4 (Rouse arrest / prosecution documents). On September 1, 2014, the OAG filed a criminal information charging Mr. Rouse with possession of an unregistered firearm in violation of D.C. Code § 7-2502.01 and unlawful possession of ammunition in violation of D.C. Code § 7-2506.01, and he was arraigned on those charges in Superior Court (CP, UA, and UF) on the same day. <u>Id</u>. On April 22, 2014, approximately nine months after the <u>Palmer</u> decision, the OAG dismissed the charges against Mr. Rouse without prejudice. <u>Id</u>. The MPD Property Clerk still has not returned Mr. Rouse's guns and ammunition.

As with the question of commonality, the typicality of Named Plaintiffs should be found by

the Court to be present here.

4.    Class Representatives Adequately Represent the Class; Class Counsel Adequately Represent the Class.

Rule 23(a)(4) demands that each class have adequate representation to ensure that the named representatives do not have interests antagonistic to those of the class members they represent, and that they will vigorously pursue the claims of the class through qualified counsel. Barnes v. District of Columbia, 242 F.R.D. 113, 122 (D.D.C. 2007). Adequacy involves both adequacy of the named plaintiffs and adequacy of counsel. This requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class; and (2) counsel for the class is competent to represent the class. Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997).

In this case, no conflicts of interest exist between the representative plaintiffs and the proposed classes. The named plaintiffs seek to redress the deprivation of rights conferred upon them by the United States Constitution. The named plaintiffs' interests do not conflict with those of the putative classes. Just the opposite, the issues presented by plaintiffs mirror those faced by the putative classes, which stands only to gain by this action.

Rule 23(g)(1)(C)(i) requires the Court to appoint adequate counsel to represent the class. Rule 23(g) requires that the court must consider the following criteria in appointing class counsel: "[(1)] the work counsel has done in identifying or investigating potential claims in the action, [(2)] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [(3)] counsel's knowledge of the applicable law, and [(4)] the resources counsel will commit to representing the class." See e.g. Bynum v. Gov't of the Dist. of Columbia, 384 F. Supp. 2d 342, 366

(D.D.C. 2005). The court may consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii).

Plaintiffs' counsel have done extensive research in this case, including interviewing persons who have knowledge of the case, as the attached exhibits indicate. The attorneys are experienced civil rights class action litigators who have participated in multiple class actions. Messrs. Claiborne and Cunningham have the resources to prosecute this case to settlement or judgment. Mr. Claiborne's Affidavit is attached as Ps. Ex. # 5. Mr. Scrofano's Affidavit is attached as Ps. Ex. # 9.

**B.      RULE 23(B)(2): CERTIFICATION FOR DECLARATORY AND INJUNCTIVE RELIEF**

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted .... on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The complaint challenges defendant's blanket policy or practice of

Plaintiffs satisfy this requirement for all three classes even where the District may be acting pursuant to a practice as opposed to a written policy – refusing to returns guns and ammunition -- because the District "has acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1775 (2d ed. 1986) cited by Bynum I, 214 F.R.D. at 37-38. See also, Jones v. Goord, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (certifying a (b)(2) class of prisoners alleging that they were unconstitutionally double-celled, "notwithstanding defendants' argument that matters such as inmate screening is done on a case-by-case basis by different prison officials at different facilities"); Lightfoot v. District of Columbia, 246 F.R.D. 326, 343 (D.D.C. 2007).

Moreover, this case meets the certification requirements of both FRCP 23(b)(2) and (b)(3). Therefore, the Court can certify a "hybrid" Rule 23(b)(2) and (b)(3) class. <u>Bynum</u>, 2003 U.S. Dist. LEXIS 4797 * 35, <u>citing</u> <u>Eubanks v. Billington</u>, 110 F.3d 87, 96 (D.C. Cir. 1997).

The Court addressed the propriety of certifying a "hybrid" (b)(2)/(b)(3) class in the opinion certifying the Overdetention Class component of this case. <u>Bynum I</u>, 214 F.R.D. 27, 38-39. The D.C. Circuit has held that:

> when a (b)(2) class seeks monetary as well as injunctive or declaratory relief the district court may exercise discretion in at least two ways. The court may conclude that the assumption of cohesiveness for purposes of injunctive relief that justifies certification as a (b)(2) class is unjustified as to claims that individual class members may have for monetary damages. In such a case, the court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage. Alternatively, the court may conclude that the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted on a selective basis. . . . We view Rule 23(d)(5) to be broad enough to permit the court to allow individual class members to opt out of a (b)(1) or (b)(2) class when necessary to facilitate the fair and efficient conduct of the litigation.

<u>Eubanks v. Billington</u>, 110 F.3d 87, 96 (D.C. Cir. 1997).

The <u>Eubanks</u> decision thus presents this Court with two options in cases such as the present action: it may decide to certify a "hybrid" (b)(2) and (b)(3) class, or it may certify a (b)(2) class and afford individual class members the due process protections afforded to (b)(3) class members.

Plaintiffs establish that they satisfy the requirements of certifying the present action as a (b)(3) class action including the Rule 23(b)(3) "predominance" test below. Therefore, the Court can certify the present action as a hybrid (b)(2) / (b)(3) class action, a form expressly authorized by the D.C. Circuit in <u>Eubanks</u>.

As the Court stated in the opinion certifying the Overdetention Class in Bynum,

"...the Court [may] certify a (b)(2) class with respect to the plaintiffs' claims for injunctive and declaratory relief, and a (b)(3) class with respect to their claims for monetary damages. All of the class members with damages claims against defendant will thus be afforded all of the due process protections afforded to members of a (b)(3) class, including notice and opt-out rights. The maintenance of this action as a hybrid class action will provide a just and efficient forum for the resolution of all of the claims asserted."

Bynum I, 214 F.R.D. at 41.

### C. RULE 23(B)(3): PREDOMINANCE OF COMMON QUESTIONS AND SUPERIORITY OF CLASS TREATMENT FOR THE STRIP SEARCH CLASS

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Bynum I, 214 F.R.D. at 39. In making the certification determination, the Court should consider four factors: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Id.

These requirements may also be divided into two separate requirements: (1) that factual and legal questions common to the class members predominate over any such questions affecting only individual class members, and (2) that maintaining the action as a class action will be superior to other available methods of adjudication. Id.

### 1. Certification of (b)(3) Class – predominance of common questions of law or fact.

The "predominance" requirement has taken on greater significance since the Supreme

Court's decision in <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426 (2013). *See e.g.* <u>In re Rail Freight Fuel</u>, 380, 725 F.3d at 253. Post-<u>Berhend</u> cases in this Circuit have focused on insuring that the class definition excludes uninjured persons, <u>In re Rail Freight Fuel</u>, or that there is some method for culling uninjured persons out from the class such as a Teamsters hearing or a workable damages model. <u>In re Johnson</u>, 760 F.3d at 74-75.

Nothing in these classes precludes certification of these claim under Rule 23(b)(3) because the District's policy of arresting and prosecuting people for violations of its unconstitutional gun laws during the Class Period was a policy that uniformly affected all class members and the statute -- as a policy of the District enacted by the City Council - - was the moving force behind each class member's injury. Monell, *supra*. Similarly, the District's practice of policy of seizing handguns and ammunition and not returning the property when it is no longer needed or allowing owners to appoint a sales agent is a policy and practice that uniformly affects all class members based on a statute that is an official policy of the District. <u>Monell</u>, *supra*.

Moreover, the common understanding that "individual damages calculations do not preclude class certification under Rule 23(b)(3) has not changed after <u>Behrend</u>[3]. <u>In re Rail Freight Fuel</u>, 725 F.3d at 252 (common evidence must show all the class members were actually harmed by the alleged wrongdoing, but not necessarily the amount of damages incurred); <u>Catholic Health Care West v. U.S. Foodserv.</u>, 729 F.3d 108, 122 (2d Cir. 2013) ("[B]ecause the question whether the invoices materially misrepresented the amounts due to [defendant] is common to all plaintiffs, the class will prevail or fail in unison on this point--rendering certification appropriate."); <u>Leyva v. Medline Indus.</u>, 716 F.3d 510, 513-14 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class

---

[3] <u>Comcast</u> should be interpreted as a case concerning antitrust injury.

certification."); <u>Healy v International Brotherhood of Electrical Workers, Local Union No. 134</u>, 296

FRD 587, 594-96 (ND Ill 2013), *citing* <u>Comcast</u>, 133 S Ct at 1437 (Ginsburg and Breyer dissenting)

(certifying a damages and liability class but stating that "Comcast does not come close to saying ... that

a class cannot be certified whenever there are variations among class members' damages," and noting

that, even if it did, "the Court would have certified a liability-only class, as Rule 23 expressly permits").

*See* <u>Wal-Mart Stores, Inc</u>, 131 S Ct at 2558 (Scalia) (stating that it is "clear that individualized

monetary claims belong in Rule 23(b)(3)").

  <u>In re Rail Freight</u> stated that plaintiffs need not be prepared at the certification stage to

demonstrate through common evidence the precise amount of damages incurred by each class

member, citing <u>Messner v. Northshore Univ. HealthSystem</u>, 669 F.3d 802, 815-16 (7th Cir. 2012) and

<u>Wal-Mart</u>, at 2558.  <u>Wal-Mart v. Dukes</u> at the cited page states that it is "clear that individualized

monetary claims belong in Rule 23(b)(3)." , 131 S. Ct. at 2558. <u>Messner</u> expressly affirmed the rule

that the presence of individualized questions regarding damages does not prevent certification under

Rule 23(b)(3). *See* <u>Messner</u>, 669 F.3d at 815.

  Moreover, even after <u>Walmart</u> district courts have continued to certify class actions using

statistical and other aggregate methods of proof and both the Supreme Court and the Circuit Courts

have continued to uphold those certifications on review. "Using statistics or samples in litigation is not

necessarily trial by formula." <u>Bouaphakeo v. Tyson Foods Inc.</u>, 765 F.3d 791, 798 (8th Cir. 2014)

*citing* "<u>Comcast</u>, 133 S. Ct. at 1434 (considering expert's multiple-regression model)."

  Even the Supreme Court has approved the use of statistics especially in class action cases to

establish both liability and damages after <u>Wal-Mart</u>. <u>Comcast</u>, 133 S. Ct. at 1433  (indicating models

are appropriate to show antitrust damages at the class-certification stage and at trial, so long as they are

"consistent with [plaintiff]'s liability case").

This Court has approved the use of reliable statistical methods in discrimination cases. Moore, 926 F. Supp. 2d at 19 *defendant's petition for interlocutory review of District Court's certification of damages class under Rule 23(f) denied i*n In re Johnson, 760 F.3d at 69.

This use of reliable statistical evidence is in line with the general rule that the probative value of a particular type of evidence must be assessed on a case-by-case basis, and in light of the applicable substantive legal principles at issue. *See* Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 340 (1977) (explaining, with respect to statistical proof, that the usefulness of statistics "depends on all of the surrounding facts and circumstances" and observing that there are an "infinite variety" of statistics).

Many categories of federal cases routinely use statistical methods to determine liability and damages. For example, statistics allow investors to show causation and damages in securities fraud litigation. *See e.g.*, Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2405, 2415 (2014), in which the Supreme Court affirmed the use of the "Basic" "fraud-on-the- market" presumption adopted in Basic Inc. v. Levinson, 485 U.S. 224, 241-50 (1988). Event studies, "regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events," typically play a key role in determining whether plaintiffs can invoke the presumption. Id. If successfully invoked, the presumption serves as "a replacement for person-specific proof of reliance and causation." Schleicher v. Wendt, 618 F.3d 679, 682 (7th Cir. 2010) (Easterbrook, C.J.).

Litigants use statistics to prove causation and damages in various other legal contexts. *See, e.g.*, In re Neurontin Mktg. & Sales Practices Litig., 712 F.3d 21, 42 (1st Cir. 2013) (Lynch, C.J., Lipez, Souter, JJ.) ("[C]ourts have long permitted parties to use statistical data to establish causal

relationships"), *cert. denied sub nom.* <u>Pfizer Inc. v. Kaiser Found. Health Plan, Inc.</u>, 134 S. Ct. 786 (2013).

A panel of the 8th Circuit denied defendant's challenge to the use of "representative proof" in a class and collective action for wage/ hour violations to determine liability and damages. <u>Bouaphakeo</u>, 765 F.3d at 798-99. The <u>Bouaphakeo</u> panel rejected defendant's contention that plaintiffs improperly relied on "Trial by Formula" to prove liability because they employed statistical methods. <u>Id</u>. The entire 8th Circuit denied defendant's petition for rehearing *en banc.* <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 593 F. App'x 578 (8th Cir. 2014) *petition for writ of certiorari granted in* <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 135 S.Ct. 2806 (2015).

At the end of the day, as the Circuit Court recently reaffirmed, in general, a district court has a good deal of discretion in the management of the litigation before it, including how to manage questions of predominance. <u>In re Johnson</u>, 760 F.3d at 75 (denying petition for interlocutory review of decision certifying class under Rule 23(b)(3)).

This Court certified over-detention and strip-search cases in both <u>Bynum</u> and <u>Barnes</u> where plaintiffs employed statistical methods. In those cases as in this one, the putative class plaintiffs can tie the common damages they seek to common theories of injury. <u>Comcast</u>, 133 S. Ct. at 1433.

## 2.   Common factual and legal issues predominate in each class.

The first requirement is that common factual and legal issues predominate over any such issues that affect only individual class members. There is no magic formula in making this determination. <u>Bynum I</u>, 214 F.R.D. at 39.

The common questions of law and fact "predominate over any questions affecting only

individual members" in this case because the allegations of an unconstitutional custom and practice of overdetentions relate to the **defendant's conduct**, and therefore proof will not vary among the class members. In re Vitamins Antitrust Litig., 209 F.R.D. 251 (D.D.C. 2002) (common question predominated in an antitrust case because where the allegations of price-fixing related to the defendant's conduct, the proof would not vary among the class members); Bynum I, 214 F.R.D. at 39-40  (practice of over-detentions that affects all class members predominates); Bynum II, 217 F.R.D. at 48-49 (policy of strip-searches that affects all class members predominates).

Recently this Court certified a discrimination class action under Fed. R. Civ. P. 23(b)(3) where the common questions were whether the MPP promotions process discriminates against African-American special agents and whether the Secret Service has a pattern and practice of race discrimination. Moore, 926 F. Supp. 2d at 33. The court focused on the fact that the special agents planned to try to prove the existence of the pattern and practices through their statistical evidence in finding that common questions predominated over individual issues. Id. The Court of Appeals noted that the district court held common issues predominated over individual issues in this suit because there are no individual issues involved in determining whether the MPP was discriminatory and because the court, when and if it ever reaches individualized questions, will send those questions to separate hearings outside the class proceedings. In re Johnson, 760 F.3d at 74. The Court of Appeals denied defendants' petition for interlocutory review under Fed. R. Civ. P. 23(f).

### 3.   Class wide proof of damages in the 2d Amendment Class and the Nonresident Class.

Plaintiffs can try damages in the 2d Amendment Class and the Nonresident Class on a class wide basis using the methods this Court approved in Barnes for trying general damages for the Strip-Search and Over-Detention Classes. Barnes v. District of Columbia, 278 F.R.D. 14, 20 (D.D.C.

2011)("Trial Plan").

Therefore, plaintiffs propose trying damages in this case using the "Dellums" method for determining general damages for the class. The Court in Barnes defined "general" damages as the injury to human dignity that is presumed when a person is strip searched or over-detained. Barnes v. District of Columbia, 278 F.R.D. at 20 *citing* Augustin v. Jablonsky, 819 F. Supp. 2d 153, 2011 U.S. Dist. LEXIS 121000, 2011 WL 4953982, *1 (E.D.N.Y. Oct. 19, 2011). Since the classes are seeking general damages common to all class members rather than special damages distinctive to each individual, the class does not require "individualization" beyond subdividing the classes into sub-classes based on length of detention at arrest or length of prosecution. Dellums v. Powell, 566 F.2d at 188 n.56. Damages can be fixed either for the class as a whole or by subclass based on length of detention or prosecution. Dellums v. Powell, 566 F.2d at 188 n.56. Assignment of plaintiffs to appropriate subclasses can be made based on length of detention at arrest or length of prosecution by a review of data in the District's databases.

Plaintiffs can establish the number and identity of persons arrested or charged for CPWL, UF, and UA, and the dispositions of their arrests and prosecutions using the data in the MPD's booking database (LEADS) and the Superior Court docketing database (CourtView). Plaintiffs can ascertain the aggregate lengths of confinement and length of periods of court supervision using the data in the DOC inmate management system (JACCS) and the Superior Court's CourtView.

Plaintiffs propose that each party each present the testimony of up to 15 members of the 2d Amendment and Non-resident Classes chosen by that party as was outlined in the Barnes Trial Plan.

    5.    **Class wide proof of damages in the Right to Return Class.**

The measure of damages in the Right to Return Class is basically (but not entirely) the return

of the class members' property or the value of their guns and ammunition. For this aspect of plaintiffs' damages, ana;ogous to "general damages," Plaintiffs can either put on evidence of guns seized and then present an aggregate value for the class using statistical methods, or, pursuant to Rule 23(b)(2), the Court could set up a claims process to process class members' claims for the value of the property. Lightfoot, 246 F.R.D. at 343.

The District proposed this method in Tachebele v. District of Columbia, a case for refunds for the amounts of overcharges the MPD charged persons who "posted and forfeited" under D.C. Code § 5-335.01. [Document # 41-1 (memorandum in support of motion for class action treatment). Judge Leon approved the District/s proposal. Oder approving certification under Fed. R. Civ. P. 23(b)(2) [Document # 42]; Preliminary approval order [Document # 46].

The District's proposal in Tachebele v. District of Columbia, 12-1806 (RJL) was based on Lightfoot, a case where the Court certified a class of people receiving disability benefits who argued that the District had by new legislation cut off or reduced their benefits without due process. 246 F.R.D. at 329-330. One of the forms of injunctive relief sought by the plaintiffs was the establishment of an administrative system to determine amounts owed to class members based on a declaration that the policies and practices employed by the District in applying changes to plaintiffs' disability benefits did not comport with constitutional due process. Id. at 343.

D.     THE CLASSES ARE MANAGEABLE.

There are no individual questions on the issue of liability regarding the Classes. The only fact plaintiffs will have to show is membership in the class. Plaintiffs can establish membership from a ministerial inspection of the computer records the District of Columbia maintains.

32

### E.    TREATMENT AS A CLASS ACTION IS SUPERIOR.

The primary consideration in determining whether a class action is "superior" is the availability of other possible ways of handing the case.

Realistically, damages for strip searches will be inadequate to attract sufficient counsel to represent individuals on a case-by-case basis. The class action is, therefore, the only method available to most class members for obtaining any redress at all. Separate counsel for individual class members is simply not available. Moreover, if separate counsel were available, managing hundreds, much less thousands of individually filed lawsuits would create a serious administrative challenge for the Court. Clearly, the class action is the superior proceeding.

In this matter, it is plain that the challenges of managing a class action are minimal while the benefits are considerable. Members of this class are easily identified by records in the MPD booking databases and property inventory database, Evidence on Cue, and CourtView, the District's docketing database for Superior Court cases. Additionally, the District of Columbia maintains the last known addresses in its databases, thus facilitating the process of notification. The advantages are similarly obvious: the failure to certify this class will effectively extinguish any hope that the majority of class members have for recovering damages for their injuries. This may be the strongest argument in support of class certification.

Here, the common questions clearly do predominate, treatment as a class action is superior and certification should be granted.

## VI.    CERTIFICATION OF "ISSUE CLASSES" FOR LIABILITY UNDER RULE 23(C)(4)

Alternatively, if the Court finds that one or more of the classes does not meet the

requirements for certification under Fed. R. Civ. P. 23(b)(3), plaintiffs move the Court to certify "issue classes" for liability on the common questions under Rule 23(c)(4). *See* <u>In re Johnson</u>, 760 F.3d at 75.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for class certification pursuant to FRCP 23(a), 23(b)(2), 23(b)(3), and FRCP 23(c)(4) should be granted.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| <u>/s/ William Claiborne</u><br>**WILLIAM CLAIBORNE**<br>D.C. Bar # 446579 | <u>/s/ Joseph A. Scrofano</u><br>**JOSEPH A. SCROFANO**<br>D.C. Bar # 994083 |
| Counsel for plaintiffs on behalf of themselves and the putative class members | Counsel for plaintiffs on behalf of themselves and the putative class members |
| 2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | 406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |