UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH** | |
| On behalf of herself and all others similarly situated, | |
| Plaintiffs, | Civil Action No.: **15-737 (RCL)** |
| v. | |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant's motion to dismiss [Document # 23] should be denied. The two key facts in this case which plaintiffs develop below are: (1) the District arrested and then prosecuted Maggie Smith, Gerard Cassagnol, and Frederick Rouse (sometimes the "Named Plaintiffs") pursuant to unconstitutional statutes (2) for engaging in constitutionally protected conduct.

I.      <u>INTRODUCTION</u>

Maggie Smith, Gerard Cassagnol, and Frederick Rouse (sometimes the "Named Plaintiffs"), were injured because the District, by enforcing its unconstitutional gun registration statutes, caused them and the other members of the Classes to be arrested, prosecuted, or arrested and prosecuted in the District of Columbia Superior Court for violations of those unconstitutional gun laws in violation of their Second and Fifth Amendment rights.

Moreover, Maggie Smith, Gerard Cassagnol, and Frederick Rouse and the other members of the Right to Return Class were injured and continue to be injured during the class period up through the present because the District seized their handguns and ammunition and either destroyed them or refuses to give them back without notice and a hearing in which the District would be compelled to establish their right to retain the guns and ammunition or to return the guns and ammunition to their owners. Second Amended Complaint ¶ ¶ 137-144. The claim covers every person from whom the District seized and retained guns or from whom the District seized guns and did not offer a procedure whereby the owner could appoint an agent for sale.

A.   BACKGROUND OF DISTRICT'S GUN LAWS AND THE DISTRICT'S ENFORCEMENT OF ITS UNCONSTITUTIONAL GUN REGISTRATION REGIME

For years the District had virtually a complete ban on ownership of guns by private citizens.

1.   Three statutes form the backbone of the District's unconstitutional gun registration regime.

Three statutes formed the backbone of the District's unconstitutional gun registration regime: two misdemeanor gun charges — possessing unregistered firearms, D.C. Code § 7-2502.01 ("UF"), and possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA"), and one felony, D.C. Code § 22-4504(a), carrying a pistol without a license ("CPWL" or "CP").

The registration/ license scheme in effect before 10/10/2014 simultaneously precluded citizens from registering their pistols for use outside the home or place of business while imposing a criminal penalty for possessing or carrying an unregistered firearm or unregistered ammunition in the District of Columbia outside the home. Second Amended Complaint ¶ 10.

2.    Prosecution under the three statutes allocated between the OAG and the United States Attorney's Office.

There are two prosecuting agencies which prosecute violations of the DC Code (including gun cases) in the District. D.C. Code § 23-101(a)-(c); In re Prosecution of Crawley, 978 A.2d 608 (D.C. 2009). Generally speaking, the District prosecutes misdemeanors (defined as offenses punishable by not more than a year in jail) and the United States Attorney's Office prosecutes felonies (everything else), D.C. Code § 23-101(c), and misdemeanors joined with felonies. D.C. Code § 23-101(d). Section 23-101 is part of an "Act of Congress applicable exclusively[1] to the District of Columbia," and thus is "considered to be a statute of the District of Columbia" for purposes of § 1983. 42 USCA § 1983.

Generally, under D.C. Code § 23-101, the District of Columbia OAG has jurisdiction over two misdemeanor gun charges — possessing unregistered firearms, D.C. Code § 7-2502.01 ("UF"), and possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA"), because the confinement penalties for these two offenses are not more than a year in jail. D.C. Code § 7–2507.06. See D.C. Code § 23-101. Generally, the United States Attorney's Office prosecutes violations of D.C. Code § 22-4504(a) ("CPWL" or "CP"), a felony. But, the US Attorney's Office also has jurisdiction over and usually prosecutes UF and UA charges when they are joined with felony charges such as CPWL. D.C. Code § 23-101(d).

In any event, the US Attorney's Office prosecutes only those gun cases in Superior Court referred to it for prosecution by the District or another referring agency. When the District refers

_____

[1] D.C. Code § 23-101 derives from an Act to Establish a Code of Law for the District of Columbia, ch. 854, § 932-933, 31 Stat. 1189, 1340-41 (1901). The District of Columbia Court Reform and Criminal Procedure Act of 1970, PL91- 358, 84 Stat. 473, 604-605 (1970), created the current version. D.C. Code § 1-204.35(AG elected).

gun charges to the US Attorney's Office its MPD officers and technicians (*e.g.*, evidence technicians, ballistics technicians) and Property Clerk support the prosecution. *See e.g.*, Ps. Ex. # 8 (Smith arrest / prosecution documents); Ps. Ex. # 6 (Delontay Davis PD 81). References to exhibits are to the exhibits filed in support of plaintiffs' motion for class action treatment. [Document # 26].

### 3.   <u>District of Columbia v. Heller</u> and the District's response

In 2008 the United States Supreme Court issued its opinion in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008) which declared the District's gun registration scheme unconstitutional with respect to the registration of guns by law abiding citizens for use in the home for personal protection. Although the holding in <u>Heller</u> was confined to registration of guns for use in the home for personal protection the rationale of <u>Heller</u> clearly put the District on notice that its registration scheme prohibiting carrying hand guns outside the home was also unconstitutional. Nevertheless, the District continued to arrest and prosecute citizens for carrying unregistered pistols and unregistered ammunition outside the home for lawful purposes.

In 2008, as part of its response to the Supreme Court's decision in <u>Heller</u>, the D.C. Council doubled down and repealed D.C. Code § 22-4506 (2001), the statute giving the Chief of Police authority to issue licenses to carry pistols under certain circumstances, and did not replace it with any new licensing scheme. Inoperable Pistol Amendment Act of 2008, D.C. Law 17-388 (codified at D.C. Code § 22-4504.01 (1) (Supp. 2010)). So, the felony offence of carrying a pistol without a license remained on the books, D.C. Code § 22-4504(a), even though there was no longer was a regulatory scheme in the District for people to obtain licenses to carry pistols.

Then, in September 2012, the City Council again amended the statute to prohibit "carrying a pistol" **period** without regard to a license. Firearms Amendment Act of 2012, D.C. Law 19-170 (effective September 26, 2012). "CPWL" became simply "CP."

Moreover, the District also continued to seize and forfeit cars on the basis of its unconstitutional gun registration scheme pursuant to its civil forfeiture scheme. D.C. Code § 7-2507.06a; D.C. Code § 48-905.02(d)(3)(A). *See e.g.*, Simms v. District of Columbia, 872 F. Supp. 2d 90, 92 (D.D.C. 2012)(District seized for civil forfeiture car of person arrested, prosecuted, and acquitted of CPWL); PD 81 evidencing seizure of car belonging to Delontay Davis under D.C. Code § 7-2507.06a. Ps. Ex. # 6. The District also continued to seize and retain or destroy handguns and ammunition belonging to people arrested for violations of its gun registration scheme and other gun laws. D.C. Code § 22–4517(b). Ps. Ex. # 3, Mr. Cassagnol affidavit; Ps. Ex. # 1, affidavit regarding Property Clerk.

On July 24, 2014, the Honorable Frederick James Scullin, Jr., senior United States District Court Judge for the United States District Court for the Northern District of New York, sitting by designation in this Court, issued a decision in Palmer v. District of Columbia, No. 1:09-CV-1482 (D.D.C. 2014) [Document # 51] declaring the District of Columbia's Carrying a Pistol statute facially unconstitutional because the District of Columbia's total ban on the public carrying of ready-to-use handguns outside the home was unconstitutional under any level of scrutiny. Id. at 16. Ultimately, the District decided not to appeal the Palmer decision.

The US Attorney's Office, apparently recognizing that the Palmer decision had invalidated the District's gun registration scheme with respect to carrying hand guns outside the home or place of business, dismissed hundreds of cases against people charged with felony carrying a pistol

(CPWL/CP) then pending in DC Superior Court and stopped prosecuting persons under the District's gun registration laws. The US Attorney's Office dismissed Ms. Smith's and Mr. Cassagnol's cases. Ps. Ex. # 2 (Cassagnol arrest / prosecution documents); Ps. Ex. # 8 (Smith arrest prosecution documents).

In contrast, the OAG chose to double down and re-filed misdemeanor UF and UA charges against virtually every person whose felony CPWL charges had been dismissed by the US Attorney's Office. The OAG chose to refile Ms. Smith's and Mr. Cassagnol's prosecutions under UF and UA. Ps. Ex. # 2 (Cassagnol arrest / prosecution documents); Ps. Ex. # 8 (Smith arrest / prosecution documents). The OAG also filed charges against Mr. Rouse after the Palmer decision came down. Ps. Ex. # 4, pgs. 2-3.

Finally, in response to Palmer, on September 23, 2014, the District of Columbia City Council passed and the Mayor signed (on 10/9/2014) the First Emergency Legislation which enacted certain changes to the District's gun registration regime, which the District contends brings its gun registration scheme within the scope of reasonable registration allowed by Heller and Palmer. Arrests and prosecutions under the First Emergency Legislation are not at issue in this case because the class period for the 2d Amendment Claim and the Nonresident Claim ands with the effective date of the First Emergency Legislation, 10/10/2014.

## II.   PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs have alleged Article III Standing for all three of their claims because they have alleged they were injured by the District's unconstitutional statutes.

A.    PLAINTIFFS' DEMANDS FOR MONEY DAMAGES, EQUITABLE RELIEF, AND
      DECLARATORY RELIEF GIVE THEM ARTICLE III STANDING TO BRING CLAIMS 1
      AND 2 WHETHER THEY ULTIMATELY PREVAIL OR NOT

The District contends in its Memorandum that the named plaintiffs lack Article III

standing because they caused their own injuries and so lack an Article III injury in fact. The

Supreme Court and our Court of Appeals and other Circuits have uniformly rejected this

argument. Memorandum, pgs. 9-13. Defendant's contention that plaintiffs will lose on the merits

does not defeat Article III standing. Hedgepeth ex rel. Hedgepeth v. Washington Metropolitan

Area Transit Authority, 386 F.3d 1148, 1152 (D.C. Cir. 2004). Plaintiffs' demands for money

damages, equitable relief, and declaratory relief give them Article III standing whether they

ultimately prevail or not.  Id.; Silverman v. Barry, 727 F.2d 1121, 1125 (D.C. Cir. 1984) citing Bell

v. Hood, 327 U.S. 678, 682 (U.S. 1946).

B.    PLAINTIFFS' ARE ENTITLED TO DECLARATORY RELIEF ON CLAIMS 1 AND 2 AND
      THEIR CLAIMS ARE NOT MOOTED BY PASSAGE OF THE NEW GUN REGISTRATION
      REGIME .

The general rule the District relies on (the "voluntary cessation" rule) for its contention that

plaintiffs are not entitled to declaratory relief is that a claim for declaratory relief must be dismissed

as moot if new legislation addressing the matter in dispute is enacted while the case is still pending.

ABA v. FTC, 394 U.S. App. D.C. 344, 346, 636 F.3d 641, 643 (2011).

But, the facts of this case justify application of a different rule. First, in addition to their

claim for compensatory damages, plaintiffs made a demand for nominal damages. "A plaintiff's

pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation

to confer standing to pursue declaratory relief and thereby prevents mootness." *See* <u>Yniguez v. Arizona</u>, 975 F.2d 646, 647 (9th Cir. 1992).

Second, although the District concedes in the abstract that its pre-<u>Palmer</u> gun registration regime was unconstitutional under the 2d Amendment, the District continues to deny that the District's enforcement of its gun registration regime by its police and prosecutors and by others acting pursuant to the statutes "inflicted injury" on plaintiffs, Memorandum, p. 20 *et seq.*, and so there is still a live controversy on this issue. <u>Id</u>. (holding a declaratory relief claim was not moot where it required "the court to determine whether a past violation occurred.")

In fact, the District dismissed the named plaintiffs' charges under CPWL, UF, and UA "without prejudice" rather than "with prejudice" and so this disposition belies the District's contentions that the issue is moot.

Finally, the voluntary cessation doctrine, even if assuming arguendo it mooted plaintiffs' 2d and 5th Amendment claims on enforcement of the District's gun registration regime, would not moot Claim 3, plaintiffs' right to return of their handguns and ammunition claim, because the District contests this claim and plaintiffs seek nominal damages and declaratory relief as well as compensatory damages. <u>Id</u>.

## C.   NO PRUDENTIAL STANDING CONCERNS THAT CAN MOOT A WELL PLED CLAIM.

There are no prudential standing concerns that can moot a well pled claim for declaratory relief where, as here, the defendant opposes liability and plaintiffs seek nominal damages in addition to compensatory damages.

III.   **ALL THREE CLAIMS STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED**

    A.   **CLAIMS 1 AND 2 STATE PREDICATE CLAIMS UNDER THE SECOND AND FIFTH
AMENDMENTS.**

The District's statement of its arguments in this introductory section is not well articulated. It is not clear whether the District is arguing that the alleged lack of causation undermines the predicate constitutional violation prong of Claims 1 and 2 in the first place, or that, assuming that plaintiffs state constitutional violations, the lack of causation arguments defeats municipal liability under the second "municipal policy" prong of plaintiffs' Claims 1 and 2. *See* Warren v. District of Columbia, 353 F.3d 36, 38 (2004)(to state a claim against a municipality the plaintiff allege a predicate violation of the Constitution or federal law and also that the municipality's custom or policy caused the violation). In either case, District does not establish a lack of causation for either prong. Id.

Plaintiffs **do** state claims against the District because (1) their claims as pled in the Second Amended Complaint do state predicate violations of the Constitution, and (2) a policy of the District caused the violation. Moreover Claims 1 and 2 support damages caused by plaintiffs' arrests and prosecutions under the District's unconstitutional gun registration statutes.

To the extent that the District is arguing that plaintiffs caused their own arrest and prosecutions, and so there is no predicate constitutional violation in Claims 1 and 2 (the District's unconstitutional gun laws caused their injuries), the argument fails and it is not supported by any of the cases the District cites. Plaintiffs were engaging in constitutionally protected conduct -- carrying handguns and ammunition – and the District caused their injury by executing its unconstitutional

Page 9

policy – its unconstitutional gun registration statutes. The fact that the arresting officer had probable cause to arrest under an unconstitutional statute does not defeat the claim that the statute was unconstitutional. Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. Or. 1994).

Plaintiffs address the causation in detail below. But plaintiffs also address it briefly in this section.

In Townes a plaintiff who was subjected to an illegal search and then prosecuted and ultimately convicted on the basis of the fruits of the illegal search brought a § 1983 claim after his conviction was overturned and sought as damages for the unconstitutional search the costs he incurred in defending himself against the federal criminal charges and the other damage's for the time he spent in jail. The Townes Court held that plaintiff had no claim to those damages for two reasons: (1) the judge's decision to not suppress and the prosecutor's conduct were intervening causes; and (2) the common law analogue of plaintiffs' claim provided only damage's occurring during the search, not after. Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999). Watt was a 3d Circuit case addressing the same issue. Hector v. Watt, 235 F.3d 154, 161 (3d Cir. 2000). Watt adopted the second rationale but not the first (causation) rationale.

First, the causation rationale of Townes does not apply to plaintiffs' Claims 1 and 2. There is no third party actor as there was in Townes. Plaintiffs did not cause their own damages by getting arrested; the District's policy – the unconstitutional statutes – were the cause. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978),

Moreover, Plaintiffs claim for damages is based on an analogy to the common law torts of false arrest and malicious prosecution. These two claims support damages due to the unlawful arrest and the injuries caused by the unconstitutional prosecution. Moreover, an independent,

alternative basis for plaintiffs' claim for damages due to the unconstitutional prosecution is the traditional common law theory that a wrongdoer is liable for the foreseeable consequences of their wrongful conduct.

But, the real basis of Townes and Watts is the Courts unwilling to allow the plaintiffs' in those cases to profit from their illegal conduct. In both cases the plaintiffs were guilty of criminal conduct and only a technically illegal search had saved them from conviction and jail. The Courts did not want to add damages to the windfall. Hector v. Watt, 235 F.3d 154, 161 (3d Cir. 2000).

In contrast, here plaintiffs were engaging in constitutionally protected conduct when they were arrested.

So, Watt and Townes are inapposite. Id. Watt turns on the scope of damages to which a plaintiff seeking damages for a violation of the 4th Amendment's prohibition on unreasonable searches is due. Townes deals with an "intervening cause" issue not present here. And the unconstitutional prosecution cases typified by Reyes which the District cites are poorly reasoned and not well followed. Id.

**B.**   **EACH CLAIM STATES A PREDICATE VIOLATION OF THE CONSTITUTION.**

As to the first Warren prong, each of plaintiffs' claims states a predicate violation of the Constitution.

### 1.      Claim 1 – 2d Amendment Claim.

The District concedes that its pre-Palmer gun registration regime was

unconstitutionalunder the 2d Amendment and so the District concedes the existence of a predicate

constitutional violation for Claim 1. Memorandum, p. 20.

### 2.      Claim 2 – Nonresident Claim 5th Amendment.

With respect to Claim 2, Defendant contends in Section II (B)(1) and (2) that Claim 2 of

the Complaint alleging violations of equal protection and the right to travel does not a predicate

constitutional violation under either the equal protection claim or the right to travel. Memorandum

pgs. 23-26. But it does. Defendants' policy of refusing to issue a license to nonresidents under the

pre-Palmer unconstitutional gun registration regime violated the equal protection clause, *See*

Guillory v. County of Orange, 731 F.2d 1379 (9th Cir. 1984), and it unreasonably burdens

plaintiffs' right to travel, *See, e.g.* Apethaker v. Secretary of State, 378 U.S. 500, 507 (1964) (right

to travel cannot be conditioned on forfeiture of First Amendment right of association); Dunn v.

Blumstein, 405 U.S. 330, 342 (1972).

### 3.      Claim 3 – Right to Return Claim

Defendant contends in Section II (B)(3) that Claim 3, plaintiffs' Right to Return Claim,

does not state a predicate constitutional violation. Memorandum pgs. 26-29. But, Claim 3 also

states a predicate constitutional violation under the 5th Amendment due process clause. This

analysis is different from the analysis relating to Claims 1 and 2 and so plaintiffs discuss both

prongs of Claim 3 (predicate violation and municipal liability) separately below.

C.    THE DISTRICT INJURED PLAINTIFFS BY ENFORCING ITS UNCONSTITUTIONAL GUN REGISTRATION REGIME

A municipality is liable under 42 U.S.C. § 1983 for constitutional deprivations caused by the municipality's implementation or execution of an unconstitutional municipal policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978); Baker, 326 F.3d at 1306 (the explicit setting of a policy by the government that violates the Constitution); Barnes v. District of Columbia, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (DOC's enforcement of the District's "10 p.m. cut-off" rule violated the due process rights of class members who were over-detained because of that rule).

1.    Municipality is liable for constitutional deprivations caused by the municipality's employees' enforcement of its unconstitutional municipal policy.

The paradigmatic municipal liability case establishing that a municipality is liable for constitutional deprivations caused by the municipality's enforcement of its unconstitutional municipal policy is Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Monell established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. Id. at 694; Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

In Monell a class of female employees of the Department of Social Services and of the Board of Education of the city of New York brought a § 1983 claim because the Board and the Department had as a matter of official policy compelled pregnant employees to take unpaid leaves

of absence before such leaves were required for medical reasons. Id. at 660-61. The Monell Court held that causation existed because it was the execution of the Board and the Department 's policy which inflicted the injury on the class members by forcing them to take unpaid leaves before they were medically required. Monell, by the forced unpaid leaves before they were medically required 436 U.S. at 694.

A classic example of the rule that establishing a municipal policy or ordinance is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation is Barnes in which this Court held two official DOC polices and one unofficial "custom or practice" adopted by the District caused plaintiffs' injuries. 793 F. Supp. 2d at 278. First, this Court held that that the DOC's (Department of Corrections) enforcement of the District's "10 p.m. cut-off" rule which embargoed releases between 10 p.m. and 7 a.m. violated the due process rights of class members who were over-detained because of that rule. 793 F. Supp. 2d at 278. Second, this Court also held that an official agency policy of strip searching court returns after they had been ordered released by a judge violated their 4th Amendment rights and subjected the District to liability for the deprivation of their constitutional rights because plaintiffs showed that these violations were caused by the execution of official policy. 793 F. Supp. 2d at 290. Finally, this Court held that a custom or practice of DOC employees' making late releases of prisoners in which the District acquiesced subjected the District to liability for the deprivation of the prisoners' constitutional rights. Plaintiffs showed that each policy or practice was unconstitutional and that employees of the DOC enforced the unconstitutional policy or practice. This showing was sufficient to establish the necessary causal connection between the municipal policy or practice and the constitutional deprivation, because an employee's act of enforcing an unconstitutional

municipal policy may be considered the act of the municipality itself. *See* <u>Monell</u>, 436 U.S. at 694;

<u>Barnes</u>, 793 F. Supp. 2d at 290.

### 2. Courts are virtually unanimous that a municipality is liable to persons arrested pursuant to an unconstitutional municipal ordinance or statute

Courts are virtually unanimous that a municipality is liable to persons arrested pursuant to

an unconstitutional municipal ordinance or statute because a police officer's act of enforcing an

unconstitutional municipal policy by making an arrest under the unconstitutional municipal

ordinance or statute is considered the act of the municipality itself. <u>Monell</u>, 436 U.S. at 694; *See*

<u>Nichols v. Village of Pelham Manor</u>, 974 F. Supp. 243, 258 (S.D.N.Y. 1997) ("It is almost self-

evident that plaintiff's claim against the [defendant municipality] for his arrest under an

unconstitutional [municipal] statute supports municipal liability under <u>Monell</u>.").

A sample of other decisions holding that a municipality is automatically liable in damages if

its police officers enforce an ordinance or statute later determined to be unconstitutional are the

following. In <u>Fields v. City of Omaha</u>, 810 F.2d 830 (8th Cir. 1987) Omaha police officer arrested

plaintiff under a municipal ordinance for refusing to identify herself. She was booked for loitering

and prowling. Because she was unable to make bail, she spent nine days in jail awaiting trial. Trial

was held, and the loitering and prowling charge was dismissed at trial.

In her subsequent civil suit seeking damages for the time she was detained pursuant to her

arrest and trial the Court of Appeals held that the Omaha loitering and prowling ordinance was

unconstitutionally vague on its face, in violation of due process. Therefore, Court of Appeals, the

City was liable to Fields under § 1983 for compensatory damages for all the time she spent in jail,

including the time awaiting trial and during her prosecution. <u>Fields v. Omaha</u>, 810 F.2d 830, 834

(8th Cir. 1987).

The Fields Court did not separately allocate damages and liability between plaintiff Ms. Fields' arrest and her subsequent prosecution. The Fields Court seems to have been implicitly applying the basic rule of tort damages that a wrongdoer is liable for all damages that can reasonably foreseen to flow from his misconduct.

In Cooper v. Dillon, 403 F.3d 1208, 1221-22 (11th Cir. 2005) the city of Key West was held liable for arresting plaintiff pursuant to a municipal criminal statute (a state statute adopted by the city) which was unconstitutional under the 1st Amendment and detaining him in the county jail for about three hours. An independent alternative holding in Cooper for municipal liability was that Cooper was a policy maker who chose to enforce the state statute. Id.

Some courts even extend the rule and hold a municipal corporation liable when its corrections officers enforce a *state* statute. *See e.g.*, Davis v. City of Camden, 657 F. Supp. 396, 402-04 (D. N.J. 1987)(county liable for strip-searches conducted by its jail guards pursuant to a strip search policy mandated by a state regulation).

Courts also hold that the presence or absence of probable cause to arrest someone under an unconstitutional municipal statute or ordinance is irrelevant to a determination of the municipality's liability. Grossman, 33 F.3d at 1203.

The same is true here. This is a 2d Amendment (and 5th Amendment) claim, not a 4th Amendment claim. Probable cause is not an element of either the 2d Amendment or the 5th Amendment. Grossman, 33 F.3d at 1203. Plaintiffs' constitutional claim does not stem from an absence of probable cause to arrest, but from the unconstitutionality of the statutes justifying the arrest. Id. Therefore, a finding of probable cause under the ordinance in no way renders the arrest "privileged," or immunizes the District from liability. Grossman, 33 F.3d at 1203. Plaintiffs suffered

Page 16

injury because of the District's enforcement of the unconstitutional statute precisely because of the ordinance's applicability to their constitutional conduct. Id.; Gerritsen v. City of Los Angeles, 994 F.2d 570 (9th Cir.) (upholding § 1983 damages action because of enforcement of unconstitutional permit requirement for handbill distribution in public park), *cert. denied*, 126 L. Ed. 2d 253, 114 S. Ct. 306 (1993).

Moreover, any qualified immunity the arresting officers may have had does not extend to the District. Owen v. City of Independence, 445 U.S. 622, 650-52 (1980) (discussing and rejecting the argument that personal immunity may be extended to a municipal corporation); Cooper v. Dillon, 403 F.3d at 1223 (a finding of qualified immunity for the arresting officer does not preclude municipal liability based on the alleged constitutional violation).  Anyway, tthe issue of individual liability is not raised where because the only defendant the plaintiffs are suing is the District.

### 3.  District is also liable for prosecutions conducted by the OAG under two independent theories.

Moreover, the District is also liable for prosecutions conducted by its prosecutors in the OAG under two independent theories.

First, the District is directly liable for enforcement of its unconstitutional gun registration regime by the OAG when the OAG prosecuted named plaintiffs and the other class members because the unconstitutional gun registration statutes were official policy of the government of the District of Columbia and the prosecutors are employees and agents of the District. Lederman v. United States, 539 F. Supp. 2d 1 (D.D.C. 2008). In Lederman, plaintiff Mr. Lederman was arrested and prosecuted for distributing leaflets on the grounds of the United States Capitol under a regulation considered to be a statute of the District of Columbia for § purposes and declared

unconstitutional under the 1st Amendment. Id. at 2-3. Plaintiff sued the District in § 1983 for prosecuting him under the unconstitutional regulation, not for arresting him. Id. at 3. Judge Roberts held that the District elected to prosecute Mr. Lederman for violating a facially unconstitutional regulation when it was free to elect otherwise. Id. at 4. Moreover, in electing to prosecute Mr. Lederman, Judge Roberts held that the "Attorney General acted under color of a District law and executed the District's policy or custom, . . . made by . . . those whose edicts or acts may fairly be said to represent official policy." citing Monell, 436 U.S. at 694, Lederman, 539 F. Supp. 2d at 4.

Judge Roberts rejected the District's contention that the fact that the arresting officers had probable cause for the arrest immunized the District from § 1983 damages for the prosecution. Id. at 3. The actionable conduct was the prosecutor's subsequent election to prosecute. Id. at 4.

Judge Roberts also rejected the District's contention that the fact that the arresting officers had qualified immunity immunized the District as well. Any qualified immunity the arresting officers may have does not extend to the District. Lederman v. United States, 2007 U.S. Dist. LEXIS 27521, *14-15 (D.D.C. Apr. 13, 2007) citing Owen v. City of Independence, 445 U.S. 622, 650-52 (1980) (discussing and rejecting the argument that personal immunity may be extended to a municipal corporation); Singh v. District of Columbia, 55 F. Supp. 3d 55, 75 (D.D.C. 2014).

Finally, in a previous opinion, Judge Roberts rejected the District's contention that the prosecutorial immunity recognized by the Supreme Court in Imbler v. Pachtman, 424 U.S. 409 (1976) that protects prosecutors from individual liability extends to immunize the District. Lederman v. United States, 2007 U.S. Dist. LEXIS 27521, *13-14 (D.D.C. Apr. 13, 2007).

Other Circuits have also allowed a § 1983 claim for damages against a municipality for a prosecution under an unconstitutional ordinance. The Tenth Circuit held that a plaintiff "has standing to sue for damages based on her prosecution (including nominal damages, which she sought)" for a municipal ordinance that was unconstitutional under the 1st Amendment even though "the section 3-1 [bill posting] charge against Faustin was dismissed . . . and she is not being prosecuted under section 3-1 at this time." Faustin v. City & Cnty. of Denver, 268 F.3d 942, 947-48 (10th Cir. 2001) *subsequent history not affecting rationale.*

> **a.   where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an "independent" decision that results in a deprivation of liberty**

Secondly, a separate, alternative and independent basis for holding the District is liable to plaintiffs for all injuries they suffered including injuries suffered as a result of the initiation of a prosecution is the traditional tort rule that

The Lederman court did not address this theory. And the District suggests that it is foreclosed by Townes and Watts.

But, a closer look reveals that Townes and Watt are distinguishable on their facts. Moreover, The Second Circuit has subsequently elaborated on this exception to Townes's independent judgment rule, noting the "tension" between "the principle that the intervening exercise of independent judgment will break a causal chain and the principle that defendants in section 1983 cases are liable for consequences caused by reasonably foreseeable intervening forces." Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000) (internal quotation marks and citations omitted).

Damages for false arrest should cover pros a plaintiff may recover, as damages for a Fourth-Amendment violation, expenditures for legal representation incurred while litigating the underlying criminal proceeding. *See* Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988). Significantly, the plaintiffs in Borunda claimed that they had done nothing illegal and apparently the jury accepted their version of events.

Moreover, as stated above, the holding in Townes conflicts with the basic rule that a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. *See also*, Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1249-50 (D.N.M. 2009).

   b.   out-of-Circuit cases such as Richardson v. South Euclid, 904 F.2d 1050 (6th Cir. 1990) and Reyes v. City of Lynchburg, 300 F.3d 449, 458 (4th Cir. Va. 2002) holding that defending against a prosecution brought under an unconstitutional statute does not state a claim under the 5th Amendment are both non-persuavsive and distinguishable

The out-of-Circuit cases the District cites such as Richardson v. South Euclid, 904 F.2d 1050 (6th Cir. 1990) and Reyes v. City of Lynchburg, 300 F.3d 449, 458 (4th Cir. Va. 2002) holding that defending against a prosecution brought under an unconstitutional statute does not state a claim under the 5th Amendment are both non-persuavsive and distinguishable. First, Richardson and Reyes have not been universally followed. *See e.g.,* Hoekstra v. City of Arnold, 2009 U.S. Dist. LEXIS 7465, *22-23 (E.D. Mo. Feb. 3, 2009). Moreover, other Circuits have

reached the opposite result. *See e.g.*, <u>Faustin</u>, 268 F.3d at 947-48. In fact, this Court has also reached an opposite conclusion. <u>Lederman</u>, 539 F. Supp. 2d at 4.

But, most importantly, the cases are poorly reasoned. In <u>Richardson</u>, 904 F.2d 1050 the Richardsons argued that the injuries they suffered as a result of South Euclid's unsuccessful prosecution amounted to a constitutional deprivation under the due process because he statute was unconstitutionally vague under the 14th Amendment and because the statute violated the 1st Amendment. <u>Id</u>. at 1052. The 6th Circuit denied the claim on the theory that "the Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty 'accomplished without due process of law,'" relying on <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979). <u>Reyes</u> followed the rationale of <u>Richardson.</u>

It is not clear why the Circuit Courts would analyze wrongful prosecution claims under <u>Baker v. McCollan</u> in the first place. <u>Baker v. McCollan</u> is 100% distinguishable from a claim of wrongful prosecution under an unconstitutional statute. In <u>Baker</u> the Supreme Court held that a sheriff who held a person, Mr. Baker, who was arrested on a "wrong warrant" (*i.e.*, a warrant directed to someone else, in this case Baker's brother who had obtained a copy of Baker's license identical in every respect to Baker's license except for the picture) for three days over a New Year's weekend before investigating Baker's protestations of innocence did not violate the due process clause. The Sherriff was a law enforcement officer and Mr. Baker was arrested pursuant to a facially valid warrant and placed in his jail on the basis of that warrant. The only issue was the factual question of whether Mr. Baker the person named in the warrant.

Plaintiffs' wrongful prosecution claim is completely different. A prosecutor, an expert on constitutional law, at his or her leisure, after consulting with the arresting officer and reviewing the

file, chose to initiate a prosecution of plaintiffs. The claim in <u>Baker</u> was that the Sherriff should have been quicker about commencing an investigation about Mr. Baker's claims of innocence. The prosecutors in this case acted at their leisure. Promptness was not an issue. The gravamen of their claim is not that the prosecutors acted too slowly but that they, after deliberation, prosecuted plaintiffs under an unconstitutional statute.

Moreover, in <u>Richardson</u> and <u>Reyes</u> the statutes under which the plaintiffs were prosecuted were unconstitutional.  Therefore, the Richardson Court should have analyzed the case under <u>Monell</u>. The <u>Richardson</u> Court held that plaintiffs got all the process they were due because they got notice and a trial. Richar<u>son</u>, 904 F.2d at 1053. But, this ignores the fact that the prosecution violated both a different aspect of the 14th Amendment and also the 1st Amendment. Enforcing a statute unconstitutional against them obviously violated their 1st Amendment rights and since the statute, the prosecutor, and the judges were all municipal actors acting pursuant to an unconstitutional municipal policy, the city was liable. <u>Lederman</u>, 539 F. Supp. 2d at 4 *citing* <u>Monell</u>, 436 U.S. at 694-95. The same is true for the violation of the 14th Amendment. <u>Id</u>.

Both <u>Reyes</u> and <u>Richardson</u> have well-reasoned dissents which are better reasoned and more persuasive.

This theory does not raise any <u>Townes</u> causation issues with respect to prong one because probable cause is not relevant to the claim. <u>Lederman</u>, 539 F. Supp. 2d at 4 *citing* <u>Monell</u>, 436 U.S. at 694-95. Nor does it raise any <u>Townes</u> causation issues with respect to prong two because the District enforced its gun policy directly through its employees, the OAG, so there is no third party causation issue. <u>Monell</u>, 436 U.S. at 694-95.

### 4.  District liable for prosecutions by the US Attorney's Office.

The District is also liable to named plaintiffs and the class members for the enforcement of the District's gun registration regime by the "United States attorney for the District of Columbia or his assistants" because when the AUSAs prosecuted gun charges under the pre-Palmer gun statutes they were enforcing the policy of the District pursuant to an exercise of authority granted to them by an "Act of Congress applicable exclusively to the District of Columbia." *See* Daskalea v. Wash. Humane Soc'y, 480 F. Supp. 2d 16, 29-30 (D.D.C. 2007)(District liable for Humane Society's enforcement of District statute authorizing Humane Society to seize animals without prompt post seizure hearings in violation of due process clause because by enforcing the District's statute it was acting pursuant to a "policy" of the District of Columbia regardless of the District lack of "oversight or control" of the Humane Society); Fletcher v. District of Columbia, 370 F.3d 1223, 1227 (D.C. Cir. 2004) ("Fletcher I")(members of the federal Parole Commission are acting under color of state law when they exercise powers granted to them or their agency pursuant to an "Act of Congress applicable exclusively to the District of Columbia").

The District's gun registration regime consists in statutes enacted by the City Council. Each statute represents the "explicit setting of a policy by the [District] that violates the Constitution." Baker, 326 F.3d at 1306, *citing* Monell, 436 U.S. at 694-95.

The AUSA prosecutes District of Columbia gun offenses (and other DC Code offenses) such as CPWL when they are punishable by more than a year in jail. D.C. Code § 23-101(a)-(c). The AUSA also prosecutes the District of Columbia gun offenses of UF and UA when they are joined in a prosecution of CPWL or other DC Code offenses punishable by more than a year in jail. D.C. Code § 23-101(c) and (d), which allocates prosecutorial authority between the United

States and the District of Columbia. Section 23-101 is part of an "Act of Congress applicable exclusively to the District of Columbia[2]" and thus is "considered to be a statute of the District of Columbia" for purposes of § 1983. 42 USCA § 1983.

Therefore, the US Attorney for the District of Columbia prosecuted violations of the District's unconstitutional gun registration statutes under color of state law. 42 USCA § 1983. This makes the AUSAs state actors for purposes of § 1983 when they prosecute gun charges.

This conclusion is not a departure from settled law. It is well settled that members of a federal agency act under color of state law when they exercise powers granted to them or their agency pursuant to an "Act of Congress applicable exclusively to the District of Columbia." Fletcher I, 370 F.3d at 1227; Settles v. United States Parole Comm'n, 429 F.3d 1098, 1104 (2005); Bolden-Bey v. United States Parole Comm'n, 731 F. Supp. 2d 11, 14 (D.D.C. 2010)("a cause of action under § 1983 will lie against the individual members of the Commission when acting pursuant to the Revitalization Act," even though the USPC itself "retains the immunity it is due as an arm of the federal sovereign").

Therefore, holding the District liable for execution of its official policy when the AUSAs prosecuted people under its unconstitutional gun statutes  is exactly like the situation in Daskalea where Judge Penn held that the specific statutory authority to "prosecute all violations of the [District's] animal cruelty laws," made the Humane Society a state actor for purposes of § 1983, and, that that the specific statutory authority made the District liable for the Humane Society's

---

[2] As stated above, D.C. Code § 23-101 derives from an Act to Establish a Code of Law for the District of Columbia, ch. 854, § 932-933, 31 Stat. 1189, 1340-41 (1901.

exercise of that authority. <u>Daskalea v. Wash. Humane Soc'y</u>, 480 F. Supp. 2d 16, 24-28, 28-30 (D.D.C. 2007).

In <u>Daskalea</u> the DC Council passed a statute which, among other things, authorized the Humane Society, a *sui generis* entity created by an Act of Congress, to seize, to detain, and even to destroy pets and other animals without giving the owners a prompt post seizure hearing at which the owners could challenge the Humane Society's actions. D.C. Code § 22-1001 *et seq.* cited in <u>Daskalea</u>, 480 F. Supp. 2d at 21. The court held that Section § 22-1004 violated procedural due process. <u>Daskalea</u>, 480 F. Supp. 2d at 34-36. The Court also held that the Humane Society was not a suable entity although it was acting under color of state law when it exercised the powers granted it by the D.C. Council. <u>Daskalea</u>, 480 F. Supp. 2d at 24.

The District contended that it was not liable under <u>Monell</u> for the conduct of the Humane Society in seizing, detaining, and destroying animals pursuant to the powers the D.C. Council granted it pursuant to D.C. Code § 22-1004 because the Humane Society "act[s] on its own, pursuant to independent statutory authority granted by Congress, with no oversight or control by the District." <u>Daskalea</u>, 480 F. Supp. 2d at 28. Judge Penn characterized the District's argument as "essentially [the District is] challenging whether Plaintiffs have adequately alleged causation." <u>Daskalea</u>, 480 F. Supp. 2d at 28. Judge Penn rejected the District's causation argument because when the Humane Society enforced the statute as enacted by the DC Council, it was acting pursuant to a "policy" of the District of Columbia. <u>Daskalea</u>, 480 F. Supp. 2d at 29-30. Here, when the AUSAs enforced the District's unconstitutional gun registration statutes as enacted by the DC Council, they were also acting pursuant to a "policy" of the District of Columbia. The AUSAs acted pursuant to a grant of power from the District and they also enforced a District policy, that is, a District statute enacted by the D.C. Council.

Judge Penn recognized in <u>Daskaea</u>, a contrary result would mean that "a municipality could evade § 1983 by outsourcing enforcement of an unconstitutional law to private parties." 480 F. Supp. 2d at 30 n.18.

Significantly, plaintiffs are not asking this Court to rule that a § 1983 claim lies against the AUSAs. Nor are Ms. Smith and Mr. Cassagnol contending that the US Attorney's Office is a suable entity. Plaintiffs' argument is that the District is liable for the conduct of the AUSAs when they prosecuted Ms. Smith and Mr. Cassagnol under the District's unconstitutional gun registration regime because they acted under a grant of power by an "Act of Congress applicable exclusively to the District of Columbia" and pursuant to a policy of the District of Columbia. Thus, the AUSAs were exercising the District's enforcement authority when prosecuted them. <u>Daskalea v. Wash. Humane Soc'y</u>, 480 F. Supp. 2d 16, 27 (D.D.C. 2007) *citing* Williams, 364 U.S. App. D.C. at 384, 396 F.3d at 414 (quoting Brentwood Acad., supra).

This case is distinguishable from <u>Williams v. United States</u>, 396 F.3d 412, 415 (2005). In <u>Williams</u> the plaintiff sued a special police officer of the Government Printing Office for unlawful arrest under § 1983 alleging that the officer acted under color of DC law because he arrested plaintiff pursuant to a DC statute, namely, disorderly conduct -- a misdemeanor offense under the D.C. Code, D.C. Code § 22-1321. <u>Williams</u>, 396 F.3d at 413. But, the Court held that the plaintiff could not sue a special police officer under § 1983 because the special police officer was not acting under color of state law when he arrested plaintiff because his police powers came from a grant of authority under a federal law, 44 USCS § 317. <u>Williams</u>, 396 F.3d at 413, 415.

<u>Community for Creative Non-Violence v. Unknown Agents of United States Marshals Service</u>, 791 F. Supp. 1, 2 (D.D.C. 1992)(dismissing § 1983 claims against deputies of the United

States Marshal for the Superior Court of the District of Columbia because the deputies were federal actors even when they made arrests upon a warrant issued by the Superior Court) is also distinguishable. The Superior Court Marshals act pursuant to a grant of authority under a federal statute. *See* . Johnson v. Gov't of the Dist. of Columbia, 734 F.3d 1194 (2013).

Here, the AUSAs exercised powers granted to them by D.C. Code § 23-101, a District of Columbia statute.

Johnson is thus distinguishable. Id. at 1198-1201. Johnson held that the District was not liable in § 1983 for injuries caused to its arrestees by the Superior Court Marshal's strip-search policies because the Superior Court Marshal Todd Dillard set his strip-search policies without input from the District, and the statute authorizing him to act as the Superior Court Marshal and handle arrestees and set strip-search policies was a federal statute, not a District statute.

In this case, as in Daskalea, the unconstitutional policy is not the strip-search policy of a federal actor, as in Johnson, but statutes enacted by the DC Council, which represent "the explicit setting of [District] policy." Baker, 326 F.3d at 1306, *citing* Monell, 436 U.S. at 694-95.

In Fletcher v. District of Columbia, 370 F.3d 1223 (D.C. Cir. 2004) ("Fletcher I"), the court held that the Revitalization Act is an "Act of Congress applicable exclusively to the District of Columbia," such that members of the Commission "are amenable to suit under § 1983 for actions taken pursuant to that Act." 370 F.3d at 1227. Settles v. United States Parole Comm'n, 429 F.3d 1098, 1104 (2005).

The Court subsequently clarified that when the Commission acts pursuant to the Revitalization Act it does not lose its character as a federal agency. Nor does it becomes for

purposes of § 1983 a mere organ of the District of Columbia. <u>Settles v. United States Parole Comm'n</u>, 429 F.3d 1098, 1106. Therefore, Mr. Settles could not sue the Commission because of the sovereign immunity of the US. Here, plaintiffs are not suing either the AUSAs or the US Attorney's office. Plaintiffs are suing the District because the District passed unconstitutional statues and executed them through the AUSAs who are authorized to enforce then by virtue of a District statute.

Nor does <u>Eastridge v. United States</u>, 2007 U.S. Dist. LEXIS 9940, *36 (D.D.C. Feb. 12, 2007) bar plaintiffs' Claims 1 and 2. Judge Collyer acknowledged the question whether the AUSAs are state actors when they prosecute criminal cases in the Superior Court under DC statutes. But, Judge Collyer did not reach the issue because she held that the AUSAs were entitled to absolute prosecutorial immunity. <u>Eastridge</u>, 2007 U.S. Dist. LEXIS 9940, at *28. But, in any event, the prosecutorial immunity of the AUSAs would not extend to the District. <u>Lederman v. United States</u>, 2007 U.S. Dist. LEXIS 27521, *13-14 (D.D.C. Apr. 13, 2007); <u>Lederman</u>, 539 F. Supp. 2d at 4.

Moreover, D.C. officials "provided significant encouragement," and otherwise participated in the prosecution of the prosecutions of Ms. Smith and Mr. Cassognol. *See* <u>Williams</u>, 396 F.3d at 415. As the District concedes, the only cases the AUSA prosecutes are cases referred to it by a police agency. Memorandum, p.11. The MPD referred the arrests of Mr. Cassagnol and Ms. Smith to the AUSA. MPD officers prepared the Gerstein and swore out the facts on which the complaint was based and were the papering officers. MPD officers assisted in the prosecution. The MPD arresting officers provided the forensics reports.

The delegation of power to prosecute cases and the provision of "significant encouragement" even without the power to cause compel the AUSA suffices to make the District liable for the AUSA's prosecutions under the District's unconstitutional gun registration regime. Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 300 n.3 (2001) (exercise coercive power or provide such significant encouragement expressed in the disjunctive so only one is required).

Even the fact that the AUSA exercises independent authority does not break the chain of causation under Townes. The AUSA may decide not to prosecute some arrestees but, the fact remains, when the AUSA prosecutes a gun violation it does so under a grant of power by an "Act of Congress applicable exclusively to the District of Columbia" and pursuant to a policy of the District of Columbia. Thus the AUSA is exercising the District's enforcement authority when it does prosecute. Daskalea, 480 F. Supp. 2d at 27 *citing* Williams, 396 F.3d at 414 (*quoting* Brentwood Acad., *supra*).

This theory does not raise any other Townes causation issues with respect to a predicate constitutional violation because probable cause is not relevant to the claim. Lederman, 539 F. Supp. 2d at 4 *citing* Monell, 436 U.S. at 694-95. Nor does it raise any Townes causation issues with respect to policy of the District because the District enforced its gun policy directly through its AUSAs who prosecuted under the gun statutes by virtue of a District statute, D.C. Code § 23-110, so there is no third party causation issue. Monell, 436 U.S. at 694-95.

Moreover, because the wrongful prosecution claim is analogous to a common law claim in terms of the interests it serves and the damages sought – injury due to an unlawful prosecution, plaintiffs are entitled to the damages they seek from the claim – injuries caused by criminal

proceedings subsequent to presentment. See <u>Townes v. City of New York</u>, 176 F.3d 138, 147 (2d Cir. 1999) (recognizing distinction between injuries caused by unreasonable search and seizure as opposed to those caused by subsequent criminal proceeding; permitting recovery for only the former); <u>Hector v. Watt</u>, 235 F.3d 154, 157 (3rd Cir. 2001) ("damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns").

Moreover, as a separate, independent alternative basis of recovery, plaintiffs are entitled to recover from the District damages caused by post-indictment legal process because such damages are the consequences of their arrests by the MPD. *See e.g.*, <u>Train v. City of Albuquerque</u>, 629 F. Supp. 2d 1243, 1246 (D.N.M. 2009).

### D.   CLAIM 3 STATES A PROCEDURAL DUE PROCESS CLAIM:RIGHT TO RETURN CLAIM.

The District has a policy of refusing to return guns and ammunition from persons arrested or charged under the gun statutes pursuant to D.C. Code § 22-4517(b). The law requires the District to return the guns and ammunition when they are no longer needed for evidence or to give owners notice and a hearing at which the District has to establish its right to keep the guns and ammunition. Second Amended Complaint, ¶ ¶ 137-144.

This claim covers all persons from whom guns have been seized by the MPD and other District employees and agent – even if they are convicted – and whether or not the statute under which they were convicted is constitutional.

The District has an obligation to return guns and ammunition it no longer needs for evidence whether the owner was arrested under a constitutional or unconstitutional statute, and whether the owner is permitted to possess or own guns and ammunition in the District, provided the owner retains some ownership rights. Henderson v. United States, 135 S.Ct. 1780, 1783 (2015) (holding that Section §922(g) does not bar a transfer of a felon's guns to a sales agent unless it would allow the felon to later control the guns).

The District was obligated to return the guns and ammunition when the District no longer needed them as evidence, is a legal question that has already been answered in the affirmative for the Right to Return plaintiffs. Fuentes v. Shevin, 407 U.S. 67, 82 (1972); Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011).

The District's seizures of handguns and ammunition actually involves two deprivations: the first being the initial seizure of the handguns and ammunitions incident to plaintiffs' arrests, and the second being the District's subsequent and continued refusal to return the property following dismissal of the gun or ammunition charges **without a court order**. Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011).

Plaintiffs are entitled to **pre-deprivation** process (notice and a hearing) for the second deprivations and requiring plaintiffs to file Rule 41 motions or a claim with the Property Clerk under **D.C. Code § 22-4517(b)** after the second deprivations **is itself a violation of due process.** Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995 (1972); Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011). *See also* Brown, 2015 U.S. Dist. LEXIS 94323, *41,*42-43 (failing to return property seized for civil forfeiture after property determined to be not subject to forfeiture or failing to return property seized for evidence when it is no longer needed violates procedural due

process) *citing* Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011) (city violated due process by rejecting a criminal defendant's request for his property after the underlying charges had been dismissed); McClendon v. Rosetti, 460 F.2d 111, 116 (2d Cir. 1972) (police violated due process by retaining money or property that was no longer needed as evidence).

Thus, the availability of Rule 41 is not a bar to this claim, even if Rule 41 were available, because the cases cited above all state the rule that shifting the burden to the owner to initiate a proceeding to recover property when the owner is entitled to pre-deprivation process itself violates due process. *See e.g.*, Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995 (1972); Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011); McClendon v. Rosetti, 460 F.2d 111, 116 (2d Cir. 1972) (police violated due process by retaining money or property that was no longer needed as evidence).

Moreover, Rule 41 is in the nature of an administrative remedy and in a procedural due process claim the owner does not have to exhaust available post-deprivation state remedies if the plaintiff is entitled to **pre-deprivation** process. Moreover, even if the owner is entitled only to post deprivation remedies the owner does not have to exhaust available post-deprivation state remedies if the deprivation were made pursuant to a policy or a practice as opposed to a random unforeseeable event. Fuentes, 407 U.S. at, 82; Walters v. Wolf, 660 F.3d at 314.

A plaintiff in a procedural due process claim has to consider the availability of post-deprivation state remedies only when deprivation of property is random or unauthorized. Parratt v. Taylor, 451 U.S. 527 (1981) and Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). Moreover, the availability of a state remedy as a substitute for "process" is not relevant where, as here, the conduct occurs pursuant to a pattern and practice or an official policy. Tri County, at

*516.*; <u>Doe by Fein</u>, 93 F.3d at 868 *citing* <u>Zinermon v. Burch</u>, 494 U.S. 113, 129-30 (1990). A plaintiff must prove the lack of an adequate post-deprivation remedy under state tort law only when the conduct which deprives them of a protected interest is random and unpredictable such that the government cannot provide for process. <u>Doe</u>, at 868-869.

The District's refusal to return the named plaintiffs' guns and ammunition to them when it was not needed was not a "random" or "unauthorized" act, but rather was based on an official policy and/ or practice. *See* <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 436-437 (1982)(when state officials deprive an individual of property pursuant to a state procedure or policy[3] without predeprivation process, a § 1983 action may be brought regardless of whether there are adequate state post-deprivation remedies); <u>Walters v. Wolf</u>, 660 F.3d at 313.

Moreover, Rule 41 is not available in the first place because of **D.C. Code § 22–4517(b)**, which is the District's basis for seizing and retaining guns in the first place, Memorandum, [Document # 23] p. 28.

D.C. Code § 22–4517(b) purports to designate pistols as "dangerous articles," thereby making pistols subject to summary seizure as "nuisances." D.C. Code § 22–4517(b) sets forth a procedure by which the Property Clerk is designated to resolve conflicting claims to ownership between the owner and the District. The Superior Court's jurisdiction to return property seized in connection with a criminal proceeding under Rule 41 (g) motion is ancillary to the criminal proceeding in which it is brought. <u>District of Columbia v. Dunmore</u>, 749 A.2d 740, 742 (D.C.

---

[3] There is a difference between regular procedures for the return of property and remedies to pursue if property is not returned according to those regular procedures. <u>Gates</u>, 623 F.3d at 410-411.

2000). The Court loses that auxiliary jurisdiction when there is more than one claimant to the property. Id. A Superior Court judge cannot resolve claims of ownership under a Rule 41 motion. Id.

D.C. Code § 22–4517(b) was unconstitutional under the 2d Amendment before the Emergency Act amendment for the same reason that the CPWL and the UF statute was unconstitutional under the 2d Amendment (and the 5th Amendment for nonresidents) – the District conditioned exercise of 2d Amendment rights on issuance of a license and then refused to issue licenses to anyone. Palmer, supra. See also Herrington v. United States, 6 A.3d 1237, 1244-45 (D.C. 2010)(UA statute unconstitutional because where the Constitution -- in this case, the Second Amendment -- imposes substantive limits on what conduct may be defined as a crime, a legislature may not circumvent those limits by enacting a statute that presumes criminality from constitutionally-protected conduct and puts the burden of persuasion on the accused to prove facts necessary to establish innocence). D.C. Code § 22–4517(a) termed a pistol a "dangerous article." Subsection (b) declared any "unlawfully owned, possessed, or carried" a nuisance. But, there was no way for a private citizen or a nonresident to possess a pistol. Also, declaring all pistols "dangerous articles" and thus subject to seizure and retention by the District without more violated both the 2d Amendment and the due process of the 5th Amendment.

Leyland v. Edwards, 797 F. Supp. 2d 7, 10 (D.D.C. 2011) and Baird v. Holton, 806 F. Supp. 2d 53, 57 (D.D.C. 2011), the cases the District cites are distinguishable for several reasons and thus they do not change the outcome with respect to the availability of Rule 41. First of all, both cases turned in large part on the courts' characterization of the guns as "contraband" because "an unregistered firearm is contraband, and that an individual has no right to its return." Leyland, 2011 U.S. Dist. LEXIS 75647 at *3; Baird, 806 F. Supp. 2d at 59. But, treating unregistered

firearms as contraband when there was no way for private citizens to register them is a violation of the 2d Amendment. Palmer, *supra*.  Moreover, (1) there was no allegation of a policy and practice of seizing and retaining guns and ammunition there as there is here; (2) those cases are "Bivens" claims not § 1983 claims and a Bivens claim will not lie "where there is a congressional declaration prohibiting recovery of monetary damages or remitting recovery to another equally effective remedy." Leyland, 797 F. Supp. 2d at 10. Conversely, exhaustion of "state" remedies is not relevant to plaintiffs' § 1983 claims; (3) Leyland and Baird were decided under the Park Police property statute (Leyland, 797 F. Supp. 2d 7, 9) and the U.S. Capitol Police property statute (Baird, 806 F. Supp. 2d at 54) respectively (hence the Bivens actions) not **D.C. Code § 22-4517(b)** and the **DC Property Clerk statute**, and it is not clear whether the property clerks of those agencies had a duty to return non-contraband property when it was no longer needed as evidence.

Most importantly, neither case conducted a Mathews/ Walters/ Lathon due process analysis to see whether the refusal to return the firearms when the cases were over constituted a second (post seizure) deprivation requiring pre-seizure notice and a hearing. Walters, 660 F.3d at 314; Lathon, 242 F.3d at 843. Under this analysis, forcing someone to file a Rule 41 to obtain return of non-contraband property is not making them exercise an adequate state remedy but rather depriving them of property without notice and a hearing; and (4) neither plaintiff in Leyland or Baird alleged that the property clerk was acting according to a policy or practice and so the Parratt/ Hudson doctrine applied.

Similarly, pre-Palmer cases which categorized all firearm as contraband are no longer good law. Even a gun owner convicted under the federal "felon in possession" statute, 18 USCS § 922, retains an ownership right in their guns. Henderson v. United States, 135 S.Ct. 1780, 1783 (2015)

(holding that Section §922(g) does not bar a transfer of a felon's guns to a sales agent unless it would allow the felon to later control the guns).

So, even if an owner from whom the District seized handguns or ammunition is prohibited by their conviction under a DC statute from owning or possessing a gun in the District, they still have ownership rights to own or possess a gun somewhere, or to at least receive the proceeds from its sale. *See* Henderson, 135 S.Ct. at 1783. Even owners who are no longer entitled to "possess" or "carry" pistols under either the federal "felon in possession" statute, 18 USCS § 922, or the District's "felon in possession" statute, D.C. Code § § 22–4503, are entitled to appoint a designee to receive their guns and ammunition and to sell them and then to deliver the proceeds to the owners. Id. Since the District lacked any sort of procedure whereby owners no longer entitled to "possess" or "carry" pistols because of a legal disability were entitled to appoint a sales agent are members of this class. Under the due process clause the District was obligated to have a procedure in place to protect their substantive rights. *See* Gates v. City of Chicago, 623 F.3d 389, 410 (7th Cir. 2010)(city's lack of *procedures* for the return of property seized as evidence which comport with due process actionable).

Moreover, **D.C. Code § 22–4517(d)** also violates the due process clause by inverting the burden of process by requiring owners to file claims and failing to require the District provide notice when the District no longer needs the guns and ammunition as evidence. Fuentes; 407 U.S. at 82; Walters v. Wolf, 660 F.3d at 314; Brown, 2015 U.S. Dist. LEXIS 94323, *41,*42-43.

The final possible basis for the District's retaining guns and ammunition when it is no longer needed is D.C. Code § 5-119.06(d) (the Property Clerk statute). But, guns and ammunition

seized and held as evidence are not subject to the property clerk statute's "one year evidence rule" for several reasons.

Even if they are, the statute violates the 5th Amendment because allowing the government to hold guns and ammunition for a year even when is case is over is not rationally related to any law enforcement goal. Moreover, allowing the government to hold guns and ammunition for a year without a prompt post seizure hearing violates the named plaintiffs' due process rights.

Moreover, plaintiffs do not base their claim to a pre-deprivation notice and a hearing on City of West Covina v. Perkins, 525 U.S. 234, 241 (1999) as the District seems to think. See Memorandum, p. 29. But, since there exists more than one reason or basis for the seizure (e.g., evidence, nuisance) the District's notice must tell owners what is the basis for the seizure and retentions so owners know which retrieval procedures apply to their seizure. Ford v. Turner, 531 A.2d 233, 237-38 (D.C. 1987) (when more than one basis for seizing property exists and there are multiple reasons the government is holding the property and thus multiple procedures may apply for the retrieval of the property the Property Clerk must give notice of why the property is being held or the steps an owner can take to challenge the government's action).Moreover, for the same reason, the District is obligated to give such notice at or near seizure. *See* Perkins, 525 U.S. at 241.

The District does not state any other basis for the seizures and retentions of the guns and ammunition.

## IV.   CLAIMS 1 AND 2 STATE A CLAIM FOR SEALING OR EXPUNGING PLAINTIFFS' ARREST/PROSECUTION RECORDS.

Plaintiffs need court order to expunge arrest records because as defendant points out, the current statute and court rule (Superior Court Rule 117) do not provide a mechanism for sealing or expunging records when an arrest is pursuant to an unconstitutional statute. Moreover, there is

no current statutory or court rule procedure authorizing sealing or expunging records  or

prosecutions taken pursuant to an unconstitutional statute.

A person arrested or prosecuted under an unconstitutional statute has not committed a

crime even when probable cause is present. Fields; Lederman, *supra.*

This justifies the relief plaintiffs seek. Sepulveda-Hambor, 885 A.2d at 307 (*quoting*

Rezvan v. District of Columbia, 582 A.2d 937, 938 (D.C. 1990)).


## V.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Document # 23] should be denied.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne<br>**WILLIAM CLAIBORNE**<br>D.C. Bar # 446579 | /s/ Joseph A. Scrofano<br>**JOSEPH A. SCROFANO**<br>D.C. Bar # 994083 |
| Counsel for plaintiffs on behalf of themselves and the putative class members | Counsel for plaintiffs on behalf of themselves and the putative class members |
| 2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | 406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |