## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.,*<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 15-737 (ESH) |

## REPLY IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Despite Plaintiffs' occasional reference to the "enforcement" of the District's pre-*Palmer* gun laws, they expressly concede that "[t]his is a 2[n]d Amendment (and 5th Amendment) [case], not a 4th Amendment [case]." Pls.' Opp'n at 16. They do not actually bring claims related to their arrests or their prosecutions or even suggest that the arrests were unsupported by probable cause. *See id.* ("Plaintiffs' constitutional claim does not stem from an absence of probable cause"). Rather, in this action, Plaintiffs challenge:  (1) the constitutionality of the gun laws invalidated in *Palmer*, and (2) the District's process for returning guns and ammunition confiscated as contraband.

The first of these challenges arises under claims 1 and 2 of the amended complaint and turns on the theory that the pre-*Palmer* gun laws infringed the rights to bear arms, to travel, and to equal protection. Based on that theory, Plaintiffs seek damages and injunctive relief related to their post-arrest legal

process. Aside from nominal damages, however, they seek no relief directly related to the denial of the rights they assert.

As explained in the District's motion to dismiss, there are several discrete problems with this claim. *See* Defs.' Mot. at 9-17, 20-26, 29-30. Two warrant brief clarification in this Reply. First, the amended complaint does not allege an equal protection or right to travel claim; Plaintiffs' cursory response does not justify a different conclusion. Second, even if Plaintiffs are correct that the existence of the pre-*Palmer* gun laws infringed the rights they assert, they are not entitled to recover for their post-arrest legal process absent allegations that the arrests or prosecutions were unlawful. That is because they cannot satisfy the requisite causation element of either Section 1983 or Article III standing doctrine.

The second challenge that Plaintiffs assert arises under claim 3 of the amended complaint and rests on the allegation that the District systematically denies procedural due process protections to individuals seeking the return of contraband. However, as explained in the District's motion, precedent from this court indicates that Superior Court Rule of Criminal Procedure 41(g) provides Plaintiffs all the process they are constitutionally due. Plaintiffs' opaque response turns on several assumptions that are incorrect as a matter of law and fails to distinguish the controlling authority on which the District's argument rests. These three arguments are addressed in turn.

## ARGUMENT

I.   **Plaintiffs Have Not Offered Any Viable Basis For Recovery Under An Equal Protection Or Right To Travel Theory, Which Justifies Dismissal Of Claim 2.**

The District's motion argued that claim 2 of the amended complaint should be dismissed for failure to state a claim because it suggests no viable basis for recovery under an equal protection or right to travel theory. *See* Defs.' Mot. to Dismiss at 19 (neither claim ripe), 23–25 (failure to state equal protection claim), 25–29 (failure to state right to travel claim). The District's argument was supported by several alternate justifications and a wealth of controlling and persuasive authority. *See id.* Plaintiffs' response, which consists of a single paragraph (approximately eight lines of text), does not specifically rebut any of the District's rationales for dismissal or respond to (let alone distinguish) any of the District's case law. *See* Pls.' Opp'n at 12. Rather, Plaintiffs' opposition offers only the formulaic conclusion that claim 2 successfully states a claim along with citations to two outdated Supreme Court opinions and a decision from the Ninth Circuit, all three of which are distinguishable. *Id.*[1] Plaintiffs' cursory response failure to respond to the District's arguments and authorities should act as a waiver of claim 2. *See* LCvR 7(b); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)

---

[1] *Apethaker v. Secretary of State*, 378 U.S. 500 (1964) and *Dunn v. Blumstein*, 405 U.S. 330 (1972) dealt with government regulations that conditioned the right to travel on the forfeiture of another right (*Apethaker*) and on in–state residency (*Dunn*), neither of which is at issue here. *See* Defs.' Mot. to Dismiss at 25–27. *Guillory v. County of Orange*, 731 F.2d 1379 (9th Cir. 1984) raised an equal protection claim based on a gun permitting scheme but did not involve non–residents or suggest that an equal protection plaintiff need not plead a similarly–situated comparator and intentional differential treatment without a rational basis, neither of which Plaintiffs did in this case. *See* Defs.' Mot. to Dismiss at 19 (District gun laws treat residents and non-residents the same), 24 (Plaintiffs did not plead similarly situated comparator).

(LCvR 7(b) "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded").[2]

## II. Even If Plaintiffs' Rights To Bear Arms, To Travel, And To Equal Protection Were Infringed, They Cannot Recover For Injuries Related To Their Post-Arrest Legal Process

Plaintiffs are correct that a municipal liability claim under Section 1983 generally consists of a constitutional rights violation attributable to municipal policy. *See* Pls.' Opp'n at 13 (citing *Monell*, 436 U.S. at 694, and *Baker*, 326 F.3d at 1306). Beyond that, however, the constitutional injury the claimant asserts must "fit" the relief she seeks. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *Carey v. Piphus*, 435 U.S. 247, 258-59 (1978) ("[i]n order to further the purpose of Section 1983, the rules governing compensation for injuries caused by

---

[2] Dismissal for failure to respond or address controlling authority is the majority approach in this court. *See e.g.*, *Campbell v. National Union Fire Ins. Co. of Pittsburgh*, ___ F.Supp.3d ____, 2015 WL 5449791, *15 (D.D.C. Sep. 16, 2015) (citing *Fraternal Order of Police/Dep't of Corr. Labor Comm. v. Williams*, 263 F.Supp.2d 45, 48 (D.D.C.2003) (dismissing claim where "Plaintiffs have failed to distinguish these precedents or to point to any basis for this Court to come to any different conclusion")); *Head v. Federal Bureau of Prisons*, 86 F. Supp. 3d 1, 4 (D.D.C. 2015) ("The Court's review of plaintiff's opposition reveals that he failed to address this argument[.] Accordingly, the court treats this portion of the defendants' motion as conceded"); *New Vision Photography Prog., Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 24 (D.D.C. 2014) (same result, stating, "[t]his is because '[j]udges are not expected to be mindreaders[;] . . . a litigant has the obligation to spell out its arguments squarely and distinctly, or else forever hold its peace" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)); *Stephenson v. Cox*, 223 F.Supp.2d 119, 122 (D.D.C. 2002) ("[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss"); *accord COMPTEL v. FCC*, 945 F.Supp.2d 48, 55 n.3 (D.D.C. 2013) ("Where a party fails to address arguments raised by the opposing party's motion for summary judgment, the Court may treat those arguments as conceded").

the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question"). As explained in the District's motion, that is where claims 1 and 2 of the amended complaint fail on causation grounds; Plaintiffs' opposition provides no basis to find otherwise.

Under claims 1 and 2, Plaintiffs complain that the District infringed their rights to bear arms, to equal protection, and to travel, but the relief they seek under both claims is not related to those rights. Rather, the relief sought is directly tied to Plaintiffs' post-arrest legal process (in their words, for injuries "that resulted from being arrested and defending against prosecution," Amend. Compl. ¶ 129, 134). Yet they do not challenge anything about that process. *See* Pls.' Opp'n at 16 ( "[t]his is a 2[n]d Amendment (and 5th Amendment) [case], not a 4th Amendment case. . . . Plaintiffs constitutional claim does not stem from an absence of probable cause"). They do not allege facts consistent with false arrest or malicious prosecution. *See Townes*, 176 F.3d at 147-49 (plaintiff's failure "to allege that the [municipality's] conduct effectively amounted to malicious prosecution," was "independent reason" to limit recovery to injuries for unreasonable search where plaintiff sought damages for subsequent criminal proceeding). Given that, if Section 1983 provides a vehicle to compensate Plaintiffs, it is not for the injuries they assert in claims 1 and 2. Plaintiffs' recovery must be limited to "constitutionally relevant" injuries," *id.* at

148, those related to the invasion of their rights to bear arms, to equal protection, and to travel, *Carey*, 435 U.S. at 258.[3]

Plaintiffs' various attempts to convince the Court otherwise are all unpersuasive. Initially (and briefly), their suggestion that simply alleging the existence of an unconstitutional policy is sufficient to show municipal liability under Section 1983 is incorrect as a matter of law. Pls.' Opp'n at 13-14 (citing *Amnesty Am.*, 361 F.3d at 125). The authority to which they refer predates *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which supplies the requisite pleading standard for *Monell* liability. *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 214 n.2 (D.D.C. 2009). And, ultimately, Plaintiffs' assertion is irrelevant to the District's causation argument, which turns on the gap between the constitutional injury and the relief sought (not between the municipal action and the constitutional injury).

Likewise, the cases on which Plaintiffs rely for the proposition that "[c]ourts are virtually unanimous that a municipality is liable to persons arrested pursuant to an unconstitutional [law]" are collectively inapposite and each plainly distinguishable. Pls' Opp'n at 15-17.[4] As a practical matter, there is nothing remarkable about the general proposition that Plaintiffs draw from these cases:

---

[3] As the District's motion explains, essentially the same rationale prohibits a finding of Article III standing. *See Def.'s Mot. to Dismiss* at 10-12 (nexus between challenged conduct and alleged injuries too attenuated), 12-13 (declaration that Plaintiffs Second/Fifth Amendment rights were violated could not affect their criminal proceedings, which Plaintiffs do not actually challenge as unlawful).

[4] These cases are *Fields v. City of Omaha*, 810 F.2d 830 (8th Cir. 1987), *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005), *Davis v. City of Camden*, 657 F.Supp. 396 (D. N.J. 1987), and *Grossman v. City of Portland*, 33 F.3d 1200 (1994).

municipalities *can* be liable under Section 1983 for individual constitutional rights violations caused by municipal policy. The issue raised in the District's motion, however, involves the extent of the relief available to the claimant in that situation; Plaintiffs' cases do not address this issue directly. *See Fields*, 810 F.2d at 834 ("[w]e hold . . . that the Omaha loitering and prowling ordinance is unconstitutionally vague on its face, in violation of due process[, and the] City is liable to Fields under § 1983 for compensatory damages"); *Cooper*, 403 F.3d at 1221-22 (municipal official's decision to enforce unconstitutional state statute was an action attributable to the municipality; no discussion of relief or suggestion that the plaintiff can recover for injuries unrelated to his First Amendment rights); *Davis*, 657 F. Supp. at 403-04 (municipality liable for adoption of unconstitutional state policy; no discussion of relief). Indeed, in *Grossman*, the Ninth Circuit even appeared to express skepticism regarding the plaintiff's theory of recovery, which was arguably similar to the one Plaintiffs pursue here. *See* 33 F.3d at 1203, n.4 ("Although [plaintiff] states in his complaint that Officer Davis 'assaulted' him, he does not assert an independent excessive force claim. Instead, his claimed to compensation is based entirely on the fact that the damages he suffered were a 'direct and proximate result' of the First Amendment violation"). In sum, Plaintiff dramatically overstates the relevance of these authorities.

Plaintiffs' attempt to undermine the importance of *Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002), *Rolfes v. City of Oklahoma*, 1991 U.S. App. LEXIS 15496 (10th Cir. 991), and *Richardson v. City of South Euclid*, 904 F.2d 1050

(6th Cir. 1990), also falls short. As explained in the District's motion, these cases foreclose a separate cause of action under Section 1983 for an arrest and prosecution under a valid municipal law later held unconstitutional. *See* Defs.' Mot. to Dismiss at 21–22. At least to the District's knowledge, these are the most closely analogous municipal liability cases to this one, and Plaintiffs do not appear to argue otherwise. Instead, Plaintiffs cite *Faustin v. City of Denver*, 268 F.3d 942 (2001), and *Lederman v. United States*, 539 F. Supp. 2d 1 (D.D.C. 2008), and argue that "other Circuits have reached the opposite result," and "this Court has [too]." Pls.' Opp'n at 20-21. This assertion is bewildering given that neither case raised any issues even remotely related to those addressed in *Reyes, Rolfes,* and *Richardson.* Beyond this, Plaintiffs assert that *Reyes, Rolfes,* and *Richardson* are "poorly reasoned." *Id.* at 21-22. However, the decisions in these cases were firmly grounded in the Supreme Court's Section 1983 jurisprudence (starting with *Carey v. Piphus, supra*), *see e.g.,* 904 F.2d at 1054-55, as well as sound considerations of public policy, *see e.g.,* 1991 U.S. App. LEXIS 14596 at *3 ("[T]here are some mistakes legislators make and some impositions upon citizens that require expenditures of their time and money to resolve which are not compensable under § 1983. This is one of those situations"). Importantly, Plaintiffs' analysis does not directly address either rationale.

Plaintiffs lastly attempt to argue that the District will be liable for prosecutions undertaken by the U.S. Attorney's Office, citing *Daskalea v. Washington Humane Soc'y*, 480 F.Supp.2d 16, 29–30 (D.D.C. 2007), for the

proposition that the District was liable for the WHS's enforcement of an unconstitutional District statute. Pls.' Opp'n at 23.[5] Again, plaintiffs are incorrect. In *Daskalea*, the court held that the District's animal-cruelty statute was facially unconstitutional as a violation of due process. *Daskalea*, 480 F.Supp.2d at 34–35. The court also held that the WHS, a corporate entity established by Congress, was *non sui juris*. *Id.* at 23. The court did *not* hold the District liable for the actions of WHS employees, which remained as part of the "as applied" claims. Subsequently, the court determined that the District's enactment of a new animal-cruelty statute rendered plaintiffs' facial claims moot. *Daskalea v. Wash. Humane Soc'y*, 710 F.Supp.2d 32, 44 (D.D.C. 2010).[6] Critically, the court held that plaintiffs were not entitled to an award of compensatory damages due to the mere existence of the unconstitutional statute. *Id.*

Ultimately, regardless of how Plaintiffs characterize their claims, their pleadings do not challenge their arrests or their prosecutions under the District's pre-*Palmer* gun laws; Plaintiffs challenge the constitutionality of those laws and allege their rights to bear arms, to equal protection, and to travel were infringed. If that is true, they can conceivably recover for injuries related to those rights. But

---

[5] Plaintiffs also cite *Fletcher v. District of Columbia*, 370 F.3d 1223 (D.C. Cir. 2004), but fail to inform the Court that that decision was vacated on rehearing. 391 F.3d 250 (D.C. Cir. 2004).

[6] *See also Lederman v. United States*, 2007 WL 1114137, *5 (D.D.C. Apr. 13, 2007) (holding that plaintiff's request for a declaratory judgment (regarding a regulation that had already been declared unconstitutional) "is superfluous and his claim is moot."). This Court should similarly declare superfluous and moot plaintiffs request for a declaratory judgment concerning the District's pre-*Palmer* gun laws.

they cannot recover for injuries not so related, such as those resulting from their post-arrest legal process. Because this latter category of injuries is the only one for which Plaintiffs seek redress under claims 1 and 2, those claims should be dismissed for failure to state a claim.

### III.   Plaintiffs Have Not Demonstrated That Superior Court Rule Of Criminal Procedure 41(g) Is An Inadequate Post-Deprivation Remedy For Return Of Their Weapons

Plaintiffs attempt to save claim 3 from dismissal is misleading, relies on several incorrect legal assumptions, and ultimately fails to demonstrate that Superior Court Rule of Criminal Procedure ("Criminal Rule") 41(g) does not satisfy due process. To be sure, Plaintiffs cite *Fuentes v. Shevin*, 407 U.S. 67 (1972) for the proposition that "[t]he District was obligated to return the guns and ammunition when the District no longer needed them as evidence[.]"Pls.' Opp'n at 31. But that is simply wrong. *Fuentes* (a pre-judgment garnishment case) holds only that due process generally requires notice and an opportunity to be heard prior to a final deprivation of property. *Fuentes*, 407 U.S. at 80–81. But the District established in its motion that it provides constitutionally adequate procedures for the return of property seized incident to an arrest via Criminal Rule 41(g). *See* Defs.' Mot. to Dismiss at 26-29. That principle was established by *Baird v. Holton*, 806 F.Supp.2d 53, n.5 (D.D.C. 2011), and *Leyland v. Edwards*, 797 F.Supp.2d 7, 10 (D.D.C. 2011), and Plaintiffs did not distinguish those authorities.

Instead, Plaintiffs argue that exhaustion of local remedies "is not relevant to plaintiffs' § 1983 claims[.]" Pls.' Opp'n at 35. That statement, too, is incorrect as a

matter of law. *See Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) ("[T]he existence of state remedies *is* relevant" to a § 1983 action based on procedural due process, because "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.") (emphasis in original)). In fact, "in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate . . . ." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 643 (1999) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) (O'Connor, J., concurring)). Again, Plaintiffs here have done neither. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (unprosecuted suspect "cannot plausibly claim that Maryland's procedures [for the return of seized guns and ammunition] are unfair when he has not tried to avail himself of them. The state courts are open to him").

Criminal Rule 41(g) affords plaintiffs all the process they are due. Where, as here, "adequate post-deprivation state remedies are available, no cognizable constitutional claim for procedural due process can be stated." *Dukore v. District of Columbia*, 970 F.Supp.2d 23, 32 (D.D.C. 2013) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Plaintiffs have thus failed to state a procedural due process claim. *Id.* (citing *Dickson v. Mattera*, 38 Fed. App'x 21, 22 (D.C. Cir. 2002)).

Plaintiffs also argue that "Rule 41 is not available in the first place because of D.C. Code § 22–4517(b), which is the District's basis for seizing and retaining guns in the first place, Memorandum, [Document # 23] p. 28." Pls.' Opp'n at 33. While

plaintiffs' argument is far from clear, it appears to rest on the conclusion that, because that Code provision sets forth a procedure to resolve conflicting claims of ownership of seized property, Criminal Rule 41 cannot also be used because the Superior Court's jurisdiction under that rule is "ancillary" to the underlying criminal matter. *Id.* (citing *District of Columbia v. Dunmore*, 749 A.2d 740, 742 (D.C. 2000)). But *Dunmore* does not apply here for several reasons: First, *Dunmore*'s holding is applicable only if civil forfeiture proceedings have been initiated, 749 A.2d at 742, and no plaintiff alleges that their property was subject to forfeiture. Indeed, plaintiffs allege that their property was *not* subject to forfeiture, because it was contraband. Amend. Compl. ¶¶ 62, 101, 124. Second, there are no conflicting claims of ownership here; the property has been determined to be contraband, hence not eligible for return to Plaintiffs. There are no other "claimants" to the property. Criminal Rule 41(g) applies, and provides all the process due. *See Cousart v. Metro Transit Police Chief*, 2015 WL 1930499, *1–*2 (D.D.C. Apr. 28, 2015) ("Under [Rule 41(g)], [plaintiff] can move in the Superior Court for the return of property seized as part of a criminal action.") (dismissing suit brought for return of property seized in connection with a criminal case that was ultimately not prosecuted).

Notwithstanding this, in the District, unlicensed (and unregistered) guns are contraband, and it has long been established that the putative owner has no right to the return of contraband. *United States v. Farrell*, 606 F.2d 1341, 1344 (D.C. Cir. 1979) (quoting *United States v. Jeffers*, 342 U.S. 48, 54 (1951) and citing *Trupiano*

12

*v. United States*, 334 U.S. 699, 710 (1948)).[7] Thus, a claimant has no protected property right in contraband. *See, e.g., Boggs v. Rubin*, 161 F.3d 37, 40 (D.C. Cir. 1998) ("[i]ndividuals have no property right in contraband materials and contraband materials may not be returned to them.") (quoting and affirming trial court's order); *United States v. Epstein*, 608 F.2d 1, 2 (D.C. Cir. 1979) (*per curiam*) (affirming denial of motion to return illegal firearms and ammunition after government declined to prosecute gun charges).

Until the Council determines to redefine contraband to exclude unregistered or unlicensed firearms and ammunition, Plaintiffs are not entitled to the return of their seized property, notwithstanding the applicability of Criminal Rule 41(g).

---

[7] Plaintiffs argue that "pre-*Palmer* cases which categorized all firearm [*sic*] as contraband are no longer good law." Pls.' Opp'n at 35. This, too, is incorrect. *District of Columbia v. Heller*, 554 U.S. 570 (2008), implicitly upheld gun-registration requirements, and *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*) and *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*) did so *explicitly*. Plaintiffs cite *Henderson v. United States*, 135 S. Ct. 1780 (May 18, 2015), for the proposition that "[e]ven a gun owner convicted under the federal 'felon in possession' statute, 18 USCS § 922, retains an ownership right in their guns." Pls.' Opp'n at 35. But that case is inapposite. There, the felon was a resident of Florida, and presumably his possession of the guns, pre-conviction, was legal in that jurisdiction. Moreover, the Supreme Court noted that "[a] federal court has equitable authority, even after a criminal proceeding has ended, to order a law enforcement agency to turn over property it has obtained during the case to the rightful owner or his designee." *Henderson*, 135 S. Ct. at 1784. The Court did *not* order the return of the guns, but only held that a trial court *may* approve the transfer of the guns to someone else "if, but only if, that disposition prevents the felon from later exercising control over" them. *Id.* at 1786. The Court remanded the case so that the lower courts could assess the plaintiff's motion for transfer of his firearms under its newly announced analysis. *Id.* at 1787. In the District of Columbia, in contrast, the possession of an unlicensed (and unregistered) firearm is illegal *per se*, hence *Henderson*'s discussion of "one of the proverbial sticks in the bundle of property rights" *id.* at 1784, is inapposite.

Plaintiffs have cited no case which mandates a different result. Claim 3 should be dismissed.

CONCLUSION

For the reasons stated above, the District respectfully requests that the Court grant the Motion to Dismiss Plaintiffs' Amended Complaint, and the Amended Complaint be dismissed, with prejudice.

DATED:                                          Respectfully Submitted,

                                                KARL A. RACINE
                                                Attorney General for the District of Columbia

                                                ELIZABETH SARAH GERE
                                                Acting Deputy Attorney General
                                                Public Interest Division

                                                /s/ Toni Michelle Jackson
                                                TONI MICHELLE JACKSON [453765]
                                                Chief, Equity Section

                                                /s/ Andrew J. Saindon
                                                ANDREW J. SAINDON [456987]
                                                Senior Assistant Attorney General
                                                441 Fourth Street, N.W., Suite 600S
                                                Washington, D.C. 20001
                                                Phone: (202) 724-6643
                                                Fax: (202) 730-1470
                                                Email: andy.saindon@dc.gov

                                                /s/ Matthew R. Blecher
                                                MATTHEW R. BLECHER [1012957]
                                                Assistant Attorney General
                                                441 Fourth Street, N.W., Suite 600S
                                                Washington, D.C. 20001
                                                Phone: (202) 442-9774
                                                Fax:  (202) 730-0586
                                                Email: matthew.blecher@dc.gov

Counsel for the District of Columbia