# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.,* | |
| Plaintiffs, | |
| v. | Civil Action No. 15-737 (ESH) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have requested that the Court certify three classes corresponding to the three claims in the Amended Complaint [Dkt. No. 22]; as to each, they seek "hybrid (b)(2)/(b)(3) class action [treatment]." *See* Pls.' Mot. for Class Action Treatment [Dkt. No. 26] (Motion for Class Certification).[1] But the burden is on Plaintiffs to *affirmatively demonstrate* that each proposed class encompasses sufficiently numerous parties, common questions, typicality of claims, and adequacy of representation as required by Fed. R. Civ. P. (Rule) 23(a), and that the provisions of Rule 23(b) on which they rely are satisfied. *See infra* at 4 (Legal Standard). Plaintiffs have not carried their burden on the record they have created. Rather, as explained below, Plaintiffs cannot satisfy the numerosity, commonality, or typicality requirements of Rule 23(a), and have not shown that any of their proposed classes "fits" within either Rule 23(b)(2) or (b)(3). Their Motion should be denied.

---

[1] Plaintiffs also suggest that certification of "issues classes" under Rule 23(c)(4) may be appropriate. Mot. for Class Cert. at 33-34. However, they do not indicate which issues they believe should be certified, and so the District is in no position to respond to Plaintiffs' request at this time. In the event Plaintiffs clarify this position in reply, the District will seek leave to respond accordingly.

BACKGROUND

Plaintiffs Maggie Smith, Gerald Cassagnol and Frederick Rouse are three non-residents who were arrested in the District while unlawfully in possession of one or more firearms and ammunition. Amend. Compl. ¶ 1. They were all charged with violating the District's gun laws in effect until October 9, 2014, and their firearms were confiscated with their arrests. *Id.* at ¶¶ 48-63, 64-102, 103-126. They each spent time in jail, ranging from several hours to several days, *see id.* at ¶¶ 51, 79-83, and the their criminal cases remained pending ranged from seven to eighteen months, *see id.* at ¶¶ 115-121, 81-93. In each case, the charges against them were dropped after the laws underlying their arrests were invalidated and replaced. *Id.* at ¶¶ 59, 93, 121. They all claim to have suffered "humiliation, emotional distress, physical harm, loss of earning [including legal expense], [and] general damages that resulted from being arrested and defending against prosecution," and at least one claims to have lost his job. *Id.* at ¶¶ 130, 134, 84.

Based on these core facts, the Amended Complaint asserts three claims: (1) Plaintiffs arrests or prosecutions violated their Second Amendment right to bear arms; (2) their arrests or prosecutions violated their rights to travel and to equal protection; and (3) District law governing the return of their weapons violates procedural due process. *Id.* at ¶¶ 127-131, 132-135, 136-144. Plaintiffs request the following relief: (1) a declaration that the pre-*Palmer* gun laws were unconstitutional, (2) individual injunctions sealing their criminal records, and (3) compensatory, consequential, and nominal damage awards. *See id.* at 24-25. The

Amended Complaint contains no request for a general (or systemic) injunction against any government practice. *Id.*

Plaintiffs now move to certify three classes corresponding to their three claims. *See* Mot. for Class Cert. Specifically, they propose these class definitions:

<u>Second Amendment Class</u>: Each person who:  (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for a violation of [the pre-*Palmer* gun laws] prior to amendment of the District's gun registration regime by the First Emergency Legislation; (iii) for carrying a pistol outside their home or place of business.

<u>Nonresident Class</u>: Each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until 10/10/2014; (ii) was arrested and/or subjected to prosecution in the District of Columbia for a violation of any of the District's gun registration law, including but not limited to[*sic*]; (iii) while carrying a pistol outside their home or place of business; and (iv) while a nonresident of the District of Columbia at the time of the arrest or prosecution.

<u>Right to Return Class</u>: Each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is over or the District changes its policy and practice of confiscating and retaining handguns; (ii) was the owner of handguns or ammunition that was seized by the District or its agents; (iii) which the District still retains or has destroyed or otherwise disposed of without giving the owner notice and a hearing at which the owner could challenge the retention or destruction or appoint an agent to receive and to sell the gun or the District could establish its right to destroy or retain the property.

*Id.* at 8. Plaintiffs contend that each of these satisfies the prerequisites of Rule 23(a) and is appropriate for "hybrid (b)(2)/(b)(3) class action [treatment]." *Id.* at 10, 24.

## LEGAL STANDARD

To justify class action treatment, "[the] party seeking to maintain [the] class action 'must affirmatively demonstrate [ ] compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Walmart*, 131 S. Ct. at 2551); *accord In re Rail Freight Fuel Surcharge Antitrust Litigation*, 725 F.3d 244, 249 (D.C. Cir. 2013); *DL v. District of Columbia*, 302 F.R.D. 1, 9-10 (D.D.C. 2013). Plaintiffs, as movants here, "must be prepared to prove" that each of the perquisites of Rule 23(a) are met as to each proposed class. *Behrend*, 133 S. Ct. at 1432. That means Plaintiffs must show that:

> (1) [each proposed] class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to [each proposed] class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class[es]; and (4) the representative parties will fairly and adequately protect the interests of the class[es].

Fed. R. Civ. P. 23(a)(1)-(4). Because Plaintiffs seek "hybrid" certification under Rule 23(b)(2) and (b)(3), they must also show, "through evidentiary proof," *Behrend*, 133 S. Ct. at 1432, that the District "has acted or refused to act on grounds that apply generally to the class, so that [class-wide] final injunctive relief or corresponding declaratory relief is appropriate," Fed. R. Civ. P. 23(b)(2), and that "questions of law or fact common to the class predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3). The Court should deny Plaintiffs Motion for Class Certification unless it is satisfied, upon "rigorous analysis," that each of these elements are satisfied. *Behrend*, 133 S. Ct. at 1432-33; *see also Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 80 (D.D.C. 2015) ("The D.C. Circuit has not

4

yet spoken to the precise burden of proof applicable to establishing that the requirements of Rule 23 have been met; however, courts in this Circuit have routinely applied a preponderance of the evidence standard").

## ARGUMENT

### I.      Plaintiffs Do Not Satisfy The Prerequisites Of Rule 23(a).

Plaintiffs contend that each of their proposed classes has sufficiently numerous parties, common questions, typicality of claims, and adequate representation, as required by Rule 23(a). Mot. for Class Cert. at 10. The District does not challenge the named Plaintiffs' or their counsel's ability to adequately represent the classes if they are certified. However, the District does challenge the remaining Rule 23(a) prerequisites—numerosity, commonality, and typicality.

### A.   Rule 23(a)(1) Numerosity And Impracticability Of Joinder

Rule 23(a)(1) provides that each proposed class be "so numerous that joinder of all members is impracticable." This implies two basic requirements: class size (numerosity) and impracticability of joinder. *See DL*, 302 F.R.D. at 11 ("Aside from class size, plaintiffs must demonstrate …that joinder is impracticable"). Sufficiently numerous class size is, as Plaintiffs contend presumed at 40 members. Mot. For Class Cert. at 11 (citing *Bynum*, 214 F.R.D. at 33). Conversely, impracticability of joinder, which is the Rule's "core requirement," considers "factors" such as the "financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief [involving] future class members." *DL*, 302 F.R.D. at 11 (internal quotations and citations omitted). For

certification to be warranted, Plaintiffs must prove both numerosity and impracticability of joinder for each of their proposed classes. *See id.*

### 1. Numerosity

To prove numerosity, Plaintiffs primarily rely on a "spreadsheet [purporting to show] that at least 40 people were arrested during the Class Period [on pre-*Palmer* gun charges]." *See* Mot. for Class Cert. at 11-12. They submit this is "direct evidence of numerosity" for the Second Amendment class, and they contend that "[n]umerosity is established for the Nonresident Class [ ] through the addresses on the biographical data in CourtView" and for the Right to Return Class "because the District has a policy of seizing and not returning guns [ ] from persons arrested." *Id.* However, Plaintiffs do not provide an estimate of the size of either the Nonresident Class or Right to Return Class or any reasonable basis to quantify the membership of either. Assuming Plaintiffs are correct that each entry on their spreadsheet represents a member of the Second Amendment Class, they do not show which of them, if any, was a nonresident or had weapons seized and not returned. As such, whether membership in those classes exceeds the threshold number of 40 is anyone's guess, and Plaintiffs have not carried their burden of proof under Rule 23(a)(1).

Moreover, Plaintiffs' spreadsheet includes numerous individuals arrested on charges other than the firearm offenses that underlie their Second Amendment Class claims. *See* Mot. for Class Cert., Exh. 7 [Dkt. No. 26-9] at 5-7. These include possession of an open container or controlled substance, mayhem, simple assault,

and receiving stolen property, among others. *Id.* Individuals in this category do not fit within the class definitions because, technically speaking, they were not arrested "for carrying a pistol," but for doing so while committing another crime. *See id.* at 8 (defining Second Amendment Class to include persons arrested/prosecuted "for carrying a pistol outside their home or place of business"). Correcting for this, the spreadsheet contains 34 discrete entries, not over 40, as Plaintiffs contend, and they fail to prove numerosity for the Second Amendment Class.

### 2.  Impracticability Of Joinder

But far more importantly, Plaintiffs do not address the practicability of individual actions in lieu of the classes they propose. *See* Mot. for Class Cert. at 10-12. They do not suggest that individual claims would be too small to be litigated by individual claimants, that putative class members are financially unable to litigate on their own behalf, or that some other practical consideration would make joinder of all interested parties too difficult. *See* William B. Rubenstein, Newberg on Class Actions § 3:11 (5th ed.). Nor does the Amended Complaint contain a request for prospective injunctive relief, *see supra* at 2-3 (summarizing relief sought), so that any concern over joinder of future class members is irrelevant, *see DL*, 302 F.R.D. at 11 (citing *Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012)). Consequently, even if Plaintiffs had shown numerosity as to each of their proposed classes (which they did not), they still would not have satisfied Rule 23(a)(1)'s "core requirement," which is an independent basis for denying their request for class certification.

### B.  Rule 23(a)(2) Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class[es]." As Plaintiffs' correctly indicate, to satisfy this requirement, "the resolution of the common question of law or fact must resolve an issue that is central to the validity of each one of the claims in one stroke." Mot. For Class Cert. at 12 (internal quotations omitted to *Walmart*, 131 S. Ct. 2551). "Superficial commonalities," such as whether class members suffered violations of the same provision of law, will not do; the members of each proposed class must have suffered the same injury for the same reason. *Walmart*, 131 S. Ct. at 2551; *DL*, 302 F.R.D. at 12. They have not.

#### 1.   Second Amendment And Nonresident Classes

For their Second Amendment Class, Plaintiffs propose the following "common" question: "[W]hether the District's unconstitutional gun registration laws …violated the [Second] Amendment." Mot. for Class Cert. at 14. Similarly, for the Nonresident Class, Plaintiffs propose: "[W]hether the registration [laws], by facially excluding out of state residents under D.C. Code § 7-2502.02(a)(4) … , violated the [Fifth] Amendment." *Id.* at 15. According to Plaintiffs, those gun laws "are the moving force behind injuries caused by their enforcement," which "caused the arrest and prosecution of [the putative class members.]" *Id.* at 14-15 (citing *In re Rail Freight*, 725 F.3d at 253); *id.* at 15 ("The commonality analysis is the same as for the Second Amendment Class"). In this way, Plaintiffs contend, Rule 23(a)(2) is satisfied as to both the Second Amendment and Nonresident Classes because a

uniform District policy—the pre-*Palmer* gun laws—caused Plaintiffs' common alleged injuries. *See id.*

Unfortunately for Plaintiffs, these "common" questions are only common in a more than superficial sense if the Court accepts an untenable characterization of Plaintiffs' underlying claims. As the District explained in its pending Motion to Dismiss [Dkt. No. 23], while Plaintiffs characterize Claims 1 and 2 as constitutional facial challenges to the pre-*Palmer* gun laws, the gravamen of this action centers on the enforcement of those laws—on the arrests by MPD and prosecutions by OAG and USAO. *See e.g.* Mot. for Class Cert. at 1 (Plaintiffs "were injured during the class period because the District, by enforcing its unconstitutional gun registration laws, caused them … to be arrested, prosecuted, or arrested and prosecuted … for violations of those unconstitutional gun laws in violation of their Second and Fifth Amendment rights"). Stated differently, Plaintiffs each challenge the way the pre-*Palmer* gun laws were applied to them; their claimed harm and the relief they seek is unique to each individual Plaintiff's case. *See supra* at 2-3 ("core facts" and relief sought).

Correspondingly, resolving each Plaintiff's constitutional claim must turn on the factual circumstances unique to his or her arrest. A putative class member with no criminal history and engaging in no criminal conduct when arrested presents a different Second Amendment challenge from a class member who used her gun to rob a bank. *See District of Columbia v. Heller*, 554 U.S. 570, 636-37 (2008) (Stevens, J., dissenting); 18 U.S.C. § 922. Only the former was arguably engaging in protected

activity, yet both are included within the amorphous allegation of systemic harm underlying Plaintiffs' first two classes.[2] Plaintiffs appear to acknowledge this problem when they observe that "persons covered in some or all of the categories … established by D.C. Code § 22-4503(a)," persons with recent felony convictions, restraining orders, and etc., "are excludable from the class definitions … on a categorical basis." Mot. for Class Cert. at 9. As Plaintiffs concede, their class definitions do not distinguish between these types of putative class members. But for class certification purposes, these and other factual variations indicate that no single aspect of the claims underlying the Second Amendment and Nonresident Classes is "common" in the way Rule 23(a)(2) requires.

As a result of the way Plaintiffs have engineered Claims 1 and 2, answering the "common" questions they propose for the Second Amendment and Nonresident Classes—essentially, whether the pre-*Palmer* gun laws violated the right to bear arms, to travel, or to equal protection in a general sense—resolves nothing at all that is "central to the validity" of Plaintiffs' claims. *Walmart*, 131 S. Ct. at 2551. Conversely, the answers to those questions are not "apt to drive the resolution of [this] litigation" because this litigation rests on individual claims of harm, not uniform widespread wrongdoing subject to facial challenge. *Id.* ("What matters to

---

[2] In a less abstract way, Plaintiffs' theory of commonality presupposes that the Second and Fifth Amendment provides the same protections to Ms. Smith, who was pulled over (in her personal vehicle) by MPD for a minor traffic infraction and turned over her loaded handgun when asked if she was in possession of any weapons, *See* Amend. Compl. ¶¶ 48-51; Testimony of Ofc. Gregory Brown [Dkt. No. 26-10] at 6, as it provides to Mr. Rouse, who was arrested in his Downtown hotel room with two pistols, ammunition, and a scope, all of which he brought to the District in a carrying case. *Id.* at ¶¶ 107-114. However, to resolve these disparate fact patterns the Court must analyze them separately under the applicable legal standards for a Second Amendment, right to travel, or equal protection claim.

class certification is not the raising of common questions … but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation"); *DL*, 302 F.R.D. at 12. Consequently, Plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2) as to their Second Amendment and Nonresident Classes.

### 2.   Right To Return Class

Plaintiffs' Right to Return Class is similarly problematic under Rule 23(a)(2). According to the Motion for Class Certification, "the common questions for [the Right to Return Class] are whether the District has a policy or practice … of refusing to return guns and ammunition [confiscated] from persons arrested or charged under the gun statutes pursuant to D.C. Code § 22-4517(b), and whether, as a matter of law, … the District [must] return the guns when they are no longer needed or to give owners notice and a hearing at which the District has to establish its right to keep the guns and ammunition." Mot. for Class Cert. at 15. "The first question," Plaintiffs explain, "is easily answerable by a single interrogatory or 30(b)(6) deposition … [and t]he second question … is a legal question that has already been answered in the affirmative." *Id.* at 16.

Plaintiffs approach confuses their burden under Rule 23. As explained, the Rule "does not set forth a mere pleading standard, *Walmart*, 131 S. Ct. at 2551, but requires Plaintiffs to "affirmatively demonstrate" that common questions exist, *Behrend*, 133 S. Ct. at 1432. Thus, as a practical matter, simply begging the question of whether a common policy exists, as Plaintiffs do in their first proposed

"common" issue, falls well short of justifying certification. *See Lightfoot v. District of Columbia*, 273 F.R.D. 314, 326 (D.D.C. 2011) ("Plaintiffs have it backwards. … [They] must first identify the policy or custom they contend violates the dictates of procedural due process and then establish that the policy or custom is common to the class"). So too, Plaintiffs second (legal) question is no question at all if it has been answered in the affirmative, as Plaintiffs contend. Were it otherwise, virtually any claim could be certified, no matter how disparate the individual injuries or their alleged causes, so long as it does not raise novel legal issues. *See id.* at 325 (discussing *Love*, 439 F.3d at 729).

More problematic still, what Plaintiffs have done with their Right to Return Class is gather many disparate practices and factual scenarios under the common heading of Due Process with no explanation how they fit together. Mr. Cassagnol, for example, requested the return of his confiscated firearm by phone some three months after the charges against him were dismissed and was advised by an MPD employee of the process available to him; there is no indication he took further action as directed. *See* Cassagnol Aff. [Dkt. No. 26-5] ¶¶ 12-14. Mr. Rouse waited nearly 16 months to seek the return of his confiscated weapons by letter to MPD, though it is unclear whether he ever received a response. Amend. Compl. ¶¶ 122-126; Letter from F. Rouse [Dkt. No. 26-6]. Ms. Smith evidently did nothing at all to get her firearm back, at least Plaintiffs nowhere contend that she did. *See* Amend. Compl. ¶¶ 60-63. As was the case in *Lightfoot, supra*, "lurking behind the rather vague and conclusory [allegation of a procedural due process violation in Claim 3]

lies a wide variety of more discrete practices that could conceivably serve as the foundation for municipal liability." 273 F.R.D. at 326. As a matter of fact, the only thing that connects Plaintiffs' individual claims regarding the return of their property is the common contention that they did not get their property back, but that is a superficial commonality that is not "central to the validity" of their claims. *Walmart*, 131 S. Ct. at 2551. Plaintiffs have not met their burden to show commonality on their Right to Return Class, and their request for class certification should be denied.

### C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." As Plaintiffs correctly state, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's [or] where his or her claims are based on the same legal theory." Mot. for Class Cert. at 19 (quotations and citations omitted); *DL*, 302 F.R.D. at 14. In this way, "the commonality and typicality requirements of Rule 23(a) tend to merge." *Walmart*, 131 S. Ct. at n. 5.

According to the Motion for Class Certification, "[t]he named Plaintiffs [here] … satisfy [the typicality] requirement because each shares the same legal theories based upon the same set of facts as the members of each class." *Id.* (and summarizing Plaintiffs' "experiences"). That is plainly not so: Regardless of how they are pled, Plaintiffs claims center on the enforcement of the pre-*Palmer* gun

laws (not their mere existence), and each individual constitutional claim and any corresponding relief will be inherently unique. *See supra* at 8-11 (discussing Rule 23(a)(2) commonality). Thus, viewing Plaintiffs' claims for what they really are, their injuries have no common origin, and Rule 23(a)(3) typicality cannot be present. This too is grounds for denying Plaintiffs' request for certification.

## II.    Plaintiffs Do Not Satisfy Rule 23(b).

### A. Rule 23(b)(2)

For each of their proposed classes Plaintiffs seek "hybrid (b)(2)/(b)(3) class action [treatment]," which means they must show, "through evidentiary proof," *Behrend*, 133 S. Ct. at 1432, that the classes comply with both Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) provides that certification is appropriate if the District "acted or refused to act on grounds that apply generally to the class, so that [class-wide] final injunctive relief or corresponding declaratory relief is appropriate." This implies two distinct requirements: common action and class-wide equitable relief settling its legality. *DL*, 302 F.R.D. at 16. Plaintiffs' Motion for Class Certification addresses only the former; their Motion makes no attempt to demonstrate the Rule's requirement of class-wide injunctive or corresponding equitable relief.

Nor could they do so successfully. Their pleadings do not seek class-wide injunctive relief in connection with any of their claims. *See* Amend. Compl. at ¶¶ 127-131, (Claim 1), 132-135 (Claim 2), 136-144 (Claim 3); *id.* at 24-25 (Requested Relief). In fact, the only injunctive relief they seek is individualized, *see id.* at 24 (injunction expunging criminal records), and Rule 23(b)(2) "does not authorize class

14

certification when each individual class member would be entitled to a *different* injunction," *Walmart*, 131 S. Ct. at 2557 (emphasis in original).[3] Moreover, while Plaintiffs request broad *declaratory* relief, Amend. Compl. at 24, they suggest no injunction to which it would "correspond[ ]," which is an express requirement of the Rule, *see* Rule 23(b)(2) ("injunctive relief or corresponding declaratory relief"); advisory committee note to subdivision (b)(2) ("Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief"). In short, it is unclear in what way Rule 23(b)(2) could apply in this action at all, and since Plaintiffs have not suggested how (let alone proved it), the Court should decline their request for (b)(2) or hybrid certification as to all three proposed classes. *See supra* at 4 (Legal Standard).

### B. Rule 23(b)(3)

Certification under Rule 23(b)(3) would likewise be improper. Rule 23(b)(3) is satisfied where "questions of law or fact common to the class predominate over any questions affecting only individual members." This naturally entails a "weighing" of issues subject to class-wide proof against issues requiring individualized evidentiary determinations. *See* William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed.); *Coleman v. Dist. of Columbia*, 306 F.R.D. 68, 85 (D.D.C. 2015) (citing *Newberg, supra*). Here, the weighing of issues disfavors certification of Plaintiffs' proposed classes under Rule 23(b)(3).

---

[3] Whether a criminal record is appropriately expunged or sealed is inherently individualized. *See* Defs.' Mot. to Dismiss [Dkt. No. 23] at 29-30 (discussing standard for expunging/sealing). And whether the requisite legal standard is satisfied in a given case depends, at a minimum, on whether, as a matter of fact, the circumstances of Plaintiffs' arrests gave rise to any constitutional injury. *See supra* at 8-10.

Even accepting Plaintiffs' characterization of the scope of this action, the "common" issues they propose—whether the pre-*Palmer* gun laws were facially invalid or whether the District's policies for returning confiscated weapons denies due process, *see supra* at 8-11 (discussing Rule 23(a)(2) commonality)—are drastically outweighed by issues requiring individualized proof. For Plaintiffs' first two classes, on the merits alone these would include baseline liability questions like whether or not each individual class member engaged in conduct falling outside the scope of the Second or Fifth Amendments such that his or her arrest was independently justified.[4] Likewise, Plaintiffs' Right to Return Class is laden with disparate allegedly unlawful practices arising in various factual scenarios, all of which would bear on the determination of liability for each class member. *See supra* at 12-13. Fact-bound inquiries related to defenses such as *res judicata* are also central to each class claim since application of that doctrine would prohibit recovery for any claimant who raised and lost a constitutional challenge in his or her criminal proceeding. *McIntyre*, 892 F.Supp.2d at 215 (preclusive effect may be had from claims and issues litigated in a criminal proceeding to those in a § 1983 case); *Lightfoot*, 273 F.R.D. at 329 (citing *Agostino*, 256 F.R.D. at 450, for the proposition

---

[4] As noted elsewhere in this brief (and acknowledged in Plaintiffs' Motion), in at least some situations, such as those described in 18 U.S.C. § 922 and D.C. Code § 22-4503, possession of a firearm is not subject to constitutional protections. Where those circumstances are present, there could be no actionable constitutional claim arising out of the arrest (or subsequent prosecution), regardless of how Plaintiffs' "common" questions are resolved.

that "certification is generally inappropriate in actions raising significant individual liability or defense issues").[5]

Perhaps most importantly, as in *Behrend*, "[q]uestions of individual damage calculations [would] inevitably overwhelm questions common to the class." 133 S. Ct. at 1432. Plaintiffs argument to the contrary depends on the incorrect assumption that they "are seeking general damages common to all class members rather than special damages distinctive to each individual." *See* Mot. for Class Cert. at 31. In fact, the Amended Complaint largely rests on compensatory damages for "humiliation, emotional distress, physical harm, [and] loss of earnings," among others, each category of which is inherently personal to the individual class members. *See* Amend. Compl. ¶¶ 129, 134; *id.* at 25 ("compensatory and consequential damages in an amount to be determined at trial"). "Legal expenses that resulted from … defending against prosecution," for example, is but one category of damages that would be different in each case and difficult to quantify by formula; lost wages is another and the list goes on. *See id.* at ¶¶ 129, 134. Clearly, just as in *Behrend*, Plaintiffs' proposed damages model—"damages … fixed either for the class as a whole or by subclass based on length of detention or prosecution," Mot. for Class Cert. at 31—does not solve this problem because recovery is not directly tied to their theory of liability. 133 S. Ct. at 1432-33.[6] For all these reasons,

---

[5] The Amended Complaint seems to suggest that at least one of the named-Plaintiffs' claims could be so barred. *See* Amend. Compl. ¶¶ 91-92 ("Mr. Cassagnol's defense attorneys filed a motion to dismiss based on the *Palmer* decision. … [the Judge] denied the motion").

[6] Plaintiffs' passing reference to subclasses should be ignored because they make no attempt whatsoever to justify certification of any subclass under any portion of Rule 23. *See DL*, 302 F.R.D. at 9 ("subclasses [ ] must independently meet the requirements of Rule 23").

Plaintiffs cannot comply with Rule 23(b)(3)'s predominance requirement, even if they have identified truly "common" questions.  Accordingly, the Motion should be denied.

## CONCLUSION

For the foregoing reasons, the District requests that the Court deny Plaintiffs' Motion for Class Certification.

DATED: January 4, 2016.                    Respectfully Submitted,

                                           KARL A. RACINE
                                           Attorney General for the District ofColumbia

                                           ELIZABETH SARAH GERE
                                           Acting Deputy Attorney General
                                           Public Interest Division

                                           /s/ Toni Michelle Jackson
                                           TONI MICHELLE JACKSON [453765]
                                           Chief, Equity Section

                                           /s/ Andrew J. Saindon
                                           ANDREW J. SAINDON [456987]
                                           Senior Assistant Attorney General
                                           441 Fourth Street, N.W., Suite 600S
                                           Washington, D.C. 20001
                                           Phone: (202) 724-6643
                                           Email: andy.saindon@dc.gov

                                           /s/ Matthew R. Blecher
                                           MATTHEW R. BLECHER [1012957]
                                           Assistant Attorney General
                                           441 Fourth Street, N.W., Suite 600S
                                           Washington, D.C. 20001
                                           Phone: (202) 442-9774
                                           Email: matthew.blecher@dc.gov

                                           **Counsel for the District of Columbia**

18

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.,* | |
| Plaintiffs, | |
| v. | Civil Action No. 15‑ 737 (ESH) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## ORDER

Upon consideration of Plaintiffs' Motion for Class Action Treatment [Dkt. No. 26], including all written and oral argument in support of and in opposition to the motion, it is:

**ORDERED** that the Motion is **DENIED**.

Dated: _____

_____
ROYCE C. LAMBERTH
United States District Court Judge