UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, et al.<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA<br><br>Defendant. | Civil Action No.: 15-737 (RCL) |

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS ACTION TREATMENT

The District failed to assert any valid objections to plaintiffs' motion [26] for class action treatment in its opposition [31] so Plaintiffs' Motion should be granted.

I.   Plaintiffs Do Satisfy All The Prerequisites Of Rule 23(a).

Ascertainability[1].

The District does not challenge that plaintiffs have satisfied ascertainability. Plaintiffs stated in their memorandum [26-1] in support of their motion for class action treatment ("Plaintiffs' Memorandum"), "There are no terms in the definitions that require further clarification, and nothing in the definitions would require the Court to hold individualized hearings to decide

---

[1] Defendant did not specifically address and assign this Rule 23 element a heading number in its Opposition so Plaintiffs do not number it here. Plaintiffs otherwise follow defendant's heading numbers.

Page 1

whether a particular individual fell within the scope of any of the definitions." Plaintiffs' Memorandum [26], p. 9. The District does not challenge this statement.

Plaintiffs did concede in their Memorandum that some persons might ultimately be excludable from the class for merits reasons. Plaintiffs' Memorandum, [26-1], .p 9. But, this statement does not destroy either ascertainably or commonality. It is simply a statement that plaintiffs have drafted their class definitions to include persons with the Second Amendment claim, and the Nonresident claim, and that, if, as a merits issue, the scope of the claim is narrowed, the class definition will have to be adjusted to fit the claim. *See* Bynum v. District of Columbia, 214 F.R.D. 27, 39-40 (D.D.C. 2003) (exact number of days jail had to release inmates entitled to release is bound up with the merits of plaintiffs' claims, and the Court will not make a preliminary inquiry into the merits on that issue in determining whether to certify the class). At this stage, Plaintiffs do not have to adjust the scope of their class definition to fit any affirmative defenses the District might ultimately prevail on at a later stage. *See* Dellums v. Powell, 566 F.2d 167, 189 n.57 (1977). It is the District's burden to establish those defenses and the adjustments to the class. Id.

### A. Numerosity, Rule 23(a)(1).

Rule 23(a)(1) provides that a class action may be maintained only if "[t]he class is so numerous that joinder of all members is impracticable." Plaintiffs easily meet this requirement for all three classes. Plaintiffs do not have to identify the class members by name, and as few as 25 members are sufficient to establish that joinder of all members is impracticable. Johns v. DeLeonardis, 145 F.R.D. 480 (N.D. Ill. 1992) (numerosity requirement satisfied and class certified where approximately twenty-five women were subjected to illegal strip search by Chicago police officers in a police raid). Moreover, plaintiffs listed approximately 40 class members from a limited

span of time, about seven months. The class period is about two years. The Court may, however, "draw reasonable inferences from the facts presented to find the requisite numerosity." Coleman v. Dist. of Columbia, 306 F.R.D. 68, 76 (D.D.C. 2015). Thus by inference, there are 40 class members every seven months. In any event, plaintiffs attached hereto a new spreadsheet with an additional 13 number of class members in support of numerosity which brings the number, even accounting for the District's objections, over 40. Ps. Ex. # 1 (affidavit).

As the text of the rule indicates, simply establishing that a class includes a certain threshold number of members establishes that "joinder of all members is impracticable." Plaintiffs do not have to undertake a separate analysis of "joinder" in this situation. Whether individual claims are too small to be litigated by individual plaintiffs and whether putative class members are financially unable to litigate their claims on their own behalf are issues best considered under the superiority analysis.

Although negative value claims should always be certified, the fact that a class is not a negative value claim does not preclude certification. The District also suggests that some other practical considerations might make joinder of interested parties too difficult without identifying such considerations in this case. Plaintiffs are not required to anticipate every hypothetical consideration and address it.

The District also suggests that putative class members who were arrested on a gun registration clause and also another charge such as possession of an open container or controlled substance do not fit within the class definitions because, technically speaking, they were not arrested for caring a pistol but for another offense, and the class definition applies only to persons who were arrested on a gun registration offense. District's Opposition [31], p. 7. This argument

fails too. The class definition does not by its express terms or by any negative implication exclude someone who was arrested for POCA or another offense as well as a gun registration violation.

Moreover, contrary to the District's assertion, plaintiffs also establish numerosity on the Right to Return claim even though plaintiffs do not offer a specific number. In assessing the number of potential class members, the Court need only find an approximation of the size of the class, not "an exact number of putative class members." Coleman v. Dist. of Columbia, 306 F.R.D. 68, 76 (D.D.C. 2015). The Court may, however, "draw reasonable inferences from the facts presented to find the requisite numerosity." Id.

Plaintiffs' theory of the Second Amendment claim is that the District's gun registration scheme was unconstitutional and every time the District enforced the unconstitutional statutes by arresting someone or prosecuting someone on an alleged violation of the pre-Palmer gun registration regime the District violated their Second Amendment rights. *See* Barnes v. District of Columbia, 793 F. Supp. 2d 260, 268 (D.D.C. 2011), discussed below.

Every single person arrested on a gun charge during the class period is a member of the Right to Return class because the District's policy and practice is, pursuant to a statute, to seize and retain every gun from every person arrested on a gun charge. Plaintiffs' spreadsheets clearly establish numerosity for the 2d Amendment Class and the Nonresident Class and the court can infer that the District and the MPD are making a similar number of arrests during other months in the class. Coleman v. Dist. of Columbia, 306 F.R.D. 68, 76 (D.D.C. 2015).

B. Rule 23(a)(2) Commonality.

    1.  Second Amendment And Nonresident Classes

The District's objections to plaintiffs' common legal issues is a merits based objection. This is clear from the District's statement that plaintiffs' common questions "are only common in a more than superficial sense if the Court accepts an **untenable characterization of Plaintiffs' underlying claims**." Memorandum, p. 9. But, the class certification analysis is not a merits inquiry and merits issues should not be decided in a motion for class action treatment. Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 2013 U.S. LEXIS 1862, 21 (U.S. 2013).

Plaintiffs' theory of the Second Amendment claim is that the District's gun registration scheme was unconstitutional and every time the District enforced the pre-Palmer gun registration regime by arresting someone or prosecuting someone on an alleged violation of the regime the District violated their Second Amendment rights, and, if the person were a nonresident, their due process rights too.

Plaintiffs explained their legal theory in detail in their opposition to the District's motion to dismiss and in their motion for class action treatment. The District's enforcement of its unconstitutional statutes is the moving force behind each class members' injuries. The District's enforcement of its pre-Palmer gun registration regime does not create a need for individual liability determinations.

This Court's summary judgment opinion in Barnes v. District of Columbia illustrates plaintiffs' theory for both the Second Amendment claim and the nonresident claim. , 793 F. Supp. 2d 260, 268 (D.D.C. 2011). First of all, what is at issue here is the District's enforcement of a facially unconstitutional statute. So, this case is just like the Barnes case with respect to the D.C. statute which prohibited the DC Jail from releasing persons entitled to release after 10 p.m. at night, also known as the "10 p.m. cut-off" rule. D.C. Code § 24-211.2(b)(6), *cited in* Barne, 793 F.

Supp. 2d at 268. This Court held in <u>Barnes</u> that "the DOC's **enforcement** of the District's "10 p.m. cut-off" rule violated the due process rights of class members who were overdetained, during all parts of the class period, because of that rule." <u>Barnes</u>, 793 F. Supp. 2d at 278 (emphasis added). This Court in Barnes did not believe that the District's enforcement of the "10 p.m. cut-off" rule Created individual liability issues. Therefore, the District's enforcement of its unconstitutional pre-<u>Palmer</u> gun registration regime did not create the need for individual liability determinations and plaintiffs do establish a common question of law for each of the Second Amendment and the nonresident classes.

The District also contends in its opposition that plaintiffs are really challenging the way the pre-<u>Palmer</u> gun registration laws were applied to them, and that "their claimed harm and the relief they seek is unique to each individual Plaintiff's case." Memorandum, p. 9. First of all, with respect to liability, the District's pre-<u>Palmer</u> gun registration regime denied individuals registration/licensing of handguns outside the home on an across-the-board basis, no questions asked, no exceptions granted. Therefore, the District's enforcement of the pre-<u>Palmer</u> gun registration regime was the same, an across-the-board, total ban on registration of handguns. Therefore, there were no individual issues in the enforcement of the pre-<u>Palmer</u> gun registration regime. <u>Barnes</u>, 793 F. Supp. 2d at 278.

If, under the current regime, plaintiffs had had their gun registration licenses revoked, and then had tried to renew their licenses, then there would be an individual inquiry in each case. But what the District's pre-<u>Palmer</u> gun registration regime was a blanket ban on issuing licenses regardless of the individual circumstances of each individual wishing to register a gun. Therefore, there are no individual issues involved in the violation of a blanket ban, that is, the District's pre-<u>Palmer</u> gun registration regime.

Second, with respect to relief sought, including damages, any individual damages do not overwhelm common questions even in a post-Comcast world as plaintiffs established in their motion for class action treatment. [70], p.28. McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984)(mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification); In re Rail Freight Fuel, 725 F.3d at 252 (common evidence must show all the class members were actually harmed by the alleged wrongdoing, but not necessarily the amount of damages incurred).

The District also claims that a class member "with no criminal history and engaging in no criminal conduct when arrested presents a different Second Amendment challenge from a class member who used their gun to rob a bank." opposition, p. 9.

It is not entirely clear what the District means by this statement. The District seems to be suggesting that a person arrested solely on alleged violations of the pre-Palmer gun registration regime and not any other charges, is in a different position from someone who is arrested on both violations of the pre-Palmer gun registration regime and another offense with respect to their Second Amendment and their Nonresident claims. This is wrong. Both class members in the District's example suffered violations of their Second Amendment rights (and their due process rights if they were a nonresident) when the District enforced its pre-Palmer gun registration regime against them by arresting them and holding them for alleged violations of the pre-Palmer gun registration regime.

The fact that someone was also arrested on probable cause for committing, for example, a traffic violation that gave rise to the stop in the first place, does not affect their Second Amendment claim arising from their arrest for a violation of the pre-Palmer gun registration regime. As the

District conceded in its Memorandum [23-1] in support of its motion to dismiss, plaintiffs are not "challenging the MPD officers' decisions to arrest them; they assert no claim for false arrest or false imprisonment." Memorandum [23-1] p. 11.

Nor does the existence of probable cause to arrest someone on a traffic violation or another offense provide a defense to the arrest and detention for the violation of the pre-Palmer gun registration regime.

For example, Ms. Smith was stopped for a traffic violation. Under a Fourth Amendment analysis, probable cause for that violation would have supplied probable cause for the stop and her arrest on that charge even if she were not formally charged for that traffic violation by the arresting officer. Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 593-94 (2004).

In the Fourth Amendment context, if a person is arrested for a charge, and it turns out that probable cause was lacking for that charge, the officer has a defense to a Fourth Amendment false arrest claim if there were any offense for which the facts, objectively viewed, established probable cause Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 593-94 (2004). Similarly, in the Fourth Amendment context, if a person is arrested for two charges, and it turns out that there was no probable cause to support the arrest for one of the charges, but no probable cause to support the arrest for the other charge, probable cause to arrest on the first charge bars a Fourth Amendment claim for the arrest on the charge lacking even though it was not supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 593-94 (2004).

But, that rule does not apply outside of the Fourth Amendment context. When the basis for plaintiffs' claim is another constitutional amendment, such as the First Amendment, the Second Amendment, or the Fifth Amendment, probable cause is not a defense. Lederman v.

United States, 539 F. Supp. 2d 1, 4 (D.D.C. 2008); Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. Or. 1994).

In a footnote in the discussion of predominance, the District states that "at least some situations, such as those described in 18 U.S.C. § 922 and D.C. Code § 22-4503, possession of a firearm is not subject to constitutional protections. Where those circumstances are present, there could be no actionable constitutional claim arising out of the arrest (or subsequent prosecution), regardless of how Plaintiffs' "common" questions are resolved." Opposition, p. 16, n. 4.

This actually not a correct statement of the law. Persons who have been convicted of felonies, and persons who are insane, have the Second Amendment right to keep and bear arms just like any other individual. However, in Heller, the Supreme Court clarified that laws prohibiting this type of person from keeping and bearing arms were presumptively valid restrictions under the Second Amendment.

The District did not discuss D.C. Code § 22-4503 in its motion to dismiss. Theoretically, a person arrested under an offense which legally restricted their Second Amendment rights, such as a constitutional provision of D.C. Code § 22-4503, might not have a claim for their arrest for an alleged violation of the District's pre-Palmer gun registration regime. However, if this Court ruled that persons convicted of an offense under a provision of D.C. Code § 22-4503 were excluded from the class definition under the Second Amendment or the Nonresident claim then excluding such persons on a categorical basis would not destroy any Rule 23 requirement. Both the MPD database would show persons arrested on such charges and so identifying and excluding such persons from the class would be administratively feasible.

   a.  **Unlawful prosecution claims.**

Significantly, the District does not address these commonality arguments with respect to unlawful **prosecutions** under the District's pre-Palmer gun registration regime. The fact that a class member was prosecuted on one or more other offenses in addition to the pre-Palmer gun registration regime offenses does not bar their Second Amendment or Nonresident claims.

A plaintiff can prevail on a malicious prosecution claim even when there was a "split verdict" (favorable termination on one but not the other) on two or more criminal charges. Evans v. City of N.Y., 2015 U.S. Dist. LEXIS 38546, at *22 (E.D.N.Y. Feb. 24, 2015). The same principle applies in their wrongful prosecution claims.

As plaintiffs established in their opposition to the defendant's motion to dismiss, the District is liable when the OAG prosecutes gun offenses because the OAG is an agency of the government of the District of Columbia. [27] p.17 *et seq.* Moreover, the District is also liable when the US attorney prosecutes DC Code offenses in Superior Court. Opposition to defendant's motion to dismiss, [27] p.23. The United States Attorney for the District of Columbia is not a defendant in this case. But, the "United States attorney for the District of Columbia or his assistants" (the "US Attorney") prosecutes felony cases and most misdemeanor cases under the D.C. Code pursuant to D.C. Code § 23-101(c). The US Attorney also prosecutes minor cases under the D.C. Code which are normally prosecuted by the OAG if the minor cases are joined with a felony or misdemeanor **and if the OAG consents** pursuant to D.C. Code § 23-101(d).

Section 23-101 is part of an "Act of Congress applicable exclusively[2] to the District of Columbia," and thus is "considered to be a statute of the District of Columbia" for purposes of §

---

[2] D.C. Code § 23-101 derives from an Act to Establish a Code of Law for the District of Columbia, ch. 854, § 932-933, 31 Stat. 1189, 1340-41 (1901). The District of Columbia Court Reform and

1983. 42 U.S.C.A. § 1983.The D.C. Code is also an "Act of Congress applicable exclusively to the District of Columbia" which the Congress has given the D.C. Council power to amend (subject to Congressional approval). D.C. Code § 1-206.02(c)(2).

Moreover, a federal actor is acting under color of District of Columbia law for purposes of § 1983 when they exercise powers granted to them or their agency pursuant to an "Act of Congress applicable exclusively to the District of Columbia"). Fletcher v. District of Columbia, 370 F.3d 1223, 1227 (D.C. Cir. 2004) ("Fletcher I")(members of the federal Parole Commission are acting under color of state law when they exercise powers granted to them or their agency pursuant to an "Act of Congress applicable exclusively to the District of Columbia"). As the District pointed out in its reply to plaintiffs' opposition to the District's motion to dismiss, upon rehearing, Fletcher I was vacated in Fletcher v. District of Columbia, 364 U.S. App. D.C. 1, 2, 391 F.3d 250, 251 (2004) ("Fletcher II"). Reply [27] p. 9, n.5.

But, what the District did not clarify was that Fletcher I was vacated and remanded on a holding that is different from the holding for which Plaintiffs' cited Fletcher I. Upon rehearing, the panel vacated only the holding on plaintiff's challenge to a non-binding parole regulation under the Ex Post Facto Clause. Fletcher v. District of Columbia, 364 U.S. App. D.C. 1, 2, 391 F.3d 250, 251 (2004) ("Fletcher II"). As explained by Settles v. United States Parole Comm'n, 429 F.3d 1098, 1104 (2005), left standing in *Fletcher I* is the holding that a cause of action under § 1983 will lie against the individual members of the federal Parole Commission when acting pursuant to the Revitalization Act § 11231, 111 Stat. at 745 because it is an Act of Congress applicable solely to the District of Columbia. Fletcher I, 370 F.3d at 1227; *See* Settles v. United States Parole Comm'n,

---

Criminal Procedure Act of 1970, PL91- 358, 84 Stat. 473, 604-605 (1970), created the current version. D.C. Code § 1-204.35(AG elected).

429 F.3d 1098, 1104 (2005). Thus, plaintiffs properly cited to Fletcher I to for the proposition that the US Attorney acted under color of District of Columbia law in prosecuting violations of the District's pre-Palmer gun registration regime in Superior Court. *See* Settles, 429 F.3d at 1104.

Therefore, generally speaking, the District is liable for the US attorney's enforcement of its unconstitutional pre-Palmer gun registration regime because the US Attorney prosecutes gun cases in the Superior Court pursuant to an Act of Congress applicable solely to the District of Columbia. Specifically, the District is liable for the US Attorney's enforcement of its unconstitutional pre-Palmer gun registration regime because the US Attorney prosecutes alleged violations of **D.C. Code § 7-2502.01 ("UF")**, and possessing unregistered ammunition, **D.C. Code § 7-2506.01 ("UA")** in the Superior Court **only with the consent of the OAG**. D.C. Code § 23-101(d). Therefore, the District specifically authorized and ratified those prosecutions.

### 2. Commonality for Right to Return class.

The District contends that Plaintiffs do not establish a common fact or legal question with respect to the Right to Return class. But, Plaintiffs did not "seek to conflate a wide variety of practices and impute them to the class as a whole by collecting them under a single, unilluminating umbrella of "systemic" failures," Lightfoot v. District of Columbia, 273 F.R.D. 314, 326 (D.D.C. 2011), as the District alleges. Rather, plaintiffs pointed to a narrowly drawn, clearly defined policy and practice of the District, that is, the District seizes from persons whom it arrests on gun charges all their guns and refuses to give them back even when they are no longer needed as evidence. Nor does the District provide notice and a hearing at which either it could establish its continued right to retain the guns or plaintiffs could establish their right to retrieve their guns.

The District also has a statute which purports to make guns nuisances and subject to forfeiture pursuant to a procedure which shifts the burden of notice and providing a hearing to the owner. D.C. Code § 22-4517(b), discussed at p. 17 et seq. in Plaintiffs' memorandum [26-1] in support of their motion for class action treatment.

Therefore, plaintiffs' **Right to Return Class** does "bridge the gap" between their individual claims and *the District's* policy.

The mere fact that a practice or policy identified as a common question has already been held to be unconstitutional does not disqualify it as a common legal question under rule 23. First of all, this is a question that should be analyzed under the predominance requirement of Rule 23(b)(3), not the **commonality requirement** under Rule 23(a)(2). Secondly, the Second Circuit address this exact same issue in a strip search case where the defendant had conceded the unconstitutionality of its strip search policy and the Second Circuit held that the fact that an issue is conceded or **otherwise resolved** does not mean that it ceases to be an "issue" for the purposes of predominance analysis. <u>Augustin v. Jablonsky (In re Nassau Cnty. Strip Search Cases)</u>, 461 F.3d 219, 228 (2d Cir. 2006).

### C. Typicality - Rule 23(a)(3)

Defendant's challenge to typicality if based on the same theory –as its challenge to commonality, that is, "Plaintiffs' claims center on the enforcement of the pre-Palmer gun laws (not their mere existence), and each individual constitutional claim and any corresponding relief will be inherently unique." Memorandum in Opposition, [31], p. 13-14. This is wrong. Plaintiffs' claims challenge the District's **enforcement** of facially unconstitutional statutes and so there are no individual issues. *See* <u>Bynum</u>, *supra*.

## II. Plaintiffs Do Satisfy Rule 23(b).

### A. Rule 23(b)(2) – Plaintiffs seek class-wide injunctive relief

Contrary to the District's contention, "hybrid (b)(2)/(b)(3) class action [treatment]," survives <u>Walmart,</u> as plaintiffs explain in their motion for class action treatment. plaintiffs actually seek to types of class-wide injunctive relief: (1) a liability determination on each of the claims, and also, (2) the sealing of plaintiffs' arrest records and a declaration that their arrests for alleged violations of the pre-<u>Palmer</u> gun registration regime were legal nullities.

### B. Rule 23(b)(3) – Plaintiffs satisfy predominance

The District's objections to this requirement are the same as stated above. As stated above, even if a class member were arrested on a different charge such as POCA, that would not affect the class member's Second Amendment claim. The <u>Devenpeck</u> defense is only available when a plaintiff files a false arrest claim under the Fourth Amendment.

Moreover, the District does not assert this objection with respect to **wrongful prosecutions** under the District's pre-<u>Palmer</u> gun registration regime.

The District in support of this contention states that "at least some situations, such as those described in 18 U.S.C. § 922 and D.C. Code § 22-4503, possession of a firearm is not subject to constitutional protections. Where those circumstances are present, there could be no actionable constitutional claim arising out of the arrest (or subsequent prosecution), regardless of how Plaintiffs' "common" questions are resolved." Opposition [31], p. 16, n. 4.

As Plaintiffs stated above, to the extent that this group of persons should be excluded from the class, it could be done on a categorical basis without destroying manageability because identifying such individuals with data from the District's databases is administratively feasible.

Defendant also claims that the Right to Return claim requires individual determination of liability for each class member. Opposition [31], p. 16. But, the District does not list any such issues and plaintiffs cannot be expected to divine what possible issues the District has in mind.

The District also states that there may be "fact-bound" inquiries related to defenses such as *res judicata* citing to "McIntyre, 892 F.Supp.2d at 215" which presumably is McIntyre v. Fulwood, 892 F. Supp. 2d 209, 215-16 (D.D.C. 2012). But, the District does not identify any *res judicata* issues applicable in this case and so the objection is purely speculative. Moreover, the District did not raise these merits issues in its motion to dismiss.

Finally, the District contends that individual damages issues would overwhelm common issues. The District is wrong for the reasons stated in plaintiff's memorandum in support of their motion for class action treatment. [26-1], p.25 et seq.

The District's argument seems to be that by proposing a trial plan to try general damages on a class wide basis plaintiffs conceded that individual damages issues overwhelm common issues at this class certification stage.

The District is wrong. At this stage, the Court can certify these classes for all purposes including special as well as general damages as (b)(3) classes. Most class actions settle and if this case does settle, the District would surely want a release of all damages claims, and not just its

general damages claims. That can only be accomplished if the settlement class is certified for all types of damages.

The First, Second and Seventh Circuits have gone further and recognized that since most class actions settle, manageability (including predominance issues) issues – which generally do not arise until the damages phase – will in fact never arise at all. As the Seventh Circuit stated:

> Often, and possibly in this case as well, there is a big difference from the standpoint of manageability between the liability and remedy phases of a class action. The number of class members need have no bearing on the burdensomeness of litigating [RICO liability]. Whether particular members of the class were defrauded and if so what their damages were are another matter, and it may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief. That prospect need not defeat class treatment of the question whether the defendants violated RICO. Once that question is answered, if it is answered in favor of the class, a global settlement along the lines originally negotiated (though presumably with different dollar figures) will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows District courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. (internal citations omitted).

Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.).

In this case, if the class settles, then both parties would want the case to settle all damages claims.

If however, plaintiffs have to try damages, plaintiffs can try general damages and the Right to Return damages on a class wide basis using the methodology proposed in their motion for class action treatment. The District does not object to that methodology for general damages.

If, the plaintiffs prevail on general damages the District would probably be willing to settle all damages claims.

If plaintiffs do not prevail on a damages trial for general damages or if the District still does not want to settle special damages, at that point the Court can decertify the class with respect to special damages.

## II.      Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br><br>Counsel for plaintiffs on behalf of themselves and the putative class members<br><br>2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email clairbornelaw@gmail.com | /s/ Joseph A. Scrofano<br>JOSEPH A. SCROFANO<br>D.C. Bar # 994083<br><br>Counsel for plaintiffs on behalf of themselves and the putative class members<br><br>406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |