## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.,* | |
| Plaintiffs, | |
| v. | Civil Action No. 15-737 (RCL) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

## DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFFS' AMENDED AND RESTATED MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT AND TO FILE SECOND AMENDED COMPLAINT

## INTRODUCTION

Since May 2015, this case has challenged the District of Columbia's firearms registration laws. Now, two-and-a-half years later, plaintiffs seek to amend their Complaint—a second time—expanding the scope of their factual allegations and adding unrelated claims that are the subject of other litigation pending in this Court. This request should be denied for the following reasons: (1) The District will be unfairly prejudiced by the dramatic enlargement of the scope of the case as well as the delay in the proceedings, which could have been avoided had plaintiffs timely and diligently investigated their case; (2) the proposed amendments result in impermissible claim-splitting; and (3) the proposed new claims are futile because they would not withstand a motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint [1] (Original Complaint) in this putative class action on May 15, 2015. The Original Complaint was 16 pages long and contained 83 numbered and unnumbered paragraphs. *Id.* It named one plaintiff—Maggie Smith—and asserted that her arrest and prosecution for carrying an unregistered gun and ammunition violated the Second and Fifth Amendments. *Id.* The Original Complaint named two classes: One of District residents and one of nonresidents. *Id.* On July 20, 2015, the District filed a Motion to Dismiss [13]. Plaintiffs extended their time to respond to the District's dispositive motion, but on September 15, 2015, filed their Amended Complaint [22] instead.

The Amended Complaint was 25 pages long and contained 169 numbered and unnumbered paragraphs. *Id.* at 25. It added another two plaintiffs—Gerard Cassagnol and Frederick Rouse—and similarly challenged plaintiffs' arrests and prosecutions, including allegations concerning the seizure and retention of their unregistered firearms and ammunition. The Amended Complaint raised three claims: (1) violation of the Second Amendment for arrest and prosecution under the District's gun laws; (2) violation of the Fifth Amendment's right to travel; and (3) a procedural due process challenge asserting the right to notice, a hearing, and the return of the seized firearms. *Id.* The Amended Complaint also added a putative class, now totaling three: (1) A Second Amendment class (District residents arrested for carrying unregistered guns); (2) a Nonresident class (nonresidents arrested in the District for carrying); and (3) a Right to Return class (individuals seeking the return of seized

property). On October 2, 2015, the District filed a second Motion to Dismiss the Amended Complaint [23], which plaintiffs opposed. Briefing was completed on December 7, 2015 [29]. The District's motion to dismiss remains pending.

Almost two years later, on September 18, 2017, plaintiffs filed a Motion for Leave to Amend [39], seeking to file a proposed second amended complaint [39-1]. Because of the length and complexity of that filing, the District sought—with plaintiffs' consent—an extension of time to oppose the motion. District's Consent Motion [40]. On the day the District's Opposition was due—after the undersigned devoted considerable time and effort to prepare an appropriate filing—plaintiffs withdrew their motion. *See* Notice [42] (Oct. 16, 2017).

One month later, plaintiffs filed an Amended and Restated Motion for Leave to Amend First Amended Complaint and to File Second Amended Complaint [43] (Plaintiffs' Motion), along with a Proposed Second Amended Complaint [43-1] (PSAC).[1] The PSAC would add yet another plaintiff—Delontay Davis—who allegedly was stopped in his car and arrested for carrying an unregistered handgun and ammunition. *Id.* ¶¶206–209. Mr. Davis's vehicle also allegedly was seized for civil forfeiture, *id.* ¶ 226, but was returned to him in "late May 2014" after his counsel filed a Rule 41(g) motion in the criminal proceeding in Superior Court. *Id.*, ¶¶ 242–43.[2]

---

[1] The District has created a table summarizing the claims and allegations contained in the three Complaints. *See* Defendant's Exhibit (DEx.) No. 1.

[2] The PSAC refers to Mr. Davis's "criminal defense lawyer" some 11 times, without revealing that that lawyer was Mr. Scrofano, co-counsel for plaintiffs here. *See* Docket, *United States v. Delontay Davis*, No. 2014 CF2 005034 (Super. Ct. of D.C.) (available online at *https://www.dccourts.gov/eaccess/home.page.2*); DEx. 2 at 5.

Mr. Davis' indictment was subsequently dismissed, and MPD apparently retained his pistol. *Id.* ¶¶ 219, 222.

The PSAC alleges ten separate claims: (1) Second Amendment arrest and detention; (2) Fourth Amendment arrest and detention; (3) Fifth Amendment right to travel (nonresident class arrest); (4) Second Amendment seizure and detention [*sic*] of property; (5) Fourth Amendment seizure and retention of property; (6) Fourth Amendment retention of guns and ammunition after dismissal; (7) Right to return (guns and ammunition) (Fifth Amendment Due Process); (8) Fourth Amendment retention of vehicle after search and processing for evidence; (9) Second Amendment illegal civil forfeiture of vehicles used to transport guns; and (10) Fourth Amendment illegal civil forfeiture of vehicles used to transport guns. *Id.* at 35–45. Additionally, the PSAC more than doubles the number of putative classes to seven: (1) Second Amendment Arrest and Fourth Amendment Arrest Class; (2) Nonresident Arrest Class; (3) Right to Return Class (guns and ammunition); (4) Second Amendment Seizure and Fourth Amendment Seizure Class; (5) Fourth Amendment Retention Class (guns and ammunition); (6) Fourth Amendment Retention Class (vehicles); and (7) Forfeiture (vehicles) Class. *Id.* ¶¶ 320–26.

## LEGAL STANDARD

Under Federal Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court has discretion to deny leave to amend a complaint where there is "undue delay, bad faith, undue

prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[W]here a defendant has filed a dispositive motion … and plaintiff has opposed it, denial of permission to amend is proper." *James Madison Proj. v. Dep't of Justice*, 208 F. Supp. 3d 265, 277 (D.D.C. 2016) (alteration in original) (quoting *Moldea v. New York Times Co.*, 793 F. Supp. 338, 338 (D.D.C. 1992)). *See also id.* ("Whether there has been an 'unexplained delay in pleading' previously-known allegations is 'another important consideration.'") (quoting *Société Liz, S.A. v. Charles of the Ritz Grp., Ltd.*, 118 F.R.D. 2, 4 (D.D.C. 1987)).

Additionally, "[w]here … the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Pinson v. Dep't of Justice*, ___ F. Supp. 3d ___, 2017 WL 1247295, *16 (Mar. 30, 2017) (quoting *DeSousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)). Finally, leave to amend may be denied based on futility when the proposed amendment would not survive a dispositive motion. *See, e.g.*, *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

## ARGUMENT

I.    **Plaintiffs Should Not Be Permitted to Amend the Complaint Because the Proposed Amendments Would Radically Expand the Scope of the Action, Result in Significant Undue Delay, and Cause Unfair Prejudice to the District.**

   A.    **Plaintiffs Are Attempting to Impermissibly Expand the Scope, Claims, and Classes in This Action.**

The PSAC would exponentially increase the scope and complexity of this matter: It practically doubles the factual allegations from 118 to 234 paragraphs, more than triples the number of distinct claims from three to ten, and increases the number of corresponding putative classes from three to seven. Overall, the PSAC is twice as long as the Amended Complaint, which is double the length of the original Complaint. The result is a confusing, duplicative jumble of allegations, theories, claims, and argument.

Moreover, the proposed new claims, which largely are based on the circumstances of a new plaintiff—Delontay Davis—are totally unrelated to the subject matter of the case. Mr. Davis was, as the existing plaintiffs were, arrested for carrying an unregistered pistol in the District. But any similarity between Davis's claims and plaintiffs' ends there. Mr. Davis's new allegations relate to the seizure, and alleged failure to promptly return, his vehicle, which was taken incident to his arrest. Proposed new Claims 8, 9, and 10 test various legal theories based on these allegations; Claims 5 and 6 do too, to the extent the "property" allegedly seized and retained was a vehicle. By adding these allegations and legal claims, plaintiffs are, in large part, attempting to make this case about something it is not—civil vehicle forfeiture. Indeed, the original plaintiffs allege in their Amended Complaint that their guns and ammunition were *not* subject to forfeiture but rather, taken as contraband. Amend. Compl. ¶¶ 62, 101, 124 [22].

In short, "[l]eave to amend here would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action, it would permit plaintiff to

transform their [*sic*] case into something entirely new." *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991). *See also Pinson*, 2017 WL 1247295 at 16 (leave to amend denied "because the new claims do not involve the same evidence or substantially the same legal issues as the existing claims"). Because the new claims in the PSAC bear no resemblance to plaintiffs' existing legal claims, leave to amend should be denied. *See Wolf v. CIA*, 569 F. Supp. 2d 1, 11 (D.D.C. 2008) (leave to amend denied where "plaintiff's proposed amendments bear no relationship to his original case and would result in a 'radical' change to the 'scope and nature' of this litigation");[3] *Cf. EMC Corp. v. Pure Storage, Inc.*, 310 F.R.D. 194, 203 (D. Mass. 2015) (motion for leave to amend denied; court reasoning that "the proposed amendment seeks to introduce an entirely new theory of liability to the case, which arises out of a different set of facts than those that support the existing claims.").

### B.  Plaintiffs Demonstrated a Serious Lack of Diligence in Investigating Their Case and Their Late Amendments Will Cause Undue Delay.

As noted, undue delay is grounds for denying a request for leave to amend. *See Richardson*, 193 F.3d at 548–49. Additionally, a court's discretion to deny leave to amend is "particularly broad" where plaintiffs, as here, already have amended the Complaint once and the new proposed "amendment relates to conduct of which the plaintiff should have been aware at the inception of the action." *Hajjar-Nejad v. George Wash. Univ.*, 873 F. Supp. 2d 1, 12 (D.D.C. 2012) (quoting *World Wide Rush,*

---

[3] In *Wolf,* the court declined plaintiff's request to append an APA cause of action to a FOIA case. *Wolf,* 569 F. Supp. 2d at 11.

*LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010), and citing *Dave v. District of Columbia*, 811 F. Supp. 2d 111, 119–120 (D.D.C. 2011)); *accord EMC Corp.*, 310 F.R.D. at 203.[4] Mr. Davis was arrested on March 23, 2014. PSAC ¶ 206 [43-1]. That date is some three months *before* the arrest of original plaintiff, Smith. And Davis's criminal defense attorney in his underlying arrest is plaintiffs' co-counsel here. *See* DEx. 2 (Delontay Davis's Responses to the District's First Set of Interrogatories at 5 (*Brown v. Gov't of the District of Columbia*, Civil Action No. 13-569 (CRC) (D.D.C.)). In fact, in the *Brown/Hoyte* case, discussed below, Davis and his arrest and vehicle seizure were identified in a chart submitted with plaintiffs' initial disclosures in October 2015 (barely a month after the Amended Complaint filed here). *See* DEx. 3 (Plaintiffs' Rule 26(a)(1) Disclosures and Chart, *Brown/Hoyte*).[5]

---

[4] Plaintiffs also argue that amendment should be allowed here because the PSAC "correct[s]" and "clarif[ies]" their allegations. Plaintiffs' Motion at 3 (citing *National City Mortgage Co. v. Navarro*, 220 F.R.D. 102 (D.D.C. 2004)). That case is easily distinguishable for at least three reasons. First, in contrast to the instant case, the motion to amend was *unopposed. Navarro*, 220 F.R.D. at 103. Second, the court found that the plaintiff there "advanced its motion to amend with due diligence so as not to prejudice the defendants or unduly burden the court[,]" doing so within a year of the filing of the original complaint and nine months after the filing of one defendant's motion to dismiss. *Id.* at 104–105. Not so here, where the proposed amendment comes two and a half years after the original Complaint was filed. Third, the court noted that the proposed amendment "merely changes the dollar amount in controversy and strips away resolved issues." *Id.* at 106. Here, despite plaintiffs' disingenuous assertion otherwise, they have not "clarified" any issues but attempt to dramatically alter the nature and scope of this lawsuit to the prejudice of the District.

[5] In the chart, plaintiffs refer to Davis as "Delonte Davis," but subsequent filings in *Brown/Hoyte* correct their spelling error. *See* DEx. 2.

Thus, these plaintiffs (or, more accurately, their attorneys) knew of Davis's claims as early as March 2014, when Davis's vehicle was seized or, at the latest, in October 2015, when Davis was explicitly identified in *Brown/Hoyte*. Yet plaintiffs waited *almost two full years* before attempting to add those claims here. Plaintiffs do not explain the reasons for this delay, even after unilaterally taking a "do over." Plaintiffs "had at their disposal all the facts necessary to raise the claims raised for the first time here [in the proposed amendment]." *Hoffmann v. United States*, 266 F. Supp. 2d 27, 33 (D.D.C. 2003) (denying plaintiffs' motion to amend because of "undue delay" and "undue prejudice" to defendants) (citing *Wilderness Soc'y v. Griles*, 824 F.2d 4, 19 (D.C. Cir. 1987) (affirming denial of plaintiff's motion to amend where motion was filed more than a year after the inception of the litigation and dispositive motions had been filed and opposed)). If the Court were to grant plaintiffs' motion, "the resolution of this already-protracted litigation would be significantly delayed." *Id*. The Court should deny plaintiffs' motion. *See Unique Indus., Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191, 208 (D.D.C. 2011) (motion to amend denied in part because "the plaintiff's purported failure to uncover this evidence earlier in the litigation resulted from its lack of diligence in investigating its case.").

C. **The Proposed Amendment Unduly Prejudices the District of Columbia's Defense of This Case.**

Plaintiffs provide no reason for the delay described above, simply asserting in conclusory fashion that "there is no prejudice from delay because there is no delay,

and there is no other prejudice." P. Mot. at 5 [43].[6] That statement is as disingenuous as it is circular. In fact, allowing plaintiffs' proposed amendments would be highly prejudicial to the District for several reasons.

First, the District's dispositive motion has been ripe since December 2015. Accepting the PSAC would require the submission of a third, expanded motion to dismiss, and prolong the resolution of this matter even further. *See Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (denying leave to amend where expanding allegations would result in undue prejudice); *Dave*, 811 F. Supp. 2d at 120 (denying leave to amend where request was made after case was pending "more than one year"; quoting *Parish*, above, for the proposition that "[u]ndue prejudice is likely to occur if 'the amended complaint contains new complex and serious charges"). Second, because plaintiffs are attempting to vastly expand their operative facts and legal theories, adding seven new, distinct claims, renewing the District's motion to dismiss would not be a mere formality—It would require separate investigation of the 150+ new factual allegations as well as new legal research and analysis for each of the new claims. A court considering a motion to amend should "evaluate the amendment's effect on judicial resources and the judicial system." *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 119 (D.D.C. 2009) (citing *Childers v. Mineta*, 205 F.R.D. 29, 33 (D.D.C. 2001)). Surely both party and judicial resources will be poorly spent if the

---

[6] In the next sentence, plaintiffs concede that granting the motion "will cause some initial delay in re-briefing the motion to dismiss[.]" P. Mot. at 5 [43].

Parties and the Court are required to return to dispositive motions practice on new issues after more than two years.

For these reasons, the case for prejudice to the District is strong. On the other hand, as noted, plaintiffs already amended once; at that point, they were armed with the information they needed to add the claims they now attempt to assert in the PSAC. Again, "[i]t is well established that '[t]he district court's discretion to deny leave to amend is particularly broad where [as here] a plaintiff previously has amended the complaint' [and] would radically expand the scope of [the] claims to reach a broad universe of additional acts … that were previously uncovered." *Hajjar-Nejad*, 873 F. Supp. at 12 (internal quotations omitted). Plaintiffs' Motion should be denied.

## II.   Plaintiffs' Motion for Leave to Amend Should be Denied Because It Involves Impermissible Claim Splitting and the Claims are Barred by *Res Judicata*.

### A.   It is Improper to Split Mr. Davis's Claims.

Plaintiffs discuss purported "developments in the law" as a reason to allow amendment, P. Mot. at 4, but those developments all work against plaintiffs.[7] The

---

[7] For example, plaintiffs note that an unlawful "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of the legal process." P. Mot. at 4–5 (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (Mar. 21, 2017)). But that case is utterly irrelevant, because the "probable cause" determinations there for *both* the arrest and "subsequent weeks" of pretrial detention rested solely on "police fabrications." *Manuel*, 137 S. Ct. at 919. The Supreme Court held long ago that the Fourth Amendment's exclusionary rule does not apply when police officers make arrests on reasonable reliance on a statute that is later determined to be unconstitutional. *United States v. Jones*, 908 F. Supp. 2d 203, 214 (D.D.C. 2012) (citing *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987)); *United States v. Ferguson*, 508 F. Supp. 2d 7, 9 (D.D.C. 2007) (same). Thus, regardless of plaintiffs'

request for leave to amend should be denied because the vehicle forfeiture claims raised by Mr. Davis have been raised in (or precluded by) other cases, and it is improper to split those claims.[8] Impermissible "claim-splitting" occurs when a plaintiff seeks "to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). To determine whether a plaintiff is improperly claim-splitting, a court should ask whether, assuming the first suit was final, the second suit would be precluded under *res judicata*. *Id.* (citing *Katz*, 655 F.3d at 1219).[9] Applying these principles,

---

putative Second Amendment claims, their proposed Fourth Amendment claims are futile, as they are all based on the subsequent invalidation of a District firearm law.

[8] Plaintiffs cite *Avila v. Davies*, 246 F. Supp. 3d 347 (D.D.C. Mar. 30, 2017), and argue that it "clarified property owners' rights when the police seize their cars in connection with investigations into alleged offenses." P. Mot. at 6. But *Avila* is inapposite here. The plaintiff in that case—unlike every plaintiff here—was not a defendant in a *criminal* proceeding, hence he could not use Superior Court Rule of Criminal Procedure 41(g) to obtain the return of his seized vehicle. *Avila*, 246 F. Supp. 3d at 362–63. "Courts in this district have generally found Rule 41(g) to be a constitutionally adequate means of obtaining the return of seized property in criminal cases." *Hoyte v. District of Columbia*, ___ F.R.D. ___, 2017 WL 3208456, n.1 (D.D.C. July 27, 2017) (quoting *Jenkins v. District of Columbia*, Civil Action No. 16-0118, *slip op.* at 8 (D.D.C. Mar. 28, 2017) (citing *Baird v. Holton*, 806 F. Supp. 2d 53, 58 n.5 (D.D.C. 2011)).

[9] A valid final judgment is not necessary to dismiss a case for claim-splitting. *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, n.2 (D.D.C. 2014) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)). *See also Katz*, 655 F.3d at 1219 ("If the party challenging a second suit on the basis of claim splitting had to wait until the first suit was final, the rule would be meaningless. The second, duplicative suit would forge ahead until the first suit became final, all the while wasting judicial resources.").

12

claim-splitting bars Mr. Davis from becoming a plaintiff here because his claims are already before the Court in *Brown/Hoyte.*

*Brown/Hoyte* involves putative classes of owners of cash or vehicles seized by police under local civil forfeiture laws challenging the retention of their property as violations of the Fourth and Fifth Amendments. *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 59 (D.D.C. 2015).[10] Plaintiffs in *Brown/Hoyte* originally brought 16 separate counts reflecting various theories of recovery under the Fourth and Fifth Amendments. By his own admission, Mr. Davis is a member of the *Brown/Hoyte* Claim Three class and, indeed, sought to intervene as a class representative there. *See* Docket, *Hoyte v. District of Columbia,* Civil Action No. 13-569 (CRC) (D.D.C.), P. Mot. Interv. [109]; *cf.* Notice of Withdrawal [119].

The court in *Brown/Hoyte* dismissed all of the plaintiffs' Fourth Amendment claims because the "factual allegations supporting these claims are duplicative of identical claims brought under the Fifth Amendment." *Brown*, 115 F. Supp. 3d at 63 (explaining, "Plaintiffs do not challenge the reasonableness of the underlying seizures. Rather, they challenge the constitutionality of the procedures employed following the seizures."). That should bar any claim by Mr. Davis arising under the Fourth Amendment, including as asserted in Claims 5, 6, 8 and 10 in the PSAC.

Additionally, the Claim Three class in *Brown/Hoyte* (including Mr. Davis) seeks damages for the alleged impermissible retention of vehicles seized by the

---

[10] The lead plaintiff in *Brown* dismissed her claims and Ms. Hoyte became the lead plaintiff. *See Hoyte*, 2017 WL 3208456 at n.1. The *Brown/Hoyte* plaintiffs are represented by Mr. Claiborne, co-counsel for the instant plaintiffs.

District for civil forfeiture between April 2010 and June 2015. *Hoyte*, 2017 WL 3208456 at \*2. If the Claim Three class prevails in that litigation, Mr. Davis's proposed claims regarding vehicle retention in this case would be precluded. *Clayton*, 36 F. Supp. 3d at 94. Thus, plaintiffs' proposed amendment should be denied as impermissible claim splitting. Because Mr. Davis is already before this Court in a separate case, suing the same defendant for the same alleged violations of law, he cannot bring his claims here.

Plaintiffs argue that amendment should be allowed, despite the application of claim-splitting rules, because "none of the claims in this case were certified in [*Brown/Hoyte*]." P. Mot. at 8. But that argument is unavailing. For claim-splitting purposes, "'a class action approved under Rule 23' binds nonparties who qualify as members of that class." *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1124 (C.D. Cal. 2016) (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011)). Because Mr. Davis is a class member in at least one certified class in *Brown/Hoyte*, based on the same incident he alleges here, he cannot add his claims to this suit. *See Vanover v. NCO Financial Servs., Inc.*, 857 F.3d 833, 839, 842 (11th Cir. 2017) (affirming trial court's dismissal of claims for impermissible claim-splitting "based on the same nucleus of operative facts" which if allowed "would have the undesirable effect of exposing [defendant] to potential conflicting liability and inconsistent judgments.").

**B.  Alternatively, Plaintiffs' Claims Are Barred by _Res Judicata._**

Similarly, the doctrine of _res judicata_ bars "repetitious suits involving the same cause of action." _Reynolds v. Dep't of Justice_, 10 F. Supp. 3d 134, 141 (D.D.C. 2014) (quoting _C.I.R. v. Sunnen_, 333 U.S. 591, 597 (1948)).[11] "Suits implicate the same cause of action when they arise from the same 'nucleus of facts.'" _Id._ (quoting _Drake v. FAA_, 291 F.3d 59, 66 (D.C. Cir. 2002)). There is no dispute that Mr. Davis's putative claims here arise from the same "nucleus of facts" he alleges in _Brown/Hoyte_.

_Res judicata_—specifically, claim preclusion—bars the re-litigation of claims that were, or could have been, raised and resolved in a prior proceeding. _Robertson_, 867 F. Supp. 2d at 49. To apply claim preclusion in the claim-splitting context, the Court must consider: "(1) whether the claim was [or will be] adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the pleading is asserted was a party or in privity with a party in the prior case." _Koker v. Aurora Loan Servicing, LLC_, 915 F. Supp. 2d 51, 61 (D.D.C.

---

[11] Claim preclusion and issue preclusion "are collectively referred to as '_res judicata._'" _Robertson v. Cartinhour_, 867 F. Supp. 2d 37, 49 (D.D.C. 2012) (quoting _Taylor v. Sturgell_, 553 U.S. 880, 892 (2008)). _See also Hurd v. District of Columbia_, 864 F.3d 671, 679 (D.C. Cir. 2017) ("Claim preclusion bars a party from re-litigating a claim that was or should have been asserted in a prior action. Issue preclusion makes 'the determination of a question directly involved in one action ... conclusive as to that question in a second suit.'") (citations omitted).

2013) (quoting *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008)). All three of these elements are met here.

a.  <u>Claims Are (or Will Be) Adjudicated in First Action</u>

How plaintiffs characterize Mr. Davis's putative claims is immaterial to the application of claim preclusion. The claims raised by Mr. Davis in the PSAC and those he raises as a member of the Claim Three class in *Brown/Hoyte* undeniably are based on the same factual nucleus. Mr. Davis alleges that he was arrested in March 2014 for carrying an unregistered handgun and ammunition and that that property and his car were seized and the car held for civil forfeiture, and that these actions violated his rights under the Constitution. PSAC [43-1] ¶¶ 206–244. *Cf.* DEx. 2 at 7. "There are no new facts. Plaintiff is simply raising a new legal theory. This is precisely what is barred by *res judicata*." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217–18 (D.C. Cir. 2004). *See also NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("[C]laim preclusion precludes the relitigation of *claims*, not just *arguments*") (emphasis in original)).

b.  <u>Whether the Present Claim is the Same One Raised (or Could Have Been Raised) Earlier</u>

That Mr. Davis now seeks to raise Second Amendment claims to challenge the seizure of his property is irrelevant. Those claims *could have been* raised along with the Fourth Amendment and Fifth Amendment claims raised in *Brown/Hoyte*, and are thus precluded. *See Koker*, 915 F. Supp. 2d at 62 ("Whether the Plaintiff's [c]laim was *actually* raised in the [previous] action is immaterial; what matters is that the Plaintiff *could have* raised the claim [there.]" (emphasis in original) (citing *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999)). *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp.

2d 209, 212 (D.D.C. 2011) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 273 Fed.Appx. 256, 265 (4th Cir. 2008) (the claims need only involve the same parties and "arise out of the same transaction or series of transactions as the first claim.")). The Court should reject plaintiffs' attempt to circumvent this well-settled principle. Mr. Davis's claims here involve the same parties and arise out of the same transactions implicated in *Brown/Hoyte*.

c.   <u>Both Cases Include the Same Parties, Or Those In Privity</u>

The defendant in *Brown/Hoyte* is the government of the District of Columbia, the same as in the instant matter. *See* DEx 2, 3. And, as demonstrated above, Mr. Davis is a member of the *Brown/Hoyte* Claim Three class. He is thus precluded from bringing his claims in this matter by *res judicata*. And to the extent *res judicata* does not directly apply, rules against claim-splitting nevertheless prohibit him from proceeding in this case.

## III.   <u>Plaintiffs' Motion Should Be Denied Because It Would Not Survive a Motion to Dismiss.</u>

Even if this Court were not persuaded that permitting the requested amendment would unfairly prejudice the District, that plaintiffs are engaged in impermissible claim-splitting, and that their claims are precluded by *res judicata*, the proposed amendment should be denied because it would be futile. *See, e.g.*, *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2007) (holding that a court may deny as futile a motion to amend when the proposed amendment would not survive a dispositive motion). For the reasons set forth in the District's pending

motion to dismiss, all of plaintiffs' proposed claims based on their existing claims (proposed claims 1, 3, 4, and 7; *see* P. Mot. [43] at 6–7) should be dismissed.

### A. Plaintiffs Lack Standing.

Plaintiffs have not suffered any cognizable Second Amendment injury. At a fundamental level, it is apparent that plaintiffs still fail to understand the arguments made by the District in its motion to dismiss. It was illegal to carry a concealed handgun in the District without a license before *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), and remains so today. None of the plaintiffs has sustained a Second Amendment injury, thus they lack standing.

To be sure, Second Amendment jurisprudence continues to develop in the District of Columbia; the D.C. Circuit recently determined that the District's "good reason" requirement violates that provision of the Constitution. *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). Notwithstanding this recent decision, no person may carry a concealed handgun in the District prior to applying for and receiving a license allowing them to do so. D.C. Code §§ 22-4506(a), (b). This requirement applies equally to District residents and nonresidents—even those nonresidents who hold valid concealed-carry licenses from elsewhere. *Id.* And none of the plaintiffs, in any iteration of their claims, has alleged that they even attempted to apply for such a license or were otherwise qualified to receive one, the "good reason" requirement notwithstanding. Plaintiffs have suffered no legally cognizable injuries based on their arrests—it was illegal at the time they were arrested to carry a pistol in the District without a license. It was illegal after *Palmer* to carry a pistol without

a license.[12] And it remains illegal after *Wrenn* to carry a pistol without a license; if plaintiffs did today what they alleged in the Amended Complaint, they still would be subject to arrest on the very *same* charges. The District did not violate the Second Amendment by arresting these plaintiffs. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("irreducible constitutional minimum" requirements to demonstrate standing are (1) injury in fact; (2) causation; (3) redressability). *Cf. Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S. Ct. 2334, 2343–44 (Jun. 16, 2014) (to have standing in a pre-enforcement challenge, plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest[ ]" and that their "'intended future conduct is "arguably ... proscribed by [the] statute' they wish to challenge.") (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). *See also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected.") (emphasis in original).

Simply put, plaintiffs lack standing to assert Second Amendment claims, and because *all* their claims (existing and proposed) derive from their Second Amendment arguments, plaintiffs' amendment should be denied and their claims dismissed.

---

[12] The holding in *Palmer* was that the District's lack of a licensing regime to allow qualified residents and nonresidents to obtain a license to carry a concealed pistol outside the home violated the Second Amendment. *Palmer*, 59 F. Supp. 3d at 183. But that holding is insufficient to entitle plaintiffs to declaratory or injunctive relief here, because of plaintiffs' failure to allege that they were qualified to obtain a license, wanted to apply for one, or intend to do so in the future.

### B. **Plaintiffs' Other Claims**

To the extent any of plaintiffs' claims regarding the propriety of the government's seizure and retention of their property survive after *Brown/Hoyte*, other cases from this Circuit show that plaintiffs cannot prevail. For example, in *Jenkins* the court held that "due process does not require a prompt hearing, in addition to the relief available under Superior Court Rule 41(g), for individuals to challenge the seizure and retention of their vehicles for evidentiary purposes." *Jenkins*, Civil Action No. 16-0118, *slip op.* at 10. That reasoning applies here because the plaintiffs either did make use of Rule 41(g) (Davis), or did not, but could have. Portions of plaintiffs' claims are likewise precluded by *Melton v. District of Columbia*, Civil Action No. 16-237 (D.D.C.), *slip op.* (Mar. 28, 2017), a putative class action in which Judge Cooper granted the District's motion to dismiss and held that due process does not require the District to provide plaintiffs with prompt hearings at which they can challenge "the validity of the seizure and … continuing government retention of [their] property pending any forfeiture determination or investigative or evidentiary holds or for any other reason." *Id.* at 5 (quoting Am. Compl. ¶ 228).[13] And, to the extent any of plaintiffs' putative Fourth Amendment claims are not precluded as discussed above, they are futile. *See* n.7, above.

---

[13] Plaintiffs in *Melton*—also represented by Mr. Claiborne—similarly dismissed their appeal. *See* Mandate, *Melton v. District of Columbia*, No. 17-7070 (D.C. Cir. Sep. 26, 2017).

Although the District has not had an opportunity to fully investigate plaintiffs' new proposed claims, many of them also fail for a variety of other reasons. For example, to the extent the new claims relate to the seizure of Mr. Davis's vehicle or the return of Mr. Davis's property, which is the case for new Claims 8, 9, and 10, and, in part for Claims 5 and 6, they are likely barred by the three-year statute of limitations. *Compare Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) ("[t]he District has two statutes of limitations applicable to tort claims . . . [w]e apply the three-year residual statute of limitations to a section 1983 claim"), with PSAC at ¶ 243 (describing return of Mr. Davis's vehicle in May 2014, more than three years prior to the PSAC). Furthermore, plaintiffs' theory regarding recovery under the Fourth Amendment for lack of probable cause (Claims 2, 5, 6, and 8) is obviously without merit—they concede that they were arrested, and their property confiscated, because they were violating District law that was in effect at the time, *see id.* ¶¶ 126 (Smith), 151 (Cassagnol), 191 (Rouse), 207 (Davis), and the existence of probable cause is the fundamental defense to these sorts of claims, *see Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.") (citation omitted). Likewise, for these claims, no individual defendants are named, and plaintiffs plead no serious basis to attribute the allegedly unlawful actions (arrest or seizure without probable cause) to the District. *See Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (municipal policy must be "moving force" causing alleged constitutional violation). For all these reasons, and

surely many others, plaintiffs' request for leave to amend should be denied on futility grounds.

## IV.   Plaintiffs' Motion Should be Denied Because Davis's Putative Intervention is Not Timely.

Plaintiffs also assert that permissive intervention is "an independent reason" to add Davis as a plaintiff because he "is needed as a named plaintiff for claims relating to vehicles." P. Mot. [43] at 2. Not so. Fed. R. Civ. P. 24(b)(1)(B) permits intervention if sought by "timely motion." Although plaintiffs did not file one, a motion for permissive intervention also requires a court to determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b)[.]" *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 210–11 (D.D.C. 2012) (quoting 7C Wright, Miller & Kane, *Fed. Prac. & Proc.*, § 1913 (3d ed. 2007)).

As with "undue delay" in the Rule 15 context, timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Amador County, Cal. v. Dep't of Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting *United States v. British Am. Tobacco Australian Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)). "[T]he requirement of timeliness is aimed primarily at preventing potential interveners

from unduly disrupting litigation, to the unfair detriment of the existing parties."
*Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001). All these factors counsel against intervention.

Plaintiffs' "intervention" is untimely, even ignoring their withdrawn attempt of two months ago. As detailed above, Davis seeks to join this litigation two and a half years after it commenced, and two years after his claims were raised in another matter. *See* DEx. 3. Furthermore, plaintiffs' counsel knew of Mr. Davis's claims three and a half years ago, at the time of Mr. Davis's arrest and the seizure of his vehicle, because one of them served as Mr. Davis's criminal defense counsel. DEx. 2 at 5. *See Bank of America*, 303 F.R.D. at 119 (motion to intervene denied as untimely where plaintiff's counsel "had actual or constructive knowledge" of the case almost two years previously); *Rubin v. Islamic Republic of Iran*, 270 F.R.D. 7, 11 (D.D.C. 2010) (determination of timeliness of a motion to intervene involves examining "the point at which the proposed intervenor knew or should have known that an action could affect his interests") (citing *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996)). Plaintiffs offer no justification for this considerable delay.

Moreover, the "purpose" of Davis's purported intervention is to add dissimilar vehicle-forfeiture claims, which no other plaintiff shares. Such legally distinct claims would greatly expand the scope of the issues before the Court, prejudice the District and delay the current proceedings further. *See Peters*, 873 F. Supp. 2d at 219 (permissive intervention denied where new claims "do not sufficiently share common questions of law or fact in common with each other or the main action that these

claims could be efficiently considered together."). Plaintiff Davis's putative request to intervene should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Amended and Restated Motion for Leave to Amend First Amended Complaint and to File Second Amended Complaint.

Dated: December 6, 2017.          Respectfully submitted,

                                  KARL A. RACINE
                                  Attorney General for the District of Columbia

                                  ELIZABETH SARAH GERE
                                  Deputy Attorney General
                                  Public Interest Division

                                  /s/ Toni Michelle Jackson
                                  TONI MICHELLE JACKSON [453765]
                                  Chief, Equity Section

                                  /s/ Andrew J. Saindon
                                  ANDREW J. SAINDON [456987]
                                  Senior Assistant Attorney General
                                  MATTHEW R. BLECHER [1012957]
                                  Assistant Attorney General
                                  441 Fourth Street, N.W., Suite 600S
                                  Washington, D.C. 20001
                                  Phone: (202) 442-9774
                                  Email: matthew.blecher@dc.gov