# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>   v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.: **15-737 (RCL)** |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Plaintiffs' Amended and Restated Motion [43] for Leave to Amend the Second Amended Complaint should be granted.

Plaintiffs' motion should be granted because: (1) any delay in seeking to amend the complaint is not undue given the course of the proceedings in this case; (2) the District has not demonstrated that it would suffer any prejudice from the amendments given that the District's motion to dismiss the First Amended Complaint is still pending, the District has not answered, and no Scheduling Order has been entered so discovery has not yet begun; (3) the amendment would not be futile for any reason; and (4) Mr. Davis is not "claim splitting" with respect to his claim for injury due to the loss of use of his car.

### Summary of the complaints and the procedural posture of the case.

This case is – and always has been - about how the District's enforcement of its unconstitutional gun control regime injured the people against whom the District enforced it both in their persons and in their property. Complaint [1], ¶ 1, ¶ 7, ¶ ¶ 22-23, ¶ 53. The core allegation

pled in the original Complaint [1] remains that the District's gun control regime was a total ban on gun ownership (including gun possession) in violation of the 2d Amendment, and that by enforcing its unconstitutional gun control regime against Ms. Smith and the other class members, the District injured them in their persons and in their valuable property rights. Complaint [1], ¶ 7 (the District has maintained a total ban on gun ownership by private citizens including a total ban on the public carrying of ready-to-use handguns outside the home), ¶ 53 ("The District 's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983.").

**The First Amended Complaint filed by right.**

In their First Amended Complaint [22], filed by right pursuant to Rule 15(a)(1) on 9/15/15, plaintiffs fleshed out their core allegation by alleging facts, ¶ 2, and expressly and separately stating an enumerated claim (Claim 3, ¶ ¶ 136-144), for seizure and retention of their guns and ammunition. The First Amended Complaint also alleged facts sufficient to put the District on notice of their claim for damage caused by seizures of vehicles for civil forfeiture by informing it of the factual basis for the claims. (¶ 35, "The District also continued to seize and forfeit cars on the basis of its unconstitutional gun registration scheme pursuant to its civil forfeiture scheme. D.C. Code § 7-2507.06a; D.C. Code § 48-905.02(d)(3)(A)").

**The proposed Second Amended Complaint.**

The proposed Second Amended Complaint simply added a new plaintiff, added supporting allegations fleshing out the allegations of the original Complaint and the First Amended Complaint, and it added alternative legal theories for the claims Plaintiffs pled in the First Amended Complaint, and it added vehicles to the list of property previously mentioned in the complaints  -- vehicles in addition to guns, ammunition, voting rights, and professional licenses.

Claims 1 through 3 in the proposed Second Amended Complaint are claims mainly for injury to the persons of the Named Plaintiffs and the other class members. Although the District does not mention it, as Plaintiffs pointed out in their motion [43] for leave to amend, the proposed Second Amended Complaint significantly altered the claims for arrest by expressing dropping any separate claim for prosecution by either of the prosecuting agencies which prosecute gun cases in the District. *See e.g.*, Plaintiffs' motion for leave to amend, p. 5 ("Plaintiffs restate Claim 1 to eliminate allegations relating to liability for wrongfully prosecuting plaintiffs pursuant to an unconstitutional statute.").

The claims involving injury to property are Claims 4 through Claim 10.

Claims 4, 5, 6, and 7 cover guns, ammunition, and vehicles. These claims: (1) are part of the "same transaction or occurrence" pled in both the original Complaint and the First Amended Complaint; (2) merely add an alternative legal theory with respect to guns and ammunition; and (3) add a new category of property to the claim, vehicles, along with the alternative theories.

Claims 8, 9, and 10 cover vehicles only. These claims: (1) are part of the "same transaction or occurrence" pled in both the original Complaint and the First Amended Complaint; (2) add a new category of property; and (3) add alternative legal theory for damage to property.

I. **Justice requires granting leave to amend because there was no undue delay or prejudice to the District, and the proposed amendments would not be futile.**

A. **Plaintiffs' proposed amendment do not prejudice defendant even if the expand the claims.**

The District contends that Plaintiffs impermissibly expanded their allegations and claims but at the end of the day the main question is whether the proposed amendments prejudice the defendant. Atchinson v. District of Columbia, 73 F.3d 418, 427 (1996); Heller v. District of Columbia, 290 F.R.D. 1, 5 (D.D.C. 2013)(whether plaintiffs amendments are transformative the key question remains do they prejudice the non-movant). They do not.

The main case the District relies on expressly rejects the "prejudice"standard mandated by <u>Foman</u> and <u>Atchinson</u> in favor of a "transformative" test (whether the proposed amendments "transform" the case) measured by the "involve common issues of fact" prong of the "related case" rule of the Local Rules. <u>Miss. Ass'n of Coops. v. Farmers Home Admin.</u>, 139 F.R.D. 542, 543-44 (D.D.C. 1991)(where leave to amend would transform plaintiffs' case prejudice not a factor).

But, merely expanding the scope of a complaint without more is not a basis to deny an amendment even if the proposed amendments are transformative. As Judge Boasberg put it in rejecting this "transformative test," "[Whether an amendment is [t]ransformative or not, it is the prejudice the Court must focus on." <u>Heller</u>, 290 F.R.D. 1, *5* (D.D.C. 2013)9denying leave to add plaintiffs whose claims were not logically related to the extant claims under Rule 20(a)) *citing* Wright & Miller *et al.*, <u>Federal Practice and Procedure</u> § 1487 ("[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed.")."

Moreover, all the cases the District cites are distinguishable from this one because the procedural posture of this case on the litigation path is different. In each one of the cases the District cites the parties had completed discovery and were in the summary judgment stage, so defendants were prejudiced. <u>Heller</u>, 290 F.R.D. 1, 4 (D.D.C. 2013) *citing* Atchinson, 73 F.3d at 426. In this case the proposed amendments come at the trail head of the litigation path: no answer, no Scheduling Order, no discovery, so no prejudice.

The cases the District relies on are really best analyzed as "misjoinder" cases. For example, <u>Wolf v. CIA</u> expressly evaluates the proposed amendments under Rule 21. *Id.*, 569 F. Supp. 2d 1, 11 (D.D.C. 2008). Although some courts have held that noncompliance with party-joinder rules renders the proposed amendment futile and provides adequate justification for denying the Rule 15(a) motion, not in this case because the proposed amendments do not violate any of the joinder rules. <u>Wolf v. CIA</u>, 569 F. Supp. 2d 1, 11 (D.D.C. 2008)(adding a defendant).

Adding Mr. Davis as a Named plaintiff to this case does not result in misjoinder under Rule 21 because he satisfies the two requirements for permissive joinder of a plaintiff under Rule 20(a)(1) -- transactional relatedness and commonality. Rule 20(a)(1); Disparte v. Corp. Exec. Bd., 223 F.R.D. 7, 16 (D.D.C. 2004).

The MPD arrested Mr. Davis for alleged violations of the District's gun control regime and the MPD seized his property – gun, ammunition, and vehicle incident - to his arrest pursuant to its laws, policies, and customs, Proposed Second Amended Complaint, ¶¶206–209, ¶ 226. Mr. Davis's claims are logically related to the claims of the other Named plaintiffs because they arise out of the "same **transaction, occurrence, or series of transactions or occurrences," and they** involve common questions of law and fact so there is no misjoinder. Rule 20(a)(1). *See* Disparte v. Corp. Exec. Bd., 223 F.R.D. 7, 16 (D.D.C. 2004) (finding the first prong of Rule 20(a) satisfied in the context of an employment discrimination claim where plaintiffs alleged that they were subject to a common policy of the defendant).

Adding supporting allegations that flesh out the core facts of the complaints as plaintiffs do here does not run afoul of any joinder rule. After all, Rule 8 does not require a "short and plain complaint," but rather a "short and plain statement of the claim." Ciralsky v. CIA, 355 F.3d 661, 670 (2004).

Moreover, what the District terms adding claims is not, strictly speaking, adding new claims to this action; Plaintiffs' claim still arises under Section 1983, they arise from the "same transaction or occurrence" and they involve common facts and policies as the claims in the First Amended Complaint, that is, the District's enforcement of its unconstitutional gun control regime by arresting, detaining, and prosecuting people and seizing and damaging their property. Disparte, 223 F.R.D. at 16. Plaintiffs merely seeks to plead the predicate constitutional violation under pled under the 5th Amendment in the First Amended Complaint under the 2d and 4th Amendments

as alternative theories of liability. *See* Estate of Gaither v. District of Columbia, 272 F.R.D. 248, 252 (D.D.C. 2011)(adding alternative theories of liability does not constitute adding new claims).

Courts routinely permit (under Rule 15(a)(2)) plaintiffs to assert alternative legal theories based on the same facts giving rise to the complaint, and so plaintiffs should be permitted to add their 2d Amendment and 4th Amendment claims to their complaint. City of Dover v. United States EPA, 40 F. Supp. 3d 1, 6 (D.D.C. 2013).

Moreover, the Supreme Court has confirmed that the same conduct may violate more than a single Constitutional right. Soldal v. Cook Cnty., 506 U.S. 56, 70, 113 S. Ct. 538, 548 (1992).

Pinson v. United States DOJ, 246 F. Supp. 3d 211, 231-32 (D.D.C. 2017) is distinguishable because in Pinson plaintiff sought to add new defendants (as opposed to new plaintiffs) at a different prison for what was truly a new claim because it did grow out of incidents that were not logically related to the facts pled in the operative complaint.

Adding seizures of vehicles to the guns and ammunition does not change the analysis. The core operative fact alleged in all the complaints in this case is that the District arrested people for violating its gun control regime, and seized their property. A pattern of seizing property from them incident to those arrests – regardless whether the property is guns, ammunition, or vehicles – involves common issues of fact.

Here, as the District concedes, plaintiffs' property – including Mr. Davis' vehicle – was seized incident to their arrests. Defendant's Opposition, p. 6.

In fact, the claims for vehicles even pass the more restrictive "same conduct, transaction, or occurrence" test in the relation back rules of Rule 15(c).

The Seventh Circuit addressed a similar issue in Schorsch v. Hewlett-Packard Co., 417 F.3d 748 (7th Cir. 2005)(using relation back rules of Rule 15(c) to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to

the suit). The Seventh Circuit examined when an amended complaint constitutes the commencement of a new action for CAFA purposes using the relation back rules of Rule 15(c) to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit).[1] 417 F.3d at 749. The plaintiff filed a complaint against Hewlett-Packard ("HP"), "proposing to represent a class of persons who purchased from HP drum kits for use in its printers." Id. The drum kits contained some of the machinery that dispensed the toner to the paper. The kit also contained a computer chip that, when the machinery was sufficiently worn out that it could impact adversely printing quality or endanger the effectiveness of other components, prevented the printer from working until a new drum kit was installed. Id. The plaintiffs maintained that the inclusion of this computer chip injured consumers who wished to continue using the worn-out drum kits past HP's pre-programmed cut-off point. Id. After CAFA became effective, the plaintiff tendered an amended complaint that expanded the class definition from purchasers of drum kits to purchasers of all printer consumables (like toner cartridges for laser printers and ink cartridges for ink-jet printers) that also contained the same kind of computer chip. Id. at 749-50. The Court held that the change in the class definition did not constitute a new claim. The Court explained that "[f]rom its outset, this suit has been about HP's use of EEPROM chips to shut down its printers until a component has been replaced. The identity of the consumable is a detail." Id. at 750.

From its outset, this suit has been about the District's enforcement of its unconstitutional gun control regime to arrest and detain people and injure them in their property including seizing and detaining property. The identity of the property seized -- gun, ammunition, or vehicle -- "is a detail." *Id.*

---

[1] Class Action Fairness Act of 2005, at 28 U.S.C. § 1453(c).

The relevant transaction in the original Complaint is properly understood as Ms. Smith's arrest. The seizures of property all flowed directly from that arrest. *See* <u>Neita v. City of Chi.</u>, 830 F.3d 494, 448 (7th Cir. 2016). In <u>Neita</u> police officers arrested Mr. Neita for animal cruelty when he went to Animal Control to surrender two dogs and the officers then searched Mr. Neita, his vehicle, and later his business premises. *Id.* 498. Mr. Neita's original complaint alleged the officers arrested him without probable cause and then searched him and his business. *Id.* Mr. Neita did not allege the search of his vehicle until the second amended complaint which he did not file until after the statute of limitations had run. *Id.* The Seventh Circuit held that the claim for search of the vehicle related back to the original complaint because the relevant transaction was the arrest, and the searches all flowed directly from that arrest. *Id.*

Finally, each of these additions of specific types of property would satisfy the "related case" rule of the Local Rules, currently numbered as LCvR 40.5(a)(3)(ii) (involve common issues of fact). *See* <u>Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton</u>, 2002 U.S. Dist. LEXIS 27234, *3 (cases related where plaintiffs filed suit against the trustee-delegates of the United States and other federal officials "to compel performance of trust obligations."). See <u>Miss. Ass'n of Coops.</u>, 139 F.R.D. at 543-44 (applying "related case" test to proposed amendments that expand claims).

## B. Plaintiffs did not unduly delay in making the proposed amendments.

Plaintiffs did not unduly delay in making the proposed amendments. No Scheduling Order setting a deadline for amending pleadings has been entered in this case so the diligence standard under Rule 16(b)(4) and LCvR 16.4 does not apply.

Moreover, mere passage of time without regard to where the case is on the litigation path does not amount to undue delay. <u>Heller</u>, 290 F.R.D. 1, 4 (D.D.C. 2013) *citing* Atchinson, 73 F.3d at 426. A case's position along the litigation path proves particularly important in the question of

undue delay and prejudice inquiry: the further the case has progressed, the more likely the opposing party is to have relied on the unamended pleadings, and the more likely amendment of a complaint would require additional discovery, which cuts against allowing amendment when the defendant has crafted discovery on the basis of the operative complaint. *Id.*

The District throws together a hodge podge of snippets lifted from various cases but the facts of the cases do not support the District's contention because the cases in fact turn on where the case was on the litigation path and how that prejudiced the non-movant. For example, the first case the District cites to in support of its "undue delay" contention is <u>Richardson v. United States</u>, 193 F.3d 545, 548–49 (D.C. Cir. 1999), presents no analysis of the "undue delay" factor. Rather, in <u>Richardson</u>, the D.C. Circuit reversed the District Court for failing to grant the plaintiff leave to amend his complaint because "the lack of any evidence of prejudice to the Government if Mr. Richardson were allowed to amend the complaint" after filing a reply to the defendant's motion to dismiss. *Id.*

Next, the District plucks out a line from <u>Hajjar-Nejad v. George Wash. Univ.</u>, that is, a "district court's discretion to deny leave to amend is "particularly broad" where plaintiffs, as here, already have amended the Complaint once and the new proposed "amendment relates to conduct of which the plaintiff should have been aware at the inception of the action." 873 F. Supp. 2d 1, 12-13 (D.D.C. 2012)

But, a careful reading of the case reveals the "unique circumstances" which Judge Kollar-Kotelly identified which led her "to deny Hajjar-Nejad leave to amend his Complaint a third time to add breach of contract claims ***that had already been dismissed by the Court.***" <u>Hajjar-Nejad v. George Wash. Univ.</u>, 873 F. Supp. 2d 1, 12-13 (D.D.C. 2012)(emphasis added). In this case, plaintiffs are not proposing in their proposed Second Amended Complaint to bring legal theories or claims which the Court has already dismissed, so <u>Hajjar-Nejad</u> is distinguishable.

The District also contends that Plaintiffs provide no reason for the delay, claiming erroneously that Plaintiffs had at their disposal all the facts necessary to raise the claims raised for the first time here in the proposed amendment, and resolution of this already-protracted litigation would be significantly delayed. Opposition, p. 7.

Unique circumstances explain why Plaintiffs added Mr. Davis to this case when they did. Defendant states that "these plaintiffs (or, more accurately, their attorneys) knew of Davis's claims as early as March 2014" when was arrested. Though the District certainly did.

The law and facts underlying the 4th Amendment claims for property – including vehicles – did not become clear to Plaintiffs until after Judge Chutkan issued her opinion in <u>Avila v. Dailey</u>, which relied on the Giovanelli declartaion (cited in the opinion). *Id.,* 246 F. Supp. 3d 347, 358-59 (D.D.C. 2017).

In the amended <u>Brown/Hote</u> Complaint [15, 13-569 (CRC) Plaintiffs pled a binary theory of seizure: either a vehicle was seized for civil forfeiture or as evidence but not both. [2]The District in its opposition to Plaintiffs' renewed motion [80] for class action treatment contended that sometimes the U.S. Attorney put evidentiary holds on vehicles seized for civil forfeiture, and so the U.S. Attorney controlled the release of the vehicle.

But, Judge Chutkan rejected that position on the basis of her analysis of the relevant statutes and orders and an affidavit prepared by the U.S. Attorney stating that the District controls the timing of release of vehicles seized by the District and classified by them. <u>Avila v. Dailey</u>, 246 F. Supp. 3d 347, 358-59 (D.D.C. 2017). Judge Chutkan's opinion also clarified the theory that holding a vehicle past the point it is needed as evidence regardless of whether the seizure was supported by probable cause violates the 4th Amendment. *Id.* at 355. A few weeks later, on June

---

[2] When filed, the name of the lead plaintiff in the case was Kimberly Brown, and the case was assigned to Judge Brown, so the caption was <u>Brown v. District of Columbia</u>, 13-569 (KJB/CRC). After Ms. Brown dropped out the caption became <u>Hoyte v. District of Columbia</u>, 13-569(CRC).

21, 2017, a 9th Circuit panel reached the same conclusion in <u>Brewster v. Beck</u>, 859 F.3d 1194, 1196-97 (9th Cir. 2017).

On 6/19/2017 Plaintiffs' moved [141] for leave to amend the complaint in <u>Brown</u> after discovery ended to add a 4th Amendment claim based on <u>Avila v. Dailey</u>. Judge Cooper denied the motion in a minute order (dated 7/27/2017). Thus, Plaintiffs' counsel does not know why the motion was denied, whether on the merits or because the Court decided Plaintiffs did not establish good cause to amend the Scheduling Order deadline for amending pleadings.

Judge Cooper issued the final class definition in <u>Brown/Hoyte</u> on 10/26/17. Order [159, docketed 10/26/17]. The class definition excludes vehicles held as potential evidence in a criminal prosecution by the MPD at the direction of the U.S. Attorney. It also states that plaintiffs are not entitled to prompt post seizure hearings until 30 days after seizure.

Plaintiffs' theory in this case is that if property (whether guns or vehicles) are seized and held for use in arrests and prosecutions based on a gun control regime that violates the 2d Amendment it does not matter who controlled the timing of their release because if the property were held pursuant to District of Columbia statutes that violate the 2d Amendment then the District is liable regardless of who controlled the timing of their release for evidence. In other words, the District could blame the U.S. Attorney in a 4th Amendment claim but not a 2d Amendment claim.

Plaintiffs filed their amended and restated motion [43, docketed 11/22/2017] for leave to amend shortly after Judge Cooper issued the class definition in <u>Brown/ Hoyte</u>. <u>Hoyte</u> Order [159] on class definitions, docketed 10/26/17.

**C. The proposed amendments would not unduly prejudice the District of Columbia's defense of this case because they do not prevent the District from asserting a response to the amendment that they otherwise would have used had the proponent proposed the amendment earlier on the litigation path.**

Undue prejudice in this Circuit typically means the opposing party must demonstrate unfairness in a procedural or timing sense -- that at this stage of the litigation they are prevented in some way from asserting a response to the amendment that they otherwise would have used had the proponent proposed the amendment earlier on the litigation path. Foremost-McKesson, Inc. v. Islamic Republic of Iran, 1988 U.S. Dist. LEXIS 18522, *16 (D,D.C. 1988);*See* Atchinson v. District of Columbia, 73 F.3d 418, 427 (D.C. Cir. 1996)(undue prejudice may exist when discovery propounded by and against the defendant would most likely have differed from that which occurred had plaintiffs proposed their amendments earlier on , and as a consequence of the different discovery that would have occurred, the strategy and nature of the defendant's defense probably would also have been altered); Heller, 290 F.R.D. at 4.

In other words, by delay measured in terms of the case's progress on the litigation track, the non-movant must show that the amendments would deprive the non-movant of an opportunity in terms of preparing their defense and litigation strategy to the amendment. Barnes v. District of Columbia, 278 F.R.D. 14, 18 (D.D.C. 2011)(leave to amend denied because proposing amendments after summary judgment motions would have deprived defendant of the opportunity to explore its defenses to the proposed theories in discovery); Doe v. District of Columbia, 815 F. Supp. 2d 208, 215 (D.D.C. 2011)("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely"; defendant could have pursued discovery on plaintiffs' new allegations if they had been made in a timely fashion, but it can no longer do so); Minter v. Prime Equip. Co., 451 F.3d 1196, 1209 (10th Cir. 2006)(the timing of an amendment in terms of the litigation path prevents the defendant from pursuing a potentially promising line of defense to the amendments); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 1988 U.S. Dist. LEXIS 18522, *16 (non-

movant must show that at this stage of the litigation they are prevented in some way from asserting a response to the amendment that they otherwise would have used had the amendment been timely); <u>Heller</u>, 290 F.R.D. at 4(adding new plaintiffs to challenge different provision of statute in new claims deep in discovery period would prejudice non-movant).

In this case the proposed amendments come at the trail head of the litigation path and do not add "new" claims: no answer, no Scheduling Order, no discovery, so no prejudice.

The District's strategy and its defenses may be altered by the allegations Plaintiffs propose in the Second Amended Complaint, but that is not prejudice. Prejudice is the need to alter the defense when alteration is no longer possible. *See e.g.,* <u>Atchinson,</u> 73 F.3d at 427; case cited above.

The District's analysis of the proposed amendments should have demonstrated for each how the amendment would likely have prevented the District in some way from asserting a response that they otherwise would have used had plaintiffs proposed making the amendment at the time of the First Amended Complaint, but it did not, so the District failed to show prejudice. *Id.*

### The District's objections.

The District contends that allowing plaintiffs' proposed amendments would be highly prejudicial to the District for two reasons: (1) the District's dispositive motion has been ripe since December 2015, and allowing the amendments in the proposed Second Amended Complaint would require the submission of a third, expanded motion to dismiss, and prolong the resolution of this matter even further; and

 (2) "because plaintiffs are attempting to vastly expand their operative facts and legal theories," the District contends, adding seven new, distinct claims it would require separate investigation of the 150+ new factual allegations as well as new legal research and analysis for each of the new claims. Opposition, pgs. 9-11.

With respect to the first reason, as explained above, mere passage of time without regard to where the case is on the litigation path and whether the proposed amendment would prejudice the non-movant is not a reason to deny a motion for leave to amend. For example, in <u>Parish v. Frazier</u>, the case the District cites, the 5th Circuit held that the district court properly refused to permit the amendment when the plaintiff filed a motion to amend on the same day defendants filed a motion for summary judgment, and granting the motion would likely prejudice defendants by requiring additional discovery and another motion for summary judgment. 195 F.3d 761, 764 (5th Cir. 1999). Nor does the other case the District cites, <u>Dave v. District of Columbia</u>, support the District's contentions; it supports plaintiffs position that where discovery has not begun and the case is in the early stage of litigation amendments should be allowed. As the <u>Dave</u> Court pointed out, "For these reasons [no new allegations and motion filed when the deadline for the close of discovery was more than two months away] and because this case is still in the early stages of litigation, the court is not persuaded that allowing the amendments would unduly prejudice the defendant." <u>Dave v. District of Columbia</u>, 811 F. Supp. 2d 111, 120 (D.D.C. 2011)

As to reason number two, Plaintiffs are not attempting to "vastly expand their operative facts and legal theories." As plaintiffs explained above, all of the "new" theories are merely alternative theories based on the same core allegations pled in the First Amended Complaint (and the original Complaint for that matter) – the District injured plaintiffs and the other class members by enforcing its unconstitutional gun control regime against them by arresting and detaining them and seizing their property and injuring them in their professions or educations.

And, as explained above, adding alternative theories of liability does not constitute adding new claims, and so plaintiffs' adding alternative theories does not prejudice defendant. <u>Estate of Gaither</u>, 272 F.R.D. at 252 (adding alternative theories of liability does not constitute adding new claims); <u>City of Dover</u>, 40 F. Supp. 3d at 6.

And, as explained above, plaintiffs did not become aware they needed to the alternative theories regarding property until recently.

## II.    Mr. Davis is not impermissibly claim-splitting his vehicle claim.

The District contends that Mr. Davis "split his claims" between this case and <u>Brown /</u> <u>Hoyte</u> because, the District contends, the vehicle forfeiture claims raised by Mr. Davis have been raised in (or precluded by) other cases, and doing so is "impermissible.' The District cites no binding D.C. Circuit precedent in support of this contention, and the District's factual premise is wrong, so the contention must be rejected.

Mr. Davis's (and the other class members like him) case is distinguishable from impermissible claim splitting cases because his claims in this case partially overlap with the claims in <u>Brown/ Hoyte</u> and no matter which case he joins he will be "splitting" his claims, so this case does not ***duplicate*** another pending action. *E.g.*, Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011); <u>Clayton v. District of Columbia</u>, 36 F. Supp. 3d 91, 94-95 (**D.D.C. 2014**).

The District seized his vehicle and did not give him a prompt post seizure hearing as the due process required. So, he is a member of the <u>Brown/ Hoyte</u> Claim 3 class unless the vehicle was subject to an "evidentiary hold" mandated by the U.S. Attorney. <u>Hoyte</u> Order [159] on class definitions - 10/26/17 (excluding vehicles held as evidence at the direction of the U.S. Attorney). But, also, the District arrested him pursuant to its gun control regime which violates the 2d Amendment and all his property claims flowed directly from that arrest flow from his arrest. <u>Neita</u>, 830 F.3d at 448.

The "claim splitting" doctrine is a close cousin of *res judicata*, but it is not res judicata because no judgment has been entered. The doctrine allows a court to dismiss a case involving a particular transaction if the case ***duplicates*** another pending action in which the party litigates other claims arising out of the same transaction. *E.g.*, Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir.

2011). It is a discretionary case management doctrine when a party can still assert its claim through the remaining action against the same defendant regarding the same issue. Clayton v. District of Columbia, 36 F. Supp. 3d 91, 94-95 (D.D.C. 2014). Such is not the case here.

Mr. Davis' claims partially overlap with but do not duplicate the claims in Brown/ Hoyte. Mr. Davis has false arrest and detention claims based on his false arrest and detention due to the District's enforcement of its unconstitutional gun control regime. He also has claims in this case for the seizure of his property including his gun, his ammunition, and his vehicle. The District's enforcement of its unconstitutional gun control regime caused the loss of his gun and ammunition and it also caused the loss of the use of his vehicle for a period of time.

He also has a claim in Brown/ Hoyte for the District's failing to provide prompt post seizure hearings unless the vehicle was subject to an "evidentiary hold" mandated by the U.S. Attorney, Hoyte Order [159] on class definitions - 10/26/17 (excluding vehicles held as evidence at the direction of the U.S. Attorney), which arises from the same nucleus of operative facts.

He will "split" his claims no matter what, just not impermissibly.

His 2d Amendment claims arose (in the sense that it arose from Palmer] after the Brown case was filed [1, 1:13-cv-00569-KBJ/CRC, filed 4/25/2013] because the Palmer v. District of Columbia decision did not come out until 07/26/14 [Document 51, Case 1:09-cv-01482-FJS]. Therefore Mr. Davis could not have raised his 2d Amendment claims in Brown/ Hoyte before then, so neither claim-splitting, res judicata or claim preclusion apply. Opposition, p. 15-17.

Plaintiffs in Brown/ Hoyte moved on 6/19/2017 Plaintiffs' moved [141] for leave to amend the complaint in Brown/ Hoyte after discovery ended to add a 4th Amendment claim based on Avila v. Dailey. Judge Cooper denied the motion in a minute order (dated 7/27/2017). Thus, Plaintiffs' counsel does not know why the motion was denied, whether on the merits or because

the Court decided Plaintiffs did not establish good cause to amend the Scheduling Order deadline for amending pleadings.

Moreover, part of Mr. Davis' claim for loss of use of his vehicle is not covered by the due process claims in Brown/ Hoyte. Periods of seizure that are not covered by the class definition in Hoyte include: (1) the thirty days period of time before he was entitled to a hearing due to the District's civil forfeiture hold; and (2) the period of time after District released the forfeiture hold but before the District released its "evidence" classification and returned his car to him. Hoyte Order [159] on class definitions - 10/26/17. This case will afford him and others like him relief that is simply not offered in Hoyte/ Brown without prejudicing claims for relief in that case. Also, the Brown/ Hoyte class definition excludes vehicles held as evidence at the direction of the U.S. Attorney. Hoyte Order [159] on class definitions - 10/26/17 (excluding vehicles held as evidence at the direction of the U.S. Attorney).

Moreover, at the end of the day the scope of a class action is fluid because the scope of the release can include claims not pled or it may cover less than all claims pled. Litigants and judges regularly modify class definitions. Schorsch v. Hewlett-Packard Co., 417 F.3d 748, 750 (7th Cir. 2005).

Mr. Davis is a member of the Brown/ Hoyte case. But, Plaintiffs here propose that the Court exercise its discretion to allow his vehicle claims to proceed until judgment in Brown/ Hoyte to see whether the entirety of his claims are precluded.

Res judicata does not bar any claims in this case because there has been no judgment in Brown/ Hoyte. Smith v. Bayer Corp., 564 U.S. 299, 315 (2011).

## III.    Plaintiffs proposed amendments are not futile.

## A.  Plaintiffs proposed amendments are not futile.

The District does not address Plaintiffs' reasons why new authority supports the amendments proposed in the proposed Second Amended Complaint in this section, or cite to any authority in opposition to Plaintiffs' authority in this section, and so the District's argument should be rejected on that argument alone. Bartlett v. Overslaugh, 2015 U.S. Dist. LEXIS 190791, *4-5 (2015)(ABJ)(denying defendant's motion where defendant did not cite any legal authority).

In a footnote the District contends that Manuel v. City of Joliet, 137 S. Ct. 911, 918 (Mar. 21, 2017) does not support Plaintiffs contention that detaining arrestees on the basis of an unconstitutional statute states a claim even after a judge orders detention on the basis of an affidavit lacking in probable cause because Plaintiffs do not plead "police fabrication." Manuel applies when the affidavit fails to make out probable cause regardless of the reason. The 4th Amendment is an objective test and evil intent on the part of an actor is not required. *Id*; Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004). It is clear from Manuel that a detention order does not defeat a plaintiff's illegal detention claims if the order was issued based on a defective Gerstein lacking in probable cause, whether the lack of probable cause results from fabricated evidence, *Id.* at 915, or simply the lack of allegations making out probable cause, from the Court's citation to Whiteley. *Id.* n.6; Whiteley v. Warden, Wyo. State Penitentiary, 401 U. S. 560, 568-569 (1971)(lack of probable cause without police fabrication). Plaintiffs still have a claim for detention pre-detention order even if their position on Manuel is wrong. Supreme Court decisions on how an officer's reasonable reliance on a statute that is later determined to be unconstitutional affects application of the exclusionary rule do not apply to a detention claim against a municipality.

Whether an owner could rely on Superior Court Rule of Criminal Procedure 41(g) to obtain the return of their seized vehicle before a criminal case is filed does not affect the claim under Avila v. Davies, 246 F. Supp. 3d 347 (D.D.C. Mar. 30, 2017) because once the District

seizes a vehicle for civil forfeiture a Rule 41(g) motion is no longer available in any event. <u>District of Columbia v. Dunmore</u>, 749 A.2d 740, 743 (D.C. 2000)(property seized and held for forfeiture determinations is deemed to be in the exclusive custody of the Mayor not the Superior Court, and it raises ownership claims, which deprives Superior Court of its ancillary jurisdiction under Rule 41(g) over such property).

## A.  Plaintiffs have Standing on the 2d Amendment claims.

Plaintiffs' demands for money damages, equitable relief, and declaratory relief give them Article III standing whether they ultimately prevail or not.  <u>Id</u>.; <u>Silverman v. Barry</u>, 727 F.2d 1121, 1125 (D.C. Cir. 1984) *citing* <u>Bell v. Hood</u>, 327 U.S. 678, 682 (U.S. 1946). The District had a total ban on ownership of handguns for use outside the home at least until July, 2014 when Palmer struck down the District's gun control regime. <u>Palmer v. District of Columbia</u>, 59 F. Supp. 3d 173, 174 (D.D.C. 2014). Ultimately, after filing an appeal, the District dismissed its appeal of the <u>Palmer</u> decision, so it is binding on the District. <u>Palmer v. District of Columbia</u>, No. 14-7180, 2015 U.S. App. LEXIS 6414 (D.C. Cir. Apr. 2, 2015) (mem., appeal dismissed). In fact, under D.C. Code § 22–4517(b), still on the books, an unregistered firearm is contraband subject to mandatory seizure and an owner has no right to its return. <u>Leyland v. Edwards</u>, 797 F. Supp. 2d 7, 11 (D.D.C. 2011).

Plaintiffs violated the District's gun control regime statutes, but the statutes violated the 2d Amendment. A municipality is liable under 42 U.S.C. § 1983 for constitutional deprivations caused by the municipality's implementation or execution of an unconstitutional municipal policy or custom. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978); <u>Baker</u>, 326 F.3d at 1306 (the explicit setting of a policy by the government that violates the Constitution); <u>Barnes v. District of Columbia</u>, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (DOC's enforcement of

the District's "10 p.m. cut-off" rule violated the due process rights of class members who were over-detained because of that rule).

**B.  Plaintiffs also have standing on their other claims.**

Jenkins v. Dist. of Columbia, 2017 U.S. Dist. LEXIS 119157, at *11 (D.D.C. Mar. 28, 2017) is distinguishable. Jenkins applied only to owners whose vehicles were seized solely for evidence at the direction of the U.S. Attorney, not for civil forfeiture by the District. Jenkins, Civil Action No. 16-0118 (CRC). It is distinguishable because, as explained above, once the District seizes a vehicle for civil forfeiture a Rule 41(g) motion is no longer available in any event because civil forfeiture raises ownership claims which deprives the Superior Court of its ancillary jurisdiction under Rule 41(g) over such property. District of Columbia v. Dunmore, 749 A.2d at 743. The decision binds the District and the other parties but not anyone else such as Mr. Davis because no class was certified. Smith v. Bayer Corp., 564 U.S. 299, 315 (2011).

> As Judge Cooper put it in his opinion certifying the classes in Brown/ Hoyte,
>
> To be sure, "[c]ourts in this district have generally found Rule 41(g) to be a constitutionally adequate means of obtaining the return of seized property in criminal cases." Jenkins v. Dist. of Columbia, No. 16-cv-118, 2017 U.S. Dist. LEXIS 119157, at *11 (D.D.C. Mar. 28, 2017). But the same cannot be said of Rule 41(g) motions in the civil forfeiture context, specifically. As the D.C. Court of Appeals has explained, "the reason for the difference is substantive, because instead of only the [property owner] laying claim to the property, his right to it has been disputed by the government's seizure of the property [for forfeiture]." Dist. of Columbia v. Dunmore, 749 A.2d 740, 745 (D.C. 2000).

Hoyte v. D.C., 2017 U.S. Dist. LEXIS 117682, *17-18.

Melton v. District of Columbia, Civil Action No. 16-237 (D.D.C.), slip op. (Mar. 28, 2017) is also distinguishable because it deals with civil forfeiture of money passed to a U.S. agency for "adoption" Melton is also an unreported slip opinion which binds no one but the parties. Smith, 564 U.S. at 315.

As to 4th Amendment claims for detention, Plaintiffs explain above why <u>Manuel</u> makes post-detention order detention actionable when the Gerstein lacks probable cause for any reason. Avila and Beck support plaintiffs' claims for seizure and retention of property. <u>Avila</u>, 246 F. Supp. 3d at 358-59; <u>Beck</u>, 859 F.3d at 1196-97.

District phrase that "claims relate to the seizure of Mr. Davis's vehicle or the return of Mr. Davis's property, which is the case for new Claims 8, 9, and 10, and, in part for Claims 5 and 6, they are likely barred by the three-year statute of limitations," is wrong because adding vehicles to the list of other property (guns and ammunition) is not a new claim under Rule 15(c), and even if it were it relates back to the original Complaint. <u>Schorsch v. Hewlett-Packard Co.</u>, 417 F.3d 748 (7th Cir. 2005) and <u>Neita v. City of Chi.</u>, 830 F.3d 494, 448 (7th Cir. 2016), discussed above, and here.

This case is – and always has been - about how the District's enforcement of its unconstitutional gun control regime injured the people against whom the District enforced it both in their persons and in their property. Complaint [1], ¶ 1, ¶ 7, ¶ ¶ 22-23, ¶ 53.

The core allegation pled in the original Complaint [1] remains that the District's gun control regime was a total ban on gun ownership (including gun possession) in violation of the 2d Amendment, and that by enforcing its unconstitutional gun control regime against Ms. Smith and the other class members, the District injured them in their persons and in their valuable property rights. Complaint [1], ¶ 7 (the District has maintained a total ban on gun ownership by private citizens including a total ban on the public carrying of ready-to-use handguns outside the home), ¶ 53 ("The District 's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983.").

The relevant transaction in the original Complaint is properly understood as Ms. Smith's arrest. The seizures of property all flowed directly from that arrest. Neita v. City of Chicago, 830 F.3d at 498.

Each of the claims in the First Amended Complaint and the proposed Second Amended Complaint arose out of the same conduct, transaction, or occurrence set out in the original Complaint, namely, the arrest of people and the seizure of their property incident to arrest.

In the original Complaint, in addition to alleging that the arrest and prosecutions caused injury to her person, Ms. Smith alleged that arrest and prosecution even without conviction injured valuable property rights belonging to herself and the other class members. Complaint [1], ¶ 1, ¶ ¶ 22-23, ¶ 53. For example, Ms. Smith is a registered nurse and she pled that the District's enforcement of its gun control regime against her threatened her nursing license and valuable civic privileges such as the right to vote, and the right to serve on juries, Id. at ¶ 23-24. She also pled that the District's enforcement of its unconstitutional gun control regime also threatened or injured the civil licenses of class members to practice their professions and that it cost them valuable civic privileges such as the right to vote and the right to serve on juries, Id. at ¶ 22.

Ms. Smith did not expressly plead that the District seized their property incident to arrest under separately numbered headings styled as "Claims." But she did not have to.

A complaint need not pin plaintiff's claim for relief to a precise legal theory. Skinner v. Switzer, 562 U.S. 521, 530 (2011)(post Twombly and Iqbal); The allegations in a complaint provide notice to defendant where they "stated simply, concisely, and directly events that, they alleged, entitled them to damages." *See* Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014)("Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted."); Brown v. Sessoms, 774 F.3d 1016, 1022 (2014).

First, Ms. Smith pled that, "The District 's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983." Complaint [1], ¶ 53.

Therefore, the Original complaint put the District on notice that the MPD seized her gun and her ammunition, and perhaps her car, because the District is charged with notice of the statutes the D.C. Council enacts and the MPD enforces and the General and Special Orders the MPD promulgates and follows concerning seizures of property incident to arrest for alleged violations of the District's gun control laws.

In Claim 1, Ms. Smith pled that, "The District's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution ... damag[ed] plaintiffs" without limiting the "damage" to damage to her persons. Complaint, ¶ 53. "The District's laws, customs, practices and policies generally banning the carrying of handguns in public" include the statutes and MPD Orders listed below. This Court may take may take judicial notice of the fact of the promulgation and the contents of the District's statutes and the MPD online orders without converting the motion to dismiss into a motion for summary judgment. Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1222 (1993).

District of Columbia statutes and MPD Orders mandate or authorize seizure of property in connection with arrests for alleged violations of the District's gun control regime. For example, even though Ms. Smith did not expressly plead that the MPD seized her gun and ammunition, but she pled she was arrested and prosecuted for CPWL and UF, and D.C. Code § 22–4517(b) and (c) mandates seizure by the MPD of unregistered firearms. Moreover, Ms. Smith pled that the

"District's laws, customs, practices and policies generally banning the carrying of handguns in public" damaged her, and the District was on notice that its practice was to seize and retain all guns and ammunitions for persons arrested for alleged violations of its unconstitutional gun regime.

Moreover, Ms. Smith pled her complaint in general allegations and although she pled examples of property damage her complaint cannot be construed as pleading an exhaustive list of property so as to exclude property not specified in the complaint.

Moreover, Plaintiffs brought their Motion under Rule 15(a)(2). Motion [43], p. 3 (citing to text of Fed. R. Civ. Proc. 15(a)(2)). The District did not contest that Rule 15(a)(2) was the applicable Rule nor did the District argue that Plaintiffs' proposed amendments should be evaluated under any other Rule or under any other provision of Rule 15. *See* Opposition, p. 4-5 (citing to Rule 15(a)(2) and cases interpreting it as setting forth the appropriate standard).

Except here in this throw-away line the Defendant did not allege that any of the plaintiffs' claims are time-barred. Therefore, Rule 15(c)(1)(B) and the "relation-back" analysis is not applicable here. (the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading).

Nor are Plaintiffs' theories regarding recovery under the Fourth Amendment for lack of probable cause (Claims 2, 5, 6, and 8). An arrest under an unconstitutional statue lacks probable cause in a § 1983 false arrest/ false detention claim against a municipality. The laws plaintiffs were arrested for violating were unconstitutional under the 2d Amendment. Palmer, 59 F. Supp. 3d at 174. Plaintiffs do not have to name no individual defendants because the arrests were made pursuant to the District's policies and practices in its unconstitutional gun control regime which violated the 2d Amendment. Monell, 436 U.S. 658; Baker, 326 F.3d at 1306; Barnes, 793 F. Supp. 2d at 278  (DOC's enforcement of the District's "10 p.m. cut-off" rule violated the due process rights of class members who were over-detained because of that rule).

The 4th Amendment claims for retention of property state a claim for illegal detention and retention regardless of whether the initial search was supported by probable cause. Avila, 246 F. Supp. 3d at 358-59; Beck, 859 F.3d at 1196-97.

## IV.   Plaintiffs' motion should not be denied because Mr. Davis' putative intervention is not untimely.

As explained above, Mr. Davis' claims for seizure and retention of his property became clear only after Avila and the Giovanelli declaration relied on in Avila, and plaintiffs moved to add a 4th Amendment claim in Brown /Hoyte shortly after discover, and Judge Cooper only issued the class definition and denied the motion for leave to amend recently. Therefore, the motion to intervene is timely. But, this is an independent alternative basis argued by analogy to general principles only and plaintiffs do not suggest any of the extant Named plaintiffs are not adequate Named plaintiffs for the vehicle claims.

## Conclusion.

For the foregoing reasons, Plaintiffs' Amended and Restated Motion [43] for Leave to Amend the Second Amended Complaint should be granted.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579 | /s/ Joseph A. Scrofano<br>JOSEPH A. SCROFANO<br>D.C. Bar # 994083 |
| Counsel for plaintiffs | Counsel for plaintiffs |
| 717 D Street N.W., Ste 300<br>Washington, DC 20004-2815<br>Phone 202/824-0700<br>Email clairbornelaw@gmail.com | 406 5th Street NW<br>Suite 100<br>Washington, DC 20001<br>Phone (202) 870-0889<br>Email jas@scrofanolaw.com |