## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>DISTRICT OF COLUMBIA,<br><br>      Defendant. | Civil Action No. 15-737 (RCL) |

## <u>DEFENDANT'S MOTION TO DISMISS</u>
## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

Defendant the District of Columbia moves to dismiss plaintiffs' Second Amended Complaint [50] under Federal Rule of Civil Procedure (Rule) 12(b)(1) and (b)(6). The myriad grounds supporting this relief, including plaintiffs' lack of standing and failure to state a claim upon which relief may be granted, are explained in the accompanying Memorandum of Points and Authorities. A proposed order also is attached.

Dated: November 16, 2018.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
MATTHEW R. BLECHER [1012957]
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Email: matthew.blecher@dc.gov

**Counsel for Defendant**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

MAGGIE SMITH, *et al.*,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA,

     Defendant.

Civil Action No. 15-737 (RCL)

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

### INTRODUCTION

Despite growing their allegations and causes of action exponentially since 2015, plaintiffs still assert two basic categories of claims:  those challenging the District of Columbia's (District) "enforcement" of the city's gun laws prior to October 9, 2014 (Claims 1, 2, 3 and 6); and those relating to the government's seizure and retention of certain property incident to arrest (Claims 4, 5, 7, 8, 9 and 10). As explained in this Memorandum, plaintiffs' property-related claims are mostly foreclosed by the related doctrines of claim-splitting, *res judicata*, and *stare decisis* because they were largely decided, or are currently pending, in other actions in the same court. To the extent these claims are not barred on prudential grounds, they should be dismissed for various jurisdictional reasons, including lack of Article III standing (Claims 9 and 10, specifically) and failure to file within the applicable limitations period or for failure to state a claim under the Fourth Amendment and

the Due Process Clause of the Fifth Amendment. Plaintiffs' "enforcement" claims—Claims 1 and 3, in particular—are likewise rife with jurisdictional problems. And, even if the Court takes jurisdiction, it should dismiss the claims because they each fail to state one or more of the elements required for a claim under 42 U.S.C. § 1983. Finally, each of plaintiffs' claims should be dismissed to the extent they seek an injunction expunging their criminal records because plaintiffs plainly do not qualify for that relief.

BACKGROUND

## I.   The District's Pre-*Palmer* Firearms Laws

According to the Second Amended Complaint (SAC), each of the named plaintiffs bases his or her claims on the District's firearms laws in effect prior to the Court's decision in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). *See* SAC ¶ 4 (defining, "Class Period"). Essentially, the Court in *Palmer* enjoined the District:  from enforcing D.C. Code § 7-2502.02(a)(4) (2012 ed.), which at that time effectively prohibited "the registration of handguns to be carried in public for self-defense"; *id.* at 183; from enforcing D.C. Code § 22-4504(a) (2012 ed.), which criminalized the act of carrying a weapon in public without a license; and from enforcing either statute "against individuals based solely on the fact that they are not residents of the District." *Palmer*, 59 F. Supp. 3d at 183. The *Palmer* Court's injunction was effective "unless and until such time as the District [ ] adopt[ed] a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.*

2

Moving swiftly to comply, on September 23, 2014, the Council of the District of Columbia voted unanimously to pass Bill 20-926, the License to Carry a Pistol Emergency Amendment Act of 2014 (Emergency Act). *See* 61 D.C. REG. 10765 (Oct. 17, 2014). The bill was signed by the Mayor on October 9, 2014, and became effective on signing. *See* Complaint ¶ 128; D.C. Official Code § 1-204.12(a) (2014 Supp.). The Council subsequently passed a series of additional emergency and temporary statutes, to maintain a public-carry regime pending enactment of permanent legislation and congressional review. *See, e.g.,* "License to Carry a Pistol Second Emergency Declaration Resolution of 2014," Res. 20-741 (Dec. 17, 2014), 62 D.C. Reg. 1964 (Feb. 13, 2015). The permanent legislation, the License to Carry a Pistol Amendment Act of 2014, Law No. 20-279 (Concealed Carry Law or CCL), became effective—after passing the period of congressional review—on June 16, 2015. *See* http://lims.dccouncil.us/Legislation/B20-0930?FromSearchResults=true (last visited Nov. 14, 2018).

## II.   Plaintiffs' Factual Allegations

In the SAC, plaintiff Maggie Smith alleges that she was stopped by police while driving in the District on June 29, 2014, and arrested for carrying a pistol without a license. SAC ¶¶ 125–28.[1] Smith alleges that she was subsequently indicted by the U.S. Attorney's Office (USAO) and arraigned on charges of carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. *Id.* ¶ 132. Ms. Smith alleges that the USAO dismissed

---

[1] At the time of her arrest, Ms. Smith was allegedly a resident of North Carolina, although now she apparently lives in the District. *See* SAC ¶ 125.

the indictment on September 29, 2014, *id.* ¶ 133, "in light of" the July 2014 decision in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), but the D.C. Office of the Attorney General (OAG) had previously filed a criminal information on similar charges, although it subsequently dismissed the information. SAC ¶¶ 134–37. Ms. Smith alleges that the District seized her pistol at the time of her arrest and has not returned it. *Id.* ¶¶ 138–41.

Plaintiff Gerard Cassagnol, a Maryland resident, similarly alleges that he was stopped by police while driving through the District on October 9, 2013, and arrested for carrying a pistol without a license. *Id.* ¶¶ 147-156. Like Ms. Smith, Mr. Cassagnol alleges that he was subsequently indicted by the USAO and arraigned on charges of carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. *Id.* ¶¶ 158–64. The USAO dismissed the indictment against Mr. Cassagnol "apparently in light of the *Palmer* decision," but OAG filed a criminal information against him the same day. *Id.* ¶¶166–67. On April 20, 2015, OAG "*nolle'd* the case against Mr. Cassagnol[.]" *Id.* ¶ 171. Mr. Cassagnol alleges that, when he was arrested, the police seized his nine-millimeter pistol and some ammunition and have not returned them. *Id.* ¶¶ 172–180.

Plaintiff Frederick Rouse, also a Maryland resident, alleges that, on August 30, 2014, he was arrested by police while at a hotel in the District, for possession of unregistered firearms and ammunition. *Id.* ¶¶ 185–193. On April 22, 2015, OAG

dismissed the charges against Mr. Rouse. *Id.* ¶ 199.[2] Mr. Rouse alleges that, at his arrest, the police seized from him two handguns and a scope, which were subsequently returned. *Id.* ¶¶ 200, 201, 205.

Finally, plaintiff Delontay Davis, a Virginia resident, alleges that he was stopped in his car while driving through the District and arrested for carrying an unregistered handgun and ammunition. *Id.* ¶¶ 206-209. Mr. Davis's indictment was subsequently dismissed by the USAO, as was the criminal information filed by OAG. *Id.* ¶¶ 217, 219–220. Mr. Davis alleges that, at his arrest, police seized his pistol and have retained it. *Id.* ¶¶ 221–222. Mr. Davis also alleges that the police seized his car at the time of his arrest and designated it for civil forfeiture. *Id.* ¶¶ 225–231. Mr. Davis's car was not forfeited but returned to him in "late May 2014," after his counsel filed a Rule 41(g) motion in Superior Court. *Id.* ¶¶ 242–243.[3]

## LEGAL STANDARD

### I.   Dismissal Under Rule 12(b)(1)

Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (U.S. 1994)). Thus, on a motion to dismiss under Rule 12(b)(1), the plaintiff bears the

---

[2] The SAC states "April 22, 2014," but the year is a typo, as it precedes the date of Mr. Rouse's arrest.

[3] The SAC refers to Mr. Davis's "criminal defense lawyer" 11 times, without revealing that the lawyer was Mr. Scrofano, co-counsel for plaintiffs here. *See* Docket, *United States v. Delontay Davis*, No. 2014 CF2 005034 (Super. Ct. of D.C.) (available online at *https://eaccess.dccourts.gov/eaccess/home.page.2*).

burden of demonstrating that the court's jurisdiction is proper by a preponderance of the evidence. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). "[S]ubject matter jurisdiction is, of necessity, the first issue for an Article III court." *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004). In determining whether it has jurisdiction, a district court may consider material outside of the pleadings. *See, e.g.*, *Halcomb v. Office of the Senate Sergeant-At-Arms*, 563 F. Supp. 2d 228, 235 (D.D.C. 2008). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II.   Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). In making this assessment, the Court must accept *only* well-pleaded factual allegations; conclusory allegations and legal conclusions are not entitled to an assumption of veracity. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79. In addition to well-pleaded facts, the Court may consider "documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation and quotations omitted). Ultimately, if the Complaint fails to "set forth information to suggest that

there is some recognized legal theory upon which relief may be granted," it must be dismissed. *See District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984). The dismissal should be with prejudice if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

## ARGUMENT

**I.** **Plaintiffs' "Seizure" and "Retention" of Property Claims—Claims 4, 5, 7, 8, 9 and 10—Should Be Dismissed Because They Either Were Decided, or Are Pending, In a Different Civil Action Before the Same Court.**

### A. Claims 4, 5, 7, 8, 9 and 10 Should Be Dismissed Under the Doctrine of Claim-Splitting.

The SAC asserts six claims (Claims 4, 5, 7, 8, 9 and 10) that challenge the "seizure" and "retention" of plaintiffs' property incident to their arrests. To the extent these claims relate to the seizure of *vehicles* or are only brought by plaintiff Davis, they are currently pending, or could have been asserted, in *Hoyte v. District of Columbia* (*Brown/Hoyte*), Civil Action No. 13-0569 (D.D.C.) (Cooper, J.), and should be dismissed here under claim-splitting principles. The doctrine of claim-splitting bars a plaintiff from maintaining "two actions on the same subject in the same court, against the same defendant at the same time." *Bartko v. Dep't of Justice*, 2018 WL 4608239 at *12 (D.D.C. Sept. 25, 2018) (citation omitted). When this occurs, courts routinely dismiss the later filed action. *See, e.g., Lucas v. District of Columbia*, 214 F. Supp. 3d 7, 9 (D.D.C. 2016) ("[best] course is to dismiss the claims in the new case as duplicative of the already-pending claims"). The rule against claim-splitting "applies even if a certain claim has not yet been adjudicated

7

in the earlier suit." *Bartko*, 2018 WL 4608239 at \*12 ("In fact, those are just the circumstances when the rule against claim-splitting *should* apply"). And, because claim-splitting generally tracks *res judicata* principles, plaintiffs are even barred from asserting, in a later filed action, claims that could have been brought in the earlier-filed suit. *See id.* at \*11 (citing *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014)); *accord Brewer v. Lynch*, 2015 WL 13604257 at \*10 (D.D.C. Sep. 30, 2015) (claim-splitting "generally prohibited by the doctrine of *res judicata*, particularly in class actions").

Here, all of plaintiffs' claims related to the "seizure" and "retention" of vehicles incident to arrest, which turn exclusively on allegations by plaintiff Davis, are either pending before Judge Cooper in *Brown/Hoyte* or could have been brought in that action. *Brown/Hoyte* was originally filed in 2013 as a putative class action challenging the seizure, retention and proposed civil forfeiture of vehicles and currency. *See Brown v. District of Columbia*, 115 F. Supp. 3d 56, 59 (D.D.C. 2015).[4] Much of the *Brown/Hoyte* Complaint was dismissed for failure to state a claim, *id.* at 68–74; what remains is the subject of ongoing summary judgment briefing. Importantly, plaintiff Davis—the sole plaintiff with vehicle-related claims in the SAC—is by his own admission a member of the *Brown/Hoyte* class seeking damages

---

[4] Mr. Davis is a member of the *Brown/Hoyte* claim three class and at one time sought to intervene as a class representative there. *See* Docket, *Brown/Hoyte*, P. Mot. Interv. [109]; *cf.* Notice of Withdrawal [119]. Plaintiffs previously conceded here that Mr. Davis's claims "partially overlap with the claims in *Brown/Hoyte*[,]" and that he "is a member of the *Brown/Hoyte* case." Pls.' Reply [47] at 15, 17.

for the District's retention of vehicles seized for civil forfeiture[5] between April 2010 and June 2015, which period exceeds the putative class period here. *See* Pls.' Mot. Intervene [109], *Hoyte v. District of Columbia*, Civil Action No. 13-0569 (D.D.C.) (Cooper, J.); *cf.* SAC ¶ 4 (defining "Class Period" as May 2012 through October 2014). Accordingly, Claims 8, 9 and 10, which are exclusively about vehicle-related seizures, as well as Claims 4, 5 and 7, to the extent they relate to vehicles (as opposed to other seized property) or are brought by plaintiff Davis, should be dismissed on claim-splitting grounds.[6]

**B.** **The Issues Raised In Claim 7 Were Litigated and Decided In *Jenkins* and *Melton*, and Should Not Be Reconsidered Here.**

Notwithstanding claim-splitting, other issues raised in these claims were fully litigated, and decided, in other cases filed after *Brown/Hoyte*, and this Court should not reconsider them here. Specifically, in *Jenkins v. District of Columbia*, Civil Action No. 16-0118 (D.D.C.)—a putative class action brought by three *Brown/Hoyte* class members represented by plaintiffs' counsel—Judge Cooper held

---

[5] *Compare* SAC ¶¶ 304–311 (damages claim challenging, "[i]llegal civil forfeiture of vehicles used to transport firearms [under] the 2d Amendment"); 312–318 (damages claims challenging, "[i]llegal civil forfeiture of vehicles used to transport firearms [under] the 4th Amendment").

[6] As noted, this disposition is correct regardless of the constitutional provisions plaintiffs seek to invoke in this action because claim-splitting bars any claim that could have been raised by plaintiff Davis in *Brown/Hoyte*. *See Koker v. Aurora Loan Servicing, LLC*, 915 F. Supp. 2d 51, 62 (D.D.C. 2013) ("Whether the plaintiff's claim was *actually* raised in the [previous] action is immaterial; what matters is that the Plaintiff *could have* raised the claim [there]"); *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 212 (D.D.C. 2011) (claims need only involve the same parties and "arise out of the same transaction or series of transactions as the first claim").

that "due process does not require a prompt hearing, in addition to the relief available under Superior Court Rule 41(g), for individuals to challenge the seizure and retention of their vehicles for evidentiary purposes." *Jenkins v. District of Columbia*, 2017 WL 6211103 at *5 (D.D.C. Mar. 28, 2017).[7] Likewise, in *Melton v. District of Columbia*, Civil Action No. 16-0237 (D.D.C.), a similar case also litigated by plaintiffs' counsel and involving the seizure of cash, Judge Cooper held that due process does not require the District to provide plaintiffs with prompt hearings at which they can challenge "the validity of the seizure and ... continuing government retention of [their] property[.]" *Melton v. District of Columbia*, 2017 WL 6211031 at *2–3 (D.D.C. Mar. 28, 2017).

The combination of these holdings, applied here, would foreclose the due process challenges plaintiffs assert in Claim 7. *See* SAC ¶¶ 292 ("retention seizure hearing"), 293 ("notice to owners of [seized] property"). Indeed, as the SAC makes clear, plaintiffs either made use of Superior Court Rule 41(g) to secure the return of their property, or did not, but had that relief available to them. SAC ¶ 242. Under the circumstances, and consistent with the principle of *stare decisis*, this Court should follow Judge Cooper's persuasive analysis and dismiss Claim 7 on substantially the same grounds. *See FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 (D.C. Cir. 2017 (under doctrine of *stare decisis*, "the *same issue* presented in a later case in the *same court* should lead to the *same result*").

---

[7] The Court in *Jenkins* also granted summary judgment to the District on plaintiffs' claim that the District failed timely to return plaintiffs' vehicles after they were no longer needed as potential evidence. *See Jenkins*, 2017 WL 6211103 at *5.

II. **Most of the Claims In the SAC Should Be Dismissed Under Rule 12(b)(1) for Lack of Jurisdiction.**

    A. **Plaintiffs Lack Article III Standing to Bring Any Challenge Related to the Civil Forfeiture of Vehicles (Claims 9 and 10).**

Claims 9 and 10 of the SAC challenge D.C. Code § 7-2507.06a, which states that vehicles used to transport an illegal firearm in the District "are subject to forfeiture." *See* SAC ¶¶ 305–311, 313–318. Both claims should be dismissed under Rule 12(b)(1) because no plaintiff suffered any injury-in-fact sufficient to establish Article III standing. To establish Article III standing, the party invoking federal court jurisdiction bears the burden of demonstrating three "irreducible constitutional minimum" requirements:

> *First*, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (emphasis added). These basic requirements—injury-in-fact, causation, and redressability—must be proven separately as to each claim and request for relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"); *see also Lewis v. Casey*, 518 U.S. 343, 358 (1996) ("standing is not dispensed in gross").

11

Here, plaintiff Davis—the sole plaintiff with any vehicle-related allegations—asserts that his car was seized in connection with his arrest on March 23, 2014. SAC ¶ 225. However, by plaintiff's own admission, his vehicle was *not* forfeited; it was returned to him about 60 days later, after he filed a motion in Superior Court, through counsel under Rule 41(g). *See id.* ¶¶ 242, 243. As such, no named plaintiff in this action ever had a vehicle forfeited under D.C. Code § 7-2507.06a, so any injury allegedly caused by the statute is plainly hypothetical. *See Lewis,* 518 U.S. at 357 ("Even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *accord Brewer v. Holder*, 20 F. Supp. 3d 4, 19 (D.D.C. 2013) (dismissing class claims where representative's claims were "not viable as a matter of law"). Because Article III does not confer authority to adjudicate claims based on hypothetical injuries, the Court should dismiss Claims 9 and 10 for lack of jurisdiction.

## B. Plaintiffs' Vehicle-Related Claims—Claims 8, 9 and 10, and in part, Claims 4 and 5—Are Barred By the Applicable Statute of Limitations.

Even if plaintiff Davis has standing to bring Claims 9 and 10, those claims, as well as Claim 8 and Claims 4 and 5, to the extent they relate to the "seizure" and "retention" of vehicles, are barred by the applicable statute of limitations. The District's statute of limitations for actions seeking "the recovery of personal property or damages for its unlawful detention" is three years. D.C. Code § 12-301(2). The same limitations period applies to otherwise unspecified torts, *id.,* § 12-

301(8), and is generally applied to constitutional tort claims arising under 42 U.S.C. § 1983, *Early v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citation omitted). Here, plaintiffs first raised their vehicle-related claims on September 18, 2017—41 months after plaintiff Davis's vehicle was allegedly seized by MPD, and 39 months after it was returned. Accordingly, because plaintiff Davis is the only named plaintiff with any vehicle-related allegations, Claims 8, 9 and 10, which are exclusively about vehicle-related seizures, as well as Claims 4 and 5, to the extent they relate to vehicles or are brought by plaintiff Davis, all are time-barred and should be dismissed. *See Pleznac v. Equity Residential Mgmt., LLC*, 320 F. Supp. 3d 99, n.2 (D.D.C. 2018) ("if plaintiff's claim is time-barred, the fact that she seeks to represent a class of in-time claims cannot save her").

C. **Plaintiffs' Second and Fifth Amendment Challenges to the Pre-*Palmer* Gun Laws (Claims 1 and 3) Are Rife With Jurisdictional and Jurisprudential Problems Warranting Dismissal.**

Claims 1 and 3 of the SAC assert that the District's pre-*Palmer* gun laws ran afoul of the right to bear arms (Claim 1), to travel and to equal protection (Claim 3), such that the enforcement of those laws—"directly through [ ] MPD," and "indirectly through other police forces"—injured plaintiffs. SAC ¶¶ 249–50. Plaintiffs characterize the injuries allegedly suffered as "humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses *that resulted from being arrested and/or detained.*" SAC ¶¶ 252, 270 (emphasis added). Under the rubric of both claims, plaintiffs primarily seek a declaration that the pre-*Palmer* gun laws violated the Second and Fifth Amendments, "on [their] face or as applied,"

13

as well as "monetary compensation," among others. *See* SAC ¶¶ 253, 271; *id.* at 50–51 ("CLASS RELIEF DEMANDS"). The Court should not exercise jurisdiction over these claims, for the following reasons.

> 1. **Claims 1 and 3 Should Be Dismissed Because Plaintiffs Lack Standing to Challenge Their Arrests and Detentions Under the Second and Fifth Amendments.**

Plaintiffs bear the burden of establishing the elements of Article III standing—injury-in-fact, causation and redressability—separately for each of their claims. *Friends of the Earth, Inc.*, 528 U.S. at 185; *Lewis v. Casey*, 518 U.S. at 358. For Claims 1 and 3, plaintiffs cannot show causation or redressability. To be sure, as explained, the gravamen of the injury asserted in these claims is the economic and other injuries that allegedly resulted from plaintiffs' arrests and prosecutions. SAC ¶¶ 252, 270 ("[injuries] that resulted from being arrested and/or detained"). And, under both Claim 1 and Claim 3, the action that plaintiffs challenge is the District's maintenance of a gun registration scheme that allegedly ran afoul of the Second and Fifth Amendments. *See* SAC ¶ 251 ("enactment and enforcement"). However, the nexus between that challenged conduct and plaintiffs' asserted injuries is simply too attenuated to satisfy Article III. *See Freedom Republicans v. FEC*, 13 F.3d 412, 418 (D.C. Cir. 1994) ("fair traceability turns on the causal nexus between the agency action and the asserted injury").

Indeed, at a minimum, the injuries allegedly resulting from plaintiffs' exposure to the District's criminal justice system (*i.e.*, "humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses,"

SAC ¶¶ 252, 270) stand at the end of the following chain of events:  (1) the District
passed the pre-*Palmer* gun registration scheme; (2) plaintiffs—apparently oblivious
to the law then in effect—brought unregistered firearms into the city; (3) MPD
officers or officers of "other [unspecified] police forces," SAC ¶¶ 250, 268, arrested
and detained plaintiffs for violating the District's gun laws; and (4) USAO or OAG
decided to prosecute plaintiffs for their crimes.[8] Critically, however, in Claims 1 and
3, plaintiffs are not challenging the actions of any federal or local law enforcement
officer or agency. *Cf.* SAC ¶¶ 254–263 (Fourth Amendment "false arrest" claim;
alleging, "[p]laintiffs were arrested and detained … without probable cause"). Nor
does the SAC assert any allegation whatsoever of malicious prosecution involving
either USAO or OAG. For standing purposes, the actions of these law enforcement
and prosecutorial agencies—actions which plaintiffs do not purport to challenge—
are each discrete, intervening events that independently "caused" the injuries for
which plaintiffs seek redress. *See Ctr. For Law & Educ. v. Dep't of Educ.*, 396 F.3d
1152, 1159–60 (D.C. Cir. 2005) ("Where the necessary elements of causation and
redressability hinge on the independent choices of [a] regulated third party … it
becomes the burden of the plaintiff to adduce facts showing that those choices have

---

[8] Prosecutions for "minor" crimes in the District is the responsibility of OAG; all
other crimes are prosecuted by USAO. *See* D.C. Code §§ 23-101(a), (b); *In re
Crawley*, 978 A.2d 608, 610 (D.C. 2009). There are numerous federal law
enforcement agencies in the District that may refer suspected firearm crimes
directly to USAO for prosecution. *See, e.g., United States v. Garner*, 396 F.3d 438,
440 (D.C. Cir. 2005) (U.S. Park Police); *Lucas v. United States*, 20 A.3d 737, 744
(D.C. 2011) (FBI); *In re R.M.C.*, 719 A.2d 491, 492 (D.C. 1998) (U.S. Secret Service);
*Beider v. United States*, 707 A.2d 781, 782 (D.C. 1998) (U.S. Capitol Police).

been or will be made in such a manner as to produce causation and permit redressability of injury").

Likewise, plaintiffs' own conduct severs the causal chain outlined above. Generally, injuries caused by a claimant's own actions will not be harm traceable to the government to satisfy Article III standing. *See, e.g.*, *ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 147 (D.D.C. 2011) (finding lack of Article III standing where plaintiff made changes to business practices in response to the challenged government action; reasoning that changes "are not harms that can be said to have been caused by the [government]"). Again, plaintiffs made no effort to comply with the District's gun registration laws or even to know what the laws required prior to entering the jurisdiction with their weapons. *See* SAC ¶¶ 20 ("many otherwise law abiding citizens unwittingly risked becoming felons when they [ ] carried their pistols and ammunition in the District"), 22 ("the District placed no warnings or notifications of its [ ] gun laws"). Plaintiffs' willful disregard for District law—not any act traceable to the government—proximately caused the injuries they assert in Claims 1 and 3 (*i.e.*, the economic and other harms "that resulted from [plaintiffs] being arrested and/or detained," SAC ¶¶ 252, 270).[9]

Relatedly, plaintiffs cannot demonstrate that a favorable decision on Claim 1 or Claim 3 will redress those alleged injuries. As a practical matter, even if the

---

[9] In fact, given plaintiffs' disregard for local law, they would have suffered precisely the same alleged injuries under the *current* gun registration scheme, which requires both residents and nonresidents to apply for and be granted a District-issued license before carrying a concealed weapon in the District. *See* D.C. Code § 22-4506(a), (b).

Court were to declare that the pre-*Palmer* gun laws violated plaintiffs' rights to bear arms, to travel and to equal protection, that decision would have no effect on the outcome of plaintiffs' criminal proceedings, all of which have ended. More to the point, plaintiffs do not even challenge their prosecutions as unlawful, nor can they establish the absence of probable cause for their arrests, *see* Part III.A, below. As such, a favorable decision on Claims 1 and 3 could neither disturb the outcome of plaintiffs' criminal charges nor redress any injuries allegedly flowing from those charges. Dismissal of these claims for lack of Article III standing is appropriate.

### 2. Plaintiffs' Second and Fifth Amendment Claims Challenging Their Arrests and Detentions (Claims 1 and 3) Should Be Dismissed As Moot to the Extent They Request Declaratory Relief.

To the extent Claims 1 and 3 seek a declaration that the pre-*Palmer* gun laws violated the Second and Fifth Amendments, "on [their] face or as applied," they should be dismissed as moot. *See* SAC at 50. Generally, "a case is moot when the issues presented are no longer live." *Gordon v. Holder*, 85 F. Supp. 3d 78, 81 (D.D.C. 2015) (quotations omitted), *aff'd,* 817 F.3d 804 (D.C. Cir. 2016); *Clark v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990). In the context of challenges to legislation, a claim for declaratory relief ordinarily becomes moot once the challenged law is "no longer in force," so long as there is no allegation that the law "continues to have any residual effect." *Daskalea v. Wash. Humane Soc'y*, 710 F. Supp. 2d 32, 40 (D.D.C.

17

2010).[10] Here, as explained, the District's pre-*Palmer* firearm registration scheme has already been adjudicated, *see Palmer*, 59 F. Supp. 3d at 183–85, and was amended shortly thereafter to obviate the asserted constitutional infirmities, D.C. Code § 7-2501.01, *et seq*. Moreover, there is no reason to believe that the pre-*Palmer* gun laws are likely to be reenacted in the future. Accordingly, plaintiffs' request for broad declaratory relief related to "the District's gun control regime[,] on its face or as applied," SAC at 50, should be dismissed as moot.[11]

### 3. The Court Should Not Exercise Jurisdiction Over Plaintiffs' Challenges to Their Arrests and Detentions Under the Declaratory Judgment Act Because Class-Wide Declaratory Relief Would Have No Practical Effect.

For much the same reason, even if the Court takes jurisdiction of Claims 1 and 3, it should exercise discretion under 28 U.S.C. § 2201(a) and decline to issue the class-wide declaratory relief plaintiffs seek. The Declaratory Judgment Act (DJA) states that a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The use of the word "may" makes such relief permissive, not mandatory:

---

[10] *See also Northeastern Fl. Ch. Of the Assoc. Gen'l Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993); *Initiative & Referendum Inst. v. United States Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).

[11] Plaintiffs' request for nominal damages related to Claims 1 and 3 should not change this result. *See* SAC at 50 ("Declare … and grant [plaintiffs] nominal damages"); *Flanigan's Enters. v. City of Sandy Springs*, 868 F.3d 1248, 1264 (11th Cir. 2017) ("we hold that in this case, involving a constitutional challenge to legislation that is otherwise moot, a prayer for nominal damages will not save the case from dismissal"); *cf. Daskalea*, 710 F. Supp. 2d at 43 (enactment of unconstitutional statute did not entitle plaintiffs to compensatory damages).

"[E]ven when a suit otherwise satisfies subject matter jurisdiction prerequisites, the [DJA] gives courts discretion to determine 'whether and when to entertain an action.'" *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 116 (D.D.C. 2013) (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 282 (1995)). According to the D.C. Circuit, courts should exercise this discretion to decline declaratory relief "where it will not terminate the controversy or serve a useful purpose." *Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980); *accord In re Iraq & Afghanistan Detainees Litigation*, 479 F. Supp. 2d 85, 118 (D.D.C. 2007) ("declaratory judgment should be declined when it would serve only as a statement of law without any practical enforcement effect").

That is precisely the situation here. As explained, the constitutionality of the District's pre-*Palmer* registration scheme has already been litigated and decided. *See Palmer*, 59 F. Supp. 3d at 183–85. Moreover, the District has already enacted a comprehensive concealed-carry licensing regime to supersede the pre-*Palmer* laws, and the behavior for which plaintiffs were arrested—carrying without a District-issued license—remains illegal. D.C. Code § 22-4504(a) (2017 Supp.). Under the circumstances, a declaration of plaintiffs' rights under the Second and Fifth Amendments (Claims 1 and 3) could serve no useful purpose, and the Court should thus decline relief under the DJA.

III.   <u>If the Court Takes Jurisdiction of the SAC, Most of Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).</u>

Each of the ten claims in the SAC arises under 42 U.S.C. § 1983 and identifies the District as the sole defendant. To state a claim under 42 U.S.C. § 1983

against the District, plaintiffs must plead facts sufficient to establish:  (1) the violation of a right secured by the Constitution; and (2) causation, namely, that a municipal policy or custom caused the "ultimate injury" alleged. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). A failure to plead either of the elements is sufficient grounds to dismiss the claim under Rule 12(b)(6). *See Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C. 2012) ("[t]his pleading defect is fatal").

### A. Plaintiffs Fail To State Any Predicate Violation of the Fourth Amendment (Claims 2, 5, 6, 8 and 10) Because the "Seizures" They Seek to Challenge Were Supported By Probable Cause.

Claims 2, 5, 6, 8 and 10 of the SAC nominally arise under the Fourth Amendment and assert, in various ways, that the District's seizure of plaintiffs and their property for violating the pre-*Palmer* gun laws was unsupported by probable cause. To the extent these claims in fact "challenge the constitutionality of the procedures employed following the seizures," which is squarely the case for Claim 10, and partly for Claims 6 and 8, they are co-extensive of plaintiffs' Fifth Amendment challenge and should be dismissed accordingly. *See Brown*, 115 F. Supp. 3d at 63 (dismissing plaintiffs' Fourth Amendment claims as "duplicative" of plaintiffs' Fifth Amendment claims, explaining, "Plaintiffs do not challenge the reasonableness of the underlying seizures [but rather] the constitutionality of the procedures employed following seizures"). Otherwise, plaintiffs' Fourth Amendment claims fail to state a claim because each of the seizures alleged were supported by probable cause.

The "ultimate touchstone of the Fourth Amendment is reasonableness." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quotations omitted). Generally, a seizure of a person or property will be "reasonable" under the Fourth Amendment if it is supported by probable cause, and the existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting office at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Importantly, it is long-established that "[a]n arrest pursuant to a presumptively valid ordinance is lawful even if the ordinance is later held invalid." *Green v. District of Columbia*, 710 F.2d 876, 878 (D.C. Cir. 1983) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36–37 (1979)); *accord Heien v. North Carolina*, 135 S. Ct. 530, 538 (2014) (citing *DeFillippo*, 443 U.S. at 40, and explaining, "[if] it was reasonable for an officer to suspect that the defendant's conduct was illegal … there was no violation of the Fourth Amendment in the first place"). And police officers are entitled to presume that an ordinance enacted by the legislature is valid. *See Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 28 (D.D.C. 2013) (citing *Lederman v. United States*, 291 F.3d 36, 47 (D.C. Cir. 2002)).

Here, in light of the foregoing authorities, plaintiffs' theory regarding recovery under the Fourth Amendment for lack of probable cause (Claims 2, 5, 6 and 8) is without merit. Without exception, plaintiffs concede that they were arrested, and their property confiscated, because they were violating District law that was in effect at the time. *See* SAC ¶¶ 126–127 ("Ms. Smith promptly informed the police that she was carrying a pistol …. MPD arrested Ms. Smith for Carrying a

Pistol"), 151–156 ("Mr. Cassagnol told the officers he had his gun in the truck …
The officers recovered the pistol and … arrested Mr. Cassagnol on one count of
Carrying a Pistol"), 191–193 ("Mr. Rouse freely admitted to the officers that the
guns in the hotel room belonged to him"), 207–209 ("The police observed a pistol on
the console of [Mr. Davis's] vehicle …. MPD arrested Mr. Davis for Carrying a
Pistol"). Indeed, the possession of an operable firearm outside a person's home or
business was, before *Palmer*, *prima facie* evidence of a crime. *See, e.g.*, *Bsharah v.
United States*, 646 A.2d 993, 996–97 (D.C. 1994) ("[A] police officer who sees a non-
uniformed person carrying a pistol in a public place could reasonably conclude that
that person is violating the law and would therefore have probably cause to arrest
the person for carrying a pistol without a license"). As such, it was reasonable for
the officers who arrested plaintiffs to conclude that their conduct was illegal,
meaning their arrests and the seizure of their property was supported by probable
cause. *Cf. United States v. Charles*, 801 F.3d 855, 857 (7th Cir. 2015) ("It[ is] true
that Chicago's handgun ban was later invalidated [but] a police officer conducting a
search may reasonably rely on it for Fourth Amendment purposes"). Plaintiffs' own
allegations provide no basis for a contrary conclusion, so Claims 2, 5, 6, 8 and 10, to
the extent they raise proper Fourth Amendment challenges, should be dismissed.

**B.  <u>Claim 3 Should Be Dismissed Because the Complaint Fails to State a
Predicate Violation of the Equal Protection Clause or of the Right to
Travel.</u>**

**1.  Claim 3 Fails to State an Equal Protection Claim Because Plaintiffs
Have Not Pled Facts Establishing That There Is No Rational Basis for
the Alleged Differential Treatment They Challenge.**

Claim 3 of the SAC is based, in part, on the allegation that the District's pre-*Palmer* gun laws violated plaintiffs' right to equal protection. "The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." *Metropolitan Wash. Ch., Assoc. Builders & Contractors, Inc. v. District of Columbia*, 57 F. Supp. 3d 1, 28 (D.D.C. 2014) (quotations and citation omitted). When a challenged classification impinges on a fundamental right or targets a suspect class, it is subject to strict scrutiny. *Id.* While the Supreme Court has described the "right to keep and bear arms" as "fundamental," *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the particular right asserted here—the right to carry a firearm in public—has *not* been determined to be fundamental, in a constitutional sense, by either the Supreme Court or the D.C. Circuit. Consequently, notwithstanding that the concealed carry law treats District residents and non-residents *identically*, D.C. Code §§ 22-4506(a), (b), to the extent there is any difference in treatment, the classification need only bear a "rational relation to some legitimate end." *Romer v. United States*, 517 U.S. 620, 631 (1996). *See also Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012) ("A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (internal quotation marks and citations omitted)).

"Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonable conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 479 (quoting *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994)). "Rational basis review is thus 'highly deferential,' *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000), and it 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,' *Heller v. Doe*, 509 U.S. 312, 319 (1993)." *MWC*, 57 F. Supp. 3d at 28. Plaintiffs here simply cannot overcome this presumption of rationality.

Indeed, it is certainly rational—and eminently sensible—for the District to require certain basic information and training requirements for non-residents who want to carry concealed weapons in public areas of the District. Likewise, it is not irrational to refuse to accept proffered non-District concealed-carry licenses on faith, without regard to the District's substantive requirements designed to protect public safety. Relatedly, plaintiffs have not even alleged any facts that, if true, would show to whom they are "similarly situated." They use that phrase only once—in the caption of the SAC. Simply put, "non-residents" are not a suspect class. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 389–90 (1978); *cf. Banner v. United States*, 428 F.3d 303, 309 (D.C. Cir. 2005) (applying rational-basis scrutiny and rejecting equal protection challenge to federal law prohibiting the District from imposing a "commuter tax" on non-residents).

24

And plaintiffs' "unsupported and conclusory allegations are not enough" to make out an equal protection claim, "in the absence of actual evidence of disparate treatment." *Texas Border Coal. v. Napolitano*, 614 F. Supp. 2d 54, 65–66 (D.D.C. 2009) (citing *Bois v. Marsh*, 801 F.2d 462, 466 n.5 (D.C. Cir. 1986) (noting in equal protection context that "vague allegations, especially when unsupported by an affidavit or other evidence … are insufficient to state a claim")). In short, it is well established that equal protection "does not require all persons everywhere be treated alike … [but rather] that the government not treat *similarly situated* individuals differently without a rational basis." *Noble v. U.S. Parol Comm'n*, 194 F.3d 152, 154 (D.C. Cir. 1999) (emphasis in original) (citing *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)). Under this standard, the SAC fails to allege a viable equal protection challenge.

### 2. Claim 3 Fails to State a Claim for a Violation of the Right to Travel Because Plaintiffs Have Not Pled Facts Suggesting That the District's Gun Laws Burden That Right.

Claim 3 also fails to state a claim to the extent it asserts a violation of the right to travel. A law implicates the right to travel in three situations—when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that penalizes the exercise of the right. *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (*plurality*); *Pollack v. Duff*, 793 F.3d 34, 45 (D.C. Cir. 2015); *Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994). On its face, the District's concealed carry law does none of these things. Notwithstanding that District law treats residents and non-residents the same in this regard, travel

through or into the District is not deterred in a meaningful sense:  any citizen legally possessing a handgun may lawfully transport that weapon through the District under federal law. *See* Firearms Owners' Protection Act, Pub. L. 99-360, § 1(a), 100 Stat. 766 (July 8, 1986), *codified at* 18 U.S.C. § 926A.

Nor is the concealed carry law *designed* to impede travel. Its purposes are the obvious and important ones of protecting public safety and providing minimally adequate information to law enforcement. The potential inconveniences imposed on plaintiffs by the District law at issue clearly do not violate the right to travel. Indeed, to make out a Fifth Amendment claim, "something more than a negligible or minimal impact on the right to travel is required." *Kansas*, 16 F.3d at 442 (quoting *Soto-Lopez*, 476 U.S. at 921 (O'Connor, J., dissenting)).

Moreover, plaintiffs do not explicitly set forth any particular "burdens" that District law imposes on their right to travel. Indeed, they do not even allege that the District's requirement of a license to carry a gun in public affects their "right" to self-defense. If plaintiffs cannot articulate any specific burden on their right to travel, the District's law, logically, does not affect their rights. In *Pollack*, the Court held that "[a] law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate." 793 F.3d at 46 (citations omitted). Here, plaintiffs fail to allege (much less show) that the District's scheme makes interstate travel less attractive and thus fail to state a claim.

C. **Claims 1 and 3 Fail to State a Claim Because the Asserted Injuries—All of Which Flow from Plaintiffs' Arrests and Prosecutions—Are Not Causally-Related to Any Violation of the Second or Fifth Amendment.**

There is no dispute that the District's pre-*Palmer* gun laws were held unconstitutional. But, as explained, that alone does not subject the District to liability in this case. Similar to plaintiffs' burden to demonstrate Article III standing, to state a viable § 1983 claim plaintiffs must also establish that the District's gun laws "actually caused" the injuries for which they seek redress, namely, those allegedly flowing from their arrests and prosecutions. *City of Canton*, 489 U.S. at 391 (constitutional deficiency must have "actually caused" the "ultimate injury" to the claimant); SAC ¶¶ 252, 270 ("Named Plaintiffs … suffered humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and/or detained because of the District's enactment and enforcement of its unconstitutional gun control regime."). Plaintiffs cannot meet their burden. Again, the allegedly unconstitutional conduct plaintiffs identify—the enactment of a firearms licensing scheme that purportedly abridges the right to bear arms, to travel, and to equal protection—simply does not fit the redress they seek, compensation for their exposure to the District's criminal justice system. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (recognizing distinction between injuries caused by unreasonable search and seizure as opposed to those caused by subsequent criminal proceeding; permitting recovery only for the former). Stated differently, whatever relief plaintiffs might pursue for their inability to bear arms in the District does not extend to their post-arrest legal

27

process because any injuries related to that process are too unrelated to the Second or Fifth Amendment protections on which the SAC rests. *See Hector v. Watt*, 235 F.3d 154, 157 (3rd Cir. 2001) ("damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns"); *accord Carey*, 435 U.S. at 258–259 ("[i]n order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question").

The Fourth, Sixth, and Tenth Circuits have all recognized this critical distinction. In *Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002), for example, the Fourth Circuit reviewed a grant of summary judgment to the defendant City on a First Amendment (speech) and Fourteenth Amendment (Due Process) challenge to the City's parade ordinance. There, as here, the plaintiff was charged and indicted but not convicted for violating the City ordinance at issue. *Id.* at 451. And, as here, the ordinance's constitutionality was questionable; it was also repealed by the City's legislative body within weeks of the filing of the plaintiff's § 1983 complaint. *Id.* at 452. After finding "no merit" to the plaintiff's allegation of a First Amendment injury (a "chilling" of his speech), the Fourth Circuit quickly disposed of what remained of the plaintiff's case—his contention that he was entitled to recover for his prosecution under an unconstitutional law. *See id.* at 456–57. The *Reyes* court held that the complaint did not state an actionable claim: the plaintiff could not prosecute a civil action under § 1983 against the City for his

indictment, trial, and acquittal under a municipal ordinance simply because the ordinance was later held to be unconstitutional. *Id.* at 455 (stating question), 457 (holding). *Rolfes v. City of Oklahoma City*, 1991 U.S. App. LEXIS 15496 (10th Cir. July 17, 1991), and *Richardson*, 904 F.2d 1050, reach substantially the same conclusion on similar facts.

Given the persuasive holdings of the federal Circuits in *Reyes*, *Rolphes*, and *Richardson*, plaintiffs here should be foreclosed from recovery under 42 U.S.C. § 1983 for injuries related to their arrest and prosecution under the District's pre-*Palmer* gun laws. Those laws were valid when enforced, and the Constitution simply does not safeguard against erroneous enforcement of a presumptively valid municipal law. *See Reyes,* above; *Thomas v. City of Talent*, 2006 U.S. Dist. LEXIS 54886 at *20 (D. Or. Aug. 7, 2006) (following *Reyes* and *Richardson*, explaining, "[t]he Constitution does not require a local government body to reimburse a defendant for his legal expenses, or his emotion[al] distress, merely because that person ultimately is acquitted of the charges"). Indeed, as the Tenth Circuit reminded in *Rolphes*: "there are some mistakes legislators make and some impositions upon citizens that require expenditures of their time and money to resolve which are not compensable under § 1983. This is one of those situations." 1991 U.S. App. LEXIS 14596 at *3. The same reasoning applies here. Claims 1 and 3 should be dismissed to the extent they seek damages for injuries flowing from plaintiffs' arrests and prosecutions. *Accord Texas v. Lesage*, 528 U.S. 18, 20–21 (1999) (school admissions case; no § 1983 liability where state would have taken the

*same action* in the absence of the constitutionally impermissible scheme); *Heil v. Santoro*, 147 F.3d 103 (2d Cir. 1998) (Plaintiff engaging in protected speech was not the cause of his discipline because he would have been disciplined for insubordination even in the absence of speech activities).

> ### D. Plaintiffs Fail to State a Predicate Violation of the Due Process Clause (Claim 7) Because They Have No Protected Interest In Property Seized As Contraband; Alternatively, Rule 41(g) Provides All the Process a Criminal Defendant Is Due In Seeking the Return of Property Seized Incident To Arrest.

Claim 7 of the SAC arises under due process principles, and challenges in various ways the procedures available to plaintiffs to secure the return of the guns and ammunition seized incident to their arrests. As explained, Judge Cooper decided the merits of this claim, in the context of seized vehicles and cash, and the same rationale warrants dismissal here. *See* Part I.B, above (citing *Jenkins*, 2017 WL 6211103 at *5; *Melton*, 2017 WL 6211031 at *2–3). To the extent the Court elects to entertain the merits of plaintiffs' Claim 7 apart from the holdings in *Jenkins* and *Melton*, it should dismiss plaintiffs' claim, with prejudice, for two independent reasons.

First, plaintiffs do not have a protected property interest in their guns and ammunition because those articles were seized as contraband. "The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir. 1979) (quotations omitted). At the time of plaintiffs' arrests, however, unregistered guns and ammunition were contraband *per se*—

objects which are "intrinsically illegal in character," "the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700 (1965).[12] Accordingly, because the guns and ammunition carried by plaintiffs without District-issued licenses were contraband *per se*, plaintiffs have no constitutional interest in their return.

Second, federal courts in this jurisdiction have determined that, with respect to guns and ammunition, Superior Court Rule 41(g) "provides the plaintiff with a constitutionally adequate mechanism for obtaining return of his seized property." *Baird v. Holton*, 806 F. Supp. 2d 53, n.5 (D.D.C. 2011); *see also Leyland v. Edwards*, 797 F. Supp. 2d 7, 10 (D.D.C. 2011) ("Rule 41(g) "is a comprehensive scheme that provides a straightforward and adequate remedy—and one which avoids any constitutional deprivation"). Additionally, all the plaintiffs had, by definition and their own allegations, proper notice regarding the seizures at issue. *See id.* at n. 5 ("[P]laintiff had notice of the seizure and the reasons for the seizure—in fact, Plaintiff was prosecuted in a criminal proceeding for possessing the unregistered firearms"). As such, because "adequate post-deprivation state remedies are available, no cognizable claim for procedural due process can be stated." *Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 (D.D.C. 2013) (citation omitted).

---

[12] *See also* D.C. Code § 22-4517 (defining pistols as "dangerous articles" which, if "unlawfully … carried" "shall be destroyed"); D.C. Code § 48-905.02(b) ("Contraband is not subject to forfeiture under this section, but may be seized and disposed of in accordance with applicable law"). By comparison, derivative contraband includes objects that become unlawful because of the use to which they are put, such as the use of a car in a bank robbery, or to transport illegal drugs. *One 1958 Plymouth*, 380 U.S. at 694; D.C. Code § 48-905.02(a).

## IV. If Any of Plaintiffs' Claims Survive, Plaintiffs' Request for Sealing or Expungement of Their Criminal Records Should Be Dismissed Because Plaintiffs Cannot Meet the High Burden for Entitlement to Such Relief.

In connection with their constitutional challenges, plaintiffs demand the sealing of their criminal and prosecutorial records, and a declaration that their arrests were "legal nullities." SAC ¶ 328. But to obtain the sealing of criminal records in local courts for an arrest that was not ultimately prosecuted (as in the case of each named plaintiff here), a party must show by "clear and convincing evidence" either that the crime for which she was arrested did not occur, or that she did not commit it. *Sepulveda-Hambor v. District of Columbia*, 885 A.2d 303, 307 (D.C. 2005) (citing *District of Columbia v. Hudson*, 404 A.2d 175, 177–82 (D.C. 1979) (*en banc*)). For the reasons explained in Part III.A, above, plaintiffs cannot meet this burden on the facts they have alleged. As a result, plaintiffs cannot qualify for the injunctive relief they seek.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant's Motion and dismiss the Second Amended Complaint, with prejudice.

Dated: November 16, 2018.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
MATTHEW R. BLECHER [1012957]
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Email: matthew.blecher@dc.gov

**Counsel for Defendant**