# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br>     On behalf of themselves and all others similarly situated,<br>     Plaintiffs,<br>       v.<br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br>     Defendant. | Civil Action No.: **15-737 (RCL)** |

The District's Motion [53] to dismiss Plaintiffs' Second Amended Complaint ("SAC") [50] should be denied in its entirety for the reasons stated below.

Plaintiffs lay out in the Second Amended Complaint, ¶¶ 10-26, how each of the pillars of the District's gun registration regime were unconstitutional because each operated as a total ban on the registration and licensing of handguns for carrying outside the home under both the pre-Palmer and the pre-Wrenn regimes. The CPWL, the unregistered firearms, the unregistered ammunition statutes were all total bans during both periods. And the dangerous articles statute set up a rigged system that provided for the permanent forfeiture of unregistered hand guns and shotguns (and certain other weapons) owned, possessed, or carried in the District unless the owner has a registration certificate at both the time of seizure and the time of any hearing conducted by the MPD Property Clerk (when it issued virtually none) for the return of the handgun or shotgun, D.C. Code § 22-4517(b), even though such guns are not on the list of prohibited weapons in D.C. Code § 22-4514 (Possession of certain dangerous weapons prohibited).

## I. None Of Mr. Davis' Property Claims Should Be Dismissed Under Either The Claim-Splitting Doctrine, or Under Jenkins Or Melton.

None of Mr. Davis' claims should be dismissed under the claim-splitting doctrine, or under Jenkins or Melton.

### A.  None of Mr. Davis' claims should be dismissed under the claim-splitting doctrine.

The District contends that the case-management doctrine of claim-splitting bars Mr. Davis' vehicles claims in this case because of the pending class action Hoyte v. Government of the District of Columbia, 13-569 (CRC). Not so.

### 1.  Mr. Davis remains free to opt out of Hoyte under Fed. R. Civ. P. 23(b)(3).

The short answer to the District's contention is that the claim-splitting doctrine does not apply at this stage of the litigation – the District's motion to dismiss on whether Mr. Davis' individual vehicle claims state a claim for relief – to Mr. Davis's individual claims because Mr. Davis remains free to opt out of Hoyte under Fed. R. Civ. P. 23(b)(3) because notice has not been sent yet. Any judgment or release in Hoyte would have zero preclusive effect on Mr. Davis' vehicle claims in this case if he simply opted out of Hoyte. An essential element of claim splitting is that "assuming the first suit was already final, the second suit would be precluded under *res judicata* [claim preclusion] analysis.'" Clayton v. District of Columbia, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) *quoting* Katz v. Gerardi, 655 F.3d 1212, 1219 (10th Cir. 2011). Therefore, the District cannot establish the threshold condition "that "assuming the first suit was already final, the second suit would be precluded under *res judicata* [claim preclusion] analysis'" because Mr. Davis may exercise his Rule 23 right to opt out of Hoyte.

Mr. Davis' due process right to opt out of Hoyte cuts through the tangle of the District's assertion of the claim-splitting doctrine like Alexander's sword slicing through the Gordian knot.

### 2.  District applies the wrong standard for determining the scope of issue preclusion in class actions.

The District contends that Mr. Davis' claims in this case are barred by the claim-splitting doctrine because claim preclusion bars not only all claims in a second suit by the same party that were adjudicated, but also all claims that might have been brought, and Mr. Davis's vehicle claims in this case might have been brought in Hoyte.

The District applies the wrong standard for determining the scope of issue preclusion in class actions. To be sure, the test for claim preclusion in the paradigmatic single plaintiff case like the cases cited by the District (except for Brewer) in its motion to dismiss is that the claim preclusion doctrine precludes re-litigation by the same plaintiff in a second suit of all claims that were, or could have been, litigated in the first suit. District's memorandum [53], pgs. 7-9.

In stark contrast, claim preclusion in a class action precludes only claims "resolved" by a "properly conducted class action," and then only for potential class members who did not opt out. Hurd v. District of Columbia, 146 F. Supp. 3d 57, 62 (D.D.C. 2015)( the District must show that (1) Hurd was a member of the Barnes class; (2) class members received the best notice practicable under the circumstances; (3) Hurd did not opt out of the Barnes class; and (4) the claims resolved in Barnes included those Hurd seeks to assert here); Taylor v. Sturgell, 553 U.S. 880, 894-95 (2008)(properly conducted class action an exception to same party rule). Although a class action judgment may preclude claims that could have been litigated in the class action, whether it does depends on the final class definition in the judgment or in the release negotiated by the parties. Hurd, 146 F. Supp. 3d at 62.

So, at this stage of the Hoyte litigation, it cannot be determined whether the final judgment in the Hoyte class actually will preclude claims that might have been brought as well as claims that were actually adjudicated in Hoyte. So again, given that the *sine qua non* of the claim-splitting doctrine is the "assum[ption that if] the first suit was already final, the second suit would be precluded under res judicata analysis," and the District cannot say at this point that Hoyte will

preclude claims that might have been brought, the District cannot establish that any claims of Mr. Davis that might have been brought in <u>Hoyte</u> will be precluded.

### 3. Applying claim preclusion principles to dismiss Mr. Davis' vehicle claims now when Mr. Davis is not yet a party in <u>Hoyte</u> would be non-party claim preclusion.

Claim preclusion applies only when the party in the second suit is identical to the party in the first suit. <u>Taylor v. Sturgell</u>, 553 U.S. at 894 (requiring that the party in the second suit be identical to the party in the first suit, and rejecting the "virtual representation" theory). But, an absent class member such as Mr. Davis is not a "party" to a class action until the class action is "resolved," and the absent class member has decided not to opt out. *Id.* Therefore, Mr. Davis is not yet a party to <u>Hoyte</u>, So asking this Court to apply claim preclusion principles to dismiss Mr. Davis' vehicle claims now when Mr. Davis is not yet a party in <u>Hoyte</u> – and before he has an opportunity to opt out of <u>Hoyte</u> – amounts to asking this Court to apply non-party claim preclusion, the very doctrine the Supreme Court red-flagged in <u>Taylor v. Sturgell</u> as a violation of due process. <u>Taylor v. Sturgell</u>, 553 U.S. at 894 (requiring that the party in the second suit be identical to the party in the first suit, and rejecting the "virtual representation" theory).

### 4. <u>Brewer</u> does not directly or indirectly support the District's contention that claim splitting bars Mr. Davis' claims.

The language from <u>Brewer v. Lynch</u> to the effect that claim splitting is generally prohibited by the doctrine of res judicata, particularly in class actions, is a minority position, and it does not apply to this case, because <u>Brewer</u> was a "first" case and <u>Smith</u> is a "second" case. <u>Brewer v. Lynch</u>, 2015 U.S. Dist. LEXIS 189518, *28 (D.D.C. 2015) *on appeal sub nomine* <u>Harrington v. Sessions (In re Brewer)</u>, 863 F.3d 861 (D.C. Cir. 2017)(appeal dismissed, Rule 23(f) petition denied, motions to intervene granted, remanding to district court to address substitution of named plaintiffs ).

The other preclusion cases the District cites arise from the front end – they ask whether a second suit will be precluded by a first suit. The issue in <u>Brewer</u> arises from the front end, whether dropping the primary claim in a class action will preclude class members from bringing that claim in subsequent actions, and whether that risk of down the line preclusion makes the sole proposed named plaintiff an inadequate named plaintiff under Fed. R. Civ. P. 23. This case arises from the back end – this is the second suit, and the question is whether <u>Hoyte</u> will preclude Mr. Davis' claims in this second suit.

So the District turns <u>Brewer</u> on its head. Judge Rothstein in <u>Brewer</u> used the claim-splitting doctrine to protect absent class members from down the line preclusion in a second suit. The District proposes using the same doctrine to extinguish the claims of absent class members in a second suit.

Other facts weaken the persuasive effect of <u>Brewer</u>. First, finding a proposed named plaintiff an inadequate named plaintiff because the class proposes certifying less than all claims that could be brought is a minority position because many valid reasons support omitting one or more claims from the class action complaint. *See also* <u>Slade v. Progressive Sec. Ins. Co.</u>, 856 F.3d 408, 415 (5th Cir. 2017)(in considering whether a proposed named plaintiff's proffered waiver of a potential claim renders a proposed named plaintiff not adequate under Fed. R. Civ. P. 23 a district court should weigh the risk of down the line preclusion, the value of the potentially waived claims, and the relative strategic value of plaintiffs' proffered waiver).

Unique facts were at play in <u>Brewer</u> – the named plaintiff had retired and thereby mooted out his declaratory and injunctive relief claims, the predominate relief the class members sought. <u>Brewer</u>, 2015 U.S. Dist. LEXIS 189518, *28.

Not only does the case represent the minority view, the D.C. Circuit on "manifest error" review did not adopt any bright line rule that dropping some claims always triggers claim-splitting,

or that a judgment in a resolved class action automatically precludes all claims that were or could have been brought in the class action. In re Brewer, 863 F.3d at 875.

Instead, the In re Brewster Court viewed the risk of down the line claim preclusion at the certification stage as merely one factor the district court in the first case could, in its discretion, weigh against the value of potentially waived claims, and the relative strategic value of a plaintiffs' proffered waiver in evaluating the adequacy of the named plaintiff in the first case. In re Brewer, 863 F.3d at 875 (the balance the district court struck between the risk of preclusion and the benefit of allowing Brewer to pursue his claims on a class-wide basis, or the district court's decision not to use case management tools in lieu of denying certification, was not "manifest error" under the extremely difficult to meet "manifest error" standard). Moreover, the Court pointed out that a district court has at its disposal case management tools to blunt the risk of down the line claim preclusion.

### B.  None of Mr. Davis' claims should be dismissed under Jenkins or Melton.

None of Mr. Davis' claims should be dismissed under Jenkins or Melton because neither Jenkins nor Melton have preclusive effect on Mr. Davis because he was not a party to either one of those uncertified putative class actions. Smith v. Bayer Corp., 564 U.S. 299, 313 (2011) (only parties can be bound by prior judgments). The cases are distinguishable on the facts and the law, as Plaintiffs explain below, so they have no persuasive authority.

## II.  Plaintiffs Establish Article III Standing For Each Of Their Claims.

Plaintiffs establish Article III standing for each of their claims.

### A.  Mr. Davis establishes Article III jurisdiction for Claims 9 and 10.

 The District contends that Mr. Davis did not suffer an injury in fact even though the District seized and held his vehicle for 60 days before returning it to him because the District released the forfeiture hold on his vehicle and returned the vehicle to him before actually forfeiting

the vehicle in an administrative forfeiture proceeding or a judicial forfeiture proceeding. Plaintiffs use the term "forfeiture determinations" instead "for forfeiture" because sometimes the Property Clerk acting as the Mayor's designee determine that property seized for forfeiture is in fact not subject to forfeiture. Property that is not subject to forfeiture must be returned to the owner, according to D.C. Code § 48- 905.02(d)(3)(C).

To establish constitutional standing, a plaintiff must demonstrate: (1) that they have suffered an "injury in fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted); *see also* Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan, 504 U.S. at 561. The District challenges only the injury in fact element.

The District misconceives the interest in his vehicle that the District injured by seizing and holding his vehicle. The District wrongfully detained Mr. Davis' vehicle for sixty days. The fact that the District did not finally terminate all of the bundle of his rights in the vehicle does by terminating his ownership in an administrative or judicial forfeiture proceeding does mean the District did not injure some of his other rights in the vehicle during the wrongful detention, *e.g.*, his right to possess or use the vehicle. *See e.g.*, United States v. James Daniel Good Real Prop., 510 U.S. 43, 54 (1993)(seizure deprived Good of valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents, leaving only the right to bring a claim for the return of title at some unscheduled future hearing). In fact, a judgment in a forfeiture action in the District's favor would have deprived Mr. Davis of all of his ownership rights in the vehicle, and so he would not have suffered any injury after that point. Brown v. District of Columbia, 115 F. Supp. 3d 56, 75 (D.D.C. 2015).

The District's reason for taking and detaining the vehicle – for forfeiture or as evidence or whatever – goes to whether Mr. Davis states a claim on the merits. <u>Silverman v. Barry</u>, 727 F.2d 1121, 1125 n. 5 (D.C. Cir. 1984). Whether a plaintiff will succeed on the merits is not part of the standing analysis. The 60 day wrongful detention suffices to establish an injury in fact under Lujan and Friends of the Earth. *Id.*

> **B.  None of Mr. Davis' vehicle related claims are time barred because either they were comprehended by the original complaint, and thus fell within the 3 year statute of limitations, or the claims relate back.**

None of Mr. Davis' vehicle related claims are time barred because either they were comprehended by the original complaint, and thus fell within the 3 year statute of limitations, or the claims relate back. Moreover, all of his claims are either comprehended by the original complaint or they relate back.

As the District points out, the applicable statute of limitations for Mr. Davis' vehicle related claims is three years from the date of filing.

The Seventh Circuit addressed a similar issue in <u>Schorsch v. Hewlett-Packard Co.</u>, 417 F.3d 748 (7th Cir. 2005)(using relation back rules of Rule 15(c) to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit). The Seventh Circuit examined when an amended complaint constitutes the commencement of a new action for CAFA purposes using the relation back rules of Rule 15(c) to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit).[1] 417 F.3d at 749. The plaintiff filed a complaint against Hewlett-Packard ("HP"), "proposing to represent a class of persons who purchased from HP drum kits for use in its printers." Id. The drum kits contained some of the machinery that dispensed the toner to the paper. The kit also contained a computer chip that, when the

---

[1] Class Action Fairness Act of 2005, at 28 U.S.C. § 1453(c).

machinery was sufficiently worn out that it could impact adversely printing quality or endanger the effectiveness of other components, prevented the printer from working until a new drum kit was installed. Id. The plaintiffs maintained that the inclusion of this computer chip injured consumers who wished to continue using the worn-out drum kits past HP's pre-programmed cut-off point. Id. After CAFA became effective, the plaintiff tendered an amended complaint that expanded the class definition from purchasers of drum kits to purchasers of all printer consumables (like toner cartridges for laser printers and ink cartridges for ink-jet printers) that also contained the same kind of computer chip. Id. at 749-50. The Court held that the change in the class definition did not constitute a new claim. The Court explained that "[f]rom its outset, this suit has been about HP's use of EEPROM chips to shut down its printers until a component has been replaced. The identity of the consumable is a detail." Id. at 750.

From its outset, this suit has been about the District's enforcement of its unconstitutional gun control regime to arrest and detain people and injure them in their property including seizing and detaining property. The identity of the property seized -- gun, ammunition, or vehicle -- "is a detail." *Id.*

The relevant transaction in the original Complaint is properly understood as Ms. Smith's arrest. The seizures of property all flowed directly from that arrest. *See* Neita v. City of Chi., 830 F.3d 494, 448 (7th Cir. 2016). In Neita police officers arrested Mr. Neita for animal cruelty when he went to Animal Control to surrender two dogs and the officers then searched Mr. Neita, his vehicle, and later his business premises. *Id.* 498. Mr. Neita's original complaint alleged the officers arrested him without probable cause and then searched him and his business. *Id.* Mr. Neita did not allege the search of his vehicle until the SAC which he did not file until after the statute of limitations had run. *Id.* The Seventh Circuit held that the claim for search of the vehicle related

back to the original complaint because the relevant transaction was the arrest, and the searches all flowed directly from that arrest. *Id.*

### Relation back

The District contends that Mr. Davis' claims are time barred because he was added to the SAC more than three years after it was filed. The District does not challenge that his claims relate back to the date the original complaint [1] was filed, 5/15/15, so the District has waived that argument.

The District's contention that "claims relate to the seizure of Mr. Davis's vehicle or the return of Mr. Davis's property, which is the case for new Claims 8, 9, and 10, and, in part for Claims 5 and 6, they are likely barred by the three-year statute of limitations," is wrong because adding vehicles to the list of other property (guns and ammunition) is not a new claim under Rule 15(c), and even if it were it relates back to the original Complaint. Schorsch v. Hewlett-Packard Co., 417 F.3d 748 (7th Cir. 2005) and Neita v. City of Chi., 830 F.3d 494, 448 (7th Cir. 2016), discussed above, and here.

This case is – and always has been - about how the District's enforcement of its unconstitutional gun control regime injured the people against whom the District enforced it both in their persons and in their property. Complaint [1], ¶ 1, ¶ 7, ¶ ¶ 22-23, ¶ 53.

The core allegation pled in the original Complaint [1] remains that the District's gun control regime was a total ban on gun ownership (including gun possession) in violation of the 2d Amendment, and that by enforcing its unconstitutional gun control regime against Ms. Smith and the other class members, the District injured them in their persons and in their valuable property rights. Complaint [1], ¶ 7 (the District has maintained a total ban on gun ownership by private citizens including a total ban on the public carrying of ready-to-use handguns outside the home), ¶ 53 ("The District 's laws, customs, practices and policies generally banning the carrying of

handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983.").

The relevant transaction in the original Complaint is properly understood as Ms. Smith's arrest. The seizures of property all flowed directly from that arrest. Neita v. City of Chicago, 830 F.3d at 498.

Each of the claims in the First Amended Complaint and SAC arose out of the same conduct, transaction, or occurrence set out in the original Complaint, namely, the arrest of people and the seizure of their property incident to arrest.

In the original Complaint, in addition to alleging that the arrest and prosecutions caused injury to her person, Ms. Smith alleged that arrest and prosecution even without conviction injured valuable property rights belonging to herself and the other class members. Complaint [1], ¶ 1, ¶ ¶ 22-23, ¶ 53. For example, Ms. Smith is a registered nurse and she pled that the District's enforcement of its gun control regime against her threatened her nursing license and valuable civic privileges such as the right to vote, and the right to serve on juries, Id. at ¶ 23-24. She also pled that the District's enforcement of its unconstitutional gun control regime also threatened or injured the civil licenses of class members to practice their professions and that it cost them valuable civic privileges such as the right to vote and the right to serve on juries, Id. at ¶ 22.

Ms. Smith did not expressly plead that the District seized their property incident to arrest under separately numbered headings styled as "Claims." But she did not have to.

A complaint need not pin plaintiff's claim for relief to a precise legal theory. Skinner v. Switzer, 562 U.S. 521, 530 (2011)(post Twombly and Iqbal); The allegations in a complaint provide notice to defendant where they "stated simply, concisely, and directly events that, they alleged, entitled them to damages." See Johnson v. City of Shelby, 135 S. Ct. 346, 346

(2014)("Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); Brown v. Sessoms, 774 F.3d 1016, 1022 (2014).

First, Ms. Smith pled that, "The District 's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution, facially and as applied against the individual plaintiff and class members in this action, damaging plaintiffs in violation of 42 U.S.C. § 1983." Complaint [1], ¶ 53.

Therefore, the Original complaint put the District on notice that the MPD seized her gun and her ammunition, and perhaps her car, because the District is charged with notice of the statutes the D.C. Council enacts and the MPD enforces and the General and Special Orders the MPD promulgates and follows concerning seizures of property incident to arrest for alleged violations of the District's gun control laws.

In Claim 1, Ms. Smith pled that, "The District's laws, customs, practices and policies generally banning the carrying of handguns in public violate the Second Amendment to the United States Constitution ... damag[ed] plaintiffs" without limiting the "damage" to damage to her persons. Complaint, ¶ 53. "The District's laws, customs, practices and policies generally banning the carrying of handguns in public" include the statutes and MPD Orders listed below. This Court may take may take judicial notice of the fact of the promulgation and the contents of the District's statutes and the MPD online orders without converting the motion to dismiss into a motion for summary judgment. Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1222 (1993).

District of Columbia statutes and MPD Orders mandate or authorize seizure of property in connection with arrests for alleged violations of the District's gun control regime. For example, even though Ms. Smith did not expressly plead that the MPD seized her gun and ammunition, but

she pled she was arrested and prosecuted for CPWL and UF, and D.C. Code § 22–4517(b) and (c) mandates seizure by the MPD of unregistered firearms. Moreover, Ms. Smith pled that the "District's laws, customs, practices and policies generally banning the carrying of handguns in public" damaged her, and the District was on notice that its practice was to seize and retain all guns and ammunitions for persons arrested for alleged violations of its unconstitutional gun regime.

Moreover, Ms. Smith pled her complaint in general allegations and although she pled examples of property damage her complaint cannot be construed as pleading an exhaustive list of property so as to exclude property not specified in the complaint.

### C.  Plaintiffs' Second (Claim 1) and Fifth Amendment (Claim 3) Claims Have No Jurisdictional Problems.

Plaintiffs' Second and Fifth Amendment Claims (Claims 1 and 3 respectively) have no jurisdictional problems.

#### 1.  Plaintiffs have standing to challenge their arrests and detention under the Second Amendment (Claim 1) and the Fifth Amendment (Claim 3).

Plaintiffs' have standing to challenge their arrests and detention under the Second Amendment (Claim 1) and the Fifth Amendment (Claim 3).

The District contends that Plaintiffs lack standing under Claim 1 (Second Amendment) and Claim 3 (Fifth Amendment) because they cannot show causation between the District's enactment and enforcement of its unconstitutional gun registration regime and their injuries, or redressability (ability of a court to offer a remedy for an injury sustained by an aggrieved party in an action.). District's memorandum, p. 14. But, the District's argument confuses the causation needed for standing with the causation needed to prevail on a § 1983 claim on the merits, and the District confuses redressability with damages. Silverman v. Barry, 727 F.2d 1121, 1125 n. 5 (D.C. Cir. 1984). To establish standing Plaintiffs must establish an injury in fact, but plaintiffs do not have to establish that they will win on the merits to establish injury in fact. Id. And so, merely contending

that plaintiffs will lose on the merits does not mean that plaintiffs lack Article III standing on their claims and remedies. *Id.*

To establish constitutional standing, a plaintiff must demonstrate: (1) that they have suffered an "injury in fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted); *see also* Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan, 504 U.S. at 561. Where, as here, the suit challenges the legality of government action, the standing analysis is relatively straightforward if the plaintiffs themselves are the object of the action in question. Hodges v. Gov't of D.C., 975 F. Supp. 2d 33, 44 (D.D.C. 2013). Lujan, 504 U.S. at 561. If they are, then there is "ordinarily little question that the action or inaction has caused [them] injury, and that a judgment preventing or requiring the action will redress it." Id. at 561-62.

Nor did Plaintiffs bring their injuries on themselves – they were exercising their Constitutional rights to carry their handguns for self-defense and the District infringed their rights to carry outside the home and their right to travel. Any theories that plaintiffs are barred by contributory wrongdoing are merits issues, and are non-starters.

Moreover, the mere fact that the "independent" choices of third parties such as other arresting agencies or the U.S. Attorney and her assistants are links in the causal chain does not destroy causation for standing purposes if plaintiff to satisfies their burden of adducing facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1159-60 (2005). Plaintiffs satisfy that burden by alleging that the D.C. Council's enactment and enforcement

of the District's unconstitutional gun registration regime is the moving force of their arrest on gun charges because they would not have been arrested on these charges but for the unconstitutional gun registration regime. *Id..*

Each of the four Named plaintiffs with these claims was arrested by the MPD. But, even the arrests by an independent agency are not the "independent choices" that would divest the District of liability. The cause is the statute and nothing in the decision to arrest changes that fact. The choices of other law enforcement agencies and prosecutors is not "independent" of that moving force, but derivative from it.

And even if the District is not liable for the arrests of people arrested by independent agencies the District is liable for their detentions once the agency has handed the arrestee over to the District for processing and pretrial detention. SAC, ¶ 250; ¶ 268. This would be especially true for persons such as Mr. Davis (who was arrested by MPD) who were preventively detained pursuant to the District's pretrial detention statutes. SAC, ¶ 17, ¶ 214.

Plaintiffs' well pled allegations and their demands for money damages, equitable relief, and declaratory relief give them Article III standing on each of their declaratory or injunctive relief claims, not just Claims 1 and 3, whether they ultimately prevail on the merits or not. Silverman v. Barry, 727 F.2d 1121, 1125 (D.C. Cir. 1984).

This Court can also redress Plaintiffs' injuries caused by the District's enactment and enforcement of its unconstitutional gun registration regime. 1 Civil Jury Instructions for DC § 13.01 (2018) (listing damages available for common law false arrest and detention, the analogous common law cause of action under Carey v. Piphus, 435 U.S. 247, 258 (1978).

### 2. *Plaintiffs Second and Fifth Amendment Claims for declaratory relief are not moot.*

For Claims 1 and 3 Plaintiffs ask for their arrest records to be expunged or declared to be "detentions" as opposed to arrests (Class relief demands, E) which satisfies standing for declaratory

or injunctive relief. Hedgepeth v. Wash. Metro. Area Transit Auth., 386 F.3d 1148, 1152 (2004)..
Also, asking for a declaration that the District's unconstitutional gun registration regime was
unconstitutional is not duplicative of monetary damages nor is it mooted by the District's amending
some of its statutes.

Plaintiffs did not seek a declaration that any one statute in the District's unconstitutional
gun registration regime is unconstitutional so the mere fact that the District has amended some of
its statutes does not moot Plaintiffs' claims for declaratory relief on Class Relief Demand C. The
District of Columbia Court of Appeals still takes the position that the 2d Amendment does not
give persons the right to carry hand guns outside the home. Hooks v. United States, 191 A.3d
1141, 1144, n.3 (D.C. 2018)(assuming without deciding that Wrenn was decided correctly, and
noting that the court "has consistently held, contrary to Wrenn, that 'there is no Second
Amendment right to carry a concealed firearm in public.").

### 3. Declaratory relief under their challenges to their arrests and detentions would have practical effect.

An order of expungement and a declaration that Plaintiffs' and the absent class members'
arrests were merely "detentions" would relieve them of the burden of having to respond
affirmatively to the familiar question, "Ever been arrested?" on application, employment, and
security forms, a form of relief this Court and the D.C. Circuit have approved in the past.
Hedgepeth v. Wash. Metro. Area Transit Auth., 386 F.3d 1148, 1152 (2004). Also, declaration
that Plaintiffs and class members are entitled to return of their guns and ammunition seized in the
pre-Wrenn period even though they did not have registration certificates issued by the District
would have practical effect given that the D.C. Council has never amended the statute and the
Property Clerk has never announced or notified owners that they can retrieve their guns even if
they never had registered them in the pre-Wrenn period.

### III. Each of Plaintiffs' claims state a claim for relief under Fed. R. Civ. P. 12(b)(6) because each one states a predicate Constitutional violation.

Each of Plaintiffs' claims state a claim for relief under Fed. R. Civ. P. 12(b)(6) because each one states a predicate Constitutional violation.

#### A. All of Plaintiffs' 4th Amendment claims state a claim for relief under the 4th Amendment.

The District's defense to Plaintiffs' 4th Amendment claims (Claims 2, 5, 6, 8, and 10) (1) misstates Plaintiffs' claims by omitting an important prong , and then (2) responds only to the prong it states, and it ignores the prong it omits. Some of Plaintiffs' 4th Amendment claims challenge not only the seizure of Plaintiffs' persons or property by the MPD (all of the Named plaintiffs were arrested and their property seized by the MPD), but also the wrongful detention of Plaintiffs' persons or property. *See e.g.*, Claim 2 ("The District enforced its unconstitutional gun control regime against Named Plaintiffs' and the other Second Amendment Arrest Class members in violation of their 2d Amendment rights by arresting and *detaining* them.")(emphasis added). SAC, ¶ 256. Moreover, in the case of persons arrested by other law enforcement agencies, the claim depends on the allegation of detention only. SAC, ¶ 258. And, some of Plaintiffs' claims, *e.g.*, Claims 6 and 8, do not even challenge the seizure of guns and ammunition and vehicles, only their continued retention after the trial were over. SAC, ¶ 284.

The District's only defense to these 4th Amendment claims is that the initial seizures were supported by probable cause. District's memorandum, p. 20. But, even assuming *arguendo* that the seizures in this case were reasonable under the 4th Amendment, the continued detentions of the people and the property under the District's unconstitutional gun registration regime violated the 4th Amendment. So the District offers no defense here to the "detention" prong of some claims, and it offers no defense at all to claims that have "detention" prongs only, *e.g.*, Claims 6 and 8.

Even a seizure reasonable at its inception can become unreasonable because of its duration. Segura v. United States, 468 U.S. 796, 812 (1984) *citing* United States v. Place, 462 U.S. 696, 709-710 (1983); Avila v. Dailey, 246 F. Supp. 3d 347, 358 (D.D.C. 2017).  For example, in Brewster, the 9th Circuit held that seizures of vehicles from drivers without valid California licenses for a 30 day administrative forfeiture – although valid pursuant to the community caretaking exception to the Fourth Amendment – became invalid when the initial justification evaporated. *Id.* at 859 F.3d 1194, 1197 (9th Cir. 2017).

Moreover, "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." Manuel v. City of Joliet, 137 S. Ct. 911, 920 (2017). That holding supports the self-evident conclusion that detention constitutes a seizure for purposes of the Fourth Amendment. Spiller v. District of Columbia, 302 F. Supp. 3d 240, 248 (D.D.C. 2018).

The only case the District cites in support of its motion is Brown v. District of Columbia, 115 F. Supp. 3d 56 (D.D.C. 2015). Judge Cooper in Brown held that the 4th Amendment applies only to searches and seizures. *Id.* at 63. Judge Cooper did not address the "detention" prong because Plaintiffs did not plead or argue it. At the time Judge Cooper issued his Order on the motion to dismiss the leading Circuit case on the application of the 4th Amendment to seizures of vehicles held that the 4th Amendment protected against the government's unreasonable seizures of vehicles but not unreasonable detentions of vehicles when the police hold onto evidence longer than it is needed for investigatory purposes, dismissing the concept as a "continuing seizure," unless the initial seizure were unreasonable. Lee v. City of Chi., 330 F.3d 456, 466 (7th Cir. 2003). Plaintiffs did not argue in Brown that the continued detention of the vehicle was unreasonable under the 4th Amendment if probable cause evaporated after an initial valid seizure. Plaintiff's Opposition [20] to defendant's motion to dismiss, p. 26, Brown v. D.C., 13-569 (CRC).

Since then the 9th Circuit has pointed out the holes in the <u>Lee</u> Court's analyses and held that a plaintiff whose vehicle was seized for a 30 day administrative forfeiture pursuant to a statute providing for administrative forfeiture of vehicles driven by drivers without licenses states a claim under the 4th Amendment for the 30 day detention of the vehicle even though the initial seizure were reasonable. <u>Brewster v. Beck</u>, 859 F.3d 1194, 1196-97 (9th Cir. 2017) (plaintiff states a claim under the 4th Amendment where the government seized their vehicle under an administrative forfeiture statute and held it after probable cause evaporated even though the original seizure was supported by probable cause) *cert. denied* <u>Los Angeles v. Brewster</u>, 138 S. Ct. 1284 (2018).

<u>Lee</u> is also distinguishable because it is not a pure "held as evidence" case. The city in <u>Lee</u> refused to return the car when there was no longer a need to keep it as evidence unless Lee paid the towing and storage fees which had accumulated during the detention. <u>Lee</u>, 330 F.3d 456, 465. The Court agreed that the "seizure" of the vehicle as evidence continued up tp the point where the city had exhausted the evidentiary utility of the vehicle by searching and processing it for evidence. 330 F.3d 456, 466..

Judge Chutkan of this Court independently reached the same conclusion after Judge Cooper's decision in <u>Brown</u> relying on Supreme Court precedent, <u>Segura v. United States</u>. <u>Avila v. Dailey</u>, 246 F. Supp. 3d 347, 355 (D.D.C. 2017) (plaintiff states a claim under the 4th Amendment where the officer seized his vehicle "as evidence" and held it after probable cause evaporated, when the evidentiary utility of the vehicle was exhausted, by processing it for evidence, even though the original seizure was supported by probable cause).

Plaintiffs did move to amend the <u>Brown</u> complaint to add a 4th Amendment claim based on wrongful detention in response to the District's contention that it also had to hold as evidence vehicles it had seized for forfeiture determinations because the U.S. Attorney had imposed "evidentiary holds." Plaintiffs moved after the deadline in the Scheduling Order for adding for

adding new claims had passed, but Plaintiffs contended that they had established good cause for the amendment because of new legal authority and facts discovered in discovery, that is, Brewster v. Beck, Avila v. Dailey, 246 F. Supp. 3d 347, 358 (D.D.C. 2017), and the Giovanelli Decl. cited in the SAC. Judge Cooper denied the motion to amend in a Minute Order so Plaintiffs do not know whether the Court denied the motion based on futility because Judge Cooper rejected the 4th Amendment wrongful detention claim on the merits or on Rule 16(b) grounds.

Also, the mere fact that plaintiffs also have other legal theories to support their claims does not mean that they cannot also state a 4th Amendment claim. Soldal v. Cook Cnty., 506 U.S. 56, 70 (1992)(certain wrongs can implicate more than one Constitutional right).

### 1.  Claim 2, seizure, arrest, and detention of people.

Claim 2 deals with the seizure, arrest, and detention of people arrested for violating the District's unconstitutional gun registration regime: *e.g.*, carrying a pistol or carrying a pistol outside the home without a license, possession of unregistered ammunition, possession of unregistered firearm. Why the seizures and detentions violate the 2d is explained below.

Each Named plaintiff was arrested and detained at least overnight for carrying a pistol outside the home even though they were law abiding citizens. SAC ¶¶ 27-43; Ms. Smith held overnight, ¶ 128; Mr. Cassagnol held overnight, ¶ 157; Mr. Rouse arrested on Saturday and spent two nights in jail before being presented in Superior Court on the following Monday; Mr. Davis was preventively detained pursuant to D.C. Code § 23-1322(b) in the DC Jail for four nights after spending one night in Central Cell Block, ¶ 210, ¶ 214.

Assuming *arguendo* that the seizures and arrests of people for violations of the District's gun registration regime were supported by probable cause, their continued detentions were not, because they were arrested and detained pursuant to an unconstitutional gun registration regime, and so there was no probable cause to support the detention, and the definition of "seizure"

includes the continued possession of property after it has been lawfully seized. Manuel v. City of Joliet, 137 S. Ct. 911, 914 (2017)(a defendant seized without probable cause can challenge his pretrial detention under the Fourth Amendment even after a judge ordered him held pre-trial on the basis of the allegedly fabricated probable cause facts).

The Court recently held, for example, that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." Manuel, 137 S. Ct. at 920.

In Manuel the Supreme Court held that the Fourth Amendment applies to a period after the arrest even after legal process had commenced. The Court held that Mr. Manuel stated a claim for his 68 day pretrial detention even though a judge had ordered him detained pretrial at arraignment. The Court held that the legal process Mr. Manuel received did not extinguish his Fourth Amendment claim because it did nothing to satisfy the probable-cause requirement because the judge's determination of probable cause was based solely on fabricated evidence.

The legal process Mr. Davis received did not extinguish his Fourth Amendment claim because it did nothing to satisfy the probable-cause requirement for his continued detention because the judge's determination of probable cause at arraignment was based solely on an unconstitutional statute. There is no principled difference between lack of probable cause due to police fabrication and lack of probable cause due to an unconstitutional statute or set of statutes because the probable cause analysis is an objective one that does not take into account the officer's evil motive. Whren v. United States, 517 U.S. 806, 813 (1996)(subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis). So even if an unconstitutional statute supports probable cause for the sake of the exclusionary rule it does not supply probable cause that extinguishes a 4th Amendment claim.

The continued detentions of the Named plaintiffs were unreasonable even if the initial arrests were not. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force, and, thereafter, the government must cease the seizure or secure a new justification, which the District did not demonstrate. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

### 2. Claim 5 - seizure and detention of vehicles, handguns, and ammunition because of unconstitutional gun registration regime.

Claim 5 seizure and detention of vehicles, handguns, and ammunition because of unconstitutional gun registration regime is analogous to Claim 2 which deals with the seizure and detention of people. The legal theory is the same. The District's gun registration regime was unconstitutional under the 2d Amendment and under the 5th Amendment right to travel with respect to non-D.C. residents.

A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force, and, thereafter, the government must cease the seizure or secure a new justification, which the District did not demonstrate. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

### 3. Claim 6 – Retention of handguns and ammunition after case over.

With respect to guns and ammunition this claim is an independent alternative legal theory to Claim 5. Even if it were legal to seize and detain guns and ammunition while they were used as evidence, the District should have returned them after the trial were over.

As an element of UF and CP and CPWL the prosecutor must prove the defendant possessed or carried a gun but the District does not actually have to introduce the gun into evidence. Morrison v. United States, 417 A.2d 409, 412 (D.C. 1980)(introduction of pistol in evidence was not necessary to prove unlawful possession of pistol). Nonetheless, the District seized handguns and ammunition as evidence for use in investigations and prosecutions of violations of

the District's unconstitutional gun registration regime. SAC, ¶ 121. <u>Krimstock v. Kelly</u>, 464 F.3d

246, 248 n.1 (2d Cir. 2006)(explaining distinction between arrest evidence – designated by the

arresting officer – and trial evidence – as determined by the prosecutor).

Even assuming <u>arguendo</u> that the guns and ammunition were seized for use as evidence in

a criminal prosecution, as opposed to for use in investigations, the District had no need for them

after the case is over and the District. The government's right to keep property seized as evidence

dissipates once the need for the property has terminated. <u>United States v. Wilson</u>, 540 F.2d 1100,

1103-04 (1976).

A seizure is justified under the Fourth Amendment only to the extent that the government's

justification holds force, and, thereafter, the government must cease the seizure or secure a new

justification, which the District did not demonstrate. <u>Brewster</u>, 859 F.3d at 1196-97; <u>Avila</u>, 246 F.

Supp. 3d at 355.

### 4. *Claim 8 – Retention of vehicles as evidence after the vehicles had been searched and processed for evidence.*

With respect to vehicles, this claim is an independent alternative legal theory to Claim 5.

Even if it were legal to seize and detain vehicles to process them for whatever potential evidence

might be in them, the District should have returned them after it finished searching and processing

them.

The vehicles in this case (1) were seized and classified by the MPD as evidence according

to MPD criteria, not by the U.S. Attorney; (2) for the "potential evidence" that might be in them.

SAC, ¶¶ 92-112. In fact, not only is the MPD the entity that makes the classification as evidence,

the MPD has discretion on which vehicles to seize in the first place, because the General Orders

do not mandate seizure of vehicles in which firearms involving violations of District laws are found.

Recording, Handling and Disposition of Property Coming into the Custody of the Department, GO-601.01, pgs. 7-9.[2]

Therefore, the District's and the prosecutors' interest in retaining vehicles dwindled to zero after the MPD searched and processed them, and so the District should have returned them after the MPD searched and processed them. United States v. Lee, 509 F.2d 400, 404 (1974) (police seized vehicle to prevent the loss of "potential evidence" in the vehicle); Avila v. Dailey, 246 F. Supp. 3d 347, 356 (D.D.C. 2017)(items removed from the van — the passport, knife, and beer cans — "might have potential evidentiary value in a criminal case" but the van itself would have no such value); In re Q.D.G., 706 A.2d 36, 38 n.5 (D.C. 1998)(stolen car was a "tangible object" in the "custody or control" of the District, but only the condition of the ignition was "material to the preparation of respondent's defense."); Hines v. Albany Police Dep't, 520 F. App'x 5, 7 (2d Cir. 2013) (vehicle in which drugs found has no evidentiary value after vehicle searched and processed and any drugs recovered).

A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force, and, thereafter, the government must cease the seizure or secure a new justification, which the District did not demonstrate. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

### 5.   *Claim 10 – Illegal civil forfeiture of vehicles used to transport firearms violates the 4th Amendment.*

This Claim 10 is analogous to Claims 2 and 5 in that the claim challenges the entire unconstitutional gun registration regime, and it contends no detention at all was justifiable under the 4th Amendment. An officer is entitled to seize a vehicle for a forfeiture determination on the basis of a civil forfeiture statute on the books that turns out to be unconstitutional. One 1958

---

[2] https://go.mpdconline.com/GO/GO_601_01.pdf

Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699 (1965). But, the District may not detain for any length of time a vehicle for a forfeiture determination on the basis of an unconstitutional civil forfeiture statute (infringes on 2d right to carry handguns outside the home for self-defense).

A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force, and, thereafter, the government must cease the seizure or secure a new justification, which the District did not demonstrate. Brewster, 859 F.3d at 1196-97; Avila, 246 F. Supp. 3d at 355.

### B.  Plaintiffs' Claim3 states a claim for relief under the 5th Amendment.

#### 1.  Claim 3 states an equal protection claim because there is no rational basis for the complete ban the District imposed.

Plaintiffs adequately pled under Rule 8's notice pleading requirements an equal protection claim because the gun registration statute in force pre-Palmer limited registration to District residents. The District's argument for dismissal is basically that the "rational basis" standard of review is so deferential that plaintiffs never win this type of claim, not even at the motion to dismiss stage. District's memorandum, p. 22-25. Not so. Circuit. No Such Thing: Litigating Under The Rational Basis Test, Clark Neily, 1 N.Y.U. J. L. & LIBERTY 898, 907–08 (2005)(difficulties and doctrinal issues in litigating rational basis claims).

None of the justifications that the District suggests satisfy the rational basis standard because under the total ban the District did not even apply them to residents. Defendants' policy of refusing to issue a license to nonresidents under the pre-Palmer unconstitutional gun registration regime violated the equal protection clause, See Guillory v. County of Orange, 731 F.2d 1379 (9th Cir. 1984.

#### 2.  Claim 3 states a claim for a violation of the right to travel because the District's gun laws burden that right.

The ban on registering out of state residents unreasonably burdens plaintiffs' right to travel, *See, e.g.* Apethaker v. Secretary of State, 378 U.S. 500, 507 (1964) (right to travel cannot be conditioned on forfeiture of First Amendment right of association); Dunn v. Blumstein, 405 U.S. 330, 342 (1972); See Hutchins v. D.C., 188 F.3d 531, 538, 338 U.S. App. D.C. 11 (D.C. Cir. 1999) (en banc) (plurality opinion) (acknowledging "a hypothetical municipal restriction on the movement of its citizens, for example, a draconian curfew, might bring into play the concept of substantive due process," but declining to find a fundamental right implicated by a juvenile curfew ordinance, in part because juveniles do not have the same rights as adults).

C. *Claims 1 and 3 state a claim because the asserted injuries—all of which flow from plaintiffs' arrests and prosecutions—are causally-related to violations of the Second and Fifth Amendment.*

Again the District misstates Plaintiffs' claims – by referring to arrests and prosecutions instead of the arrests and detentions or detentions only that Plaintiffs pled, and then the District argues against the straw man it created by misstating Plaintiffs' claims.

The Claims seek damages for injuries caused by the arrests and detentions of named plaintiffs by the District acting through its MPD, and the detentions of people arrested by other law enforcement agencies and processed and detained by the District.

Townes and Hector v. Watt are inapplicable to this case because those cases deal with injuries caused by illegal searches and the analogous common law claims to which the Courts looked pursuant to Carey v. Phipps did not allow for the damages plaintiffs in those cases claimed. Corrigan v. Glover, 254 F. Supp. 3d 184, 206 (D.D.C. 2017) ( courts have often held that plaintiffs pleading a violation of unlawful search and seizure may not necessarily seek damages for subsequent prosecution, conviction, or incarceration premised on that search and seizure absent a claim for false arrest or malicious prosecution).

These cases are correct on the general rule of damages in a § 1983 claim: courts should look to the "analogous common law cause of action" which provides the starting point for the measure of damages. Carey v. Piphus, 435 U.S. 247, 257-258 (1978)(state tort law principle supply the guide to deciding the appropriate measure of damages); Corrigan v. Glover, 254 F. Supp. 3d 184, 205 (D.D.C. 2017).

But Townes and Hector v. Watt are wrong on the specific analogous common law tort that applies in this case. the analogous common law torts on Claims 1 and 3 are false arrest and false imprisonment. A false arrest claim allows a plaintiff to seek damages for the period of wrongful detention, even after legal process has begun, up to the point trial commences. Manuel. The legal process Mr. Davis received did not extinguish his Fourth Amendment claim because it did nothing to satisfy the probable-cause requirement for his continued detention because the judge's determination of probable cause at arraignment was based solely on an unconstitutional statute.

Here, the legal process Named plaintiffs received did not extinguish their 2d or 5th Amendment claims because it did nothing to satisfy the requirement for their arrests continued detention, a constitutional statute.

The out of Circuit cases relating to wrongful prosecution claims are no longer applicable because Plaintiffs challenge only arrest/ and or detention up to the start of trial.

Courts are virtually unanimous that a municipality is liable to persons arrested pursuant to an unconstitutional municipal ordinance or statute because a police officer's act of enforcing an unconstitutional municipal policy by making an arrest under the unconstitutional municipal ordinance or statute is considered the act of the municipality itself. Monell, 436 U.S. at 694; *See* Nichols v. Village of Pelham Manor, 974 F. Supp. 243, 258 (S.D.N.Y. 1997) ("It is almost self-evident that plaintiff's claim against the [defendant municipality] for his arrest under an unconstitutional [municipal] statute supports municipal liability under Monell.").

A sample of other decisions holding that a municipality is automatically liable in damages if its police officers enforce an ordinance or statute later determined to be unconstitutional are the following. In Fields v. City of Omaha, 810 F.2d 830 (8th Cir. 1987) Omaha police officer arrested plaintiff under a municipal ordinance for refusing to identify herself. She was booked for loitering and prowling. Because she was unable to make bail, she spent nine days in jail awaiting trial. Trial was held, and the loitering and prowling charge was dismissed at trial.

In her subsequent civil suit seeking damages for the time she was detained pursuant to her arrest and trial the Court of Appeals held that the Omaha loitering and prowling ordinance was unconstitutionally vague on its face, in violation of due process. Therefore, Court of Appeals, the City was liable to Fields under § 1983 for compensatory damages for all the time she spent in jail, including the time awaiting trial and during her prosecution. Fields v. Omaha, 810 F.2d 830, 834 (8th Cir. 1987).

The Fields Court did not separately allocate damages and liability between plaintiff Ms. Fields' arrest and her subsequent prosecution. The Fields Court seems to have been implicitly applying the basic rule of tort damages that a wrongdoer is liable for all damages that can reasonably foreseen to flow from his misconduct.

In Cooper v. Dillon, 403 F.3d 1208, 1221-22 (11th Cir. 2005) the city of Key West was held liable for arresting plaintiff pursuant to a municipal criminal statute (a state statute adopted by the city) which was unconstitutional under the 1st Amendment and detaining him in the county jail for about three hours. An independent alternative holding in Cooper for municipal liability was that Cooper was a policy maker who chose to enforce the state statute. Id.

Some courts even extend the rule and hold a municipal corporation liable when its corrections officers enforce a *state* statute. *See e.g.*, Davis v. City of Camden, 657 F. Supp. 396,

402-04 (D. N.J. 1987)(county liable for strip-searches conducted by its jail guards pursuant to a strip search policy mandated by a state regulation).

Courts also hold that the presence or absence of probable cause to arrest someone under an unconstitutional municipal statute or ordinance is irrelevant to a determination of the municipality's liability. Grossman, 33 F.3d at 1203.

The same is true here. This is a 2d Amendment (and 5th Amendment) claim, not a 4th Amendment claim. Probable cause is not an element of either the 2d Amendment or the 5th Amendment. Grossman, 33 F.3d at 1203. Plaintiffs' constitutional claim does not stem from an absence of probable cause to arrest, but from the unconstitutionality of the statutes justifying the arrest. Id. Therefore, a finding of probable cause under the ordinance in no way renders the arrest "privileged," or immunizes the District from liability. Grossman, 33 F.3d at 1203. Plaintiffs suffered injury because of the District's enforcement of the unconstitutional statute precisely because of the ordinance's applicability to their constitutional conduct. Id.; Gerritsen v. City of Los Angeles, 994 F.2d 570 (9th Cir.) (upholding § 1983 damages action because of enforcement of unconstitutional permit requirement for handbill distribution in public park), cert. denied, 126 L. Ed. 2d 253, 114 S. Ct. 306 (1993).

Moreover, any qualified immunity the arresting officers may have had does not extend to the District. Owen v. City of Independence, 445 U.S. 622, 650-52 (1980) (discussing and rejecting the argument that personal immunity may be extended to a municipal corporation); Cooper v. Dillon, 403 F.3d at 1223 (a finding of qualified immunity for the arresting officer does not preclude municipal liability based on the alleged constitutional violation).  Anyway, tthe issue of individual liability is not raised where because the only defendant the plaintiffs are suing is the District.

Causation is an element of the claim, and thus a merits issue. Barnes v. District of Columbia, 242 F.R.D. 113, 117 (D.D.C. 2007)()plaintiff must prove that the District of Columbia has a custom or practice that is the moving force behind the alleged violations).

Monell established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Baker v. District of Columbia, 326 F.3d 1302, 1306-07 (D.C. Cir. 2003).

Monell established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

The same analysis holds for Claim 3.

### C. Plaintiffs' Claim 7 states a claim under Fed. R. Civ. P. 12(b)(6).

Claim 7 deals with the District's seizure and retention and destruction of unregistered hand guns seized from persons pursuant to D.C. Code § 22-4517, the "dangerous articles" statute, an administrative forfeiture statute in the District's unconstitutional gun regulation regime. SAC ¶¶ 287-96.

The "dangerous articles" statute provides for the permanent forfeiture of unregistered hand guns and shotguns (and certain other weapons) owned, possessed, or carried in the District unless the owner has a registration certificate at both the time of seizure and the time of any hearing conducted by the MPD Property Clerk for the return of the handgun or shotgun. D.C. Code § 22-

4517(b). The statute applies even if the unregistered gun is not on the list of prohibited weapons in D.C. Code § 22-4514 (Possession of certain dangerous weapons prohibited). Operation of the law is mandatory whenever an MPD officer discovers a dangerous article which the officer reasonably believes is a nuisance – the officer "*shall* take [gun] into his or her possession and surrender it to the Property Clerk." D.C. Code § 22-4517(c) (emphasis added).

But, the District rigged the game against gun owners who wished to carry their guns outside their homes, because the dangerous articles statute provides for forfeiture and destruction of handguns unless the owners can prove that they had registration certificates at both at the time of seizure and at the time of any hearing conducted by the Property Clerk under the dangerous articles statute. Providing a rigged system itself violates due process because owners are sure to lose. But, from before the start of the Class Period (5/15/2012) up until the D.C. Circuit invalidated the District's "good cause" provisions in Wrenn, the District refused to register handguns for use outside the home or (until 2015) business as part of its total ban on the carrying of handguns, even though handguns ("pistols") and unaltered shotguns are not on the list of prohibited weapons in D.C. Code § 22-4514 (Possession of certain dangerous weapons prohibited). The District still has a complete ban on registering handguns for "open carry" outside the home or business, and the District does not allow registration of shotguns anywhere, even though handguns ("pistols") and unaltered shotguns are not on the list of prohibited weapons in D.C. Code § 22-4514, and thus are not contraband *per se*.

Moreover, the dangerous articles affects the availability of Rule 41(g) to seek return of property held "as evidence" because it prevents its release even if the owner prevails in the Property Clerk hearing because the statute forbids the Property Clerk from releasing guns without a certification from the U.S. Attorney that the gun is not needed as evidence even if the Superior Court in a *de novo* proceeding orders the Property Clerk to release of the gun pursuant to the

dangerous articles statute. D.C. Code § 22-4517(d)(7); *see* D.C. Code § 5-119.06(d)(Property Clerk cannot release certain property for a year from seizure without a certification from the U.S. Attorney that the gun is not needed as evidence in a criminal prosecution).

The District's motion to dismiss on Claim 7 should be denied for the same reason Judge Cooper denied the District's motion to dismiss Claim 3 as to vehicles in <u>Brown/ Hoyte</u>. <u>Brown v. District of Columbia</u>, 115 F. Supp. 3d 56, 67 (D.D.C. 2015). Owners were entitled to prompt post seizure hearings at which they could challenge the seizure and retention of their guns pending the outcome of the forfeiture proceedings under the dangerous articles statute. In <u>Brown</u>, Judge Cooper held that that due process requires a prompt hearing to enable owners of vehicles seized for forfeiture determinations challenge the District's seizure and continued retention of their vehicles pending the outcome of forfeiture proceedings. *Id.* Judge Cooper also specifically held that owners could not use Rule 41(g) to challenge the District's seizure and retention of their vehicles for forfeiture determinations. <u>Brown</u>, 115 F. Supp. 3d at 65 *citing* <u>District of Columbia v. Dunmore</u>, 749 A.2d 740, 744 (D.C. 2000) (Rule 41(g) motion unavailable once the District institutes civil forfeiture proceedings). Rule 41(g) motions are not available to owners in the forfeiture context because resolving a forfeiture proceeding requires resolving competing claims of ownership , and Superior Court judicial officers cannot resolve competing claims of ownership in a Rule 41(g) motion based on their ancillary jurisdiction. *Id.* Judge Cooper in his decision certifying the classes confirmed his ruling that Rule 41(g) is not available to owners to obtain release of property seized for forfeiture under the District's general forfeiture statute. <u>Hoyte v. District of Columbia</u>, 325 F.R.D. 485, 493 (D.D.C. 2017).[3]

---

[3] The D.C. Council has since amended the civil forfeiture statute (effective June 2015) to allow for interim release of vehicles seized for forfeiture determinations pending the outcome of any forfeiture proceedings. D.C. Code § 41-306(b)-(o).

The District does not defend that the dangerous articles statute is a constitutionally adequate remedy – the District's position is that Rule 41(g) is available to provide a constitutionally adequate recovery remedy. But, an application of the <u>Mathews</u> three factors test to the process the District offered in the "dangerous articles" statute shows that (1) that Plaintiffs possessed a protected property interest in their handguns; and (2) that the District deprived them of those interests as a result of constitutionally insufficient process. <u>Brown v. District of Columbia</u>, 115 F. Supp. 3d 56, 67 (D.D.C. 2015); <u>Panzella v. Sposato</u>, 863 F.3d 210, 218 (2d Cir. 2017).

The fact that any one of the Named plaintiffs or any absent class member would lose because they lacked a license does not defeat the due process claim because fair procedures are not confined to the innocent. <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 62 (1993). The burden would be on the District to prove that the result (forfeiture of the guns) would have been the same even if it had provided constitutionally adequate hearings. <u>Carey v. Piphus</u>, 435 U.S. 247, 260 (1978)( respondent-students not entitled to compensatory damages if petitioner-schools could prove on remand that respondent-students "would have been suspended even if a proper hearing had been held"); <u>Thompson v. District of Columbia</u>, 832 F.3d 339, 347 (D.C. Cir. 2016) (plaintiff can recover compensatory damages for a defendant's deprivation of its protected property interest unless the defendant shows that the injury would have occurred anyway).

Moreover, the statute has no provision obligating the District to provide notice and a hearing to owners whose handguns or shotguns are seized pursuant to the statute which also violates due process. <u>Ford v. Turner</u>, 531 A.2d 233, 237 (D.C. 1987)(constructive knowledge of the statute alone was not constitutionally adequate notice when more than one basis for seizing property exists and there are multiple reasons the government is holding the property and thus multiple procedures may apply for the retrieval of the property); <u>N.B. v. District of Columbia</u>, 244 F. Supp. 3d 176, 182 (D.D.C. 2017) (owner entitled to initial post seizure written notice of the

reason for the seizure when more than one reason possible and different reasons have different retrieval procedures) *citing* Gray Panthers v. Schweiker, 652 F.2d 146, 168-69, 172 (1980)(plaintiffs whose benefits were denied entitled under due process to notice of the specific reasons for the denial).

Actual knowledge of a seizure is not the same as actual knowledge of a forfeiture determination hearing. Jones v. Flowers, 547 U.S. 220, 234 (2006); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 38 (1st Cir. 2001)(the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure); Small v. United States, 136 F.3d 1334, 1335 (D.C. Cir. 1998) (defendant's actual knowledge that his property was seized by the DEA did not preclude a challenge to the forfeiture of his property based on lack of notice of the forfeiture proceedings). Plaintiffs' complaint put the District on notice of this claim under Rule 8's notice pleading standard. Brown v. Sessoms, 774 F.3d 1016, 1022 (2014)(defendant had notice of the claims against it because the plaintiffs "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city.")

Jenkins is distinguishable on the law and the facts because in Jenkins Rule 41(g) was available to owners for return of their vehicles held solely as evidence; none of the vehicles were held for forfeiture determinations. Melton is distinguishable because guns and handguns, unlike cash, can be secured by bonds as well as court orders if released pending the outcome of forfeiture proceedings.

The mere fact that Plaintiffs also have other theories in support of their claims does not negate their 4th Amendment claim, because certain wrongs affect more than a single right and, accordingly, can implicate more than one Constitutional provision. Soldal v. Cook Cnty., 506 U.S. 56, 70 (1992).

### 3.    The "dangerous articles" statute.

The "dangerous articles" statute provides for the permanent forfeiture of hand guns and shotguns (and certain other weapons) owned, possessed, or carried in the District unless the owner has a registration certificate at both the time of seizure and the time of any hearing conducted by the Property Clerk for the return of the handgun or shotgun. D.C. Code § 22-4517.

The statute operates by declaring that handguns and shotguns are (1) "dangerous articles," and that (2) they are "nuisances" which are subject to seizure and destruction if they are (3) "unlawfully owned, possessed, or carried" in the District.[1] D.C. Code § 22-4517(b). Owning, possessing, or carrying a handgun or shotgun is "lawful" under the statute only if the owner has a registration certificate at both the time of seizure and the time of any hearing to recover the handgun or shotgun. Despite what the District says on page 31 of Memorandum, whether an owner has a license has no relevance under the dangerous articles statute.

The statute has no provision obligating the District to provide notice and a hearing to owners whose handguns or shotguns are seized pursuant to the statute. Instead, the statute the District shifts the burden onto the owner to file a claim with the Property Clerk in order to be entitled to notice and a hearing. D.C. Code § 22-4517(d). In <u>Ford v. Turner</u>, 531 A.2d 233, 237 (D.C. 1987) the District of Columbia Court of Appeals held that constructive knowledge of the statute alone was not constitutionally adequate notice.

The statute authorizes the Property Clerk to destroy any handgun or shotgun seized pursuant to the statute if no one presents a claim. D.C. Code § 22-4517(f).

At a hearing on a claim for return of a handgun or shotgun the Property Clerk's jurisdiction is limited to consideration of only two issues: (1) whether the claimant is the owner or the

---

[1] The statute uses the term "pistol." The definition section of the statute, D.C. Code § 22-4501(6), adopts by reference the definition of "pistol" used in D.C. Code § 7-2501.01(12), "any firearm originally designed to be fired by use of a single hand or with a barrel less than 12 inches in length." "Firearm" is defined at D.C. Code § 22-4501(2A).

accredited representative of the owner, and (2) whether the ownership is "lawful" at time of seizure and hearing. D.C. Code § 22-4517(e). The claimant is entitled to return of the handgun or shotgun only if they can establish these two criteria. *Id.*

There is no "innocent owner" exception, no "hardship" relief provision, nor "mitigation" or "remission" in the event of for forfeiture. *Cf.* D.C. Code § 48-905.02(d)(3)(F)(provision of D.C. general civil forfeiture statute providing for mitigation or remission after forfeiture).

The Property Clerk's determination that a claimant is not entitled to return of their handgun or shotgun is subject to *de novo* "appeal" or review in Superior Court. D.C. Code § 22-4517(d)(3). The Superior Court proceeding is *de novo* " because the property clerk is not required to have any type of legal training or conduct proceedings in such a way as would conform to the minimum due process requirements of an administrative determination affecting property rights." Kuhn v. Cissel, 409 A.2d at 184 n.3. The Property Clerk retains possession of the handgun or shotgun during the pending of the *de novo* review, and until the U.S. Attorney certifies that the gun is not needed as evidence in a prosecution, even if the Superior Court orders release. D.C. Code § 22-4517(d)(5). There is no provision for a prompt post seizure hearing pending the process.

### 4. *Plaintiffs have a protected property interest in their guns.*

Plaintiffs have a property interest in their guns for purposes of the due process clause. Panzella v. Sposato, 863 F.3d 210, 218 (2d Cir. 2017).

The District contends that plaintiffs do not have a protected property interest in their guns because the articles were "contraband *per se*" and thus "intrinsically illegal in character." Memorandum at 30, *citing* United States v. Farrell, 606 F.2d 1341, 1343 (D.C. Cir. 1979). But, the "dangerous articles"statute did not make handguns "contraband *per se*;" rather, only "unlawful," that is, only unregistered handguns, were forfeitable as "nuisances" under the statute. *See* Kuhn v. Cissel, 409 A.2d at 185. In fact, whether the gun was "lawful" is the key issue to be decided in the

hearings provided for in the statute, D.C. Code § 22-4517(e), so the notion that a handgun is contraband *per se* and thus not entitled to procedural due process protection before conducting the forfeiture hearing to determine whether it is a nuisance is an illogical legal analysis.

Moreover, D.C. Code § 22-4514(a), listing prohibited dangerous weapons, does not include "pistol," that is handguns, on the list of prohibited weapons. And since <u>Heller</u> handguns have been lawful in the home, so they were obviously not contraband *per se*. In fact, even in the pre-<u>Heller</u> world, the District of Columbia Court of Appeals held that "possession of a [hand]gun, without more, is not wrongful conduct," because "properly registered pistols may be kept on the owner's premises." *See e.g.*, <u>Ali v. United States</u>, 581 A.2d 368, 375 (D.C. 1990).

Therefore, even applying the District's <u>Farrell</u> standard, handguns such as the Named plaintiffs were arrested and detained for carrying are "derivative" contraband (articles which are not inherently illegal, but are used in an unlawful manner), not *per se* contraband  ("objects the possession of which, without more, constitutes a crime."). <u>United States v. Farrell</u>, 606 F.2d 1341, 1345-46 (1979).

### 5. *Rule 41(g) was not available to owners in dangerous articles statute proceedings.*

The District's contention that the availability of Rule 41(g) obviates the plaintiffs' due process claim rests on the District's theory that a successful due process claim requires a plaintiff to show that state-law remedies were inadequate. First, the Supreme Court and this Circuit in its published decisions have rejected this contention where, as here, the deprivation results from an established government policy as opposed to random unpredictable deprivations. Second, Rule 41(g) is not available once the government institutes forfeiture proceedings because Rule 41(g) rests on the Superior Court's limited ancillary jurisdiction, not its general jurisdiction, and the Superior Court's ancillary jurisdiction is not broad enough to resolve competing claims of ownership which

is the whole point of a forfeiture proceeding. Also, D.C. Council intended that the Property Clerk proceeding followed by de novo review in the Superior Court is the exclusive means for resolving forfeiture claims under the dangerous articles statute.

The dangerous articles statute by its terms does not provide for review by the Superior Court before the *de novo* review provided by D.C. Code § 22-4517(d)(3). The District's position that it does – given their position that the District contends that a handgun is contraband *per see* that an owner has no right to retrieve – makes no sense. No District of Columbia Court of Appeals decision has ever held that owners whose guns are held by the Property Clerk pending the outcome of a hearing under the dangerous articles statute may bypass the Property Clerk and *de novo* review in the Superior Court by filing a motion for return of property under Rule 41(g). The District of Columbia Court of Appeals did not rule on the availability of Rule 41(g) when the Property Clerk retains possession of a handgun pursuant to D.C. Code § 22-4517 in either Kuhn v. Cissel or Ford v. Turner. But, the District of Columbia Court of Appeals held that the dangerous articles statute limits operation of the general Property Clerk statute where firearms are involved, which suggests it does not. Kuhn v. Cissel, 409 A.2d 182, 185-86 (D.C. 1979).

The limited nature of a Superior Court judicial officer's ancillary jurisdiction also blocks application of Rule 41(g) to guns held by the Property Clerk pursuant to a forfeiture statute like the dangerous articles statute. To be sure, "[c]ourts in this district have generally found Rule 41(g) to be a constitutionally adequate means of obtaining the return of seized property in criminal cases." Jenkins v. Dist. of Columbia, 2017 U.S. Dist. LEXIS 119157, at *11 (D.D.C. Mar. 28, 2017). "But the same cannot be said of Rule 41(g) motions in the civil forfeiture context, specifically." Hoyte v. District of Columbia, 325 F.R.D. 485, 493 (D.D.C. 2017.)(referring to civil forfeiture brought under D.C. Code § 48-905.02, transporting controlled substances) *citing* Dist. of Columbia v. Dunmore, 749 A.2d 740, 744-45 (D.C. 2000) which describes a motion brought under Rule 41(g)

as a "simple matter" that is "inapplicable where 'competing claimants' vie for [ownership of] property." [5]

But, Rule 41(g) is not available to owners to obtain release of property held for forfeiture determinations pending final outcome of the forfeiture proceedings once the District institutes forfeiture proceedings under the general civil forfeiture statute. Brown; Hoyte v. District of Columbia, 325 F.R.D. 485, 494 (D.D.C. 2017), relying on District of Columbia v. Dunmore, 749 A.2d 740, 741, 743-45(D.C. 2000). [6] The Dunmore Court explained that a Superior Court judicial officer cannot resolve competing claims of ownership between the owner and the government exercising their limited ancillary jurisdiction under Rule 41(g) because: (1) the "ancillary" nature of the hearing would be supplanted by an "essentially . . . civil action" in which the rights of "competing claimants . . . [are] resolved," and (2) the D.C. Council intended that once the District has initiated civil forfeiture proceedings under § 33-552, those proceedings constitute the exclusive means by which the ownership of forfeitable property is to be determined. Dunmore, 749 A.2d at 741, 743-45.

The same logic applies to the dangerous articles statute. In the administrative forfeiture proceeding under the dangerous articles statute the government asserts ownership of the guns unless the owner can establish that the guns were registered both at the time of the seizure and at the time of the hearing, and the D.C. Council intended the dangerous articles statute proceeding as the exclusive means of determining whether the guns were registered once the MPD seize the guns and hand them over to the Property Clerk. The dangerous articles statute limits operation of the

---

[5] D.C. Code § 48-905.02 provides a forfeiture procedure for controlled substances. Several other forfeiture provisions adopt by reference the procedure used in D.C. Code § 48-905.02 including: D.C. Code § 7-2507.06a (transporting gun in a vehicle); D.C. Code § 22-2723 (prostitution-related offense); illegal dumping and counterfeiting.

[6] Dunmore was decided before the D.C. Council amended the civil forfeiture statute effective June 2015 to allow Superior Court judicial officers to order conditional "interim" release of property seized for forfeiture determinations pending the outcome of the forfeiture proceedings. D.C. Code § 41-306 (effective date, June 15, 2015).

general Property Clerk statute where firearms are involved. Kuhn v. Cissel, 409 A.2d 182, 185-86 (D.C. 1979); D.C. Code § 22-4517 (institution of forfeiture proceedings under the dangerous articles statute mandatory because officer "*shall* take [gun] into his or her possession and surrender it to the Property Clerk." (emphasis added). So the twin rationales of Dunmore apply to the dangerous articles statute to block availability of Rule 41(g): (1) the Superior Court's ancillary jurisdiction is not broad enough to resolve the competing claims of ownership that a forfeiture statute presents, and (2) the D.C. Council intended the dangerous articles statute with *de novo* Superior Court review as the exclusive means of resolving forfeiture of guns under the dangerous articles statute.

Another bar to the availability of Rule 41(g) is that the statute provides that even if an owner prevails in a proceeding before the Property Clerk by proving ownership and registration the Property Clerk cannot release the gun until the U.S. Attorney certifies that it is no longer needed as evidence in a criminal prosecution. D.C. Code § 22-4517(d)(5). In fact, even if an owner prevails in a *de novo* review in Superior Court of the Property Clerk's adverse ruling, and the Superior Court orders release of the gun, the Property Clerk still cannot release the gun until the U.S. Attorney certifies that it is no longer needed as evidence in a criminal prosecution. *Id.*

Reconciling this provision preventing the Property Clerk from releasing guns held as evidence even if the Superior Court orders their release under the dangerous articles statute with Wilson v. United States, 424 A.2d 130, 133 (D.C. 1980)("Wilson II"). Wilson II holds that the Superior Court has concurrent jurisdiction with the Property Clerk over property held as evidence pursuant to D.C. Code § 5-119.06(d). Also, a Superior Court judicial officer can order the Property Clerk to return property held as evidence under D.C. Code § 5-119.06(d) to a movant under Rule 41(g) even without a certification from the U.S. Attorney because property held as evidence is in the custody of the Superior Court. Wilson II. But, D.C. Code § 4-156 [current D.C.

Code § 5-119.01, *et seq.*] requires the Property Clerk to return property to its owner unless the property was feloniously obtained, is the proceeds of a crime, or is feloniously obtained  and needed as evidence in the prosecution of a crime.

But, the dangerous articles statute limits operation of the general Property Clerk statute where firearms are involved. Kuhn v. Cissel, 409 A.2d 182, 185-86 (D.C. 1979). Regardless how the District of Columbia Court of Appeals might ultimately untangle this conflict it seems unlikely that Rule 41(g) is available to owners whose guns are held by the Property Clerk under D.C. Code § 22-4517(b).

So if under the dangerous articles statute the Superior Court cannot order the Property Clerk to release property held as evidence without a certification by the U.S. Attorney, it is extremely unlikely that a Superior Court judicial officer exerting ancillary jurisdiction can order the Property Clerk holding a gun under the dangerous articles statute to release a gun unless the Property Clerk decides the owner has satisfied the criteria under the dangerous articles statute.

### 6.    *Leyland*  and *Baird are distinguishable as* Bivens *actions.*

Two judges of this court held that Rule 41(g) is a constitutionally adequate remedy for retrieving guns seized and retained by the Park Police and a Capitol Police officer. Leyland v. Edwards, 797 F. Supp. 2d 7, 10, 11 (D.D.C. 2011); Baird v. Holton, 806 F. Supp. 2d 53, 57 (D.D.C. 2011).

These cases are distinguishable for several reasons: they are pre-Heller cases; the defendants are the Park Police property Clerk, and a Capitol Police officer respectively so it is unclear whether the weapons were ever surrendered to the MPD Property Clerk as required for the dangerous articles statute to apply; the legal issue in Leyland and Baird was whether Rule 41(g) was a "special circumstance" providing a defense to a Bivens claim, whereas the legal issue here is whether the notice and process provided by the dangerous articles statute violated the due process

clause of the 5th Amendment, <u>Panzella v. Sposato</u>, 863 F.3d 210, 218 n.9 (2d Cir. 2017); <u>Razzano v. County of Nassau</u>, 765 F. Supp. 2d 176, 2011 WL 677594 (E.D.N.Y. 2011); and neither case resolves the District of Columbia Court of Appeals' holding in <u>Dunmore</u>, which describes a motion brought under Rule 41(g) as a "simple matter" that is "inapplicable where 'competing claimants' vie for [ownership of] property," and holds that Rule 41(g) is inapplicable once the District institutes forfeiture proceedings. 749 A.2d at 744-45.

Therefore, <u>Leyland</u> and <u>Baird</u> have limited persuasive authority in this case because the district court did not consider the effect of the dangerous articles statute on the availability of Rule 41(g). Moreover, defendant Edwards was the Property Clerk for the United States Park Police Property Office and the opinion does not indicate whether some version of the dangerous articles statute applies or whether the gun was ever delivered to the Property Clerk for the District of Columbia. the dangerous articles statute applies only to "police officer[s]" and "designated civilian employee[s] of the [MPD]" who must surrender guns to the MPD Property Clerk.

Nor did either of these cases address the problems cause by the provision in the dangerous articles statute which prohibits the Property Clerk from releasing a gun held pursuant to the dangerous articles statute without a certification by the U.S. Attorney even if the Superior Court orders release. D.C. Code § 22-4517(d)(5).

### IV. Plaintiffs meet the standard for sealing their records at this stage of the litigation.

Plaintiffs are entitled to some degree of declaratory relief regarding sealing their records. and declaring their arrests were mere detentions such as a declaration that the statutes under which they were arrested were unconstitutional if they prevail. <u>Carter v. District of Columbia</u>, 795 F.2d 116, 136 (1986). The exact nature of the declaratory and injunctive relief depends on a final judgment so dismissal of the claims is premature at this stage. *Id.*

### CONCLUSION

Respectfully submitted,

/s/William Claiborne
William Claiborne
DC Bar # 446579
717 D Street, Ave., NW
Ste 300
Washington, DC 20004-2815
 Phone: (202) 824-0700
Email: claibornelaw@gmail.co