## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| MAGGIE SMITH, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>DISTRICT OF COLUMBIA,<br><br>        Defendant. | Civil Action No. 15-737 (RCL) |

---

## <u>REPLY IN SUPPORT OF DEFENDANT'S MOTION<br>TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

## INTRODUCTION

Plaintiffs' Second Amended Complaint (SAC) is rife with jurisdictional and pleading defects. The District's motion to dismiss (District's Motion) addressed each defect concisely, providing an orderly roadmap for dismissal of plaintiffs' ten claims. Plaintiffs' Opposition to the District's Motion (plaintiffs' Opposition), which spans 43 pages, is largely an exercise in misdirection, failing in many respects to address controlling authority and to counter the District's arguments. As such, plaintiffs have not provided a valid basis for allowing any of their claims to proceed to discovery; the Court should dismiss the SAC, in its entirety, with prejudice.

## ARGUMENT

I.  <u>**Plaintiffs' "Seizure" and "Retention" of Property Claims Should Be Dismissed.**</u>

    A.  <u>**Claims 4, 5, 7, 8, 9 and 10 Should Be Dismissed Under the Doctrine of Claim-Splitting.**</u>

In response to the District's claim-splitting argument, Def.'s Mot. [53] at 7–9, plaintiffs contend that the District "applies the wrong standard," then expend considerable effort explaining why claim- and issue- preclusion do not bar plaintiffs' property-related claims. Pls.' Opp'n [56] at 3–4.[1] That is transparently misleading: claim-splitting is based on preclusion principles, but the doctrines are not interchangeable. *See* Def.'s Mot. at 7–8 (describing claim-splitting standard and relation to *res judicata* principles). In this way, claim-splitting does not require a final judgment in an earlier case, as plaintiffs seem to suggest. *See* Pls.' Opp'n at 3; *see, e.g.*, *Cook v. C.R. England, Inc.*, 2012 WL 2373258, *3 (C.D. Cal. Jun. 21, 2012) ("[T]he primary difference is that in claim-splitting, a litigant is able to move for dismissal *without* demonstrating that 'a court of competent jurisdiction has entered a final judgment on the merits' in the first action.") (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). And, "[t]he claim-preclusion test borrowed for claim-splitting analysis does not just bar claims that actually duplicate those asserted in a prior action but also those 'which could have been asserted, whether they were or not, in a

---

[1] Plaintiffs also cite *Hurd v. District of Columbia*, 146 F. Supp. 3d 57 (D.D.C. 2015), without revealing that the judgment there was subsequently vacated. 864 F.3d 671 (D.C. Cir. 2017).

prior suit between the same parties … on the same cause of action.'" *Id.* at *8 (quoting *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 (9th Cir. 1980)).

To be sure, the District does not contend that Mr. Davis is precluded from proceeding here because his claims have been "resolved" finally in *Brown/Hoyte*.[2] *See* Pls.' Opp'n at 3–4. The District's argument is that Mr. Davis cannot under claim-splitting principles pursue identical claims against the District in two courts at the same time; no "resolution" of the earlier matter is required. *See, e.g., Bartko v. DOJ*, 2018 WL 4608239, *12 (D.D.C. Sept. 25, 2018); *accord Lucas v. District of Columbia*, 214 F. Supp. 3d 7, 9 (D.D.C. 2016) (citations omitted). Indeed, the rule against claim-splitting "applies even if a certain claim has not yet been adjudicated in the earlier suit." *Bartko*, 2018 WL 4608239 at *12 ("In fact, those are just the circumstances when the rule against claim-splitting *should* apply"); *see also Koker v. Aurora Loan Servicing, LLC*, 915 F. Supp. 2d 51, 62 (D.D.C. 2013) ("Whether the plaintiff's claim was *actually* raised in the [previous] action is immaterial; what matters is that the Plaintiff *could have* raised the claim [there]").

Here, all of Mr. Davis's claims are ongoing—or could have been brought—in *Brown/Hoyte*. To determine whether a plaintiff is improperly claim-splitting, a court should ask whether, "assuming the first suit was already final, the second suit would be precluded under res judicata analysis." *Bartko*, 2018 WL 4608239 at *11 (quoting *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014)). Mr. Davis is

---

[2] *See Hoyte v. District of Columbia*, Civil Action No. 13-0569 (D.D.C.) (Cooper, J.) (*Brown/Hoyte*).

improperly claim-splitting here because assuming *Brown/Hoyte* was final, his instant claims would all be precluded under *res judicata*. In short, plaintiff Davis "is not free to pursue a separate and virtually identical action 'at the same time in the same court and against the same defendant[.]'" *Lucas*, 214 F. Supp. 3d at 9 (quoting *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015)). Claims 4, 5, 7, 8, 9 and 10 should be dismissed for this reason.

### B. The Issues Raised In Claim 7 Were Properly Decided In *Jenkins* and *Melton*.

Plaintiffs similarly misfire in arguing that *Jenkins v. District of Columbia*, 2017 WL 6211103 (D.D.C. Mar. 28, 2017) and *Melton v. District of Columbia*, 2017 WL 6211031 (D.D.C. Mar. 28, 2017) are inapplicable here because Mr. Davis was not a party in those cases, and so he cannot be "precluded" by them. Pls.' Opp'n at 6. Claim 7 should be dismissed, not because it is precluded by *Jenkins* or *Melton*, but because the legal analysis conducted by Judge Cooper in those cases is correct. *See FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 (D.C. Cir. 2017) (under doctrine of *stare decisis*, "the *same issue* presented in a later case in the *same court* should lead to the *same result*"). As explained in the District's Motion, Def.'s Mot. at 9–10, the combination of the holdings in these cases, applied here, forecloses the due process challenges plaintiffs assert in Claim 7. *See* SAC [50] ¶¶ 292 ("retention seizure hearing"), 293 ("notice to owners of [seized] property"). As such, the Court should follow Judge Cooper's persuasive analysis and dismiss Claim 7, with prejudice.

II.   **Most of the Claims In the SAC Should Be Dismissed Under Rule 12(b)(1) for Lack of Jurisdiction.**

A.   **Plaintiffs Lack Standing to Challenge the Civil Forfeiture of Vehicles (Claims 9 and 10).**

Plaintiffs again fail to directly address the District's arguments concerning plaintiffs' lack of Article III standing to bring Claims 9 and 10. *See* Def.'s Mot. at 11–12; Pls.' Opp'n at 6–8. In Claims 9 and 10, plaintiffs expressly challenge the *forfeiture* of vehicles pursuant to D.C. Code § 7-2507.06a, which states that vehicles used to transport an illegal firearm in the District "are subject to forfeiture." *See* SAC ¶¶ 305–311, 313–318. But no plaintiff's vehicle was ever forfeited here—for transportation of an illegal firearm or otherwise. *See* Pls.' Opp'n at 6–7 ("the District released the forfeiture hold on [plaintiff Davis's] vehicle and returned the vehicle to him before actually forfeiting [it]"). It is immaterial for Article III purposes that plaintiff Davis was without his vehicle for some period after his arrest, *see id.* at 7; whatever injury he suffered by not having his vehicle was not caused by the statute he challenges in Claims 9 and 10.

B.   **Plaintiffs' Vehicle-Related Claims—Claims 8, 9 and 10, and in part, 4 and 5—Are Barred By the Applicable Statute of Limitations.**

Plaintiffs also misunderstand the application of the statute of limitations to plaintiff Davis's vehicle-related claims, which are unquestionably out of time, *see* Def.'s Mot. at 12–13, unless some exception to the District's three-year limitations period applies.[3] Plaintiffs offer one—the relation back doctrine—but they are

_____

[3] Plaintiff Davis's vehicle was seized on March 23, 2014. SAC ¶ 206. Plaintiffs first raised their vehicle-related claims here on September 18, 2017 (the date of filing of

mistaken as to its application here. *See* Pls.' Opp'n at 8–13.[4] Generally, a party seeking to invoke relation back under Rule 15 must show two things: (1) the new claim arises from the same "conduct, transaction, or occurrence" alleged in the original pleading; and (2) the opposing party had sufficient notice of the claim. *Breen v. Chao*, 2018 WL 1509077, *9 (D.D.C. Mar. 27, 2018) (quoting Fed. R. Civ. P. 15(c)(1)(C)). Mr. Davis's vehicle-based claims founder on the first step because they are unrelated to plaintiffs' original claims, which were focused solely on the alleged unconstitutionality of the District's firearm laws.

Indeed, plaintiffs' original complaint challenged the arrests of the plaintiffs under the Second Amendment, the purported inability of non-residents to register firearms in the District, and the lack of "public carry." *See generally* Complaint [1]. *No claims* in the original complaint challenged or even mentioned the seizure or retention of any property, and the pleadings did not hint at civil forfeiture, let alone of vehicles. Mr. Davis's claims thus do not relate back and are barred by the applicable limitations period. *See Dave v. District of Columbia*, 811 F. Supp. 2d 111, 116 (D.D.C. 2011) ("[A]mendments do not relate back when the amended claim 'asserts a new

---

the SAC)—well after the applicable statute of limitations had run. *See* D.C. Code § 12-301(2).

[4] Separately, plaintiffs erroneously claim that their original complaint "put the District on notice that the MPD seized [Ms. Smith's] gun and her ammunition, and perhaps her car [*sic*][.]" Pls.' Opp'n at 12. This is wrong, because the original complaint did not raise any property-based claims and did not even contain the words "seize" or "seizure."

ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'") (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

### C. Plaintiffs' Second and Fifth Amendment Challenges to the Pre-*Palmer* Gun Laws (Claims 1 and 3) Should be Dismissed.

#### 1. Claims 1 and 3 Should Be Dismissed Because Plaintiffs Lack Standing to Challenge Their Arrests and Detentions Under the Second and Fifth Amendments.

Plaintiffs' primary response to the District's standing argument for Claims 1 and 3 is that plaintiffs are able to establish causation for standing purposes because their alleged injuries—in some remote sense—would not have occurred if the District's pre-*Palmer* gun laws were never enacted. That is not the fair traceability required under Article III. *See* Def.'s Mot. at 14–15 (citing authority for causation standard). As explained in the District's Motion, numerous intervening acts render plaintiffs' causation theory ineffective; most of all, plaintiffs' own willful disregard of duly-enacted municipal law directly caused their arrests and subsequent prosecutions. Countering, plaintiffs argue that, at the time of their arrests, "they were exercising their constitutional rights to carry their handguns for self-defense and the District infringed their rights to carry outside the home[.]" Pls.' Opp'n at 14. That is wrong as a matter of law: *Palmer* held that the Second Amendment protects some form of "public carry" and directed the District to "adopt[ ] a licensing mechanism" to enable both residents and non-residents to apply for and receive a license to carry a handgun. 59 F. Supp. 3d at 183. Prior to that decision, there was no constitutional right to carry a firearm in public in the District of Columbia.

7

More to the point, no person may carry a concealed handgun in the District prior to applying for and receiving a District-issued license allowing them to do so. D.C. Code §§ 22-4506(a), (b). That is as true today as when plaintiffs were arrested, and the requirement applies equally to District residents and non-residents—even those non-residents who hold valid concealed-carry licenses from other jurisdictions. *Id.* None of the plaintiffs, in any iteration of their claims, has alleged that they even attempted to apply for such a license or were otherwise qualified to receive one. It is not enough, as plaintiffs imply, that a person has a concealed-carry permit from another jurisdiction for the person to permissibly carry a gun into the District. A person must apply for and receive a *District-issued* concealed-carry license before carrying *any* weapon in public in the District, whether the individual possesses a license from elsewhere or not. In short, plaintiffs made a conscious choice to violate District law, causing the very injuries for which they now seek redress. This, among other things, *see* Def.'s Mot. at 14–17, severs the causal chain required to support Article III standing for Claims 1 and 3, which should be dismissed.

### 2. Plaintiffs' Second and Fifth Amendment Claims Challenging Their Arrests and Detentions (Claims 1 and 3) Should Be Dismissed As Moot to the Extent They Request Declaratory Relief.

Plaintiffs' response to the District's mootness argument is cryptic and largely unresponsive. *See* Def.'s Mot. at 17–18 (mootness), 18–19 (Declaratory Judgment Act); Pls.' Opp'n at 15–16. The SAC unequivocally seeks a declaration that the District's firearm registration laws in effect prior to October 10, 2014, violated the Second Amendment. SAC ¶ 4. However, those laws have *already* been judged, *see*

*Palmer*, 59 F. Supp. 3d at 183–84, and were substantially amended to obviate the asserted constitutional infirmities, D.C. Official Code § 7-2501.01, *et seq.* There is no reason to believe that the *prior* version of the firearm laws have any residual effect. *See Daskalea v. Wash. Humane Soc'y*, 710 F. Supp. 2d 32, 40 (D.D.C. 2010) (finding no live controversy where prior version of statute was "no longer in force" and there was no allegation that the prior version "continue[d] to have any residual effect"). Thus, plaintiffs' request for broad declaratory relief, SAC at 50 ¶ C, is not only moot, but also unlikely to become "live" ever again.

Addressing a narrower category of proposed declaratory relief, plaintiffs assert that a declaration of their rights would have the practical effect of clarifying that their arrests "were merely 'detentions' [thus relieving] them of the burden of having to respond affirmatively" to questions regarding their criminal history. Pls.' Opp'n at 16. That argument fails for two reasons. *First*, plaintiffs did not seek that declaratory relief. *See* SAC at 50, ¶ E (seeking a declaration that plaintiffs' "arrests for violations of any of the District's gun control regime [were] legal nullities"). *Second*, and most importantly, as shown above and previously, plaintiffs cannot deny that they carried unregistered firearms and ammunition into the District. Being found with unregistered weapons and ammunition is more than sufficient to provide probable cause for arrest. *See* Def.'s Mot. at 20–22. Accordingly, plaintiffs' demand for a declaration of their rights under the Second and Fifth Amendments is moot, and there is no valid prudential reason for the Court to otherwise retain jurisdiction.

III. **If the Court Takes Jurisdiction, Most of Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).**

A. **Plaintiffs Fail To State A Violation of the Fourth Amendment (Claims 2, 5, 6, 8 and 10) Because the "Seizures" They Seek to Challenge Were Supported By Probable Cause.**

Plaintiffs argue that the District's Fourth Amendment analysis is incorrect because it ignores the "detention prong" of their claims. *See* Pls.' Opp'n at 17. On the contrary, plaintiffs' analysis appears to be novel, and plaintiffs fail to distinguish authority from this Court. *See* Def.'s Mot. at 20–21. Plaintiffs contend that, *even if* their seizures and arrests were supported by probable cause, "their continued detentions were not, because they were arrested and detained pursuant to an unconstitutional gun registration scheme[.]" Pls.' Opp'n at 20 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017)). This statement is incorrect as a matter of law: "An arrest pursuant to a presumptively valid ordinance is lawful even if the ordinance is later held invalid." *Green v. District of Columbia*, 710 F.2d 876, 878 (D.C. Cir. 1983) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36–37 (1979)); *accord Heien v. North Carolina*, 135 S. Ct. 530, 538 (2014) (citing *DeFillippo*, 443 U.S. at 40, and explaining, "[if] it was reasonable for an officer to suspect that the defendant's conduct was illegal … there was no violation of the Fourth Amendment in the first place"). These cases alone doom plaintiffs' Fourth Amendment claims.

Plaintiffs' cause is not aided by *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017). *See* Pls.' Opp'n at 20. In that case, the original arrest of the claimant (Mr. Manuel) patently violated the Fourth Amendment because it relied on the intentional fabrication of evidence. *Manuel*, 137 S. Ct. at 919. The claimant's continued detention was reliant on the earlier deficiencies of the arrest when the government continued

to prosecute him despite affirmative evidence that probable cause was lacking. *Id.* In other words, Mr. Manuel's Fourth Amendment claim was predicated on his unconstitutional arrest, which "contaminated" his later detention. *See Manuel*, 137 S. Ct. at 919–20 ("Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime."). There was no equivalent Fourth Amendment violation at issue here, so *Manuel* is inapposite.

Plaintiffs also cite *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), in support of their theory of a "continuing seizure," but that decision is an outlier, as the Ninth Circuit candidly admits. *See id.* at 1196 ("We have no cases on point[.]"). *Cf. Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) ("Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The [Fourth] [A]mendment then cannot be invoked by the dispossessed property owner to regain his property."). *See also id.* at 463 and n.3 (noting that, in "rejecting this concept of a 'continuing seizure,' we are joined by the Fourth, Fifth, and Eleventh Circuits.") (citations omitted); *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471 (1873) ("A seizure is a single act, and not a continuous fact.").[5]

---

[5] Since *Lee*, the Seventh Circuit's rejection of the "continuing seizure" concept has been adopted (or cited with approval) in the Tenth Circuit, *Springer v. Albin*, 398 Fed.Appx. 427, 435 (10th Cir. 2010), and the Second Circuit, *Shaul v. Cherry Valley-Springfield Cent. School Dist.*, 363 F.3d 177, 187 (2d Cir. 2004). *See also Fox v. Van Oosterum,* 176 F.3d 342, 351 (6th Cir. 1999) ("[T]he Fourth Amendment protects an

**B.** <u>Claim 3 Should Be Dismissed Because the SAC Fails to State a Violation of
the Equal Protection Clause or the Right to Travel.</u>

**1.  Claim 3 Fails to State an Equal Protection Claim.**

Plaintiffs' half-page defense of their equal protection claim, Pls.' Opp'n at 25,
fails to distinguish or even mention the many controlling and persuasive cases cited
by the District, *see* Def.'s Mot. at 24–25. As explained, a plaintiff asserting an equal
protection challenge bears the burden of pleading facts that "establish [ ] there is not
'any reasonable conceivable state of facts that could provide a rational basis for the
classification.'" *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (quoting
*Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994)).
Plaintiffs have failed to overcome this presumption of rationality in the SAC, and
their Opposition does nothing to help their cause. Claim 3 should be dismissed to the
extent it arises under the Equal Protection Clause.

**2.  Claim 3 Fails to State a Claim for a Violation of the Right to Travel.**

Similarly, plaintiffs have essentially abandoned their right to travel claim by
providing one short paragraph of discussion that fails to cite or distinguish any of the
cases cited by the District. *See* Pls.' Opp'n at 26. Notably, plaintiffs fail to allege—in
either the SAC or their Opposition—any particular "burdens" that District law
imposes on their right to travel. *See* Def.'s Mot. at 25–26 (providing standard for right
to travel claim). And, if plaintiffs cannot articulate any specific burden on their right,

---

individual's interest in retaining possession of property but not the interest in
regaining possession of property. [O]nce the act of taking the property is complete,
the seizure has ended and the Fourth Amendment no longer applies.").

they cannot establish a right to travel claim under the Fifth Amendment. Claim 3 also should be dismissed in this regard.

C. **Claims 1 and 3 Fail to State a Claim Because the Asserted Injuries Flowing from Plaintiffs' Arrests and Prosecutions Are Not Causally-Related to Any Violation of the Second or Fifth Amendment.**

The fact that the District's pre-*Palmer* gun laws were held unconstitutional does not alone subject the District to liability in this case. Plaintiffs fail to state a viable claim under 42 U.S.C. § 1983 (Section 1983) because they cannot establish that the District's gun laws "actually caused" the injuries for which they seek redress— namely, those allegedly flowing from their arrests and aborted prosecutions. *City of Canton*, 489 U.S. at 391 (constitutional deficiency must have "actually caused" the "ultimate injury" to the claimant).[6] In other words, whatever relief plaintiffs might pursue for their inability to bear arms in the District does not extend to their post-arrest legal process because any injuries related to *that* process are too unrelated to the Second or Fifth Amendment protections on which the SAC rests. Indeed, "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question[.]" *Carey v. Piphus*, 435 U.S. 247, 258–59 (1978).

In this regard, courts—and particularly courts in this Circuit—have often held that plaintiffs pleading an unlawful seizure (or search) in violation of the Fourth

---

[6] Plaintiffs are not entitled to compensatory damages for the mere existence of the firearms registration statute in operation at the time of their arrests. *See Daskalea*, 710 F. Supp. 2d at 43 (enactment of unconstitutional statute did not entitle plaintiffs to compensatory damages).

Amendment "may not necessarily seek damages for subsequent prosecution, conviction, or incarceration premised on that [seizure] absent a claim for false arrest or malicious prosecution." *Corrigan v. Glover*, 254 F. Supp. 3d 184, 205 (D.D.C. 2017).[7] But that is precisely what plaintiffs here seek—damages from the abandoned prosecutions following their arrests. Such damages are not available under the Fourth Amendment, as *Corrigan* and other cases demonstrate. "Specifically, because the interest protected by the Fourth Amendment is a person's privacy interest, a plaintiff must show legal causation between the invasion of privacy and the actual injury suffered." *Hampton v. District of Columbia*, 764 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Townes v. New York*, 176 F.3d 138, 148 (2d Cir. 1999)). Plaintiffs cannot meet this causation test because the injury they pleaded (a violation of their Fourth Amendment right to be free of unreasonable seizures) does not fit the damages they seek (compensation for their subsequent, brief involvement in the criminal justice system). *Corrigan*, 254 F. Supp. 3d at 206 (citing *Townes*, 176 F.3d at 147). As the Court found in *Corrigan*:

> Victims of unreasonable … seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.

---

[7] Chief Judge Howell in *Corrigan* adopted the analyses of the Second and Third Circuits in *Townes v. New York*, 176 F.3d 138 (2d Cir. 1999) and *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000), respectively, both were extensively discussed by the District in its Motion to Dismiss.

*Id.* (quoting *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000)).[8]

Plaintiffs could have sought damages for their brief detentions under claims for false arrest or malicious prosecution. *Id.* at 207. "[P]laintiff[s], however, never brought a claim for false arrest or malicious prosecution, claiming only unlawful … seizure. Accordingly, [they] can be compensated only for those damages 'directly related to the invasion of their privacy." *Id.* at 207 (quoting *Townes*, 176 F.3d at 148).[9] Here, based on their claims, plaintiffs can only be compensated for any violations of the Fourth Amendment at the time of their arrests (and only for those damages "directly related to the invasion of their privacy"); however, because plaintiffs' arrests were supported by probable cause, there were no violations of the Fourth Amendment. *See also Silver v. District of Columbia MPD*, 939 F. Supp. 2d 20, 22–23 (D.D.C. 2013) (holding that Section 1983 plaintiff alleging unlawful seizure could not recover for "damages for the mental and emotional injuries he allegedly suffered as a result of his arrest and detention"); *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 60 (D.D.C. 2009) (victims of a Fourth Amendment violation "may recover damages directly related to the invasion of privacy, but not for injuries resulting from the discovery of incriminating evidence and consequent prosecution").

---

[8] "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Corrigan*, 254 F. Supp. 3d at 206 (quoting *Townes*, 176 F.3d at 148).

[9] Notwithstanding this, probable cause is a valid defense to a claim of false arrest, *Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996), or malicious prosecution, *Weisman v. Middleton*, 390 A.2d 996, 1002 (D.C. 1978).

The same causation principle should bar recovery under the Second Amendment, a proposition amply supported by the decisions in *Reyes v. City of Lynchburg*, 300 F.3d 449 (4th Cir. 2002), *Rolfes v. City of Oklahoma*, 1991 U.S. App. LEXIS 15496 (10th Cir. 991), and *Richardson v. City of South Euclid*, 904 F.2d 1050 (6th Cir. 1990). As explained in the District's Motion, these cases foreclose a separate cause of action under Section 1983 for an arrest and prosecution under a valid municipal law later held unconstitutional. *See* Def.'s Mot. at 21–22. These are the most closely analogous municipal liability cases, and plaintiffs do not appear to argue otherwise.[10]

Ultimately, regardless of how plaintiffs characterize their claims, the pleadings do not challenge their arrests or prosecutions under the District's pre-*Palmer* gun laws; plaintiffs challenge the constitutionality of those laws and allege their rights to bear arms, to equal protection, and to travel were infringed. If that is true, they can conceivably recover for injuries related to those rights. But they cannot recover for injuries that are unrelated, such as those resulting from their post-arrest legal process. Because this latter category of injuries is the only one for which plaintiffs seek redress under Claims 1 and 3, those claims should be dismissed for failure to state a claim.

---

[10] Plaintiffs rely on a series of decisions—*Fields v. City of Omaha*, 810 F.2d 830 (8th Cir. 1987), *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005), *Davis v. City of Camden*, 657 F. Supp. 396 (D. N.J. 1987), and *Grossman v. City of Portland*, 33 F.3d 1200 (1994)—for the unremarkable proposition that municipalities *can* be liable under Section 1983 for individual constitutional rights violations caused by municipal policy. The District addressed each of these cases in its prior briefing, *see* Def.'s Reply [29] at 6–9, and incorporates those arguments by reference here.

**D. Plaintiffs Fail to State a Violation of the Due Process Clause (Claim 7) Because They Have No Protected Interest In Property Seized As Contraband.**

Plaintiffs argue erroneously (and without support) that unregistered handguns are not contraband *per se*. Pls.' Opp'n at 31. Contraband *per se* is defined as objects "the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700 (1965). Possession of an unregistered firearm in the District—on the streets or even in one's own home—is a crime and has been so since at least 1975. *Cf.* D.C. Code § 6-1811 (1978 Supp.) (prohibiting possession of any firearm without valid registration certificate) and D.C. Code § 7-2502 (2017 Supp.) (same).

Plaintiffs do not dispute that their firearms were—without exception—unregistered in the District. The firearms were therefore contraband, in which plaintiffs had no cognizable property rights. *One 1958 Plymouth Sedan*, 380 U.S. at 699 (citing *United States v. Jeffers*, 342 U.S. 48, 53–54 (1951)); *Boggs v. Rubin*, 161 F.3d 37, 40 (D.C. Cir. 1998) ("Individuals have no property right in contraband materials and contraband materials may not be returned to them.") (affirming and quoting *Boggs v. Merletti*, 987 F. Supp. 2d 1, 10 (D.D.C. 1997)). Thus, plaintiffs' complaint that the dangerous article statute fails to provide "notice and a hearing" may be rejected out of hand. "Persons who bring guns into the District in a violation of the [Firearms Control Act of 1975] are not entitled to recover possession[.]" *Kuhn v. Cissel*, 409 A.2d 182, 187–88 (D.C. 1979).

Plaintiffs' extended disquision on the dangerous articles statute, D.C. Code § 22-4517, is confusing, unhelpful and incorrect. Plaintiffs state that "whether an owner has a license has no relevance under the dangerous articles statute." Pls.' Opp'n at 35. This is wrong. *See* D.C. Code § 22-4517(e) (person claiming a dangerous article is entitled to its return if he can prove "that the ownership is lawful"). If a person has registered with the District the firearm they possess, and has a license to carry it in public, the gun is not a "dangerous article" by definition. *Id.*, §§ 22-4517(a), (b) ("dangerous article" is a pistol that is "unlawfully owned, possessed, or carried").

Even if plaintiffs' unregistered firearms were not contraband, their due process arguments are still meritless. Plaintiffs contend that the District's argument for dismissal of Claim 7 should be rejected for the same reasons Judge Cooper did so with respect to vehicles in *Brown/Hoyte*. Pls.' Opp'n at 32. That contention is incorrect for numerous reasons. *First*, as discussed more fully below, plaintiffs ignore the obvious differences between vehicles and other forms of property. *Second*, "forfeiture" is a term of art, and is not applicable here as to plaintiffs' guns and ammunition, which were contraband.[11] Plaintiffs do their best to ignore this or muddy the waters, but none of them had any property "forfeited" at all, vehicles or otherwise.[12]

---

[11] *Cf. Conkey v. Reno*, 885 F. Supp. 1389, 1398 (D. Nev. 1995) ("[P]er se contraband may be summarily forfeited without any due process protections[.]") (citing *United States v. Farrell*, 606 F.2d 1341, 1344–46 (D.C. Cir. 1979)).

[12] "Forfeiture" as used by plaintiffs here (and in *Brown/Hoyte*, *Jenkins*, and *Melton*), means the civil process by which the District may obtain ownership of certain property (typically vehicles and currency) associated with criminal activity. D.C. Code § 48-905.02. To reiterate, no plaintiff here had any property forfeitured.

To determine whether the procedures used by the government to deprive a person of a property interest comply with due process, courts use the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires courts to weigh: (1) "the nature and weight of the private interest that will be affected" by the government action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedure would entail." *Id.* at 335.

As Judge Cooper held, due process may require prompt hearings after the District seizes vehicles, *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 59 (D.D.C. 2015), because "[a]n individual has a strong interest in his car[,]" which may be a person's only means to earn a living, attend school, or visit family. *Id.* at 66. But the seizure of *cash* does *not* require such hearings, *id.* at 67, because a person's interest in seized cash is less than that in a seized vehicle, as cash is fungible and easier to replace. *Id.* (citing *City of L.A.*, 538 U.S. at 717). Moreover, the risk of erroneous deprivation was lessened by the then-existing statutory presumption that money found near forfeitable drugs was also subject to forfeiture. *Id.* (citing D.C. Code § 48-905.02(a)(7)(B) (2012)). Finally, Judge Cooper found that the government's interest in retaining seized currency is greater than in vehicles because there are fewer methods to prevent the dissipation of cash (by simply spending it) prior to the conclusion of forfeiture proceedings. *Id.*

Plaintiffs here have even *less* of an interest in unregistered firearms than they do in cash. And as compared to vehicles, guns are less expensive and easier to replace, the risk of erroneous deprivation is lessened by the presumption in District law that unregistered, illegally carried weapons are contraband, D.C. Code § 22-4517, and— not least—the government's interest in retaining illegal weapons is substantial because of the considerable safety threat to the public and law enforcement officers posed by unregistered (and untraceable) firearms. Thus, under *Mathews* balancing, the District's seizure and retention of plaintiffs' firearms and ammunition did not violate due process and plaintiffs' Claim 7 should be dismissed. *Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 (D.D.C. 2013) (noting that because "adequate post-deprivation state remedies are available, no cognizable claim for procedural due process can be stated.") (citation omitted).

## IV.   Plaintiffs' Request for Sealing or Expungement of Their Criminal Records Should be Dismissed.

Plaintiffs' two-sentence response to the District's arguments regarding the sealing or expungement of criminal records essentially concedes them. Plaintiffs make no effort to meet the difficult burden established by case law to obtain the sealing of criminal records in local courts for an arrest that was not ultimately prosecuted—a showing by "clear and convincing evidence" either that the crime for which she was arrested did not occur, or that she did not commit it. *Sepulveda-Hambor v. District of Columbia*, 885 A.2d 303, 307 (D.C. 2005) (citing *District of Columbia v. Hudson*, 404 A.2d 175, 177–82 (D.C. 1979) (*en banc*)). Because plaintiffs

cannot dispute that they each carried unregistered firearms into the District, they cannot qualify for relief under the governing test.

## CONCLUSION

For the foregoing reasons and those presented in the District's Motion, the Court should grant the motion and dismiss the Second Amended Complaint, with prejudice.

Dated:  February 4, 2019.                    Respectfully submitted,

                                             KARL A. RACINE
                                             Attorney General for the District of Columbia

                                             TONI MICHELLE JACKSON
                                             Deputy Attorney General
                                             Public Interest Division

                                             /s/ Fernando Amarillas
                                             FERNANDO AMARILLAS [974858]
                                             Chief, Equity Section

                                             /s/ Andrew J. Saindon
                                             ANDREW J. SAINDON [456987]
                                             Senior Assistant Attorney General
                                             MATTHEW R. BLECHER [1012957]
                                             Assistant Attorney General
                                             441 Fourth Street, N.W., Suite 600S
                                             Washington, D.C. 20001
                                             Phone: (202) 442-9774
                                             Email: matthew.blecher@dc.gov

                                             **Counsel for Defendant**