UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, et al., Plaintiffs, v. GOVERNMENT OF THE DISTRICT OF COLUMBIA, Defendant. | Civil Action No.: 15-737 (RCL) |

## PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs Maggie Smith, Gerard "Rob" Cassagnol, Frederick "Cornelius" Rouse, and Delontay Davis hereby respectfully move this Court to reconsider parts of its Order [60] granting in part and denying in part the District's Motion [53] to Dismiss Plaintiff's Second Amended Complaint [50] ("2d Am. Comp.") as to:

**Claims 1 and 3** to the extent that this Court held that Plaintiffs do not state a cognizable claim with respect to their arrest and detentions under these claims, <u>Smith v. District of Columbia</u>, 2019 U.S. Dist. LEXIS 82922, *13, *21-22 (D.D.C.  2019);

**Claim 2** with respect to whether Plaintiffs stated a claim with respect to liability and damages for their arrests and detentions, <u>Smith</u>, 2019 U.S. Dist. LEXIS 82922, *26 *et seq.*; and

**Claim 4** with respect to liability and damages as to Ms. Smith, Mr. Cassagnol, and Mr. Rouse because although the District moved to dismiss the part of Claim 4 relating to the seizure of vehicles or as brought by plaintiff Mr. Davis on claim splitting principles and

statute of limitations grounds, the District never moved to dismiss the other parts of Claim 4 brought by the other Plaintiffs (Ms. Smith, Mr. Cassagnol, Mr. Rouse) as to guns and ammunition.

Plaintiffs sought consent from the District pursuant to LCvR 7(m) for the relief sought in this motion but the District does not consent.

## I.   Background and Plaintiffs' allegations in the Second Amended Complaint.

Each of Ms. Smith, Mr. Cassagnol, Mr. Rouse, and Mr. Davis were arrested in the District and each spent one or two nights in jail awaiting first appearance in Superior Court simply for engaging in the constitutionally protected conduct of carrying a pistol outside the home, and each was prosecuted for a period of time. The District also seized their guns and ammunition and in the case of Mr. Davis his car, and the District kept the property a long time or still has not given it back. Ms. Smith is a nurse and her arrest put her nursing license in jeopardy. 2d Am. Compl. ¶¶ 29, 36. Mr. Rouse, a defense agency professional, suffered damage to his security clearance because of his arrest. *Id.* at 39. Mr. Cassagnol lost his job because of his arrest. *Id.* at 40. Mr. Davis lost his car and had to drop out of school. *Id.* at 41. Each of them probably would have lost the right to vote had they been convicted of CPWL or CP (carrying a pistol without a license), a felony.

### A.   District's enactment and enforcement of its unconstitutional gun laws.

In the 1970s the D.C. Council enacted a set of criminal laws that effected a total ban on the constitutionally protected conduct of keeping and bearing arms outside the home. 2d Am. Compl., ¶¶ 10-11, 13. With certain amendments the District maintained its total ban on ownership of handguns for use outside the home until October 2014 when it amended the laws in response to a decision of this this Court in July 2014 which struck down the District's gun laws as a "total ban" on the "core component" of the Second Amendment right to keep and bear arms outside the home. Palmer v. District of Columbia, 59 F. Supp. 3d 173, 183 (D.D.C. 2014); *see also* Wrenn v.

District of Columbia, 864 F.3d 650, 657, 664-65 (D.C. Cir. 2017)(under Heller I, complete bans of 2d Amendment rights are always invalid without applying tiers of scrutiny).

The statutes and regulations enacted by the D.C. Council criminalized people's Second Amendment rights to keep and bear arms outside the home. Three statutes formed the backbone of the District's unconstitutional gun control regime: one felony statute, D.C. Code § 22-4504(a), carrying a pistol without a license ("CPWL"), which in 2012 was amended to simply carrying a pistol ("CP"), and two misdemeanor gun statutes — possessing unregistered firearms, D.C. Code § 7-2502.01 ("UF"), and possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA"). The District refused to issue licenses or register guns for use outside the home (except for the place of business for residents) so people could not comply with the licensing and registration requirements, so the law effectively imposed a "total ban" on keeping and bearing arms outside the home. 2d Am. Compl. ¶ 52. The laws provided criminal penalties for violations of the laws and they also provided for confiscation and forfeiture of guns and ammunitions as contraband and it provided for civil forfeiture of vehicles used to transport guns.

The District's laws also provided for seize of guns, ammunition and vehicles for use for investigation and as evidence in arrests and prosecutions. Other important statutes in the District's unconstitutional gun control regime include D.C. Code § 22-4517(b)(making a pistol carried outside the home or business a nuisance subject to seizure and destruction), and D.C. Code § 7-2507.06a(b) (making vehicles used to carry any firearm subject to forfeiture). 2d Am. Compl. ¶ 53. The District conceded these laws violated the Second Amendment.

The District enforced its unconstitutional gun regulation regime by directing its police officers to arrest people for violating the unconstitutional laws. 2d Am. Compl. at ¶ 37. Each Plaintiff was arrested by the MPD and detained at least overnight for engaging in constitutionally protected conduct at the District's direction pursuant to statutes enacted by the D.C. Council

which criminalized their Second Amendment rights to keep and bear arms outside the home. The District detained Smith for one night, Cpl. Rouse and Cassagnol for two nights each, and Davis for four nights, although two nights of Mr. Davises detention were ordered by a Superior Court judicial officer pursuant to a five day hold under  D.C. Code § 23–1322. "'[T]he criminal laws challenged here caused plaintiffs to suffer "humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and/or detained.' 2d Am. Compl. ¶ 252."  Smith, 2019 U.S. Dist. LEXIS 82922, *21 (¶¶ 252, Claim 1; 262, Claim 2; 270, Claim 3). The District's unconstitutional gun laws also caused them the other injuries described above.

The District also directed its officers to seize guns and ammunitions for use in investigations and prosecutions, and it directed its officers to seize vehicles for use in investigations and for civil forfeiture. A separate statute authorized the MPD to seize guns for forfeiture if the owners could not produce registration certificates, and in a classic Catch 22 the District prevented gun owners from being able to produce registration certificates because the District would not issue registration certificates for guns for use outside the home and would not issue registration certificates to non-residents for any purpose. The District either kept the property long after it was needed or never gave it back. The District seized Plaintiffs guns and ammunition and it seized Mr. Davis's car as evidence and for forfeiture but gave it back.

### B.  Plaintiffs' claims.

Plaintiffs' claims fall into two categories: claims seeking basically personal damages (Claim 1, 2, and 3) and claims seeking property damages (Claims 4, 5, 6, 7, 8, 9, and 10).

Plaintiffs brought all their claims against the District under § 1983. Plaintiffs did not bring any claims against any individual arresting officers. Plaintiffs also sought other relief such as

declaratory relief and expungement of their arrest records.[1]

Plaintiffs pled three Constitutional claims under § 1983 in the Second Amended Complaint [50] seeking personal damages including damages caused by their arrests and detentions. Claim 1 (Second Amendment), ¶¶ 245-253; Claim 2 (Fourth Amendment) ¶¶ 254-263; and Claim 3 (Fifth Amendment) 264-271. Earlier versions of the complaint had sought damages caused by their prosecutions but Plaintiffs dropped that component from the claims in the Second Amended Complaint. Each of the three Constitutional claims seeking personal damages is based on the same conduct (arrest and detention for engaging constitutionally protected conduct) but each is based on a different Constitutional "command" because the same conduct "affect[ed] more than a single [Constitutional] right." <u>Soldal v. Cook County</u>, 506 U.S. 56, 70 (1992).

Likewise, the Constitutional claims seeking property damages are based on the same conduct but each is based on a different Constitutional "command."

## II.  Plaintiffs meet the standard for reconsideration of interlocutory orders.

Plaintiffs meet the standard for reconsideration for each of the claims which they ask to Court to reconsider for at least one reason.

### A.  Standard for motions for reconsideration of interlocutory orders.

Rule 54(b) governs the Court's consideration of his motion for reconsideration because of the interlocutory nature of the Court's May 16, 2019 Order [60]. Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment

---

[1] Plaintiffs seek damages (compensatory, consequential, and nominal), declaratory relief, and injunctive relief sealing their arrest and prosecution records, ordering their property's return, and declaring their arrests legal nullities. Plaintiffs further seek attorney's fees and costs under 42 U.S.C. § 1988. <u>Smith v. District of Columbia</u>, 2019 U.S. Dist. LEXIS 82922, *8 (D.D.C. 2019).

adjudicating all the claims . . . .") *discussed in* <u>Hamilton v. Geithner</u>, 616 F. Supp. 2d 49, 54 n.4 (D.D.C. 2009).

The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). A motion pursuant to Rule 59(e), to alter or amend a judgment after its entry, is not routinely granted. The primary reasons for amending an interlocutory ruling pursuant to Rule 59(e) are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation omitted).

The Court has "broad discretion to hear a motion for reconsideration brought under Rule 54(b)" and should grant a motion for reconsideration "as justice requires." <u>Moses v. Dodaro</u>, 840 F. Supp. 2d 281, 286 (D.D.C. 2012).

"As justice requires' indicates concrete considerations of whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court.'" <u>Cobell v. Norton</u>, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted). These considerations leave a great deal of room for the Court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant circumstances." <u>Estate of Botvin v. Islamic Republic of Iran</u>, 772 F. Supp. 2d 218, 223 (D.D.C. 2011).

This Circuit takes a liberal policy towards a District Court's exercise of its discretionary powers to correct errors in interlocutory orders under Rule 54(b). <u>Filebark v. U.S. Dept. of Transp.</u>, 555 F.3d 1009, 1013 (D.C. Cir. 2009). Even if the appropriate legal standard does not

indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." Hamilton v. Geithner, 616 F. Supp. 2d at 54. But, regardless of the presence or absence of these factors interlocutory orders "may always be reconsidered prior to final judgment" and are not "subject to the law of the case doctrine." Filebark, 555 F.3d at 1013.

A Court may even *sua sponte* correct errors in a ruling on a motion to dismiss where the initial decision was "clearly erroneous and would work a manifest injustice" especially if due to confusion stemming from the parties' lack of clarity regarding their arguments. Filebark v. United States DOT, 542 F. Supp. 2d 1, 5 n.10 (D.D.C. 2008).

**B. Plaintiffs meet the standard for reconsideration of interlocutory orders.**

Plaintiffs meet the standard for reconsideration of each of Claims 1, 2, 3, and 4 for the following reasons.

**Claims 1 and 3.**

Plaintiffs established standing. The Court's opinion seems to hold that Plaintiffs established standing on Claims 1 and 3. Smith, 2019 U.S. Dist. LEXIS 82922. But, some language in the opinion highlighted below might suggest otherwise. Plaintiffs ask the Court to clarify the extent of the standing ruling as to Claims 1 and 3 or, alternatively, to reconsider the ruling and hold that Plaintiffs established standing on Claims 1 and 3.

This Court held on the merits that "Plaintiffs' Second and Fifth Amendment claims are cognizable under § 1983 since plaintiffs allege §§ 7-2502.01, 7-2506.01, and 22-4504 afflict substantive rights **beyond their arrests and prosecutions.**" Smith, 2019 U.S. Dist. LEXIS 82922, *32 (emphasis added).

The Court should grant Plaintiffs' motion to reconsider its ruling on Plaintiffs' Claims 1 and 3 to the extent that this Court held that Claims 1 and 3 do not state cognizable claims to the

extent they are based on their arrests and detentions incident to arrest because the District had probable cause under the Fourth Amendment. This ruling is "clearly erroneous" under Supreme Court precedent and Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. 1994), both of which which Plaintiffs argued in their Opposition. *See* Zeigler v. Potter, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)(court may grant a motion for reconsideration of an interlocutory order when movant demonstrates "a clear error in the first order."). As a general rule, the Supreme Court has rejected the view that the applicability of one constitutional amendment to a defendant's conduct pre-empts the guarantees of another. Soldal v. Cook County, 506 U.S. 56, 70 (1992).

Moreover, the Court's opinion in Nieves v. Bartlett, 139 S. Ct. 1715 (2019), decided May 28, 2019, after this Court issued its Memorandum Opinion, and especially Justice Gorsuch's separate opinion, Nieves v. Bartlett, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part), is a "significant change in the law ... since the submission of the issue to the Court.'" Cobell v. Norton, 224 F.R.D. at 272.

Judge Gorsuch's analysis in Nieves, 139 S. Ct. at 1730, especially when read together with Lozman, shows that in a Monell claim it is the municipality's unconstitutional policy that causes the plaintiff's constitutional injury, not the acts of the individual arresting officers, so the Court does not look for the "closest common law analogue" to an arrest without probable cause. *See* Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1951, 1954-55 (2018); Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). Justice Gorsuch's analysis in the light of Lozman shows that in a Monell claim like this one the presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for

damages as a statutory matter under § 1983. Nieves, 139 S. Ct. 1730 (Gorsuch, J., concurring in part and dissenting in part).[2]

Likewise, Judge Ketanji Jackson Brown of this Court issued an opinion after this Court's opinion holding that that Plaintiffs stated a claim for damages for both arrest and prosecutions under Section 1983 based on the First Amendment because the District enforced panhandling statute (which turned out to be unconstitutional under the First Amendment) against them by arresting and prosecuting them for violations of the statute. Brown v. Gov't of the Dist. of Columbia, 2019 U.S. Dist. LEXIS 97579 (D.D.C.  2019) decided June 11, 2019.

Moreover, the District did not make the argument in its Motion that the DeFillippo probable cause the individual arresting officers had from Plaintiffs' violation of the District's unconstitutional gun laws barred Plaintiffs' Claims 1 and 3 for damages flowing from their arrests and detentions in its Motion. Instead, it raised the argument for the first time in its Reply. So the procedural posture of this case on Claims 1 and 3 is like the procedural posture of Lovely-Coley where the District never had a chance to reply to plaintiff's surreply to its motion for summary judgment and the District's motion to reconsider served to remedy its lack of an opportunity to respond to the facts raised for the first time by plaintiff in her surreply. Lovely-Coley, 255 F. Supp.

---

[2] First Amendment retaliatory arrest cases like Lozman and Nieves present complicated causations issues which are not present like Plaintiffs' "straight line" deprivation case brought aganst a municipality. In a "straight line" Monell claim like this where Plaintiffs allege that the District's unconstitutional statute caused their constitutional violations all a plaintiff has to do is prove that the unconstitutional municipal policy was the moving force in causing the constitutional violations, and the plaintiff can prove that causation element simply by proving the existence of the unconstitutional municipal policy. Jauch v. Choctaw Cnty., 874 F.3d 425, 435 (5th Cir. 2017) citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997). However, Lozman and Nieves shed much light on Plaintiffs' argument that probable cause does not block a Monell claim based on another constitutional "command" because of the Court's discussion of the role of probable cause in First Amendment retaliatory arrest claims, especially Justice Gorsuch's separate opinion in Nieves.

3d 1, 10 (D.D.C. 2017). Here, Plaintiffs' motion to reconsider serves to remedy its lack of an opportunity to respond to the legal theory raised for the first time by the District in its Reply. *Id.*

 Finally, since the District's arguments in Paragraph III.B and Paragraph III.C apply only to prong 1 of the <u>Collins</u> framework, the District did not even argue that the District's policy of enacting and enforcing its unconstitutional gun laws by arresting and detaining Plaintiffs was not the moving force of the predicate constitutional violation of Plaintiffs' Second Amendment rights in Plaintiffs' Claim 1 and Plaintiffs' Fifth Amendment rights. This is Plaintiffs' first opportunity to make this argument. So the arguments should not affect the second prong of the <u>Monell</u> claim, as it relates to the District, but only the predicate constitutional violations. And their qualified immunity would not shield the District. <u>Owen v. Independence</u>, 445 U.S. 622, 651-52 (1980). Here, Plaintiffs' motion to reconsider serves to remedy its lack of an opportunity to respond to the legal theory raised for the first time by the District in its Reply. <u>Lovely-Coley</u>, 255 F. Supp. 3d 1, 10 (D.D.C. 2017).

## Claim 2

 Plaintiffs also ask this Court to reconsider Claim 2 with respect to liability and damages.

 The Court erred in dismissing Claim 2 because even though the individual arresting officers had probable cause to arrest based on the Plaintiffs violations of the District's unconstitutional gun laws, the arrests and detentions still violated their "constitutional rights," and the officers' qualified immunity under <u>DeFillippo</u> does not shield the District, and Plaintiffs' Claim 2 is a <u>Monell</u> claim against the District.

 Moreover, the District never addressed the "municipal liability" prong of Claim 2 (prong 2 under the <u>Collins</u> framework) so the motion to dismiss should have been denied.

These rulings were clearly erroneous. Zeigler v. Potter, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)(court may grant a motion for reconsideration of an interlocutory order when movant demonstrates "a clear error in the first order.").

Moreover, the Court *sua sponte* raised arguments based on Gerstein and Riverside which Plaintiffs did not have an opportunity to address; nor did Plaintiffs have an opportunity to argue that since the District challenged prong 1 (predicate constitutional violations) but not prong 2 of Plaintiffs' Claim the Gerstein and Riverside arguments should apply only to the conduct of the individual arresting officers where qualified immunity would shield the officers but not the District. Owen v. Independence, 445 U.S. 622, 651-52 (1980). Plaintiffs' motion to reconsider serves to remedy its lack of an opportunity to respond to the legal theory raised for the first time by the District in its Reply. Lovely-Coley, 255 F. Supp. 3d 1, 10 (D.D.C. 2017).

**Claim 4**

The District never made any challenge whatsoever to Claim 4 as to Plaintiffs Ms. Smith, Mr. Cassagnol, and Mr. Rouse and their guns and ammunition. Nor did the District challenge Ms. Smith, Mr. Cassagnol, and Mr. Rouse's standing to bring Claim 4 under Fed. R. Civ. P. 12(b)(1) apart from Mr. Davis's standing. District's Motion, pp. 5-9. This Court did not make any rulings on Claim 4 as to their guns and ammunition.

**III. Plaintiffs' Claims 1 and 3 state § 1983 Monell claims against the District for violations of their Second and Fifth Amendment rights caused by the District's policy of enacting and enforcing its unconstitutional gun laws by arresting and detaining them regardless of whether Plaintiffs' arrests and detentions passed independent constitutional muster under the Fourth Amendment.**

Plaintiffs' Claims 1 and 3 state § 1983 Monell claims against the District for violations of their Second and Fifth Amendment rights caused by the District's policy of enacting and enforcing

its unconstitutional gun laws by arresting and detaining them regardless of whether Plaintiffs' arrests and detentions passed independent constitutional muster under the Fourth Amendment. Even assuming *arguendo* Plaintiffs did not state a Fourth Amendment claim in their Claim 2, just because a practice passes muster under the Fourth Amendment (arrest based on probable cause) does not mean that it also passes muster under every other Constitutional "command." *See e.g.*, Hedgepeth v. Washington Metropolitan Area Transit Auth., 386 F. 3d 1148, 1156 (D.C. Cir. 2004)( "simply because a practice passes muster under the Fourth Amendment (arrest based on probable cause does not mean that unequal treatment with respect to that [same] practice is consistent with equal protection.").

Plaintiffs pled plausible claims under both prongs of the Collins framework, (1) predicate constitutional violations, and (2) the District's policy was the moving force behind the violations. Therefore, the District's motion to dismiss Claims 1 and 3 should have been denied. Cohen v. Bd. of Trustees of the Univ. of the D.C., 819 F.3d 476, 481 (D.C. Cir. 2016).

But, instead, this Court held that Plaintiffs' Claims 1 and 3 were cognizable only to the extent they "afflict substantive rights beyond their arrests and prosecutions" because "plaintiffs' arrest and prosecutions passed independent constitutional muster" under the Fourth Amendment. Smith, 2019 U.S. Dist. LEXIS 82922, *32.

The Supreme Court has consistently rejected the proposition that the existence of probable cause bars recovery for the same conduct under another constitutional provision. Certain wrongs affect more than a single right and so they can implicate more than one of the Constitution's commands, and so each claim based on a different constitutional provision must be analyzed separately. Soldal v. Cook County, 506 U.S. at 70. Nor does the Court look for a "dominant" provision. *Id.* So, when the same conduct affects more than a single right, each claim based on each right is independently actionable without satisfying all the elements of the other claims based

on the other rights. *Id.; see e.g.,* <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996)(any traffic offense committed by a driver is a legitimate legal basis for a stop regardless of the actual motivations of the individual officers involved under the Fourth Amendment, but a claim for selective enforcement of the law may lie under the Equal Protection clause even though the same conduct passes muster under the Fourth Amendment); <u>Hedgepeth v. Washington Metropolitan Area Transit Auth.</u>, 386 F. 3d 1148, 1156 (D.C. Cir. 2004)( "simply because a practice passes muster under the Fourth Amendment (arrest based on probable cause does not mean that unequal treatment with respect to that practice is consistent with equal protection."). This rule is especially strong where, as here, plaintiffs sue a municipality for injuries flowing from an arrest caused by a municipal policy. <u>Lozman</u>, 138 S. Ct. at 1954; <u>Monell</u>, 436 U.S. at 690.

Therefore, since each claim must be analyzed separately on the basis of the Constitutional provision supporting it, the Court does not require a person stating a Constitutional claim under one provision to satisfy the combined elements of all applicable Constitutional provisions. Nor does the Court consider that the Fourth Amendment is a "dominant" provision that imposes its probable cause element on the elements of claims under every other constitutional provision.

As Justice Gorsuch phrased it this past term writing separately in <u>Nieves</u>, a First Amendment retaliatory arrest claim, the presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for damages as a statutory matter under §1983. <u>Nieves</u>, 139 S. Ct. 1730 (Gorsuch, J., concurring in part and dissenting in part) (writing separately in a First Amendment retaliatory arrest claim where the Supreme Court granted certiorari to decide whether probable cause alone always suffices to defeat a First Amendment retaliatory arrest claim against individual arresting officers under 42 U. S. C. §1983). The majority in <u>Nieves</u> did not accept the second prong of Justice Gorsuch's argument, a First Amendment retaliatory arrest claim against two individual arresting officers,

because of concerns about turning the Fourth Amendment probable cause analysis into a subjective test. Michigan v. DeFillippo, 443 U.S. 31, 36-38 (1979); Nieve, 139 S. Ct. at 1719 *citing* al-Kidd, 563 U. S. at 737. But the Court does not have those concerns in Monell claims such as Plaintiffs plead in their Second Amended Complaint because the focus is on the municipal policy not the arresting officers' probable cause. *See* Lozman, 138 S. Ct. at 1951, 1954-55(explaining how retaliation pursuant to a municipal policy separates a retaliatory arrest claim from the typical retaliatory arrest claim against an individual officer and simplifies complex issues of causation which inhere in First Amendment retaliatory arrest claims and obviates the need for probable cause as a device to sort and identify causes identified in Mt. Healthy City Bd. of Ed.); Monell, 436 U.S. at 690. So Justice Gorsuch's formulation works for a Monell claims such as Plaintiffs' Claims 1 and 3.

### A. Plaintiffs' established standing on Claims 1 and 3.

The District argued that Plaintiffs did not have standing to challenge Claims 1 and 3 or establish that their injuries under those claims were redressable because "the nexus between that challenged conduct and plaintiffs' asserted injuries is simply too attenuated to satisfy Article III" because of the conduct of prosecutors and Plaintiffs brought their injuries on themselves. Motion [53], pp. 16-19.[3] The District argued that "the gravamen of the injury asserted in these claims is the economic and other injuries that allegedly resulted from plaintiffs' arrests and prosecutions." Motion, p. 16.

Plaintiffs responded that they did have standing because they met the causation and redressability elements for arrests and detentions arguing, for example, that "the District's argument confuses the causation needed for standing with the causation needed to prevail on a §

---

[3] The District did not challenge Plaintiffs standing under Claim 2 based on the Fourth Amendment.

1983 claim on the merits," and their injuries were redressable with money damages and declaratory and injunctive relief. Opposition [56], pp. 13-16. The Court did not address Plaintiffs' arguments.

In the general introductory paragraphs on standing this Court held that Plaintiffs have standing to challenge §§ 7-2502.01 (UF), 7-2506.01 (UA), and 22-4504 (CPWL/ CP) because their "prosecutions" (with no mention of their arrests and detentions) under those statutes caused them to suffer redressable injuries. Smith, 2019 U.S. Dist. LEXIS 82922, *13., 21-22. In rejecting the District's contention that Plaintiffs failed to establish causation because they brought their injuries on themselves, the Court held, "Like the plaintiffs in Loving, Johnson, and Lawrence, the criminal laws challenged here caused plaintiffs to suffer '"humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from **being arrested and/or detained.' 2d Am. Compl. ¶ 252.**" Smith, 2019 U.S. Dist. LEXIS 82922, *21 (emphasis added).

Read together, it appears that this Court held that Plaintiffs established standing on their Claims 1 and 3 with respect to their arrests and detentions, and also their prosecutions as part of their detentions by the District.

The Court also seemed to rule that Plaintiffs established standing on Claims 1 and 3 on both their arrests and prosecutions because the Court rejected the District's argument that Plaintiffs' allegations did not establish predicate constitutional violations for Claims 1 and 3. Smith, 2019 U.S. Dist. LEXIS 82922, *32-35, n.12. See District's Motion [53], Paragraphs III.A (Fifth Amendment) and III.C (Second Amendment), pp. 24-32.

**B. Plaintiffs' Claims 1 and 3 stated claims because they satisfied both prongs of the Collins framework.**

   1. *The District challenged whether Claims 1 and 3 stated predicate constitutional violations but the District did not challenge Plaintiffs' allegations that the District's policy of enacting and enforcing its unconstitutional gun laws by arresting and detaining Plaintiffs was the*

*moving force of their Amendment and Fifth Amendment predicate constitutional violations.*

Plaintiffs alleged both that (1) the arrests and detentions were predicate constitutional violations under the Second and Fifth Amendments; and (2) the District's policy of enacting and enforcing its unconstitutional gun laws by arresting and detaining Plaintiffs was the moving force of their predicate constitutional violations under the Second and Fifth Amendments. ¶ 251, Claim 1; ¶ 269, Claim 3. *See* Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) *citing* Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992)(to establish a Monell claim plaintiff must establish both: (1) a predicate constitutional violation; and (2) the municipality's policy was the moving force behind the predicate constitutional violation).

This Court rejected the District's "causation" and other arguments in Paragraphs III.B and III. C of the District's motion to dismiss, Motion [53], pp. 24-32, so the Court held that Plaintiffs stated predicate constitutional violations for Claims 1 and 3 at least to some extent. *See* Smith, 2019 U.S. Dist. LEXIS 82922, *32. In fact, this Court held that "[P]laintiffs draw a straight line from an unconstitutional criminal law to their injuries. Smith, 2019 U.S. Dist. LEXIS 82922, *33.

The District's arguments in Paragraph III.B and Paragraph III.C apply only to prong 1 of the Collins framework, whether Plaintiffs stated predicate constitutional violations under the Second and Fifth Amendments.

But, the District did not even dispute Plaintiffs' allegation that the District's policy of enacting and enforcing its unconstitutional gun laws by arresting and detaining Plaintiffs was the moving force of the predicate constitutional violation of Plaintiffs' Second Amendment rights in Plaintiffs' Claim 1 (¶¶ 249-251) and Plaintiffs' Fifth Amendment rights in Claim 3 (¶¶ 267-269) by arresting and detaining them. Baker, 326 F.3d at 1306; District's Motion [53], pp. 24-28 (Paragraph III.B) and pp. 29-30 (Paragraph III.C). Therefore, since the District bears the burden

in a motion to dismiss, the District failed to carry its burden, and the District's motion to dismiss should be denied on this basis alone. Cohen v. Bd. of Trustees of the Univ. of the D.C., 819 F.3d 476, 481 (D.C. Cir. 2016).

2. *Plaintiffs addressed both prongs of the Collins framework on the merits in their Opposition.*

Addressing both prongs on the merits in their Opposition, Plaintiffs argued that the most closely analogous claims to their Second and Fifth Amendment claims were cases holding that plaintiffs who were arrested and detained pursuant to criminal statutes or ordinances that later turned out to be unconstitutional stated claims for damages for their arrests and detentions even if the individual arresting officers were entitled to qualified immunity. Plaintiffs' Opposition, pp. 26-30, *citing e.g.*, Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. 1994); Cooper v. Dillon, 403 F.3d 1208, 1221-22 (11th Cir. 2005); Fields v. City of Omaha, 810 F.2d 830 (8th Cir. 1987).

In particular Plaintiffs relied on Grossman v. City of Portland for the proposition that "the presence or absence of probable cause to arrest someone under an unconstitutional municipal statute or ordinance is irrelevant to a determination of the municipality's liability." Plaintiffs' Opposition, p. 29.[1]

In Grossman a protestor was arrested and detained for three hours under a municipal ordinance requiring all speakers, demonstrators, and entertainers to obtain a permit before making use of the public parks after he displayed a protest sign without a permit. 33 F.3d at 1201-02. He subsequently sued municipality and the primary arresting officer under 42 U.S.C. § 1983, claiming

---

[1] Even if this Court holds that this statement of the holding in Grossman is overbroad because the presence of probable cause defeats a claim based on the Fourth Amendment like Plaintiffs' Claim 2, defendant's motion to dismiss should still be denied as to Claims 1 and 3 because the defendant in a motion to dismiss bears the burden of establishing that the complaint fails to state a claim, Cohen v. Bd. of Trustees of the Univ. of the D.C., 819 F.3d 476, 481 (D.C. Cir. 2016), and the burden never shifts to plaintiff regardless of the sufficiency of the plaintiff's opposition where, as here, the complaint itself adequately states a plausible claim for relief. Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec., 892 F.3d 332, 344–345 (D.C. Cir. 2018).

that the arrest violated his First Amendment right to free speech. Grossman v. City of Portland, 33

F.3d 1200, 1202 (9th Cir. 1994). He sought damages from the municipality for "damages for

injuries allegedly suffered during the arrest" caused by the arrest. Grossman v. City of Portland, 33

F.3d 1200, 1203, n. 4 (9th Cir. 1994). The District Court judge dismissed his claim because, the

District Court reasoned, since the arresting officers had probable cause to arrest Dr. Grossman

under the unconstitutional ordinance, the arrest was "privileged" and both the arresting officer and

the municipality were protected from liability under <u>Heller</u>.[5] <u>Grossman</u>, 33 F.3d at 1203.

---

[5] <u>Heller</u> holds that when a person sues under § 1983 for an allegedly unconstitutional arrest the city cannot be held liable absent a constitutional violation by the arresting officer. <u>City of L.A. v. Heller</u>, 475 U.S. 796, 799 (1986). The specific constitutional violations alleged in <u>Heller</u> were that the arrest was made without probable cause and with unreasonable force. <u>Heller</u>, 475 U.S. at 797. Therefore, the jury's finding of probable cause and reasonable force obviated the plaintiff's constitutional claim, because it meant that the plaintiff had suffered no constitutional injury. <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1203 (9th Cir. 1994). In contrast, just because an individual arresting officer has qualified immunity for the arrest does not necessarily mean that the municipality is not liable. An individual arresting officer may still commit a constitutional violation even though the officer is entitled to liability. The D.C. Circuit's holding in <u>Lederman v. United States</u> illustrates this point. <u>Lederman v. United States</u>, 291 F.3d 36, 48 (2002). In <u>Lederman</u>, the D.C. Circuit held that Capitol Police who arrested a protestor for violating a District of Columbia regulation that turned out to be facially invalid under the 1st Amendment were entitled to qualified immunity under <u>DeFillippo</u>. <u>Lederman</u>, 291 F.3d at 48.

But, the court still held that as a "threshold" matter under <u>Saucier v. Katz</u> that the arrest violated the arrestee's "constitutional rights," without analyzing or deciding whether the arresting officers had "probable cause" to arrest based on the violation of the unconstitutional regulation.[5] Lederman (holding that Lederman's arrest under a facially invalid regulation violated his "constitutional rights" without specifying whether it meant his 1st Amendment right, his 1st Amendment right, or both). The court explained that even though "we cannot conclude that their arrest of Lederman violated his "clearly established" rights," nevertheless it held that as a "threshold matter" "Lederman's arrest violated his constitutional rights." Lederman v. United States, 291 F.3d 36, 48 (2002).

Although the D.C. Circuit did not address the District's liability in <u>Lederman</u> the Supreme Court has held that an officer's qualified immunity does not shield the municipality from liability. <u>Owen v. Independence</u>, 445 U.S. 622, 651-52 (1980). So, as here, a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom, provided an official's conduct stated a predicate constitutional violation. <u>Webb v. City of Maplewood</u>, 889 F.3d 483, 486 (8th Cir. 2018).

In explaining why the District Court erred in applying <u>Heller</u> to plaintiff's claim for damages for his arrest, the <u>Grossman</u> Court wrote:

> Dr. Grossman's constitutional claim does not stem from an absence of probable cause to arrest, but from the alleged unconstitutionality of the ordinance justifying the arrest. Therefore, a finding of probable cause under the ordinance in no way renders the arrest "privileged," or immunizes the defendants from liability. Instead, if the ordinance is unconstitutional, Dr. Grossman suffered constitutional injury despite the ordinance's applicability to his conduct.

<u>Grossman</u>, 33 F.3d at 1203-04. The District's argument to the extent that it argued that probable cause barred Plaintiffs' Claims 1 and 2 is the very same argument the Ninth Circuit rejected in <u>Grossman</u>.

C. **This Court's ruling.**

The ruling that Plaintiffs' that "Plaintiffs' Second and Fifth Amendment claims are cognizable under § 1983 since plaintiffs allege §§ 7-2502.01, 7-2506.01, and 22-4504 [only to the extent that they] afflict substantive rights **beyond their arrests and prosecutions**" [because the arrests and detentions pass Constitutional muster under the Fourth Amendment], Smith, 2019 U.S. Dist. LEXIS 82922, *32 (emphasis added), is clearly erroneous because it contradicts Supreme Court and Circuit precedent, and other Circuit authority.  Soldal, 506 U.S. at 70 ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn."); Hedgepeth v. Washington Metropolitan Area Transit Auth., 386 F. 3d 1148, 1156 (D.C. Cir. 2004)( "[S]imply because a practice passes muster under the Fourth Amendment (arrest based on probable cause) does not mean that unequal treatment with respect to that practice is consistent with Equal Protection."); Grossman, 33 F.3d at 1203-04 (officer's probable cause to arrest based on a violation of a municipal statute that violates the First Amendment does not bar claim against the municipality for arrest under the statute).

3. *The District never argued in their Motion that Plaintiffs' Claims 1 and 3 were not cognizable for injuries caused by their arrests and detentions because they passed independent muster under the 4th Amendment because the individual arresting officers had probable cause under DeFillippo.*

The District never argued in their Motion that Plaintiffs' Claims 1 and 3 were not cognizable for injuries caused by their arrests and detentions because they passed independent muster under the 4th Amendment because the individual arresting officers had probable cause under DeFillippo. In its Motion challenging Claims 1 and 3 the District argued only that the unconstitutionally of the District's pre-Palmer gun laws did not cause their injuries flowing from

their arrests and prosecutions, Motion [53], pp. 29-32, an argument this Court rejected. Smith, 2019 U.S. Dist. LEXIS 82922, *32-36.

The closest the District ever got to making the argument that Plaintiffs' Claims 1 and 3 were not cognizable for injuries caused by their arrests and detentions because they passed independent muster under the Fourth Amendment was the argument in its Reply that Plaintiffs could only have sought damages for their brief detentions under claims for false arrest or malicious prosecution, but the claims would have been barred because the individual arresting officers had probable cause. But as Justice Gorsuch's analysis in Nieves shows, this is not a causation argument like the argument the District raised in its Motion. It is a remedies argument. *See* Nieves, 139 S. Ct. 1730 (Gorsuch, J., concurring in part and dissenting in part)(in a retaliatory arrest claim against individual arresting officers distinguishing questions of whether the presence of probable cause for the underlying offense erases the First Amendment violation or forecloses a civil claim for damages as a statutory matter under §1983). It goes to whether as a statutory matter § 1983 construed against the backdrop of the common law foreclosed a damages claim for their arrests and detentions. *Id.*

Moreover, even if the District did raise the argument in its Reply, the District only raised it as to prong 1 of the Collins framework because the District only ever challenged the "predicate constitutional violation" prong of Plaintiffs' claims against the District. The District never challenged Plaintiffs allegations that the District's enactment and enforcement of its unconstitutional gun laws were a municipal policy that caused "[P]laintiffs to suffer "humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and/or detained." 2d Am. Compl. ¶ 252. Smith, 2019 U.S. Dist. LEXIS 82922, *21.

Therefore, since even if the arresting officers have <u>DeFillippo</u> probable cause and qualified immunity, the arrests still violated Plaintiffs' "constitutional rights," Lederman, <u>Lederman</u>, 291 F.3d at 47, and the officers' qualified immunity does not shield the District. <u>Owen</u>, 445 U.S. at 651-52.

**D. A finding of probable cause under the Fourth Amendment claim neither erases the violations of Plaintiffs' Second Amendment and Fifth Amendment rights nor forecloses a civil claim for damages against the District as a statutory matter under § 1983.**

The argument that Plaintiffs cannot recover damages for their arrests and detentions under their Claims 1 and 3 because the arrests and detentions passed independent constitutional muster under the Fourth Amendment falters for two reasons as Justice Gorsuch's analysis in his separate opinion this term in <u>Nieves</u> shows: One, the District confuses two separate issues: (1) whether a finding of <u>DeFillippo</u> probable cause under the Fourth Amendment claim erases or undoes the violations of Plaintiffs' Second Amendment and Fifth Amendment rights; and (2) whether the presence of probable cause forecloses a civil claim for damages as a statutory matter under § 1983. <u>Nieves</u>, 139 S. Ct. at 1730 (Gorsuch, J. concurring and dissenting); *Id.* at 1735 (Sotomayor, J. dissenting).[6] Two, Plaintiffs "allege[d] more governmental action than simply an arrest," – namely a municipal policy enacted by the D.C. Council which ordered the MPD to arrest people for keeping and bearing arms outside the home. <u>Lozman</u>, 138 S. Ct. at 1954; that is a municipal policy, <u>Monell</u>, 436 U.S. at 690, and it is the municipality's unconstitutional policy that causes the plaintiff's constitutional injury, not the acts of the individual arresting officers. Therefore, the

---

[6] Identifying an alleged constitutional violation is "only the threshold inquiry" in a damages action under 42 U.S.C. § 1983, which "creates a 'species of tort liability' " for violation of federal rights. <u>Manuel v. City of Joliet, Ill.</u>, 137 S. Ct. 911, 916, 920 (2017). The Court "must still determine the elements of, and rules associated with an action seeking damages" for the alleged violation. *Id.* (*citing* <u>Carey v. Piphus</u>, 435 U.S. 247, 257-58 (1978)). To do so, the Court looks to both its own precedent, <u>Lozman</u>, 138 S. Ct. at 1952, and the common law, "attend[ing] to the values and purposes of the constitutional right at issue," <u>Manuel</u>, 137. S. Ct. at 921.

"closest common law analogue" does not apply because Plaintiffs are not suing the individual arresting officers for Fourth Amendment false arrest; Rather, they are suing the District for its municipal policy of enacting and enforcing its unconstitutional gun laws which caused the arrests. Lozman, 138 S. Ct. at 1955 (Court holds that in a retaliatory arrest claim against the municipality plaintiff need not prove the absence of probable cause without inquiring into what the "closest common law analogue" for a claim against the individual arresting officer might be); Monell, 436 U.S. at 690; Houston v. Hill, 482 U.S. 451, 462 (1987)(plaintiff sued city for damages under § 1983 and other relief after he was arrested for violating a municipal ordinance that tuned out to be facially unconstitutional under the First Amendment).

The difference that obviates the rule that in a claim for damages under § 1983 against an individual arresting officer the closest common law analogue is the common law claim of false arrest which imports a probable cause element is the fact that Plaintiffs sue the District for injuries caused by its unconstitutional municipal and the acts of the individual arresting officers are really the acts of the District. If Plaintiffs were suing the individual arresting officers the District might be right –§ 1983 this Court might look to the closest common law analogue for a remedy, namely, false arrest with its probable cause element. But here, Plaintiffs sue the District.

1. *As a general rule, the Supreme Court has rejected the view that the applicability of one constitutional amendment to a defendant's conduct pre-empts the guarantees of another for the same conduct.*

As a general rule, the Supreme Court has rejected the view that the applicability of one constitutional amendment to a defendant's conduct pre-empts the guarantees of another. Soldal v. Cook County, 506 U.S. 56, 70 (1992). As the Court explained in Soldal, "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional

provision in turn." 506 U.S. at 70. For example, the Court held in <u>James Daniel Good Real Prop.</u> that the seizure of property for forfeiture implicates two "explicit textual source[s] of constitutional protection," the Fourth Amendment and the Fifth. <u>United States v. James Daniel Good Real</u> <u>Prop.</u>, 510 U.S. 43, 49-50 (U.S. 1993). Relying on <u>Soldal</u>, the Court held, "The proper question is not which Amendment controls but whether either Amendment is violated." <u>James Daniel Good</u> <u>Real Prop.</u>, 510 U.S. at 49-50. The government argued that it only had to comply with the Fourth Amendment when seizing forfeiture property. *Id.* The Court rejected the argument. *Id.* While conceding that the Fourth Amendment does place restrictions on seizures conducted for purposes of civil forfeiture, *citing* <u>One 1958 Plymouth Sedan v. Pennsylvania</u>, 380 U.S. 693, 696 (1965) (holding that the exclusionary rule applies to civil forfeiture), the Court held, "but it does not follow that the Fourth Amendment is the **sole constitutional provision** in question when the Government seizes property subject to forfeiture. <u>James Daniel Good Real Prop.</u>, 510 U.S. at 49-50 (emphasis added).

   Justice Gorsuch cites to many cases in <u>Nieves v. Bartlett</u> where the Supreme Court and the courts of appeal have held that probable cause does not bar a constitutional claim based on the same conduct brought under a different constitutional provision, including to an Equal Protection claim from this Circuit where the court observed: "[S]imply because a practice passes muster under the Fourth Amendment (arrest based on probable cause) does not mean that unequal treatment with respect to that practice is consistent with Equal Protection." <u>Hedgepeth v.</u> <u>Washington Metropolitan Area Transit Auth.</u>, 386 F. 3d 1148, 1156 (D.C. Cir. 2004) *cited in* <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part). To be sure, the plaintiff in <u>Hedgepeth</u> sought only declaratory and injunctive relief against the enforcement policies leading to plaintiff's arrest, and expungement of plaintiff's arrest record rather than compensatory damages. But Judge Gorsuch also cites to several other Circuit Court

cases where plaintiffs sought compensatory damages and the courts held that the existence of probable cause for a stop or arrest did not bar an Equal protection claim based on the same conduct. *See e.g.*, Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003)(existence of probable cause to stop and arrest plaintiff did not bar § 1983 claim for damages under Equal Protection claim based on the same conduct).

In their Opposition Plaintiffs cited to Grossman in which the 9th Circuit held that the individual arresting officers' probable cause to arrest plaintiff for violating a city ordinance that turned out to be unconstitutional under the First Amendment did not bar plaintiff's claim against the city for damages resulting from his arrest and three hour detention even though the individual arresting officers had qualified immunity. Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. 1994).

As Justice Gorsuch explained in Nieves, the presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for damages as a statutory matter under § 1983 based on the other constitutional violation. Nieves, 139 S. Ct. at 1730 (Gorsuch, J., concurring in part and dissenting in part).

The Supreme Court's decision from the 2018 term Lozman v. City of Riviera Beach also supports Plaintiffs' position that the presence of probable cause based on underlying criminal conduct does not bar a Second Amendment or Fifth Amendment claim based on the same conduct because Plaintiffs sue the municipality (not the individual arresting officer) and Plaintiffs "allege[] more governmental action than simply an arrest," that is, an unconstitutional municipal policy, that is, the District's unconstitutional gun laws. *See* Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1955 (2018). In Lozman, the plaintiff sued a municipality alleging that the City, through its legislatures, ordered his arrest pursuant to a plan to intimidate him in retaliation for his for criticizing public officials during an open city council meeting pursuant to an official retaliatory

policy thereby violating his First Amendment right to free speech. Lozman, 138 S. Ct. at 1954.
The Court distinguished Lozman's claim against the municipality from the typical retaliatory arrest
claim brought against an individual arresting officer because Lozman alleged more governmental
action than simply an arrest, namely, the municipal policy of intimidation, Id. at 1954. So, as a
result, the Court held that the focus was on proving the existence and enforcement of an official
policy motivated by retaliation rather than probable cause to support the individual arresting
officer's arrest. Once Lozman proved a municipal then the case was governed by the usual
retaliatory action cases which do not involve arrests. Therefore, the Supreme Court's policy of
insulating individual arresting officer's probable cause determinations from inquiries into the
individual arresting officer's subjective intent for making the arrest did not play a role in the case.
See Ashcroft v. al-Kidd, 563 U. S. 731, 737 (2011) (this Court has "almost uniformly rejected
invitations to probe [officers'] subjective intent,") cited in Nieves v. Bartlett, 139 S. Ct. 1715, 1719
(2019) and so the Court's concern with the probable cause element of the Fourth Amendment
dropped out of the case.

     A comparison of Lozman with its "companion" case from this term, Nieves v. Bartlett
illustrates, the principle that probable cause is important when the defendant is an individual
arresting officer but loses relevance when the defendant is a municipality and its policy caused the
constitutional violation. Compare Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1955 (Court
held that in a First Amendment retaliatory arrest claim where the retaliation was the result of a
municipal policy the existence of probable cause on an underlying criminal offense does not defeat
a retaliatory arrest claim) with Nieves v. Bartlett, 139 S. Ct. 1715 (2019)(the existence of probable
cause bars a First Amendment retaliatory arrest claim against individual arresting officers as a
matter of law except in a narrow category of arrests).

In fact, <u>Nieves</u> is the only Supreme Court (or courts of appeal decision for that matter) Plaintiffs have found where the Court found that the existence of probable cause barred a claim for damages under § 1983 for injuries from an arrest for the same conduct based on a different constitutional provision, and where in such a claim the Court held the "closest common law analogue" was common law false arrest.

Plaintiffs' Claims present an even stronger case than the <u>Lozman</u> plaintiff's First Amendment retaliatory arrest claim. The two distinct features of retaliatory arrest claims that led the Court in <u>Nieves</u> to make the absence of probable cause an "element[] of the tort" in retaliatory arrest claims against the individual arresting officers are the complexity of determining causation, and the "powerful evidentiary significance" of probable cause in that determination. But these features are not present in Plaintiffs' claims against the District. The causation element in Plaintiffs' case presents none of the complexities that inhere in a retaliatory arrest claim. As this Court held, "[P]laintiffs draw a straight line from an unconstitutional criminal law to their injuries." <u>Smith</u>, 2019 U.S. Dist. LEXIS 82922, *33, n. 13

In a "straight line" <u>Monell</u> claim like this where Plaintiffs allege that the District's unconstitutional statute caused their constitutional violations all a plaintiff has to do is prove that the unconstitutional municipal policy was the moving force in causing the constitutional violations, and the plaintiff can prove that causation element simply by proving the existence of the unconstitutional municipal policy. <u>Jauch v. Choctaw Cnty.</u>, 874 F.3d 425, 435 (5th Cir. 2017) *citing* <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 404 (1997). At the motion to dismiss stage an allegation that a municipal policy is itself unconstitutional establishes the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the

municipality itself. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004)(then Judge Sotomayor writing for the court).

### 2. The existence of probable cause does not forecloses a civil claim for damages against a municipality as a statutory matter under §1983 for violations of their Second and Fifth Amendment rights.

Both Justice Gorsuch and Justice Sotomayor point out in Nieves that the real issue in retaliatory arrest claims where both the Fourth Amendment and the First Amendment are involved is not whether an arrest motivated by protected speech may violate the First Amendment despite probable cause for the arrest; Justice Gorsuch cites to many cases where the Court has held that probable cause does not bar a constitutional claim based on the same conduct brought under a different constitutional provision. Nieves, 139 S. Ct. at 1730 (Gorsuch, J. concurring and dissenting). Rather, for Justice Gorsuch the real question is whether the presence of probable cause forecloses a civil claim for damages as a statutory matter under § 1983. Id. at 1730; Id. at 1735 (Sotomayor, J. dissenting).

Justice Gorsuch points out that § 1983 does not reference the presence or absence of probable cause as a precondition or defense to any suit. Instead, the statute imposes liability on anyone who, under color of state law, subjects another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution." Nieves, 139 S. Ct. at 1730. Moreover, unlike the majority, Justice Gorsuch finds nothing in the back drop of the common law which informs the Court's analysis of § 1983 which would forecloses a damages action even against an individual arresting officer under the First Amendment when probable cause is present, or which requires that common law false arrest is the only common law analogue for damages from arrest based on a constitutional provision other than the Fourth Amendment.

The majority's choice of common law false arrest as the "closest common law analogue" for a First Amendment retaliatory arrest claim against individual arresting officers was driven by the

Court's policy of insulating individual officers from inquiries into their subjective intent when making arrests, rather than by a rule that the Fourth Amendment is the only basis for recovery of damages from arrests and detentions, as is evidenced by the Court's ruling that in a segment of cases probable cause need not be an element of First Amendment retaliatory arrest claims against officers, and eight of the nine Justices held that probable cause did not categorically bar retaliatory arrest claims even against officers.

Similarly, the courts of appeal have uniformly held that plaintiffs can recover damages for an arrest for which the officer had probable cause so the "closest common law analogue rule" would not foreclose a damages claim under § 1983 in those cases either. *See e.g.*, Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003)(existence of probable cause to stop and arrest plaintiff did not bar § 1983 claim for damages under Equal Protection claim based on the same conduct).

Plaintiffs had analyzed the "closest common law analogue" as common law false imprisonment because it had no probable cause element. But Judge Gorsuch's analysis in Nieves, 139 S. Ct. at 1730, especially when read together with Lozman, shows that it is not; in a Monell claim it is the municipality's unconstitutional policy that causes the plaintiff's constitutional injury, not the acts of the individual arresting officers, so the Court does not look for the "closest common law analogue" to an arrest without probable cause. *See* Lozman, 138 S. Ct. at 1954.

Anyway, in a municipal policy case like this one, the plaintiff alleges "more governmental action than simply an arrest," Lozman, 138 S. Ct. at 1954, that is a municipal policy, Monell, 436 U.S. at 690, and it is the municipality's unconstitutional policy that causes the plaintiff's constitutional injury, not the acts of the individual arresting officers, so the Court does not look for the "closest common law analogue" to an arrest without probable cause. *See* Lozman, 138 S. Ct. at 1954. As the Grossman Court explained in a virtually identical case brought under the First

Amendment, the constitutional claim does not stem from an absence of probable cause to arrest, but from the alleged unconstitutionality of the ordinance justifying the arrest. Grossman, 33 F.3d at 1203-04. If the ordinance is unconstitutional, plaintiff suffered constitutional injury despite the ordinance's applicability to his conduct. Grossman, 33 F.3d at 1203-04 (officer's probable cause to arrest based on a violation of a municipal statute that violates the First Amendment does not bar claim against the municipality for arrest under the statute).

### IV. Plaintiffs state a claim under the Fourth Amendment against the District because the officers' qualified immunity does not shield the District from liability.

It violates Fourth Amendment for the District to order its officers to arrest people for violating its unconstitutional gun laws. The probable cause under DeFillippo exists as to the individual arresting officers but not the District, because giving the District the benefit of the rule does not serve the purpose of the rule, rather it defeats the rule that municipalities should know the law. Owen, 445 U.S. at 651-52.

The rationale for the DeFillippo probable cause rule is that probable cause is based on the facts known to the officer at the time of the arrest, officers do not know that statutes "still on the books" are unconstitutional except in "obvious" cases, and it furthers no social goal for officers to decide which laws merit enforcement. DeFillippo, 443 U.S. at 37-39. But like all municipalities the District is charged with knowing whether its laws are unconstitutional. Owen, 445 U.S. at 651-52; Harper, 509 U.S. at 94-95; and in accordance with Section 1983 principles it should take steps to protect people it governs from unconstitutional laws, and it should err on the side of caution in enforcing laws that may be unconstitutional. Owen, 445 U.S. at 651-52.

Moreover, an officer's qualified immunity does not shield the municipality. Owen, 445 U.S. at 651-52.

To be sure – a police officer who arrests someone for violating a statute on the books that later turns out to be unconstitutional still makes a valid arrest for purposes of arrests and searches, and the officer is entitled to qualified immunity from suit. But still, the arrest violates the arrestee's "constitutional rights," Lederman, 291 F.3d at 47, and the arrest only happens because the District ordered it. So the District – which is charged with knowing the law, and actually enacted the unconstitutional law, and ordered the officer to make the arrest - cannot shield itself from liability for constitutional violations it caused using a doctrine fashioned for officers.

What's more, in its motion, the District directed all its argument towards arguing that the arresting officers' conduct was shielded from liability and blithely ignored the allegations against itself. In their Monell claim the Plaintiffs alleged more governmental conduct than an arrest – they argued that the District's unconstitutional statute gun laws were the moving force behind their arrests and detentions. Lozman, 138 S. Ct. at 1954; Monell, 436 U.S. at 690. The District effectively conceded the allegations by failing to argue against them. Although a plaintiff cannot lose a motion to dismiss by not filing an opposition, a defendant can surely lose a motion to dismiss by failing to advance any arguments.

**A. Plaintiffs stated predicate constitutional violations under Collins because the arrests still violated Plaintiffs' "constitutional rights" even though the individual arresting officers had qualified immunity under DeFillippo.**

The District contended that Plaintiffs failed to state predicate constitutional violations under Collins because under DeFillippo the arresting officers had probable cause to make the arrests based on the Plaintiffs' violations of the District's unconstitutional gun laws. But, even though the individual arresting officers had DeFillippo probable cause, the arrests still violated Plaintiffs' "constitutional rights" under Lederman, 291 F.3d at 47.

Moreover, the Court's analysis in DeFillippo and Hein demonstrates that Heien has no application to this case. Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 539 (2014). In

Heien the Court held that traffic stop based the seizing officer's mistake of law regarding the construction of an ambiguous state brake-light law (officer stopped a vehicle because one of its two brake lights was out, but a court later determined that a single working brake light was all the law required) was still supported by reasonable suspicion because the officer's mistake was reasonable, and so there was no violation of the Fourth Amendment. Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 539 (2014). But in this case: (1) the issue is whether the officers had probable cause to make an arrest, and Heien applies only to reasonable suspicion to make a traffic stop; and (2) the statute here is not "ambiguous;" the District's unconstitutional gun statutes were a "total ban" on the "core component" of the Second Amendment right to keep and bear arms outside the home. Palmer v. District of Columbia, 59 F. Supp. 3d 173, 183 (D.D.C. 2014); see also Wrenn v. District of Columbia, 864 F.3d 650, 657, 664-65 (D.C. Cir. 2017)(under Heller I, complete bans of Second Amendment rights are always invalid without applying tiers of scrutiny). Hein applies only if the statute is ambiguous. Scott v. City of Albuquerque, 711 F. App'x 871, 877 n.6 (10th Cir. 2017)(although the decision is unreported the court's reasoning is persuasive); Northrup v. City of Toledo Police Dep't, 785 F.3d 1128, 1132 (6th Cir. 2015) (it is surely appropriate to expect the same of law enforcement officers—at least with regard to unambiguous statutes); (United States v. Stanbridge, 813 F.3d 1032, 1037 (7th Cir. 2016)( "Heien does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an unambiguous statute.").

What's more, the District never argued that the District's unconstitutional gun laws were "ambiguous." But even if it did, Plaintiffs allegations, which must be accepted as true at this stage, Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (2009), do not state or even suggest that any arresting officers were ever acting under a mistake of law. See Freeman v. City of Tampa, 2015 U.S. Dist. LEXIS 164281, at *10-11 (M.D. Fla. Dec. 8, 2015)(at motion to dismiss stage defendant

officers not entitled to qualified immunity in a stop based on reasonable suspicion on the ground that defendant officers were acting under a mistake of law because they did not know that openly carrying a handgun while fishing was exempted conduct because allegations in complaint did not establish that statute was ambiguous).

Finally, the District's unconstitutional gun laws fall with the zone <u>Heien</u> carved out for decisions looking to the reasonableness of an officer's legal error in the course of considering the appropriate remedy for a constitutional violation, instead of whether there was a violation at all. <u>Heien v. North Carolina</u>, 574 U.S. 54, 135 S. Ct. 530, 539 (2014). The individual arresting officers have probable cause in the first place only because the statute turned out to be unconstitutional and as a matter of policy the Supreme Court in <u>DeFillippo</u> established as a "bright line" rule that polices officers can rely on statutes still "on the books" until a court declares them unconstitutional unless the laws are obviously unconstitutional. <u>DeFillippo</u>, 443 U.S. at 37-38. This Court has held that the District's gun laws were unconstitutional. <u>Palmer v. District of Columbia</u>, 59 F. Supp. 3d 173, 183 (D.D.C. 2014); *see also* <u>Wrenn v. District of Columbia</u>, 864 F.3d 650, 657, 664-65 (D.C. Cir. 2017)(under <u>Heller I</u>, complete bans of Second Amendment rights are always invalid without applying tiers of scrutiny). An officer's mistaken view that the conduct at issue did not give rise to such a constitutional violation — no matter how reasonable — could not change that ultimate conclusion. *See* <u>Lederman</u>, 291 F.3d at 47.  (Lederman's arrest violated his constitutional rights). Any consideration of the reasonableness of an officer's mistake in this case is therefore limited to the separate matter of remedy. <u>Heien v. North Carolina</u>, 574 U.S. 54, 135 S. Ct. 530, 539 (2014).

Plaintiffs' allegation that the arresting officers lacked probable cause perhaps went beyond the holding of <u>Lederman</u>. It would have been clearer for Plaintiffs to argue that their arrests were supported by probable cause as to the officers, but that the District's policy still violated their Fourth Amendment rights because the arrests violated Plaintiffs' "constitutional rights" even

though the officers were entitled to qualified immunity. Lederman, 291 F.3d at 47. But at the end of the day, the defendant in a motion to dismiss bears the burden of establishing that the complaint fails to state a claim, Cohen v. Bd. of Trustees of the Univ. of the D.C., 819 F.3d 476, 481 (D.C. Cir. 2016); the burden never shifts to plaintiff regardless of the sufficiency of the plaintiff's opposition where, as here, the complaint itself adequately states a plausible claim for relief. Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec., 892 F.3d 332, 344–345 (D.C. Cir. 2018). And all inferences must be drawn in Plaintiffs' favor at the motion to dismiss stage. Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (2009). The District failed to carry its burden because the District: (1) never established that the arrests did not violate Plaintiffs' "constitutional rights;" (2) the District never established that even though the individual arresting officers had qualified immunity under DeFillippo, the officers' qualified immunity did not shield the District from § 1983 liability. Owen v. Independence, 445 U.S. 622, 651-52 (1980).

**B. Plaintiffs stated predicate constitutional violations under Collins as to the detentions because the detentions still violated Plaintiffs' "constitutional rights" even though the individual arresting officers had qualified immunity under DeFillippo.**

In its motion the District completely ignored Plaintiffs' allegations that the detentions incident to arrest also violated Plaintiffs' rights. 2d Am. Compl. ¶¶ 260-261. Instead, in its motion the District challenged only that the arrests and the prosecutions did not state constitutional violations. District's Motion [53], pp. 22-24. In their Opposition, Plaintiffs did not concede that the arrests were supported by probable cause. Opposition [56], p. 17. Instead, Plaintiffs argued that the detentions were actionable under Claim 2 even if the arrests were, assuming *arguendo,* supported by probable cause.

In fact, the arrests did not support the detentions for two reasons: (1) probable cause for the officers is a qualified immunity defense based on DeFillippo, and even though the individual arresting officers have qualified immunity under DeFillippo, the arrest still violated the Plaintiffs'

"constitutional rights," Lederman, 291 F.3d at 47; and (2) qualified immunity does not shield the District as a municipality. Owen v. Independence, 445 U.S. 622, 651-52 (1980).

Moreover, the premise of DeFillippo's holding that the arrest and the search incident to arrest were valid and the basis of the officer's probable cause was that the officer did not know that the statute was unconstitutional. DeFillippo, 443 U.S. at 38. This analysis does not apply to the District, because the Supreme Court has held that a municipality is charged with knowledge that unconstitutional statutes are unconstitutional even before a Court holds them unconstitutional, Owen, 445 U.S. at 651-52; Harper, 509 U.S. at 94-95; and in accordance with Section 1983 principles the municipality should err on the side of caution in enforcing laws. Owen, 445 U.S. at 651-52. So there is no policy concern with undermining the ardor of the officers to make arrests and to seize property on the basis of those arrests. DeFillippo; Nieves.

This Court also held that, given the ample probable cause that plaintiffs had violated §§ 7-2502.01, 7-2506.01, and 22-4504, the District reasonably detained them after their arrests, because Gerstein v. Pugh, 420 U.S. 103, 114 (1975) and Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991) allow a municipality to hold an arrestee 48 hours after arrest on the basis of the officer's arrest. But the detentions in this case were directed by the District, not the individual arresting officers. 2d Am. Compl. ¶ 16. The District provided no station house releases for persons arrested on gun charges. *Id.* Therefore, the detentions were the acts of the District, not the result of the officers' exercise of discretion. Holding the District liable for the detentions serves the Congressional policies behind § 1983 claims against a municipality of encouraging municipalities to know the law and to err on the side of caution in protecting the whom it governs from the likelihood of unintentional infringements on constitutional rights. Owen v. Independence, 445 U.S. 622, 651-52 (1980). It does not undermine the Court's rationale of encouraging officers to

enforce the law and make arrests based on the statute books without making their own judgment calls about whether a law is constitutional. DeFillippo, 443 U.S. 31, 38.

### C. The moving force of their constitutional violations was the District's enactment and enforcement of its unconstitutional gun control regime.

Plaintiffs "allege[d] more governmental action than simply an arrest," Lozman, 138 S. Ct. at 1954; that is a municipal policy, Monell, 436 U.S. at 690. Plaintiffs also plausibly alleged that the moving force of their constitutional violations was the District's enactment and enforcement of its unconstitutional gun control regime. 2d Am. Compl. ¶ 261. To be sure, the District's agents actually made the arrests and detained the arrestees, but the acts were still the "acts of the District because they were taken to a municipal policy, the District's unconstitutional gun laws. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)(when execution of a government's policy or custom inflicts the injury the government as an entity is responsible under § 1983).

To prevail in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the defendant bears the burden of showing that no claim has been stated. Cohen v. Bd. of Trustees of the Univ. of the D.C., 819 F.3d 476, 481 (D.C. Cir. 2016). The District did not contest Plaintiffs' allegations that the District's unconstitutional gun laws were the moving force of their arrests arrests and detentions so the District's motion fails on this 2d prong of the Collins framework.

In fact, this Court held that the District's policies were the but-for cause of Plaintiffs' arrests because the Court wrote, "these plaintiffs draw a straight line from an unconstitutional criminal law to their injuries." Smith v. District of Columbia, 2019 U.S. Dist. LEXIS 82922, *33, n. 13 (D.D.C. 2019). Therefore, the allegations in Claim 2 provide "a short and plain statement of the claim showing that [Plaintiffs are] entitled to relief," and thus give the District notice of the claim and the grounds upon which it rests, even though plaintiffs pled that the arrests and detentions violated the

Fourth Amendment because the arrests lacked probable cause. Johnson v. City of Shelby, 135 S.

Ct. 346, 346 (2014); Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (2009).

 To the extent that the Court intended the rulings on Gerstein and Riverside to apply to

prong 1 of the Collins analysis any qualified immunity the individual arresting officers had under

DeFillippo would not shield the District, and the District not the individual arresting officers were

the cause of the detentions because the officers had no discretion to offer citation release.

 To the extent that the Court intended the rulings on Gerstein and Riverside to apply to

prong 2 of the Collins analysis, the causation prong, the District waived any argument because the

District never challenged prong 2. The standard for motions to dismiss requires District Courts to

analyze the defendant's arguments in the light of whether the well pled allegations state a claim

regardless of the sufficiency of the plaintiff's argument's in opposition. Wash. All. of Tech.

Workers v. United States Dep't of Homeland Sec., 892 F.3d 332, 344–345 (D.C. Cir. 2018)

(opposition to motion under Fed. R. Civ. P. 12(b)(6) not required because "a party may rest on its

complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible

claim for relief"). But since the defendant's burden never shifts from defendant to plaintiff

regardless of the adequacy of the plaintiff's opposition, it follows that a defendant who does not

even challenge an element of a claim waives the challenge. *See Id.* since the District itself did not

waive the Riverside argument the District waived it.

 In Gerstein v. Pugh the Supreme Court held that the Fourth Amendment requires a

"prompt" judicial determination of probable cause as a prerequisite to extended restraint of liberty

following warrantless arrests, without specifying how long "prompt" meant. Gerstein v. Pugh, 420

U.S. 103, 114 (1975. In Riverside County the Court addressed the specific fact pattern of how

much time a jurisdiction has to provide probable cause determinations to detained arrestees where

a jurisdiction combines the probable cause determination with other pretrial proceedings, such as

arraignment or bail hearings. <u>Cnty. of Riverside v. McLaughlin</u>, 500 U.S. 44, 57, 111 S. Ct. 1661, 1670 (1991). The Court held that when the probable cause determination is combined with other pretrial proceedings, such as arraignment or bail hearings, a *presumption* of reasonableness arises if the *combined* proceeding is held within forty-eight hours of the warrantless arrest, and the presumption shields the municipality from "systemic" challenges to its procedures. *Id.*

The rationale of <u>DeFillippo</u> is providing objective "bright line" rules to police officers making arrests in situations which may be dangerous and where officers may have to make split-second decisions. A municipality and its officers are charged with knowledge of the law and whether the law is unconstitutional regardless of whether it was objectively reasonable for the individual officer to believe that the law was constitutional because it was on the books. Owen.

The Court expressly held in <u>Owen</u> that the purpose of municipal liability under § 1983 was to create an incentive for officials to minimize the likelihood of unintentional infringements on constitutional rights by preventing "systemic" injuries that result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith. <u>Owen v. Independence</u>, 445 U.S. 622, 651-52 (1980). Holding the District liable under the Fourth Amendment for the District's "infringements on [Plaintiffs'] constitutional rights" serves that rationale.

## V. Claim 4, based on the Second Amendment, seizure and detention of handguns and ammunition for any purpose for any length of time violated the 2d Amendment.

In Claim 4, based on the Second Amendment (¶¶ 272-276), Plaintiffs alleged that the District seized their hand guns and ammunition and (in the case of Mr. Davis) vehicles on the basis of its unconstitutional gun control regime and destroyed them, never gave them back, or kept them for amounts of time before giving them back, which violated the Second Amendment. Plaintiffs alleged that the seizure and detention of handguns and ammunition and vehicles on the basis of an unconstitutional gun control regime for any purpose for any length of time violated the 2d Amendment. Plaintiffs stated a claim under Claim 4 for guns and ammunition even if vehicles have dropped out of the case.

The District challenged Mr. Davis's standing to bring Claim 4 as to vehicles under Fed. R. Civ. P. 12(b)(1). District's Motion, pp. 5-9. This Court did rule that Mr. Davis had standing to challenge the Districts seizure of his vehicle for a forfeiture determination, Smith, 2019 U.S. Dist. LEXIS 82922, *14-15. But the District did not challenge the other Plaintiffs' (Ms. Smith, Mr. Cassagnol, Mr. Rouse) standing to bring Claim 4 as to their guns and ammunition.

The District moved to dismiss only the part of Claim 4 relating to the seizure of vehicles or as brought by plaintiff Mr. Davis on claim splitting principles, Motion [53], p. 9, and statute of limitations grounds, Id. at 14, .

This Court denied the District's claim-splitting arguments (directed only at Mr. Davis and only with respect to his property claims). Smith, 2019 U.S. Dist. LEXIS 82922, *15 to *20. This Court also held that Mr. Davis' vehicle claims were time-barred because the claim for vehicles did not relate back. Id. at *26.

But, the District never made any challenge whatsoever to Claim 4 as to guns and ammunition brought by the other Plaintiffs, Ms. Smith, Mr. Cassagnol, and Mr. Rouse. Nor did the Court rule on that part of Claim 4.

Therefore, this Court should rule that Ms. Smith, Mr. Cassagnol, and Mr. Rouse's Claim 4 as to their guns and ammunition survives the District's motion to dismiss because they stated plausible claim under the Second Amendment and the District failed to carry its burden by ignoring this part of Claim 4. The defendant in a motion to dismiss bears the burden of establishing that the complaint fails to state a claim, Cohen, 819 F.3d at 481, and the burden never shifts to plaintiff regardless of the sufficiency of the plaintiff's opposition where, as here, the complaint itself adequately states a plausible claim for relief. Wash. All. of Tech. Workers, 892 F.3d at 344–345.

The Court ruled that under the Fourth Amendment the District had probable cause to seize and retain Mr. Davis's vehicle for civil forfeiture because police had probable cause to believe Davis violated § 22-4504 by transporting a handgun in his vehicle, and the District reasonably retained Davis' car after processing it for evidence because the District was entitled to seize and detain it for forfeiture. Smith, 2019 U.S. Dist. LEXIS 82922, *28-29. But this analysis does not address Plaintiffs' argument in Claim 4 for the same conduct based on the Second Amendment that the basis for the seizure was unconstitutional gun laws under the 2d Amendment and so any seizures and detentions for forfeiture or any other purpose were void *ab initio*.

This Court also held that seizing and retaining the guns and ammunition while their prosecutions were pending passed muster under the Fourth Amendment because they were seized incident to arrest. Smith, 2019 U.S. Dist. LEXIS 82922, *29-30. The arrests would have been valid under DeFillippo and so the seizures would have been lawful seizures under the Fourth Amendment. But, again, this rationale does not address Plaintiffs' argument in Claim 4 that the basis for the arrests and seizures was unconstitutional gun laws under the 2d Amendment and so any detentions for forfeiture or any other purpose were void *ab initio.*

Plaintiffs stated a plausible claim in Claim 4 based on the 2d Amendment under Fed. R. Civ. P. 12(b)(6). A seizure and detention of property for forfeiture under an unconstitutional forfeiture statutes is void from the beginning. *See* United States v. United States Coin & Currency, 401 U.S. 715, 721-22, 91 S. Ct. 1041, 1045 (1971); In One 1995 Toyota Pick-Up Truck v. District of Columbia, 718 A.2d 558 (D.C. 1998)(civil forfeiture of a truck valued at $15,500 in connection with sexual solicitation violated the excessive fines clause of the Eight Amendment). "[F]orfeiture, generally and statutory *in rem* forfeiture in particular, historically have been understood, at least in part, as punishment." Austin v. United States, 509 U.S. 602, 606 (1993). The same rationale applies to seizures of property under an unconstitutional statute for use in investigations and as evidence.

The fact that the individual arresting officers had probable cause to seize and detain the property under the Fourth Amendment does not shield the District from liability under the 2d Amendment even assuming *arguendo* the arresting officers' DeFillippo probable cause shields the District from liability under the Fourth Amendment. tttt

Any DeFillippo probable cause the individual seizing officers had does not shield the District. First, qualified immunity does not shield the municipality. Owen, 445 U.S. at 651-52. Second, the premise of DeFillippo's holding that the arrest and the search incident to arrest were

valid and the basis of the officer's probable cause was that the officer did not know that the statute was unconstitutional. DeFillippo, 443 U.S. at 38. This analysis does not apply to the District, because the Supreme Court has held that a municipality is charged with knowledge that unconstitutional statutes are unconstitutional even before a Court holds them unconstitutional, Owen, 445 U.S. at 651-52; Harper, 509 U.S. at 94-95; and in accordance with Section 1983 principles the municipality should err on the side of caution in enforcing laws. Owen, 445 U.S. at 651-52. So there is no policy concern with undermining the ardor of the officers to make arrests and to seize property on the basis of those arrests. DeFillippo, 443 U.S. at 36-38; Nieve, 139 S. Ct. at 1719 citing al-Kidd, 563 U. S. at 737.

Moreover, just because the seizures may have passed muster under the Fourth amendment, does not bar a claim under a different constitutional provision, because the Supreme Court specifically rejected the proposition that the Fourth amendment provides the full measure of protection for property seized as forfeiture, James Daniel Good Real Prop., 510 U.S. at 50, or that when conduct violates more than one constitutional provision the Court should identify a "dominant" provision and apply the elements under a claim based on that provision to all the plaintiff's constitutional claims. Soldal, 506 U.S. at 70.

Moreover, cases such as Gerstein and Riverside which provide protection for arrested persons do not provide the same degree of protection for seized property. James Daniel Good Real Prop., 510 U.S. at 50.

Since the burden was on the District in its 12(b)(6) motion, the District's motion to dismiss should have been denied as to Claim 4 because Plaintiffs pled a plausible claim, and the District did not argue the claim should be dismissed. Cohen, 819 F.3d at 481.

## CONCLUSION

Respectfully submitted,

<u>/s/William Claiborne</u>
William Claiborne
DC Bar # 446579
717 D Street, Ave., NW
Ste 300
Washington, DC 20004-2815
Phone: (202) 824-0700
Email: clalbornelaw@gmail.com