UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 15-737 (RCL) |

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO RECONSIDER

INTRODUCTION

Plaintiffs' Motion to Reconsider—a welter of duplicative and confusing arguments—appears to seek reversal, partial reversal or perhaps simply clarification of the Court's May 16, 2019 disposition of Claims 1–4 of the Second Amended Complaint. Plaintiffs, however, have not shown any error in the Court's decision or any new law or facts that would alter the Court's analysis. Accordingly, plaintiffs have failed to meet the steep burden for reconsideration under Federal Rule of Civil Procedure (Rule) 54(b), and their Motion should be denied.

BACKGROUND

On May 16, 2019, this Court issued a Memorandum Opinion [59] (Mem. Op.), granting in part, and denying in part, the District's motion to dismiss [53] and dismissing seven of plaintiffs' ten claims. *Smith v. District of Columbia*, 2019 WL 2141816 (D.D.C. May 16, 2016). As relevant to plaintiffs' Motion, the Court dismissed

Claim 2, which alleged that arresting and detaining plaintiffs under D.C. Code §§ 7-2502.01, 7-2506.01, and 22-4504 violated their Fourth Amendment rights, reasoning that *Michigan v. DeFillippo*, 443 U.S. 31 (1979) forecloses Fourth Amendment challenges to arrests under these laws because the laws were in force at all relevant times, and there was "abundant probable cause to believe plaintiffs had violated them." Mem. Op. at 19-20. As to plaintiffs' detentions, the Court found that "plaintiffs received a constitutionally adequate judicial determination of probable cause" within 48 hours, which satisfied the governing Fourth Amendment standard articulated in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) and *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). *See id.* at 20-21. The Court likewise dismissed Claim 4—plaintiffs' claim that seizing handguns, and the vehicles used to transport them, violated the Second Amendment—on the ground that the only plaintiff with vehicle-related allegations had filed suit outside the applicable limitations period. *Id.* at 31-32.[1]

The Court allowed Claims 1 and 3 to proceed. Mem. Op. at 23-30. As summarized by the Court, Claim 1 rests on the contention that D.C. Code §§ 7-

---

[1] Although it is not immediately relevant to plaintiffs' Motion, in the context of Claim 6—plaintiffs' Fourth Amendment challenge to the continued seizure of their handguns after their firearm-related charges were dismissed—the Court rested its analysis (in part) on the assumption that the District "never explain[ed]" why it held plaintiffs' guns and ammunition after dismissing the charges against them. *See* Mem. Op. at 23. However, the District asserted in its briefing that the plaintiffs' unregistered guns and ammunition were contraband—"dangerous articles" subject to destruction under D.C. Code §§ 22-4517, § 48-905.02(b). *See* Def.'s Mot. [53] at 30–31; Def.'s Reply [58] at 17–20 (citing, among other authorities, *Boggs v. Rubin*, 161 F.3d 37, 40 (D.C. Cir. 1998), for the proposition that "[i]ndividuals have no property right in contraband materials and contraband materials may not be returned to them").

2502.01, 7-2506.01, and 22-4504, which together prohibited non-District residents from having handguns and ammunition for self-defense while in the District of Columbia, violated the Second Amendment; the gravamen of Claim 3 is that these same laws violated the Fifth Amendment's guarantees of the right to travel and equal protection. *See* Mem. Op. at 5-6. According to the Court, Claim 1 could proceed because these laws plausibly infringed plaintiffs' (non-District residents at the time of their arrest) Second Amendment rights to carry handguns for individual self-defense. *Id.* at 24-26 (finding that because the Second Amendment creates "free-standing substantive rights," as opposed to procedural rights related to plaintiffs' prosecution, plaintiffs are entitled to recover under 42 U.S.C. § 1983 for their infringement). The Court resolved Claim 3 in much the same way—because the District's firearm laws, in combination, did not provide an avenue for non-District residents to register guns and ammunition in the District of Columbia, District law plausibly treated District residents differently from plaintiffs. Mem. Op. at 26-29 (equal protection), 29-30 (right to travel). Thus, plaintiffs' right-to-travel and equal protection claims could also proceed.

Plaintiffs' Motion to Reconsider [69] (Pls.' Mot.) seeks reconsideration of the Court's resolution of these four claims. As to Claims 1 and 3, which (again) the Court did *not* dismiss, plaintiffs seek reconsideration "to the extent th[e] Court held that Plaintiffs do not state a cognizable claim with respect to their arrest and detentions … ." Pls.' Mot. at 1. As to Claim 2, plaintiffs appear to argue that, contrary to the Court's conclusion, *Michigan v. DeFillippo*, 443 U.S. 31, 33 (1979), *Gerstein v. Pugh*,

420 U.S. 103, 114 (1975), and *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) should not bar their Fourth Amendment challenges because those cases shield individual actors from liability but *not* municipalities, like the District. *See* Pls.' Mot. at 10 ("even though the individual arresting officers had probable cause to arrest based on the Plaintiffs [sic] violation of the District's unconstitutional gun laws, the arrests and detentions still violated their 'constitutional rights,' and the officers' qualified immunity under *DeFillipo* [sic] does not shield the District"). Finally, plaintiffs contend that the Court's ruling on Claim 4 did not address the portion of that claim relating to the seizure of plaintiffs' handguns and ammunition, and they argue in tandem that "seizure and detention of handguns and ammunition for any purpose for any length of time violated the [Second] Amendment." *Id.* at 39.

## LEGAL STANDARD

Motions for reconsideration of interlocutory orders arise under Rule 54(b). Under Rule 54(b), a court may reconsider an interlocutory order "as justice requires," so long as there is a "good reason" for doing so, "such as new information, a misunderstanding, or a clear error." *Doe I v. Exxon Mobil Corp.*, 2019 WL 2348100, *3 (D.D.C. June 3, 2019) (citations omitted). "Such instances include where a court has 'patently misunderstood a party, … has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Feld v. Fireman's Fund Ins. Co.*, 263 F. Supp. 3d 74, 77 (D.D.C. 2017) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). "Errors of apprehension may include the Court's failure to

consider controlling decisions or data that might reasonably be expected to alter the conclusion reached by the Court." *Stewart v. FCC*, 189 F. Supp. 3d 170, 174 (D.D.C. 2016) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 22 (D.D.C. 2007)). The party moving for reconsideration must further demonstrate "that some harm would accompany a denial of the motion" and that "some injustice will result if reconsideration is refused." *Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 302 (D.D.C. 2017) (quoting *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011)). *See also National Ctr. for Mfg. Scis. v. Department of Defense*, 199 F.3d 507, 511 (D.C. Cir. 2000) (motions for reconsideration should not be granted "unless the moving party shows new facts or clear errors of law which compel the court to change its prior position").

Furthermore, a motion for reconsideration cannot be used "to reargue facts and theories upon which a court has already ruled or to "present[ ] theories or arguments that could have been advanced earlier." *Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360 (D.D.C. 2018) (citation omitted). "[A] court 'should be loathe' to grant a motion for reconsideration 'in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Associated Mortgage Bankers Inc. v. Carson*, 281 F. Supp. 3d 5, 7 (D.D.C. 2017) (quoting *Marshall v. Honeywell Tech. Sols., Inc.*, 598 F. Supp. 2d 57, 59 (D.D.C. 2009)). *See also Talbot v. United States Dep't of State*, 373 F. Supp. 3d 212, 220 (D.D.C. 2018) ("[D]isagreeing with a court's answer to an argument is not proper cause to pursue reconsideration[.]").

ARGUMENT

I. **Plaintiffs' Challenge To The Court's Resolution Of Claims 1 And 3—Claims That Will Proceed To Discovery—Amounts To An Improper Request For A Premature Decision On Issues Of Causation And Damages.**

Oddly, plaintiffs expend the bulk of their Motion urging the Court to reconsider the dismissal of claims the Court did *not* dismiss—Claims 1 and 3. *See* Pls.' Mot. at 7-10, 11–30. According to plaintiffs, the Court's Memorandum Opinion held that they stated a claim under the Second and Fifth Amendments (Claims 1 and 3, respectively) because those claims assert violations of "free-standing," "substantive rights *beyond [plaintiffs'] arrests and prosecutions*," namely, their rights to bear arms, travel interstate and to equal protection of the law. Mem. Op. at 25 (emphasis added); Pls.' Mot. at 8-10. Seemingly parsing words, plaintiffs seek reconsideration of this holding to the extent the Court *implicitly* limited plaintiffs' right to seek relief for injuries stemming from their arrests and subsequent prosecutions. Pls.' Mot. at 7-8. The Court, however, did no such thing; nor could it at this stage of the proceedings.

Indeed, a motion to dismiss under Rule 12—the procedural framework on which the Court's holding rests—tests only whether a plaintiff has properly stated a claim, not whether the plaintiff will prevail on the merits. *See, e.g.*, *Jordan v. District of Columbia*, 113 F.Supp.3d 278, 280 (D.D.C. 2015) (citation omitted). The categories of damages plaintiffs can eventually prove and for what sorts of injuries—and whether any such injuries were caused by some allegedly unlawful act—are merits decisions, bound up in fact, that courts do not reach on motions under Rule 12. Likewise, the Court found that plaintiffs have standing to bring their claims under

6

the Second and Fifth Amendments, Mem. Op. at 15-17, but that threshold decision is not the same as a final finding of liability on plaintiffs' constitutional tort claims. *See Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 142 (D.C. Cir. 1977) ("the question of standing is a matter apart and distinct from the merits of the substantive claims put forth. It is totally acceptable to grant standing to a party to pursue an unsuccessful claim"); *see also id.* at n.74 (discussing the "danger" of a court "settling the merits in the guise of ruling on standing"); *Johnson v. Commission on Presidential Debates*, 869 F.3d 976, 985 (D.C. Cir. 2017) (Pillard, J., concurring) ("A standing inquiry, especially at the motion-to-dismiss stage, should not anticipate the merits[.]") (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("standing in no way depends on the merits")). In short, adjudication of issues related to damages and causation under Claims 1 and 3 must await development of the factual record, so plaintiffs' request concerning the scope of relief available to them is premature. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [for standing]. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts[.]" [A]nd at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial.") (citations omitted).

Plaintiffs point to no error of reasoning or apprehension by the Court related to its decision on Claims 1 and 3, nor do they demonstrate any injustice that could

7

result if they must wait until summary judgment or trial to prove damages or causation. Because they do not meet the stringent standard under Rule 54(b), their Motion as to Claims 1 and 3 should be denied.

II. **The Court Properly Dismissed Claim 2 Because *DeFillippo*, *Gerstein* And *Cty. Of Riverside* Are Properly Read To Bar Plaintiffs' Fourth Amendment Challenges.**

Plaintiffs seek reconsideration of the dismissal of Claim 2—their Fourth Amendment arrest and detention claim—arguing, in sum, that this Court's finding of probable cause and its implications for their claims was overbroad. In particular, plaintiffs challenge the Court's application of *DeFillippo*, stating that "[i]t would have been clearer for Plaintiffs to argue that their arrests were supported by probable cause as to the officers, but that the District's policy still violated their Fourth Amendment rights because the arrests violated Plaintiffs' 'constitutional rights' even though the officers were entitled to qualified immunity." Pls.' Mot. at 33–34. The *first* problem with plaintiffs' argument is that, by admitting that their previous argument could have been clearer, plaintiffs concede that their *current* argument is simply a "clearer" version of one that was advanced earlier, which is not a proper basis for seeking reconsideration under Rule 54. *See, e.g.*, *Coulibaly*, 278 F. Supp. 3d at 301 (motion for reconsideration "cannot be used as 'an opportunity to reargue facts and theories upon which a court already ruled, nor as a vehicle for presenting theories or

8

arguments that could have been advanced earlier.'") (quoting *Estate of Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011)).[2]

More importantly, plaintiffs' argument that the *DeFillippo* rule is inapplicable to *their* Fourth Amendment claims because those claims are against the government (as opposed to individual arresting officers) is plainly incorrect. The Supreme Court in *DeFillippo* held, as this Court correctly observed, that the Fourth Amendment is not violated when an arrest is made pursuant to a then-valid law and supported by probable cause. Mem. Op. at 19. True, that operates to bar Fourth Amendment claims against individual arresting officers, but it applies with equal force when the government is the defendant because proof of a predicate constitutional violation is the first element of any municipal liability claim under 42 U.S.C. § 1983. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306-07 (D.C. Cir. 2003). So, regardless of who plaintiffs name as a defendant, if "it was reasonable for [the arresting] officer to suspect that [plaintiffs'] conduct was illegal[,] … there was no violation of the Fourth Amendment in the first place." *Heien v. North Carolina*, 574 U.S. 54, __ (2014).[3] That, as the Court previously concluded, disposes of plaintiffs' Fourth Amendment

---

[2] *See also, e.g., Feld*, 263 F. Supp. 3d at 77 ("a court need not consider arguments that it has already rejected on the merits") (citing *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)).

[3] The majority in *Heien* described the "express holding" of *DeFillippo* as "the arrest was constitutionally valid because the officers had probable cause." If plaintiffs' theory was correct, *DeFillippo*'s holding would subsequently be described as "the arrest was valid only under the Fourth Amendment." Plaintiffs' conception of the reach of *DeFillippo* is too narrow and they have presented no case supporting their view of that holding.

challenge to their arrests. Plaintiffs' discussion of qualified immunity, Pls.' Mot. at 30-31, is therefore irrelevant.[4]

Plaintiffs commit essentially the same error in reasoning with respect to their challenge to the Court's reliance on *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) and *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). As this Court rightly concluded, Mem. Op. at 20-21, those cases resolved what sorts of delays in post-arrest process will or will not run afoul of the Fourth Amendment; they had nothing to do with an individual actor's right to qualified immunity or her ultimate liability. *See Gerstein*, 420 U.S. at 123-126 (requiring that the determination of probable cause be made by a judicial officer "before or promptly after arrest," expressly basing holding on "the precise requirement[s] of the Fourth Amendment"); *Cty. of Riverside*, 500 U.S. at 57-58 (holding, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*," and that "such jurisdictions will be immune from systemic challenges" to their "general practice"). It therefore makes no difference for purposes of plaintiffs' Fourth Amendment claim whether they are suing the District or individual District employees—in either case, plaintiffs would have received post-

---

[4] Contrary to plaintiffs' suggestion, this Court did not find that the presence of probable cause for plaintiffs' arrests and detentions "immunized" the District from any other (*i.e.*, non-Fourth Amendment) claims, as demonstrated by the fact that plaintiffs' Second and Fifth Amendment claims are proceeding. State cases after *Heller* and *McDonald* confirm this Court's analysis. *See, e.g.*, *People v. Holmes*, 90 N.E.3d 412, 419 (Ill. 2017) (probable cause is not retroactively invalidated by subsequent invalidation of the statute upon which probable cause was based at time of arrest) (citing *DeFillippo*, 443 U.S. at 31).

10

arrest process that comported with *Gerstein* and *Cty. of Riverside*, so they cannot state a Fourth Amendment claim under 42 U.S.C. § 1983. Dismissal of plaintiffs' Claim 2 based on these precedents was correct, and there is nothing for the Court to reconsider.

### III. The Court's Dismissal Of Claim 4, In Its Entirety, Was Correct Because Plaintiffs' Seizure And Retention Of Property Challenges Are Cognizable, If At All, Under The Fourth Amendment Only.

Plaintiffs also seek reconsideration of the dismissal of Claim 4. Pls.' Mot. at 11, 39–42. As explained, in Claim 4, plaintiffs contend that the seizure of handguns under D.C. Code § 22-4517, and the vehicles used to transport them under D.C. Code § 7-2507.06(a), violated the Second Amendment. Mem. Op. at 5-6. The Court dismissed that challenge in its entirety, and plaintiffs contest that result, arguing that at least the non-vehicle related portion of the claim should proceed.

But dismissal of that portion was correct because challenges to the improper seizure or retention of property is best addressed through the Fourth Amendment. As the Supreme Court has explained:

> Exclusive reliance on the Fourth Amendment is appropriate in the arrest context … because the Amendment was 'tailored explicitly for the criminal justice system,' and its 'balance between individual and public interests has always been thought to define the 'process that is due' for seizures of person or property in criminal cases.'

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)). "The Fourth Amendment [also] establishes 'the standards and procedures' governing pretrial detention." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 914 (Mar. 21, 2017) (quoting *Gerstein*, 420 U.S. at

11

111)).[5] And, ultimately, plaintiffs will be able to pursue their "continuing seizure" theory within Claim 6, under the rubric of the Fourth Amendment. *See* Mem. Op. at 23; *accord Presidential Bank, FSB v. 1733 27th Street SE LLC*, 271 F. Supp. 3d 163, 175 (D.D.C. 2017) ("As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims").

Even if the Fourth Amendment is not exclusive in this context, plaintiffs' Second Amendment challenge to their handgun seizures would fail as a matter of law. Indeed, the extended—even permanent—deprivation of firearms does not violate the Second Amendment, unless the owner has been entirely foreclosed from legally acquiring other firearms. *See Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does not violate the Second Amendment. Indeed … even the *unlawful* retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms."); *Grant v. City of Houston*, 625 Fed. Appx. 670, 678 (5th Cir. 2015) (*per curiam*) (affirming dismissal of plaintiff's claim that police officers "violated her Second Amendment right to bear arms by

---

[5] *See also Bridgeforth v. Bronson*, 584 F. Supp.2d 108, 118 (D.D.C. 2008) ("The Fourth Amendment applies when a government official's action amounts to a 'meaningful interference with an individual's possessory interest in that property.'") (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

seizing a pistol she lawfully owned. In reality, this claim is likely a Fourth Amendment claim that the police unlawfully seized her pistol.").[6]

## IV. Plaintiffs' "New" Cases Do Not Alter Any Aspect Of The Court's Prior Analysis.

The two "new" cases plaintiffs cite—*Nieves v. Bartlett*, 139 S. Ct. 1715 (May 28, 2019), and *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1955 (Jun. 18, 2018)—cannot be read to alter the Court's prior analysis. As a practical matter, both are easily distinguishable because they involve First Amendment retaliatory arrest claims. Beyond this obvious distinction, neither holding breaks new ground, nor has any bearing on plaintiffs' Second, Fourth or Fifth Amendment challenges. To be sure, the Court in *Nieves* found that the typical "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest[,]" *id.* at 1724, and because Mr. Nieves had not done so, his retaliatory arrest claim "fail[ed] as a matter

---

[6]     *Cf. Davis v. Foley*, 2018 WL 5723165, *5 (N.D. Tex. Oct. 12, 2018) (Plaintiff "fails to state a claim under the Second Amendment related to the confiscation of a firearm by law enforcement. But such an instance, alleged with sufficient factual plausibility, may form the basis of a Fourth Amendment claim."); *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571–72 (7th Cir. 2014) (declining to address plaintiff's argument that "the seizure of her firearm violated her Second Amendment rights" during an arrest supported by probable cause).

of law." *Id.* at 1728.[7] In contrast, the Supreme Court in *Lozman*, held that the existence of probable cause did *not* bar a retaliatory arrest claim under the First Amendment, at least where the defendant argued that his arrest was the result of an "official municipal policy" of intimidation, and the arrestee did not challenge the constitutionality of the underlying criminal statute nor contest that probable cause existed for his arrest. *Id.* at 1954. Again, neither holding has any obvious bearing on plaintiffs' case, so the Court can easily eschew plaintiffs' suggestion that they require reconsideration of the Court's Memorandum Opinion.

V. **Plaintiffs' Notice Of Supplemental Authority Should Be Disregarded As Improper.**

On August 21, 2019, plaintiffs filed a Notice of Supplemental Authority [71], citing *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1274 (10th Cir. 2009), for the proposition that a § 1983 plaintiff can state a Fourth Amendment claim against a municipality even after the individual municipal employee co-defendants are dismissed on qualified immunity grounds. *See* Pls.' Notice at 1. But that uncontroversial proposition is not at all relevant to this case—plaintiffs have not sued

---

[7] Plaintiffs cite Justice Gorsuch's opinion, concurring in part and dissenting in part, and argue that "probable cause does not bar a constitutional claim based on the same conduct brought under a different constitutional provision[.]" Pls.' Mot. at 24. But because the Justice's opinion did not garner the vote of even one other justice, its applicability is perforce limited. *Cf. Ramirez v. Butte-Silver Bow*, 298 F.3d 1022, 1029 (9th Cir. 2002) ("[T]he Supreme Court has held that plaintiffs cannot 'double up' constitutional claims in this way: Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source.") (quoting *Graham v. Connor*, 490 U.S. 386, 394–95 (1989) (analyzing claim under Fourth Amendment but not under substantive due process)).

14

any individual police officers; this Court's Fourth Amendment analysis had nothing to do with qualified immunity (rather, the existence of probable cause, as explained above); and neither the Tenth Circuit nor the trial court in *Christensen* ever mentioned any of the authorities that control *plaintiffs'* Fourth Amendment claims (namely, *DeFillippo*, *Gerstein* and *Cty. of Riverside*). Perhaps more importantly, the *Christensen* opinion is more than a decade old, meaning it was available to plaintiffs when they filed their Motion to Reconsider as well as when they opposed the District's motion to dismiss. Notices of supplemental authority should be used "to cite new authorities released after briefing is complete[,]" not as "a second opportunity to brief" the issues. *Ho-Chunk, Inc. v. Sessions*, 253 F. Supp. 3d 303, n.5 (D.D.C. 2017) (citing *Williams v. Romarm, SA*, 756 F.3d 777, 787 (D.C. Cir. 2014)). Accordingly, not only is plaintiffs' "supplemental authority" inapposite, but their Notice is procedurally improper and should be disregarded.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion to Reconsider.

Dated: September 10, 2019.    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

15

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Assistant Attorney General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Phone: (202) 442-9774
Email: matthew.blecher@dc.gov

**Counsel for Defendant**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 15-737 (RCL) |

# ORDER

Upon consideration of Plaintiffs' Motion to Reconsider (Motion), defendant's Opposition, and the entire record, it is:

**ORDERED** that the Motion is **DENIED**.

Dated: _____         _____
                                                         THE HONORABLE ROYCE C. LAMBERTH
                                                         Judge, United States District Court
                                                              for the District of Columbia