UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br><br>Plaintiffs,<br><br><br>v.<br><br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br><br>Defendant. | Civil Action No.:  15-737 (RCL) |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER**

Plaintiffs' Motion [69] to Reconsider should be granted because Defendant's Opposition [72] does not raise any meritorious objections to Plaintiffs' motion.

### District Misapplies the Standard on Reconsideration

The District's statement of the standard applicable to a motion to reconsider consists in broad general platitudes without attention to how the legal principles apply to the specific facts of this case. For example, the District writes, "Furthermore, a motion for reconsideration cannot be used "to reargue facts and theories upon which a court has already ruled or to "present[ ] theories or arguments that could have been advanced earlier." District's Opposition [72], p. 5.

But, this principle does not apply to the reconsideration of Claims 1 and 3, and the Gerstein / Riverside analysis of Claim 2, and to Claim 4 because there was no "argument" in the first instance on several of the points Plaintiffs raise, that is, in the motion and the opposition.

Since the District did not raise those arguments in its motion, Plaintiffs had no opportunity to rebut them in its Opposition, therefore there was no "argument."

The District did argue that the Fourth Amendment barred recovery on Claims 1 and 3 in its Motion [53] so plaintiffs never had an opportunity to respond in its Opposition [56] and thus "argue" the issue in the first instance. <u>Lovely-Coley v. District of Columbia</u>, 255 F. Supp. 3d 1, 10 (D.D.C. 2017)(defendant's motion to reconsider serves to remedy its lack of an opportunity to respond to legal theory raised for the first time by plaintiff in its surreply). To be sure, "[M]otions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been raised previously with the court." <u>Lovely-Coley v. District of Columbia</u>, 255 F. Supp. 3d 1, 9 (D.D.C. 2017). But that is not the case here because Plaintiffs never had a chance to argue the issue.

Similarly, the District argued that Claims 1, 2 and 3 did not establish predicate constitutional violations under prong 1 of Plaintiffs' <u>Monell</u> claims. *See* <u>Baker v. District of Columbia</u>, 326 F.3d 1302, 1306 (D.C. Cir. 2003) *citing* <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 124 (1992)(to establish a <u>Monell</u> claim plaintiff must establish both: (1) a predicate constitutional violation; and (2) the municipality's policy was the moving force behind the predicate constitutional violation). But, the District never argued that Plaintiffs did not establish prong 2 of the <u>Monell</u> analysis for any of its Claims 1, 2 and 3, a municipal policy caused Plaintiffs' injuries. Therefore, this second prong of the <u>Monell</u> claims was never "argued" in the first instance.

Finally, the District made no challenge at all to Ms. Smith's and the remaining Named plaintiffs' Claim 4 as to guns and ammunition.

The burden of establishing that Plaintiffs' claims failed to state a claim under Fed. R. Civ. P. 12(b)(6) remained on the District regardless of the sufficiency of Plaintiffs' arguments in its Opposition. <u>Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.</u>, 892 F.3d

332, 344–345 (D.C. Cir. 2018). The D.C. Circuit has clarified that if the plaintiff responds, but does not address all the issues raised in the Rule 12(b)(6) motion, the District Court cannot treat any unaddressed issue as conceded. <u>Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.</u>, 892 F.3d 332, 344–345 (D.C. Cir. 2018).

Therefore, since these rulings were erroneous as a matter of law, and the District never raised them, so the parties never argued them, Plaintiffs are entitled to reconsideration on these issues.

So, there are no barrier to reconsideration because the initial decision was "clearly erroneous" and it would work a manifest injustice, because Plaintiffs would be deprived of their full remedies. <u>Marshall v. Honeywell Tech. Sols., Inc.</u>, 598 F. Supp. 2d 57, 59 (D.D.C. 2009).

## A. Plaintiffs are entitled to reconsideration of Claims 1 and 3.

It appeared to Plaintiffs that the Court's ruling on the scope of Claims 1 and 3 goes to the substantive law governing the scope of the claims (which of course determines the scope of damages) rather than merely to an issue of damages but which affects damages. *See e.g.*, <u>Carey v. Piphus</u>, 435 U.S. 247, 248 (1978)(in the absence of proof of actual injury, students suspended without a hearing are entitled to recover only nominal damages).

Therefore, Plaintiffs asked the Court to correct an error of law in defining the scope of the substantive law on Claims 1 and 3 which defendant raised, if at all, for the first time in its reply.

But, if Plaintiffs are wrong, then Plaintiffs moved the Court to clarify the part of its ruling, "plaintiffs allege §§ 7-2502.01, 7-2506.01, and 22-4504 afflict substantive rights **beyond their arrests and prosecutions**," <u>Smith v. District of Columbia</u>, 387 F. Supp. 3d 8, 26 (D.D.C. 2019)(emphasis added), to clarify that Plaintiffs state a plausible claim that defendant violated their Second Amendment and Fifth Amendment rights by enforcing the gun control regime against them by, amongst other things, arresting and detaining them. In order words, regardless how the Court rules

on the Fourth Amendment, the presence or absence of probable cause does not affect the scope of Plaintiffs' Claims 1 and 3 under the Second Amendment and Fifth Amendment.

As they explained in their motion to reconsider, Plaintiffs believed that one possible reading of the Court's opinion on whether Plaintiffs stated plausible claims under the Second Amendment and the Fifth Amendment was that Claims 1 and 3 stated plausible claims under Fed. R. Civ. P. 12(b)(6) **but only to the extent that they stated claims for injuries caused other than by their arrests and detentions, that is, for injuries other than injuries covered by Claim 2 (the Fourth Amendment claim).**[1] If this is the case, then Plaintiffs believe that it is wrong as a matter of law to limit Plaintiffs' Claims 1 and 3 to relief other than the relief provided by the Fourth Amendment. Moreover, the District did not raise this argument in its motion so Plaintiffs had no opportunity to argue it in their opposition.

So, Plaintiffs seek clarification on whether the Court wholly or only partially rejected the District's contention that "these claims [Claims 1 and 3] aren't cognizable under § 1983 since plaintiffs' arrest and prosecutions passed independent constitutional muster [under the Fourth Amendment]." <u>Smith,</u> 387 F. Supp. 3d at 25-26 ("District counters that these claims aren't cognizable under § 1983 since plaintiffs' arrest and prosecutions passed independent constitutional muster").

1. *The passage which Plaintiffs believed capable of more than one interpretation.*

The passage which Plaintiffs believed capable of more than one interpretation is:

> Claims one and three of plaintiffs' second amended complaint challenge §§ 7-2502.01, 7-2506.01, and 22-4504 on Second and Fifth Amendment grounds. Specifically, plaintiffs argue the scheme infringes on their rights to possess a handgun for individual self-defense, to equal protection, and to travel interstate. **The District counters that these claims aren't cognizable under § 1983 since**

---

[1] Plaintiffs assume that "prosecutions" is intended as a component of "detentions." The operative complaint, the Second Amended Complaint, pled arrests and detentions but not prosecutions.

plaintiffs' arrest and prosecutions passed independent constitutional muster. The District further argues plaintiffs fail to state an equal protection or right-to-travel claim.

But the District is wrong. Plaintiffs' Second and Fifth Amendment claims are cognizable under § 1983 since plaintiffs allege §§ 7-2502.01, 7-2506.01, and 22-4504 **afflict substantive rights beyond their arrests and prosecutions.** And plaintiffs adequately state equal protection and right-to-travel claims since §§ 7-2502.01, 7-2506.01, and 22-4504 distinguish between D.C. and non-D.C. residents in a way that jeopardizes the latter's fundamental rights. So claims one and three can proceed.

Smith v. District of Columbia, 387 F. Supp. 3d 8, 25-26 (D.D.C. 2019).

## 2. *Plaintiffs' alleged that the District's enforcement of its gun control regime by arresting and detaining them violated their Second Amendment and Fifth Amendment rights.*

In a Monell Claim, whether the municipal caused the violation of Plaintiffs rights is the key question after whether a policy existed in the first place. Blue v. District of Columbia, 850 F. Supp. 2d 16, 24 (D.D.C. 2012 *citing* Monell, 436 U.S. at 692; Baker, 326 F.3d at 1306 *citing* Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992)(to establish a Monell claim plaintiff must establish both: (1) a predicate constitutional violation; and (2) the municipality's policy was the moving force behind the predicate constitutional violation)..

For both claims Plaintiffs clearly pled that the District caused the violation of their constitutional rights by enforcing its unconstitutional gun control regime against them by arresting and detaining them, and that the constitutional violations caused them actual, and thus compensable, injuries including emotional distress and general damages caused by their arrests and detentions. *See e.g.,* 2d Am. Comp. ¶¶ 248, 251-52 (Claim 1) and ¶¶ 266-270 (Claim 3); *see* Carey v. Piphus, 435 U.S. 247, 248 (1978) (in the absence of proof of actual injury, students suspended without a hearing are entitled to recover only nominal damages).

The defendant's contention that causation is not at issue in a motion to dismiss a <u>Monell</u> claim is not an accurate statement of the law. Municipal liability under <u>Monell</u> only has two elements: (1) an unconstitutional pattern or policy; and (2) causation. <u>Blue</u>, 850 F. Supp. 2d at 24.

Moreover, the District's statement that causation is not an element at this motion to dismiss stage flies in the face of its argument in its motion that Claims 1 and 3 failed to state constitutional violations – "Similar to plaintiffs' burden to demonstrate Article III standing, to state a viable § 1983 claim plaintiffs must also establish that the District's gun laws "actually caused" the injuries for which they seek redress, namely, those allegedly flowing from their arrests and prosecutions." Motion [53], p. 29. Since the District now renounces the primary argument it raised in its motion to dismiss Claims 1 and 3 the court should find for Plaintiffs.

The reason plaintiffs are entitled to damages on Claims 1 and 3 for their arrests and detentions even though these are not Fourth Amendment claims is that the enforcement mechanism the District chose to enforce its gun control regime (which violated the Second Amendment and the Fifth Amendment) was arrest, detention, and prosecution of violators under its criminal laws. In this type of case – where a municipality arrests someone merely for exercising a constitutional right – the scope of the interest protected by the constitutional right does not define the limits of the scope of the substantive claim and the remedy. Rather, the municipality's enforcement mechanism and the actual injury suffered by the plaintiff as a result of the enforcement mechanism defines the scope of the substantive claim and the remedy. <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part)(presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for damages as a statutory matter under §1983); <u>Lozman v. City of Riviera Beach, Fla.</u>, 138 S. Ct. 1945, 1951, 1954-55 (2018)(presence of probable cause on an underlying offense neither erases the violation of the First Amendment nor forecloses

a civil claim for damages as a statutory matter under §1983 when the arrest is made pursuant to a municipal policy; Hedgepeth v. Washington Metropolitan Area Transit Auth., 386 F. 3d 1148, 1156 (D.C. Cir. 2004)("simply because a practice passes muster under the Fourth Amendment -- arrest based on probable cause -- does not mean that unequal treatment with respect to that practice is consistent with equal protection."); Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir. 1994)(same as to First Amendment); Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003)(existence of probable cause to stop and arrest plaintiff did not bar § 1983 claim for damages under Equal Protection claim based on the same stop and arrest); Brown v. Gov't of the Dist. of Columbia, 2019 U.S. Dist. LEXIS 97579 (D.D.C. 2019)(District violated plaintiffs' First Amendment rights by arresting and prosecuting them for violating a panhandling statute which violates the First Amendment).

For example, the interest - or at least one of the interests - protected by the First Amendment is freedom to criticize the government. Houston v. Hill, 482 U.S. 451, 462 (1987). But, if the government arrests someone for criticizing the government pursuant to a government policy, regardless of the presence or absence of probable cause, the scope of the claim under section 1983 provides a remedy for actual injury caused by arresting detention. Id.; Nieves v. Bartlett, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part)(presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for damages as a statutory matter under §1983): Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1951, 1954-55 (2018)(presence of probable cause on an underlying offense neither erases the violation of another constitutional provision nor forecloses a civil claim for damages as a statutory matter under §1983 when the arrest is made pursuant to a municipal policy; Grossman v. City of Portland, 33 F.3d 1200, 1203 (9th Cir.

1994)(same); Brown v. Gov't of the Dist. of Columbia, 2019 U.S. Dist. LEXIS 97579 (D.D.C. 2019).

**B.   Plaintiffs are entitled to reconsideration of Claim 2.**

Plaintiffs are entitled to reconsideration of Claim 2 because Plaintiffs pled a plausible Monell claim under the two prong Collins framework, the Plaintiffs never "conceded" the District's arguments on prong 1 (predicate constitutional violation) even though "[Plaintiffs] would have been wise to more fully develop [their] argument that [they] met FRCP 12(b)(6)'s pleading standard," Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec., 892 F.3d 332, 344 (D.C. Cir. 2018), the District never challenged prong 2 of Plaintiffs Monell claim (a municipal policy caused the violations of Plaintiffs' constitutional rights by arresting and detaining them, and the ruling that the individual arresting officer's DeFillippo "probable cause" for which they were entitled to qualified immunity barred Plaintiffs' claim against the District. Webb v. City of Maplewood, 889 F.3d 483, 486 (8th Cir. 2018)("even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well); Owen v. Independence, 445 U.S. 622, 651-52 (1980)(officer's qualified immunity does not shield municipality).

*1.   The District's first argument against reconsideration of Claim 2 actually supports reconsideration.*

The District's first argument against reconsideration of Claim 2 actually supports reconsideration. The District wrote, "The first problem with plaintiffs' argument is that, by admitting that their previous argument could have been clearer, plaintiffs concede that their current argument is simply a "clearer" version of one that was advanced earlier, which is not a proper basis for seeking reconsideration under Rule 54 always revise an erroneous interlocutory ruling." District's Opposition [72], p. 8.

But, the defendant in a motion to dismiss bears the burden of establishing that the complaint fails to state a claim, <u>Cohen v. Bd. of Trustees of the Univ. of the D.C.</u>, 819 F.3d 476, 481 (D.C. Cir. 2016). The burden never shifts to plaintiff regardless of the sufficiency of the plaintiff's opposition unless the plaintiff "concedes" defendant's argument. <u>Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.</u>, 892 F.3d 332, 344–345 (D.C. Cir. 2018).

But, the only "concession" here with respect to the District's argument is the District's concession that Plaintiffs did not concede, grant, or yield to the District's argument on prong 1 of the <u>Monell</u> claim (predicate constitutional violation). District's Opposition [72], p. 8.

Conversely, the District itself did concede, yield, and grant prong 2 of Plaintiffs' <u>Monell</u> claim, predicate constitutional violation **caused by District's unconstitutional policy**, which Plaintiffs pled at 2d Am. Comp. ¶¶ 260-261. By failing to challenge Plaintiffs' allegations that the District's enforcement of its unconstitutional gun laws by arresting and detaining Plaintiffs violated their constitutional rights. When a defendant moves to dismiss less than all claims under Fed. R. Civ. P. 12(b)(6) the Court should dismiss those claims and allow the plaintiff to proceed on the remaining claims. <u>See e.g.</u>, <u>Sierra Club v. United States DOE</u>, 825 F. Supp. 2d 142, 146 (D.D.C. 2011).

Therefore, since Plaintiffs did not concede the District's argument on the first prong of the <u>Monell</u> claim (constitutional violation), and the District conceded prong two of Plaintiffs' <u>Monell</u> claim (causation by a policy) by yielding and granting prong two by not challenging it, and the ruling is erroneous as a matter of law, Plaintiffs are entitled to reconsideration.

When a defendant moves to dismiss less than all claims under Fed. R. Civ. P. 12(b)(6) the Court should dismiss those claims and allow the plaintiff to proceed on the remaining claims. <u>See e.g.</u>, <u>Sierra Club v. United States DOE</u>, 825 F. Supp. 2d 142, 146 (D.D.C. 2011).

2. *Any <u>DeFillippo</u> probable cause the individual arresting officers had did not defeat a <u>Monell</u> claim against the government.*

Plaintiffs allegation that the arrests and detentions lacked probable cause was an accurate statement of the law as to the District because the DeFillippo probable cause was the result of the second prong of the qualified immunity analysis (objectively reasonable), not the first (no constitutional violation), and the arrests and detentions violated Plaintiffs' constitutional rights. Lederman v. United States, 291 F.3d 36, 48 (2002). Moreover, the Supreme Court has held that pleading the *prima facie* elements of a claim is not required, because that is an evidentiary standard, not a pleading requirement. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510–512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)(*prima facie* elements are evidentiary considerations). So all Plaintiffs had to allege to sufficiently plead a claim under Fed. R. Civ. P. 8 was that the District's policy of arresting and detaining persons pursuant to an unconstitutional gun control regime violated Plaintiffs' Fourth Amendment rights, which Plaintiffs' did, 2d Am. Comp. ¶¶ 254-262, and Plaintiffs' made these allegations in enough detail to put the District on notice of Plaintiffs' claim. Fed. R. Civ. P. 8; Ashcroft v. Iqbal, 556 U.S. 662, 677–679 (2009)(plausibility standard arises from the "short and plain statement" requirement of Rule 8(a)(2)). Plaintiff never yielded as the District concedes.

The District did not address in its Opposition [72] any of Plaintiffs' arguments or citations that any DeFillippo probable cause the individual arresting officers had did not defeat a Monell claim against the government. Plaintiffs' Motion [69] to Reconsider, pp. 30-38. In fact, the District only challenged prong 1 of the Monell analysis; it conceded, yielded, and granted Plaintiffs' prong 2 Monell allegations, 2d Am. Comp. ¶¶ 256-261, by challenging only prong 1 (predicate constitutional violation). It maintains that "proof of a predicate constitutional violation is the first element of any municipal liability claim under 42 U.S.C. § 1983" without addressing Lederman and Gross.

The District's argument confuses the qualified immunity analysis with the "predicate constitutional violation" analysis. Qualified immunity has two components: there was no constitutional; assuming that there were a constitutional violation, the law was not clearly established. Lederman v. United States, 291 F.3d 36, 48 (2002). The Lederman Court held that as a "threshold" matter under Saucier v. Katz that arresting someone for violating a statute that turns out to violate the First Amendment violates the arrestee's "constitutional rights." Thus, arresting someone for violating a statute that turns out to violate the First Amendment violates the arrestee's "constitutional rights," and establishes a predicate constitutional violation, even if the individual arresting officer is entitled to qualified immunity. Lederman, 291 F.3d at 48. In fact, the Lederman Court did not hold that such an arrest was supported by probable cause, only that the individual arresting officer was entitled to qualified immunity under the *second* prong of the qualified immunity analysis, the clearly established prong. *Id.* A municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom, provided an official's conduct stated a predicate constitutional violation. Webb v. City of Maplewood, 889 F.3d 483, 486 (8th Cir. 2018)("even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well); Owen v. Independence, 445 U.S. 622, 651-52 (1980)(officer's qualified immunity does not shield municipality).

## 1. *The District's Heien argument.*

Nor did the District address any of Plaintiffs' arguments or citations on its Heien argument. In fact, the District blithely wrote: "Plaintiffs' conception of the reach of DeFillippo is too narrow and they have presented no case supporting their view of that holding." Opposition [72], p. 9 n. 3.

Instead, the District wrote:

> So, regardless of who plaintiffs name as a defendant, if "it was reasonable for [the arresting] officer to suspect that [plaintiffs'] conduct was illegal[,] ... there was no violation of the Fourth Amendment in the first place." <u>Heien v. North Carolina</u>, 574 U.S. 54, __ (2014).

Opposition [72], p. 9.

But, <u>Hein</u> is distinguishable because the arrests and detentions in this case were not based on any officer's reasonable mistake of law in construing an **ambiguous** statute. Motion [69] to reconsider pp. 32-33.

The text of the majority opinion in <u>Hein</u> actually reads:

> Here, by contrast, **the mistake of law** relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place. None of the cases <u>Heien</u> or the dissent cites precludes a court from considering **a reasonable mistake of law** in addressing that question.

<u>Heien v. North Carolina</u>, 574 U.S. 54, 66 (2014)(emphasis added).

As the full text of the citation shows, and as Plaintiffs pointed out in their motion [69] to reconsider, p. 32, <u>Heien</u> applies only to reasonable suspicion to make a traffic stop based the seizing **officer's mistake of law** regarding the construction of an **ambiguous** state brake-light law (officer stopped a vehicle because one of its two brake lights was out, but a court later determined that a single working brake light was all the law required). Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 539 (2014). The stop was still supported by reasonable suspicion because the officer's mistake was reasonable, and so there was no violation of the 4th Amendment. But, here, the statute was not ambiguous and the arrests and detentions were not based on any officer's mistake of law in construing an ambiguous statute. Nor did the District ever argue that they were. *See* <u>Freeman v. City of Tampa</u>, 2015 U.S. Dist. LEXIS 164281, at *10-11 (M.D. Fla. Dec. 8, 2015)(at motion to dismiss stage defendant officers not entitled to qualified immunity in a stop based on reasonable suspicion on the ground that defendant officers were acting under a mistake

of law because they did not know that openly carrying a handgun while fishing was exempted conduct because allegations in complaint did not establish that statute was ambiguous).

The District argues further in a footnote:

> The majority in <u>Heien</u> described the "express holding" of <u>DeFillippo</u> as "the arrest was constitutionally valid because the officers had probable cause." If plaintiffs' theory was correct, DeFillippo's holding would subsequently be described as "the arrest was valid only under the Fourth Amendment."

Opposition [72], p. 9 n. 3.

Even accepting defendant's argument that the individual arresting officers had probable cause does not mean that the District can escape liability on the basis of the individual arresting officers' <u>DeFillippo</u> probable cause, because there was still a predicate constitutional violation. <u>Lederman</u>, 291 F.3d at 48; <u>Webb v. City of Maplewood</u>, 889 F.3d 483, 486 (8th Cir. 2018)("even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well).

The individual arresting officer's assumption that a statue that is still on the books is reasonable because (1) as a policy matter the law does not want officers making decisions about which laws to enforce, <u>DeFillippo</u>, 443 U.S. at 37-38; and (2) the Supreme Court's policy of insulating individual arresting officer's probable cause determinations from inquiries into the individual arresting officer's subjective intent for making the arrest. *See* <u>Ashcroft v. al-Kidd</u>, 563 U. S. 731, 737 (2011) (this Court has "almost uniformly rejected invitations to probe [officers'] subjective intent") *cited in* <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1719 (2019).

These policy considerations do not apply to municipalities such as the District because the purpose of municipal liability under § 1983 is to create an incentive for officials to minimize the likelihood of unintentional infringements on constitutional rights by preventing "systemic" injuries that result from government officials. <u>Owen v. Independence</u>, 445 U.S. 622, 651-52 (1980). So

assumptions about the constitutionally of laws based on bright line rules do not apply to the District. *Id.*

   2. *Gerstein* and *Riverside* do not apply to a claim of false arrest or false imprisonment.

   With respect to Gerstein and Riverside, the District's own argument shows the defect in its position. The District contends "those cases resolved what sorts of *delays* in post-arrest process will or will not run afoul of the 4th Amendment." Opposition [72], p. 10. But, the detention component of Plaintiffs' claim goes to the *fact* of their arrests and detentions, not the *duration* of their detentions. Lozman; Lederman; Gross.

   If a municipality enforces an unconstitutional statue by arresting and detaining people who violate it those people have a Fourth Amendment claim against the municipality even if the individual arresting officers are protected from suit by qualified immunity. Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1274 (10th Cir. 2009) and related cases. The tort of false arrest, in both its common law and constitutional variants, protects and vindicates the individual's interest in freedom from unwarranted interference with his personal liberty. Dellums v. Powell, 566 F.2d 167, 175 (1977); Phillips v. District of Columbia, 458 A.2d 722, 725 (D.C. 1983). So the "damages for that claim cover the time of detention up until issuance of process or arraignment ..." Wallace v. Kato, 549 U.S. 384, 390 (2007); Dellums v. Powell, 566 F.2d at 227 (damages for false arrest are to compensate for the insult of false arrest, any subsequent humiliation or mistreatment, and the loss of liberty measured by length).

   Plaintiffs have uncovered no cases holding or even suggesting that either Gerstein or Riverside limit damages for the loss of liberty caused by a false arrest or false imprisonment. Neither the Supreme Court in Kato or the D.C. Circuit in Dellums or in any subsequent case gives the government a 48 hour pass for damages caused by false imprisonment or false arrest.

In <u>Riverside County</u> the Court addressed the specific fact pattern of how much time a jurisdiction has to provide probable cause determinations to detained arrestees **where a jurisdiction combines the probable cause determination with other pretrial proceedings, such as arraignment or bail hearings** ("<u>Riverside</u> proceedings"). <u>Cnty. of Riverside v. McLaughlin</u>, 500 U.S. 44, 57, 111 S. Ct. 1661, 1670 (1991). The Court used a combination of a functional analysis (how long it takes) and a bright line outer boundary of 48 hours to hold that **when the probable cause determination is combined with other pretrial proceedings**, such as arraignment or bail hearings, a *presumption* of reasonableness arises if the ***combined*** proceeding is held within forty-eight hours of the warrantless arrest. So the Court merely established a burden allocation framework for jurisdictions to use to immunize themselves from ***systemic challenges to their practices*** because systemic challenges had proliferated due to the Court's decision in <u>Gerstein</u>. <u>Riverside</u>, 500 U.S. at 56-57.

This case is distinguishable because Plaintiffs do not allege that the District held them too long before providing probable cause determinations, and it is not a systemic challenge to how long the District takes to provide <u>Riverside</u> hearings to arrestees.

3. *The District's contention that this Court should disregard Plaintiffs' Notice of Supplemental Authority [71] is wrong because Plaintiffs filed the Notice before defendant filed its Opposition, before briefing was completed.*

The District contends that this Court should disregard Plaintiffs' Notice of Supplemental Authority [71], *citing* <u>Christensen v. Park City Mun. Corp.</u>, 554 F.3d 1271, 1274 (10th Cir. 2009), because Notices of supplemental authority should be used "to cite new authorities released after briefing is complete[,]" not as "a second opportunity to brief" the issues. <u>Ho-Chunk, Inc. v. Sessions</u>, 253 F. Supp. 3d 303, n.5 (D.D.C. 2017) (*citing* <u>Williams v. Romarm, SA</u>, 756 F.3d 777, 787 (D.C. Cir. 2014)). Opposition [72], p. 15. Assuming *arguendo* that FRAP 28(j) is limited to new as opposed to supplemental authority, *cf.* text FRAP 28(j), neither <u>Ho-Chunk</u> nor <u>Williams</u> supports the District's position. Those cases deal expressly with authorities released "after briefing

is complete." Plaintiffs filed their Notice even before the District's Opposition, thereby giving the District an opportunity to address the cases in its Opposition.

On the merits, the District's treatment of <u>Christensen</u> misses the mark. Plaintiffs do not have to sue individual arresting officer and then see them dismissed on the basis of qualified immunity for the rule to apply. If a municipality enforces an unconstitutional statue by arresting and detaining people who violate it those people have a Fourth Amendment claim against the municipality even if the individual arresting officers are protected from suit by qualified immunity. <u>Christensen v. Park City Mun. Corp.</u>, 554 F.3d 1271, 1274 (10th Cir. 2009) and related cases. See also <u>Webb v. City of Maplewood</u>, 889 F.3d 483, 486 (8th Cir. 2018)("even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well); <u>Owen v. Independence</u>, 445 U.S. 622, 651-52 (1980)(officer's qualified immunity does not shield municipality).

## C.  The Court should deny defendant's motion to dismiss Claim 4 as to handguns and ammunition.

First, the District ignores Plaintiffs' argument that the Court should deny Plaintiffs' Claim 4 as to guns and ammunition because the District did not challenge that part of the claim in its motion to dismiss. Plaintiffs are entitled to reconsideration here because the District did not move to dismiss the part of Claim 4 relating to guns and ammunition.

Basically the District is asking the Court to dismiss the part of Claim 4 relating to guns and ammunition even though the District's motion to dismiss did not move to dismiss that part of the claim or contain any argument on that part of the claim. But the District does not even explain why it should be allowed  to "present[ ] theories or arguments that could have been advanced earlier."

*See* Shvartser v. Lekser, 330 F. Supp. 3d 356, 360 (D.D.C. 2018) *cited in* District's Opposition [72], p. 5.

Plaintiffs addressed the arguments the District raised, and Plaintiffs were not obligated to address other arguments the District did not raise, because the burden was on the District as movant to establish that Claim 4 failed to state a plausible claim and the District failed to carry that burden. Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec., 892 F.3d 332, 344–345 (D.C. Cir. 2018).

Moreover, when a defendant moves to dismiss some but not all of a claim or less than all claims under Fed. R. Civ. P. 12(b)(6), the Court should dismiss those claims or parts of claims and allow the plaintiff to proceed on the remaining claims or parts of claims. *See e.g.*, Sierra Club v. United States DOE, 825 F. Supp. 2d 142, 146 (D.D.C. 2011).

As to the merits, the Supreme Court has expressly rejected Defendant's theory, *See* District's Opposition [72], p. 11, that the Fourth Amendment is the only or the favored basis to objecting to seizures of property. Soldal v. Cook County, 506 U.S. 56, 70 (1992)(seizure of trailer)("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another.") *cited in* United States v. James Daniel Good Real Prop., 510 U.S. 43, 49 (1993)(seizure of home)(rejecting government's arguments that Fourth Amendment is the sole constitutional provision applicable to seizures of property for forfeiture).

As detailed below, Plaintiffs' Claim 4 is further distinguishable from the typical seizure of property for investigation or as evidence claim because the property was seized pursuant to unconstitutional statutes. Presidential Bank, FSB v. 1733 27th Street SE LLC, 271 F. Supp. 3d 163, 175 (D.D.C. 2017) ("As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims") is distinguishable because claims based on different constitutional provisions – even if based on the same facts – are not "duplicative." Soldal v. Cook County, 506

U.S. 56, 70 (1992)(seizure of trailer)("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another.") *cited in* United States v. James Daniel Good Real Prop., 510 U.S. 43, 49 (1993)(seizure of home)(rejecting government's arguments that Fourth Amendment is the sole constitutional provision applicable to seizures of property for forfeiture).

Moreover, Claim 4 provides greater relief than Claim 6. This Court held that Claim 6 allows Plaintiffs to challenge only the period of retention of guns and ammunition after the property is no longer needed as evidence. Smith, 387 F. Supp. 3d at 25. But, the Second Amendment theory – which provides that the seizures were void ab initio – provides a remedy for the seizure and the entire period of retention by the District.

The cases the District cites for the proposition that extended — even permanent — deprivation of firearms does not violate the Second Amendment unless the owner has been entirely foreclosed from legally acquiring other firearms are distinguishable for two reasons.

First, those claims are free-standing claims based solely on the Second Amendment where police seized weapons pursuant to criminal charges where plaintiff alleged the officers lacked probable cause or the officers claim safety concerns. *See e.g.*, Rodgers v. Knight, 781 F.3d 932, 941-42 (8th Cir. 2015); Grant v. City of Hous., 625 F. App'x 670, 678-79 (5th Cir. 2015); Sutterfield v. City of Milwaukee, 751 F.3d 542, 571–72 (7th Cir. 2014). Moreover, Grant is an unreported decision without only cursory treatment of the Second Amendment claim, and the Sutterfield  Court expressly declined to address plaintiff's argument that "the seizure of her firearm violated her Second Amendment rights" during an arrest supported by probable cause because "Sutterfield has not developed a cogent argument as to the reach and application of the Second Amendment in the law enforcement and community caretaking context."

To the extent that the law is still developing on this issue the Court should deny the motion to dismiss.

But Plaintiffs' argument is not merely that the free standing Second Amendment bars the seizure of pistols when charges lack probable cause or an officer suspects an owner may be incompetent. Plaintiffs' argument is that the seizures were made pursuant to a statue, and the statute violates the Second Amendment, and therefore the seizures and retentions were void *ab initio*.

To the extent the seizures were made incident to arrest pursuant to D.C. Code §§ 7-2502.01, 7-2506.01, and 22-4504 for investigation or as evidence, those statues violated core protections of the Second Amendment, and so the seizures and retentions were also void *ab initio*.[2] So the statute pursuant to which the guns were seized were themselves unconstitutional.

Moreover, the District's cases expressly exempt from their reach seizures and detentions which entirely foreclose owners from legally acquiring other firearms. *See cases cited at* Opposition [72], p. 12. Those cases arose in jurisdictions where guns were lawful, and licenses if required were available on a constitutional basis. So, owners had access to other guns. But, in this case, in this jurisdiction, until the D.C. Circuit's decision in <u>Wrenn</u>, the District maintained a total ban on ownership and possession of guns outside the home or place of business. <u>Wrenn v. District of Columbia</u>, 864 F.3d 650, 666 (2017)(invalidating the District's "good-reason law" as a "total ban" on the Second Amendment right to carry a gun outside the home). In fact, the District's contention is that handguns like the handguns seized from Plaintiffs were contraband *per se*. These statutes were the core enforcement mechanism which entirely foreclose owners from legally acquiring other firearms.

---

[2] "The seizure and retention of handguns and ammunition and vehicles on the basis of **the unconstitutional gun control regime** for any purpose for any length of time (including the destruction of any of the property) violated their 2d Amendment rights." 2d Am. Comp. ¶ 274.

So seizing and retaining Plaintiffs guns and ammunition pursuant to unconstitutional gun control laws did in fact entirely foreclose owners from legally acquiring other firearms. *See cases cited at* Opposition [72], p. 12.

Moreover, the cases the District cites support Plaintiffs Claims 5 and 6.

A forfeiture determination – including the seizure - based on an unconstitutional statute is void *ab initio*. By the same logic a seizure of a gun as evidence in a case brought under an unconstitutional gun control statute is also void *ab initio*. The District's gun control statutes and regulations were always unconstitutional under the Second Amendment – they did not become unconstitutional just because and when this Court declared them unconstitutional in Palmer. Owen v. Independence, 445 U.S. 622, 651-52 (1980); Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 94-95 (1993).

### D. The District's Footnote 1 on Property Clerk hearings illustrates that any appeals to the Superior Court would have been illusory remedies.

In footnote 1 the District contends that the reason that the District did not release plaintiffs' unregistered guns and ammunition after the Superior Court criminal cases were over was because the guns were contraband — "dangerous articles" subject to destruction under D.C. Code §§ 22-4517, § 48-905.02(b). See Def.'s Mot. [53] at 30–31; Def.'s Reply [58] at 17–20. The District's position is that "[i]ndividuals have no property right in contraband materials and contraband materials may not be returned to them." Def.'s Reply [58] at 17–20 citing, among other authorities, Boggs v. Rubin, 161 F.3d 37, 40 (D.C. Cir. 1998) (contraband *per se* comprises objects which are inherently unlawful to possess, regardless of how they are used).

### 1. The Property Clerk hearings under D.C. Code § 22-4514(a) were a sham because no owner could ever win them, and so they did not satisfy due process.

But, if pistols were in practice contraband *per se*, as the District contends, the Property Clerk hearings under D.C. Code § 22-4514(a) were a sham because no owner could ever win them, and so they did not satisfy due process.

The District's arguments in footnote 1 show the Catch 22 trap the District wove for gun owners with D.C. Code § 22-4514(a).

Guns were not *per se* contraband in the District even before <u>Palmer</u> and <u>Wrenn</u>. The list of "contraband" weapons is found at D.C. Code § 22-4514(a) and it does not include "pistols."[3] Pistols were "contraband" (nuisances is the term used in the statute) only if they were unlicensed.[4]

But, the only way to "lawfully" own, possess or carry a pistol was to comply with the provisions of the District gun control regime, UA, UF, and CPWL/ CP. See D.C. Code § 7-2506.01 (a) (UF, "no person ... shall possess or control any firearm, unless the person ... holds a valid registration certificate for the firearm").

Conviction under each of these statutes - UA, UF, and CPWL/ CP - shares an actual or constructive possession component. *See* D.C. Code § 22-4503 (a) (2016 Supp.) (UPF, "no person shall . . . have a firearm in his or her possession or under his or her control"); D.C. Code § 22-4504 (a) (2016 Supp.) (CPWL, "no person shall carry ... a pistol, without a license"); D.C. Code § 7-2502.01 (2016 Supp.) (UF, "no person ... shall possess or control any firearm, unless the person ... holds a valid registration certificate for the firearm"); D.C. Code § 7-2506.01 (a) (2016 Supp.)

---

[3] The list of contraband weapons is found at D.C. Code § 22-4514(a) and it consists in "machine gun, sawed-off shotgun, bump stock, knuckles or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, switchblade knife, []or any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms." D.C. Code § 22-4514(a).

[4] Even though classified as a "dangerous article," a pistol is a "nuisance," and thus subject to "taking and destruction" under D.C. Code § 22-4517(c), only if it is "unlawfully owned, possessed, or carried" under D.C. Code § 22-4517(c).

(UA, "No person shall possess ammunition ... unless ... [h]e is the holder of a valid registration certificate for a firearm"). <u>Hooks v. United States</u>, 191 A.3d 1141, 1143 n.1 (D.C. 2018).

But, before <u>Palmer</u>, virtually no resident of the District could lawfully register a pistol, and no non-resident could lawfully register a pistol. Even after <u>Palmer</u>, until <u>Wrenn</u>, the slice of owners that qualified for registration certificates (needed to win a Property Clerk hearing or any appeal from a Property Clerk hearing) was still so thin that the <u>Wrenn</u> Court still invalidated the District's "good-reason law" as a "total ban" on the Second Amendment right to carry a gun outside the home. <u>Wrenn v. District of Columbia</u>, 864 F.3d 650, 666 (2017).

So, the only way to "lawfully" own a pistol was to register it (and then license it if one wanted to "carry" it). But virtually no one could register a pistol before <u>Wrenn</u> because the District's good-reason law was necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs because it confined carrying a handgun in public to those with a special need for self-defense. <u>Wrenn</u>, at 666.

So the District contends that a person could "win" a Property Clerk hearing and get their pistol back by filing a "written claim for possession of such dangerous article," D.C. Code § 22-4517(d)(1), who would then "determine which claimant, if any, is entitled to possession of such dangerous article." *Id.* at (d)(2).

But, this was an illusory remedy so it violated procedural due process. <u>Propert v. District of Columbia</u>, 948 F.2d 1327, 1333-1334 (1991)(not enough for defendant to provide just a hearing, defendant must provide a constitutionally adequate hearing). Virtually no one could lawfully possess a pistol. It beggars belief that the Property Clerk would return to an owner a pistol which the District claims is "contraband" or a "nuisance" (because unregistered and thus unlawfully owned). D.C. Code § 22-4517(b).

**2.  Any right of appeal from a Property Clerk hearing to the Superior Court would not have solved deficiencies in the Property Clerk hearings because any appeal to the Superior Court that existed would have been an illusory remedy because it would have been futile.**

Moreover, assuming *arguendo* owners could appeal to Superior Court – which Plaintiffs deny – was also an illusory remedy because even to this day the District of Columbia Court of Appeals has not recognized a Second Amendment constitutional right to carry a gun outside the home, so no Superior Court judge would ever have granted such a motion. *See e.g.*, <u>Dubose v. United States</u>, 213 A.3d 599 (D.C. 2019)("[t]his court has consistently held, contrary to <u>Wrenn</u>, that there is no Second Amendment right to carry a concealed firearm in public.") *citing* Hooks v. United States, 191 A.3d 1141, 1144 n.3 (D.C. 2018); <u>Gamble v. United States</u>, 30 A.3d 161, 169 (D.C. 2011)); <u>Mack v. United States</u>, 6 A.3d 1224, 1236 (D.C. 2010).

Procedural due process requires not just a hearing, but a constitutionally adequate hearing. <u>Propert</u>, *supra*.

Moreover, until <u>Wrenn</u> any right of appeal from the Property Clerk hearing to the Superior Court which might have been available under the statute (and Plaintiffs contended that it was not) was also illusory because the DCCA refused and still refuses to accept that the Second Amendment right to carry a gun extends outside the home.

An appeal that yields nothing to the appellant is an illusory remedy. <u>Van Harken v. City of Chi.</u>, 103 F.3d 1346, 1353 (7th Cir. 1997)("An appeal that, quite apart from the time of the appellant and any attorney's fee, costs more to file than the maximum gain that the appeal can yield the appellant is an illusory remedy."). Even if the statute did provide for an appeal to the Superior Court an appeal would have been nothing more than "an illusory remedy" because at least until Wrenn it would have not have provided effective relief because the District sill had what amounted to a "total ban" on carrying handguns in public, and so not Superior Court could have granted relief.

In <u>Safari Club Int'l v. Jewell</u> the D.C. Circuit held that submitting an application for a permit where the possibility of obtaining a permit is "illusory" "would have been entirely futile." <u>Safari Club Int'l v. Jewell</u>, 842 F.3d 1280, 1286 (2016). Similarly, making an appeal to the Superior Court where success depended on producing a registration certificate which was impossible to obtain because the D.C. Council and the DCCA both believed that carrying a handgun outside the home was beyond the scope of the Second Amendment would have been a futile gesture and thus any such appeal provided no more than an illusory remedy.

## CONCLUSION

Respectfully submitted,

<u>/s/William Claiborne</u>
William Claiborne
DC Bar # 446579
717 D Street, Ave., NW
Ste 300
Washington, DC 20004-2815
Phone: (202) 824-0700
Email: claibornelaw@gmail.com