UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>DISTRICT OF COLUMBIA,<br><br>        Defendant. | Civil Action No. 15-737 (RCL) |

## JOINT LOCAL RULE 16.3 REPORT

Pursuant to Federal Rule of Civil Procedure 26(f), Local Civil Rule 16.3, and the Court's November 27, 2019 Order, plaintiffs Maggie Smith, Gerard Cassagnol, Frederick Rouse, and Delontay Davis, and defendant the District of Columbia (the District) (collectively, the Parties), jointly submit this report and a proposed scheduling order, following the meeting of counsel on December 5, 2019.

## The Parties' Summaries of the Case and Bases for Claims and Defenses

### Plaintiffs

#### Plaintiffs' Summary of the Case

Plaintiffs in this Section 1983 class action challenge the District's unconstitutional gun control regime (consisting of statutes and regulations including D.C. Code §§ 7-2502.01, 7-2506.01, and 22-4504), in place from before the start of the class period, 5/15/12, going forward up to October 10, 2014, the effective date of the replacement regime. Second Amended Complaint [50]. The District's gun control regime in effect during the Class Period was a total ban on the carrying of hand guns

1

and ammunition by anyone (residents and non-residents alike) in public in the District during the Class Period, and the District enforced it against anyone caught carrying a handgun in the District outside the home, residents and non-residents alike. The District also specifically prohibited the registration of guns by non-residents effected a total ban on the carrying of hand guns and ammunition in public in the District by non-residents during the Class Period.[1] Palmer v. District of Columbia, 59 F. Supp. 3d 173, 176 (D.D.C. 2014); D.C. Code § 7-2502.02(a)(4)(C) (limited registration of pistols, needed to obtain a license, for use in self-defense in the home).

Pursuant to the unconstitutional gun control regime the District arrested people (residents and non-residents alike), detained them pending First Appearance, and sometimes beyond First Appearance, and prosecuted some of them, even after the U.S. Attorney had dropped the case. The District also seized their guns and ammunition, held their guns and ammunition for long periods after their cases were over, and in some cases never gave the guns and ammunition back.

This Court granted in part and denied in part the District's motion to dismiss the Second Amended Complaint and Claims 1, 3 and 6 survive. Orders [60,76].

Plaintiffs on behalf of themselves and the other class members bring claims (Claims 1 and 3) under § 1983 for damages caused by their arrests, detentions, and or prosecutions pursuant to the District's unconstitutional gun registration regime in

---

[1] Licensing provisions regulate the owner of the firearm whereas registration provisions apply to registering the weapon itself. Heller v. District of Columbia, 670 F.3d 1244, 1248-49 (2011)(Heller II).

effect during the Class Period. Claim 1 is based on the Second Amendment and Claim 3 is based on the Fifth Amendment.

Plaintiffs also on behalf of themselves and the other class members bring a claim (Claim 6) for damages under § 1983 caused by the retentions of their guns and ammunition after their cases were over pursuant to the District's unconstitutional gun registration regime in effect during the Class Period. Claim 6 is based on the Fourth Amendment.

Plaintiffs on behalf of themselves and the other class members also sue for injunctive relief for expungement of their arrest records and an order that their arrests for violations of the District's gun control regime were a legal nullity. Plaintiffs on behalf of themselves and the other class members also sue for certain declaratory relief and nominal damages. These claims are based on the Second and Fifth Amendments.

### Plaintiffs' Class definitions

The Second Amendment Arrest Class includes everyone (resident and non-resident alike) who: (1) was arrested for a violation of the District's unconstitutional gun control regime during the Class Period; or (2) who had been arrested before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period.

The Nonresident Arrest Class (based on the Fifth Amendment) includes every non-resident who (1) was arrested for a violation of the District's unconstitutional gun control regime during the Class Period; or (2) who had been arrested before the

start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period.

Fourth Amendment Handguns and Ammunition Retention Class includes all persons whose handguns were seized by and/ or in the custody of the District during the Class Period and were held for a period of time after their cases were over or were never returned.

**Defendant**

### Defendant's Summary of the Case

Plaintiffs are non-residents who were arrested in the District of Columbia, pre-*Palmer*, for carrying unregistered weapons and ammunition and who had that property seized by the Metropolitan Police Department pending prosecutions that were never completed.[2] By Memorandum Opinion dated May 16, 2019 [59], the Court granted, in part, the District's motion to dismiss, dismissing seven of the ten counts in the Second Amended Complaint (SAC). Of the remaining claims, plaintiffs allege that the District's laws in effect at the time of the arrests and seizures (D.C. Code §§ 7-2502.01, 7-2506.01, and 22-4504), which prohibited non-residents from possessing handguns and ammunition in the District, violated their rights under the Second Amendment (Count 1). Plaintiffs also contend that those same laws violated their Fifth Amendment rights to travel and to equal protection (Count 3). Finally, plaintiffs

---

[2]     The Court in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) held that the District's laws prohibiting the carrying of handguns and ammunition outside the home violated the Second Amendment.

allege that the retention ("continuing seizure") of their property after the dismissal of the charges against them violated the Fourth Amendment (Count 6).

## Defendant's Statement of the Bases for its Defenses

The District denies that plaintiffs are entitled to any of the relief sought under 42 U.S.C. § 1983. Liability does not attach to the District for laws enacted and enforced in good faith, prior to a final, judicial determination that the laws are unconstitutional. The seizures of property about which plaintiffs complain were supported by probable cause and the property was at all times contraband, which as a matter of law need not be returned. The theory of a "continuing seizure" is not supported by Supreme Court or D.C. Circuit precedent. At the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home, and the District had numerous, important justifications for treating residents and non-residents differently in the law.

## Matters to be Discussed by the Parties Pursuant to Local Civil Rule 16.3(C) And the Parties' Joint Discovery Plan

1.   Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.

The Parties believe the case is likely to be disposed of on motions for summary judgment. The Parties do not believe that discovery should await a decision on such motions. The Parties' proposed briefing schedule is set forth in Paragraph 6, below.

2.   The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.

The Parties agree that Federal Rule of Civil Procedure 15 should govern any amendment of the pleadings. The Parties have not identified any factual or legal issues that can be agreed upon or narrowed but will alert the Court if they reach agreement on one or more issues.

3.   Whether the case should be assigned to a magistrate judge for all purposes, including trial.

The Parties do not believe that the case should be assigned to a magistrate judge.

4.   Whether there is a realistic possibility of settling the case.

The Parties believe there is no realistic possibility of settling the case at this time. However, the Parties remain open to future discussions.

5.   Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.

The Parties do not believe this case would benefit from ADR at this stage of the litigation. As discovery proceeds, the Parties believe that informal settlement negotiations will be sufficient to entertain a possible resolution of the case before trial and will consider ADR after discovery closes.

6.   Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.

The Parties propose the following case schedule, which includes a briefing schedule for dispositive motions:

| Event | Deadline |
|---|---|
| Initial Disclosures | Thirty days from entry of the Scheduling Order |
| Fact discovery on liability and class issues completed | Six months from entry of the Scheduling Order |
| Plaintiffs' motion for summary judgment on liability due | One month after the completion of discovery |
| Defendant's Opposition and cross-motion on liability due | Two months after the completion of discovery |
| Plaintiffs' Reply and Opposition due | Three months after the completion of discovery |
| Defendants' Reply due | Two weeks after service of Plaintiffs' Reply and Opposition |

7.     Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and if not, what if any changes should be made in the scope, form or timing of those disclosures.

The Parties will exchange Fed. R. Civ. P. 26(a)(1) initial disclosures within 30 days of the entry of a Scheduling Order.

8.     The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.

The Parties propose the schedule for discovery set forth in Paragraph 6 above and the proposed Scheduling Order.

Plaintiffs, as noted below in Paragraph 13, propose to bifurcate liability and damages and thus propose to stay any expert discovery on damages until after liability has been decided.

7

Plaintiff will seek discovery on databases (including all relevant manuals and data exports of certain records from the databases) holding records on the arrests and detentions of class members from databases such as the MPD's booking databases; databases holding records on seizures, detentions, and dispositions of guns and ammunition from databases such as the MPD's property database, EvidenceOnQue; databases holding records on the prosecutions and dispositions of prosecutions of class members such as the Superior Court docketing database. This discovery will include discovery on any arrest/prosecution history of class members. Plaintiffs will specify that they want productions of the ESI/ database discovery in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms such as Excel spreadsheets.

Plaintiffs will also need written discovery and 30(b)(6) depositions on how to use the records in the data exports from the databases.

Plaintiffs obtained discovery (manuals and 30(b)(6) depositions) about one of the District's property databases, EvidenceOnQue, and without prejudice to their right to take depositions in this case per Fed. R. Civ. P. 26 and 34. Plaintiffs will ask the District to remove the Confidential designations on those materials for use in this case or ask the District to join in a motion to intervene in the Protective Order in that case, Hoyte v. Government of the District of Columbia, 13-567 (CRC).

If the District raises "burdensome" objections to database discovery Plaintiffs will need to do 30(b)(6) depositions on those databases in two stages: stage one, deposing a 30(b)(6) witness to ascertain whether the discovery is burdensome; and

stage two, after any production, a second 30(b)(6) deposition to understand how to use the production.

Certain class members were arrested and their guns and ammunition seized before the start of the Class Period, and certain class members' detentions and/ or prosecutions, and the District's detention of their guns and ammunition will have continued after the end of the Class Period. In these cases discovery will reach periods before and after the start/end of the Class Period.

Plaintiffs will also propound interrogatories and document production requests about facts underling their claims and the District's defenses.

The District believes that discovery should be limited to a reasonable period based on the maximum class period, which is three years before the filing of the Complaint to the effective date of the License to Carry a Pistol Emergency Amendment Act of 2014, *see* 61 D.C. Reg. 10765 (Oct. 17, 2014), *i.e.*, from May 15, 2012 to October 10, 2014. *See* SAC ¶ 320.

The District anticipates issuing written discovery requests for information pertaining to the factual bases for the remaining counts (Counts 1, 3, and 6). The District also anticipates deposing the plaintiffs.

The Parties agree that discovery as to witnesses and documents be subject to the limitations set forth in Rules 26, 30, 33, 34, and 36 of the Federal Rules of Civil Procedure.

The Parties believe that a protective order will be necessary to protect confidential information contained in documents plaintiffs will likely seek from the

Metropolitan Police Department. The Parties will negotiate the terms of such an order in good faith and submit a joint proposed order for the Court's consideration within 20 days after entry of the Scheduling Order.

The District believes a Protective Order should be in place prior to the exchange of any written discovery.

Plaintiffs agree to the District's condition that a Protective Order should be in place prior to the exchange of any written discovery, but in that event, Plaintiffs propose that the Parties within twenty days of the entry of the Scheduling Order either agree on a joint proposed protective order or each side submit proposed protective orders to the Court for decision. Otherwise the proposed dates in the proposed Scheduling Orders will be meaningless because discovery will start on the date both sides agree on a proposed protective order or the date of entry of a Protective Order by the Court rather than entry of the Scheduling Order.

9.   Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.

The Parties agree that, unless otherwise stated, each request made under Rule 34 of the Federal Rules of Civil Procedure will be presumed to include a request for responsive electronically stored information (ESI). The Parties have discussed the disclosure and discovery of ESI and agree to produce ESI in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms such as Excel spreadsheets or Access databases.

10.   Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these

10

claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.

The Parties are presently unaware of any issues regarding privilege. The Parties may negotiate in good faith an agreement regarding the assertion of privileges, the manner in which the Parties intend to address disputes regarding privilege, and issues related to waiver, whether intentional or not, including inadvertent disclosures and for "claw back" or "quick peek" terms, as contemplated by Federal Rule of Evidence 502.

11.   Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2), should be modified, and whether and when depositions of experts should occur.

As noted, the Parties will designate experts, if necessary, after liability has been decided.

12.   In class actions, appropriate procedures for dealing with Rule 23, Fed. R. Civ. P. proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.

Plaintiffs' motion for class certification was denied by Order dated September 30, 2016 [38] "without prejudice to renewal after liability has been determined, in accordance with the parties' agreement [36]." In Document No. 36, the Parties agreed to defer sending notice until after determination of liability. Plaintiffs' Unopposed Motion for Leave to Amend Motion for Class Action Treatment to Add Statement on Notice Issues, [36] p. 2; Order [37] granting Motion [36].

13.   Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.

The Parties propose to bifurcate liability and damages, such that all damages issues (including damages discovery and damages expert issues) be deferred until resolution of liability.

14.   The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).

The pre-trial conference should be scheduled for a date approximately 60 days after the decision on any summary judgment motions on liability, if necessary.

15.   Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.

A trial date should be set at the pretrial conference for 30 to 60 days after that conference.

16.   Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.

None.

Dated:  December 16, 2019.

/s/ William Claiborne
WILLIAM CLAIBORNE, D.C.
Bar No. 446579
717 D Street, NW
Ste 300
Washington, DC 20004-2815
Phone: (202) 824-0700
Email: claibornelaw@gmail.com


/s/ Joseph A. Scrofano
JOSEPH A. SCROFANO
D.C. Bar # 994083
406 5th Street NW
Suite 100

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS
D.C. Bar No. 974858
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J. SAINDON
D.C. Bar No. 456987

Washington, DC 20001
Phone (202) 870-0889
Email jas@scrofanolaw.com


*Counsel for Plaintiffs*

Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (f)
andy.saindon@dc.gov


*Counsel for Defendant*