UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,** Plaintiffs, v. **GOVERNMENT OF THE DISTRICT OF COLUMBIA, et al.,** Defendant. | Civil Action No.: 15-737 (RCL) |

## MOTION FOR LEAVE TO AMEND SECOND AMENDED COMPLAINT

Plaintiffs Maggie Smith, Gerard Cassagnol, and Frederick Rouse hereby respectfully move this Court for leave to amend their Second Amended Complaint [50] (sometimes "2d Am. Compl.") and to file their Third Amended Complaint to add Kimberly Buffaloe and Carl Atkinson as Named Plaintiffs as to the Second Amendment claim. Plaintiffs file as attachments hereto a clean copy of the proposed Third Amended Complaint for filing, and also a copy redlined to show changes from the Second Amended Complaint for the convenience of the Court and the Defendant.

Since Ms. Buffaloe's and Mr. Atkinson's Second Amendment claims are identical to the Second Amendment claim Ms. Smith pled in the original Complaint (sometimes "Compl."), and the District had the notice of the proposed amendments required under Fed. Civ. Proc. 15(a)(2) and Fed. R. Civ. Proc. (c)(1)(B), there has been no detrimental reliance by the District on an earlier version of the complaint and no other prejudice to the District. *See e.g., Heller v. District of Columbia*, 290 F.R.D. 1, 5 (D.D.C. 2013)(Court denied motion for leave to amend to add an abandoned claim and new plaintiffs with standing to bring the new claim because Government had planned and prepared for litigation throughout the discovery period on the

assumption that that claim had been abandoned for lack of a plaintiff with standing). In fact, the District itself stated in "Defendant's Statement of the Bases for its Defenses" in the Meet and Confer Statement, "[a]t the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home." Meet and Confer Statement [73], p. 5. Moreover, both Parties agreed in the Meet and Confer Statement that Federal Rule of Civil Procedure 15 should govern any amendment of the pleadings and the Court did not set a deadline in the Scheduling Order for amending pleadings, so the "when justice so requires" standard of Rule 15 and not the "good cause" standard of Rule 16 governs this motion. Meet and Confer Statement, p. 6, ¶ 2; Order granting leave to amend [208], pp. 1-2 (docketed 1/20/2011), *Barnes v. District of Columbia*, 06-315 (D.D.C.) (RCL).

### Consent sought but not obtained

Pursuant to LCvR 7(m) Plaintiffs sought the consent of the District to this motion but the District did not consent.

### I.   Plaintiffs proposed amendments.

Plaintiffs propose adding two Named Plaintiffs to the Second Amended Complaint as to the Second Amendment claim and the Second Amendment Class only, and adding allegations setting forth the details of the District's enforcement of its gun control laws against them. Plaintiffs also propose eliminating for ease of reading only the claims this Court dismissed. For ease of reference Plaintiffs retain from the Second Amended Complaint the numbering of the remaining Claims 1, 3 and 6.

Ms. Buffaloe's and Mr. Atkinson's Second Amendment claims are identical to the Second Amendment claim Ms. Smith pled in the original Complaint [1]. Compl. ¶¶ 51-54; ¶¶ 58-59. As the District stated in "Defendant's Statement of the Bases for its Defenses" in the Meet and Confer

Statement, "[a]t the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home." Meet and Confer Statement [73], p. 5.

Plaintiffs propose adding Ms. Buffaloe and Mr. Atkinson to the Second Amendment claim of the complaint because both are D.C. residents and both are able and willing to serve as Class Representatives. Moreover, Ms. Buffaloe was indicted on and prosecuted on (but not convicted on) D.C. Code § 22–2511, presence in a motor vehicle containing a firearm, which was held unconstitutional by the District of Columbia Court of Appeals in *Conley v. United States*, 79 A.3d 270 (D.C. 2013) in an opinion decided September 26, 2013.

## II.  Justice Requires Granting Leave to Amend the Second Amended Complaint.

Fed. R. Civ. Proc. 15(a)(2) and Fed. R. Civ. Proc. (c)(1)(B) govern this motion. The Court's Scheduling Order does not have a deadline for amending complaints and other pleadings so the more stringent Rule 16 "good cause" standard has does not apply to this motion. *Barnes v. District of Columbia*, 06-315 (D.D.C.) (RCL), pp. 1-2.

Because leave to amend should be liberally granted, the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend. *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 22 (D.D.C. 2012).

Although the abuse of discretion standard applies to district court decisions under Rule 15(a), *Atchinson*, 73 F.3d at 426, district court decisions as to relation back under Fed. R. Civ. P. 15(c)(1)(B) are reviewed *de novo* and not for abuse of discretion. *See Slayton v. American Express Co.*, 460 F.3d 215, 226–228 (2d Cir. 2006) (district court decisions as to relation back under Fed. R. Civ. P. 15(c)(2) [now Fed. R. Civ. P. 15(c)(1)(B)] are reviewed de novo and not for abuse of discretion).

### A. Plaintiffs satisfy the standard for adding Ms. Buffaloe and Mr. Atkinson to the Second Amendment claim.

Under Rule 15, plaintiffs may amend their pleading anytime before trial with the Court's leave. Fed. R. Civ. P. 15(a)(2); *Atchinson v. District of Columbia*, 73 F.3d 418, 427 (1996).

The text of the rule itself provides that "[t]he court should freely give leave when justice so requires." *Id.;* Fed.R.Civ.P. 15(a). The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the District Court, but the Supreme Court has emphasized that an amendment should be granted unless there is a specific, significant reason for denial:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given.

*Foman v. Davis,* 371 U.S. 178, 182 (1962) (internal quotation marks omitted); *Atchinson v. District of Columbia*, 73 F.3d 418, 427 (1996). The D.C. Circuit has also noted: "when a plaintiff has imperfectly stated what may be an arguable claim . . . , leave to amend is ordinarily in order." *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1207 (D.C. Cir. 1993).

### B. The amendments adding Ms. Buffaloe and Mr. Atkinson relate back.

Although Federal Rule of Civil Procedure 15(a) permits amendments to the pleadings "when justice so requires," an amendment adding a new ground for relief to the complaint must contend with the applicable statute of limitations. *Jones v. Bernanke*, 557 F.3d 670, 674 (2009). Rule 15(c) saves an otherwise untimely amendment by deeming it to "relate back" to the timely-filed claims the original plaintiff alleged in the original complaint. *Id.* "[A] new plaintiff or claim can relate back "to the date of the original pleading if the 'amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 30 (D.D.C. 2019) (*quoting Jones v.*

*Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009) (omission in original) (*quoting* Fed. R. Civ. P. 15(c)(1)(B)).

1. *Relation back standard: "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."*

In *Smith* this Court evaluated the proposed amendment adding Mr. Davis and his claim for damages for the temporary loss of access to his car under Rule 15(c)(1)(B). *Smith*, 387 F. Supp. 3d at 30. This Court, "[took] as true plaintiffs' contention that "[t]he relevant transaction in the original Complaint is properly understood as Ms. Smith's arrest" in June 2014." *Id.*

The Court also considered Plaintiffs' "admission" that:

> by enforcing its unconstitutional gun control regime against Ms. Smith and the other class members[1], the District injured them in their persons and in their valuable property rights.

*Id.* at 31.

This Court held that "because plaintiffs' vehicle-related Second Amendment claims assert an unanticipatable ground for relief different in kind from those in the original complaint, they do not relate back to Smith's original complaint." *Id.* The Court reached this conclusion because "plaintiffs' original property rights argument said nothing about cars—it was limited to professional licenses, the right to vote, and the right to serve on juries. *Id.* (quoting Ms. Smith's original Compl. ¶¶ 22-24, ECF No. 1).

2. *Adding Ms. Buffaloe and Mr. Atkinson to the complaint as to the Second Amendment claim easily meets this standard.*

---

[1] Both the original complaint and the class complaint pled two distinct claims, a Second Amendment claim and a Fifth Amendment claim, and two distinct corresponding classes, a Prosecution class (renamed the Second Amendment class in the Second Amended Complaint), and a Nonresident class corresponding to the Fifth Amendment claim. The Second Amendment class comprised all persons injured by the District's total ban on carrying a pistol in public without regard to residency. The Prosecution Class included only non-residents.

Adding Ms. Buffaloe and Mr. Atkinson to the complaint as to the Second Amendment claim easily meets this standard because Ms. Buffaloe's and Mr. Atkinson's Second Amendment claims are the same as Ms. Smith's Second Amendment claim set forth in the original complaint because they "arise[] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," that is, Ms. Smith's arrest in June 2014 pursuant to the District's total ban on carrying a pistol in public. Compl. ¶¶ 51-54 (Claim 1, Second Amendment claim); *Jones*, 557 F.3d at 674-75. Therefore, "the original complaint adequately notified[2] the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Id.*; 6A Fed. Prac. & Proc. Civ. § 1497 (Standard for Determining When Amendments Relate Back—In General) (3d ed.). In fact, the District in the Meet and Confer Statement agreed with the premise of Plaintiffs' Second Amendment claim that, "[a]t the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home." Meet and Confer Statement, p. 5.

### 3. Plaintiffs' original complaint and Plaintiffs' Second Amended Complaint provided notice to Defendant.

The Second Amendment claim and the allegations setting forth the corresponding Prosecution class (renamed the Second Amendment class) in both the original Complaint and in the Second Amended Complaint was brought on behalf of all persons against whom the District enforced its unconstitutional gun control laws which included both residents and non-residents of the District.

### a) Ms. Smith's original Complaint.

_____

[2] The "notice" referred to here is the long-standing fundamentals of pre-*Twombly* notice pleading under Fed. R. Civ. P. 8. *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 865-66 (2008) (*quoting Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

 Ms. Smith in her original Complaint pled two distinct class action claims on behalf of two distinct classes of people against whom the District enforced its total ban on carrying a pistol outside the home or business. Claim 1 was based on the Second Amendment, and brought on behalf of "all individuals" excluded by the District's "total ban" from carrying a pistol outside the home or business, without regard to residency. Complaint, ¶¶ 51-54. The corresponding class, the "Prosecution class," comprised "each person who ... was arrested and/or subjected to prosecution ... for violation of any of the District's gun registration laws, including but not limited to D.C. Code § 22-4504(a) (2001)(carrying a pistol without a license), D.C. Code § 7-2502.01 (2001) (banning unregistered firearms), and D.C. Code § 7-2506.01(3) (2001) (banning unlawful possession of ammunition); (iii) while carrying a pistol. Complaint, ¶¶ 58-59. The Prosecution class was not limited by residency. *Id.*

Claim 2 was based on the Fifth Amendment, and brought on behalf of "who live outside the District of Columbia." Complaint, ¶¶ 55-57. The corresponding class, the "Nonresident class," *was* limited to non-residents. Complaint, ¶ 60(iv).

Ms. Smith was a member of both classes, because for Ms. Smith and other non-residents the same conduct (carrying a pistol in public) gave rise to two separate claims because for them the same conduct "affect[ed] more than a single [Constitutional] right." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992).

### b)  The Second Amended Complaint.

Plaintiffs' Second Amended Complaint re-pled the two distinct Second Amendment and Fifth Amendment claims, as well as pleading a distinct Fourth Amendment claim. The Second Amended Complaint reaffirmed in several places that only the Nonresident class was limited to non-residents of the District. *See e.g.*, ¶ 8, "The Nonresident Class includes only non-residents of

the District of Columbia. The other classes include both residents and non-residents of the District of Columbia."

Claim 1 was based on the Second Amendment and applies to "Named Plaintiffs' and the other Second Amendment Arrest Class members." The class definition of the Second Amendment Arrest Class in the Second Amended Complaint is virtually identical to the class definition of the Prosecution class in the original complaint. 2d Am. Compl. ¶¶ 245-253. Like the Prosecution class, the Second Amendment class is not limited to non-residents. *Id.* at 320.

The Fifth Amendment claim, renumbered as Claim 3 in the Second Amended Complaint, is based on the Fifth Amendment and applies to "Named Plaintiffs' and the other Nonresident Class members." The class definition of the Nonresident Class in the Second Amended Complaint is virtually identical to the class definition of the Nonresident class in the original Complaint.. 2d Am. Compl. ¶¶ 245-253. Like the Nonresident class in the original class, the Nonresident Class in the Second Amended Complaint *is* limited to non-residents. *Id.* at 320.

All named plaintiffs belong to both classes. *Soldal*, 506 U.S. at 70.

c)   Laws governing Plaintiffs' claims.

Judge Scullin in *Palmer* held that the combined effect of the "home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period violated the Second Amendment because they effected a "complete ban on the carrying of handguns in public." *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 183 (D.D.C. 2014).[3]

---

[3] Judge Scullin also enjoined the District from enforcing D.C. Official Code § 7-2502.02(a)(4), which prohibited "registration of handguns to be carried in public for self-defense by law-abiding citizens"; from enforcing D.C. Official Code § 22-4504(a), which prohibited carrying a weapon in public without a license; and from enforcing either statute "against individuals based solely on the fact that they are not residents of the District of Columbia." *Palmer v. District of Columbia*, 59 F.Supp.3d 173, 183 (D.D.C. 2014). Judge Scullin also enjoined the District from enforcing those statutes "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right

Introduced by the "Firearms Control Emergency Amendment Act of 2008," the "home limitations" of § 7-2502.02(a)(4) limited registration of pistols by "[a]ny person" for use for use in self-defense in the registrant's home.[1] 2d Am. Compl. ¶¶ 58-59.  Thus, only D.C. residents could even register, and thus own pistols. But, because of the home limitation, not even D.C. residents could carry a pistol in public. Thus, no person was allowed to register a gun for use outside the home.

D.C. Code § 4504(a)(2) (CPWL) in effect during the Class Period prohibited all persons from carrying a pistol in public because from 2008 until October 2014 the Chief of Police had no authority to issue licenses to anyone. 2d Am. Compl. ¶¶ 56-57. In fact, in 2012, the D.C. Council amended D.C. Code § 4504(a)(2) (Carrying a Pistol without a License, or "CPWL") to eliminate any reference to "license" so that CPWL became simply "CP," or Carrying a Pistol. D.C. Code § 22- 4504(a) amended by Firearms Amendment Act of 2012, D.C. Law 19-170, § 3(d) (effective Sept. 26. 2012). *Id.*

Regarding the application of these statutes to non-residents, Judge Scullin held:

Furthermore, as things now stand, Plaintiff Raymond [the only individual non-resident of the District], and all others who are not residents of the District, are treated exactly the same as residents of the District insofar as the District has a complete ban on the carrying of handguns in public for self-defense.

*Palmer*, 59 F. Supp. 3d at 184.

---

to bear arms." *Id.* (footnote omitted). On July 29, 2014, Judge Scullin granted, in part, the District's motion to stay, staying the injunction until October 22, 2014. See Doc. No. 53, *Palmer v. District of Columbia*, No. 09-1482 (FJS) (D.D.C.).

[1] Prior to that amendment, D.C. Code § 7-2502.02(a)(4) barred registration of handguns by anyone. D.C. Code § 7-2502.02(a)(4) ("A registration certificate shall not be issued for a . . . (4) Pistol not validly registered to the current registrant in the District prior to September 24, 1976."). *See Parker v. District of Columbia*, 311 F. Supp. 2d 103, 103 n.1 (D.D.C. 2004) (appellate history). 2d Am. Compl. ¶¶ 56-57.

These holding have issue preclusion effect against the District because Judge Scullin entered a judgment in *Palmer* which became final because the District dismissed its appeal of the judgment.[5] *Hurd v. District of Columbia*, 864 F.3d 671, 679 (2017)("Issue preclusion makes 'the determination of a question directly involved in one action . . . conclusive as to that question in a second suit.'"); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (1992).

Moreover, this Court denied the District's motion to dismiss Plaintiffs Claims 1 and 3 in the Second Amended Complaint. Order denying Plaintiffs' motion to reconsider. [76], p. 3.[6]

In fact, the District still agrees with Plaintiffs that the District's total ban on carrying a pistol in public treated all persons the same as to carrying a pistol in public under the Second Amendment. As the District phrased it in the Meet and Confer Statement, "[a]t the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home." Meet and Confer Statement [73], p. 5; Def's Mot. 23.

Instead, the District denied in its Motion to Dismiss the Second Amended Complaint that the "home limitations" of § 7-2502.02(a)(4) treats non-residents differently as to registering a pistol under the Fifth Amendment.

But, as this Court pointed out, the "home limitations" of § 7-2502.02(a)(4) imposed a total ban on gun *registration* by non-residents because § 7-2502.02 did not provide an avenue for people without a home in D.C. to register guns in D.C. *Smith*, 387 F. Supp. 3d at 28. Thus, although the treatment of residents and non-residents was the same as to carrying pistols outside the home, the reason non-residents could not register a pistol at all was their non-residency. So for

---

[5] *Palmer v. District of Columbia*, No. 14-7180, 2015 U.S. App. LEXIS 6414 (D.C. Cir. Apr. 2, 2015) (mem., appeal dismissed). 2d Am. Compl. ¶ 73.

[6] Plaintiffs also contended that possessing unregistered ammunition, D.C. Code § 7-2506.01 ("UA") along with other components of the District's gun control laws are unconstitutional. See e.g., 2d Am. Compl. ¶¶ 65, 72.

Ms. Smith and other non-residents the same conduct (carrying a pistol in public) gave rise to two separate claims because for them the same conduct "affect[ed] more than a single [Constitutional] right." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992). In their Motion to Dismiss the District never challenged the factual premise underlying Plaintiffs' Second Amendment claim that the District's total ban on carrying pistols outside the home applied to all persons against whom the enforced its unconstitutional gun control laws without regard to residency. Instead, the District accepted Plaintiffs contention that the non-residents' status as non-residents was not dispositive as to their Second Amendment claims because the District contended that "the concealed carry law treats District residents and non-residents identically, D.C. Code §§ 22-4506(a), (b." Def's Mot. 23. In fact, the District conceded in the Meet and Confer Statement, "[a]t the time of plaintiffs' arrests and seizures, no person — resident or non-resident — could carry a handgun or ammunition outside the home." Meet and Confer Statement, p. 5.

Judge Scullin in *Palmer* did not rule on Plaintiff Raymond and the other non-residents' Fifth Amendment claims. *Palmer*, 59 F. Supp. 3d at 183-84. This Court denied Defendant's motion to dismiss the Named Plaintiffs' Fifth Amendment claim. Order denying Plaintiffs' motion to reconsider, p. 3.

### C. Defendant had notice that Plaintiffs intended to add residents of the District of Columbia as Named plaintiffs because the Second Amendment claim and the Second Amendment class included residents as well as non-residents.

The District has had notice that Plaintiffs intended to add residents of the District of Columbia as Named plaintiffs because the Second Amendment claim and the Second Amendment class included residents as well as non-residents. The allegations in the original complaint and the class definition of the "Prosecution class" (renamed the Second Amendment class in the Second Amended Complaint) established that the "Prosecution class" included residents. In fact, the District conceded in the Meet and Confer Statement, "[a]t the time of

plaintiffs' arrests and seizures, no person — resident or non-resident — could carry a handgun or ammunition outside the home." Meet and Confer Statement, p. 5.

The notice requirement as to adding plaintiffs under Fed. R. Civ. P. (c)(1)(B) can be met either informally or formally. *Griffin v. District of Columbia*, 1996 U.S. Dist. LEXIS 7258, at *5 (May 28, 1996). Filing a case as a class action is one means of providing such notice. *Id.*; *Breen v. Chao*, 2019 U.S. Dist. LEXIS 46565, at *9 (D.D.C. Mar. 21, 2019); *Miller v. Air Line Pilots Ass'n*, 2000 U.S. Dist. LEXIS 8797, at *9 (D.D.C. Mar. 30, 2000); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 398 (E.D. N.Y. 1998). Informal notice also can be sufficient. In *Page v. Pension Benefit Guaranty Corp.* the parties entered into a stipulation staying proceedings in order to engage in settlement discussions on a nationwide class basis and the absent plaintiffs' rights were negotiated during settlement discussions; defendants accepted and acted on the understanding that the unnamed class members' claims were at issue. *Page v. Pension Benefit Guar. Corp.*, 130 F.R.D. 510, 512 (D.D.C. 1990). In *Estate of Doe v. Islamic Republic of Iran* the notice requirement of Rule 15 was satisfied where the second amended complaint added claims only by family members of deceased or injured servicemen whose estates or claims already were listed in the first amended complaint, but who had not yet been located or indicated an interest in joining the suit at the time the first amended complaint was filed. *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 17 (D.D.C. 2011).

Plaintiffs satisfied the notice requirement informally in several ways. Plaintiffs timely-filed motion for class action treatment provided Defendant additional notice beyond the notice in the original complaint that Ms. Smith's Second Amendment claim included residents. Both the Motion, [26], p. 2, and the Memorandum of Law [26-1], p.1, clearly stated that the Second Amendment claim and the Prosecution class (renamed the Second Amendment class in the Second Amended Complaint) included all persons against whom the District enforced its total ban

on carrying a pistol outside the home. (This class covers every person who was arrested for or was being subjected to a prosecution under the District's pre-*Palmer* gun registration regime at any time during the 2d Amendment Class Period. The Non-resident Class is limited to persons who were non-residents of the District when arrested.). Furthermore, the Right to Return Class included "every person from whom the District seized and retained guns or from whom the District seized guns and did not offer a procedure whereby the owner could appoint an agent for sale" regardless of residency.

In support of numerosity for the Prosecution class (Second Amendment class) Plaintiffs submitted a spreadsheet containing the names of the approximately forty members of the Second Amendment class and certain supporting documents relating to their arrests and prosecutions. The supporting documents show that many of the persons listed on the spreadsheet were District residents. [26-9]. The District analyzed the spreadsheet in its Opposition [31] but it never objected to any of the District residents as being outside the Second Amendment claim or the Second Amendment class. In support of their Reply [34] Plaintiffs submitted additional supporting documents identifying Second Amendment class members including District residents. Pls.'s Ex. # 1 [35-1].

Plaintiffs asked for and received discovery of arrest, detention, and/ or prosecution data from the District's databases regarding both D.C. residents and non-residents. The District never objected to providing data about D.C. residents on the basis of their residency. Pls.'s Ex. # 1 (District's discovery responses).

### D. No sufficient reason to deny the Plaintiffs' motion for leave to amend under the *Foman* factors.

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Atchinson*, 73 F.3d at 427. None of these reasons is present in this case, so the motion should be granted.

It took Plaintiffs many months to locate and contact and interview Ms. Buffaloe and to evaluate her suitability as a Named Plaintiff and potential class representative. The District did not produce addresses for defendants until about September 1, 2020. Plaintiffs produced Ms. Buffaloe's signed interrogatory responses to the District shortly thereafter. Plaintiffs only recently re-established contact with Mr. Atkinson (he had moved and taken a new phone number) and Plaintiffs produced Mr. Atkinson's signed interrogatory responses to the District shortly thereafter.

In *Barnes* this Court granted Plaintiffs' motion for leave to amend to add a Named Plaintiff reasoning that the amendment would not unduly prejudice the District because: (1) it would not require the District to engage in additional discovery; and (2) the District had notice of this amendment long before plaintiffs actually moved to amend their complaint. Order [208], p. 2 (docketed 1/20/2011), *Barnes v. District of Columbia*, 06-315 (D.D.C.) (RCL).

The same factors support granting Plaintiffs' motion to add Ms. Buffaloe and Mr. Atkinson as to the Second Amendment claim.

First, granting the defendant would not require the District to engage in additional discovery. *See Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) (finding that a court should give weight to "whether amendment of a complaint would require additional discovery"). Plaintiffs have already provided signed interrogatory responses from both Ms. Buffaloe (November 24, 2020) and Mr. Atkinson (December 23, 2020) which gave the District ample time to depose them before the close of the discovery period on January 22, 2021. Scheduling Order [94]. The District refused to depose either but the District has had ample opportunity. And the District's depositions of the other Named plaintiffs have been cursory lasting

only an hour or so, and the District did not meaningfully enquire into their qualifications as class representatives or any other class issues. Therefore the District waived any objections on this basis.

Moreover, the original Scheduling Order bifurcated liability and damages issues so the District still has the opportunity to depose Ms. Buffaloe and Mr. Atkinson on damages issues. All other information about Ms. Buffaloe and Mr. Atkinson and their arrest history is in the possession of the District.

Nor will Plaintiffs have to conduct additional discovery if the Court grants the amendment because of the amendment. Plaintiffs asked for and received productions of arrest, detention, and/ or prosecution ESI data on both D.C. residents and non-residents from the District's databases. The District never objected to providing data about D.C. residents on the basis of their residency. Pls.'s Ex. # 1. Plaintiffs is still awaiting data on criminal history record information and other data requested from defendant in document production requests but this delay in production is not related to the amendment.

Second, Plaintiffs provided defendant all the notice required by Fed. R. Civ. Proc. 15(a)(2) and Fed. R. Civ. Proc. (c)(1)(B) which govern this motion. The required notice is the long-standing fundamentals of pre-*Twombly* notice pleading under Fed. R. Civ. P. 8. *Meijer, Inc. v. Biovail Corp.*, 393-94, 533 F.3d 857, 865-66 (2008) (*quoting Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007))..

Plaintiffs provided actual notice regarding Ms. Buffaloe 60 days before the close of discovery and six weeks before filing the motion (November 24, 2020) and Plaintiffs notice regarding Mr. Atkinson (December 23, 2020) a month before the close of discovery and two weeks before filing the motion. Scheduling Order [94].

Moreover, the type of notice required under Fed. R. Civ. P. 15(c)(1)(B) is general notice of the type provided by class action allegations and informal means as detailed above. *Miller v. Air Line Pilots Ass'n*, 2000 U.S. Dist. LEXIS 8797, at *9 (D.D.C. Mar. 30, 2000)(in determining whether to add plaintiffs whose claims would normally be time barred, the critical consideration is whether the defendant knew or should have known of the existence and the involvement of the new plaintiff).

Under this standard Defendant had notice of Ms. Buffaloe's and Mr. Atkinson's potential involvement in the litigation from the inception of the case because of the class allegations in the Prosecution class (re-named the Second Amendment class). *Id.*

Therefore, there was no undue delay because defendant had the required notice of the identity of the proposed new plaintiffs and their claim is identical with the existing 2dam claim. *Id.* 6 Wright & Miller, Federal Practice and Procedure § 1501 ("As long as a defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the actions against him, he will not be prejudiced by the addition of a new plaintiff and thus should not be allowed to raise a limitations defense. ... As long as the original complaint gives the defendant adequate notice, an amendment relating back is proper even if it exposes defendant to greater damages.") (*quoted by Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 398 (E.D.N.Y. 1998)). Moreover, unlike in *Heller*, Plaintiffs never abandoned these resident plaintiffs because Plaintiffs requested and the District provided ESI data from the MPD, Superior Court, and Department of Corrections databases on these class members. Pls.'s Ex. # 1 (District's discovery responses). Moreover, because Rule 15 and not Rule 16 governs Plaintiffs' motion there is no independent "good cause" requirement requiring a showing of "diligence" for the amendment. *Breen v. Chao*, 2019 U.S. Dist. LEXIS 46565, at *12-13 (D.D.C. Mar. 21, 2019)(holding that Rule 15 allowed relation back of new Plaintiffs with the same claims but that Rule 16's good cause standard

triggered by an expired deadline in the Scheduling Order for amending the pleadings prevented the amendment).

Ms. Buffaloe's and Mr. Atkinson's Second Amendment claims are identical to the claims of Ms. Smith and the other Named plaintiffs.

Finally, none of the other *Foman* factors are present. *Foman*, 371 U.S. at 182

The amendment does not add any new legal claims. There is no "repeated failure to cure deficiencies by amendments previously allowed." *Id.* Plaintiffs have not moved to file an amended complaint since moving to file their Second Amended Complaint in 2017. Motion for leave to amend [43] docketed 11/22/17. There is no "bad faith, or dilatory motive on the part of movant." *Id.* Plaintiffs only began receiving ESI discovery in the District's first production on February 11, 2020 and discovery is still trickling in.

Finally, the proposed amendments are not futile. Plaintiffs are simply adding two D.C. residents with identical claims to the existing class members. Ms. Buffaloe's and Mr. Atkinson's Second Amendment claims relate back to the filing of the original complaint, and the Court already denied the District's motion to dismiss Plaintiffs Second Amendment claim. Order denying Plaintiffs' motion to reconsider. [76], p. 3.

Thus, this case is the opposite of *Heller v. District of Columbia*, 290 F.R.D. 1, 5 (D.D.C. 2013) where Judge Boasberg denied Plaintiffs' motion for leave to amend to "add" or revive an abandoned claim and to add new plaintiffs with standing to bring the new claim. The plaintiffs had abandoned an ADA claim (regarding gun ownership by the blind) for lack of any blind plaintiff with standing. After the Government had planned and prepared for litigation throughout the discovery period in reliance that that claim had been abandoned for lack of a plaintiff with standing, plaintiffs sought to revive the claim by adding some blind plaintiffs with standing. *Heller*, 290 F.R.D. at 5.

In this case, in contrast, the proposed new plaintiffs' claim is identical, the District had actual notice with signed interrogatories and notice through the class allegations, and the District itself conceded the factual premise of the Second Amendment claim in "Defendant's Statement of the Bases for its Defenses" in the Meet and Confer Statement. Meet and Confer Statement, p. 5.

**Conclusion.**

Wherefore the Plaintiffs move this Court to grant Plaintiffs motion to add Ms. Buffaloe's and Mr. Atkinson's to Plaintiffs' complaint as to the Second Amendment claims.

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579
Counsel for Plaintiffs

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com