UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,** | |
| Plaintiffs, | |
| v. | |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| Defendant. | Civil Action No.:  15-737 (RCL) |

## PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORY AND DOCUMENT PRODUCTION REQUESTS

Plaintiffs hereby move this Court to compel the District to provide signed responses to written discovery about persons who fell into one or more of the "restricted categories" of people prohibited from owning or possessing a firearm by D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) ("restricted category offenses") and to identify the restricted category they fall into pursuant to Fed. R. Civ. P. 37(a)(3), (4).

Specifically Plaintiffs move the Court to compel the District to:

➢ Respond to Plaintiffs' Interrogatory # 5 asking the District to identify each putative class member who fell into any one or more of the following "restricted categories" (and to identify the category they fall into) for each persons who was at the time of their arrest: (1) a drug addict; (2) had ever been convicted of a felony[1]; (3) had ever been convicted of a firearms charge; (4) had ever been convicted of a misdemeanor crime of domestic violence of an intrafamily offense, such as one defined in D.C. Official Code § 16- 1001(8); (5) subject to a civil protection order issued in relation to domestic violence and required the person to relinquish possession of any firearms; or (6) had been judged mentally incompetent by a court; and

---

[1] The term "felony" includes not only offenses classified as felonies but also misdemeanors punishable by more than a year in jail. D.C. Code § 4503(a)(1). These restricted category offenses are similar to but not identical to the restricted category offenses in the federal Section 922(g)(1).

> ➢ Respond to document production requests asking, in relevant part, for documents including "criminal history record information" -- what the District calls "CCH" or "computerized criminal history"-- which identify putative class members who fall into any one or more of the categories of Section 4503(a)(1) to (6) or Section 4504(a)(2) (the "restricted category offenses").

Fed. R. Civ. P. 37(a)(3), (4). The District's responses to Plaintiffs discovery requests are attached as Pls.'s Ex. # # 1A, 1B and 1C.

The "criminal history record information" – what the District calls "CCH" or "computerized criminal history"- the District needs to respond to Plaintiffs Interrogatory No. and the document production requests is basically publicly available convictions and pending court orders and warrants which the District collects about arrestees at the time of arrest or booking.

The District's "criminal history record information" or "computerized criminal history" ("CCH") supplies the data points needed to identify class members who fell into one or more of the restricted categories.

The District owns both the criminal history record information and the Cobalt database and data "warehouse" it resides in. Pls.'s Ex. # 26, Dudley depo., p. 33; 76; pp. 140; 147:17-22; depo., p. 155:8-9; Oversight Responses, Pls.'s Ex. # 21, pp. 42-43.

The District can access the criminal history record information using bulk searches with the unique identifiers of potential class members such as PDID and arrest number like it used to produce data exports of class members. Dudley depo., p. 147,154:7, 154:17-21.

Plaintiffs need the responses to identify class members and for other reasons. As a technical matter the classes could be defined without the data identifying potential class members who fell into a restricted category. But, at some point Plaintiffs need to know who the class members are, how many there are, and such details as the class member's charges and the disposition of their charges.

Moreover, in previous cases the Plaintiffs and the District have used criminal history to evaluate damages for class members.

Adequate notice is difficult and inefficient without the data.

As a practical matter, as explained below, Plaintiffs have worked with the District to narrow the scope of their Interrogatory No. 5 from all potential class members to just to non-residents who were not charged with any of the restricted category offenses.

As a practical matter, at present Plaintiffs are at a disadvantage because the District has access to the CCH data but Plaintiffs do not. For example, the District can value the case but Plaintiffs cannot. Plaintiffs cannot identify potential class members who should be excluded from the class but the District can.

Plaintiffs have had numerous conferences and emails with opposing counsel and their ESI experts and taken depositions in an attempt to resolve this dispute but Plaintiffs have not been able to move the District off its position that responding to the discovery requests is not its "burden."

Plaintiffs believe that the resolution of these discovery issues will not impact the Court's Scheduling Order [92] as to Plaintiffs' motion for summary judgment. Plaintiffs need the responses for class certification issues and ultimately the responses will be useful on damages issues.[2] Plaintiffs do not need the information for their summary judgment motion because the data does not affect the Named plaintiffs' liability determinations under their "people" Claims 1 and 3 and their "property" Claim 6. It will not likely impact the Court's Scheduling Order on Defendant's summary judgment motion either because the data does not affect the Named plaintiffs' liability determinations.

_____

[2] This Court denied Plaintiffs' motion for class certification by Order dated September 30, 2016 [38] "without prejudice to renewal after liability has been determined, in accordance with the parties' agreement [36]." Order, Document No. 38.

I.   Underlying Dispute: the Case and Plaintiffs' claims.

The collection of the District's gun control laws in force during the Class Period

("th[e]ensemble of Code provisions and police regulations"[3]) worked a total ban on the carrying of

pistols in public by any person, residents or non-residents. *Palmer v. District of Columbia*, 59 F.

Supp. 3d 173, 183 (D.D.C. 2014); *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 26 (D.D.C.

2019); Order [76] denying Plaintiffs' motion to reconsider, p. 3 (denying motion to reconsider

because the Court ruled in Plaintiffs' favor as to Claims 1 and 3). As the District stated in

"Defendant's Statement of the Bases for its Defenses" in the Meet and Confer Statement, "[a]t the

time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun

or ammunition outside the home." Meet and Confer Statement [73], p. 5.

The District's primary gun control laws were D.C. Code §§ 7-2502.01, 7-2506.01, and 22-

4504. *Smith*, 387 F. Supp. 3d at 25. But, in addition to these laws, the District had other gun laws

regulating the ownership or possession of firearms by certain categories of people with "prior

criminal history" of some kind, *e.g.*, felons, fugitives, domestic violence offenders, or persons

subject to a domestic violence orders prohibiting possession of firearms, or some other reason.

D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2). Identifying potential class members

who fall into these restricted categories is the purpose of Plaintiffs' disputed discovery and this

motion to compel.

A.   Named plaintiffs and their claims.

The Named plaintiffs are law-abiding citizens who either were permitted to carry guns in

their home states but were were completely barred from owning guns and carrying pistols in public

---

[3] *Wrenn v. District of Columbia*, 864 F.3d 650, 656 (2017)(referring to successor "good-reason" law or regulation).

in the District. Second Amended Complaint, ¶¶ 51-60. Each suffered grievously because the District enforced its unconstitutional gun laws against them.

Plaintiffs have also filed a Motion [95] for Leave to Amend the Second Amended Complaint to add two Named plaintiffs who were residents of the District when they were arrested, detained, and prosecuted in the District during the Class Period. Plaintiffs' proposed Third Amended Complaint [95-2], ¶¶ 254 to 283.

Plaintiffs have two types of remaining claims: (1) "people" claims; and (2) "property" claims. Claims 1 and 3 are brought by persons who were subjected to one or more of the following when the District enforced its unconstitutional gun laws against them: (1) arrested; (2) detained; (3) prosecuted; (usually by U.S. Attorney but sometimes by OAG); and sometimes (4) re-prosecuted by the OAG when the original prosecutions by the U.S. Attorney were dismissed after *Palmer* and the OAG re-brought the charges. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 23, 25-30 (D.D.C. 2019). The people claims includes claims for damages for intangible property interests such as professional licenses and security clearances. Claim 6 is brought by persons whose guns, ammunition and related property such as holsters and scopes were seized by the District as evidence and retained by the District long after any related case was dismissed, or simply destroyed. *Smith*, 387 F. Supp. 3d at 25.

**B. Focus of the discovery dispute: Identifying class members for the "people" claims, Claims 1 and 3.**

This motion focuses on compelling the District to identify putative class members who fell into one of the "restricted categories" of people prohibited from owning a firearm by laws such as D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2).

In this case, identifying class members for the people claims is a three-step process: (1) compile a list of potential class members from cobalt (MPD database) and CourtView (prosecution

database); (2) identify potential class members who fell into one of the restricted categories at the time of their arrests using conviction history and other data in CourtView and criminal history record information collected about arrestees from databases such as NCIC and WALES at arrest or booking; and then (3) as a merits issue, determine whether members of a particular restricted category must be or may be excluded from one or more of the classes on the basis of membership in the particular restricted category.

Discussions with persons familiar with the enforcement of the District's gun control laws during the Class Period and the data exports the District has produced to date indicate that the District routinely charged felons under either D.C. Code § 4503(a)(1) or D.C. Code § 4504(a)(2) which are two different versions of a "felon in possession" statute such as Section 922(g)(1).

But, the District's practice with respect to charging the other categories of people under these two statutes is less clear to Plaintiffs. The District knows its own practices with respect to charging the other categories of people under these two statutes but Plaintiffs do not.

### C. Plaintiffs' efforts to date to obtain discovery and to narrow the scope of their requests to reduce District's burden.

Plaintiffs propounded Interrogatory No. 5 asking for potential class members who fell into the restricted categories and the restricted categories they fell into and two sets of document production requests ("First Set" and "Second Set") to the District requesting "documents" (as defined in Fed. R. Civ. P. 34 including ESI) relating to the putative class members. The original Scheduling Order was entered on the docket 12/26/2019 and allowed six months – till June 26, 2020 - for fact discovery on liability and class issues. This Court has generously extended the fact discovery deadline for liability and class issues till January 22, 2020. The dates Plaintiffs propounded the interrogatory and document production requests and the dates the District first produced responses are set forth in the table below:

| Requests | Date propounded | Date of first response | Date of most recent supplement |
|----------|-----------------|------------------------|-------------------------------|
| First Set | 12/28/2019 | February 11, 2020 | November 20, 2020 |
| Second Set | 7/23/2020 | August 31, 2020 | November 20, 2020 |

Plaintiffs' discovery team began analyzing the data and negotiating with the District for supplemental productions as soon as Plaintiffs received the productions, a task which consumed many man hours and took months.[4] The District has made a total of at least 9 supplemental productions at Plaintiffs' request over the discovery period, the last one being produced on about November 20, 2020. The District in its written responses has focused its productions on providing data from the MPD booking database (Cobalt) and the Superior Court database (CourtView) for a list of putative class members and their charges and the disposition of their charges in this case.

But, starting at as early as October 2020, Plaintiffs began asking the District to also focus on providing the data in the District's databases and from other sources in the District's possession, custody, or control which Plaintiffs needed to identify the putative class members who fell into any of the categories in D.C. Code § 4503(a)(1) to (a)(6) and D.C. Code § 4504(a)(2) and the category(ies) they fell into. Pls.'s Ex. # 22, Deficiency letter dated September 22, 2020 (actually emailed to opposing counsel on 10/4/2020). In the letter Plaintiffs also proposed some techniques the District could use to respond to the requests, especially the requests for criminal history records, and offered the services of Mr. Bennett and his team for help formulating queries or other database issues. *Id.* at 1.

---

[4] Plaintiffs retained Bennett B. Borden, Esq., Partner and Chief Data Scientist and Chair, Privacy, Cybersecurity and Data Strategy Group at Faegre Drinker Biddle & Reath LLP, and Tritura Information Governance LLC to advise on discovery and technical database issues and to analyze the District's data productions and to assist in fact development from the District's productions.

On November 6, 2020 Plaintiffs deposed Mr. Dudley, whom the District designated as a 30(b)(6) deponent on Cobalt (MPD booking database) technical issues and processes. Mr. Dudley provided Plaintiffs valuable information set forth in detail below testifying that the District collected about arrestees the data Plaintiffs have requested at the time of arrest or booking, the District stores the District in a database and data warehouse the District owns, and the District owns the data.

Plaintiffs have worked with the District to obtain responses and to address the District's objections by narrowing the scope of the requests. For example, when the District contended that the search of CCH in in WALES/ NCIC would be burdensome, Plaintiffs proposed that the District produce a data export from CourtView showing the conviction history for each putative class member in CourtView. This data export shows the Superior Court conviction history for potential class members if not their entire conviction history from all jurisdictions.[5] But, if a putative class member had a prior felony conviction in the Superior Court there was no need to search for prior felony convictions in other jurisdictions in WALES/ NCIC. The District did agree to provide such a data export and did so on – and then the District supplemented the request at the Plaintiffs' request once Plaintiffs discovered in deposition other data in CourtView. Plaintiffs got a final export of Superior Court convictions with code sections and charge codes (for identifying felonies and domestic violence offenses) on November 20, 2020. Plaintiffs have identified at least 590 potential class members with prior felony convictions in the data export of Superior Court convictions provided by the District.

There is also data about arrestees subject to fugitive warrants when they were addressed.

---

[5] Section 4503(a)(1) refers to convictions "in any court" and Section 4504(a)(2) refers to prior felony convictions in the District "or another jurisdiction."

Another way Plaintiffs have worked to further narrow the scope of Plaintiffs' requests for persons who fall into any one or more of the categories in Section 4503(a)(1) to (6) is to run a query for the other categories in Section 4503(a)(1) to (6) in Superior Court cases. If a person satisfied any of the categories in Section 4503(a)(2) to (6) in Superior Court cases at the time of their arrest is no need to look in other jurisdictions using criminal history record information or computerized criminal history from WALES/ NCIC. This will only resolve the issue for people with the requested cases in the Superior Court cases but it should resolve the issue for them.

Starting at as early as October 2020 Plaintiffs began working with the District to develop a plan (including a possible stipulation) to identify persons who fell into the restricted categories based on the charges the MPD or the District prosecutors actually charged them with to obviate the need to the extent possible for criminal history record information from WALES/ NCIC. The factual premise is that if the person were charged by either the MPD or a District prosecutor with felon-in-possession the criminal records check did not show a prior felony conviction.

The remaining group of potential class members is persons on the list of class members from the MPD and CourtView databases (1) who do not have a prior felony conviction or a domestic violence conviction in court; and (2) who were not charged by either the MPD or a District prosecutor at the time of their arrest with a restricted category offense such as "felon-in-possession." Most of these persons are non-residents. Presumably if an arrestee were not charged with a restricted category offense then the criminal history check did not indicate a basis for a restricted category offense. Email from opposing counsel dated December 21, 2020, Pls.'s Ex. # 23.

But, Plaintiffs need a stipulation or a 30(b)(6) deponent who could resolve the issue by making binding statements about the District prosecutors' charging practices during the Class

Period to be sure because there is more than one reason a person was not charged with a restricted category offense.

Plaintiffs have also been negotiating with the District for a stipulation or a 30(b)(6) deponent who could resolve the issue by making binding statements about the District prosecutors' charging practices during the Class Period. If Plaintiffs can get an admission from the District that if a person were not charged with a restricted category offense then the District had no information that they fell into a trial court then the issue will be resolved.

Plaintiffs also noticed a 30(b)(6) deposition for the person identified by the District's 30(b)(6) deponent by name as most knowledgeable about conducting bulk searches in the District's data warehouses for criminal history record information, and for a 30(b)(6) deponent on the District's criminal history record information. The District failed to produce either deponent on the noticed date.

The District represented in its Motion [93] to Amend the Scheduling Order filed on 12/10/20 that:

> The requested extension will allow the District sufficient time to designate and prepare Rule 30(b)(6) witnesses and for plaintiffs to complete their depositions, while attending to other pressing matters. The requested extension will also allow the Parties to continue their negotiations to clarify the scope of the remaining discovery and, potentially, reach agreement on stipulations, which may avoid future litigation.

Defendant's Mot. p. 2.

So, Plaintiffs kept negotiating for a response to their Interrogatory No. 5 or a document production in response to their document production requests instead of filing their motion at that time.

Moreover, on December 2, 2020, before the District filed its motion, Plaintiffs noticed a 30(b)(6) deposition for 12/9/2020 for the "person most knowledgeable" about certain topics

related to searching for criminal history record information for arrestees during the Class Period and policies regarding charging arrestees with restricted category offenses based on their criminal history record information.

On December 21, 2020 counsel for the District stated:

> We remain confused. We can't agree to stipulate that "none of the persons in the group of 'neither charged nor convicted' of a restricted category offense did not fall into any of the restricted categories based on records in the District's possession, custody, or control" for the same reason we cannot answer Interrog. 5B, i.e., it is not our burden to do a criminal-history search on the names of everyone who was arrested for gun/ammo charges during the Class Period, even if they weren't charged with a disqualifying offense (or "restricted category" as you call it).

> If a person was not charged with a disqualifying offense during the Class Period, it is presumably because there wasn't one in their background.

Email from opposing counsel dated December 21, 2020, Pls.'s Ex. # 23. Plaintiffs sent a final email in reply but the District did not respond.

The District designated a deponent on December 29, 2020. The parties agreed to a deposition date of January 8, 2021. Based on the District's representation to keep negotiating based in its Motion to Extend the Scheduling Order deadlines Plaintiffs decided to wait for the 30(b)(6) deposition to try to get needed admissions in the deposition. But, the 30(b)(6) designee was unable to appear because he was on duty for the events of January 6 at the Capitol. The parties have re-scheduled the deposition for January 13.

But, Plaintiffs cannot be sure that the deposition will in fact take place on January 13 because of the current unsettled situation. Nor can Plaintiffs be sure that the deponent will be able to provide the testimony Plaintiffs needs as a substitute for their Interrogatory No. 5 and their document production requests.

The discovery period is over January 22, 2021.

Therefore, Plaintiffs file this motion to compel because they do not yet have the discovery responses they need and they cannot be sure of getting them before the end of the discovery period. If the 30(b)(6) deponent is able to appear and he does provide some or all the information Plaintiffs need then Plaintiffs can negotiate with the District to modify or even withdraw this motion.

## II.  Dispute regarding discovery: The District refuses to answer Plaintiffs' Interrogatory No. 5.

Plaintiffs propounded the following interrogatory to the District which the District has refused to answer completely. Moreover, the District has not produced a signed response to the relevant part of the interrogatory. The District has produced some data which resolves the interrogatory response for certain potential class members discussed above.

The remaining group of persons as to which the District has not provided a response is mainly potential class members who were not charged or convicted of any restricted category offense.

### A.  Plaintiffs' Interrogatory #5

**Interrogatory No. 5:**

Please identify any person:

A. who: (1) was arrested for any alleged violation of any provision of the District's laws (including any statute or regulation or other type of law) governing firearms or ammunition during the Class Period; or (2) who had been arrested for such laws before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period; and

B. who was, as of the time of their arrest described above in subparagraph (A), either in D.C or anywhere else in the United States: (1) a drug addict; (2) had ever been convicted of a felony; (3) had ever been convicted of a firearms charge; (4) had ever been convicted of a misdemeanor crime of domestic violence of an intrafamily offense, such as one defined in D.C. Official Code § 16-1001(8) ; (5) subject to a civil protection order issued in relation to domestic violence and required the person to relinquish possession of any firearms; or (6) had been judged mentally incompetent by a court.

**District's Response:** The District objects to this Interrogatory as overly broad and unduly burdensome because part B seeks information that is not captured at arrest; the information requested would have to be obtained by individually searching numerous databases, federal and local, for each of the more than 4,500 individuals identified in part A. Moreover, part B is irrelevant, because the information requested relates to the qualifications necessary to register a firearm in the District but there was no concealed-carry licensing regime in place in the District until October 2014. Because it is irrelevant to the allegations in the Complaint, the request is not proportional to the needs of this case. Subject to the General Objections, the District identifies the following responsive business records under Fed. R. Civ. P. 33(d) as responsive to part A of this Interrogatory: the Excel spreadsheet produced in native format beginning with the Bates number DC_ M Smith – 008671 – CONFIDENTIAL.xlsx.

**B. Legal Standard: The District failed to support its objections and they are contradicted by the District's own data and the District's own 30(b)(6) deponent so the District must respond completely to Interrogatory # 5.**

Interrogatory No. 5 asks the District to identify all persons who fit into one of the listed categories and the category(ies) they fit into. The categories in Interrogatory No. 5 track the categories in D.C. Code § 22-4503(a)(1) to (6) and D.C. Code § 4504(a)(2). Category number # 2 in Plaintiffs' Interrogatory No. 5 is worded "had ever been convicted of a felony." The exact wording of the corresponding category in D.C. Code § 4503(a)(1) is any person who "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." D.C. Code § 4503(a)(1). Plaintiffs' position is the term "convicted of a felony" in their Interrogatory No. 5 means the same thing. If it does not, then Plaintiffs' document production requests encompass criminal history record information for this category. But, as a practical matter, Plaintiffs believe it is less burdensome for the District to answer the interrogatory as to any person who "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" than to produce criminal history record information for the category.

The Excel spreadsheet produced in native format beginning with the Bates number DC_ M Smith – 008671 – CONFIDENTIAL.xlsx which the District references in its response is not

responsive. It contains CourtView docket entries for post arrest docket events from CourtView in Superior Court cases.

Plaintiffs' Interrogatory # 5 seeks nonprivileged matter that is relevant to a claim or defense and is not subject to any of the limitations imposed by Rule 26(b)(2)(C). *DL v. District of Columbia*, 251 F.R.D. 38, 42 (D.D.C. 2008). The interrogatory is relevant because it relates to identifying persons who may be disqualified from the classes or whom the District may contend are disqualified from Second Amendment rights and thus participation in the classes because they had criminal history data indicating that they fell into one of the restricted categories, so it relates to the claims and defenses of the Parties and the Rule 23 issues. *Id.*

### 1. The District's burdensome objection fails because the District failed to support its objections and they are contradicted by the District's 30(b)(6) deponent.

Once a requestor shows relevance as Plaintiffs have done, "the burden shifts to the non-moving party 'to explain why discovery should not be permitted." *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 18 (D.D.C. 2017). The District has failed to carry this burden.

Interrogatory # 5 is proportional to the needs of the case. Courts weigh six factors to evaluate the proportionality of a discovery request: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Breiterman v. United States Capitol Police*, 324 F.R.D. 24, 29 n.7 (D.D.C. 2018). Here, Plaintiffs need the responses, the amount in controversy is large, the District has the data needed to respond in its possession, custody, or control, Plaintiffs have no other meaningful access to the data from other jurisdictions, or even from the Superior Court in this Covid-19 period when the courthouse is closed, the likely benefit of the proposed discovery to Plaintiffs outweighs the burden or expense of the discovery to

Defendant because the District can access the criminal history record information or "computerized criminal history" as the District calls it from the District's own proprietary database with a single scripted query using PDID or arrest numbers one of which almost every potential class member has. Dudley depo., p. 154:7, 17-21(discussed below); *Moss v. Blue Cross & Blue Shield of Kan.*, Inc., 241 F.R.D. 683, 689 (D. Kan. 2007).

Moreover, this Court "only entertains an unduly burdensome objection when the responding party demonstrates how [discovery of] the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden,'" such as "specific estimates of staff hours needed to comply." *DL v. District of Columbia*, 251 F.R.D. 38, 44, 46 (D.D.C. 2008).

The District failed to support its objections; in fact, the District's objections that "part B seeks information that is not captured at arrest; [and] the information requested would have to be obtained by individually searching numerous databases, federal and local, for each of the more than 4,500 individuals identified in part A" are contradicted by the District's own data and 30(b)(6) deponent, as explained below. Therefore, the District must respond completely to Interrogatory # 5.

Also, in addition to failing as a factual matter the District's objections fail as a legal matter. The District has conceded in its objection that it has the data, and the District's counsel concedes that it can access the data one putative class member at a time. Although the District's own deponent contradicts this claim that the District can only access the data one putative class member at a time, assuming *arguendo* it were true, the District is still obligated to respond completely to the interrogatory both because it failed to support its objection by "submitting affidavits or offering evidence which reveals the nature of the burden,'" such as "specific estimates of staff hours needed to comply." *DL v. District of Columbia*, 251 F.R.D. 38, 44, 46 (D.D.C. 2008) and because the

District failed to establish that Interrogatory # 5 is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 18 (D.D.C. 2017)(once requestor shows relevance "the burden shifts to the non-moving party 'to explain why discovery should not be permitted").

But an even more fundamental problem with the District's burdensome objection as to the need for individual searches is that "its burden is its own doing" because the District had the computerized criminal history with which it could completely respond to Interrogatory # 5 when it used the data to make charging decisions and provide bail recommendations to Superior Court Judges and Magistrate Judges at First Appearance but, according to the District's objections (but not its deponent), the District did not preserve the data in an easily retrievable format. *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 327 (D.N.J. 2015)("problem with Atlantic City's burdensome argument is that its burden is its own doing"). This Court and other Courts have held that a party that maintains an inadequate filing system cannot assert the burdensomeness caused by the system in making a search for responsive documents as an objection to responding. *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991)(undue burden not established by need for "endless culling of files"); *Costantino*, 152 F. Supp. 3d at 327.

Finally, the mere fact that the interrogatory asks for data points for criminal history record information for 4,500 putative class members (which is not true) does not establish burdensomeness when the search can be made using a single query that would be produce a report that can be held in an Excel spreadsheet. In *Barnes* this Court ordered the District to respond to a combination interrogatory (part fact interrogatory/ part contention interrogatory) asking for its position on a set of 400 releases from the DC Jail listed in a spreadsheet (plaintiffs wanted to know if the District contended that the releases were on on-time releases or over-detentions). *Barnes v. District of Columbia*, 270 F.R.D. 21, 23 (D.D.C. 2010). Similarly, in *Moss* the District Court

found that a review of 1,800 files to locate adverse actions because of a specific policy was not necessarily overly broad or unduly burdensome on its face. *Moss*, 241 F.R.D. at 690. In Moss the defendant objected to interrogatories asking it to identify any employee who has suffered "any type of adverse employment action" due to either violation of defendant's FMLA policy or defendant's "call in" attendance policy because responding would require review of more than 1,800 personnel files. *Moss*, 241 F.R.D. at 690. The court found that a review of 1,800 files is not in and of itself overly broad and unduly burdensome on its face because a simple computer search could produce information sufficient to respond to the interrogatories "or, at a minimum, guide defendant's further searches." *Moss*, 241 F.R.D. at 690.

And using the sources described above (*e.g.*, conviction records from CourtView) the Parties have considerably reduced the number of potential class members for whom Plaintiffs still needs responses.

### 2.  *The District's objections to Interrogatory No. 5 are contradicted by the District's own data and 30(b)(6) deponent.*

The District's objection that the interrogatory is "overly broad and unduly burdensome because part B seeks information that is not captured at arrest [] [and] the information requested would have to be obtained by individually searching numerous databases ... for each of the more than 4,500 individuals identified in part A" is contradicted by the District's own documents and data and the District's own deponent as explained below.

#### a)  *The District had the requested Criminal history record information in its possession, custody, or control at or near the time of arrest in searchable relational databases which the District owns and the District owns the computerized criminal history data.*

The District obtains criminal history record information about arrestees at or near the time of arrest. For example, Ms. Smith's Pretrial Services Report, which contains her CCH data, which is nine in her case, shows her CCH data was captured within hours of arrest. Pls.'s Ex. # 15 (filed

under seal pursuant to Protective Order). The report is dated 06/30/2014; her arrest report shows that she was arrested June 29, 2014, 20:00 hours. *See also* Standard Operating Procedures for District Booking Teams, pages 6-8; 11-12 (WALES/NCIC and CJIS checks) 13-16 (Livescan). https://go.mpdconline.com/GO/SOP-03-04.pdf

The type of criminal history record information the District collects about arrestees and when is part of the topics of Plaintiffs 30(b)(6) deposition currently set for January 8, 2021.

Mr. Dudley, the District's 30(b)(6) deponent, testified that during the Class Period the District fingerprinted arrestees through the AFIS system, which linked a PDID number to the fingerprints. Dudley depo., p. 33; 76. When AFIS checks the "rap sheet" (criminal history) WALES populates the rap sheet in a record called "CCH" (computerized criminal history). Dudley depo., pp. 140; 147:17-22. The CCH segment is owned and operated by MPD. Dudley depo., p. 155:8-9; MPD Oversight Responses, Pls.'s Ex. # 21, pp. 42-43.[6]

### b) *The District's own 30(b)(6) deponent concedes the District can search its WALES database for the computerized criminal history for the entire putative class in "bulk" searches with a single query.*

The District's own 30(b)(6) deponent testified that District database specialist can run the searches using "scripts" for all putative class members at once using arrest and PDID numbers rather than having to run individual searches for each person as follows. When the search for the "rap sheet" (criminal history record information) is made WALES populates the rap sheet in the form of a CCH. Dudley depo., p. 147:21. All of the criminal history lies in the WALES database

---

[6] A list of electronic databases maintained by MPD and "for which [MPD] own the application and the data" and the descriptions appears in the MPD's Written Responses to the Committee on the Judiciary and Public Safety's questions for the Committee's Fiscal Year 2017 Performance Oversight hearing of the Metropolitan Police Department (MPD) ("MPD Oversight Responses"). Relevant pages attached as Pls.'s Ex. # 21 (pages 42 and 43); Written responses available at https://dccouncil.us/wp-content/uploads/2019/01/JPS-Performance-Oversight-Responses-2018-MPD.pdf

and it can be queried at any time. Dudley depo., p. 154:7. The data warehouse engineers, if given

"a list of people and their arrest numbers and PDIDs and [asked for] a criminal history" report,

could generate a list of CCH for each person using scripting on a "bulk" basis, that is, querying for

a list using a script without having to make a search for each person individually. Dudley depo., p.

154:17-21. Mr. Dudley even gave the name of the manager of the warehouse team who could

manage such a search; Plaintiffs properly noticed his deposition on 11/13/2020 and again on 12/2/

2020 but the District has refused to produce him for a deposition.

      As a practical matter, given that the District's database warehouse specialists can run "bulk

searches" for criminal history record information in WALES using queries based on arrest

numbers and PDIDs responding to this Interrogatory # 5 is not burdensome at all.

      Another source for the criminal history record information data is the Pretrial Services

module in CourtView. Pls.'s Ex. #  24.

      The District ran such searches in Cobalt and CourtView for all putative class members.

The District can obviously make batch queries in the Pre-Trial Services module in CourtView

because the District has produced data exports from CourtView in response to Plaintiffs requests

for records of all persons prosecuted in Superior Court on weapons charges.

      The District has produced bulk data exports from all of its proprietary databases except for

WALES. The District produced a "customized report" (data export) in a spreadsheet it called

"ClassAction_Firearm_Ammunition_Reports" from AFIS, EvidenceOnQue, and Cobalt from

data stored in the District's "data warehouse" [but not WALES]. The District has produced a

small amount of CCH history data from WALES/ NCIC in the narrative sections of

ClassAction_Firearm_Ammunition_Reports which arresting officers entered into Cobalt.

      **3.  *The Duncan Ordinance does not prevent the District from responding to Interrogatory
        # 5.***

The District did not assert the "Duncan Ordinance" as a privilege in its objections to Interrogatory No. 5 but recently the District through counsel in emails has contended that the Duncan Ordinance prevents the District from responding to Interrogatory # 5. Not so.

The short response to this objection is the Duncan Ordinance does not prevent the District from responding to Interrogatory # 5 because responding to Interrogatory # 5 does not require the District to reveal or produce any of its computerized criminal history, only to identify persons who have publicly available convictions and pending court orders and warrants based on it and other sources (*e.g.*, CourtView). Also, the Duncan Ordinance applies to arrest data not reduced to a conviction and the criminal history record information forming the basis for a response to Interrogatory No. 5 relates to publicly available convictions and pending court orders and warrants which the District collects about arrestees at the time of arrest or booking. Moreover, the "Duncan Ordinance" is a regulation promulgated by the District's former Board of Commissioners before Home Rule to govern the distribution of arrest records in this jurisdiction, so it is a non-legislative internal order, *Utz v. Cullinane*, 520 F.2d 467, 470 (1975), which the District can override.

The Duncan Ordinance applies to unexpurgated arrest records not resulting in a conviction. *See Newspapers, Inc. v. Metro. Police Dep't*, 546 A.2d 990, 993 (D.C. 1988)(Duncan Ordinance, standing alone, prohibited the release of any arrest records pertaining to his case because Senator Kasten's arrest did not lead to a conviction); *Utz v. Cullinane*, 520 F.2d 467, 470, 480-481 (1975). Therefore, the Duncan Ordinance does not apply to convictions or pending CPO orders on the Superior Court docket or on the dockets of other courts or fugitive warrants.

First, Plaintiffs seek criminal history record information relating to convictions and court orders and fugitive status so the information is already in the public record and there is no need for a release under 1004.7 which applies only to "[u]nexpurgated adult arrest records." *See Newspapers, Inc.*, 546 A.2d at 993. Second, the criminal history record information Plaintiffs seek

is subject to a Protective Order entered by this Court to the extent that it is not already in the public record. Third, any conflict between the Duncan Ordinance – which is essentially a Mayor's regulation – and the federal discovery rules must be resolved in favor of Plaintiffs in this case. *Bolger v. District of Columbia*, 2006 U.S. Dist. LEXIS 115780, at *14 (D.D.C. Aug. 3, 2006) (JDB) (District's motion for a proposed protective order evaluated under the federal Rules and the federal Rules determine disclosure).

As a practical matter, the District cannot have both ways. A party may not "employ privileges both as a sword and as a shield." *Porter v. Pinkerton Gov't Servs.*, 304 F.R.D. 24, 30 (D.D.C. 2014) (*citing Koch v. Cox*, 489 F.3d 384, 390-91 (2007) (citation and quotation marks omitted). At the end of the day the District must elect between responding to Interrogatory # 5 or continuing to rely on the privilege it claims under the Duncan Ordinance. *Id.* If the District chooses privilege over production, the District must forego any argument that any potential class member with a prior felony conviction or who is in any of the other categories in D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) is outside the scope of the Second Amendment and thus has no claim or otherwise should be excluded from any of the classes. *Id.*

### III. Dispute regarding discovery: The District refuses to provide computerized criminal history documents requested by Plaintiffs' Document production requests.

#### A. Document production requests for computerized criminal history - First Set and Second Set.

Document production request No. 1 (First set) and the District's response read:

All Documents including metadata referring to every person (resident and non-resident alike) who: (1) was arrested for any alleged violation of any provision of the District's laws (including any statute or regulation or other type of law) governing firearms or ammunition during the Class

Period; or (2) who had been arrested for such laws before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period.[7] [propounded 12/28/2019]

> Response: The District objects to this request because it is overbroad and unduly burdensome, as all documents including metadata that refer to each identified person includes documents irrelevant to the allegations in the Complaint and would require the expenditure of many hours of labor to gather and review. Therefore, the request is not proportional to the needs of this case. Subject to the General Objections, the District will produce, as the Parties have discussed, documents identifying every person arrested for alleged violations of the District's laws governing firearms or ammunition during the Class Period, or those arrested for such laws before the start of the Class Period but still detained and/or prosecuted after the start of the Class Period. [Dated: February 11, 2020]

> Document production request No. 3 (Second Set) reads.

3. All documents which relate, reflect, or refer to any records relating to arrests, prosecutions and criminal convictions for each person who: (1) was arrested for any alleged violation of any provision of the District's laws (including any statute or regulation or other type of law) governing firearms or ammunition during the Class Period; or (2) who had been arrested for such laws before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period. [propounded 7/23/2020]

> Response: The District objects to this Request as overly broad and unduly burdensome, because it seeks documents irrelevant to the allegations in the Complaint and would require the expenditure of many hours of labor to gather and review. This Request is additionally duplicative of plaintiffs' original Request for Production No. 4, served December 28, 2019. Therefore, this Request is not proportional to the needs of this case. [Dated: August 31, 2020]

> Document production request No. 4 reads.

All records from all fields (including metadata) from any MPD booking database referring to every person (resident and non-resident alike) who: (1) was arrested for any alleged violation of any provision of the District's laws (including any statute or regulation or other type of law) governing firearms or ammunition during the Class Period; or (2) who had been arrested for such laws

---

[7] Plaintiffs also asked for "screenshots" showing the field name visible to a user viewing records in the database For each database from which the District provides records, Document production request No. 6, and all dropdown menus and each code utilized in any field in MPD booking database that utilizes dropdown menus or codes, Document production request No. 7.

6. For each database from which the District provides records please provide "screenshots" showing the field name visible to a user viewing records in the database. 7. Please provide all dropdown menus and each code utilized in any field in MPD booking database that utilizes dropdown menus or codes.

before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period.

Document production request No. 3 (Second Set) specifically asks for, among other things documents which relate, reflect, or refer to any records relating to "arrests, prosecutions and criminal convictions" for each putative class member without specifying any database or limiting the request to any database or other source. Plaintiffs indicated to the District that they construed to request to be limited to convictions in place before the putative class members' arrests.

REQUEST FOR PRODUCTION NO. 9: All records from all fields (including metadata) from any Superior Court docketing database or other database referring to every person (resident and nonresident alike) who: (1) was arrested for any alleged violation of any provision of the District's laws (including any statute or regulation or other type of law) governing firearms or ammunition during the Class Period; or (2) who had been arrested for such laws before the start of the Class Period but was still being detained and/ or prosecuted after the start of the Class Period. [propounded 12/28/2019]

> Response: The District objects to this request because it includes documents protected from disclosure by court order. In addition, the Request is overbroad and unduly burdensome insofar as the request includes documents irrelevant to the allegations in the Complaint and would require the expenditure of many hours of labor to gather and review. Therefore, the request is not proportional to the needs of this case. Subject to the General Objections, the District will produce documents identifying every person arrested for alleged violations of the District's laws governing firearms or ammunition during the Class Period, including those arrested for such laws before the start of the Class Period but still detained and/or prosecuted after the start of the Class Period, excepting those records protected from disclosure by court order. [Dated February 11, 2020]

**B. Plaintiffs focused on their requests for criminal history records in their Deficiency letter.**

Plaintiffs focused on their requests for criminal history records in their Deficiency letter. Pls.'s Ex. # 22, p. 2 (Interrogatory and Document Production Request for Criminal History Records). Plaintiffs highlighted that their requests includes databases under the control of other stakeholders in the District's criminal justice system the District which had the "legal right to obtain ... on demand" as well as the District's own databases. *Huthnance v. District of Columbia*, 255

F.R.D. 285, 292-93 (D.D.C. 2008) (*quoting Alexander v. FBI*, 192F.R.D. 50, 53 (D.D.C. 2000); *Alexander v. FBI*, 194 F.R.D. 299, 301 (D.D.C. 2000).

The same points Plaintiffs made about the District's obligation to respond to their Interrogatory No. 5 also apply to their document production requests. The District did not substantiate any of its objections by submitting affidavits or offering evidence which reveals the nature of the burden," such as "specific estimates of staff hours needed to comply." *DL v. District of Columbia*, 251 F.R.D. 38, 44, 46 (D.D.C. 2008). The request is proportional. The District had the requested criminal history record information (which the District owns) in its possession, custody, or control at or near the time of arrest in its own searchable relational databases. Finally, the Duncan Ordinance does not prevent the District from responding to Interrogatory # 5.

Plaintiffs' document production requests, read together, clearly request the criminal history record information within the District's possession, custody, or control.

Conclusion.

Wherefore Plaintiffs move this Court to grant Plaintiffs motion to compel.

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579
Counsel for Plaintiffs
I certify that I have in good faith conferred with the
District through counsel in an effort to secure the
information sought without Court action. Fed. R.
Civ. P. 37(a)(1).

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email clairbornelaw@gmail.com