## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 15-737 (RCL) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFFS' MOTION TO COMPEL RESPONSES TO
### INTERROGATORY AND DOCUMENT PRODUCTION REQUESTS

### INTRODUCTION

In their motion to compel, plaintiffs seek information that the District of Columbia (the District) is prohibited from providing, would be irrelevant to the question of liability, and would be unduly burdensome to produce. In this suit, plaintiffs allege that the District's enforcement of previous laws prohibiting the carrying of firearms and ammunition in public—and the District's seizure of that property at arrest—violated plaintiffs' constitutional rights in the period before the courts invalidated such laws and the District amended them.

Now, plaintiffs seek broad, multi-jurisdiction criminal history information of all potential class members; specifically, they seek to determine whether those persons have a "disqualifying condition" in their past that would prevent them from currently registering a handgun in the District or obtaining a license to carry a concealed pistol. But the District is prohibited from providing that information under

the "Duncan Ordinance," 1 DCMR § 1004, and longstanding law. Moreover, whether putative class members have a disqualifying condition is irrelevant to the current determination of liability, because charges under those provisions may only be brought by the United States Attorney's Office (USAO), not the District of Columbia. Such information may become relevant, if at all, to determine damages for putative class members, but production is unwarranted now. In any event, the District has already provided relevant information relating to putative class members based on records from the Metropolitan Police Department (MPD) and the Superior Court of the District of Columbia; the burden to gather and produce broad criminal history information from any other jurisdiction, would be onerous and disproportionate to the needs of the case. The Court should therefore deny plaintiffs' motion to compel discovery.

## BACKGROUND

### I.  Procedural History

Plaintiffs' putative class action challenges their arrests and prosecutions (and the seizure of their property), at a time before the courts invalidated laws relating to firearms and ammunition. *See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 13–16 (D.D.C. 2019).[1] Among the provisions plaintiffs challenge is D.C. Code § 22-4504 (2013), which prohibited all carrying of weapons in public in the District. *E.g.*, Second Am. Compl. ¶¶ 56–57.

---

[1]     The Class Period is from May 15, 2012 through October 10, 2014. Second Am. Compl. [50] ¶ 4.

Following the Court's denial of the District's motion to dismiss plaintiffs' Second Amended Complaint, the Court entered a Scheduling Order [80] and the Parties began discovery. The Parties negotiated a proposed protective order which the Court entered on the docket. *See* Protective Order [83]. The order provides that: "Nothing in this Protective Order shall be construed to require the production of CONFIDENTIAL INFORMATION privileged or otherwise protected from disclosure (Protected Material)." *Id.* § IX.A.

Plaintiffs' second set of interrogatories sought, among other information, the identities of any person:

> who was, as of the time of their arrest … either in D.C or anywhere else in the United States: (1) a drug addict; (2) had ever been convicted of a felony; (3) had ever been convicted of a firearms charge; (4) had ever been convicted of a misdemeanor crime of domestic violence of an intrafamily offense, such as one defined in D.C. Official Code § 16-1001(8); (5) subject to a civil protection order issued in relation to domestic violence and required the person to relinquish possession of any firearms; or (6) had been judged mentally incompetent by a court.

Pls.' Ex. 1B [96-2] at 6 (Interrogatory No. 5).

The District objected to the interrogatory "as overly broad and unduly burdensome because [it] seeks information that is not captured at arrest; the information requested would have to be obtained by individually searching numerous databases, federal and local, for each of the more than 4,500 individuals identified … ." *Id.* The District also objected on the basis of relevance, "because the information requested relates to the qualifications necessary to register a firearm in the District but there was no concealed-carry licensing regime in place in the District until October 2014 [and thus plaintiffs' requested information would go beyond the Class

Period]. Because it is irrelevant to the allegations in the Complaint, the request is not proportional to the needs of this case." *Id.* at 6–7.[2]

On November 6, 2020, the District designated, under Fed. R. Civ. P. 30(b)(6), Donald V. Dudley, Sr., of MPD to testify about a number of topics concerning MPD's "Cobalt" records management system. *See* Ex. 1 (Nov. 2020 Notice of Deposition). During his deposition, Mr. Dudley testified about the Computerized Criminal History (CCH) database, which is part of the Washington Law Enforcement System (WALES). *See* Pls.' Ex. 26 [97-1] at 5–7.

After Mr. Dudley's deposition, plaintiffs requested, among other things, "a supplemental response of criminal histories of class members from WALES[.]" *See* Ex. 2 (Nov. 16, 2020 Email from A. Saindon to W. Claiborne) at 1–2. The District responded, noting that "[t]he information [plaintiffs' counsel] requested remains irrelevant here and overly burdensome to produce. Moreover, the 'Duncan Ordinance,' 1 DCMR Ch. 1000, prohibits [the District] from providing the records … ." *Id.*

Plaintiffs then sought to depose a specific MPD employee "about criminal history data pull capabilities and DC code numbers[.]" *See* Ex. 3 (Nov. 19, 2020 Email

---

[2]     At the start of the Class Period, District law prohibited any person from possessing a firearm who:  had ever been convicted of a felony, D.C. Code § 22-4503(a)(1) (eff. June 9, 2011 to Sept. 25, 2012); was a drug addict, *id.* § 4503(a)(4); had ever been convicted of a District firearms charge, *id.* § 4503(a)(2); had ever been convicted of "intrafamily offense," *id.* § 4503(a)(6); or was subject to a civil protection order related to domestic violence that required relinquishment of a firearm, *id.* § 4503(a)(5).

from A. Saindon to W. Claiborne) at 1. Again, the District objected, citing relevance and the Duncan Ordinance. *Id.*

On December 2, 2020, plaintiffs served a revised deposition notice under Rule 30(b)(6), listing additional MPD "arrest process" topics, including "[w]hat policies and practices did MPD follow for searching for criminal history and mental health background of arrestees processed by MPD on weapons charges during the Class Period … ." Ex. 4 (Dec. 2020 Notice of Deposition).

In response to that notice, on January 13, 2021, the District produced MPD Commander John Haines, who testified that arresting officers or booking technicians can conduct background, criminal-history checks on arrestees, but that performing such searches is not an MPD practice or requirement and consequently not performed on a regular basis. *See* Ex. 5 (Haines Dep. Tr. Excerpts) at 3–5. Commander Haines also testified that for purposes of determining whether arrestees had a criminal history that would allow them to be charged under one of the "restricted categories" of D.C. Code § 22-4503(a)(1) to (a)(6), such searches would be done "later in the process" by the USAO or during grand jury proceedings—because they involve felonies—rather than by MPD. *Id.* at 5–7.

Despite "numerous conferences and emails," the Parties have been unable to resolve the discovery issues presented in plaintiffs' motion to compel. Pls.' Mot. at 3.

## II.   <u>The Duncan Ordinance</u>

The Duncan Ordinance, named after the then-Corporation Counsel, was adopted by the D.C. Board of Commissioners in 1967 to prohibit the use of arrest

records for employment qualification purposes. *Jacobs v. Experts, Inc.*, 212 F. Supp. 3d 55, 81 and n.21 (D.D.C. 2016), *vacated in part on reconsideration*, *sub nom. DeLorenzo v. HP Enter. Servs.*, Civil Action No. 15-216 (RMC), 2016 WL 6459550 (D.D.C. Oct. 31, 2016). *See also Morrow v. District of Columbia*, 417 F.2d 728, 731 (D.C. Cir. 1969) (discussing genesis of Duncan Ordinance). *Cf. Utz v. Cullinane*, 520 F.2d 467, 486 (D.C. Cir. 1975) (noting that the Duncan Ordinance prohibits "the routine dissemination of adult arrest records to the FBI.").

Adult arrest records in the District may only be released to "law enforcement agents" for "law enforcement purposes." 1 DCMR § 1004.1.[3] The term "arrest record" is defined broadly as "a record of each case in which an individual in the custody of any police force or of the United States Marshal is charged with having committed a criminal offense in the District[,]" including where a person is released "without having his guilt or innocence of the charge determined by a court … ." D.C. Code § 5-113.02 (2020).

Even when arrest records may be disseminated, they must be released "in a form which reveals only entries relating to offenses which have resulted in convictions or forfeitures of collateral in a court proceeding." 1 DCMR § 1004.4. Persons seeking arrest records of other individuals must "present releases in appropriate form executed by the persons to whom the records may relate." *Id.* § 1004.7.

---

[3]     "Law enforcement agent" in this context includes defense attorneys "with respect only to the records of their client defendants[.]" 1 DCMR § 1004.2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(a)(3) permits a party seeking discovery to move for an order compelling an answer or production if another party fails to answer an interrogatory or to produce documents. *See also* Fed. R. Civ. P. 26 (governing discovery generally); Fed. R. Civ. P. 33 (interrogatory requests). "Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel." *Barnes v. District of Columbia*, 289 F.R.D. 1, 5–6 (D.D.C. 2012). "[T]he party seeking to compel discovery has the burden of proving that a discovery response is inadequate." *Id.* at 6.

"[A]ll discovery is subject to the balancing test ... that requires a court to limit the discovery 'otherwise allowed by these rules' if the burden outweighs its likely benefit." *Arochi v. Novak Druce Connolly Bove & Quigg, LLP*, Civil Action No. 18-2266 (APM), 2020 WL 7260439, at *1 (Oct. 19, 2020) (quoting *Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 49 (D.D.C. 2008) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

"The scope of discovery generally includes that which 'is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of,' ... 'the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Williams v. United States*, 331 F.R.D. 1 (D.D.C. 2019) (citing Fed. R. Civ. P. 26(b)(1)) (emphasis added). "The party

seeking discovery must first demonstrate that the information sought is within the scope of discoverable information under Rule 26." *United States v. All Assets-Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016). "If that party carries its burden, the party resisting discovery then must show 'why discovery should not be permitted.'" *Id.* (citation omitted).

Class discovery is governed by the general limitations outlined in Rule 26(b)(1). *See, e.g.*, *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (citing *Laxalt v. McClatchy*, 809 F.2d 885, 890 (D.C. Cir. 1987)) (observing in reference to Rules 26(b)(2) and 26(c) that "[i]t is appropriate for the court, in exercising its discretion … to undertake some substantive balancing of interests … ." (internal quotation marks omitted)).

## ARGUMENT

### I. The Duncan Ordinance Prohibits the District from Providing the Requested Information.

Plaintiffs seek the criminal histories of all potential class members, *see* Pls.' Mot. at 1–2, but the District is prohibited from providing that information. The Duncan Ordinance "continue[s] to restrict the government's use and dissemination of arrest records … ." *Newspapers, Inc. v. Metro. Police Dep't*, 546 A.2d 990, 993, 1001 n.20 (D.C. 1988).

As explained above, the Duncan Ordinance authorizes the release of criminal-history information to law enforcement agents only for "legitimate law enforcement purposes." *Newspapers, Inc.*, 546 A.2d at 993. Because this matter has not yet been certified as a class action, counsel cannot obtain the criminal histories of all putative

class members without a signed release from each potential class member. 1 DCMR § 1004.7.

Moreover, plaintiffs fail to establish a current need for that criminal history information to determine liability. *See* Fed. R. Civ. P. 26(b)(1) (requiring analysis of "whether the burden or expense of the proposed discovery outweighs its likely benefit"). Regardless of whether the protections described above strictly govern here, "those provisions should at least inform a district court's determination of whether to compel production … under Federal Rule of Civil Procedure 26." *In re Sealed Case*, 381 F.3d at 1214.

Indeed, "[a]lthough [Rule 26] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984). Thus, "in determining which interests to weigh in the Rule 26 balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges." *In re Sealed Case*, 381 F.3d at 1215–16. So, too, when managing class discovery, "district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998).

The provisions cited above demonstrate a strong interest in maintaining the confidentiality of the information plaintiffs seek. Although persons may obtain their own criminal histories, the Duncan Ordinance allows non-law enforcement

personnel—even defense counsel—to obtain the criminal history records of others only with a signed release. 1 DCMR § 1004.7.[4]

## II.  The Information Sought Is Irrelevant and Unduly Burdensome.

Plaintiffs fail to demonstrate that the burden of their request is outweighed by the probative benefit of the information they seek. "[C]onsiderations of both relevance and proportionality ... govern the scope of discovery" allowed under Rule 26. *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). Admittedly, contact information of potential class members may be discoverable when necessary to provide notification of opt-in or opt-out rights. *See, e.g.*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (discovery necessary to comport with notice requirement of the Age Discrimination in Employment Act of 1967); *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (same).

But plaintiffs seek the information here apparently *not* for purposes of establishing liability, but in an attempt to quantify damages, *i.e.*, to determine which potential class members would not be able to *currently* qualify to register a handgun or obtain a license to carry one in public, because of a disqualifying condition (or "restricted category," as described by plaintiffs) in their criminal history. *See* Pls.'

---

[4]    As noted, the Duncan Ordinance was originally enacted because "pre-conviction and post-exoneration arrest information" was being used improperly by potential employers. *Jacobs*, 212 F. Supp. 3d at 81 and n.21. The District continues its efforts to protect such information from improper disclosure. *See id.* (citing recent legislative efforts, including that codified at D.C. Code § 32-1342(a) ("An employer may not make an inquiry about or require an application to disclose or reveal an arrest or a criminal accusation made against the applicant, which is not pending against the applicant or did not result in a conviction.") (alterations omitted).

Mot. at 1 (citing D.C. Code §§ 22-4503(a)(1)–(a)(6) and D.C. Code § 22-4504(a)(2)). And plaintiffs candidly concede that the requested information is not strictly necessary for that purpose, or for their forthcoming motion for summary judgment. *See id.* at 2 ("As a technical matter the classes could be defined without the data identifying potential class members who fell into a restricted category."); 3 ("Plaintiffs do not need the information for their summary judgment motion … .").

Even assuming plaintiffs' request does not run afoul of the Duncan Ordinance, the burden on the District to produce these records would be significant because the information cannot easily be obtained from the District's records. As discussed above, arrest reports generated by the arresting MPD officer do not necessarily capture whether an arrestee had a prior conviction supporting a charge under D.C. Code § 22-4503(a)(1). Because penalties for violations of the "restricted categories" provisions in D.C. Code §§ 4503(a)(1) through (a)(6) and 4504(a)(2) are a year or more, they may only be brought by the USAO. *Miller v. Marriott Int'l., LLC*, 378 F. Supp. 3d 1, 8 (D.D.C. 2019) (citing D.C. Code § 23-101(c)). Thus, the final decision as to prosecution under such charges, and the consequent responsibility to verify an arrestee's criminal conviction history, belongs to the USAO. In some cases, the MPD arrest report may contain an indication that the arresting officer chose to search the arrestee's criminal conviction history, but the decision to search for such prior convictions, and to include on the arrest report a charge under D.C. Code §§ 4503(a)(1) through (a)(6) and 4504(a)(2) based on such history, was discretionary rather than an official MPD policy. *See* Ex. 5 (Haines Dep. Tr. Excerpts) at 5–7. Therefore, if such

charges are listed in the records plaintiffs currently possess, that fact is irrelevant to the District's liability (because the final decision on whether to bring such charges belonged to the USAO) and any previous convictions on those charges in the criminal histories of the putative class members is irrelevant to the current determination of liability. Likewise, the absence of criminal history records in an MPD arrest report does not tend to show that the arrestee did not have a prior felony conviction, because arresting officers did not consistently conduct criminal history record checks.

Although plaintiffs contend that the District's deponent testified that bulk searches may be run within the District's CCH database for the criminal histories of "all putative class members at once[,]" Pls.' Mot. at 18, plaintiffs are mistaken. Mr. Dudley, during his deposition, either misunderstood or misheard the question; a person cannot perform a search within WALES or CCH with a list of names to obtain bulk criminal history information for everyone on the list. Ex. 6 (Dudley Declaration) ¶¶ 9–10. Only one person at a time may be searched. *Id.* ¶ 10.

Even assuming such a search could be run and complete results obtained and saved in two minutes per person, it would take about 150 hours of work to obtain the results for the approximately 4,500 putative class members. *See Arochi*, 2020 WL 7260439 at *2 (motion to compel denied where search of database "would impose a burden that far outweighs its likely benefit[,]" when search would be largely duplicative of other searches).

To the extent plaintiffs seek only records of convictions, that information is a matter of public record and equally available to plaintiffs and the District, with the

same burden. "It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, n.10 (D.D.C. 2015) (quoting *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991)). *See also, e.g.*, *Tequila Centinela, S.A. de C.V. v. Barcardi & Co., Inc.*, 242 F.R.D. 1, 11 (D.D.C. 2007) ("Typically, courts do not order discovery of public records which are equally accessible to all parties.") (citations omitted).

Plaintiffs' arguments to the contrary should be rejected. *See* Pls.' Mot. at 2 (plaintiffs' discovery requests are "basically publicly available convictions and pending court orders and arrest warrants"). Notably, plaintiffs concede that the District has already provided "the Superior Court conviction history for potential class members[.]" *Id.* at 8. It is thus unclear what additional information in the District's possession plaintiffs seek that is not protected by the Duncan Ordinance. *See id.* at 20 (plaintiffs' discovery requests "do[ ] not require the District to reveal or produce any of its computerized criminal history, only to identify persons who have publicly available convictions and pending court orders and warrants based on [CCH] and other sources (*e.g.*, CourtView)"); *compare* Ex. 6 ¶ 11 (indicating that CCH contains only criminal history within the District of Columbia) *with* Pls.' Mot. at 8 (CourtView data export "shows the Superior Court conviction history for potential class members if not their entire conviction history from all jurisdictions.").[5]

---

[5]     The cited "restricted categories" of the District's gun laws are not limited to convictions in the District of Columbia. *See* D.C. Code §§ 22-4503(a)(1) ("Has been convicted in any court of a crime punishable by imprisonment for a term exceeding

Plaintiffs cite, and provide a copy of, plaintiff Maggie Smith's Pretrial Services Report [98], but that report was generated by the Pretrial Services Agency, an arm of the Court Services and Offender Supervision Agency (a federal agency). *Copeland v. District of Columbia*, Civil Action No. 14-1708 (RJL), 2020 WL 7646886, *8 (Dec. 23, 2020); *Paavola v. United States*, 459 F. Supp. 3d 21, 34 (D.D.C. 2020). Plaintiffs argue that their request "includes databases under the control of other stakeholders in the District's criminal justice system … which [the District] had the 'legal right to obtain … on demand … .'" Pls.' Mot. at 23 (citing *Huthnance v. District of Columbia*, 255 F.R.D. 285, 292–93 (D.D.C. 2008) and *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)). Again, plaintiffs are incorrect.

Notwithstanding that the "legal right to obtain" language does not appear in either of the cases cited, plaintiffs have otherwise failed to provide any authority for the proposition that the District can require *federal* agencies to provide the documents and information plaintiffs now demand—their argument is no more than conclusory. *See, e.g.*, *D.L. v. District of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008) ("'With regards to the term 'control,' it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand.' [D]efendant District of Columbia has such control with respect to the documents in the possession of *its agencies* … .") (emphasis added)

---

one year"); 22-4503(a)(6) ("or any similar provision in the law of another jurisdiction"); 22-4504(a)(2) ("has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or another jurisdiction"). The burden on the District and plaintiffs to search for publicly available conviction information from jurisdictions *other than* the District is the same.

(citation omitted); *Texas v. Holder*, Civil Action No. 12-128, 2012 WL 13070110, *2 (D.D.C. June 8, 2012) ("[Plaintiff] has failed to meet its burden of establishing that the [defendant] has the legal right to obtain on demand the documents and databases from the federal agencies."). The District has already provided conviction histories for putative class members from records maintained by the Superior Court; the burden to produce broad public-record criminal conviction histories from any other jurisdiction would be onerous and disproportionate to the needs of the case.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to compel responses to interrogatory and document production requests.

Dated:  February 8, 2021.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Andrew J. Saindon*
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
BRENDAN HEATH [1619960]
Assistant Attorney General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (fax)
andy.saindon@dc.gov

*Counsel for Defendant*