UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.: 15-737 (RCL) |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORY AND DOCUMENT PRODUCTION REQUESTS**

Plaintiffs' Motion [ECF 96] to Compel should be granted. Motion to Compel [ECF 95] ("Pls.' Mot.").

The Scheduling Order [ECF 80] provided for discovery on both liability and class issues, and Plaintiffs' Interrogatory No. 5 and document production requests seek discovery regarding nonprivileged matter that is relevant to Plaintiffs' claims and class issues, and the discovery is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The District appears to have waived any defenses to liability or class certification based on the issues relevant to Interrogatory No. 5 and the document production requests but one reason Plaintiffs sought the discovery was to explore any evidentiary basis for potential defenses. [1]

_____

[1] The District contends that:

> But plaintiffs seek the information here apparently not for purposes of establishing liability, but in an attempt to quantify damages, i.e., to determine which potential class members would not be able to currently qualify to register a handgun or obtain a license to carry one in public, because of a disqualifying condition (or "restricted category," as described by plaintiffs) in their criminal history.

Def.'s Opp'n, p. 2.

## I.   Introduction.

Plaintiffs' Motion to Compel asked this Court to compel the District to provide signed responses to written discovery about persons who fell into one or more of the "restricted categories" of people prohibited from owning or possessing a firearm by D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) ("restricted category offenses") and to identify the restricted category they fall into pursuant to Fed. R. Civ. P. 37(a)(3), (4), and to produce certain documents. The District conceded most of the factual premises on which Plaintiffs based its motion.

### A.  The District Conceded Most of the Factual Premises on which Plaintiffs Based Its Motion.

Plaintiffs explained that the data ("criminal history record information" or "computerized criminal history" ("CCH")) the District needs to respond to Plaintiffs Interrogatory No. 5 and the document production requests is "basically publicly available convictions and [intrafamily] pending court orders and warrants which the District collects about arrestees at the time of arrest or booking." Pls.' Mot. 2. The District did not deny this statement its Opposition. Opposition [ECF 107] ("Def.'s Opp'n").

Plaintiffs explained using testimony from the District's 30(b)(6) deponent and responses the MPD provided to the D.C. Council Committee on the Judiciary and Public Safety in its Performance Oversight Review ("Oversight Responses") of the MPD that the "District owns both the criminal history record information and the Cobalt database and data "warehouse" it resides in. Pls.'s Ex. # 26, Dudley depo., p. 33; 76; pp. 140; 147:17-22; depo., p. 155:8-9; Oversight Responses, Pls.'s Ex. # 21, pp. 42-43." The District did not deny this.

The MPD Oversight Responses state, "The systems below represent systems for which we own the application and the data." MPD Oversight written responses set forth a chart (part of which is reproduced below) including the following excerpt:

| Database | Age | Purpose | Public Access |
|---|---|---|---|
| Washington Area Law Enforcement System (WALES) | 2017 | System that officers use to look up wanted people, stolen property, missing persons, and people on the terrorist watch list; sends and retrieves criminal histories to and from the FBI. | No |

The District did not deny these facts.

The District concedes that it can obtain the data Plaintiffs request. Def.'s Opp'n. p. 3, quoting objection to Interrogatory No. 5. In fact, the District has produced some but not all of the information requested. Def's Opp'n, p. 2; Def.'s Opp'n.

### B. The Two Facts on Which the District Bases Its Objections Are Contradicted by the District's Own Deponent.

The two facts on which the District bases its objections are contradicted by the District's own deponent.

The District objected to the interrogatory "as overly broad and unduly burdensome because [1] **[it] seeks information that is not captured at arrest; [and] [2] the information requested would have to be obtained by individually searching numerous databases**, federal and local, for each of the more than 4,500 individuals identified ... . " Def.'s Opp'n, p. 3 (quoting District's objection to Interrogatory No. 5) (emphasis added). But, first of all, no party ever signed the District's response to these points of Interrogatory No. 5.

### 1. *Both Mr. Dudley and Commander Haines testified that the discovery Interrogatory No. 5 and the document production requests seek is captured at arrest.*

Both Mr. Dudley and Commander Haines testified that the discovery Interrogatory No. 5 and the document production requests seek is captured "at arrest," that is, at booking.

Both Mr. Dudley and Commander Haines testified that District personnel conduct criminal history checks at booking, which clearly falls within the everyday meaning of the phrase, "at arrest." Moreover, even if "at arrest" does not include the booking process conducted by MPD

and DOC staff, the objection obscures the fact that MPD and DOC booking personnel conduct criminal history checks for many arrests (about two thirds, see discussion below) when the arrestees are brought to the District station or Central Cell Block (run by DOC since 2013) for processing right after arrest. The objection also obscures the fact that complete criminal history checks are run on every arrestee after arrest before papering decisions are made and that the results reside in CourtView. *See* Pls.'s Ex. # [ECF 96-7] (PTR-Trial Services Module); Pls.'s Ex. # 15 [98-1, under seal] PTSA bail report Smith, Maggie.

2. *The MPD and the DOC probably conducted criminal history checks on about 3,000 of the 4,500 arrests it made during the Class Period.*

The District concedes that when the District arrested people on gun charges during the Class Period the MPD and the DOC ran criminal history checks on some of the arrestees at or near the time of arrest, that is, at booking. Dudley depo., p. 151-52; 153.

The District did not provide information on how many arrestees it ran the criminal history checks on during the booking process in its Opposition. Opposition [107] (Defs.'s Opp'n).

But, based on Mr. Dudley's deposition testimony interpreting data exports provided by the District, the District ran criminal history checks on at least 2,070 arrestees in the original data export of about 3,155 unique arrests in the arrest data set the District provided to Plaintiffs. Pls.'s Ex. # 29 Dudley depo., p. 140-141; Pls.'s Ex. # 28 Grabowsky Decl., ¶ 7. Since that time the District has provided a second data export of 1,400 arrestees who were not on the original data export of arrests.[2] Therefore, if the District ran criminal history checks on 2,070 of the original data export of 3,155 unique arrests, then, using averaging - simple arithmetic - the District probably also

---

[2] These are the 1,414 "orphan" arrest numbers referenced in ¶ 15 overdetention Mr. Grabosky's Declaration. On February 5, 2021, after the date of the declaration, the District produced the entire ranges of fields for these arrests. But, the District has not produced the Superior Court conviction data for the supplemental production.

ran criminal history checks on two thirds of the second data export of 1400 arrests, that is, 840 arrests.

Thus, the District probably ran criminal history checks on roughly 3,000 unique arrests (about 2,910) of the 4500 arrests or two thirds of the 4500 arrests the District made on gun offenses during the Class Period.

The District could have provided the number of criminal history checks it ran on arrestees in its Opposition. *See* Pls.'s Ex. # 29, Dudley depo., p. 152. The results of criminal history checks are auditable. *Id.* The District can perform an audit trail to determine who looked at an individual criminal history rap sheet. *Id.* The Notes to the 2015 Amendments recognize that, as here, theparty claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. Advisory Committee Notes, 2015 Amendments, Fed. R. Civ. P. 26.

Mr. Dudley confirmed that criminal history records are just lying there in the WALES database so it can be queried at any point to query someone's criminal history by using arrest numbers or PDIDs. Pls.'s Ex. # 29, Dudley depo., p. 152-54.

3. *Mr. Dudley testified at his deposition that the warehouse engineers (as opposed to users from the "user interface") could use scripts to run bulk queries of CCH in the data warehouse.*

Mr. Dudley testified at his deposition that the warehouse engineers (as opposed to users from the "user interface") could use scripts to run bulk queries of CCH in the data warehouse.

But, in response to a follow up question whether, "maybe the user cannot access the data the way that the database administrator can, but the database administrator can," Mr. Dudley responded: "The data warehouse engineers can. They have access to multiple fields, so they have the capability of scripting and, you know, for the purposes of producing bulk reports." Pls.'s Ex. # 29, Dudley depo., pp. 156-57.

But, the District submitted with its Opposition (filed 2/8/2021) an affidavit from Mr. Dudley (also dated 2/8/2021) in which Mr. Dudley seems to say that his testimony that data warehouse engineers can run bulk searches for criminal history checks was incorrect. Dudley declaration, p. 4. [ECF 107-6].

4.  *Mr. Dudley's declaration should not be considered in evaluating the District's burdensome, cost or relative access for two reasons.*

Mr. Dudley's declaration should not be considered in evaluating the District's burdensome, cost or relative access for two reasons.

First, the District was under an obligation to promptly correct Mr. Dudley's testimony on this point if it believed the testimony were incorrect. *See* Fed. R. Civ. P. 30(e)(1) (deponent has 30 days to review deposition transcript and to make changes in form or substance). Plaintiffs deposed Mr. Dudley on November 6, 2020. Plaintiffs relied on the testimony as they were entitled to because Mr. Dudley was the 30(b)(6) deponent the District designated for technical issues on this point. *See Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 45 (D.D.C. 2006) (designated agent's testimony is generally admissible as statement of corporation); 7 Moore's Federal Practice - Civil § 30.25 (2020)( Rule 30(b)(6) designee testifies on behalf of the corporation, and binds the entity with its testimony).  Moreover, as the District acknowledges in its Opposition, Plaintiffs sent an email to opposing counsel on November 9, 2021 asking for a supplemental production of the CCH requested in Interrogatory No. 5 and the document production requests based on Mr. Dudley's testimony that the warehouse engineers (as opposed to users from the "user interface") could use scripts to run bulk queries of CCH in the data warehouse. Defendant's Exhibit No. 2 [ECF 107-2], ECF p. 2.

The District thus was on notice that Plaintiffs were relying on the testimony but they took no steps to check the accuracy of Mr. Dudley's testimony until February 8, 2021, about three

months later. Plaintiffs relied on Mr. Dudley's testimony in formulating its position on this issue as expressed in its Motion. Pls.'s Mot., p. 2, 18.

But, the District did not claim that Mr. Dudley's testimony was incorrect until about three months later, February 8, 2021, when it filed its Opposition. The District allowed Plaintiffs to rely on Mr. Dudley's testimony about bulk searches until the date it filed its Opposition; therefore the District should not be allowed to profit from Plaintiffs' reliance when it comes to responding to the discovery requests.

Second, by analogy to the "sham affidavit rule" Mr. Dudley's declaration should be disregarded at least for purposes of the "proportionality" analysis in evaluating the District's objection to Interrogatory No. 5 and the document production requests. *See Glass v. Lahood*, 786 F. Supp. 2d 189, 216 (D.D.C. 2011)(plaintiff pointed to an earlier affidavit in an attempt to undermine her subsequent deposition testimony); 11 Moore's Federal Practice - Civil § 56.94 (2020)(sham affidavit rule applies whether the affidavit was made before or after the deposition) ; *see Jackson v. Teamsters Local Union 922*, 310 F.R.D. 179, 185 (D.D.C. 2015) (court noted that D.C. Circuit has not yet addressed the issue, but concluded that material revisions should not be permitted absent "convincing explanations").

### 5. *The District has in the Superior Court database records on class members' prior convictions on District of Columbia felonies and other restricted category offenses which the District can produce using bulk searches based on PDIDs.*

The District has in the Superior Court database records on prior convictions on District of Columbia felonies and other restricted category offenses.  So, for roughly anywhere from one half to two thirds of class members the District does store conviction records for felonies and other restricted category offenses.

The District has produced this data in a spreadsheet for the class members in the original arrest data export. Defendant's Exhibit No. 2 [ECF 107-2], ECF p. 2.

On February 5, 2021, a few weeks ago, the District produced a supplemental production of data for the additional 1,414 arrests. Bates # DC_M SMITH – 023263. Plaintiffs asked the District to produce the Superior Court conviction records for the additional 1,400 arrests. But, the District has not produced the Superior Court conviction records for the most recent data export of 1,400 arrests for gun offenses during the Class Period.

## II.   The District Failed to Establish that Plaintiffs' Interrogatory No. 5 And Document Production Requests Seek Discovery that Is Privileged or not Proportional to the Needs of the Case.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).[3] The burden is on the party resisting discovery to show it is not proportional to the needs of the case. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017); *DL v. District of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008).

---

[3] Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The 2015 amendments have brought to the forefront of Rule 26 the concept of proportionality—that is, the duty of the parties and the court to make a "case-specific determination of the appropriate scope of discovery," considering the various factors set forth in the Rule. Id. This concept was previously buried in subsection (b)(2)(C)(iii), but it now "enjoys pride of place in the amended Rule." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

**A.  The applicable rules governing the discovery dispute require the District to produce the discovery.**

The Amended Rule enumerates the following factors as relevant to the proportionality analysis:

(1) the importance of the issues at stake in the action;

(2) the amount in controversy;

(3) the parties' relative access to relevant information;

(4) the importance of the discovery in resolving the issues; and

(5) whether the burden or expense of the proposed discovery outweighs its likely benefit.

§ 2008.1Relevancy to the Subject Matter—Proportionality, 8 Fed. Prac. & Proc. Civ. § 2008.1 (3d ed.).

"[N]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional," and all proportionality determinations must be made on a case-by-case basis. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017)(internal citations omitted). But, the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery. In in order to successfully resist a motion to compel an objecting party must "specifically object and show that ... a discovery request would impose an undue burden or expense or is otherwise objectionable." *Id.; DL v. District of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008)(this Court "only entertains an unduly burdensome objection when the responding party demonstrates how [discovery of] the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden," such as "specific estimates of staff hours needed to comply.").

Even though defendant bears the burden of establishing that the discovery Plaintiffs seeks is neither relevant nor proportional to this case by "submitting affidavits or offering evidence which

reveals the nature of the burden,'" such as "specific estimates of staff hours needed to comply," the District did none of these things in its Opposition.

## B. The Requests Do Not Seek any Nonprivileged Matter.

The requests do not seek any nonprivileged matter.

The District contends that the Duncan Ordinance by its terms or by the spirit of the "Ordinance" prevents it from producing the data requested in Interrogatory No. 5 and the document production requests. Not so.

All Plaintiffs are asking for with Interrogatory No. 5 and the document production requests are convictions on the docket, and records of a civil protection orders issued as a result of an intrafamily offense that have no-gun provisions which are also on the docket although access to the docket is somewhat controlled.[1]

The District contends that "[e]ven when arrest records may be disseminated, they must be released "in a form which reveals only entries relating to offenses which have resulted in convictions or forfeitures of collateral in a court proceeding." (quoting 1 DCMR § 1004.4). Defs.'s Opp'n, p. 6. But, the District waived any privilege it might have had under the Duncan Ordinance. The District has already produced the arrest records from Cobalt (the District's arrest database) for approximately 4,569 arrests. Pls.'s Ex. # 29 (Grabowski Decl.). Of these, 2,587 arrests did not result in prosecutions. *Id.* Of the 1,982 arrests that did result in prosecutions, many or most did not result in convictions or convictions on all offenses charges. In fact the District even submitted some "unexpurgated arrest records" in its opposition to Plaintiffs' motion to amend the complaint with Mr. Atkinson's and Ms. Buffaloe's names highlighted in yellow. [ECF 101-4] Excerpt Class Action Ammunition Reports Redacted.

---

[1] D.C. Code § 5–113.01(a)(4A) requires the MPD to maintain a computerized record of civil protection orders or bench warrants issued as a result of an intrafamily offense.

What's more, the D.C. Council overrode the Duncan Ordinance when it enacted legislation requiring the MPD to keep "Arrest Books" with basic arrest data including offense and "[n]ame, address, date of birth, color, birthplace, occupation, and marital status of person arrested," D.C. Code § 5-113.01(a)(4), and to have the Arrest Books available for public inspection in each of the seven (7) police districts consistent with D.C. Official Code § 5-113.06 (Records Open to Public Inspection). *See Arrest Books*, SO-11-09 (5/25/2011) https://go.mpdconline.com/GO/SO_11_09.pdf Finally, every day that Superior Court is in session for arraignments daily "Lock up lists" with unexpurgated arrest data are posted on the walls outside of C-10, the arraignment courtroom. Pls.'s Ex. # 30 "Lock up lists" (under seal).

If the Court does hold that some of the discovery Plaintiffs seek is privileged and the Court finds that the Protective Order in place in this case is not sufficient to protect the data, then the District cannot have both ways. If the District chooses privilege over production, the District must forego any argument that any potential class member with a prior felony conviction or who is in any of the other categories in D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) is outside the scope of the Second Amendment and thus has no claim or otherwise should be excluded from any of the classes. *Porter v. Pinkerton Gov't Servs.*, 304 F.R.D. 24, 30 (D.D.C. 2014) (citing Koch v. Cox, 489 F.3d 384, 390-91 (2007).

### C. Relevant to Plaintiffs' Claims and Defenses.

Plaintiffs established that the CCH sought by Interrogatory No. 5 and the document production request is relevant to Plaintiffs' claims. Plaintiffs explained in their Motion, "The interrogatory is relevant because it relates to identifying persons who may be disqualified from the classes or whom the District may contend are disqualified from Second Amendment rights and thus participation in the classes because they had criminal history data indicating that they fell into one of the restricted categories, so it relates to the claims and defenses of the Parties and the Rule

23 issues." Pls.'s Mot. At 14. For example, D.C. Code § 4503(a)(1) disqualifies from owning, keeping or possessing a firearm anyone who "[h]as been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." There is a panel decision in this Circuit construing a similar but much narrower provision of a federal statute. *Medina v. Whitaker*, 913 F.3d 152, 154 (D.C. Cir. 2019). That decision suggests that felons are excluded from the scope of the Second Amendment. *Id.* Other Judges suggests otherwise. *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)(Barrett, J. dissenting).

The District contends that "whether putative class members have a disqualifying condition is irrelevant to the current determination of liability, because charges under those provisions may only be brought by the United States Attorney's Office (USAO), not the District of Columbia." But, this argument fails because this Court expressly rejected the District's argument that the District was not liable for prosecutions conducted by either of the "District prosecutors." "The District's related argument—that the District did not cause plaintiffs' injuries because 'the actions of' the U.S. Attorney and the D.C. Attorney General 'are each discrete, intervening events that independently 'caused' the injuries for which plaintiffs seek redress,' see Def.'s Mot. 15 — is similarly dead on arrival." *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 21 n.11 (D.D.C. 2019). The District's asserting an objection based on an affirmative defense that this Court rejected in the opinion on the District's motion to dismiss amounts to a collateral attack on this Court's ruling.

However, by denying that the requested CCH is relevant to Plaintiffs' claims (and ignoring Plaintiffs' contention that the requested CCH is relevant to class issues, defendant is judicially estopped from raising these issues in any liability determination or class certification.

### D.   The Issues at Stake in the Action Are "Vitally Important".

This is an important civil rights case vindicating "vitally important" Second Amendment rights which weighs heavily in favor of compelling responses. *See* Advisory Committee Notes, 2015 Amendments. It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors. The 1983 Committee Note recognized "the significance of the substantive issues, as measured in philosophic, social, or institutional terms. *Id.*

### E.   The Amount in Controversy Justifies the Burden of Discovery.

The amount in controversy justifies the burden of the requested discovery. It is hard to assign a dollar value to the case but the District's exposure could easily run into the millions. This case can be valued by analogy to false arrest settlements and other civil rights class actions in which the District is a party. Recent false arrest settlements range from $25,000 to $80,000 for Hamilton P. Fox III, a former prosecutor. https://www.washingtonpost.com/local/legal-issues/dc-police-lawsuits/2020/12/24/e986472c-2375-11eb-8672-c281c7a2c96e_story.html

There are approximately 4,500 arrests in this class action. The District denies that CCH of class members is relevant to liability or class issues. Therefore any valuation should assume all potential class members are entitled to compensation.

The *Bynum* case settled for about $12 million, the *Barnes* case settled for about $6.5 million, and the *Hoyte* case – involving mainly vehicles seized for civil forfeiture without prompt post seizure hearings – recently received preliminary approval for an approximately $4 million proposed settlement. Preliminary Approval Order [ECF 247], *Hoyte v. D.C.*, 13-569 (CRC).

### F.   The Parties' Relative Access to Relevant Information Also Justifies Production Because the District Has Much Greater Access to the Information than Plaintiffs.

The parties' relative access to relevant information also justifies production because the District has much greater access to the information than do Plaintiffs.

The District contends that, "[t]o the extent plaintiffs seek only records of convictions, that information is a matter of public record and equally available to plaintiffs and the District, with the same burden." Def.'s Opp'n, pp. 12-13. Not so.

The current rule frames the analysis in terms of "relative access." Fed. R. Civ. P. 26(b)(1). And even the caselaw governing production of public records discovery of documents of public record is denied only when the records "are equally accessible to all parties." *See e.g.*, *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, n.10 (D.D.C. 2015) (*quoting Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991).

The parties do not have "equal access" to the public records of convictions and civil protection orders issued as a result of an intrafamily offenses which require the person to relinquish possession of any firearms ("(a)(5) CPOs". See D.C. Code § 4503(a)(5).

### 1. *The District has superior access to Superior Court conviction records and intrafamily CPOs.*

As to conviction records of Superior Court cases, and Superior Court records of "(a)(5) CPOs," the District can export the records from CourtView using bulk queries. In fact, the District has already produced Superior Court conviction records of felonies and intrafamily offenses for about 3,155 arrest records. Defendant's Exhibit No. 2 [ECF 107-2], ECF p. 2.

Recently, February 5, 2021, the District produced an additional data export from Cobalt for 1,414 arrests. But, the District has not produced Superior Court conviction records of felonies and intrafamily offenses for the recent data export of the 1,414 arrests.

Moreover, the District has not produced any Superior Court conviction records of "(a)(5) CPOs," CPOs in intrafamily offenses. The records are in CourtView and can be produced using a bulk query like any other records in CourtView. And, the MPD keeps a computer record of "(a)(5) CPOs," CPOs in intrafamily offenses. *See* D.C. Code § 5-113.01(a)(4A) (requires MPD to

maintain a computerized record of civil protection orders or bench warrants issued as a result of an intrafamily offense).

Plaintiffs would have to look up each individual on CourtView. But "access" would still not be "equal." The District can run a query for class members using arrest numbers and PDIDs which are unique identifiers. PDIDs are "biometric" identifiers because they are assigned or verified through AFIS on the basis of fingerprints. But, Plaintiffs would have to search on CourtView using only names which are not unique identifiers. Plaintiffs do not have access to the Superior Court courthouse to verify names with PDIDs using the in-courthouse terminals because of the COVID-19 restrictions on courthouse access.

## 2. The District has superior access to conviction records of felony and intrafamily offenses and intrafamily CPOs in other jurisdictions.

Even assuming *arguendo* that the District cannot run bulk searches for CCH the District still has superior access to conviction records of felony and intrafamily offenses and intrafamily CPOs in other jurisdictions.

Plaintiffs would have to access every courthouse in the country using only names as opposed to a unique biometric identifier such as the PDID. Moreover, there is no evidence that all courthouses have online dockets so Plaintiffs' staff would have to travel to distant courthouses in person which is an impossibility in this time of pandemic.

In contrast, the District's people could sit in safety and comfort at District owned terminals and, with the touch of a button, access the CCH using the PDID, a unique biometric identifier, from even the most distant courthouses.

Also, for the reasons stated above (plaintiffs relied on Mr. Dudley's testimony about bulk searches, and by analogy to the sham affidavit rule), for purposes of conducting the proportionality analysis, the Dudley declaration should not be considered.

### G.  The Discovery Is Extremely Important in Resolving Issues Liability and Class Issues.

The discovery is extremely important in resolving issues liability and class issues. As explained in the discussion of relevance, there is some authority for the proposition that felons must be excluded from the "people" classes because they are beyond the scope of the Second Amendment. If this turns out to be the law, arguably the burden would be on the Plaintiffs to exclude them from the class. Although Plaintiffs could technically exclude them from the class Plaintiffs will need to be able to identify them to administer the class. Pls.'s Mot., pp. 2-3. Plaintiffs need the data to send notice and for practical reasons such as valuing the classes. *Id.*

### H.  The Likely Benefit of the Proposed Discovery to Plaintiffs Outweighs any Burden or Expense In Producing It.

The likely benefit of the proposed discovery to Plaintiffs outweighs any burden or expense in producing it.

First, the District failed to satisfy its burden of establishing that the likely benefit of the proposed discovery to Plaintiffs outweighs any burden or expense in producing it.

Second, the District is estopped from asserting a burdensome objection because its own inadequate filing system caused any burden in retrieving CCH, and the Dudley Declaration's assertion about whether the District can conduct bulk searches for the CCH should be excluded in evaluating burden.

Plaintiffs address these arguments below in reverse order.

1.  *Because the District conducted criminal history checks on about 3,000 of the 4.500 arrests it made during the Class Period, but failed (it claims) to keep the results of the checks in an easily searchable format, the District cannot assert a burdensome objection as to those arrests, or any arrests.*

The District conducted criminal history checks on about 3,000 of the 4.500 arrests it made during the Class Period. The results of the criminal history checks now resides in databases and a data warehouse owned by the District. Mr. Dudley originally testified that the District could

retrieve the results of those criminal history checks using a bulk search query But, the District now contends, it cannot retrieve the results of those criminal history checks using a bulk search query.

So, the District contends that it can retrieve the results of the criminal history checks it already made, but failed (it claims), to keep in an easily searchable format.

Therefore, the District cannot assert a burdensome objection as to those arrests because the District created the problem by failing to maintain a proper filing system. And because only the District knows which arrests its MPD and DOC ran criminal history checks for, the District is estopped from asserting a burdensome objection for any of the arrests.

Moreover, since the District stores the results of the bail reports (which contain CCH) in CourtView, the District is estopped from asserting a burdensome objection on those reports. The Superior Court is considered part of the District for purposes of discovery so all the District had to do is ask for it. *Barnes v. District of Columbia*, 2013 U.S. Dist. LEXIS 207911, *28 (D.D.C. 2/28/2013)(RCL)(Superior Court is treated as an agency or body of the District of Columbia for purposes of § 1983 municipal liability) [Document # 433] p. 17. The District has already produced data exports for the 1,892 unique prosecutions in the prosecution data set. Pls.'s Ex. # 28 Grabowsky Decl. This production undercuts any argument that it cannot access the CCH in CourtView.

As Plaintiffs explained in their Motion, the fundamental problem with the District's burdensome objection as to the need for individual searches is that "its burden is its own doing" because the District had the computerized criminal history with which it could completely respond to Interrogatory # 5 when it used the data to make charging decisions and provide bail recommendations to Superior Court Judges and Magistrate Judges at First Appearance but, according to the District, the District did not preserve the data in an easily retrievable format. *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 327 (D.N.J. 2015)("problem with Atlantic

City's burdensome argument is that its burden is its own doing"). This Court and other Courts have held that a party that maintains an inadequate filing system cannot assert the burdensomeness caused by the system in making a search for responsive documents as an objection to responding. *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991)(undue burden not established by need for "endless culling of files"); *Costantino*, 152 F. Supp. 3d at 327.

### 2. The Dudley declaration should not be considered for purposes of the burdensome objection.

Also, for the reasons stated above (plaintiffs relied on Mr. Dudley's testimony about bulk searches, and by analogy to the sham affidavit rule), for purposes of conducting the proportionality analysis, the Dudley declaration should not be considered.

### 3. The District failed to satisfy its burden of establishing that the likely benefit of the proposed discovery to Plaintiffs outweighs any burden or expense in producing it.

The District failed to satisfy its burden of establishing that the likely benefit of the proposed discovery to Plaintiffs outweighs any burden or expense in producing it.

In in order to successfully resist a motion to compel an objecting party must "specifically object and show that ... a discovery request would impose an undue burden or expense or is otherwise objectionable." *Oxbow Carbon & Minerals*, 322 F.R.D. at 6. In fact, this Court "only entertains an unduly burdensome objection when the responding party demonstrates how [discovery of] the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden,'" such as "specific estimates of staff hours needed to comply." *DL v. District of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008).

This District failed to meet these high burdens.

   a) The District's refusal to comply with Interrogatory No. 5 and the document production requests because "the information cannot easily be obtained from the District's records" does not satisfy the proportionality analysis of Rule 26 as applied in this case.

The District's refusal to comply with Interrogatory No. 5 and the document production requests because "the information cannot easily be obtained from the District's records" does not satisfy the proportionality analysis of Rule 26 as applied in this case.

The District did not support its burdensomeness objection "by submitting affidavits or offering evidence which reveals the nature of the burden," such as "specific estimates of staff hours needed to comply." *DL v. District of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008). Not with its responses or even in support of its Opposition.

All the District offered was an estimate of hours by counsel, not by a person with knowledge of staffing or the technical issues involved. The District cites to *Arochi v. Novak Druce Connolly Bove & Quigg, LLP*, 2020 WL 7260439, at *1 (Oct. 19, 2020) as though somehow this case satisfies its evidentiary burden. *See* Def.'s Opp'n, p. 12. But in *Arochi* the defendant – the party resisting discovery – produced an affidavit from a vendor setting forth a cost estimate. The Court cited to a Status Report. *Id.* Attached to the status report was an email with a cost estimate.

The District also discusses arrest reports. Def.'s Opp'n, p. 11. But whether the CCH is captured by the officer in an arrest report is not relevant to the "buden v. benefit" issue.

Moreover, just saying the requests are burdensome does not carry the District's burden of showing the Request is objectionable. If discovery requests are relevant, the fact that they involve work, which may be time consuming and expensive, is not sufficient to render them objectionable. 7 Moore's Federal Practice - Civil § 34.13 (2020).

Totally lacking is any discussion of the relative burden compared to the relative benefit to Plaintiffs which is what the Rule requires. Fed. R. Civ. P. 26(b)(1)("the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.");

Relevancy to the Subject Matter—Proportionality, § 2008.1, 8 Fed. Prac. & Proc. Civ. § 2008.1 (3d ed.).

There mere fact that the District has provided a partial response from the Superior Court database CourtView, Def's Opp'n, p. 13, does not mean that the District has satisfied its obligation to make a complete response as the District argues. Fed. R. Civ. P. 37(a)(4). An incomplete response is the same as a failure to respond. *Id.* The District has supplied CourtView data for the first data export of arrests but not the second. And the CourtView data does not contain conviction records and CPO information from other jurisdictions.

The District contends that bail records in CourtView are beyond its control. Def's Opp'n, p. 14. Not so. The Superior Court is treated as an agency or body of the District of Columbia for purposes of § 1983 municipal liability. *Barnes v. District of Columbia*, 2013 U.S. Dist. LEXIS 207911, *28 (D.D.C. 2/28/2013)(RCL) [Document # 433] p. 17. The Pretrial Services Module is part of CourtView. [ECF 96-7].

**Conclusion.**

Wherefore Plaintiffs move this Court to grant Plaintiffs Motion [ECF 96] to Compel.

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579
Counsel for Plaintiffs
I certify that I have in good faith conferred with the District through counsel in an effort to secure the information sought without Court action. Fed. R. Civ. P. 37(a)(1).

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com