UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.: 15-737 (RCL) |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

### Named Plaintiffs' Arrests and Prosecutions

1.     The following table is a list of the Named Plaintiffs, and their MPD charged offenses from Cobalt, date initial prosecution commenced, and date of re-prosecution if any. Grabowsky Decl., ¶ 1.

| Named Plaintiff | Date of arrest | MPD charges in Cobalt – MPD booking database | Date presented in Superior Court on original prosecution | Re-prosecution by OAG (if-any) |
|---|---|---|---|---|
| Maggie  Smith | June 29, 2014 | CPWL | June 30, 2014 | September 12, 2014 |
| Rob Cassagnol | October 9, 2013 | CPWL  & UA | October 10, 2013 | July 29, 2014 |
| Frederick Rouse | August 30, 2014 | UA & UF | September 1, 2014 [OAG prosecution] | |

| Delontay Davis | March 23, 2014 | CPWL/ felon-in-possession[1] & UA | March 24, 2014 | 1/16/2015 |
| Kimberly Buffaloe | July 21, 2012 | National Fire-arms Act, UF | July 21, 2012 | _____ |
| Carl Atkinson | January 28, 2014 | UA & UF | January 29, 2014 | _____ |

2.      All arrestees prosecuted in Superior Court on their arrest charges were detained from time of arrest until at least First Appearance in Superior Court. Haines depo, p. 57.

**Maggie Smith**

**Ms. Smith's arrest by the MPD**

3.      On June 29, 2014, Ms. Maggie Smith was pulled over by MPD while she was driving her car in the District of Columbia. Pls.'s Ex. # 40, Smith Decl., ¶ 1.

4.      Ms. Smith has never had any criminal record apart from this one case. Pls.'s Ex. # 40, Smith Decl., ¶ 1-2.

5.      Ms. Smith promptly informed the police that she was carrying a pistol for self-defense, and that she had a lawful permit from her home state of North Carolina to carry a pistol. Pls.'s Ex. # 40, Smith Decl., ¶ 5; Pls.'s Ex. # Pls.'s Ex. # 44 (copy of permit).

6.      MPD arrested Ms. Smith for Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Grabowsky Decl, ¶ 1 (based on Cobalt data export).

---

[1] This is the charge in Cobalt but Mr. Davis actually had no prior felonies. Pls.'s Ex. # 76 (Pre-Trial Services bail report showing Mr. Davis had no prior felonies).

7.      Ms. Smith was held in 7ᵗʰ District overnight and presented in Superior Court the next day. Pls.'s Ex. # 40, Smith Decl., ¶ 7-8;

8.      Ms. Smith is a registered nurse and her arrest put her nursing license in jeopardy. Pls.'s Ex. # 40, Smith Decl., ¶ 13.

### Ms. Smith's prosecution by the U.S. Attorney and the dismissal of her case

9.      The District, through MPD, referred the case to the US Attorney's Office for prosecution. Pls.'s Ex. # 33, Haines depo, p. 57.

10.     At presentment on June 30, 2014, the US Attorney's Office, by complaint, charged Ms. Smith with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Pls.'s Ex. # 41, Smith docket, 2014 CF2 011408, 06/30/2014.

11.     On July 9, 2014, the USAO obtained an indictment of Ms. Smith for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and Ms. Smith was arraigned on those charges in Superior Court. Smith docket, Pls.'s Ex. # 41, 2014 CF2 011408, 7/9/2014.

12.     On September 29, 2014 the US Attorney's Office dismissed the indictment. Pls.'s Ex. # 40, Smith docket, 2014 CF2 011408, 9/29/204.

### Ms. Smith's re-prosecution by the OAG and the dismissal of her case

13.     But, on September 12, 2014, the District of Columbia Attorney General ("OAG") filed a criminal information charging Ms. Smith with violations of D.C. Code § 7-2502.01 (possession of an unregistered firearm) and D.C. Code § 7-2506.01 (unlawful possession of unregistered ammunition). Pls.'s Ex. # 42, 2014 CDC 016129, 9/12/2014; Pls.'s Ex. # 45. (information charging both UA and UF).

14.     On April 21, 2015, the OAG dismissed the criminal information against Ms. Smith. Pls.'s Ex. # 41, 2014 CDC 016129, p.4.

### MPD's seizure and retention of Ms. Smith's pistol after her cases were dismissed

15.     The MPD officers seized Ms. Smith's Bersa 380 worth approximately $400.00 when they arrested her on June 29, 2014. Pls.'s Ex. # 40, Smith Decl., ¶ 9.

16.     The MPD classified the property as evidence. Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence).

17.     The Property Clerk still has custody of the gun. District Answer [117] admitting ¶ 143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest."

18.     The pistol has remained in the custody of the Property Clerk since the date of her arrest. District Answer [117] admitting ¶ 143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest."

19.     The District has never given Ms. Smith notice about her gun or notice and a hearing to get it back. Pls.'s Ex. # 40, Smith Decl., ¶ 12.

### Gerard "Rob" Cassagnol

20.     Gerard Cassagnol was a resident of the State of Maryland at the time of his arrest. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 1.

21.     He had no criminal convictions prior to his arrest and his only minimal contact with the police involved traffic offenses, and he still has no arrests other than this arrest. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 2-3.

22.    At the time of his arrest in the District on October 9, 2013 Mr. Cassagnol was a full-time employee of Cox Communications as a local manager - broadband and engineering. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 5.

23.    At the time of his arrest in the District Mr. Cassagnol owned a 9 millimeter pistol which he had registered in Maryland and which he kept for self-defense. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 7.

### Mr. Cassagnol's arrest by the MPD

24.    On October 9, 2013, Mr. Cassagnol drove from his work place in Northern Virginia into Northeast Washington D.C. in his employer's Cox Communications truck on his way home from work. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 8.

25.    Several officers pulled Mr. Cassagnol from the truck and threw him to the ground (in the road); one officer with his foot applying pressure on his neck, another officer with his foot applying pressure on his ankle, and a third officer falling, his knees into his back. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 11.

26.    The officers began to search the truck.  The officers asked Mr. Cassagnol whether he had a gun in the truck and just as he had been taught Mr. Cassagnol told the officers he had his pistol in the truck. He explained that he had lawfully purchased and registered the pistol in the State of Maryland, his state of residence. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 12-13-14.

27.    Mr. Cassagnol cooperated fully and he told the officers he had a 9 millimeter pistol in a locked combination-lock gun safe in the bottom of a grey bin in the backseat of the truck, and that the clip was not inside the pistol. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 14.

28.    Mr. Cassagnol gave the officers the combination to the gun safe when they requested it. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 15.

29.     Another officer took a photograph of Mr. Cassagnol's work identification card and told Mr. Cassagnol that he intended to report the incident to Mr. Cassagnol's employer to ensure that Mr. Cassagnol got fired, and on October 22, 2013 Mr. Cassagnol was in fact fired from his job at Cox Communications. Pls.'s Ex. # 50, Cassagnol Decl., ¶¶ 16, 17 and 24.

30.     The MPD arrested Mr. Cassagnol and charged him on one count of Carrying a Pistol in violation of then-D.C. Code § 22-4504 (a) (1), Possession of An Unregistered Firearm in violation of D.C. Code § 7-2502.01 ("UF") and Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01 ("UA"). Grabowsky Decl., ¶ 1.

31.     He spent the night in the Sixth District station before going to Superior Court the next morning. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 20.

### Prosecution of Mr. Cassagnol by the US Attorney

32.     The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57.

33.     On October 10, 2013, Mr. Cassagnol was presented in the District of Columbia Superior Court on a charge of Carrying a Pistol in violation of then-D.C. Code § 22-4504(a)(1) brought by the US Attorney's office. Pls.'s Ex. # 51, Cassagnol docket, 2013 CF2 017982, p. 2.

34.     Mr. Cassagnol was held without bond upon the AUSA's motion in the DC Jail until October 11, 2013. Pls.'s Ex. # 51, 2013 CF2 017982, docket 10/10/2013, p. 2.

35.     As part of the intake process at the DC Jail Mr. Cassagnol was subjected to a humiliating and demeaning strip-search. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 22.

36.     On October 11, 2013, Mr. Cassagnol was released under the supervision of the Pretrial Supervision Agency. 2013 CF2 017982, docket 10/10/2013, p. 3.

37.     On October 22, 2013, Mr. Cassagnol was fired from his job at Cox Communications because of his arrest in the District of Columbia for the constitutionally protected conduct of carrying a pistol outside the home one of the officers took a photo of his work ID telling him that he intended to report the incident to his employer to ensure that he was fired. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 16, 24.

38.     On October 23, 2013, the US Attorney's Office obtained an indictment of Mr. Cassagnol on three counts: (1) Carrying a Pistol in violation of then-D.C. Code § 22-4504 (a) (1); (2) Possession of An Unregistered Firearm in violation of D.C. Code § 7-2502.01; and (3) Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01. Pls.'s Ex. # 51, Cassagnol docket, p. 3.

39.     On July 29, 2014 the US Attorney's Office dismissed the indictment against Mr. Cassagnol without prejudice. 2013 CF2 017982, docket 7/29/2014, p. 7.

### Re-prosecution of Mr. Cassagnol by the OAG

40.     That same day, July 29, 2014, the OAG filed a criminal information charging Mr. Cassagnol with Possession of An Unregistered Firearm in violation; of D.C. Code § 7-2502.01 and Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01 and the Superior Court Clerk opened a new case with a new docket number, 2014 CTF 13231. Pls.'s Ex. # 52, Cassagnol docket, 2014 CTF 013231, p. 2.

41.     On April 20, 2015 the Office of the OAG *nolle'd* the case against Mr. Cassagnol. Pls.'s Ex. # 52, Cassagnol docket, 2014 CTF 013231, p. 5.

### Seizure and unlawful retention of Mr. Cassagnol's property by the MPD

42.     When the MPD arrested Mr. Cassagnol on October 9, 2013 they also seized from him a 9 mm pistol, make KIMBER, model DP51, worth approximately $500.00, and some ammunition. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 25.

43.     The MPD classified the property as evidence. Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence).

44.     The Property Clerk still has custody of the gun. Grabowsky Decl., ¶ 9.

45.     On July 22, 2015, Mr. Cassagnol called the Evidence Control Branch of the Metropolitan Police Department and he spoke to Technician Ferguson of the Evidence Control Branch, and requested the return of his property. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 28.

46.     Technician Ferguson informed Mr. Cassagnol that he would have to contact his lawyer if he wanted his property back. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 29.

47.     Technician Ferguson further stated that Mr. Cassagnol's lawyer would have to contact the prosecutor and request that the prosecutor fill out a PD 81C form to get his property returned. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 30.

48.     The Property Clerk continues to hold his gun and other property. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 31.

49.     The District has never given him notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of his pistol. Pls.'s Ex. # 50, Cassagnol Decl., ¶ 32.

**Frederick "Cornelius" Rouse**

**Arrest by MPD**

50.     Frederick "Cornelius" Rouse was a resident of the State of Maryland at the time of his arrest on August 30, 2014. Pls.'s Ex. # 64, MPD arrest report, p. 7.

51.     Prior to his arrest in the District on August 30, 2014 he had no adult criminal convictions. Pls.'s Ex. # 67, Rouse depo. p., 9.

52.     He served his country in the United States Army for about four years.  Pls.'s Ex. # 67, Rouse depo. p., 46. He received an Honorable Discharge in 2007 with the rank of E-4 Corporal.

53.     At the time of his arrest, he held a Top Secret Security Clearance. Pls.'s Ex. # 67, Rouse depo. p., 29.

54.     As a result of his arrest in the District his Top Secret Security Clearance was placed "under review" and downgraded, and it remained under review for some period of time after his case was resolved while the Office of Personnel Management completed its review of his top secret clearance triggered by his arrest. Pls.'s Ex. # 67, Rouse depo. p., 29, 38-39.

Mr. Rouse's arrest by the MPD

55.     On August 30, 2014, Mr. Rouse was staying in the District of Columbia at the Renaissance Washington, DC Downtown Hotel ("Renaissance Hotel") at 999 9th Street, Northwest, for a social event. Pls.'s Ex. # 64, Rouse arrest report, p. 5.

56.     Reportedly hotel staff notified the MPD that Mr. Rouse had two pistols in his room. Pls.'s Ex. # 64, Rouse arrest report, p. 5.

57.     The two handguns belonged to Mr. Rouse and he had lawfully purchased and registered them in the State of Maryland, his place of residence and he kept for self-defense. Pls.'s Ex. # 67, Rouse depo. p., 20-21.

58.     The pistols were a Glock 33 Pistol worth approximately $550.00 and a FN Five-Seven Pistol worth approximately $1,200.00. Mr. Rouse also had a TLR2 Scope worth approximately $300.00. Pls.'s Ex. # 67, Rouse depo. p., 11-12.

59.    Mr. Rouse freely admitted to the officers that the guns in the hotel room belonged to him and were lawfully registered in the State of Maryland. Pls.'s Ex. # 64, Rouse arrest report, p. 5.

60.    Mr. Rouse carried the guns and ammo for self-defense because he carried large amounts of cash as an events promoter. Pls.'s Ex. # 67, Rouse depo. p., 20-21, 22-23.

### Prosecution of Mr. Rouse by the OAG

61.    On September 1, 2014, the OAG filed a Criminal Information charging Mr. Rouse with Possession of an Unregistered Firearm in violation of D.C. Code § 7-2502.01 and Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01. Pls.'s Ex. # 61, Rouse OAG docket, 2014 CDC 015375 docket, p. 1.

62.    On April 22, 2015 the OAG *nolle'd* the charges against Mr. Rouse. Pls.'s Ex. # 61, Rouse 2014 CDC 015375 docket, p. 3.

### MPD seized Mr. Rouse's pistols and the Property Clerk retained them for more two years after the OAG dismissed the case

63.    The MPD seized Mr. Rouse's pistols and the scope for evidence when they arrested him on August 30, 2014. Pls.'s Ex. # 65 (PD 81 classifying guns as evidence); Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence).

64.    Mr. Rouse sent a letter by certified mail to the Property Clerk on August 4, 2015 asking for his pistol back but the Property Clerk did not return his pistols and scope to him in response to the letter. Pls.'s Ex. # 62, copy of letter; Grabowsky Decl., ¶ 9.

65.    Mr. Rouse was finally able to obtain the return of the pistols and the scope in July 2017. Grabowsky Decl., ¶ 9.

### Delontay Davis
### Mr. Davis's arrest by the MPD

66.     On about March 23, 2014, Mr. Delontay Davis, a student, and at that time a resident of Virginia, was arrested by the MPD in the District for possessing a pistol which he kept for self-defense. Pls.'s Ex. # 70, Davis Decl., ¶¶ 2-3; 5.

67.     At that time Mr. Davis's only conviction was a traffic offense, on a reckless driving offense. Pls.'s Ex. # 70, Davis Decl., ¶ 2; Pls.'s Ex. # 76, Davis Pre-Trial Services bail report (filed under seal).

68.     Mr. Davis lawfully purchased the pistol in Virginia for self-defense. The Commonwealth of Virginia does not require any license or registration to "open" carry a pistol outside the home. Pls.'s Ex. # 70, Davis Decl., ¶ 4.

69.     Mr. Davis' charges in Cobalt, the MPD's database, were UA and D.C. Code § 4504(a)(2), a felon-in-possession charge, even though his Pre-Trial Services report indicates that his only conviction was a traffic offense. Grabowsky Decl., ¶ 1; Pls.'s Ex. # 76, Davis Pre-Trial Services bail report (filed under seal).

70.     Mr. Davis was held in Central Cellblock overnight and presented in Superior Court the next day. Pls.'s Ex. # 70, Davis Decl., ¶ 6.

### Mr. Davis's detention, prosecution by the U.S. Attorney and the dismissal of his case by the U.S. Attorney

71.     The District through the MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57.

72.     At presentment on 3/24/2014, the US Attorney's Office, by complaint, charged Mr. Davis with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 1.

73.     Mr. Davis was preventively detained pursuant to D.C. Code § 23-1322(b) in the DC Jail for four nights. Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 2.

74.     As part of the detention Mr. Davis was subjected to a humiliating strip-search during the intake process at the DC Jail. Pls.'s Ex. # 70, Davis Decl., ¶ 8.

75.     On 3/27/2014 the Superior Court judicial officer ordered Mr. Davis released but the officer ordered Mr. Davis to stay away from the area where he was arrested and further ordered him not to possess weapons. Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 2.

76.     On 5/13/2014, the USAO filed an indictment of Mr. Davis for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01. Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 2.

77.     The US Attorney's Office dismissed the indictment on 1/16/2015. Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 4.

### Re-prosecution overdetention Mr. Davis by the OAG

78.     Immediately the OAG filed an information on 1/16/2015 charging Mr. Davis with UF and UA. Pls.'s Ex. # 72, Davis 2015 CDC 000614 docket, p. 1.

79.     On 3/16/2015 the OAG dismissed the criminal information against Mr. Davis. Pls.'s Ex. # 72, Davis 2015 CDC 000614 docket, p. 3.

### MPD's seizure and retention of Mr. Davis's pistol after his case was dismissed

80.     The MPD officers seized Mr. Davis's Bersa 380 pistol worth approximately $400.00 when they arrested him on 3/23/2014. Pls.'s Ex. # 70, Davis Decl., ¶ 11.

81.     The MPD classified the pistol as evidence. Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence).

82.    The Property Clerk still has custody of the pistol. Grabowsky Decl., ¶ 9.

83.    The District has never given Mr. Davis notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of the pistol. Pls.'s Ex. # 70, Davis Decl., ¶ 14.

## Kimberly Buffaloe
## Ms. Buffaloe's arrest by the MPD

84.    On about July 21, 2012, Ms. Kimberly Buffaloe was sitting in a parked car on the passenger side owned and operated by her then-boyfriend in the District of Columbia when several MPD officers approached the car. Pls.'s Ex. # 80, Buffaloe Decl., ¶ 1.

85.    Ms. Buffaloe was then a 22 year-old stylist and hair dresser and young mother with no criminal record and then a resident of the District of Columbia. Pls.'s Ex. # 80, Buffaloe Decl., ¶ 2.

86.    Unbeknownst to Ms. Buffaloe, her then-boyfriend was carrying an unregistered, loaded pistol without a license and, again unbeknownst to Ms. Buffaloe, the then-boyfriend slid the loaded gun onto her side of the floorboards as the police approached the car. Pls.'s Ex. # 80, Buffaloe Decl., ¶ 3.

87.    The MPD charges in Cobalt were National Firearms Act and UF. Grabowsky Decl., ¶ 1.

88.    Ms. Buffaloe was held in Central Cellblock overnight and presented in Superior Court. Pls.'s Ex. # 80, Buffaloe Decl., ¶ 5.

## Ms. Buffaloe's prosecution by the U.S. Attorney and the dismissal of her case

89.    The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57.

90.     At presentment on July 21, 2012, the US Attorney's Office, by complaint, charged Ms. Buffaloe with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Pls.'s Ex. # 81, 2012 CF2 012657 docket, p. 1-2.

91.     At presentment on July 21, 2012, the Superior Court judge ordered Ms. Buffaloe held in a halfway house. After 10 days on July 31, 2021 she was released into a high intensity supervision program ("HISP") where she had to wear an ankle monitor and stay home unless she received permission to go out. Pls.'s Ex. # 81, 2012 CF2 012657 docket, p. 1-2.

92.     Ms. Buffaloe was on HISP ankle monitoring and home confinement until 12/11/2012. Pls.'s Ex. # 81, 2012 CF2 012657 docket, p. 4.

93.     Ms. Buffaloe's daughter died during this period and she had to wear the ankle monitor at the wake and the funeral which caused her embarrassment and emotional distress. Pls.'s Ex. # 80, Buffaloe Decl., ¶ 8.

94.     On July 25, 2012, the USAO obtained an indictment of Ms. Buffaloe for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and D.C. Code § 22–2511, Presence in a motor vehicle containing a firearm. Pls.'s Ex. # 81, 2012 CF2 012657 docket, p. 2.

95.     On 3/19/2013 the government dismissed all charges against Ms. Buffaloe. Pls.'s Ex. # 81, 2012 CF2 012657 docket, p. 4.

### Carl Atkinson
### Mr. Atkinson's arrest by the MPD

96.     On about January 28, 2014 Mr. Carl Atkinson was arrested by the MPD after the MPD stopped his car on a pretext. Pls.'s Ex. # 90A, original Atkinson Decl., ¶ 21.

97.     He was then a resident of the District of Columbia. Pls.'s Ex. # 95, Pre-Trial Services bail report, p. 1.

98.     He had a prior arrest for marijuana possession but no convictions. Pls.'s Ex. # 95, Pre-Trial Services bail report, p. 3.

99.     The officers asked for consent to search the car but Mr. Atkinson **refused to consent.** Pls.'s Ex. # 90A, Atkinson Decl. (dated12/12/2014), ¶ 22.

100.    The officers searched the car anyway and they claimed to find a loaded pistol in the back area of the car. Pls.'s Ex. # 90A, Atkinson Decl., ¶ 22.

101.    The MPD officers arrested Mr. Atkinson for UF and UA. Grabowsky Decl., ¶ 1.

102.    Mr. Atkinson was held overnight and presented in Superior Court the next day. Pls.'s Ex. # 91, 2014 CF2 001702 docket, p. 1-2; Grabowsky Decl., ¶ 1.

### Mr. Atkinson's prosecution by the U.S. Attorney and the dismissal of his case

103.    The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57.

104.    At presentment on January 29, 2014, the US Attorney's Office, by complaint, charged Mr. Atkinson with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Pls.'s Ex. # 91, 2014 CF2 001702 docket, p. 1.

105.    On 4/28/2014, the USAO dismissed the case. Pls.'s Ex. # 91, 2014 CF2 001702 docket, p. 2.

### Warrant to search Mr. Atkinson's parents' home

106.    On 1/29/2014 the MPD filed for a warrant to search Mr. Atkinson's parents' home where he was living based on his arrest on a gun charge. Pls.'s Ex. # 93, 2014 CRW 000429 docket, p. 1.

107.     The MPD searched Mr. Atkinson's parents' home where he was living based on his arrest

on a gun charge but the search did not find anything. Pls.'s Ex. # 90A, original Atkinson Decl., ¶

49; Pls.'s Ex. # 90, summary judgment Atkinson Decl., ¶ 10-11.

### Facts regarding effect of District's gun laws during the Class Period

108.     "At the time of plaintiffs' arrests and seizures, no person — resident or non-resident —

could carry a handgun or ammunition outside the home." "Defendant's Statement of the Bases for

its Defenses," Meet and Confer Statement [73], p. 5.

109.     During the Class Period the District maintained a custom, practice and policy of refusing to

entertain gun registration applications by individuals who did not reside in the District of

Columbia. *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 176 (D.D.C. 2014); Pls.'s Ex. # 35,

Plaintiffs' SMF [5-3] # 9, *Palmer v. D.C.*, 09-CV-1482-HHK[/FJS]; Pls.'s Ex. # 36, Defendants'

Opposition to Plaintiffs' Separate Statement of Undisputed Material Facts [6-3], # 9, *Palmer v.*

*D.C.*, 09-CV-1482-HHK[/FJS] (The District does not dispute paragraph 9 of the Plaintiff's SMF #

9).

110.     The District required gun registration applicants to submit "[p]roof of residency in the

District of Columbia (e.g., a valid DC operator's permit, DC vehicle registration card, lease

agreement for a residence in the District, the deed to your home or other legal document showing

DC residency." Pls.'s Ex. # 35, Plaintiffs' SMF [5-3] # 4, *Palmer v. D.C.*, 09-CV-1482-HHK[/FJS];

Pls.'s Ex. # 36, Defendants' Opposition to Plaintiffs' Separate Statement of Undisputed Material

Facts [6-3], # 4, *Palmer v. D.C.*, 09-CV-1482-HHK[/FJS] (The District does not dispute paragraph

4 of the Plaintiff's SMF # 9); *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 176 (D.D.C.

2014).

111.     The District's gun registration requirements in force during the Class Period discriminated

against non-residents as to gun ownership because the registration requirement prevented non-

residents from even owning a gun in the District. D.C. Code §§ 7-2502.01 (registration); *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 28 (D.D.C. 2019).

112.     The three code sections of D.C. Code § 7-2502.01, § 7-2506.01and § 22-4504 and D.C. Code § 22-4504(a) were the moving force behind most arrests pursuant to the District's gun laws during the Class Period. Grabowsky Decl., ¶ 3.

113.     During the Class Period the policy and practice of the District was for the MPD to arrest persons suspected of violating the District's gun laws on D.C. Code § 4504(a), CPWL/CP. Haines depo, p. 33.

114.     Reserved.

115.     Reserved.

116.     Virtually all arrests of persons for violations of the District's gun laws are booked and processed by MPD regard of which agency makes the arrest. Haines depo, pp. 105-06.

117.     Except, U.S. Park Police and U.S. Capitol Police have their own facilities and booked their own arrests for violations of the District of Columbia gun laws. Haines depo, pp. 105-06.

118.     During the Class Period MPD arresting officers were **not** required by any policy or practice to run criminal history checks on persons arrested on gun charges during the Class Period. Haines depo, p. 42.

119.     During the Class Period **there was no** District policy which required either the arresting officer or cellblock technician to do criminal history background checks to see if an arrestee arrested on gun charges during the Class Period fell into one of the categories of D.C. Code § 4503(a)(1) to (a)(6) or any of the District's other gun enhancement statutes. Haines depo, p. 54.

120.     During the Class Period **neither** arresting officers nor cellblock technicians who booked arrestees followed a practice of running to do criminal history background checks on persons arrested on gun charges. Haines depo, p. 54.

121.    Even if somehow an arresting officer were made aware by another person such as a
cellblock technician that an arrestee arrested on CPWL/ UF/ UA fell into one of the restricted
categories of  D.C. Code § 4503(a)(1) to (a)(6) it was entirely discretionary within the arresting
officer to add, or not to add, the charge. Haines depo, p. 50.

122.    If arresting officer found out that an arrestee arrested for CPWL/ CP fell into one of the
restricted categories under D.C. Code § 4503(a)(1) to (a)(6) the officer had **no** obligation to charge
under D.C. Code § 4503(a)(1). Haines depo, p. 66.

123.    The District's policy was for the MPD to refer every arrest on gun charges to the
prosecutor unless the arrestee were released under the Detention Journal (arrest lacked probable
cause). Haines depo, p. 67.

124.    Deciding which gun offenses to charge an arrestee with was within the discretion of the
arresting officer. Haines depo, p. 32-33.

### Property claim

125.    The Property Clerk is the custodian of all property seized by or coming into the possession
of the Metropolitan Police Department. D.C. Code § 5-119.01, et seq. (the Property Clerk statute);
DCMR § Section 6-A805.1.

126.    The Metropolitan Police Department ("MPD") classifies property coming into the
possession of the MPD generally into 13 categories including found, evidence, hold for civil
forfeiture, and prisoner's property, based on written directives promulgated by the MPD.
Recording, Handling and Disposition of Property Coming into the Custody of the Department,
GO-601.01, p.3 (property classifications listed at p. 6 (a. to m.), e.g., evidence, found, civil
forfeiture, prisoner's property). MPD General Order 601.1, Recording, Handling and Disposition
of Property Coming into the Custody of the Department, MPD General Order 601.1, p.3

(property classifications listed at p. 6 ("a." to "m."), p. 26 (III,F,1 to 4).

https://go.mpdconline.com/GO/GO_601_01.pdf

127.     During the Class Period the MPD seized handguns and evidence from persons arrested on District gun offenses. Manigault depo., p. 13; 23-24.

128.     The MPD classified handguns and ammunition seized in connection with District gun offenses as evidence. Manigault depo., p. 23-24.

129.     The MPD classified all handguns coming into the possession of the department as evidence. Pls.'s Ex. # 32, MPD "Teletype," TT-80-31-13_Carrying-a-Pistol_080913.

130.     The MPD decided what property to seize as evidence, and the MPD, not the U.S. Attorney, made the initial classification of property as evidence according to criteria set forth in written directives of the MPD which are District of Columbia policy. MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, MPD General Order 601.1, p.3 (property classifications listed at p. 6 ("a." to "m."), p. 26 (III,F,1 to 4).

131.     The U.S. Attorney confirms that the procedure for release of seized property held pursuant to D.C. Code § 5-119.06(d) (Property Clerk statute) is as follows: the MPD officer "makes the decision to release the seized property," and then presents a Form 81-C to a supervisor at the USAO to sign "indicating that the USAO-DC has no objection to that release and that said property is not needed to be retained as evidence." *Avila v. Dailey*, 2017 U.S. Dist. LEXIS 47596, *8 (D.D.C. Mar. 30, 2017); P. Ex. 31, Giovannelli Decl. ¶¶ 3-7. 66. The U.S. Attorney's determination on whether to object is "handled on a case by case basis." (P. Ex. 31, Giovannelli Decl. ¶¶ 3-7).

132.     Named Plaintiffs' guns seized by MPD:

The following chart shows Named plaintiffs from whom the District seized guns as evidence, the dates the U.S. Attorney dismissed their cases, and he date the District returned their guns (if ever):

| Named Plaintiffs | Date U.S. Attorney / OAG indictment dismissed | Date gun returned |
|---|---|---|
| Ms. Smith | September 29, 2014<br><br>Pls.'s Ex. # 41, Smith U.S. Attorney docket, 2014 CF2 011408 | Never[2] |
| Mr. Cassagnol | July 29, 2014<br><br>Pls.'s Ex. # 51, 2013 CF2 017982 | Never |
| Mr. Rouse | April 22, 2015<br><br>OAG docket, 2014 CDC 015375 docket, p. 3 | July 28, 2017 |
| Mr. Davis | 1/16/2015<br><br>Pls.'s Ex. # 71, 2014 CF2 005034 docket | Never<br><br>Pls.'s Ex. # 13 |
| Ms. Buffaloe | No gun | No gun |
| Mr. Atkinson | No gun | No gun |

133.     The MPD classify guns seized incident to arrest as evidence upon seizure on the PD 81 (property record). Manigault depo., p. 20, 23-24; MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, GO-601.01, p.3 (property classifications listed at p. 6 ("a." to "m.").

https://go.mpdconline.com/GO/GO_601_01.pdf

---

[2] District Answer [117] admitting ¶ 143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest."

134.    The ECB would not release a gun from evidence without a PD 81-C from the prosecuting authority, Manigault depo., p. 23, U.S. Attorney or OAG.

135.    The U.S. Attorney stopped prosecuting violations under D.C. Code § 4504(a) in 2014. SMF # 1.

136.    The MPD General Orders provide for the officer in charge of the gun as evidence to get a signed PD 81-C from the USAO handling the case when the case is dismissed. MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, GO-601.01, p. 26 (III,F,4). https://go.mpdonline.com/GO/GO_601_01.pdf

137.    The District did not send notice to gun owners telling them when or if they could retrieve their guns. Manigault depo., p. 39.

138.    The ECB waited for owners to call or come by. Manigault depo., p. 39.

139.    The ECB would not call the prosecutor for a PD 81(c) unless the owner came to ECB and said their attorney told them their case was over. Manigault depo., p. 24.

140.    Sometimes the ECB would ship a gun via Fed Ex to an owner or police station or gun dealer shop outside the District if the owner set up the account. Manigault depo., p. 29, 36.

141.    The ECB would not release guns to District residents without a registration certificate or a District license. Id. at 31.

142.    So during the Class Period there was no way for owners to get their guns back because guns were illegal. Manigault depo., p. 31-32.

143.    Such guns were kept at ECB or destroyed. Manigault depo., p. 33-34.

### Conclusion.

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579

Counsel for Plaintiffs

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com