P.D 81-C
Rev. 11/82

**Metropolitan Police Department**
**Washington, D. C.**

PROPERTY RELEASE

| 1. Property release  initiated by *(check one)* | | 2. Date Initiated |
|---|---|---|
| ☐ United States Attorney for the District of Columbia | ☒ Office of the Attorney General  for the District of Columbia | 12/27/16 |

3.

Property Clerk
Metropolitan Police Department
17 DC Village Lane SW
Washington DC 20032

This is to advise you that the property described below will not be needed as evidence in the case designated nor in any other case the Police Department has brought to our attention. Therefore, *(Prosecutor must initial one or more boxes.)*:

☒ There is no objection on the part of this Office to disposition of the property by the Property Clerk in accordance with the District of Columbia Code.

☐ The property may be released only after it is photographed with the claimant.

☐ Other special conditions of release of property:

| 4. DESCRIPTION OF PROPERTY | 5. EVIDENCE | |
|---|---|---|
| 10532460 Bersa Thunder .380 .22mi-automatic handgun with 7 rounds of ammo | a. Criminal Docket Number Assigned By *(Court)* | 2016 CDC16129 |
| | b. Central Complaint Number | 14-095-375 |
| | c. Case Name | D.C. v. Maggie Smith |
| | d. Charge | Unregisted Firearms |
| | e. Disposition | Case dismissed |
| Register Number | f. Is Case On Appeal? ATTN. Prosecutor. Property may not released released Wrote on appeal unless photograph of property is authorized above | ☐ Yes  ☒ No |
| | g. Release Authorized by  *(Signature of US Attorney or Asst. Attorney General)* Sign Name Clearly ▶ | AAG Jose Marrero |
| . Date Property .oquired | 7. Officer's Full Name | 8. Badge Number | 9. Organizational Element |

Distribution: *Original copy to the prosecuting attorney at the time the case is papered.*

**. NOTE: NOT TO BE ACCEPTED WITHOUT CRIMINAL DOCKET NUMBER**

# Pls.'s Ex. 46, p. 1
# Smith v. DC, 15-737 (RCL)

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC_M SMITH - 000027

P.D 81-C
Rev. 1182

**Metropolitan Police Department**
**Washington, D. C.**

PROPERTY RELEASE

| 1. Property release initiated by (check one) | | 2. Date Initiated |
|---|---|---|
| ☐ United States Attorney for the District of Columbia | ☒ Office of the Attorney General for the District of Columbia | 12/27/16 |

3.

Property Clerk
Metropolitan Police Department
17 DC Village Lane SW
Washington DC 20032

This is to advise you that the property described below will not be needed as evidence in the case designated nor in any other case the Police Department has brought to our attention. Therefore, (Prosecutor must initial one or more boxes.):

☒ There is no objection on the part of this Office to disposition of the property by the Property Clerk in accordance with the District of Columbia Code.

☐ The property may be released only after it is photographed with the claimant.

☐ Other special conditions of release of property:

| 4. DESCRIPTION OF PROPERTY | 5. EVIDENCE | |
|---|---|---|
| 10532460 Bersa Thunder .380 | a. Criminal Docket Number Assigned By (Court): 2014 CDC 16129 | |
| Semi-automatic handgun with 7 rounds of ammo | b. Central Complaint Number 14·095·375 | |
| | c. Case Name D.C. v. Maggie Smith | |
| | d. Charge Unregistered Firearms | |
| | e. Disposition Case dismissed | |
| | f. Is Case on Appeal? ATTN. Prosecutor: Property may not released released while on appeal unless photograph of property is authorized above ☐ Yes ☒ No | |
| Register Number | g. Release Authorized by: (Signature of US Attorney or Asst. Attorney General) Sign Name Clearly ▶ AAG Jose Marrero | |
| 6. Date Property Acquired | 7. Officer's Full Name | 8. Badge Number | 9. Organizational Element |

Distributor: Original copy to the prosecuting attorney at the time the case is papered.

**. NOTE: NOT TO BE ACCEPTED WITHOUT CRIMINAL DOCKET NUMBER**

**Pls.'s Ex. 46, p. 2**
**Smith v. DC, 15-737 (RCL)**

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC_M SMITH - 000028

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, et al., | |
| Plaintiffs, | |
| v. | Civil Action No.:  15-737 (RCL) |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | |
| Defendant. | |

## SUMMARY JUDGMENT DECLARATION
### Gerard "Rob" Cassagnol

**Mr. Cassagnol's arrest by the MPD**

1.    I was a resident of the State of Maryland at the time of my arrest.

2.    I had no criminal convictions prior to my arrest and my only minimal contact with the police involved traffic offenses.

3.    I still have no criminal convictions.

4.    I have four children, including a son with Williams syndrome that I care for.

5.    At the time of my arrest in the District on October 9, 2013 I was a full-time employee of Cox Communications as a local manager - broadband and engineering.

6.    I worked shifts varying in length from 8 to 15 hours per day.

7.    At the time of my arrest in the District I owned a 9 millimeter pistol which I had registered in Maryland and which I kept for self-defense.

**Mr. Cassagnol's arrest by the MPD**

**Pls.'s Ex. 50, p. 1
Summary Judgment Decl.
Smith v. DC, 15-737 (RCL)**

8.      On October 9, 2013, I drove from my work place in Northern VA into Northeast

Washington DC in my employer's Cox Communications truck, on my way home.

9.      While there several MPD cars with sirens blaring converged on me.

10.      Several MPD officers exited the police cars with weapons drawn and pointed at me and

the officers ordered me to put my hands on the steering wheel.

11.      My window was down and one of the officers grabbed my left arm, while another officer

opened my door and they pulled me from the vehicle, and physically threw me to the ground (in

the road); one officer with his foot applying pressure on my neck, another officer with his foot

applying pressure on my ankle, and a third officer falling, his knees into my back and handcuffing

me.  When I asked the officers what was going on and why I was being detained, an officer

shouted for me to "Shut the Fuck up".

12.      The officers began to search the truck.

13.      Several minutes later, another officer instructed the officers to sit me up (off of the wet

road), and asked me if I had a gun in the truck. Just as I had been taught I told the officers I had

my gun in the truck. I explained that I had lawfully purchased and registered the pistol in the State

of Maryland, my state of residence.

14.      I cooperated fully with the officers answering their questions.  I told the officers I had a 9

millimeter pistol locked up in a combination-lock gun safe in the bottom of a grey bin in the

backseat of the truck.  I further told the officers that the clip was not inside the pistol.

15.      I gave the officers the combination to the gun safe when they requested it.

16.      While sitting on the ground, one of the officers approached me and took a photo of my

work ID that was clipped to my belt, telling me that he intended to report the incident to my

employer to ensure that I was fired.

**Pls.'s Ex. 50, p. 2
Summary Judgment Decl.
Smith v. DC, 15-737 (RCL)**

17.     The officers recovered the pistol and stood me up from where they had thrown me to the ground. At that time, I was experiencing an asthma attack and could not breathe. Another office asked if I was okay and, gasping for air, I asked if she could retrieve my inhaler from my pocket and give me a few puffs. She called another officer over and he did. The officer also retrieved my keys and wallet, instructing me that they would drive my truck to an area close to the precinct so it would not be towed, and it would be there when I was released from the precinct.

18.     The police placed me in the back of a police wagon.

19.     The officers took me to the Sixth District station where I was booked and fingerprinted and placed in a cell by myself.

20.     I spent the night in jail before going to Superior Court the next morning.

### Prosecution by the US Attorney

21.     On October 10, 2013, I was presented in the District of Columbia Superior Court on a charge of Carrying a Pistol.

22.     I was held without bond at the DC Jail until the next day. As part of the intake process at the DC Jail I was subjected to a humiliating and demeaning strip-search.

23.     I was released the next day, October 11, 2013, after court. I was released under the supervision of the Pretrial Supervision Agency.

24.     On October 22, 2013, I was fired from my job at Cox Communications because of my arrest in the District of Columbia for the constitutionally protected conduct of carrying a pistol outside the home.

### Seizure and unlawful retention of Mr. Cassagnol's property by the MPD

25.     When the MPD arrested me on October 9, 2013 they also seized from me a 9 mm pistol, make KIMBER, model DP51, worth approximately $500.00, and some ammunition.

**Pls.'s Ex. 50, p. 3**
**Summary Judgment Decl.**
**Smith v. DC, 15-737 (RCL)**

## Seizure and unlawful retention of Mr. Cassagnol's property by the MPD

25.     When the MPD arrested me on October 9, 2013 they also seized from me a 9 mm pistol, make KIMBER, model DP51, worth approximately $500.00, and some ammunition.

26.     The MPD turned the items over to the Property Clerk and the Property Clerk booked the items into evidence.

27.     The Property Clerk still has custody of the gun as far as I know.

28.     On July 22, 2015, I called the Evidence Control Branch of the Metropolitan Police Department and I spoke to Technician Ferguson of the Evidence Control Branch, and requested the return of my property.

29.     Technician Ferguson informed Mr. Cassagnol that I would have to contact my lawyer if I wanted my property back.

30.     Technician Ferguson further stated that my lawyer would have to contact the prosecutor and request that the prosecutor fill out a PD 81C form to get my property returned.

31.     Notwithstanding my July 22, 2015 request and the fact that the US Attorney's Office dismissed the case they had brought against me and the Office of the Attorney General has dismissed the subsequent case against me, the Property Clerk never returned my gun to me.

32.     The District has never given me notice and a hearing at which I could challenge the District's retention of my pistol.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Gerard "Rob" Cassagnol.

Executed on _____.

Pls.'s Ex. 50, p. 4
Summary Judgment Decl.
Smith v. DC, 15-737 (RCL)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

MAGGIE SMITH, et al.

Plaintiffs,

v.

GOVERNMENT OF THE DISTRICT OF
COLUMBIA

Defendant.

Civil Action No.: 15-737 (RCL)

## AFFIDAVIT OF GERARD "ROB" CASSAGNOL

1.      At the time of my arrest in the District on October 9, 2013 I was a full-time employee of

Cox Communications. I worked shifts varying in length from 8 to 15 hours per day.

2.      I have four children, including two I care for, one of which has Williams Syndrome.[1]

3.      Prior to my arrest in the District on October 9, 2013 I had no criminal convictions and I

had only minimal contact with the police such as traffic offenses.

4.      At the time of my arrest in the District I owned a 9 millimeter pistol which I had registered

in Maryland.

5.      I was fired from my job with Cox Communication in Maryland as a result of my arrest in

DC.

### My arrest by the MPD

---

[1] The Amended Complaint mistakenly refers to my son as having Down syndrome.  That was a typographical error
He has Williams syndrome.

Page 1 of 3

Pls.'s Ex. 50A, p. 1
Class Action Decl.
Smith v. DC, 15-737 (RCL)

Scanned by CamScanner

6.      MPD officers arrested me on October 9, 2013 in Southeast, Washington, D.C. while on my way home from work in my employer's Cox Communications truck and charged me with carrying a pistol without a liscense.

7.      The officers took a 9 millimeter pistol from my possession.

8.      The officers took me to the Sixth District station where I was booked and fingerprinted and placed in a cell with others. I spent the night in jail and I was presented in Superior Court the next afternoon.  Upon arrest, I was told by the Detective that I would be released within hours.  As a result, I did not eat anything when given the opportunity.  Despite repeated requests to make a phone call to my son, I was told several different stories about when I would get to use the phone. Ultimately, I was never allowed to call my son who suffers anxiety as a result of his condition.  I was held in custody for approximately fifteen hours and no family members knew of my whereabouts.

### Seizure and unlawful retention of Mr. Cassagnol's property by the MPD

9.      The 9 mm pistol the MPD took from me was a DAEWOO, model DP51, worth approximately $500.00.

10.     The MPD also took some ammunition.

11.     The MPD still has custody of the gun.

12.     On July 22, 2015, I called the Evidence Control Branch of the Metropolitan Police Department and I spoke to Technician Ferguson of the Evidence Control Branch, and requested the return of my property.

13.     Technician Ferguson informed me that I would have to contact my lawyer if I wanted my property back.

Pls.'s Ex. 50A, p. 2
Class Action Decl.
Smith v. DC, 15-737 (RCL)

Scanned by CamScanner

14.    Technician Ferguson further stated that my lawyer would have to contact the prosecutor and request that the prosecutor to fill out a PD 81C form to get my property returned.

15.    Despite the fact that all charges against me were finally dismissed on or about April 20, 2015, the District has not returned my pistol or given me notice and a hearing at which I could challenge the District's retention of my pistol or the District could justify its continued retention of my pistol.

I, Gerard "Rob" Cassagnol, pursuant to 28 U.S.C. § 1746, certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct.

_____
Gerard "Rob" Cassagnol

Date _11/13/15_
Place _Silver Spring_

Scanned by CamScanner

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

+ + + + +

```
_____
                                :
IN THE MATTER OF:               :
                                :
MAGGIE SMITH, et al.,           :
                                :
            Plaintiffs,         :
                                :
    v.                          :   Civil Action No.
                                :   15-737 (RCL)
GOVERNMENT OF THE DISTRICT      :
OF COLUMBIA, et al.,            :
                                :
            Defendants.         :
                                :
_____:
```

Wednesday,
November 18, 2020

Via Video Teleconference


DEPOSITION OF:


FREDERICK "CORNELIUS" ROUSE


called for examination by Counsel for the

Defendant, pursuant to Notice of Subpoena, when

were present on behalf of the respective parties:

Pls.'s Ex. 60, p. 1
Smith v. DC 15-737 (RCL)

```
    APPEARANCES:

    On Behalf of Defendant:

    ANDREW J. SAINDON, ESQ.
    Assistant Attorney General
    400 Sixth Street, N.W.
    Washington, D.C. 20001
    (202)724-6643
    andy.saindon@dc.gov


    On Behalf of Plaintiff:

    WILLIAM CLAIBORNE, ESQ.
    717 D Street N.W.
    Suite 300

    Washington, D.C. 20004

    (202)824-0700

    claibornelaw@gmail.com
```

CONTENTS

WITNESS                    DIRECT CROSS REDIRECT RECROSS


Frederick Rouse          6




EXHIBIT NO.                                    PAGE


1     Mr. Rouse's Interrogatory Responses. . . . .13

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                         (10:08 a.m.)

 3                  FREDERICK "CORNELIUS" ROUSE

 4     was called for examination by Counsel for the

 5     Defendant, and after having been first duly

 6     sworn, was examined and testified as follows:

 7          DIRECT EXAMINATION

 8               BY MR. SAINDON:

 9          Q     Thank you, Mr. Rouse.  Could you state

10     your full name for the record, please?

11          A     Frederick Cornelius Rouse.

12          Q     My name is Andy Saindon.  I'm an

13     attorney for the District of Columbia.  On the

14     line also is Brendan Heath, an attorney from my

15     office, and you know Mr. Claiborne, your

16     attorney.

17               Have you ever been deposed before?

18          A     No.

19          Q     Okay.  Have you ever given testimony

20     court before?

21               (Off-microphone comments.)

22          A     No.
```

Neal R. Gross and Co., Inc.
(202) 234-4433                Washington DC                www.nealrgross.com
Pls.'s Ex. 60, p. 4
Smith v. DC 15-737 (RCL)

1          MR. SAINDON: I think Mr. Claiborne is

2     working out an issue.

3          MR. CLAIBORNE: My tea arrived.

4          MR. SAINDON: Can you tell your servant

5     to swing by my place.  That will be nice.

6          MR. CLAIBORNE: Plaintiffs only, sorry,

7     Andy.  Mr. Rouse, yours will be there directly.

8          MR. SAINDON: All right.

9          BY MR. SAINDON:

10     Q     Sorry, Mr. Rouse.  I think my question

11     was have you ever given testimony in court

12     before?

13     A     No.

14     Q     Well, I'm going to go over a few

15     ground rules here for the deposition.  It's

16     important you answer with verbal responses.  If

17     you say uh huh, or nod, or shake your head that

18     doesn't always get recorded in a transcript even

19     though there's a court reporter watching you the

20     whole time.  If you need a break at any time,

21     just let me know.  I would just ask that you

22     don't take a break while a question is pending,

1    okay?

2        A    Okay.

3        Q    It's very important you understand the

4    individual questions, and give accurate answers.

5    If there's any question you don't understand,

6    please ask me to repeat it or rephrase the

7    question, okay?

8        A    Okay.

9        Q    So I'll assume if you answer a

10    question you understood it, and you're answering

11    it accurately, okay?

12        A    Okay.

13        Q    Great.  Because the court reporter is

14    writing down everything we say, let's make an

15    effort not to talk over each other, so make sure

16    I complete my question before you answer it.

17    Then your counsel, Mr. Claiborne, my object to

18    some of my questions.  You still have to answer

19    unless he tells you not to answer.  Do you

20    understand that?

21        A    Yes.  Brendan -- okay, thank you for

22    muting me.  There was some moaning in the

1  background in Brendan's thing there.

2      Q      Great.  Brendan.  We think so.  Are

3  you in communication right now, Mr. Rouse, with

4  anybody about this deposition?

5      A      No.  I told my girlfriend that I have

6  a deposition.

7      Q      Okay.  Did you review any documents to

8  prepare for this deposition?

9      A      No.

10     Q      Did you talk to anybody to prepare for

11 the deposition?

12     A      No.

13     Q      Did you talk to your counsel?

14         MR. CLAIBORNE: Oh, wait a minute,

15 Andy, he doesn't have to -- you can ask him did

16 he talk to me, but you can't ask him what we

17 said.

18         MR. SAINDON: That's what I asked, if

19 he talked to his counsel to prepare for the

20 deposition?

21         MR. CLAIBORNE: Well --

22         THE WITNESS: He told me I had a

Pls.'s Ex. 60, p. 7
Smith v. DC 15-737 (RCL)

1    deposition with you.

2                    BY MR. SAINDON:

3        Q    Okay.  But you didn't review any

4    documents before?

5        A    No.  One thing about me is I'm very

6    bad at reviewing documents, so, no.

7        Q    Okay.

8                    MR. CLAIBORNE: Mr. Rouse, you don't

9    have to answer him anything other than what he

10   asks you, --

11                   THE WITNESS: Okay.

12                   MR. CLAIBORNE: -- so yes or no.

13                   THE WITNESS: No.

14                   BY MR. SAINDON:

15       Q    Thank you.  So if we could turn to the

16   allegations in the Complaint.  You were arrested

17   on August 30th, 2014, is that right?

18       A    Yes.

19       Q    Okay.  You were staying at the

20   Renaissance Hotel for a social event, is that

21   correct?

22       A    No.

1        Q     At the time.  Okay, how is that not

2   correct?

3        A     I was staying at the Renaissance

4   Hotel.  There was no social event.

5        Q     Okay.  Why were you staying at the

6   hotel?

7        A     Because I was throwing a social event

8   somewhere else, but it was not at the

9   Renaissance.

10        Q     Okay.  Your Complaint said prior to

11   your arrest you had no adult criminal

12   convictions, is that right?

13        A     That is correct.

14        Q     Do you have any juvenile criminal

15   convictions?

16        A     I don't remember.

17        Q     You don't remember if you were

18   convicted of a crime as a juvenile, is that what

19   you're saying?

20        A     Yes, that is what I'm saying.

21        Q     Okay.  Aside from this incident, have

22   you ever been arrested before?

1        A    Yes.

2        Q    Explain, please.

3        A    No, I don't really care to explain.

4        Q    Okay, well you have to answer the

5    question when you were arrested, and why.

6             MR. CLAIBORNE: Is this a traffic

7    offense?

8             THE WITNESS: It was a DUI.

9             BY MR. SAINDON:

10       Q    And when did this happen?

11       A    I don't remember.

12       Q    Was it within the last 5 years?

13       A    Yes.

14       Q    Okay.  Aside from the DUI and the

15   arrest for the gun here in this case, have you

16   ever been arrested any other times?

17       A    No.

18       Q    Aside from this incident, have you

19   ever been in jail before?

20       A    I don't think so.

21       Q    Okay.  You were not put in jail in

22   connection with the DUI arrest?

1        A     Well, no -- yes, that's the other

2    time, but it wasn't -- it was a holding cell, and

3    then I went home.

4        Q     Okay, and where was that?  What

5    jurisdiction was that in?

6        A     D.C.

7        Q     Okay.  All right, now, at the time of

8    your arrest, Mr. Rouse, you said you have two

9    pistols seized, right, a Glock 33 and a FN-57, is

10   that right?

11       A     Yes.

12       Q     I think you said the Glock was worth

13   about $550.00, and the FN-57 was worth about

14   $1,200.00, is that right?

15       A     It's gone up since, but, yes.

16       Q     And a TLR2 Scope worth about $300.00,

17   is that right?

18       A     Actually, they're around -- they're

19   worth around $400.00 now if you can get on

20   Amazon, --

21       Q     Okay, so --

22       A      -- because of everything going on,

Neal R. Gross and Co., Inc.
(202) 234-4433                Washington DC                www.nealrgross.com
Pls.'s Ex. 60, p. 11
Smith v. DC 15-737 (RCL)

1    and the political climate the price of guns and

2    ammo have gone up significantly.

3         Q      Were those prices what it would cost

4    to buy new, or were they your estimate at the

5    time of the arrest?

6         A      No, that's what they would cost used

7    now.  The new, they're about $1,500.00 and

8    $400.00 respectfully for the scope and the gun --

9    I mean, scope and the 57, and the Glock 33 is

10   roughly, like, $650.00 now, new.

11        Q      Okay, so those prices were used at the

12   time of your arrest, approximately.

13        A      I don't understand that question.

14        Q      The estimates that you gave in the

15   Complaint about what they were worth, those were

16   for the cost of used items at about the time you

17   were arrested, is that right?

18        A      Yes, sir.

19        Q      Okay.  All right, I'd like to show you

20   what I'm going to have marked as Exhibit 1, which

21   I think the court reporter will put up for us,

22   assuming he's still awake, of course.

13

```
 1                    (Whereupon, the above-referred to
 2                    document was marked as Exhibit 1 for
 3                    identification.)
 4                    MR. CLAIBORNE: Andy, will you be
 5          emailing us these exhibits, or can we download
 6          them?
 7                    MR. SAINDON: You don't need to, you
 8          should already have them.  This --
 9                    MR. CLAIBORNE: Well, it may not --
10                    MR. SAINDON: Yes.
11                    MR. CLAIBORNE: I mean, I like to have
12          my exhibits -- in a depo that's different from
13          just having them in discovery.
14                    MR. SAINDON: Right.
15                    THE WITNESS: I don't see anything.
16                    MR. SAINDON: I know.  I don't think
17          they put it up yet, so the court reporter is
18          going to share it with us, yes.
19                    THE WITNESS: I do see Maggie Smith
20          versus District of Columbia.  Is that what I'm
21          looking at?
22                    MR. SAINDON: Yes.
```

1                    THE WITNESS: Okay.

2                    MR. CLAIBORNE: Nice.

3                    MR. SAINDON: I see that, yes, and

4        we're very zoomed in here, so you could pull out

5        a bit that might be helpful.

6                    MR. CLAIBORNE: So, Andy, for some

7        reason this does not have a ECF stamp on it.

8                    MR. SAINDON: Right, this is Mr.

9        Rouse's interrogatory responses.

10                   MR. CLAIBORNE: Okay.  I --

11                   MR. SAINDON: I'll send you a copy now

12       so you have one that I'm -- one that I'm working

13       with. All right.  Is our court reporter still on?

14                   COURT REPORTER: Yes.

15                   MR. SAINDON: All right.  If you could

16       zoom out a little bit.  Now, can the deponent

17       scroll through here?

18                   COURT REPORTER: You said allow

19       control.

20                   MR. SAINDON: Right.

21                   THE WITNESS: It's not letting me

22       scroll down.

Neal R. Gross and Co., Inc.
Washington DC
(202) 234-4433                                        www.nealrgross.com
Pls.'s Ex. 60, p. 14
Smith v. DC, 15-737 (RCL)

1          MR. SAINDON: Patience, Mr. Rouse.  I
2     think you're probably more sophisticated on this
3     than our reporter.  I'm just guessing, but I
4     don't know.
5               I just sent you a copy of the exhibit.
6     You can send it to Mr. Rouse if you want.  It
7     might be easier.
8          THE WITNESS: Jesus H. Christ. Oh, man.
9          MR. SAINDON: Mr. Rouse, you have view
10    options on that window?
11         THE WITNESS: Yes, I do.
12         MR. SAINDON: Can you click request for
13    remote control?  Will that help?
14         THE WITNESS: No, actually -- I already
15    have control.  I'm at -- it says you're
16    controlling NRG1's screen --
17         MR. SAINDON: Okay.
18         THE WITNESS: -- but, like, if you
19    check down at the bottom right you see that arrow
20    is blue now.
21         MR. SAINDON: Yes.
22         THE WITNESS: That's supposed to be to

Neal R. Gross and Co., Inc.
(202) 234-4433          Washington DC          www.nealrgross.com
Pls.'s Ex. 60, p. 15
Smith v. DC 15-737 (RCL)

1    scroll down, but it's not allowing me to do so.

2             MR. SAINDON: Not working, all right.

3             THE WITNESS: It's probably because

4    this is a Mac, and Adobe is the resource

5    intensive application.

6             MR. CLAIBORNE: Andy.

7             MR. SAINDON: Yes, sir.

8             MR. CLAIBORNE: Hello.

9             MR. SAINDON: Yes.

10            THE WITNESS: He said yes, sir. Can you

11   hear us?  We can hear you.

12            MR. SAINDON: I hear you.

13            THE WITNESS: We can hear you.

14            MR. SAINDON: Patience, we'll get

15   through this.  Is the reporter still on?

16            COURT REPORTER: Yes.

17            MR. SAINDON: Okay.

18            THE WITNESS: Can you press down,

19   please?

20            MR. SAINDON: All right.

21            MR. CLAIBORNE: Okay, Andy.

22            MR. SAINDON: Yes.

Neal R. Gross and Co., Inc.
(202) 234-4433                    Washington DC                    www.nealrgross.com
Pls.'s Ex. 60, p. 16
Smith v. DC, 15-737 (RCL)

1           MR. CLAIBORNE: This is -- I gave you

2      a copy of these interrogatories and responses

3      that was stamped confidential in red.

4           MR. SAINDON: Right.

5           MR. CLAIBORNE: I asked you to use

6      those in the deposition.  I just want to make

7      sure that even if this document is going to be a

8      deposition exhibit that it remains confidential.

9           MR. SAINDON: Yes.

10           MR. CLAIBORNE: Okay.

11           MR. SAINDON: We'll have it that way.

12      The court reporter can mark it that way.

13           MR. CLAIBORNE: Can the court reporter

14      hear me about that?

15           COURT REPORTER: Yes.

16           MR. CLAIBORNE: Okay, thank you.

17           MR. SAINDON: All right.

18           MR. CLAIBORNE: Mr. Rouse, I emailed

19      you a copy of this document.

20           THE WITNESS: Yes.

21           BY MR. SAINDON:

22      Q    Okay.  Can you see it and scroll

1    through it for me?  I just wanted to ask if you

2    recognize the document.

3           A     No, I don't recognize this document.

4           Q     Okay.  If you could scroll down to

5    page 10.

6           A     Page --

7           Q     Ten of the document.

8           A     Ten, okay.

9           Q     Is that your signature?

10          A     I don't have -- I don't see a

11   signature.

12                MR. CLAIBORNE: Andy -- oh, right

13   there.

14                THE WITNESS: Okay, yes.  Yes, that is

15   my signature.

16                BY MR. SAINDON:

17          Q     Okay.  It looks like you signed it

18   yesterday, is that right?

19          A     Yes, I did sign this yesterday,

20   electronically.

21          Q     Okay, so did you write this document?

22          A     No.

1          Q     Okay.  Did you see this document

2     before yesterday?

3          A     The day before yesterday.

4          Q     And did you see it before then?

5          A     I don't think so.

6          Q     Okay.

7          A     Attorney Claiborne asked me --

8          Q     Don't tell me what he told you, or

9     what you talked about.  I'm just trying to figure

10    out a time line here.

11                MR. CLAIBORNE: Yes.

12                THE WITNESS: I'm just talking about

13    the signature part.

14                BY MR. SAINDON:

15          Q     Okay.

16          A     He tried to send it to me to sign.  I

17    was unable to sign it.

18                MR. CLAIBORNE: Mr. Rouse, we don't --

19    just yes or no, okay.

20                MR. SAINDON: Yes, we don't need to

21    hear that part, but thank you.

22                THE WITNESS: Okay.

1          MR. CLAIBORNE: If you remember seeing

2     this document, or if you don't know whether

3     you've seen it, just tell Mr. Saindon what your

4     recollection is with respect to the document, not

5     the signature, but the entire document.

6          THE WITNESS: Okay.

7          BY MR. SAINDON:

8     Q     Right.  So if you'd go to page 7 of

9     that document, Mr. Rouse.

10    A     Page 7.

11    Q     I mean, you don't need to, but it said

12    the police at the time of your arrest seized two

13    boxes of hollow point bullets, is that right?

14    A     Yes.

15    Q     Okay.  What's a hollow point bullet?

16    A     It's a bullet with a hollow point.

17    Q     Okay.  How is that different from a

18    standard bullet?

19    A     It's hollow at the top.

20    Q     Why would somebody use the hollow

21    point as opposed to a standard bullet?

22    A     For self-defense.

1       Q       Okay, why?  Why the difference?

2       A       To defend oneself.

3       Q       Okay.  Does the hollow point behave

4       differently than a regular bullet?

5       A       It doesn't go through the same way.

6       It doesn't go through the same way -- the

7       ballistics are different between a hollow point

8       and a standard ball bullet.

9       Q       Okay.  At the time of your arrest did

10      you own other pistols aside from these two that

11      were seized?

12      A       Yes.

13      Q       Where did you keep them?

14      A       In my home under lock and key.

15      Q       Why did you bring these pistols and

16      the scope with you to the hotel?

17      A       To defend myself.

18      Q       Okay, from what?

19              MR. CLAIBORNE: Well --

20              (Simultaneous speaking.)

21              MR. CLAIBORNE: If it's general self-

22      defense that's fine.  He's asking you -- he's

1   just --

2           MR. SAINDON: I'd like the witness to

3   answer and not you.

4           MR. CLAIBORNE: Well then, okay,

5   objection.

6           THE WITNESS: So that's --

7           MR. CLAIBORNE: Excuse me, Mr. Rouse,

8   allow me to answer.

9           Objection, because your question

10  assumes a fact not in evidence, namely, he had a

11  specific objective from which he was defending

12  himself.

13          BY MR. SAINDON:

14      Q    So, Mr. Rouse, the question was why

15  did you bring the pistols and scope with you to

16  the hotel?

17      A    Self-defense.

18      Q    Okay.  Were -- did you have any

19  specific threat you were defending against?

20      A    Bad actors.

21      Q    Okay.  Did you have bad actors in

22  mind?  I mean, were there specific people you

1    were worried about?

2            A      I don't -- an individual?  Is that

3    what you're asking?

4            Q      Yes.

5            A      There was a lot of money exchanged in

6    that time frame, and as -- namely, like, large

7    amounts of cash, and I was -- and I was nervous

8    about carrying that much cash and someone

9    possibly following me and kidnapping me and

10   killing me.

11           Q      Why were you carrying a lot of cash?

12           A      I was an entrepreneur.

13           Q      Okay.  Doing what?

14           A      Again, as we discussed earlier, there

15   was an event that I was throwing, not in the

16   hotel, but the reason why I was at the hotel was

17   because there was an event locally to the area,

18   and that -- it was a party, right?  It were --

19   it's a lot of cash exchange.  There's an entry

20   fee of five dollars per person.  There were also

21   people who needs change and so forth and so on,

22   so I had cash.  I had a large amount of cash.

24

```
1          Q     Okay.  Where was the event taking
2     place?  How far away from the hotel?
3          A     The first part of the event was about
4     seven blocks from the hotel.
5          Q     The other parts?
6          A     Right across the bridge on the
7     Maryland side.
8          Q     Okay, and how much cash were you
9     carrying?
10         A     Couple grand.
11         Q     Okay.
12         A     In ones, so it looked like
13    significantly more.
14         Q     So, Mr. Rouse, were you planning to
15    take the guns from the hotel and keep them on you
16    going to and from the event?
17         A     No.
18         Q     Well, you just said you were worried
19    about being robbed, is that right?
20         A     Yes.
21         Q     Okay, so if you didn't have the guns
22    on you, how could you stop the robbery?
```

25

```
 1              A     One of the common practices at the

 2        time was people would follow you home.

 3              Q     Had you been robbed before?

 4              A     I had not been robbed, however, a --

 5        other promoters, and I state that with quotation

 6        marks, had been robbed recently.  It was common

 7        in the neighborhood in which the first part of

 8        the party was occurring was known to have

 9        nefarious actors.

10              Q     Okay, but you weren't planning to

11        carry the guns outside the hotel.  You were

12        apparently worried about somebody following you

13        back to the hotel, is that right?

14              A     Yes.

15              Q     Okay.  All right, so I think also on

16        page 7 of this document you said the police

17        seized an aluminum double sided locking gun case

18        worth about $275, is that right?

19              A     Yes.

20              Q     They seized $300 in cash, is that

21        correct?

22              A     Yes.
```

Neal R. Gross and Co., Inc.
Washington DC
(202) 234-4433                                      www.nealrgross.com
Pls.'s Ex. 60, p. 25
Smith v. DC, 15-737 (RCL)

1       Q     Okay.  What happened to the other --

2    the rest of the cash?  You said you had about a

3    grand with you, is that right?

4       A     No, I said I had about two grand with

5    me.

6       Q     Okay, and what happened to that?

7       A     I had spent -- I had a lot of it on

8    me, in all honesty, in my car.

9       Q     So most of the cash was in the car.

10   You said the police seized $300 from the hotel

11   room with your guns.

12      A     The police seized the $300 prior to

13   the party, and when I was not in the room.  I had

14   went out to do prep type stuff, such as buy

15   hamburgers, hot dogs, stuff like that, so I had

16   cash on me as well, because the Costco is right

17   there.

18      Q     Okay.  Did you get the gun case and

19   the $300 back from the police department?

20      A     I don't know what happened to the gun

21   case, in all honesty.

22      Q     Did you ask for them back from the

1    police department?

2         A     Yes.

3         Q     Okay.  You got your guns back, is that

4    correct?

5         A     Sometime later.

6         Q     Right, so did you -- I guess I'm not

7    following.  Did you ask for the guns separately,

8    to get the guns back from the gun case and the

9    cash?

10        A     I believe my counsel asked for it all

11   back.

12        Q     You didn't get the gun case or the

13   cash back, is that right?

14        A     The cash was in my items immediately,

15   as well as --

16               MR. CLAIBORNE: Personal property?

17               THE WITNESS: Yes, my personal

18   property, yes.

19               THE WITNESS: When I went back to the

20   station.  I don't remember which district it was,

21   I'm sorry.

22               BY MR. SAINDON:

1      Q     I'm sorry, I guess I didn't hear the

2      answer to the question, so you didn't get the

3      guns back with the case.  You did get the guns,

4      but you didn't get the case or the cash, is that

5      correct?

6      A     No.  Guns years later, cash that

7      Monday or Tuesday when I was released, case, I

8      have no idea where it's at.

9      Q     Okay, thank you.

10           MR. CLAIBORNE: Mr. Saindon, what he

11     said was money was with his personal property.

12           MR. SAINDON: Yes, I got that --

13           MR. CLAIBORNE: I picked that up.

14           MR. SAINDON: -- thank you.

15           MR. CLAIBORNE: Okay, sorry.

16           BY MR. SAINDON:

17     Q     Mr. Rouse, who's Daniel Gross?

18     A     He was counsel at that time.

19     Q     He represented you in the Superior

20     Court proceedings?

21     A     I don't know which court it was, but

22     he represented me.

29

1        Q    Did you hire him, or was he appointed

2   by the court?

3        A    I hired him.

4        Q    I think you said you also used him

5   later for your security clearance work.

6        A    I don't -- I'm sorry, I don't see

7   that.

8        Q    Well, it's not here, but you had said

9   that as a result of the arrest you lost your job,

10   and your top secret security clearance was under

11   review, is that right?

12        A    Yes.

13        Q    I think you said somewhere else that

14   you had hired Mr. Gross to help you work on that

15   review of your top secret security clearance, is

16   that right?

17        A    No, I was looking to.  I ended up not

18   doing it.

19        Q    Okay.  Do you remember how much you

20   paid Mr. Gross in total?

21        A    I don't.

22        Q    Mr. Rouse, do you currently own any

30

1      firearms?

2            A      Yes.

3            Q      How many?

4                   MR. CLAIBORNE: Well, wait a minute

5      Andy.  What's this got to do with anything.  I

6      think my objection is relevance -- not relevant

7      to the claims or defenses.

8                   MR. SAINDON: Okay.

9                   BY MR. SAINDON:

10           Q      Same question, Mr. Rouse, do you

11     currently own any guns, and how many?

12                  MR. CLAIBORNE: Well, wait a minute.

13     This is way off the track.  What's the basis for

14     asking --

15                  MR. SAINDON: Thank you, objection --

16                  MR. CLAIBORNE: -- the question?

17                  MR. SAINDON: Objection is noted, Chaz

18     (phonetic).

19                  BY MR. SAINDON:

20           Q      Go ahead, Mr. Rouse.  How many do you

21     own?

22           A      I don't know, I've never counted.

Neal R. Gross and Co., Inc.
(202) 234-4433                    Washington DC                    www.nealrgross.com
Pls.'s Ex. 60, p. 30
Smith v. DC, 15-737 (RCL)

1      Q     You don't know how many.

2      A     I never -- I'm sorry.

3      Q     More than ten?

4      A     Yes.

5      Q     More than 20?

6      A     I don't know if it's that many.

7      Q     Okay, and where are these guns kept?

8      A     In a locked closet.

9      Q     Okay.  If you look at page 5 of

10     Exhibit 1 that we showed you.

11     A     Okay, let me look at my phone.  Page

12     5 -- okay.

13     Q     It says towards the bottom there, "Mr.

14     Rouse has excessively registered 20 to 30

15     handguns in Maryland since 2003, right?

16     A     Yes, sir, it does.

17     Q     Is that still correct?

18     A     Here's the thing, right?  The wording

19     here you have to be very cognizant of what you're

20     seeing, because I registered them doesn't mean I

21     still own that gun, right?  In Maryland there's

22     something called a designated collector's

1    license, and what that means is I try to obtain

2    rare guns, as a hobby -- as a hobbyist, so I

3    can't say that that's still correct.  I know I

4    have some unique --

5            Q     Unique guns?

6            A     Yes, unique guns.

7            Q     Okay. Is your hand on a microphone?

8    We're having a hard time hearing you, Mr. Rouse.

9            A     No, I'm sorry, it's not.

10           Q     Thank you.  Okay, so you said you had

11   more than ten, but probably not 20 now, is that

12   right?

13           A     That would be a safe bet.

14           Q     Okay, so what happened to these other

15   guns that you registered up to 30?

16           A     Trade, sell, trade for something

17   cooler.

18           Q     Okay.  Do you ever take any of these

19   guns with you when you leave the house?

20                 For self-defense, let me say -- let me

21   just clarify.

22           A     Okay.  All right.  When I travel, if

1     the --

2          Q     Yes.

3          A       -- if the state is open carry,

4     there's a good chance that I'm flying with my

5     firearms.  I've also taken Maryland Wear and

6     Carry as well as the Utah, and have applications

7     in as well.

8          Q     Okay.  I'm sorry, what did you say

9     before Utah, you take them in Maryland?

10         A     I've taken to Maryland Wear and Carry,

11    as well as to Utah.

12         Q     Okay.  What does that mean Maryland

13    Wear and Carry?

14         A     In Maryland -- Maryland requires you

15    to have the Wear and Carry License.

16         Q     So you've obtained one of those from

17    Maryland, is that right?

18         A     It's in process.

19         Q     Okay.  All right.  Do you know when

20    you're going to get that license, or when you

21    estimate to get it?

22         A     No.

1          Q     Okay.  When did you apply?

2          A     I don't know.

3          Q     Is that, and I'm just curious, does

4     Maryland -- does that cover open carry, or

5     concealed carry, or both?

6          A     Concealed.

7          Q     Okay, because it says on page 5 of

8     Exhibit 1 that you've never attempted to obtain,

9     or obtained a concealed carry license or a permit

10    in the District or any other state or

11    jurisdiction, so that's not right, is that

12    correct?

13         A     That is recently modified.  Like, --

14         Q     Okay.

15         A      -- since COVID for sure.

16         Q     Right.  Have you applied for concealed

17    carry licenses in any other jurisdictions?

18         A     Utah.

19         Q     So just Maryland and Utah.

20         A     Yes, recent applications.

21         Q     Okay, thank you, Mr. Rouse.  Are you

22    currently employed?

Neal R. Gross and Co., Inc.
(202) 234-4433                Washington DC                www.nealrgross.com
Pls.'s Ex. 60, p. 34
Smith v. DC 15-737 (RCL)

```
 1          A     Self.

 2          Q     Okay, and what do you do?

 3          A     IT.

 4          Q     What kind of IT?

 5          A     The kind that keeps your computer

 6   running.

 7          Q     Explain what you mean.  What do you --

 8   what services do you provide?

 9          A     Oh, end to end support.

10          Q     Well, for those of us who aren't in

11   IT, what does that mean?

12          A     I can do anything from making your

13   laptop work to running your network and your

14   VOIP, Voice over IP system.

15          Q     Okay, and what's your current annual

16   salary?

17          A     Self-employed.  My current bill rate

18   is $120 an hour.

19          Q     Okay, and what -- again, what's your

20   approximate annual salary?  What was your annual

21   salary last year?

22          A     Variable.
```

```
 1            Q      "They" here, Mr. Rouse --

 2            A      Okay.

 3            Q      You said they'll choose to

 4      investigate, who's they?

 5            A      Office of Personnel Management.

 6            Q      Okay, and they investigated here.

 7      What happened?

 8            A      They left it in investigation, and

 9      temporarily downgraded my clearance, dude.

10            Q      How long was it downgraded?

11            A      Until the results of the investigation

12      came back.

13            Q      How long was that?

14            A      I don't know.  How long did it take

15      them to drop the charges?

16            Q      They -- so there wasn't -- the

17      downgrading ended after the charges were dropped.

18            A      No, I had to go through re-

19      investigation to see was I still qualified to

20      maintain this clearance.

21            Q      That did happen at some point, is that

22      right?
```

```
1              A      Yes.

2              Q      So you have your top secret security

3       clearance now.

4              A      Yes.

5              Q      Okay.

6              A      What ended up happening is in that

7       position, the position I was in, you couldn't

8       have pending charges, and it required a top

9       secret clearance, so --

10             Q      You lost your job as a result of that,

11      correct?

12             A      Correct.

13             Q      So how long were you unemployed, Mr.

14      Rouse?

15             A      Dude, I don't remember.

16             Q      At some point you said you took a job

17      at the Coast Guard on a 10 month contract, is

18      that right?

19             A      Yes.

20             Q      Do you remember how much you made in

21      that contract?

22             A      I don't.
```

```
1            Q    Okay.  Then you said you took a job as

2      a senior engineer with the FBI for 14 months, is

3      that correct?

4            A    Yes.

5            Q    What was your salary there?

6            A    140.

7            Q    Okay.  Was there any gap between the

8      Coast Guard and the FBI positions?

9            A    Yes, 2 months.

10           Q    I'm sorry.

11           A    Two months.

12           Q    Two months, okay.

13           A    I believe, if I recall correctly.

14           Q    And that's -- you said you were an

15     Army subcontractor with Zadda, Z-A-D-D-A, is that

16     right?

17           A    Yes.

18           Q    What's the spelling of that, I'm

19     sorry, Mr. Rouse.

20           A    Z-A-D-D-A.

21           Q    Okay, and you were doing that for 9

22     months, is that right?
```

1        A     Yes.

2        Q     Do you remember what your salary was

3    there?

4        A     By that point I kind of realized -- so

5    here's the thing, right?  The question that is

6    posed is have you ever been arrested, charged, or

7    convicted of a crime, right?  What the result

8    was, anytime that I go work for a company that

9    requires a clearance, I fill out my SF-86, now I

10   have to say, yes, I have been, in fact, arrested

11   and charged.  That sends up red flags everywhere.

12   The only way I get around that is working for

13   myself, so what happens is I now don't have the

14   benefits I once had, I don't have the medical, I

15   don't have their dental, I can no longer take

16   leave, because I have to answer, yes, I have been

17   arrested and charged.  Granted I was never

18   convicted, but I was arrested and charged --

19        Q     Okay.

20        A      -- and that got to the point where I

21   said, look, this is no longer, like, having to

22   stick around and wait for somebody to decide that

1      -- some SFO says, hey, we don't like this.

2      There's a chance that his clearance is going to

3      be revoked.  There's a chance -- and decide that,

4      hey, we can't employ you anymore.  It's not worth

5      it, so, like, this kind of, like, forced me into

6      self-employment.

7             Q      Okay, and that's -- you started your

8      own company, Visionary Enterprise Technology

9      Solutions, is that right?

10            A      Yes.

11            Q      When did you start that company?

12            A      That's a tricky question.

13            Q      I understand, I mean, it's not -- you

14     can point to a specific day.  It takes time --

15            A      Allow me to answer my way.

16            Q      Please do.  I'm sorry for

17     interrupting.

18            A      I originally started the company in

19     2008, but it became defunct, and I let everything

20     expire on it.  I was forced to revitalize it,

21     stand up a new business license, do all the

22     paperwork on it.  In November 2017 is when I

1      started -- November -- yes, November or December

2      2017 is when I started, and then I, of course,

3      was able to go with Zadda, yes.

4            Q      Do you have any employees aside from

5      yourself in this company?

6            A      No, man.

7            Q      Does your company have any active

8      contracts now?

9            A      Yes.

10           Q      Who are they with?

11           A      Rosidio Network Solutions.

12           Q      I'm sorry.

13           A      Rosidio Network Solutions.

14           Q      Okay.  Any others?

15           A      No, it's a sub of a sub of a sub.

16           Q      I think you said earlier, Mr. Rouse,

17     your income has gone up since the pandemic, is

18     that right?

19           A      Yes, since the pandemic everybody

20     needs Zoom support.

21           Q      Including our court reporter,

22     apparently, here, yes.  No thanks.  All right.  I

Neal R. Gross and Co., Inc.
Washington DC
(202) 234-4433                                                    www.nealrgross.com
Pls.'s Ex. 60, p. 41
Smith v. DC, 15-737 (RCL)

1    think, Mr. Rouse, we're not too far from done.

2    At the time of your arrest you were a senior

3    engineer at DISA, is that right?

4         A    DISA, yes, Defense Information Systems

5    Agency.

6         Q    Okay, and before that where were you

7    employed, if you can remember?

8         A    POEIS.

9         Q    POEIS.

10         A    PEOEIS, Programming Executive Office

11   Enterprise Information Systems.

12         Q    Okay, and what do they do?

13         A    They're computer nerds like me.

14         Q    Okay.  Thank you, Mr. Rouse.  I think

15   you said also in your Exhibit 1 that you suffer

16   from post-traumatic stress disorder caused by

17   your service in Iraq, is that right?

18         A    Yes.

19         Q    Are you still being treated for that?

20         A    Yes.

21         Q    How are you being treated?

22         A    Pretty well.

Neal R. Gross and Co., Inc.
(202) 234-4433                  Washington DC                  www.nealrgross.com
Pls.'s Ex. 60, p. 42
Smith v. DC, 15-737 (RCL)

46

```
 1          A      No, that's -- I'm sorry.  That's what
 2    I was explaining before.  It hasn't been the same
 3    since COVID, but when COVID stops I'm sure I
 4    will.
 5          Q      Okay.  When were you in the military?
 6          A      2000 -- I don't -- I joined -- or I
 7    went to Benning, January 3, 2003.
 8          Q      How long were you in the military?
 9          A      I don't know, dude.  I think, what is
10    it, three and a half years.
11          Q      Okay.  What did you do when you were
12    in the Army?
13          A      I was on a personnel security detail.
14          Q      What did that entail?
15          A      Securing personnel.  Normally higher
16    ups, generals, brigade commanders, things of that
17    nature.  I protected them.
18          Q      Like an armed escort to various
19    places, is that --
20          A      Escort is such a dirty word.
21          Q      Okay.  What word would you --
22          A      I was -- I made sure they stayed
```

Neal R. Gross and Co., Inc.
(202) 234-4433          Washington DC          www.nealrgross.com
Pls.'s Ex. 60, p. 43
Smith v. DC, 15-737 (RCL)

1    alive.

2         Q    Okay.

3         A    My primary job was telecommunications.

4         Q    Okay, and what did that entail?

5         A    Making sure people stayed alive.  I

6    was a larger person, so while my MOS may have

7    been X they were, like, no, you're going to be

8    better suited as Y, so I did more Y than X.

9         Q    Okay.  What does MOS mean, Mr. Rouse?

10        A    Military Occupational Specialist --

11   Specialty, I think.

12        Q    Okay.  Did you get your IT training in

13   the military, or did you have it before and get

14   more?

15        A    I have -- I've gotten way more since

16   I've gotten out.

17        Q    All right.  We're just about done.

18   Exhibit 1, I think, Mr. Rouse, back when you did

19   this it said on page 7 you have no legal

20   visitation rights to your baby by Ms. Grayson

21   (phonetic), is that right?

22        A    No, I do not.

50

1    give you visitation rights, is that --

2         A    Based off -- yes.

3         Q    Okay.

4         A    Like, this is a large part of even the

5    end of us, in all honesty.  It was just -- this

6    was -- dude.

7         Q    Mr. Rouse, you said since the arrest

8    you became an alcoholic, but you since kicked it.

9         A    Yes, dude.

10        Q    You're sober now?

11        A    Yes.

12        Q    That's great.  How long were you an

13   alcoholic, if you can remember?

14        A    I was -- I don't know, man, it was a

15   blur.  I was going through a bottle of Filibuster

16   a night through, I can tell you that.

17        Q    How did you beat it?

18        A    If I told you you wouldn't believe me,

19   but prayer, man.  My life is a lot different now.

20   I've become an ordained minister, like -- it's

21   just -- my life is just so different now, a lot

22   of prayer, a lot of fasting, in fact, I have to

Neal R. Gross and Co., Inc.
Washington DC
(202) 234-4433                                        www.nealrgross.com
Pls.'s Ex. 60, p. 45
Smith v. DC, 15-737 (RCL)

1          BY MR. SAINDON:

2     Q      One more question, Mr. Rouse, are you

3     currently paying child support?

4     A      Oh, yes, buddy.

5     Q      All right.

6     A      Oh, yes.

7     Q      How much, if I can ask?

8          THE WITNESS: Give me -- I'm sorry, I

9     need a break.  Give me, like, maybe three

10    minutes.

11         MR. SAINDON: Sure, no, I was going to

12    take a break anyway.  Let's take 5 minutes talk

13    about -- with my counsel, but I think that's my

14    last question, so we'll take a break now, and

15    then we'll come back, okay?  Five minutes, does

16    that work for everybody?

17         THE WITNESS: That's fine with me.

18         MR. SAINDON: Chaz?

19         MR. CLAIBORNE: Yes, that's fine, Andy.

20         MR. SAINDON: Great, all right, 5

21    minutes, and I'll give you a call Brendon.

22         (Whereupon, the above-entitled matter

1   went off the record at 10:00 a.m. and resumed at

2   10:05 a.m.)

3              MR. SAINDON: All right.  I think we're

4   almost all done.  Almost all done.  I think I had

5   one more question I was waiting for an answer

6   from Mr. Rouse, who is I think currently muted.

7   We just asked him if he was paying child support,

8   and how much.

9              MR. CLAIBORNE: Mr. Rouse.

10             MR. SAINDON: I think he's still muted,

11  at least it looks like it to me.

12             MR. CLAIBORNE: Can you waive at him or

13  something?

14             MR. SAINDON: Hello.  We can't here

15  you, Mr. Rouse.  There it is.

16             MR. CLAIBORNE: There we go, okay.

17             THE WITNESS: Sorry.

18             BY MR. SAINDON:

19     Q    That's okay.

20     A    I'm -- yes, I'm sorry, I'm --

21     Q    That's okay.

22     A    I was trying to get this background.

Neal R. Gross and Co., Inc.
(202) 234-4433                Washington DC                www.nealrgross.com
Pls.'s Ex. 60, p. 47
Smith v. DC, 15-737 (RCL)

1    I wanted to set this cool background to show

2    everybody.

3         Q    All right.  I was just asking about

4    child support, and how much you're paying,

5    approximately.

6         A    I am currently -- I'm currently paying

7    $600 a month.

8         Q    Okay, and that's for how many kids?

9         A    That's just for Blair.

10              MR. SAINDON: Okay.  All right, and I

11   think that's all I have, Chaz, unless you have

12   any follow-ups

13              MR. CLAIBORNE: No, I do not, but thank

14   you.

15              (Whereupon, the above-entitled matter

16   went off the record at 10:06 a.m., signature

17   having NOT been waived.)

18

19

20

21

22

Neal R. Gross and Co., Inc.
(202) 234-4433          Washington DC          www.nealrgross.com
Pls.'s Ex. 60, p. 48
Smith v. DC, 15-737 (RCL)

## 2014 CDC 015375 District of Columbia Vs. ROUSE, FREDERICK JJM

- Case Type:
  Dist Of Col
- Case Status:
  Closed
- File Date:
  09/01/2014
- Action:
  Arrest Charge
- Status Date:
  09/01/2014
- Next Event:
-

**All Information**    **Party**    **Event**    **Docket**    **Disposition**

### Party Information

**ROUSE, FREDERICK**
- Defendant (Criminal)

- Disposition
-
- Disp Date
-

| Alias |
| --- |

| **Party Attorney** |
| --- |
| Attorney |
| GROSS, DANIEL A |

### Events

| Date/Time | Location | Type | Result | Event Judge |
| --- | --- | --- | --- | --- |
| 09/01/2014 11:00 AM | Courtroom C-10 | Traffic - Lockup Arraignments | Defendant Pled Not Glty Trial Rights Were Asserted | HOLEMAN, BRIAN F |
| 09/19/2014 09:30 AM | Courtroom 120 | Ascertainment of Counsel | New Counsel Appointed or Retained | BRANDT, RAINEY |
| 10/15/2014 10:00 AM | Courtroom 120 | Status Hearing | Transferred Out To: | BRANDT, RAINEY |
| 10/29/2014 09:30 AM | Courtroom 312 | Status Hearing | Hearing Held | BRANDT, RAINEY |
| 03/16/2015 09:30 AM | Courtroom 312 | Jury Trial | Mutual Continuance Possible Disposition | BRANDT, RAINEY |
| 04/22/2015 09:30 AM | Courtroom 312 | Status Hearing | Dismissed - Nolle | BRANDT, RAINEY |

### Docket Information

| Date | Docket Text | Image Avail. |
| --- | --- | --- |
| 09/01/2014 | Charge Filed Charge 1: Possession of Unregistered Firearm Charge 2: Unlawful Possession of Ammunition | Image |
| 09/01/2014 | Event Scheduled Event: Traffic - Lockup Arraignments Date: 09/01/2014 Time: 11:00 am Judge: HOLEMAN, BRIAN F Location: Courtroom C-10 | |
| 09/01/2014 | Unable to identify correct zip code/address for defendant | |
| 09/01/2014 | CJA Eligibility - Not Eligible | Image |
| 09/01/2014 | Event Scheduled Event: Ascertainment of Counsel Date: 09/19/2014 Time: 9:30 am Judge: BRANDT, RAINEY Location: Courtroom 120 | |

**Pls.'s Ex. 61, p. 1**

**Smith v. DC, 15-737 (RCL)**

| Date | Docket Text | Image Avail. |
|---|---|---|
| 09/01/2014 | Event Resulted - Release Status: PR PSA<br>The following event: Traffic - Lockup Arraignments scheduled for 09/01/2014 at 11:00 am has been resulted as follows:<br><br>Result: Defendant Pled Not Glty Trial Rights Were Asserted<br>Judge: HOLEMAN, BRIAN F    Location: Courtroom C-10<br>FREDERICK ROUSE (Defendant (Criminal)); ; Judge BRIAN F HOLEMAN on behalf of Judge RAINEY BRANDT | |
| 09/01/2014 | Pre Trial Report | Image |
| 09/01/2014 | Release Conditions | Image |
| 09/19/2014 | Attorney Retained<br>Attorney GROSS, DANIEL A representing Defendant (Criminal) ROUSE, FREDERICK as of 09/19/2014<br>FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge RAINEY BRANDT | Image |
| 09/19/2014 | Notice to Return to Court Filed<br><br>Notice to Return to Court<br>Sent on: 09/19/2014 09:38:58.09 | Image |
| 09/19/2014 | Event Scheduled<br>Event: Status Hearing<br>Date: 10/15/2014    Time: 10:00 am<br>Judge: BRANDT, RAINEY    Location: Courtroom 120 | |
| 09/19/2014 | Event Resulted - Release Status: PR - Case set to 120 for status.<br>The following event: Ascertainment of Counsel scheduled for 09/19/2014 at 9:30 am has been resulted as follows:<br><br>Result: New Counsel Appointed or Retained<br>Judge: BRANDT, RAINEY    Location: Courtroom 120<br>FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge RAINEY BRANDT | |
| 10/15/2014 | Associate Judge Requested | |
| 10/15/2014 | Case Transferred to Another Judge<br>The judge was changed from BRANDT, RAINEY to JACKSON, WILLIAM M | |
| 10/15/2014 | Notice to Return to Court Filed<br><br>Notice to Return to Court<br>Sent on: 10/15/2014 10:08:43.51 | Image |
| 10/15/2014 | Event Scheduled<br>Event: Status Hearing<br>Date: 10/29/2014    Time: 9:30 am<br>Judge: JACKSON, WILLIAM M    Location: Courtroom 312 | |
| 10/15/2014 | Event Resulted - Release Status: PR - Jury demand made. Case set for status before Associate Judge.<br>The following event: Status Hearing scheduled for 10/15/2014 at 10:00 am has been resulted as follows:<br><br>Result: Transferred Out To:<br>Judge: BRANDT, RAINEY    Location: Courtroom 120<br>FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge RAINEY BRANDT on behalf of Judge WILLIAM M JACKSON | |
| 10/29/2014 | Notice to Return to Court Filed<br><br>Notice to Return to Court<br>Sent on: 10/29/2014 09:59:19.54 | Image |
| 10/29/2014 | Event Scheduled<br>Event: Jury Trial<br>Date: 03/16/2015    Time: 9:30 am<br>Judge: JACKSON, WILLIAM M    Location: Courtroom 312 | |
| 10/29/2014 | Event Resulted - Release Status: PR PSA<br>Mr. Rouse rejected the plea offer that was made by the Office of Attorney General representative AAG Pierce whom was in court representing the Office of Attorney General. The case has been set for trial. All motions due in 30 days and all response are due 30 days thereafter. The Official court reporter was Anne Gardener.<br>The following event: Status Hearing scheduled for 10/29/2014 at 9:30 am has been resulted as follows:<br><br>Result: Hearing Held<br>Judge: JACKSON, WILLIAM M    Location: Courtroom 312<br>FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge WILLIAM M JACKSON | |
| 11/26/2014 | Motion to Suppress Evidence and Statements Filed.<br>Attorney: GROSS, DANIEL A (993372) | Image |
| 11/26/2014 | Motion to Dismiss Indictment Filed.<br>Attorney: GROSS, DANIEL A (993372) | Image |

**Pls.'s Ex. 61, p. 2**
**Smith v. DC, 15-737 (RCL)**

| Date | Docket Text | Image Avail. |
|---|---|---|
| 12/02/2014 | Order requiring the government to respond to defendant's Motion to Dismiss Indictment and Motion to Supress Evidence and Statements signed by Judge Jackson in chambers on December 2, 2014, and Entered on the Docket December 2, 2014.  Copies mailed to parties December 3, 2014. PHF | Image |
| 12/15/2014 | District of Columbia's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Filed. <br> Attorney: BROWN, Ms MARY K (441114) | Image |
| 12/15/2014 | District of Columbia's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Supress Evidence Filed. <br> Attorney: BROWN, Ms MARY K (441114) | Image |
| 12/18/2014 | Order Denying defendant's Motion to Dismiss Indictment signed in chambers by Judge Jackson on December 18, 2014, and Entered on the Docket on December 18, 2014.  Copies mailed to parties on December 19, 2014.  PHF | Image |
| 12/31/2014 | Event Scheduled <br> Event: Jury Trial <br> Date: 03/16/2015    Time: 9:30 am <br> Judge: MCKENNA, JULIET J    Location: Courtroom 312 | |
| 12/31/2014 | Judge Caseload Transfer-Criminal <br> The judge was changed from JACKSON, WILLIAM M to MCKENNA, JULIET . | |
| 01/08/2015 | Correspondence Filed/Received- Order for Motion to Dismiss Returned Undeliverable | Image |
| 03/16/2015 | Notice to Return to Court Filed <br><br> Notice to Return to Court <br> Sent on:  03/16/2015 09:35:57.15 | Image |
| 03/16/2015 | Event Scheduled <br> Event: Status Hearing <br> Date: 04/22/2015    Time: 9:30 am <br> Judge: MCKENNA, JULIET J    Location: Courtroom 312 | |
| 03/16/2015 | Event Resulted - Release Status: PR-PSA.  Consent motion is granted orally in court.  Case continued for status with possible global disposition with defendant's re-arrest matter 2015 CTF 003435.  AAG Karpoff present for the govt. <br> The following event: Jury Trial scheduled for 03/16/2015 at 9:30 am has been resulted as follows: <br><br> Result: Mutual Continuance Possible Disposition <br> Judge: MCKENNA, JULIET J    Location: Courtroom 312 <br> FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge JULIET J MCKENNA | |
| 04/22/2015 | **Defendant's Affidavit** | Image |
| 04/22/2015 | Charge Disposed - Nolle Prosequi | |
| 04/22/2015 | Charge Disposed - Nolle Prosequi | |
| 04/22/2015 | Case Disposed - Nolle Prosequi | |
| 04/22/2015 | Event Resulted - On the condition that defendant's affidavit be filed in the docket of this case, govt moved to dismiss this case.  AAG Kim present for the govt. <br> The following event: Status Hearing scheduled for 04/22/2015 at 9:30 am has been resulted as follows: <br><br> Result: Dismissed - Nolle <br> Judge: MCKENNA, JULIET J    Location: Courtroom 312 <br> FREDERICK ROUSE (Defendant (Criminal)); ; DANIEL A GROSS (Attorney) on behalf of FREDERICK ROUSE (Defendant (Criminal)); Judge JULIET J MCKENNA | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Dismissed-Nolle-Prosequi | 04/22/2015 | |

Pls.'s Ex. 61, p. 3 <br>
Smith v. DC, 15-737 (RCL)

August 4, 2015

Property Clerk
Evidence Control Branch
# 17 DC Village Lane, SW
Washington, DC 20032

Re: CCN 14131791

To Whom it May Concern:

My name is Cornelius Rouse. On September 11, 2014, I was arrested for unregistered firearm and unregistered ammunition. As part of my arrest, I had property taken and marked for evidence in my DC Superior Court prosecution. On April 22, 2014, the Office of the Attorney General for the District of Columbia dismissed all charges against me relating to the above referenced arrest. Accordingly, I request that the Metropolitan Police Department return any and all property seized from my person relating to the arrest.

Please contact me at your earliest convenience so that we can make arrangements for the return of my personal property. I can be reached at 240-602-4413.

Sincerely,

Frederick Cornelius Rouse

Pls.'s Ex. 62, p. 1
Rouse, Property Clerk letter re gun
Smith v. DC, 15-737 (RCL)

**CCN: 14131791**

| INCIDENT | | | | | | |
|---|---|---|---|---|---|---|

| Hate Crime? (Choose type under OFFENSE) | 61D Number | CFS Reported As | | MUN | CMD | Sector |
|---|---|---|---|---|---|---|
| N | | CARRY DEADLY WE | | DC | | |

| ESZ | Bureau | Division | Branch |
|---|---|---|---|
| 102 | PATROL SERVICES & SCHOOL SECURITY BUREAU | 1D | |

| Unit | Add | Modify | Crime Analyst Pattern | Status |
|---|---|---|---|---|
| | 08/30/2014 ILDLNK | 09/11/2014 1421 | | 08/30/2014 |

| Staff review UCR code | Staff review UCR code2 | Staff review UCR code3 |
|---|---|---|
| PART II REVIEWED BY SR | | |

| Disposition | | Court Disp |
|---|---|---|
| CLEARED BY ARREST | 08/30/2014 | |

No Data Available for - CASE

No Data Available for - SUPPLEMENT

No Data Available for - SUPPLEMENT ATTACHMENT

**Pls.'s Ex. 63, p. 1**
**Rouse, iLeads printout**
**Smith v. DC, 15-737 (RCL)**

| ARREST | | | | | | |
|---|---|---|---|---|---|---|
| **CCN: 14131791** | | | **Arrest No. 011430828** | | | |
| Xref ID | Book No. | Approval Level | Booking Date | Booking Time | Mult Cir Indic | FP/Photo |
| | | 2 | | | N | |
| FP/CKN | Loc Comment | | Supervisor | | Status | |
| | @TECHWORLD | | ANTONIO    DUNCAN | | CLOSED/ CLEARED | |
| Disposition | | Juvenile disp. | | PD759 Form# | Prisoner Property Book | |
| CLEARED BY ARREST | | | | | | |

| Prisoner Property Page# | Notify Pretrial Services to screen for citation? | Title 16? | Social File Number | Date Fingerprint Taken |
|---|---|---|---|---|
| | | | | |

| Date Miranda Rights Advised | Time | Residential Unit/Group Home | Location Miranda Rights Advised |
|---|---|---|---|
| | | | |

| Salary | WALES Inquiry done? | Transported by | Transported to | Date/Time |
|---|---|---|---|---|
| | | | | 8/30/2014 12:00:00 AM |

| Place | Released by | Release date | Cell number | Mashall cell number |
|---|---|---|---|---|
| | | | 29 | |

| Date Guardian Notified & Time | How Notified | How Notified other | MPD Release Recommendation |
|---|---|---|---|
| | | | |

| MPD Release Note |
|---|
| |

| Date Court Sent Notification | Date MPD Received Notification | Date AFIS Sent Deceased Notification | Date Records Received Deceased Notification | Set Aside? |
|---|---|---|---|---|
| | | | | |

| Court Representative: |
|---|
| |

| Last Name | First Name |
|---|---|
| | |

| ○ This arrest clears primary case | Mun | DC | Cmd | | District | 1D |
|---|---|---|---|---|---|---|
| PSA | Sector | ESZ | Bureau | Branch | Division | Unit | Add |
| 102 | | 102 | PSSB | | 1D | | 08/30/2014 6031 |

| Modify | LU# | OAG LU# | Defendant Court Date | CCB Date in | CCB Time in | CCB User ID |
|---|---|---|---|---|---|---|
| 09/02/2014 1644 | 10 | | 09/01/2014 | 08/30/2014 | 1846 | 8269 |

| Court Date | Court Time 1 | Courtroom 1 | Court Time 2 | Court Time 2 | PSA Citation Status |
|---|---|---|---|---|---|
| | | | | | |

| PSA Status | PSA Review Recommendation |
|---|---|
| | |

| PSA Review Notes |
|---|
| |

| No Data Available for - INCIDENT (or) ARREST ATTACHEMENT |
|---|

**Pls.'s Ex. 63, p. 2**
**Rouse, iLeads printout**
**Smith v. DC, 15-737 (RCL)**

## CHARGES

**CCN: 14131791** | **Arrest No.**

| SupplementID | Voided | Charge |
|---|---|---|
| | | POSSESSION OF UNREGISTERED FIREARM |

| Fel/Misd | Count | Type | Magistrate | Trail date | Court |
|---|---|---|---|---|---|
| M | 1 | C | | | |

| Docket No | Amount | Bond Court Date | Receipt Number | Out-of-State Warrant No | Cargo Theft |
|---|---|---|---|---|---|
| | | | | | ○ |

| Offense | Skip IBR Reporting | Date homicide ruled | Date SAU Upgraded |
|---|---|---|---|
| POSSESSION OF UNREGISTERED FIREARM | 0 | | |

| Att/Com | Used | Shots Fired? | Shots Effect? | Location Type |
|---|---|---|---|---|
| COM | | N | N | HOTEL/MOTEL/ETC. |

| No. premises entered | Forced entry | Weapon 1 | Weapon 2 | Weapon 3 |
|---|---|---|---|---|
| 0 | ○ | HANDGUN | | |

| Entry | Exit | Security 1 | Security 2 |
|---|---|---|---|
| | | | |

| Left scene | Motivated | Target | Circumstances | Hate group |
|---|---|---|---|---|
| | | | | |

**CCN: 14131791** | **Arrest No.**

| SupplementID | Voided | Charge |
|---|---|---|
| | | POSSESSION OF UNREGISTERED AMMUNITION |

| Fel/Misd | Count | Type | Magistrate | Trail date | Court |
|---|---|---|---|---|---|
| M | 2 | C | | | |

| Docket No | Amount | Bond Court Date | Receipt Number | Out-of-State Warrant No | Cargo Theft |
|---|---|---|---|---|---|
| | | | | | ○ |

| Offense | Skip IBR Reporting | Date homicide ruled | Date SAU Upgraded |
|---|---|---|---|
| POSSESSION OF UNREGISTERED AMMUNITION | 0 | | |

| Att/Com | Used | Shots Fired? | Shots Effect? | Location Type |
|---|---|---|---|---|
| COM | | N | N | HOTEL/MOTEL/ETC. |

| No. premises entered | Forced entry | Weapon 1 | Weapon 2 | Weapon 3 |
|---|---|---|---|---|
| 0 | ○ | OTHER | | |

| Entry | Exit | Security 1 | Security 2 |
|---|---|---|---|
| | | | |

| Left scene | Motivated | Target | Circumstances | Hate group |
|---|---|---|---|---|
| | | | | |

**CCN: 14131791** | **Arrest No. 011430828**

| SupplementID | Voided | Charge |
|---|---|---|
| | | POSSESSION OF UNREGISTERED AMMUNITION |

| Fel/Misd | Count | Type | Magistrate | Trail date | Court |
|---|---|---|---|---|---|
| M | 1 | C | | 9/1/2014 8:22:30 PM | SUPERIOR COURT |

**Pls.'s Ex. 63, p. 3**

**Rouse, iLeads printout**

**Smith v. DC, 15-737 (RCL)**

| Docket No | Amount | Bond Court Date | Receipt Number | Out-of-State Warrant No | Cargo Theft |
|---|---|---|---|---|---|
| | 0.00 | | | | ○ |

| Offense | | Skip IBR Reporting | Date homicide ruled | Date SAU Upgraded |
|---|---|---|---|---|
| | | | | |

| Att/Com | Used | Shots Fired? | Shots Effect? | Location Type |
|---|---|---|---|---|
| | | | | |

| No. premises entered | Forced entry | Weapon 1 | Weapon 2 | Weapon 3 |
|---|---|---|---|---|
| | ○ | | | |

| Entry | Exit | Security 1 | Security 2 |
|---|---|---|---|
| | | | |

| Left scene | Motivated | Target | Circumstances | Hate group |
|---|---|---|---|---|
| | | | | |

## CCN: 14131791          Arrest No. 011430828

| SupplementID | Voided | Charge |
|---|---|---|
| | | POSSESSION OF UNREGISTERED FIREARM |

| Fel/Misd | Count | Type | Magistrate | Trail date | Court |
|---|---|---|---|---|---|
| M | 1 | C | | 9/1/2014 8:22:14 PM | SUPERIOR COURT |

| Docket No | Amount | Bond Court Date | Receipt Number | Out-of-State Warrant No | Cargo Theft |
|---|---|---|---|---|---|
| | 0.00 | | | | ○ |

| Offense | | Skip IBR Reporting | Date homicide ruled | Date SAU Upgraded |
|---|---|---|---|---|
| | | | | |

| Att/Com | Used | Shots Fired? | Shots Effect? | Location Type |
|---|---|---|---|---|
| | | | | |

| No. premises entered | Forced entry | Weapon 1 | Weapon 2 | Weapon 3 |
|---|---|---|---|---|
| | ○ | | | |

| Entry | Exit | Security 1 | Security 2 |
|---|---|---|---|
| | | | |

| Left scene | Motivated | Target | Circumstances | Hate group |
|---|---|---|---|---|
| | | | | |

**Pls.'s Ex. 63, p. 4**
**Rouse, iLeads printout**
**Smith v. DC, 15-737 (RCL)**

| NAME | | |
|---|---|---|

**CCN: 14131791** | **Arrest No.**

| SupplementID | Voided | name_code | Tentative ID | Nick Name | | Name Type |
|---|---|---|---|---|---|---|
| | | VI | 0 | | | |

| Age From | Age To | Date of Death | Height | HeightTO | Weight | WeightTO | Cell number |
|---|---|---|---|---|---|---|---|
| | | | | | 0 | 0 | |

| Hair | Eye | Language Assistance Needed | OLN | Language type | Type Of ID |
|---|---|---|---|---|---|
| | | | | | |

| Other ID | ID# | Skin Tone | Marital | SSN | Resident |
|---|---|---|---|---|---|
| | | | | | U |

| Citizen | M.O. | Place Of Birth | Most Violent | Religion | Most violent Person? |
|---|---|---|---|---|---|
| | ; | | | | |

| Notes |
|---|
| |

| Other Misc ID | SID/PDID | FBI ID | Federal OLN | Lives With | Employer |
|---|---|---|---|---|---|
| | | | | | |

| Home Phone | Work Phone | NCIC FPC | HENRY FPC | HENRY1 | HENRY2 | Branch |
|---|---|---|---|---|---|---|
| | | | | | | |

| Status | Service Start Date | Service End Date | Relation | Immigration Number |
|---|---|---|---|---|
| | | | | |

| True Last Name | True First Name | True Middle Name |
|---|---|---|
| | | |

| Suffix | Name | Address |
|---|---|---|
| | | |

| Emergency Contact Number | Insurance | Policy No | Probation type | Probation officer |
|---|---|---|---|---|
| | | | | |

| Attorney | AttorneyPhone | Edication Level | Date of Res | No. of depdnts |
|---|---|---|---|---|
| | | | | 0 |

| NCIC NO. | OCA | E-MAIL | Add | Modify |
|---|---|---|---|---|
| | | | 02/04/20141804 | 10/14/20141804 |

| Identity Alert Type | Related Name | Race | Sex | DOB | Age | Details |
|---|---|---|---|---|---|---|
| | | | | | | |

| Restricted | Victim of crime No. | Victim Injury | Agg assault circ 1 | circ 2 | justifiable homicide code |
|---|---|---|---|---|---|
| 0 | 1 | | | | |

| Domestic abuse involved | Rape victim: Medical exam conducted | Treated related injuries | Legal | Counseling | Shelter |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 |

| Financial assistance | Medical | Other victim services | PD 251B (Victim's Rights Card) | OCAP Offered? | OCAP Received? | PD 378 (Citizen's referral Form) |
|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| PD 378-A (Resouces for DV & Sexual Assault) | CPO/TPO? | CPO/TPO # | Children | Reporter | Classification |
|---|---|---|---|---|---|
| | | | | | |

Pls.'s Ex. 63, p. 5

Rouse, iLeads printout

Smith v. DC, 15-737 (RCL)

| 0 | 0 | | |
|---|---|---|---|
| **Classified by** | **Missing Person Section Notified By** | | **Guardian Last Name** |
| | | | |

| **Guardian First Name** | **Guardian Address** | **Mother's Maiden Name** |
|---|---|---|
| | | |

| **Probable Cause of Absence** | **Physical/Mental Condition** | **ID Carried** | **Jewelry** | **Probable Destination** |
|---|---|---|---|---|
| | | | | |

| **Previous Runaway Date** | **Previous Runaway Location** | **Offender present** | **Witness Type** |
|---|---|---|---|
| | | 0 | |

**Notes**

---

## CCN: 14131791                    Arrest No. 011430828

| **SupplementID** | **Voided** | **name_code** | **Tentative ID** | **Nick Name** | | **Name Type** |
|---|---|---|---|---|---|---|
| | | OF | 0 | | | |

| **Age From** | **Age To** | **Date of Death** | **Height** | **HeightTO** | **Weight** | **WeightTO** | **Cell number** |
|---|---|---|---|---|---|---|---|
| 31 | | | 602 | | 280 | 290 | |

| **Hair** | **Eye** | **Language Assistance Needed** | **OLN** | **Language type** | **Type Of ID** |
|---|---|---|---|---|---|
| BLACK | BROWN | NO | | | |

| **Other ID** | **ID#** | **Skin Tone** | **Marital** | **SSN** | **Resident** |
|---|---|---|---|---|---|
| | | MEDIUM | U | 244410613 | N |

| **Citizen** | **M.O.** | **Place Of Birth** | **Most Violent** | **Religion** | **Most violent Person?** |
|---|---|---|---|---|---|
| US | ; | DC | | | |

**Notes**

| **Other Misc ID** | **SID/PDID** | **FBI ID** | **Federal OLN** | **Lives With** | **Employer** |
|---|---|---|---|---|---|
| | 684963 | 417527PB7 | | | |

| **Home Phone** | **Work Phone** | **NCIC FPC** | **HENRY FPC** | **HENRY1** | **HENRY2** | **Branch** |
|---|---|---|---|---|---|---|
| | | | | | | |

| **Status** | **Service Start Date** | **Service End Date** | **Relation** | **Immigration Number** |
|---|---|---|---|---|
| | | | | |

| **True Last Name** | **True First Name** | **True Middle Name** |
|---|---|---|
| ROUSE | FREDERICK | |

| **Suffix** | **Name** | **Address** |
|---|---|---|
| | | |

| **Emergency Contact Number** | **Insurance** | **Policy No** | **Probation type** | **Probation officer** |
|---|---|---|---|---|
| | | | | |

| **Attorney** | **AttorneyPhone** | **Edication Level** | **Date of Res** | **No. of depdnts** |
|---|---|---|---|---|
| | | | | 0 |

| **NCIC NO.** | **OCA** | **E-MAIL** | **Add** | **Modify** |
|---|---|---|---|---|
| | | | 08/30/20146031 | 08/30/2014AFISIMPORT |

| **Identity Alert Type** | **Related Name** | **Race** | **Sex** | **DOB** | **Details** |
|---|---|---|---|---|---|
| | | | | | |

Pls.'s Ex. 63, p. 6

Rouse, iLeads printout
Smith v. DC, 15-737 (RCL)

| Restricted | Victim of crime No. | Victim Injury | Agg assault circ 1 | circ 2 | justifiable homicide code |
|---|---|---|---|---|---|
| 0 | | | | | |

| Domestic abuse involved | Rape victim: Medical exam conducted | Treated related injuries | Legal | Counseling | Shelter |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 |

| Financial assistance | Medical | Other victim services | PD 251B (Victim's Rights Card) | OCAP Offered? | OCAP Received? | PD 378 (Citizen's referral Form) |
|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| PD 378-A (Resouces for DV & Sexual Assault) | CPO/TPO? | CPO/TPO # | Children | Reporter | Classification |
|---|---|---|---|---|---|
| 0 | 0 | | | | |

| Classified by | Missing Person Section Notified By | Guardian Last Name |
|---|---|---|
| | | |

| Guardian First Name | Guardian Address | Mother's Maiden Name |
|---|---|---|
| | | |

| Probable Cause of Absence | Physical/Mental Condition | ID Carried | Jewelry | Probable Destination |
|---|---|---|---|---|
| | | | | |

| Previous Runaway Date | Previous Runaway Location | Offender present | Witness Type |
|---|---|---|---|
| | | 1 | |

| Notes |
|---|
| |

## PHYSICAL CHARACTERISTICS

### CCN 14131791

| SL.NO. | First Name | Last Name | Id Type | Item Desc |
|---|---|---|---|---|
| | FREDERICK | ROUSE | | BUILD |

| | DesDetl | Detl Desc | Add |
|---|---|---|---|
| 1 | HVY | HEAVY | 08/30/2014 6031 |

| SL.NO. | First Name | Last Name | Id Type | Item Desc |
|---|---|---|---|---|
| | FREDERICK | ROUSE | | PANTS |

| | DesDetl | Detl Desc | Add |
|---|---|---|---|
| 2 | 534 | DRESS/SKIRT / SHORTS | 08/30/2014 6031 |

| SL.NO. | First Name | Last Name | Id Type | Item Desc |
|---|---|---|---|---|
| | FREDERICK | ROUSE | | PANTS |

| | DesDetl | Detl Desc | Add |
|---|---|---|---|
| 3 | 540 | DRESS/SKIRT / BLUE | 08/30/2014 6031 |

| SL.NO. | First Name | Last Name | Id Type | Item Desc |
|---|---|---|---|---|
| | FREDERICK | ROUSE | | SHIRT |

| | DesDetl | Detl Desc | Add |
|---|---|---|---|
| 4 | 520 | BLOUSE / BLUE | 08/30/2014 6031 |

Pls.'s Ex. 63, p. 7
Rouse, iLeads printout
Smith v. DC, 15-737 (RCL)

## PROPERTY

### CCN: 14131791 | Arrest No.

| SupplementID | Voided | Property Code | Serial No | Make | Model | Seq No. |
|---|---|---|---|---|---|---|
| | | FIREARMS (EXCL. GAS-POWERED GUNS, E.G. <BB>) | 386150678 | FOREHAND ARMS C | | 2 |

| Case Seq No | Property Book Location | Book | Page | Description |
|---|---|---|---|---|
| 0 | | | | FNH BLACK PISTOL |

| Color | Owner | Race | Sex | DOB | Status officer |
|---|---|---|---|---|---|
| ; | 2014 S0CIETY | U | U | | ANTHONY,CHARLES |

| Complainant's Value | MPD Value | Quantity | UM | Victim No. | IBR Status |
|---|---|---|---|---|---|
| 0.0000 | 1.0000 | 1.00 | | 0 | E |

| Date | Other Jurisdctn | Offense Code | Grp/Bag no | Item No. |
|---|---|---|---|---|
| 8/30/2014 12:00:00 AM | | 520 | 0 | 0 |

| Notes |
|---|
| |

### CCN: 14131791 | Arrest No.

| SupplementID | Voided | Property Code | Serial No | Make | Model | Seq No. |
|---|---|---|---|---|---|---|
| | | FIREARMS (EXCL. GAS-POWERED GUNS, E.G. <BB>) | ESK265US | GLOCK, INC. | 33 | 1 |

| Case Seq No | Property Book Location | Book | Page | Description |
|---|---|---|---|---|
| 0 | | | | GLOCK 33 PISTOL |

| Color | Owner | Race | Sex | DOB | Status officer |
|---|---|---|---|---|---|
| BLACK; | 2014 S0CIETY | U | U | | ANTHONY,CHARLES |

| Complainant's Value | MPD Value | Quantity | UM | Victim No. | IBR Status |
|---|---|---|---|---|---|
| 0.0000 | 1.0000 | 1.00 | | 0 | E |

| Date | Other Jurisdctn | Offense Code | Grp/Bag no | Item No. |
|---|---|---|---|---|
| 8/30/2014 12:00:00 AM | | 520 | 0 | 0 |

| Notes |
|---|
| |

No Data Available for - VEHICLE

No Data Available For - FIELD CONTACT

Pls.'s Ex. 63, p. 8
Rouse, iLeads printout
Smith v. DC, 15-737 (RCL)

DC_M SMITH - 000041

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

**PD 81**

**PROPERTY RECORD**
Metropolitan Police Department - Property in the Custody of the Property Division - Washington, D.C.

| 1. Property Control No. | 2. Receiving Elem. | 3. Property Book & Page | 4. CCN | | 5. No. of Items | 6. No. of Associates | 7. DEL Lab Number |
|---|---|---|---|---|---|---|---|
| 10544493 | CSID | | 2014131191 | Page 1 of 2 | | 1 | |

| 8. CSES Number | 9. Name of Member Receiving Property | Badge No. | 10. Name of Member Preparing Return | Badge No. |
|---|---|---|---|---|
| 14-12306 | HANSOHN II, EDWARD - 2350 | | HANSOHN II, EDWARD - 2350 | |

## Part I - Description of Property

Use the following codes to classify property in Item E below

A = Abandoned
B = Turned over to Police for Destruction
C = Suspected Proceeds of Crime
D = Estate of Deceased
E = Evidence

F = Found
G = Safekeeping - Recovered Stolen Auto
H = Hold for Civil Forfeiture
I = Impounded
J = Removed from Impound Vehicle

K = Set Out for Eviction
L = Prisoner's Property
M = Alleged Mentally Ill

| 1. Date Recovered | 2. Where was property found? |
|---|---|
| 08/30/2014 | 999 9th Street NW |

THIS SECTION TO BE COMPLETED BY PROPERTY DIVISION

| A. Item No. | B. Description of Item | C. Color | D. Serial No. | E. Classification | F. Quantity | G. Storage Facility | ITEM BARCODE | I. Intake Person | J. Forfeiture Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Item #01: Glock 357 pistol s/#ESK265US 269/56 | Black | ESK265US | E=Evidence | 1 | | 10544493 | | |

| 5. No. of Items | Name of Person Making Notification(s) | Date | Was NCIC Check Made for Identifiable property? ☐ Yes (attach copy of NCIC inquiry) NCIC# ☐ No | Owner Notified? ☐ Yes ☐ No |
|---|---|---|---|---|
| 1 | | | | |

## Part IV - Court Disposition

Docket Number _____

Disposition _____

Is Case on Appeal? ☐ Yes   ☐ No
ATTN: PROSECUTOR - Property may not be released while case is on appeal unless photographs of property is authorized to the right.

☐ There is no objection on the part of this Office to disposition of the property by the Property Clerk in accordance with the District of Columbia Code.
☐ The property may be released only after it is photographed with the claimant.
☐

Signature of AUSA _____

Signature of CCO _____

EVIDENCE CONTROL

Printed: Wednesday, October 1, 2014 from EvidenceOnQ®

Page 1 of 2

**Pls.'s Ex. 65, p. 1**
**Rouse, MPD PD 81 guns**
**Smith v. DC, 15-737 (RCL)**

PD 81

**PROPERTY RECORD**
Metropolitan Police Department - Property in the Custody of the Property Division - Washington, D.C.

**Part V - Property Ownership / Claim Information**

Use the following codes in Item B (Type of Associate)   O = Owner   C = Claimant   D = Defendant   L = Lienholder   F = Finder

| A. Item Nos. | B. Type of Associate | C. Name of Associate | D. Address (include zip code) | E. Social Security Number | F. Telephone | G. Charge | H. No. | I. Disp. |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Part VI - Statement of Facts**
Enter a complete statement of facts surrounding the recovery of the property

The listed items were recovered from a hotel room located at 999 9th Street NW.

Signature of Commanding Officer         10/3/14

Date

**Part VII - Property Release Information**

| Item No. | Released to (Signature) | Address | Return by (Initials) | Date of Release | Method of Disposition | Sale Price | Fees to DC Treasury |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Printed: Wednesday, October 1, 2014 from EvidenceOnQ®

Page 2 of 2

DC_M SMITH - 000042

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

**Pls.'s Ex. 65, p. 2**
**Rouse, MPD PD 81 guns**
**Smith v. DC, 15-737 (RCL)**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,** <br><br> Plaintiffs, <br><br><br> v. <br><br><br> **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** <br><br><br> Defendant. | <br><br><br><br><br> Civil Action No.:  15-737 (RCL) |

## SUMMARY JUDGMENT DECLARATION

### Delontay Davis

**Mr. Davis's arrest by the MPD**

1.      On about March 23, 2014 I was driving a car stopped by the MPD in the District of Columbia on the basis of a false citizen report.

2.      At that time I was a student with no criminal record other than a reckless driving charge in Virginia and then a resident of Virginia.

3.      The police told me they observed on the console of the vehicle a pistol which I kept for self-defense.

4.      I had lawfully purchased the pistol in Virginia which I kept for self-defense. The Commonwealth of Virginia does not require any license or registration to "open" carry a pistol outside the home.

5.      MPD arrested me for Carrying a Pistol.

6.      I was held in Central Cellblock overnight and presented in Superior Court the next day.

Page 1

### Prosecution by the U.S. Attorney and the dismissal of my case by the U.S. Attorney

7.      I was preventively detained in the DC Jail for four nights.

8.      As part of the detention I was subjected to a humiliating strip-search during the intake process at the DC Jail.

9.      On 3/27/2014 I was brought from the DC Jail to the Superior Court for a detention hearing. The Judge ordered me released but the Judge ordered me to stay away from the area where I was arrested and further ordered me not to possess weapons. Pls.'s Ex. # 71, 2014 CF2 005034 docket, p. 2.

10.     The US Attorney's Office dismissed the case on 1/16/2015.

### MPD's seizure and retention of Mr. Davis's pistol after his case was dismissed

11.     The MPD officers seized my Bersa 380 pistol worth approximately $400.00 when they arrested me on 3/23/2014.

12.     The pistol has remained in the custody of the Property Clerk since my arrest as far as I know.

13.     Despite the fact that all charges against me brought by the U.S. Attorney were dismissed on 1/16/2015, the District government has not returned my pistol.

14.     The District never gave me notice about how to get my gun back or notice and a hearing to get my gun back or have it sent to someone.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Delontay Davis.

Executed on __3|9|21__

**Pls.'s Ex. 70, p. 2**
**Davis summary judgment Decl.**
**Smith v. DC, 15-737 (RCL)**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Case No. 2015-CDC-614** |
| **v.** | : | |
| | : | **Honorable Judge Josey-Herring** |
| | : | |
| **DELONTAY DAVIS** | : | **Motion Hearing 7/10/15; Trial: 8/15/2015** |

<u>**NOTICE OF DISMISSAL**</u>

Pursuant to Rule 48 (a)(1) of the Superior Court Rules of Criminal Procedure, the District of Columbia, by and through its attorney, the Attorney General for the District of Columbia, hereby informs the Court that it is dismissing the information in this matter without prejudice.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ALICIA WASHINGTON
Acting Deputy Attorney General
Public Safety Division

M. KIMBERLY BROWN
Chief, Criminal Section

By:    _____
Jose Marrero [1015213]
Assistant Attorney General, Criminal Section
441 4th Street, NW, Suite 1060 North
Washington, DC 20001
Phone: (202) 727-4901
Fax: (202) 730-1489
Jose.Marrero@dc.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of April, 2015, a copy was served via electronic mail to jas@scrofanolaw.com

_____
José Marrero
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH**<br>On behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.: **15-737 (RCL)** |

**PLAINTIFFS' RESPONSES TO DISTRICT'S INTERROGATORIES**

Delontay Samuel Davis
Interrogatory Responses

**Interrogatory 1:**

Please fully identify yourself by stating your name, address, date of birth, marital status, and home address for the last 10 years. If you have been known by any other name or alias, please state the name or names in full. If you are or have been married, please identify your spouse or ex-spouse's name, date of birth, and date of your marriage, separation or divorce.

**Objection:**

This objection is "overbroad" with respect to the request for "home address[es] for the last 10 years."

**Response:**

Name: Delontay Samuel Davis
Alias: None.
Address: 13004 Peaceful Terrace, Silver Spring, MD 20904 (3.5 years); 12625 Dulcinea Place, Woodbridge, VA 22192 (4 years)
DOB: 04/13/1991
Marital Status: Single. Never married.

**Interrogatory 2:**

Pls.'s Ex. 77, p. 1
Davis rog response excerpt
Smith v. DC, 15-737 (RCL)

Also, as a result of his arrest, Mr. Davis's .40 Bersa was seized and never returned. It cost about $500. His car, a Dodge Magnum, was also seized. It was not returned for about 5 months, and the daily fair market rental rate was about $100 per day.

As described in Interrogator 8, and in further detail in Interrogatory 10, Mr. Davis also suffered monetary harm in the form of inability to get a job as a security guard, as described below. Mr. Davis also suffered monetary damage in the form of loss wages and future earnings, which is detailed in the response to Interrogatory 10 below.

Mr. Davis will provide further information from an expert regarding the value of the loss of use of his weapons during the period they were held by the District.

Mr. Davis also suffered the categories of emotional distress detailed in his initial disclosures. Mr. Davis objects to providing a specific dollar amount pertaining to the amount of their emotional damages as such as left to the sound discretion of the jury. *See* Williams v. Trader Pub. Co., 218 F.3d 481, 487 n.3 (5th Cir. 2000) ("[c]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury."); Burrell v. Crown Cent. Petroleum, 177 F.R.D. 376, 386 (D. Tex. 1997) (Calculation of these damages are not susceptible to the type of calculation contemplated by Rule 26(a)(1)).

Mr. Davis seeks recovery from Defendant as awarded by a jury of all damages to which they may be entitled for their injuries and damages to the fullest extent as possible under law, including, but not, the following:

    a.      Physical pain and suffering of a past, present and future nature
    b.      Emotional pain and suffering of a past, present and future nature;
    c.      [reserved]
    d.      Permanent injuries of a past, present and future nature;
    e.      Loss of enjoyment of life of a past, present and future nature;
    f.      Loss of wages of a past, present and future nature;
    g.      -   actual lost wages to be provided
    h.      Fright, fear, anxiety of a past, present and future nature;
    i.      Noneconomic special damages, such as pain and suffering (to be determined by the trier of fact)

    j.      Expenses such as lost opportunity costs incurred in locating and retrieving property (to be determined by the trier of fact)
    k.      Economic damages such as lost wages and lost business opportunities and loss or damage to professional licenses
    l.      Pre- and post-judgment interest;
    m.      Statutory and discretionary costs;
    n.      Attorney's fees.

**Interrogatory 10:**

If you claim you were absent from or terminated from your employment as a result of the incidents alleged in your Complaint, please state for each such absence or

Pls.'s Ex. 77, p. 2
Davis rog response excerpt
Smith v. DC, 15-737 (RCL)

Respectfully submitted,

/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiffs and the class
717 D Street, NW
Ste 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day 3/16/2020 a copy of the foregoing responses was emailed to:

Fernando Amarillas
Chief, Equity Section
Public Interest Division
fernando.amarillas@dc.gov


Andy Saindon
Senior Assistant Attorney General
andy.saindon@dc.gov


Brendan Heath
Assistant Attorney General
Brendan.Heath@dc.gov

441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 442-9880

/s/William Claiborne
_____
William Claiborne
717 D Street, NW
Ste 300
Washington, DC 20004
(202) 824-0700
 Email: claibornelaw@gmail.com

Page 11

**Pls.'s Ex. 77, p. 3**
**Davis rog response excerpt**
**Smith v. DC, 15-737 (RCL)**

Am. Nat'l Red Cross v. Travelers Indem. Co., 896 F. Supp. 8, 13 (D.D.C. 1995)

see also Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613, 616 (S.D.N.Y. 1977) (barring discovery of "counsel's ordering of the 'facts,' referring to the prospective proofs, organizing, aligning, and marshalling empirical data with the view to  [*14]  combative employment that is the mark of the adversary enterprise"). When ARC's counsel requested of Yessman a description of the "facts and documents which Travelers contends support" each affirmative defense, ARC's counsel was asking questions that intruded upon protected work product; in effect, what ARC was requesting was insight into Travelers' defense plan

Am. Nat'l Red Cross v. Travelers Indem. Co., 896 F. Supp. 8, 13-14 (D.D.C. 1995)

Based on Shelton v. Am. Motors Corp., 805 F.2d 1323, 1324 (8th Cir. 1986) which is a deposition of in-house counsel's repeated refusal to answer deposition questions concerning the existence of certain documents

Interrogatory 21 is a contention interrogatory and Mr. Davis will respond when discovery matures near the end of the discovery period.

**Response:**

**Signatures**

I, Delontay Samuel Davis, pursuant to 28 U.S.C. § 1746, certify as true under penalty of perjury under the laws of the United States of America that the preceding true and correct to the best of my knowledge and recollection.
Respectfully submitted,

Delontay Samuel Davis

When signed: ____9/23/20____

Where signed 13004 Peacful Terr.
Silver Spring, MD 20904

Pls.'s Ex. 77, p. 4
Davis rog response excerpt
Smith v. DC, 15-737 (RCL)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MAGGIE SMITH, et al.,** | |
| Plaintiffs, | |
| v. | **Civil Action No.:  15-737 (RCL)** |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| Defendant. | |

### Kimberly Buffaloe's Declaration FOR SUMMARY JUDGMENT

**Ms. Buffaloe's arrest by the MPD**

1.                  On about July 21, 2012, I was sitting in a parked car on the passenger side owned and operated by my then-boyfriend in the District of Columbia when several MPD officers approached the car.

2.                  At that time I was a 22 year-old stylist and hair dresser and young mother with no criminal record and a resident of the District of Columbia.

3.                  Unbeknownst to me, my then-boyfriend was carrying an unregistered, loaded pistol without a license and, again unbeknownst to me, the then-boyffriend placed the loaded gun onto the passenger side of the car after the police approached and asked us to step out the car.

4.                  The MPD officers arrested me for CPWL and some other charges.

**Pls.'s Ex. 80, p. 1**
**Buffaloe Summary Judgment Decl.**
**Smith v. DC, 15-737 (RCL)**

5.                             I was held in Central Cellblock overnight and taken

to Superior Court the next day.

**Ms. Buffaloe's prosecution and the dismissal of her case**

6.                             The Superior Court judge ordered me held in a

halfway house. After 10 days on July 31, 2021 I was released into a high intensity supervision

program ("HISP") where I had to wear an ankle monitor and stay home unless I received

permission to go out.

7.                             I was on HISP ankle monitoring and home

confinement until 12/11/2012.

8.                             My daughter died during this period and I had to

wear the ankle monitor at the wake and the funeral which caused me embarrassment and

emotional distress and aggravated my grief.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Kimberly Buffaloe
**Kimberly Buffaloe**.

Executed on _____.

Pls.'s Ex. 80, p. 2
**Buffaloe Summary Judgment Decl.**
**Smith v. DC, 15-737 (RCL)**

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

CARL ATKINSON, et al.

                    Plaintiffs,                     **Civil Action No:**

          v.

GOVERNMENT OF THE DISTRICT OF
COLUMBIA

                    Defendant

## AFFIDAVIT OF CARL ATKINSON

I, Carl Atkinson, pursuant to 28 U.S.C. § 1746, certify as true under penalty of perjury under the laws of the United States of America that the following is true and correct.

**Seizure of my $100 in currency by MPD**

1.      I was arrested in November, 2013 by the MPD.  The MPD took $100 from me.  I have been unable to retrieve the money.

2.      On about 11/22/2013 I was driving my car on Georgia Ave., N.W. near Florida Ave., N.W. in the District when I spotted a car (which turned out to be an unmarked MPD police car) approaching me from the opposite direction.

Pls.'s Ex. 90, p. 1
**Atkinson original Declaration
Smith v. DC, 15-737 (RCL)**

3.     The car turned around, flashed its lights, and pulled me over on 7th Street, N.W. near

Florida Ave., N.W.

4.     I had a passenger in the front passenger seat and three passengers in the back seat.

5.     An officer approached my window.  I asked him why he stopped us.  He looked at the

passenger in the back seat, pointed at him, and said, "Because he's not wearing a seatbelt."

6.     The officer asked us all for identification then went to his car for about 20 minutes.

7.     At some point other police in cars began arriving.

8.     Upon returning from his car the officer said he smelled marijuana and asked us to get out

of the car. He then searched me without my consent and found what he contends was .3 of a

gram of marijuana in my sock and immediately placed me under arrest.

9.     He found $100 in cash in my pockets and took it all.

10.    He did not give me a receipt of any kind telling me why he was taking the money or what

I had to do to get it back. Nor did he give me notice of any prompt post seizure hearing at which

I could challenge the seizure or retention of the currency.

11.    Nor did I receive any such notice regarding a prompt post seizure hearing in the

following weeks.

12.    He asked me if he could search the car and I said yes to searching the passenger

compartment, but I did not authorize him to search the trunk.

13.    About this time one of my passengers asked the officer if he could get his back pack out

of the trunk.

14.    The officer took the key and opened the trunk and rooted around in the trunk.

15.    He then produced a small amount of what he said was marijuana that he said he found in

the trunk.

16.     The officer arrested me and charged me with possession of marijuana. The government nolle'd the case (United States v. Wade, 2013 CMD 20568, District of Columbia Superior Court) on 6/24/2014.

17.     I had a CJA lawyer because the CJA office found that I was indigent but she was unable to help me retrieve my money.

18.     After the case criminal was nolle'd my CJA lawyer was unable to help me get my money back because, she said, her representation was over.

19.     Although the government nolle'd the case the District of Columbia still have my $100.

20.     I did receive a civil forfeiture notice relating to the $100 but it told me I had to post a penal bond of $250 just for a chance to get my $100 back.

**Seizure of my car by the MPD**

21.     On 1/29/ 2014 the MPD stopped the car I was driving in the District (after I had parked) allegedly for a traffic violation. The officers said they smelled burnt marijuana coming from the car and they ordered me and my two passengers out of the car,

22.     They then searched the vehicle without my consent.

23.     The officers claimed they found a pistol in the back seat area of the car.

24.     They arrested me and my two passengers.

25.     The MPD also seized my car.

26.     The officers did not give me a receipt of any kind telling me why they were taking the car or what I had to do to get it back. Nor did the officers give me notice of any prompt post seizure hearing at which I could challenge the seizure or retention of the car.

AFFIDAVIT OF CARL ATKINSON
PAGE 3

**Pls.'s Ex. 90, p. 3**
**Atkinson original Declaration**
**Smith v. DC, 15-737 (RCL)**

27.     Nor did I receive any such notice regarding a prompt post seizure hearing in the

following weeks.

28.     The government of the District of Columbia filed charges against me for carrying a pistol

outside of a home or business but all charges were ultimately dismissed on 4/28/2014.  My case

number is: District of Columbia v. Atkinson, 2014 CF2 001702.

29.     I had a CJA lawyer because the CJA office found that I was indigent but she was unable

to help me retrieve my car.

30.     Although the District dropped all the criminal charges they still have my car.  I have

talked to people in the District of Columbia Attorney General's Office and the MPD's Evidence

Control Branch and they tell me my car is being held for civil forfeiture.

31.     I have tried to get the car back but without success.  The MPD sent me a notice telling me

to file a bond of $400 or I would lose the car.

32.     I worked two jobs to buy the car at auction for $2,000 a few months before the police

took it and then I spent an additional $2,000 fixing it up.

33.     I could not afford the $400 penal bond for a chance to get the car back.

34.     After the case criminal was nolle'd CJA lawyer was unable to help me get my car back

because, she said, her representation was over. It was very difficult for me to get informa-

**Bond Waivers** tion about my car. One officer I talked to said the officer I assigned to my case recommended I not get the car back. ←CJA.

35.     After my cases were over in about June 2014 I went to the Evidence Control Branch to

see how I could get my car and my money back.

36.     I spoke to a very nice lady at the Evidence Control Branch named Officer Ferguson. I told her that the MPD had taken $100 in cash and my car from me when they arrested me on two separate occasions.

37.     Officer Ferguson told me that the MPD had taken the car and the money for civil forfeiture.

38.     When I explained to Officer Ferguson that I could not afford to pay the penal bond amounts she gave me bond waiver forms (one for the car and one for the money) and she showed me how to fill them out.

39.     I filled them out following Officer Ferguson's directions and submitted them to her. She told me to wait for someone from the District of Columbia Attorney General's office to call me about my bond waivers and my property.

40.     About two weeks later in July 2014 a Mr. Walter Adams from the District of Columbia Attorney General's office called me on the phone and talk to me about my car.

41.     He told me the District had seized it for civil forfeiture and he basically gave me an opportunity to persuade him to return the car to me. He asked me very detailed questions about my arrest and the gun the police said they found in my car.

42.     This Mr. Adams left me with the impression that he was trying to investigate the case as a police officer to build a case against me rather than helping me obtain the return of my car.

43.     Mr. Adams told me in July 2014 that he would get back to me in two weeks and let me know whether the District would return my car. However, from that day to this, I have never received a telephone call from him nor have I received a letter from him or anyone else in his office.

44.     Mr. Adams did not ask any questions about the $100 in currency.

AFFIDAVIT OF CARL ATKINSON
PAGE 5

**Pls.'s Ex. 90, p. 5**
**Atkinson original Declaration**
**Smith v. DC, 15-737 (RCL)**

45.     It has been almost ten months since the District took my car and about a year since the District took my money and about five months since I submitted the bond waivers.

46.     Every day that goes by without a hearing or without return of my money and my car increases my damages.  The car is sitting on a lot in the open wasting away and every day that goes by without a hearing I am without the use of the car. The delay in providing prompt post seizure hearings and the delay in processing my bond waivers increases my damages for both the car and the money.

**Losing the Car Was a Great Hardship**

47.     Losing the car and the use of the car was a hardship for me.  I was a student at Strayer College and I had a job when the MPD took my car and without a car it was very difficult for me to get to and from work and school.

**Search of my parents' home**

48.     I live with my parents in the home in the District of Columbia where we have lived since about 1998.

49.     Each time I was arrested (about 10/20/2013 and about 1/29/2014) the MPD came to my parents' home a few days after the arrest and searched the home pursuant to what they said was a valid warrant.

50.     There is a docket entry, 2014 CRW 000429, on CourtView (the Superior Court's official docket) reflecting the execution and return of a search warrant on Carl Atkinson on 1/30/2014.

51.     There is no docket entry regarding the search of my parents home shortly after the (approximately) 11/20/2013 arrest.

Respectfully Submitted,

**Pls.'s Ex. 90, p. 6**
**Atkinson original Declaration**
**Smith v. DC, 15-737 (RCL)**

X _Cl Atts_

Carl Atkinson

Washington, DC   Arlington, VA

12/12/2014

**Pls.'s Ex. 90, p. 7**
**Atkinson original Declaration**
**Smith v. DC, 15-737 (RCL)**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH**, et al., | |
| Plaintiffs, | **Civil Action No: 15-737 (RCL)** |
| v. | |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| Defendant | |

## SUMMARY JUDGMENT DECLARATION
### Carl Atkinson

**Arrest by the MPD**

1.     On 1/29/ 2014 the MPD stopped the car I was driving in the District (after I had parked) allegedly for a traffic violation.

2.     I had been arrested once for possession of marijuana but I had never been convicted of any offense.

3.     The officers said they smelled burnt marijuana coming from the car and they ordered me and my two passengers out of the car,

4.     They then searched the vehicle without my consent.

5.     The officers claimed they found a pistol in the back seat area of the car.

6.     They arrested me and my two passengers.

7.     The MPD also seized my car.

8.     I was held in Central Cellblock overnight and presented in Superior Court the next day.

The government of the District of Columbia filed charges against me for carrying a pistol outside

**Pls.'s Ex. 90, p. 1**
**Summary Judgment Decl.**
**Smith v. DC, 15-737 (RCL)**

of a home or business but all charges were ultimately dismissed on 4/28/2014.  My case number

is: <u>District of Columbia v. Atkinson,</u> 2014 CF2 001702.

**Search of my parents' home**

9.      I live with my parents in the home in the District of Columbia where we have lived since

about 1998.

10.      Each time I was arrested (about 10/20/2013 and about 1/29/2014) the MPD came to my

parents' home a few days after the arrest and searched the home pursuant to what they said was a

valid warrant.

11.      The police did not find anything in either search.

I, Carl Atkinson, pursuant to 28 U.S.C. § 1746, certify as true under penalty of perjury under the

laws of the United States of America that the above declaration is true and correct.

Respectfully Submitted,

Carl Atkinson

3/10/2021

Executed on _____.

**Pls.'s Ex. 90, p. 2**
**Summary Judgment Decl.**
**Smith v. DC, 15-737 (RCL)**