DISTRICT OF COLUMBIA
COURT OF APPEALS

Clerk of the Court
Received 10/28/2019 11:39 AM
Filed 10/28/2019 11:39 AM

Nos. 18-CF-757 & 18-CF-724
(Cr. Nos. 2017-CF2-20184 & 2017-CF2-20178)

AKEEM BEATRICE,
TIMOTHY O. BANDY,                                      Appellants,

v.

UNITED STATES OF AMERICA,                              Appellee.

## MOTION TO VACATE CONVICTIONS FOR ATTEMPTED UNLAWFUL TRANSPORTATION OF A FIREARM UNDER D.C. CODE §§ 22-1803, -4504.02

Pursuant to D.C. App. R. 27(a), appellee, the United States of America, respectfully moves in these consolidated cases to vacate appellants' convictions for attempted unlawful transportation of a firearm (UTF), in violation of D.C. Code §§ 22-1803, -4504.02. Appellant Beatrice's sole claim on appeal is that the trial court plainly erred in convicting him of attempted UTF, because § 22-4504.02 does not

**Pls.'s Ex. 20, p. 1**
**Smith v. DC, 15-737 (RCL)**

establish a separate criminal offense (Br. 5-10).[1] For the reasons discussed infra, we agree that appellant Beatrice's and appellant Bandy's attempted UTF convictions should be vacated.[2]

## PROCEDURAL BACKGROUND

On March 7, 2018, appellants were charged by information with one count each of attempted UTF; attempted possession of an unregistered firearm (UF), D.C. Code §§ 7-2502.01(a), 22-1803; and attempted unlawful possession of ammunition (UA), D.C. Code §§ 7-2506.01(3), 22-1803 (R.7). On June 22, 2018, appellants agreed to a stipulated trial (6/18/18 Tr. 2-6). As described in greater detail in the government's brief

---

[1] "Br." refers to appellant Beatrice's brief on appeal. "R." refers to the record on appeal in Beatrice's case (No. 18-CF-757). "Tr." refers to the transcript of the trial court proceedings, at the indicated date and page.

[2] Appellant Bandy has not challenged the validity of UTF, but instead appealed his convictions on separate grounds. Briefing in Bandy's case has concluded, and this Court consolidated appellants' cases sua sponte on June 24, 2019. Should this Court accept the government's concession as to Beatrice's attempted UTF conviction, it would be appropriate to vacate Bandy's conviction for the same offense on the same ground. And, because Beatrice does not challenge his remaining convictions on appeal, it also would be appropriate to deconsolidate these cases.

We further note that, should this Court accept the government's concession in this case, the government will take steps to facilitate the vacation of other defendants' UTF convictions.

Pls.'s Ex. 20, p. 2
Smith v. DC, 15-737 (RCL)

in Bandy's case (see Brief for Appellee, *Timothy O. Bandy v. United States*, No. 18-CF-724, at 4-7, 13-16 (D.C. March 13, 2019)), the parties stipulated that on November 26, 2017, officers of the Metropolitan Police Department (MPD) saw Bandy's loaded pistol in plain view inside Beatrice's parked vehicle in the 2100 block of Bladensburg Road, Northeast (R.18 at 1). The officers subsequently discovered Beatrice's loaded pistol inside the driver's side door compartment (R.18 at 1-2).

At the conclusion of the stipulated trial, Judge Richter found appellants guilty as charged (6/18/18 Tr. 5). The court sentenced appellants to time served, and directed them each to pay a total of $150 to the Victims of Violent Crime Compensation Fund (*id.* at 9). Beatrice filed a timely notice of appeal on July 16, 2018 (R.20).

## ARGUMENT

### There Is Significant Ambiguity as to Whether D.C. Code § 22-4504.02 Establishes a Separate Criminal Offense, and the Rule of Lenity Requires That Ambiguity To Be Resolved in Appellants' Favor.

#### A.    Standard of Review and Applicable Legal Principles

As appellant Beatrice notes (Br. 9), because he failed to raise his claim in the trial court, he must satisfy the plain-error standard of

3

review. *Mitchell v. District of Columbia*, 741 A.2d 1049, 1052 (D.C. 1999). However, that standard is met where a defendant can show that his conduct does not establish a crime under the relevant statute. *Id.* at 1052-53.

In interpreting a statute, the Court "begin[s] with its text." *Coleman v. United States*, 202 A.3d 1127, 1138 (D.C. 2019). "[I]f the statute's . . . language is 'plain' and allows for no other meaning, [the Court] will generally look no further and give the 'words used the meaning ordinarily attributed to them.'" *Id.* (citation omitted). The Court will, however, interpret "a statute in the context of its entire statutory scheme and the language of surrounding and related paragraphs." *Thomas v. United States*, 171 A.3d 151, 153 (D.C. 2017). If the statute's language is ambiguous, the Court will turn to other aids in its interpretation, including the legislative history. *Coleman*, 202 A.3d at 1139-40. However, if "the statutory definitions," canons of statutory construction, and "the legislative history fail to decisively establish that the legislature intended to" punish the defendant for the conduct alleged by the prosecution, "the rule of lenity requires that [the Court] resolve

4

**Pls.'s Ex. 20, p. 4**
**Smith v. DC, 15-737 (RCL)**

any remaining ambiguity in favor of" the defendant's proposed interpretation. *Id.* at 1141.

D.C. Code § 22-4504.02 provides:

(a) Any person who is not otherwise prohibited by the law from transporting, shipping, or receiving a firearm shall be permitted to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry the firearm to any other place where he may lawfully possess and carry the firearm if the firearm is transported in accordance with this section.

(b)(1) If the transportation of the firearm is by a vehicle, the firearm shall be unloaded, and neither the firearm nor any ammunition being transported shall be readily accessible or directly accessible from the passenger compartment of the transporting vehicle.

(2) If the transporting vehicle does not have a compartment separate from the driver's compartment, the firearm or ammunition shall be contained in a locked container other than the glove compartment or console, and the firearm shall be unloaded.

(c) If the transportation of the firearm is in a manner other than in a vehicle, the firearm shall be:

(1) Unloaded;

(2) Inside a locked container; and

(3) Separate from any ammunition.

5

## B.    Discussion

As appellant Beatrice notes (Br. 6-7), the key question is whether § 22-4504.02 establishes an independent crime, or instead sets forth a "safe harbor," i.e., "a provision . . . that affords protection from liability or penalty" under other gun-possession regulations. *See* Black's Law Dictionary 1536 (10th ed. 2014). The statutory language, structure, and legislative history do not render a clear answer to that question.

First, the plain language of § 22-4504.02 is ambiguous as to whether it establishes an independent criminal offense. Although § 22-4504.02 contains a detailed list of requirements for the lawful transportation of a firearm, it neither affirmatively prohibits any conduct, nor expressly states that a violator may be punished.[3] By contrast, most of the commonly-prosecuted offenses under Title 22, Chapter 45 contain either an express prohibition of specific conduct, or a

---

[3] Any punishment would have to be provided by D.C. Code § 22-4515, which states that a violation of any provision of Title 22, Chapter 45 "for which no penalty is specifically provided shall be punished by a fine of not more than the amount set forth in § 22-3571.01 or imprisonment for not more than 1 year, or both."

6

specific punishment, or both.[4] Although the lack of express prohibitory language does not necessarily show that a statute fails to create an offense, the fact that § 22-4504.02 affirmatively "permit[s]" the transportation of a firearm if certain requirements are met is consistent with its being a safe-harbor provision.

Second, viewing § 22-4504.02 in the context of the entire statutory scheme does not resolve that ambiguity. Section 22-4504.02 sets forth the requirements for exceptions to liability for certain firearms-possession offenses. *See* D.C. Code §§ 22-4505(a)(6) (exempting persons from liability for carrying a pistol without license (CPWL) and/or carrying a rifle or shotgun, where such persons are "transport[ing]" firearms "in accordance with § 22-4504.02" to or from certain locations or activities); 7-

---

[4] *Compare* D.C. Code §§ 22-4502(a) (sentence enhancement for committing offense while armed); 22-4502.01(b) (possession of firearm in gun-free zone); 22-4503(a)(1), (b)(1) (unlawful possession of a firearm (felon-in-possession)); 22-4503.01 (unlawful discharge of a firearm); 22-4504(a) (carrying a pistol without a license (CPWL) and carrying a dangerous weapon (CDW)); 22-4504(a-1) (carrying rifle or shotgun); 22-4504(b) (possession of firearm during crime of violence or dangerous offense (PFCV)); 22-4507 (unlawful sale of pistol); 22-4511 (providing false information during purchase of certain weapons); 22-4512 (altering marks on certain weapons); 22-4514 (possession of a prohibited weapon (PPW)); 22-4515a (prohibition on Molotov cocktails or explosive devices).

Pls.'s Ex. 20, p. 7
Smith v. DC, 15-737 (RCL)

2502.01(b)(3) (providing similar exemption for non-District residents from liability for UF); 7-2505.04(e) (exempting nonresidents from liability for violating prohibition on sale, transfer, ownership, or possession of designated unsafe pistol, where pistol is transported through the District "in accordance with § 22-4504.02"). And, although § 22-4504.02 also is incorporated by reference into several other firearms regulations which affirmatively *require* gun owners or possessors to follow its provisions under certain circumstances,[5] those provisions do not necessarily imply that § 22-4504.02 independently requires such possessors to follow the transportation requirements outside those circumstances.

Third, the legislative history does not resolve the ambiguity in favor of § 22-4504.02 being a separate offense. Although the statute was first enacted as a stand-alone provision in 2009 (see infra), its origins go back

---

[5] *See* D.C. Code §§ 7-2502.04(c) (obligating persons seeking to register a firearm, and who are asked to bring the gun with them, to transport the weapon "in accordance with § 22-4504.02"); 7-2507.05(a)(3) (requiring the same of persons seeking to voluntarily surrender a firearm); 7-2509.07(c)(1) (requiring persons licensed to carry a pistol to "secure the pistol in the manner prescribed in § 22-4504.02(b)" whenever the licensee is approaching certain restricted locations).

to 1932, when Congress provided that the newly-created offense of CPWL would not apply, inter alia, "to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another." *See* "An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other Dangerous Weapons in the District of Columbia," 47 Stat. 651, Ch. 465, §§ 4, 5 (July 8, 1932). The D.C. Council created a similar exception when it enacted the offense of UF, permitting a non-resident "participating in any lawful recreational firearm-related activity in the District, or on his way to or from such activity in another jurisdiction" to possess a firearm, provided, inter alia, that the weapon was "unloaded, securely wrapped, and carried in open view." *See* "Firearms Control Act of 1975," D.C. Law 1-85, § 201(b)(3) (Sept. 24, 1976).

These lawful-transportation exceptions remained substantively unmodified until 2008, when the Supreme Court invalidated the District's prohibition of handgun possession. *See District of Columbia v. Heller*, 554 U.S. 570, 635-36 (2008). The Council responded by enacting

9

two new laws: the "Inoperable Pistol Amendment Act of 2008," D.C. Law 17-388 (May 20, 2009) ("IPAA"), and the "Firearms Registration Amendment Act of 2008," D.C. Law 17-372 (March 31, 2009) ("FRAA").[6] In addition to removing the District's near-total ban on the possession of handguns, these acts changed the requirements for lawfully transporting firearms that are unlicensed in the District.

First, the IPAA struck the phrase, "pistol unloaded and in a secure wrapper" from the exception to CPWL contained in § 22-4505(a)(6), and replaced it with the current cross-reference to newly-enacted § 22-4504.02. *See* D.C. Law 17-388, § 2(d), (e). Second, the FRAA amended § 7-2502.01(b)(3)'s transportation exception to UF for nonresidents, so that instead of requiring that a gun be "unloaded, securely wrapped, and carried in open view," the exception required transportation "in accordance with § 22-4504.02." *See* D.C. Law 17-372, § 3(b).[7]

---

[6] Although the two acts went into effect almost two months apart, the Council passed them on the same date, January 28, 2009.

[7] The FRAA also added the current cross-references to § 22-4504.02 to other provisions of Title 7, Chapter 25. *See* D.C. Law 17-372, § 3(e)(2), (m), (p) (amending § 7-2502.04, -2505.04, -2507.05)).

**Pls.'s Ex. 20, p. 10**
**Smith v. DC, 15-737 (RCL)**

The principal committee report on the IPAA clarified that this provision was intended to "conform[ ]" to, or "more closely parallel" the firearms-transport requirements contained in federal law, explaining:

> First, the District's current law is not best practice – to require that a gun be in plain view within the passenger compartment of a car, for instance. Second, the District's current law is practically opposite federal law, so that a District resident driving to Virginia for target practice would find they are breaking one law by complying with the other. The committee print is nearly identical to federal law with some exception: First, if transport is by motor vehicle and there is not a separate compartment (e.g. trunk) the print requires that both the firearm and ammunition be in a locked container. Second, the print includes a provision for transportation if other than in a vehicle (e.g. by walking or bicycling to MPD for registration, or to/from a gun dealer).

*See* Rep. on Bill 17-593, Comm. on Public Safety and the Judiciary, 1, 4 (Nov. 25, 2008).[8] Similarly, the principal committee report on the FRAA stated that the committee wanted "transport requirements to be

---

[8] The committee's reference to federal law was likely to 18 U.S.C. § 926A, which exempts persons transporting lawfully-owned firearms in vehicles from criminal liability under state or local law, provided that their guns are stored unloaded and inaccessible. Notably, it does not appear that there have been any federal-court decisions involving prosecutions for violating § 926A. Instead, failure to comply renders the provision unavailable as a defense to state prosecutions for gun possession. *See, e.g., McDaniel v. Arnold*, 898 F. Supp. 2d 809, 829-30 (D. Md. 2012).

11

consistent with the provisions" in Title 22, Chapter 45. *See* Rep. on Bill 17-843, Comm. on Public Safety and the Judiciary, 15 (Nov. 25, 2008).

The legislative history accordingly indicates that § 22-4504.02 was intended to conform the requirements of the District's lawful-transportation exceptions to federal law's safe harbor from criminal liability under other provisions. By contrast, there is no suggestion that the Council sought to create a separate, free-standing offense.

Finally, as noted *supra*, the rule of lenity "states that 'criminal statutes should be strictly construed and that ambiguities should be resolved in favor of the defendant.'" *Coleman*, 202 A.3d at 1141 (citation omitted). Thus, the significant ambiguity present here should be resolved in appellants' favor. *See id.* at 1141-42 (where stalking statute was ambiguous as to whether a defendant could be convicted absent proof that he possessed a culpable mental state on at least two occasions, "the statutory definitions, the last-antecedent rule, the legislative history, and the rule of lenity lead us to conclude that the defendant cannot").

**Pls.'s Ex. 20, p. 12**
**Smith v. DC, 15-737 (RCL)**

## CONCLUSION

WHEREFORE, the government respectfully submits that (1) appellants' convictions for attempted unlawful transportation of a firearm, pursuant to D.C. Code §§ 22-1803, -4504.02, should be vacated; and (2) appellant Beatrice's remaining, unchallenged convictions should be affirmed.[9]

Respectfully submitted,

JESSIE K. LIU
United States Attorney

ELIZABETH TROSMAN
Assistant United States Attorney

_____/s/_____

NICHOLAS P. COLEMAN
D.C. Bar #460109
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Nicholas.Coleman@usdoj.gov
(202) 252-6829

---

[9] As noted supra, it further would be appropriate to deconsolidate appellants' appeals, so that this Court may proceed to consider appellant Bandy's remaining, independent claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing to be served (1) by electronic means, through the Court's EFS system, upon counsel for appellant Akeem Beatrice, John S. Albanes, Esq., john.s.albanes@gmail.com, and counsel for appellant Timothy Bandy, Geneva G. Vanderhorst, Esq., genevalaw@yahoo.com; and (2) via email, on Loren AliKhan, Esq., Solicitor General, District of Columbia Office of the Attorney General, loren.alikhan@dc.gov, on this 28th day of October, 2019.

/s/
NICHOLAS P. COLEMAN
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-HHK |
| | ) | |
| Plaintiffs, | ) | SEPARATE STATEMENT OF |
| | ) | UNDISPUTED MATERIAL |
| v. | ) | FACTS IN SUPPORT OF |
| | ) | PLAINTIFFS' MOTION FOR |
| DISTRICT OF COLUMBIA, et al., | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |
| | ) | |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW THE Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy

McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and

submit their Separate Statement of Undisputed Material Facts in Support of their Motion for

Summary Judgment.

Dated: August 26, 2009      Respectfully submitted,

Alan Gura (D.C. Bar No. 453449)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/Alan Gura
Alan Gura

Attorney for Plaintiffs

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

| **FACT** | | **RECORD** | |
|---|---|---|---|
| 1. | Defendants prohibit the possession or control of any firearm not registered according to city law. | 1. | D.C. Code § 7-2502.01(a). |
| 2. | Individuals who are not retired police officers may only register a handgun "for use in self-defense within that person's home." | 2. | D.C. Code § 7-2502.02(a)(4); |
| 3. | Defendants require registration applicants to "give a brief statement of your intended use of the firearm and where the firearm will be kept." | 3. | Exh. A; Exh. B; Exh. C. |
| 4. | Defendants require registration applicants to "[s]ubmit proof of residency in the District of Columbia (e.g., a valid DC operator's permit, DC vehicle registration card, lease agreement for a residence in the District, . . .", etc.). | 4. | http://mpdc.dc.gov/mpdc/cwp /view,a,1237,q,566989.asp |
| 5. | A first violation of the District of Columbia's ban on the ownership or possession of unregistered handguns is punishable as a misdemeanor by a fine of up to $1,000, imprisonment of up to one year, or both. A second offense is punishable as a felony by a fine of up to $5,000, imprisonment of up to five years, or both. | 5. | D.C. Code § 7-2507.06. |
| 6. | "No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed." | 6. | D.C. Code § 22-4504(a). |
| 7. | The first violation of this section by a non-felon is punishable by a fine up to $5,000 and imprisonment of up to five years. | 7. | D.C. Code § 22-4504(a)(1) |

undisputed by Dt [6-3]

| **FACT** | **RECORD** |
|---|---|
| 8. Former D.C. Code § 22-4506 empowered the District of Columbia's police chief to issue licenses to carry handguns to individuals, including to individuals not residing in the District of Columbia. | 8. D.C. Code § 22-4506 (2008). |
| 9. It was Defendant District of Columbia's policy for many years to not issue such licenses to carry handguns to individuals. | 9. "It is common knowledge . . that with very rare exception licenses to carry pistols have Not been issued in the District of Columbia for many years and are virtually unobtainable." *Bsharah* v. United States, 646 A.2d 993, 996 n.12 (D.C. 1994). |
| 10. On December 16, 2008, the District of Columbia repealed the Police Chief's authority to issue handgun carry licenses. | 10. Inoperable Pistol Amendment Act of 2008, B17-593 |
| 11. The District of Columbia lacks any mechanism to issue handgun carry licenses to individuals. | 11. D.C. Code. |
| 12. Plaintiff Tom G. Palmer would carry a functional handgun in public for self-defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he does not possess a license to carry a handgun. | 12. Exh. A; Palmer Decl., ¶ 2. |
| 13. Plaintiff Tom G. Palmer sought to register a handgun in the District of Columbia so that he might carry it for self-defense. | 13. Exh. A; Palmer Decl., ¶ 3. |

| | | |
|---|---|---|
| 14. | On or about May 12, 2009, defendant Lanier denied plaintiff Palmer's application to register a handgun, for the following reason: "The intended use of the firearm as stated on your firearms registration application, 'I intend to carry this firearm, loaded, in public, for self-defense, when not kept in my home' is unacceptable per the 'Firearms Registration Emergency Amendment Act of 2008,' which states that pistols may only be registered by D.C. residents for protection within the home. | 14. Exh. A.; Palmer Decl., ¶ 4. |
| 15. | Defendant Lanier subsequently approved Palmer's application to register the handgun for home self-defense. | 15. Palmer Decl., ¶ 5. |

| | | |
|---|---|---|
| 16. | Plaintiff George Lyon would carry a functional handgun in public for self-defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he does not possess a license to carry a handgun in Washington, D.C. | 16. Exh B; Lyon Decl., ¶ 2. |
| 17. | Lyon is licensed to carry handguns by the states of Virginia, Utah, and Florida. He has approximately 240 hours of firearms training, of which approximately 140 hours relate specifically to handguns. | 17. Lyon Decl., ¶ 3. |
| 18. | Lyon sought to register a handgun in the District of Columbia so that he might carry it for self-defense. . | 18. Exh B; Lyon Decl., ¶ 4. |
| 19 | On or about April 8, 2009, defendant Lanier denied plaintiff Lyon's application to register a handgun, for the following reason: "The intended storage and use of the firearm as stated on your firearms registration application, 'carrying personal protection, keep at home or office' is unacceptable per the 'Firearms Registration Emergency Amendment Act of 2008,' which states that pistols may only be registered by D.C. residents for protection within the home." | 19. Exh B; Lyon Decl., ¶ 5. |
| 20. | Defendant Lanier subsequently approved Lyon's application to register the handgun for home self-defense. | 20. Lyon Decl., ¶ 6. |

| 21. | Plaintiff Edward Raymond is currently enrolled as a student in the Franklin Pierce Law Center in New Hampshire. He is also employed as a Patent Examiner, and owns a home in Waldorf, Maryland. Raymond holds a Master of Business Administration degree, as well as a Master of Science degree in Electrical Engineering. He has started various successful businesses, and is an honorably discharged Navy veteran. | 21. | Raymond Decl., ¶¶ 1-2. |
| 22. | On April 6, 2007, Plaintiff Raymond was stopped by District of Columbia Police for allegedly speeding. | 22. | Raymond Decl., ¶ 3. |
| 23. | At the time of the stop, Raymond held valid permits to carry a handgun issued by the states of Maryland and Florida, and he still holds those permits. | 24. | Raymond Decl., ¶ 4. |
| 24. | Although Plaintiff Raymond was never charged with a traffic violation, he was charged with carrying a pistol without a license because his loaded handgun was located in his car's center console. | 23. | Raymond Decl., ¶ 5. |
| 25. | Plaintiff Raymond subsequently pled guilty to misdemeanor possession of an unregistered firearm and unregistered ammunition. He successfully completed a sentence of probation. | 25. | Raymond Decl., ¶ 6. |
| 26. | On June 26, 2009, Plaintiff Edward Raymond sought to register a handgun in the District of Columbia but was refused an application form on account of his lack of residence in the District. | 26. | Raymond Decl., ¶ 7. |
| 27. | Plaintiff Edward Raymond would carry a functional handgun in public for self-defense while visiting and traveling through Washington, D.C., but refrains from doing so because he fears another arrest and prosecution, as well as fine and imprisonment as he does not possess a license to carry a handgun in Washington, D.C. | 27. | Raymond Decl., ¶ 8. |

| | | |
|---|---|---|
| 28. | Plaintiff Amy McVey would carry a functional handgun in public for self-defense, but refrains from doing so because she fears arrest, prosecution, fine, and imprisonment as she does not possess a license to carry a handgun in Washington, D.C. | 28. | Exh. C; McVey Decl., ¶ 2. |
| 29. | McVey is licensed by the state of Virginia to publicly carry a handgun. | 29. | McVey Decl., ¶ 3. |
| 30. | Plaintiff Amy McVey sought to register a handgun in the District of Columbia so that she might carry it for self-defense. | 30. | Exh. C; McVey Decl., ¶ 4. |
| 31. | On July 7, 2009, defendant Lanier denied plaintiff McVey's application to register a handgun, for the following reason: "The intended storage and use of the firearm as stated on your firearms registration application, 'I intend to carry the loaded firearm in public for self-defense when not stored in my home' is unacceptable per the 'Firearms Registration Emergency Amendment Act of 2008,' which states that pistols may only be registered by D.C. residents for protection within the home." | 31. | Exh. C; McVey Decl., ¶ 5. |
| 32. | Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. | 32. | Gottlieb Decl., ¶ 2. |
| 33. | SAF has over 650,000 members and supporters nationwide, including Washington, D.C. | 33. | Gottlieb Decl., ¶ 3. |
| 34. | The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. | 34. | Gottlieb Decl., ¶ 4. |
| 35. | SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating its members, supporters, and the general public about the law with respect to carrying handguns in Washington, D.C. | 35. | Gottlieb Decl., ¶ 5. |

| 36. | The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. | 36. | Gottlieb Decl., ¶ 6. |
| 37. | Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. | 37. | Gottlieb Decl., ¶ 7. |
| 38. | Defendants' policies bar the members and supporters of SAF  from obtaining permits to carry handguns. | 38. | Gottlieb Decl., ¶ 8. |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| TOM G. PALMER, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      Civil Action No. 09-01482 (HHK) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____)

DEFENDANTS' OPPOSITION TO
<u>PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Pursuant to Fed. R. Civ. P. 56(e) and LCvR 56.1, defendants (collectively, "the District"), by and through undersigned counsel, hereby respectfully submit their Opposition to Plaintiffs' Separate Statement of Undisputed Material Facts in the above-captioned case.

Plaintiffs' 38-paragraph Separate Statement of Undisputed Material Facts ("PSMF") is prolix, fails to specifically identify any material facts at issue here, and contains argument and legal conclusions masquerading as facts, most of which are undisputed or immaterial. *See, e.g., Robertson v. American Airlines, Inc.*, 239 F.Supp. 2d 5, 8–9 (D.D.C. 2002) (statement of undisputed material facts should "logically and efficiently" review relevant background facts, cite to the record, and should *not* "contain argument") (emphasis added) (*citing Jackson v. Finnegan, Henderson*, 101 F.3d 145, 153 n.6 (D.C. Cir. 1996)). *See also Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988) (burden is on parties to "isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed.").

In response to the numbered paragraphs of the PSMF, the District responds as follows:

1.   The District objects to paragraph 1 of the PSMF because it is not a material fact but a statement of law.

2.   The District objects to paragraph 2 of the PSMF because it is not a material fact but a statement of law.

3.   The District does not dispute paragraph 3 of the PSMF.

4.   The District does not dispute paragraph 4 of the PSMF.

5.   The District objects to paragraph 5 of the PSMF because it is not a material fact but a statement of law.

6.   The District objects to paragraph 6 of the PSMF because it is not a material fact but a statement of law.

7.   The District objects to paragraph 7 of the PSMF because it is not a material fact but a statement of law.

8.   The District objects to paragraph 8 of the PSMF because it is not a material fact but a statement of *repealed* law.

9.   The District does not dispute paragraph 9 of the PSMF, but it is immaterial (if not irrelevant) to the resolution of the instant motions.

10. The District objects to paragraph 10 of the PSMF because it is not a material fact but a statement of law.

11. The District objects to paragraph 11 of the PSMF because it is not a material fact but a statement of law, without citation to authority or the record.

12. The District objects to paragraph 12 of the PSMF because it is not a material fact but a statement of an individual plaintiff's intent.

13. The District does not dispute paragraph 13 of the PSMF.

14. The District does not dispute paragraph 14 of the PSMF.

15. The District does not dispute paragraph 15 of the PSMF.

16. The District objects to paragraph 16 of the PSMF because it is not a material fact but a statement of an individual plaintiff's intent.

17. The District objects to paragraph 17 of the PSMF because it is immaterial to the resolution of the instant motions.

18. The District does not dispute paragraph 18 of the PSMF.

19. The District does not dispute paragraph 19 of the PSMF.

20. The District does not dispute paragraph 20 of the PSMF.

21. The District objects to paragraph 21 of the PSMF because it is immaterial to the resolution of the instant motions.

22. The District does not dispute paragraph 22 of the PSMF.

23. The District objects to paragraph 23 of the PSMF because it is immaterial to the resolution of the instant motions.

24. The District does not dispute paragraph 24 of the PSMF.

25. The District does not dispute paragraph 25 of the PSMF.

26. The District does not dispute paragraph 26 of the PSMF.

27. The District objects to paragraph 27 of the PSMF because it is not a material fact but a statement of an individual plaintiff's intent.

28. The District objects to paragraph 28 of the PSMF because it is not a material fact but a statement of an individual plaintiff's intent.

29. The District objects to paragraph 29 of the PSMF because it is immaterial to the resolution of the instant motions.

30. The District does not dispute paragraph 30 of the PSMF.

31. The District does not dispute paragraph 31 of the PSMF.

32. The District does not dispute paragraph 32 of the PSMF, though it is immaterial to the resolution of the instant motions.

33. The District does not dispute paragraph 33 of the PSMF, though it is immaterial to the resolution of the instant motions.

34. The District does not dispute paragraph 34 of the PSMF, though it is immaterial to the resolution of the instant motions.

35. The District does not dispute paragraph 35 of the PSMF, though it is immaterial to the resolution of the instant motions.

36. The District does not dispute paragraph 36 of the PSMF, though it is immaterial to the resolution of the instant motions.

37. The District does not dispute paragraph 37 of the PSMF, though it is immaterial to the resolution of the instant motions.

38. The District objects to paragraph 38 of the PSMF because it is a legal conclusion.

DATE: September 9, 2009                    Respectfully submitted,

                                           PETER J. NICKLES
                                           Attorney General for the District of Columbia

                                           GEORGE C. VALENTINE
                                           Deputy Attorney General, Civil Litigation Division

                                           _____/s/ Ellen A. Efros_____
                                           ELLEN A. EFROS, D.C. Bar No. 250746
                                           Chief, Equity Section I
                                           441 Fourth Street, N.W., 6th Floor South
                                           Washington, D.C. 20001
                                           Telephone: (202) 442-9886
                                           Facsimile: (202) 730-1470

**Pls.'s Ex. 36, p. 4**
**Smith v. DC, 15-737 (RCL)**

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
andy.saindon@dc.gov

**Pls.'s Ex. 36, p. 5**
**Smith v. DC, 15-737 (RCL)**