## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 15-737 (RCL) |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL
## FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant the District of Columbia (the District) submits the following Statement of Undisputed Material Facts in Support of Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment:

1.     Shortly after the Home Rule Act was enacted in 1973, *see* D.C. Code §§ 1-201.01 *et seq.*, the D.C. Council passed a general ban on the possession of handguns. D.C. Code §§ 7-2502.01(a), 7-2501.01(7) (2001 ed.).

2.     The Supreme Court found this handgun ban unconstitutional in *District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller I*), holding that the Second Amendment codified a pre-existing, individual "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 592, 635. The Court also stated that this right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 627.

3.    The District's elected leaders amended its firearms laws to comply with *Heller I*, establishing a system for registering handguns and instituting requirements for registrants. *See Heller v. District of Columbia*, 45 F. Supp. 3d 35, 38–39 (D.D.C. 2014), *aff'd in part and rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*).

4.    The District continued to amend its laws to comply with court rulings. Subsequently, the District's "good reason" requirement to obtain a concealed-carry license was invalidated. *Wrenn v. District of Columbia*, 864 F.3d 650, 666 (D.C. Cir. 2017).

5.    In *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), the court enjoined the District from enforcing D.C. Code § 7-2502.02(a)(4) (2012 ed.), which at that time prohibited "the registration of handguns to be carried in public for self-defense," *Palmer*, 59 F. Supp. 3d at 183; from enforcing D.C. Code § 22-4504(a) (2012 ed.), which criminalized the act of carrying a weapon in public without a license; and from enforcing either statute "against individuals based solely on the fact that they are not residents of the District." *Palmer*, 59 F. Supp. 3d at 183. The *Palmer* Court's injunction was effective "unless and until such time as the District [ ] adopt[ed] a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.*

6.    On September 23, 2014, the Council of the District of Columbia voted unanimously to pass Bill 20-926, the License to Carry a Pistol Emergency Amendment Act of 2014 (Emergency Act). *See* 61 D.C. Reg. 10765 (Oct. 17, 2014). The bill was signed by the Mayor on October 9, 2014, and became effective on signing. *See*

Third Am. Compl. [114] (TAC) ¶ 27 and n.1; D.C. Official Code § 1-204.12(a) (2014 Supp.).

7.      The Council subsequently passed a series of additional emergency and temporary statutes, to maintain a public-carry regime pending enactment of permanent legislation and congressional review. *See, e.g.*, "License to Carry a Pistol Second Emergency Declaration Resolution of 2014," Res. 20-741 (Dec. 17, 2014), 62 D.C. Reg. 1964 (Feb. 13, 2015). The permanent legislation, the License to Carry a Pistol Amendment Act of 2014, Law No. 20-279 became effective—after passing the period of congressional review—on June 16, 2015. *See* http://lims.dccouncil.us/ Legislation/B20-0930?FromSearchResults=true (last visited Mar. 23, 2021).

8.      Plaintiff Maggie Smith, then a resident of North Carolina, was stopped by police while driving in the District on June 29, 2014, and arrested and charged with carrying a pistol without a license. TAC ¶¶ 31–34 (citing D.C. Code § 22-4504(a) (2012 ed.)). She was subsequently indicted by the U.S. Attorney's Office (USAO) and arraigned on charges of carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. TAC ¶136. The USAO dismissed the indictment on September 29, 2014, *id.* ¶ 137, "in light of" the July 2014 decision in *Palmer*, but the D.C. Office of the Attorney General (OAG) had previously filed a criminal information on similar charges (possession of unregistered firearm and unlawful possession of ammunition, *see* Pls.' Ex. 45), although it subsequently dismissed the information. TAC ¶¶ 137–41. The District seized her pistol at the time of her arrest and has not returned it. *Id.* ¶¶ 142–43.

9.     The plaintiffs had their firearms seized pursuant to D.C. Code § 22-4517(b). *See* TAC ¶¶ 144 (M. Smith), 183 (G. Cassagnol), 206 (F. Rouse), 228 (D. Davis).

10.     Ms. Smith never attempted to retrieve her pistol from MPD. Exhibit 1 (M. Smith Tr.) at 14:2–14:7. Nor did she ask her attorneys to assist in retrieving her property. *Id.* at 14:20–15:1.

11.     "Since her arrest, Ms. Smith never attempted to register a gun or obtain a license or permit in the District or in any other state or jurisdiction." Ex. 2 (M. Smith Interrogatory Responses) at 5.

12.     Prior to Ms. Smith's arrest, she did not know or attempt to inquire about the District's firearms laws. *Id.* at 4.

13.     Plaintiff Gerard Cassagnol, a Maryland resident, was stopped by police while driving through the District on October 9, 2013, and arrested for carrying a pistol without a license. *Id.* ¶¶ 146–160.

14.     At the time of his arrest, Mr. Cassagnol claimed that his pistol was "licensed and registered in Maryland." TAC ¶ 150. *But cf.* Ex. 3 (Cassagnol Interrogatory Responses) at 5 ("He did not have or attempt to obtain a permit for concealed carry. He never attempted to obtain a permit or license in any other state either.").

15.     Mr. Cassagnol was subsequently indicted by the USAO and arraigned on charges of carrying a pistol without a license, *see* D.C. Code § 22-4504(a)(1), possession of an unregistered firearm, *see* D.C. Code § 7-2502.01, and unlawful

possession of ammunition, *see* D.C. Code § 7-2506.01. TAC ¶¶ 167–68. The USAO dismissed the indictment against Mr. Cassagnol "apparently in light of the *Palmer* decision," but OAG filed a criminal information against him the same day. *Id.* ¶¶ 170–71. On April 20, 2015, OAG "*nolle'd* the case against Mr. Cassagnol[.]" *Id.* ¶ 175. When he was arrested, the police seized Mr. Cassagnol's nine-millimeter pistol and some ammunition and have not returned them. *Id.* ¶¶ 176–182.

16.     Mr. Cassagnol did not seek the assistance of his attorney to obtain the return of his property. Ex. 4 (Cassagnol Tr.) at 14:9–14:13; 24:2–24:4.

17.     "Since his arrest, Mr. Cassagnol never attempted to register a gun or obtain a license or permit in the District or any other state." Ex. 3 (Cassagnol Interrogatory Responses) at 6.

18.     Mr. Cassagnol, prior to his arrest, had looked up the District's gun laws but believed that the District would apply Maryland law to his travel though the District. *Id.* at 5.

19.     Plaintiff Frederick Rouse, also a Maryland resident, was arrested by police on August 30, 2014, while at a hotel in the District, for possession of unregistered firearms and ammunition. TAC ¶¶ 185–197. On April 22, 2015, OAG dismissed the charges against Mr. Rouse. *Id.* ¶ 203. At his arrest, the police seized from Mr. Rouse two handguns and a scope, which were subsequently returned. *Id.* ¶¶ 204–205. The charges against Mr. Rouse were dismissed on April 22, 2015. *Id.* ¶ 203. "Mr. Rouse has successfully registered 20 to 30 handguns in Maryland since 2003." Ex. 5 (Rouse Interrogatory Responses) at 5.

20.     Mr. Rouse has never attempted to register a firearm in the District and has never attempted to obtain a concealed-carry license or permit in the District. *Id.*

21.     Mr. Rouse, prior to his arrest, believed that the District had legalized firearms as a result of the decision in *Heller. Id.* at 4.

22.     Plaintiff Delontay Davis, a Virginia resident, was stopped in his car on March 23, 2014, while driving through the District and arrested for carrying an unregistered handgun and ammunition. *Id.* ¶¶ 210–213. Mr. Davis's indictment was subsequently dismissed by the USAO, as was the criminal information filed by OAG. *Id.* ¶¶ 223–24. *See* Pls.' Ex. 75 (Notice of Dismissal). At his arrest, police seized Mr. Davis's pistol and have retained it. TAC ¶¶ 225–26.

23.     "Since his arrest, Mr. Davis never attempted to obtain a license or permit to carry a gun in any state. Mr. Davis never attempted to register a gun in D.C. or obtain a license or permit in D.C. before or since his arrest." Ex. 6 (Davis Interrogatory Responses).

24.     Mr. Davis believed before his arrest that the District's gun laws were similar to those of Virginia, which he believed permitted owning and carrying a gun in a car without a permit; he did not know anything about the District's gun laws. *Id.* at 4.

25.     Plaintiff Kimberly Buffaloe, a Maryland resident, was arrested in the District on July 21, 2012, after an unregistered, loaded pistol was found in the parked vehicle in which she was sitting with her then-boyfriend. TAC ¶ 249. She was subsequently indicted by the USAO on charges of carrying a pistol without a license,

6

possession of an unregistered firearm, *see* D.C. Code § 7-2502.01, unlawful possession of ammunition, *see id.*, § 7-2506.01, and presence in a motor vehicle containing a firearm, *see id.*, § 22-2511. TAC ¶ 260. All charges against Ms. Buffaloe were dismissed on March 19, 2013. *Id.* ¶ 264.

26.     She currently possesses a Maryland Handgun Qualification License, which she obtained in May 2019, Ex. 7 (Buffaloe Interrogatory Responses) at 5, but "[s]ince her arrest, Ms. Buffaloe never attempted to register a gun or obtain a license or permit in the District[.]" *Id.* at 6.

27.     Plaintiff Carl Atkinson, a Maryland resident, was arrested on January 28, 2014 after MPD officers stopped his car and found a loaded pistol. TAC ¶¶ 265–70. The following day he was charged with carrying a pistol without a license. TAC ¶ 276 (*see* D.C. Code § 22-4504(a)). On July 25, 2012, Mr. Atkinson was indicted for carrying a pistol without a license, possession of an unregistered firearm, *see* D.C. Code § 7-2502.01, unlawful possession of ammunition, *see* D.C. Code § 7-2506.01, and presence in a motor vehicle containing a firearm, *see* D.C. Code § 22-2511. TAC ¶ 279. On March 19, 2013, all charges against Mr. Atkinson were dismissed. *Id.* ¶ 282.

28.     "Mr. Atkinson has never made any attempts to register and/or obtain a concealed-carry license or permit, in the District of Columbia or any other state or jurisdiction." Ex. 8 (Atkinson Interrogatory Responses) at 6.

29.     Mr. Atkinson had no knowledge of the District's gun laws before his arrest, and never inquired about them. *Id.* at 4.

Dated:  April 16, 2021.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

*/s/ Andrew J. Saindon*
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
BRENDAN HEATH [1619960]
Assistant Attorney General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (fax)
andy.saindon@dc.gov

*Counsel for Defendant*

8