# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.:  15-737 (RCL) |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S OBJECTIONS TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

| Plaintiffs' SMF | District's objection | Plaintiffs' Response |
|---|---|---|
| 1. The following table is a list of the Named Plaintiffs, and their MPD charged offenses from Cobalt, date initial prosecution commenced, and date of re-prosecution if any. Grabowsky Decl., ¶1. | Disputed, in part. Ms. Buffaloe was charged by the arresting officer with Carrying a Pistol and the National Firearms Act. | District's statement regarding Ms. Buffaloe's charge accepted. |
| 2. All arrestees prosecuted in Superior Court on their arrest charges were detained from time of arrest until at least First Appearance in Superior Court. Haines depo, p. 57. | Undisputed. | |
| Maggie Smith Ms. Smith's arrest by the MPD | | |
| 3. On June 29, 2014, Ms. Maggie Smith was pulled over by MPD while she was driving her car in the District of Columbia. Pls.'s Ex.# 40, Smith Decl.,i- 1. | Undisputed. | |

| | | |
|---|---|---|
| 4. Ms. Smith has never had any criminal record apart from this one case. Pls.'s Ex. # 40, Smith Decl., ¶ 1-2. | RESPONSE: Disputed, in part. Prior to her arrest that is the subject of this lawsuit, Ms. Smith had never been arrested. See Ex. 1 at 9:19-22. (Smith Deposition). | **Para. 1 states Ms. Smith had no criminal record before the arrest in this case.**<br><br>SMF # 4 is deemed admitted, *Grimes v. District of Columbia*, 794 F.3d 83, 96-97 (2015) ("deemed admitted" rules apply to facts in party's statement material facts despite Fed. R. Civ. P. 56(a); *Vines v. Hodges*, 422 F. Supp. 1292, 1296 n.2 (1976), so there is no genuine dispute.<br><br>Plaintiffs' SMF # 4 is "factually supported" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), ¶¶ 1-2 of the Smith declaration.<br><br>The District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c). *Vines*, 422 F. Supp. at 1296 n.2.<br><br>The District's citation to Ms. Smith's deposition merely confirms Para. 2 of SMF # 4, that is, she had no arrest before this case. |
| 5. Ms. Smith promptly informed the police that she was carrying a pistol for self-defense, and that she had a lawful permit from her home state of North Carolina to carry a pistol. Pls.'s Ex. # 40, Smith Decl., ⬚ 5; Pls.'s Ex. # [sic] Pls.'s | RESPONSE: The District does not dispute that Ms. Smith informed the MPD officers who stopped | The SMF including "she was carrying a pistol for self-defense" is deemed admitted for the reasons set |

| | | |
|---|---|---|
| Ex. # 44 (copy of permit). | her that she was carrying a pistol. The remaining allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell v. Landis Construction Co., 714 F. Supp. 2d 103, 105 (D.D.C. 2010) (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)). | forth in response to the District's objection to SMF # 23 (Mr. Cassagnol carried his hand gun in self-defense). Moreover, the District states in its objection that "[t]he remaining allegations in this paragraph [other than "she was carrying a pistol"] are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." This appears to be a concession that the District bears the burden at trial and summary judgment on this issue. |
| 6. MPD arrested Ms. Smith for Carrying a Pistol, in violation of then-D.C. Code§ 22-4504(a). Grabowsky Deel, ¶1 (based on Cobalt data export). | Undisputed. | |
| 7. Ms. Smith was held in 7th District overnight and presented in Superior Court the next day. Pls.'s Ex. # 40, Smith Decl., ¶7-8; | Undisputed. | |
| 8. Ms. Smith is a registered nurse and her arrest put her nursing license in jeopardy. Pls.'s Ex.# 40, Smith Decl., ¶ 13. | RESPONSE: The District does not dispute that Ms. Smith is a registered nurse. The District disputes the remainder of this paragraph, which improperly asserts a legal conclusion rather | "[P]ut her nursing license in jeopardy" is deemed admitted because the District did not controvert it with its own summary judgment materials. Vines, 422 F. Supp. at 1296 n.2; Rule 56(c). |

| | | |
|---|---|---|
| | than a factual allegation. Fed. R. Civ. P. 56(c)(4); Fed. R. Evidence 701. See also Waldie v. Schlesinger, 509 F.2d 508, 510 (D.C. Cir. 1974) (reversing summary judgment which was improperly based on "affidavits asserting ... conclusory opinions ... too ambiguous to be accepted as fact .... "). Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Ms. Smith has personal knowledge of this fact because she had to defend her license by going before a board at the next renewal. Smith Decl., ¶ 13.<br><br>*Waldie* is distinguishable because unlike the conclusory opinion at issue in *Waldie*, which failed to distinguish between the two key groups of women soldiers at issue, Ms. Smith presented unambiguous and clearly explained facts to support her contention that her license was in jeopardy of revocation. Smith Decl., ¶ 13. |
| **Ms. Smith's prosecution by the U.S. Attorney and the dismissal of her case** | | |
| 9. The District, through MPD, referred the case to the US Attorney's Office for prosecution. Pls.'s Ex.# 33, Haines depo, p. 57. | Undisputed. | |
| 10. At presentment on June 30, 2014, the US Attorney's Office, by complaint, charged Ms. Smith with Carrying a Pistol, in violation of then-D.C. Code § 22-4504(a). Pls.'s Ex.# 41, Smith docket, 2014 CF2 011408, 06/30/2014. | Undisputed. | |
| 11. On July 9, 2014, the USAO obtained an indictment of Ms. Smith for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code§ 7-2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code § 7-2506.01, and Ms. Smith was arraigned on those charges in | Undisputed. | |

| | | |
|---|---|---|
| Superior Court. Smith docket, Pls.'s Ex.# 41, 2014 CF2 011408, 7/9/2014. | | |
| 12. On September 29, 2014 the US Attorney's Office dismissed the indictment. Pls.'s Ex.# 40, Smith docket, 2014 CF2 011408, 9/29/204. | Undisputed. | |
| **Ms. Smith's re-prosecution by the OAG and the dismissal of her case** | | |
| 13. But, on September 12, 2014, the District of Columbia Attorney General ("OAG") filed a criminal information charging Ms. Smith with violations of D.C. Code § 7·2502.01 (possession of an unregistered firearm) and D.C. Code § 7·2506.01 (unlawful possession of unregistered ammunition). Pls.'s Ex.# 42, 2014 CDC 016129, 9/12/2014; Pls.'s Ex.# 45. (information charging both UA and UF). | Undisputed. | |
| 14. On April 21, 2015, the OAG dismissed the criminal information against Ms. Smith. Pls.'s Ex.# 41, 2014 CDC 016129, p.4. | Undisputed. | |
| **MPD's seizure and retention of Ms. Smith's pistol after her cases were dismissed** | | |
| 15. The MPD officers seized Ms. Smith's Bersa 380 worth approximately $400.00 when they arrested her on June 29, 2014. Pls.'s Ex.# 40, Smith Decl., ¶9. | Undisputed. | |
| 16. The MPD classified the property as evidence. Manigault depo., p. 23·24(all guns seized incident to firearms arrests during the Class Period classified as evidence) | Undisputed. | |
| 17. The Property Clerk still has custody of the gun. District Answer [117] admitting ¶ 143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest." | Undisputed. | |
| 18. The pistol has remained in the custody of the Property Clerk since the date of her arrest. District Answer [117] admitting , ¶143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest." | Undisputed. | |
| 19. The District has never given Ms. Smith notice about her gun or notice and a hearing to get it back. Pls.'s Ex.# 40, Smith Decl., ¶12. | Disputed and immaterial. Plaintiff had notice that her firearm was seized | "The District has never given Ms. Smith notice about her gun or notice and a |

because it was seized at the time of her arrest. See Pls.' Statement of Facts , ¶15. Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. *See Smith v. District of Columbia.*, 387 F. Supp. 3d 8, 31-32 (D.D.C. 2019). The District was not required to provide Ms. Smith notice of this state-law remedy. *See Brown v. District of Columbia.*, 115 F. Supp. 3d 56, 69-70 (D.D.C. 2015).

hearing to get it back" deemed admitted because the District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c). *Vines*, 422 F. Supp. at 1296 n.2.

Relevant to Plaintiffs' claims and District's defenses to show Plaintiffs and other owners had no way of knowing that the District had a secret procedure for returning handguns to residents of other states by Fed Ex.

Actual knowledge of a seizure is not the same as actual knowledge of a forfeiture determination hearing. *Jones v. Flowers*, 547 U.S. 220, 234 (2006); *Small v. United States*, 136 F.3d 1334, 1335 (D.C. Cir. 1998) (defendant's actual knowledge that his property was seized by the DEA did not preclude a challenge to the forfeiture of his property based on lack of notice of the forfeiture proceedings). To be sure, a person must be charged with knowledge of "published, generally available state statutes

and case law." *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999). But, a person is not charged with secret or internal administrative procedures. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 (1978); *Gates v. City of Chicago*, 623 F.3d 389, 400 (7th Cir. 2010) (property owners not charged with knowledge of procedures for return of seized property the police department actually employed which were not available in documents that are published and generally available).

A Superior Court Rule 41(g) hearing may satisfy the *hearing* component of procedural due process, but procedural due process has two components, *notice* and a hearing.

Constitutional due process provides that individuals whose property interests are at stake due to governmental actions "are entitled to be heard; and in order that they may enjoy that right they must first be notified."

|  |  | *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). The right to be heard "must be granted at a meaningful time and in a meaningful [13] manner[,]" id., and thus the "core of due process" has two parts: "the right to notice" and "a meaningful opportunity to be heard," *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998). |
|---|---|---|
| **Gerard "Rob" Cassagnol** | | |
| 20. Gerard Cassagnol was a resident of the State of Maryland at the time of his arrest. Pls.'s Ex.# 50, Cassagnol Decl., ¶1. | Undisputed. | |
| 21. [Mr. Cassagnol] had no criminal convictions prior to his arrest and his only minimal contact with the police involved traffic offenses, and he still has no arrests other than this arrest. Pls.'s Ex.# 50, Cassagnol Decl., ¶2-3. | Disputed. Mr. Cassagnol was arrested for a traffic infraction, and subsequently released with a promise to appear. See Ex. 4 (Cassagnol Transcript Excerpts) at 9:13-16. | The District concedes [Mr. Cassagnol] had no criminal convictions prior to his arrest.<br><br>Plaintiffs accepts District's formulation as to "only minimal contact with the police" but it is not substantially different from Plaintiffs'. |
| 22. At the time of his arrest in the District on October 9, 2013 Mr. Cassagnol was a full-time employee of Cox Communications as a local manager· broadband and engineering. Pls.'s Ex.# 50, Cassagnol Decl., ¶5. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not | Relevant to Plaintiffs' claims and District's defenses to show Mr. Cassagnol was a law abiding and carried handgun for self-defense. |

| | affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | |
|---|---|---|
| 23. At the time of his arrest in the District Mr. Cassagnol owned a 9 millimeter pistol which he had registered in Maryland and which he kept for self-defense. Pls.'s Ex.# 50, Cassagnol Decl., ¶7. | RESPONSE: The District does not dispute that at the time of his arrest, Mr. Cassagnol owned a 9 millimeter pistol that was registered in Maryland. Mr. Cassagnol did not substantiate his conclusory assertion that he kept the firearm for self-defense. See Ex. 4 at 25:10-26:5. | Plaintiffs' SMF is deemed admitted under *Grimes* because the SMF is "factually supported" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A) and the District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c). *Grimes*, 794 F.3d at 96-97; Vines, 422 F. Supp. at 1296 n.2. Moreover, although Plaintiffs are the movants, the District has the burden at trial (and thus at summary judgment, Rule 56, Committee Notes on Rules — 2010 Amendment) of showing that Mr. Cassagnol did not keep the pistol for self-defense defendant because people are presumed law abiding for Second Amendment purposes, *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)("*Heller I*") (ordering the District of Columbia to issue a |

| | | |
|---|---|---|
| | | license to plaintiff Heller, as long as he is "not disqualified from the exercise of Second Amendment rights"). Plaintiffs discuss the District's objections in detail in their combined Reply/ Opposition in the discussion of their Second Amendment claim under the headings, "2.   Each Named Plaintiff was law abiding;" and "3. Each Named Plaintiff with a handgun carried their handgun for self-defense." |
| **Mr. Cassagnol's arrest by the MPD** | | |
| 24. On October 9, 2013, Mr. Cassagnol drove from his work place in Northern Virginia into Northeast Washington D.C. in his employer's Cox Communications truck on his way home from work. Pls.'s Ex.# 50, Cassagnol Decl., ¶8. | RESPONSE: Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), *Grimes*, 794 F.3d at 96-97, and the District's objection is unfounded. |
| 25. Several officers pulled Mr. Cassagnol from the truck and threw him to the ground (in the road); one officer with his foot applying pressure on his neck, another officer with his foot applying pressure on his ankle, and a third officer falling, his knees into his back. Pls.'s Ex. # 50, Cassagnol Decl., ¶11. | RESPONSE: Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 |

| | law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | F.3d at 96-97, and the District's objection is unfounded.* |
|---|---|---|
| 26. The officers began to search the truck. The officers asked Mr. Cassagnol whether he had a gun in the truck and just as he had been taught Mr. Cassagnol told the officers he had his pistol in the truck. He explained that he had lawfully purchased and registered the pistol in the State of Maryland, his state of residence. Pls.'s Ex.# 50, Cassagnol Decl., ¶¶12-13-14. | RESPONSE: The District does not dispute that Mr. Cassagnol informed the officers that he had a firearm. The remaining allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Mr. Cassagnol's statement that he had lawfully purchased and registered the pistol in the State of Maryland, his state of residence establishes that Mr. Cassagnol had the gun for self-defense. |
| 27. Mr. Cassagnol cooperated fully and he told the officers he had a 9 millimeter pistol in a locked combination-lock gun safe in the bottom of a grey bin in the backseat of the truck, and that the clip was not inside the pistol. Pls.'s Ex.# 50, Cassagnol Decl., ¶14. | RESPONSE: The District does not dispute that Mr. Cassagnol informed the officers that he had a firearm. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | These facts establish that Mr. Cassagnol was within the safe-harbor, D.C. Code 22-4504.02, and that he had the gun for self-defense. |
| 28. Mr. Cassagnol gave the officers the combination to the gun safe when they requested it. Pls.'s Ex. # 50, Cassagnol Decl., | RESPONSE: Immaterial. The allegations in this | SMF deemed admitted because District did not |

| | | |
|---|---|---|
| ¶15. | paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 29. Another officer took a photograph of Mr. Cassagnol's work identification card and told Mr. Cassagnol that he intended to report the incident to Mr. Cassagnol's employer to ensure that Mr. Cassagnol got fired, and on October 22, 2013 Mr. Cassagnol was in fact fired from his job at Cox Communications. Pls.'s Ex. # 50, Cassagnol Decl.,r¶16, 17 and 24. | RESPONSE: The District does not dispute that Mr. Cassagnol was fired from Cox Communications. The remaining allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Mr. Cassagnol was fired from Cox Communications because an arresting officer reported his arrest to his employer. |
| 30. The MPD arrested Mr. Cassagnol and charged him on one count of Carrying a Pistol in violation of then·D.C. Code § 22-4504 (a)(1), Possession of An Unregistered Firearm in violation of D.C. Code § 7·2502.01 ("UF") and Unlawful Possession of Ammunition in violation of D.C. Code § 7-2506.01 ("UA"). Grabowsky Decl., ¶1. | Undisputed. | |
| 31. He spent the night in the Sixth District station before going to Superior Court the next morning. Pls.'s Ex.# 50, Cassagnol Decl., ¶20. | Undisputed. | |
| **Prosecution of Mr. Cassagnol by the US Attorney** | | |
| 32. The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57. | Undisputed. | |

| | | |
|---|---|---|
| 33. On October 10, 2013, Mr. Cassagnol was presented in the District of Columbia Superior Court on a charge of Carrying a Pistol in violation of then·D.C. Code § 22·4504(a)(l) brought by the US Attorney's office. Pls.'s Ex.# 51, Cassagnol docket, 2013 CF2 017982, p. 2. | Undisputed. | |
| 34. Mr. Cassagnol was held without bond upon the AUSA's motion in the DC Jail until October 11, 2013. Pls.'s Ex.# 51, 2013 CF2 017982, docket 10/10/2013, p. 2. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | This undisputed fact establishes that Mr. Cassagnol was wrongfully prosecuted and that his detention continued into his prosecution. |
| 35. As part of the intake process at the DC Jail Mr. Cassagnol was subjected to a humiliating and demeaning strip-search. Pls.'s Ex.# 50, Cassagnol Decl., ¶22. | Disputed and immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | This undisputed fact establishes the unconstitutional conditions of Mr. Cassagnol's detention. |
| 36. On October 11, 2013, Mr. Cassagnol was released under the supervision of the Pretrial Supervision Agency. 2013 CF2 017982, docket 10/10/2013, p. 3. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. | This undisputed fact establishes that Mr. Cassagnol was wrongfully prosecuted and that his detention continued into his prosecution. |

| | 2d at 105. | |
|---|---|---|
| 37. On October 22, 2013, Mr. Cassagnol was fired from his job at Cox Communications because of his arrest in the District of Columbia for the constitutionally protected conduct of carrying a pistol outside the home one of the officers took a photo of his work ID telling him that he intended to report the incident to his employer to ensure that he was fired. Pls.'s Ex.# 50, Cassagnol Decl., ¶16, 24. | RESPONSE: The District does not dispute that Mr. Cassagnol was fired from his job at Cox Communications. The District disputes the remainder of this paragraph, which improperly asserts a legal conclusion rather than a factual allegation, and is not based on the affiant's personal knowledge or other factual basis. Fed. R. Civ. P. 56(c)(4); Fed. R. Evidence 701; Waldie, 509 F.2d at 510; see also Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 602 (S.D.N.Y 2018) (declining to consider portions of affidavit in support of summary judgment that were "conclusory statements lacking any basis in fact or personal knowledge"); Bank of Am., NA. v. Jill P Mitchell Living Trust, 822 F. Supp. 2d 505, 517 (D. Md. 2011) ("[C]onclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment."). Additionally, the remaining allegations in this paragraph are | This is non-hearsay and a statement of intention. |

| | | |
|---|---|---|
| | not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | |
| 38. On October 23, 2013, the US Attorney's Office obtained an indictment of Mr. Cassagnol on three counts: (1) Carrying a Pistol in violation of then-D.C. Code§ 22-4504 (a) (1); (2) Possession of An Unregistered Firearm in violation of D.C. Code § 7-2502.0l; and (3) Unlawful Possession of Ammunition in violation of D.C. Code§ 7- 2506.01. Pls.'s Ex.# 51, Cassagnol docket, p. 3. | Undisputed. | |
| 39. On July 29, 2014 the US Attorney's Office dismissed the indictment against Mr. Cassagnol without prejudice. 2013 CF2 017982, docket 7/29/2014, p. 7. | Undisputed. | |
| Re-prosecution of Mr. Cassagnol by the OAG | | |
| 40. That same day, July 29, 2014, the OAG filed a criminal information charging Mr. Cassagnol with Possession of An Unregistered Firearm in violation; of D.C. Code § 7-2502.01 and Unlawful Possession of Ammunition in violation of D.C. Code§ 7-2506.01 and the Superior Court Clerk opened a new case with a new docket number, 2014 CTF 13231. Pls.'s Ex.# 52, Cassognol docket, 2014 CTF 013231, p. 2. | Undisputed. | |
| 41. On April 20, 2015 the Office of the OAG nolle'd the case against Mr. Cassagnol. Pls.'s Ex.# 52, Cassagnol docket, 2014 CTF 013231, p. 5. | Undisputed. | |
| Seizure and unlawful retention of Mr. Casagnol's property by the MPD | | |
| 42. When the MPD arrested Mr. Cassagnol on October 9, 2013 they also seized from him a 9 mm pistol, make KIMBER, model DP51, worth approximately $500.00, and some | Undisputed. | |

| | | |
|---|---|---|
| ammunition. Pls.'s Ex. # 50, Cassagnol Decl., 25. | | |
| 43. The MPD classified the property as evidence. Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence). | Undisputed. | |
| 44. The Property Clerk still has custody of the gun. Grabowsky Decl., 9. | Undisputed. | |
| 45. On July 22, 2015, Mr. Cassagnol called the Evidence Control Branch of the Metropolitan Police Department and he spoke to Technician Ferguson of the Evidence Control Branch, and requested the return of his property. Pls.'s Ex.# 50, Cassagnol Decl., 28. | Undisputed. | |
| 46. Technician Ferguson informed Mr. Cassagnol that he would have to contact his lawyer if he wanted his property back. Pls.'s Ex.# 50, Cassagnol Decl., ¶29. | Undisputed. | |
| 47. Technician Ferguson further stated that Mr. Cassagnol's lawyer would have to contact the prosecutor and request that the prosecutor fill out a PD 81C form to get his property returned. Pls.'s Ex.# 50, Cassagnol Decl., ¶30. | Undisputed. | |
| 48. The Property Clerk continues to hold his gun and other property. Pls.'s Ex.# 50, Cassagnol Decl., ¶31. | Undisputed. | |
| 49. The District has never given him notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of his pistol. Pls.'s Ex. # 50, Cassagnol Decl., ¶32. | Disputed. Plaintiff had notice that his firearm was seized because it was seized at the time of his arrest. See Pls.' Statement of Facts ¶42. Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." | This SMF is deemed admitted for the reasons set forth in response to the District's objection to SMF # 19 (District has never given Ms. Smith notice about her gun or notice and a hearing to get it back). |

| | | |
|---|---|---|
| | Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. See Smith, 387 F. Supp. 3d at 31-32. The District was not required to provide Mr. Cassagnol notice of this state-law remedy. See Brown, 115 F. Supp. 3d at 69-70. | |
| **Frederick "Cornelius" Rouse Arrest by MPD** | | |
| 50. Frederick "Cornelius" Rouse was a resident of the State of Maryland at the time of his arrest on August 30, 2014. Pls.'s Ex.# 64, MPD arrest report, p. 7 | Undisputed. | |
| 51. Prior to his arrest in the District on August 30, 2014 he had no adult criminal convictions. Pls.'s Ex.# 67, Rouse depo. p., 9. | Undisputed. | |
| 52. He served his country in the United States Army for about four years. Pls.'s Ex.# 67, Rouse depo. p., 46. He received an Honorable Discharge in 2007 with the rank of E-4 Corporal. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Goes to whether law-abiding and self-defense.<br><br>SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 53. At the time of his arrest, he held a Top | Immaterial. The | Goes to whether law- |

| | | |
|---|---|---|
| Secret Security Clearance. Pls.'s Ex.# 67, Rouse depo. p., 29. | allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | abiding and self-defense.<br><br>SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 54. As a result of his arrest in the District his Top Secret Security Clearance was placed "under review" and downgraded, and it remained under review for some period of time after his case was resolved while the Office of Personnel Management completed its review of his top secret clearance triggered by his arrest. Pls.'s Ex.# 67, Rouse depo. p., 29, 38-39. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | |
| Mr. Rouse's arrest by the MPD | | |
| 55. On August 30, 2014, Mr. Rouse was staying in the District of Columbia at the Renaissance Washington, DC Downtown Hotel ("Renaissance Hotel") at 999 9th Street, Northwest, for a social event. Pls.'s Ex.# 64, Rouse arrest report, p. 5. | Undisputed. | |
| 56. Reportedly hotel staff notified the MPD that Mr. Rouse had two pistols in his room. Pls.'s Ex.# 64, Rouse arrest report, p. 5. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." | Goes to whether law-abiding and self-defense.<br><br>SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 |

| | | |
|---|---|---|
| | Lindell, 714 F. Supp. 2d at 105. | F.3d at 96-97, and the District's objection is unfounded.* |
| 57. The two handguns belonged to Mr. Rouse and he had lawfully purchased and registered them in the State of Maryland, his place of residence and he kept for self-defense. Pls.'s Ex.# 67, Rouse depo. p., 20-21. | The District does not dispute that Mr. Rouse owned the two handguns at issue. The remainder of this paragraph is not substantiated by the cited exhibit, and improperly asserts a legal conclusion rather than a factual allegation. Fed. R. Evidence 701; Waldie, 509 F.2d at 510. | The SMF including "and he kept for self-defense" is deemed admitted for the reasons set forth in response to the District's objection to SMF # 23 (Mr. Cassagnol carried his hand gun in self-defense). |
| 58. The pistols were a Glock 33 Pistol worth approximately $550.00 and a FN Five-Seven Pistol worth approximately $1,200.00. Mr. Rouse also had a TLR2 Scope worth approximately $300.00. Pls.'s Ex.# 67, Rouse depo. p., 11-12. | Undisputed. | |
| 59. Mr. Rouse freely admitted to the officers that the guns in the hotel room belonged to him and were lawfully registered in the State of Maryland. Pls.'s Ex.# 64, Rouse arrest report, p. 5. | Undisputed. | |
| 60. Mr. Rouse carried the guns and ammo for self-defense because he carried large amounts of cash as an events promoter. Pls.'s Ex.# 67, Rouse depo. p., 20-21, 22-23. | Undisputed. | |
| Prosecution of Mr. Rouse by the OAG | | |
| 61. On September 1, 2014, the OAG filed a Criminal Information charging Mr. Rouse with Possession of an Unregistered Firearm in violation of D.C. Code§ 7- 2502.01 and Unlawful Possession of Ammunition in violation of D.C. Code § 7- 2506.01. Pls.'s Ex.# 61, Rouse OAG docket, 2014 CDC 015375 docket, p. 1. | Undisputed. | |
| 62. On April 22, 2015 the OAG nolle'd the charges against Mr. Rouse. Pls.'s Ex.# 61, Rouse | Undisputed. | |

| | | |
|---|---|---|
| 2014 CDC 015375 docket, p. 3. | | |

**MPD seized Mr. Rouse's pistols and the Property Clerk retained them for more [than] two years after the OAG dismissed the case**

| | | |
|---|---|---|
| 63. The MPD seized Mr. Rouse's pistols and the scope for evidence when they arrested him on August 30, 2014. Pls.'s Ex. # 65 (PD 81 classifying guns as evidence); Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence). | Undisputed. | |
| 64. Mr. Rouse sent a letter by certified mail to the Property Clerk on August 4, 2015 asking for his pistol back but the Property Clerk did not return his pistols and scope to him in response to the letter. Pls.'s Ex. # 62, copy of letter; Grabowsky Decl., ¶9. | Undisputed. | |
| 65. Mr. Rouse was finally able to obtain the return of the pistols and the scope in July 2017. Grabowsky Decl., ¶9. | Undisputed. | |

**Delontay Davis Mr. Davis's arrest by the MPD**

| | | |
|---|---|---|
| 66. On about March 23, 2014, Mr. Delontay Davis, a student, and at that time a resident of Virginia, was arrested by the MPD in the District for possessing a pistol which he kept for self-defense. Pls.'s Ex.# 70, Davis Decl.,r¶2-3; 5. | The District does not dispute that Mr. Davis was a Virginia resident and was arrested on March 23, 2014 in the District by MPD for possessing a firearm. Mr. Davis did not substantiate his conclusory assertion that he kept the firearm for self-defense. See Pls.' Ex. 70 ¶4. | The SMF including "which he kept for self-defense" is deemed admitted for the reasons set forth in response to the District's objection to SMF # 23 (Mr. Cassagnol carried his hand gun in self-defense). |
| 67. At that time Mr. Davis's only conviction was a traffic offense, on a reckless driving offense. Pls.'s Ex. # 70, Davis Decl., ¶2; Pls.'s Ex.# 76, Davis PreTrial Services bail report (filed under seal). | Undisputed. | |
| 68. Mr. Davis lawfully purchased the pistol in Virginia for self-defense. The Commonwealth of Virginia does not require any license or registration to "open" carry a pistol outside the | Disputed. This paragraph improperly asserts a legal conclusion rather than | |

| | | |
|---|---|---|
| home. Pls.'s Ex.# 70, Davis Decl., ¶4. | a factual allegation. Fed. R. Civ. P. 56(c)(l), (4); Fed. R. Evidence 701; Waldie, 509 F.2d at 510. | |
| 69. Mr. Davis' charges in Cobalt, the MPD's database, were UA and D.C. Code § 4504(a)(2), a felon-in-possession charge, even though his Pre-Trial Services report indicates that his only conviction was a traffic offense. Grabowsky Decl., ¶1; Pls.'s Ex.# 76, Davis Pre-Trial Services bail report (filed under seal). | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. Only the U.S. Attorney's Office can prosecute felonies in the District. See Smith, 387 F. Supp. 3d at 14 (citing D.C. Code§ 23-101). | |
| 70. Mr. Davis was held in Central Cellblock overnight and presented in Superior Court the next day. Pls.'s Ex.# 70, Davis Decl., ¶6. | Undisputed. | |
| Mr. Davis's detention, prosecution by the U.S. Attorney and the dismissal of his case by the U.S. Attorney | | |
| 71. The District through the MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57. | Undisputed. | |
| 72. At presentment on 3/24/2014, the US Attorney's Office, by complaint, charged Mr. Davis with Carrying a Pistol, in violation of then-D.C. Code§ 22-4504(a). Pls.'s Ex.# 71, 2014 CF2 005034 docket, p. 1. | Undisputed. | |
| 73. Mr. Davis was preventively detained pursuant to D.C. Code§ 23-1322(b) in the DC Jail for four nights. Pls.'s Ex.# 71, 2014 CF2 005034 docket, p. 2. | Undisputed. | |
| 74. As part of the detention Mr. Davis was subjected to a humiliating stripsearch during the | Immaterial. The allegations in this | SMF deemed admitted because |

| | | |
|---|---|---|
| intake process at the DC Jail. Pls.'s Ex.# 70, Davis Decl., ¶8. | paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 75. On 3/27/2014 the Superior Court judicial officer ordered Mr. Davis released but the officer ordered Mr. Davis to stay away from the area where he was arrested and further ordered him not to possess weapons. Pls.'s Ex.# 71, 2014 CF2 005034 docket, p. 2. | Undisputed. | |
| 76. On 5/13/2014, the USAO filed an indictment of Mr. Davis for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7- 2502.01, and Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code§ 7-2506.01. Pls.'s Ex.# 71, 2014 CF2 005034 docket, p. 2. | Undisputed. | |
| 77. The US Attorney's Office dismissed the indictment on 1/16/2015. Pls.'s Ex.# 71, 2014 CF2 005034 docket, p. 4. | Undisputed. | |
| **Re-prosecution and overdetention of Mr. Davis by the OAG** | | |
| 78. Immediately the OAG filed an information on 1/16/2015 charging Mr. Davis with UF and UA. Pls.'s Ex.# 72, Davis 2015 CDC 000614 docket, p. 1. | Undisputed. | |
| 79. On 3/16/2015 the OAG dismissed the criminal information against Mr. Davis. Pls.'s Ex.# 72, Davis 2015 CDC 000614 docket, p. 3. | Undisputed. | |
| 80. The MPD officers seized Mr. Davis's Bersa 380 pistol worth approximately $400.00 when they arrested him on 3/23/2014. Pls.'s Ex. # 70, Davis Decl., ¶11. | Undisputed. | |
| 81. The MPD classified the pistol as evidence. Manigault depo., p. 23-24 (all guns seized incident to firearms arrests during the Class Period classified as evidence). | Undisputed. | |

| | | |
|---|---|---|
| 82. The Property Clerk still has custody of the pistol. Grabowsky Decl., ¶9. | Undisputed. | |
| 83. The District has never given Mr. Davis notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of the pistol. Pls.'s Ex.# 70, Davis Decl., ¶14. | Plaintiff had notice that his firearm was seized because it was seized at the time of his arrest. See Pls.' Statement of Facts ¶80. Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. See Smith, 387 F. Supp. 3d at 31-32. The District was not required to provide Mr. Davis notice of this state-law remedy. See Brown, 115 F. Supp. 3d at 69-70. | This SMF is deemed admitted for the reasons set forth in response to the District's objection to SMF # 19 (District has never given Ms. Smith notice about her gun or notice and a hearing to get it back). |
| 83. The District has never given Mr. Davis notice and a hearing at which he could challenge the District's retention of his pistol or the District could justify its continued retention of the pistol. Pls.'s Ex.# 70, Davis Decl., ¶14. | Disputed. Plaintiff had notice that his firearm was seized because it was seized at the time of his arrest. See Pls.' Statement of Facts ¶80. Additionally, the | This SMF is deemed admitted for the reasons set forth in response to the District's objection to SMF # 19 (District has never given Ms. Smith |

| | allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. See Smith, 387 F. Supp. 3d at 31-32. The District was not required to provide Mr. Davis notice of this state-law remedy. See Brown, 115 F. Supp. 3d at 69-70. | notice about her gun or notice and a hearing to get it back). |
|---|---|---|
| **Kimberly Buffaloe Ms. Buffaloe's arrest by the MPD** | | |
| 84. On about July 21, 2012, Ms. Kimberly Buffaloe was sitting in a parked car on the passenger side owned and operated by her then-boyfriend in the District of Columbia when several MPD officers approached the car. Pls.'s Ex.# 80, Buffaloe Decl., ¶1. | Undisputed. | |
| 85. Ms. Buffaloe was then a 22 year-old stylist and hair dresser and young mother with no criminal record and then a resident of the District of Columbia. Pls.'s Ex.# 80, Buffaloe Decl., ¶2. | Undisputed. | |
| 86. Unbeknownst to Ms. Buffaloe, her then-boyfriend was carrying an unregistered, loaded pistol without a license and, again unbeknownst | Immaterial. The allegations in this paragraph are not | This SMF is Relevant to Plaintiffs' claims and District's defenses |

| | | |
|---|---|---|
| to Ms. Buffaloe, the then-boyfriend slid the loaded gun onto her side of the floorboards as the police approached the car. Pls.'s Ex.# 80, Buffaloe Decl., ¶3. | material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | to show she did not have a gun.<br><br>SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 87. The MPD charges m Cobalt were National Firearms Act and UF. Grabowsky Decl., ¶1. | Undisputed. | |
| 88. Ms. Buffaloe was held in Central Cellblock overnight and presented in Superior Court. Pls.'s Ex.# 80, Buffaloe Decl., ¶5. | Undisputed. | |
| **Ms. Buffaloe's prosecution by the U.S. Attorney and the dismissal of her case** | | |
| 89. The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57. | Undisputed. | |
| 90. At presentment on July 21, 2012, the US Attorney's Office, by complaint, charged Ms. Buffaloe with Carrying a Pistol, in violation of then-D.C. Code § 22- 4504(a). Pls.'s Ex.# 81, 2012 CF2 012657 docket, p. 1-2. | Disputed. On July 21, 2012, Ms. Buffaloe was charged with Presence in a Motor Vehicle Containing a Firearm. On July 25, 2012, Ms. Buffaloe was charged with Carrying a Pistol, among other charges. See Pls.' Ex. 81 at 1-2. | This dispute is not on a material issue. |
| 91. At presentment on July 21, 2012, the Superior Court judge ordered Ms. Buffaloe held in a halfway house. After 10 days on July 31, 2021 she was released into a high intensity supervision program ("HISP") where she had to wear an ankle monitor and stay home unless she received permission to go out. Pls.'s Ex.# 81, 2012 CF2 012657 docket, p. 1-2. | Disputed and immaterial. The District does not dispute that on July 21, 2012, Ms. Buffaloe was released to a halfway house and that on July 31, 2012 Ms. Buffaloe was released into a high intensity | |

| | | |
|---|---|---|
| | supervision program. The remainder of this paragraph is not substantiated by the cited exhibit. Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | |
| 92. Ms. Buffaloe was on HISP ankle monitoring and home confinement until 12/11/2012. Pls.'s Ex.# 81, 2012 CF2 012657 docket, p. 4. | Disputed and immaterial. This paragraph is not substantiated by the cited exhibit. Additionally, the allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | This SMF is relevant to Plaintiffs' claims and District's defenses to show the length and intensity of her detention. |
| 93. Ms. Buffaloe's daughter died during this period and she had to wear the ankle monitor at the wake and the funeral which caused her embarrassment and emotional distress. Pls.'s Ex.# 80, Buffaloe Decl., ¶8. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment | |

| | | |
|---|---|---|
| | determination." Lindell, 714 F. Supp. 2d at 105. | |
| 94. On July 25, 2012, the USAO obtained an indictment of Ms. Buffaloe for Carrying a Pistol, Possession of An Unregistered Firearm ("UF"), in violation of D.C. Code § 7-2502.01, Unlawful Possession of Ammunition ("UA"), in violation of D.C. Code§ 7-2506.01, and D.C. Code§ 22-2511, Presence in a motor vehicle containing a firearm. Pls.'s Ex.# 81, 2012 CF2 012657 docket, p. 2. | Undisputed. | |
| 95. On 3/19/2013 the government dismissed all charges against Ms. Buffaloe. Pls.'s Ex.# 81, 2012 CF2 012657 docket, p. 4. | Undisputed. | |
| **Carl Atkinson Mr. Atkinson's arrest by the MPD** | | |
| 96. On about January 28, 2014 Mr. Carl Atkinson was arrested by the MPD after the MPD stopped his car on a pretext. Pls.'s Ex.# 90A, original Atkinson Decl., ¶21. | The District does not dispute that on January 28, 2014 Mr. Atkinson was arrested by MPD after MPD stopped his car. The District disputes the remainder of this paragraph, which improperly asserts a legal conclusion rather than a factual allegation, and is not based on the affiant's personal knowledge or other factual basis. Fed. R. Civ. P. 56(c)(4); Fed. R. Evidence 701; Waldie, 509 F.2d at 510; see also Leeber Realty LLC, 316 F. Supp. 3d at 602; Jill P. Mitchell, 822 F. Supp. 2d at 517. | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), *Grimes*, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 97. He was then a resident of the District of Columbia. Pls.'s Ex.# 95, Pre- Trial Services bail report, p. 1. | Undisputed. | |

| | | |
|---|---|---|
| 98. He had a prior arrest for marijuana possession but no convictions. Pls.'s Ex. # 95, Pre-Trial Services bail report, p. 3. | Undisputed. | |
| 99. The officers asked for consent to search the car but Mr. Atkinson refused to consent. Pls.'s Ex.# 90A, Atkinson Decl. (dated 12/12/2014), ¶22. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 100. The officers searched the car anyway and they claimed to find a loaded pistol in the back area of the car. Pls.'s Ex.# 90A, Atkinson Decl., ¶22. | The District does not dispute that officers found a loaded pistol in Mr. Atkinson's vehicle. | Deemed admitted under *Grimes*. Mr. Atkinson does not contend the MPD found a gun, only that they "claimed" they found a gun. |
| 101. The MPD officers arrested Mr. Atkinson for UF and UA. Grabowsky Decl., ¶1. | Undisputed. | |
| 102. Mr. Atkinson was held overnight and presented in Superior Court the next day. Pls.'s Ex.# 91, 2014 CF2 001702 docket, p. 1-2; Grabowsky Decl., ¶1. | Undisputed. | |
| **Mr. Atkinson's prosecution by the U.S. Attorney and the dismissal of his case** | | |
| 103. The District through MPD referred the case to the US Attorney's Office for prosecution. Haines depo, p. 57. | Undisputed. | |
| 104. At presentment on January 29, 2014, the US Attorney's Office, by complaint, charged Mr. Atkinson with Carrying a Pistol, in violation of then·D.C. Code§ 22·4504(a). Pls.'s Ex.# 91, 2014 CF2 001702 docket, p. 1. | Undisputed. | |
| 105. On 4/28/2014, the USAO dismissed the case. Pls.'s Ex.# 91, 2014 CF2 001702 docket, p. 2. | Undisputed. | |
| **Warrant to search Mr. Atkinson's parents' home** | | |

| | | |
|---|---|---|
| 106. On 1/29/2014 the MPD filed for a warrant to search Mr. Atkinson's parents' home where he was living based on his arrest on a gun charge. Pls.'s Ex.# 93, 2014 CRW 000429 docket, p. 1. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Relevant to Plaintiffs' claims and District's defenses to show Mr. Atkinson law abiding. SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded. |
| 107. The MPD searched Mr. Atkinson's parents' home where he was living based on his arrest on a gun charge but the search did not find anything. Pls.'s Ex.# 90A, original Atkinson Decl., ¶49; Pls.'s Ex.# 90, summary judgment Atkinson Decl., ¶10-11. | Immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. | Relevant to Plaintiffs' claims and District's defenses to show Mr. Atkinson law abiding. SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| **Facts regarding effect of District's gun laws during the Class Period** | | |
| 108. "At the time of plaintiffs' arrests and seizures, no person - resident or non-resident - could carry a handgun or ammunition outside the home." "Defendant's Statement of the Bases for its Defenses," Meet and Confer Statement [73], p. 5. | Undisputed. | |
| 109. During the Class Period the District maintained a custom, practice and policy of refusing to entertain gun registration applications by individuals who did not reside in the District of Columbia. Palmer v. District of Columbia, 59 F. Supp. 3d 173, 176 (D.D.C. 2014); Pls.'s Ex.# 35, Plaintiffs' SMF [5-3] # 9, | Undisputed. | |

| | | |
|---|---|---|
| Palmer v. D. C., 09- CV-1482-HHK[/FJS]; Pls.'s Ex.# 36, Defendants' Opposition to Plaintiffs' Separate Statement of Undisputed Material Facts [6-3], # 9, Palmer v. D.C., 09-CV-1482-HHK[/FJS] (The District does not dispute paragraph 9 of the Plaintiffs SMF # 9). | | |
| 110. The District required gun registration applicants to submit "[p]roof of residency in the District of Columbia (e.g., a valid DC operator's permit, DC vehicle registration card, lease agreement for a residence in the District, the deed to your home or other legal document showing DC residency." Pls.'s Ex.# 35, Plaintiffs' SMF [5-3] # 4, Palmer v. D.C., 09-CV-1482-HHK[/FJS]; Pls.'s Ex. # 36, Defendants' Opposition to Plaintiffs' Separate Statement of Undisputed Material Facts [6-3], # 4, Palmer v. D.C., 09-CV-1482-HHK[/FJS] (The District does not dispute paragraph 4 of the Plaintiffs SMF # 9); Palmer v. District of Columbia, 59 F. Supp. 3d 173, 176 (D.D.C. 2014). | Undisputed. | |
| 111. The District's gun registration requirements in force during the Class Period discriminated against non-residents as to gun ownership because the registration requirement prevented non· residents from even owning a gun in the District. D.C. Code §§ 7·2502.01 (registration); Smith v. District of Columbia, 387 F. Supp. 3d 8, 28 (D.D.C. 2019). | The District does not dispute that its registration requirement prevented non-residents from applying for a license during the Class Period; the District disputes the remainder of this paragraph, which improperly asserts a legal conclusion rather than a factual allegation. Fed. R. Civ. P. 56(c)(l). | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 112. The three code sections of D.C. Code § 7·2502.01, § 7·2506.01 and§ 22· 4504 and D.C. Code§ 22·4504(a) were the moving force behind most arrests pursuant to the District's gun laws during the Class Period. Grabowsky Decl., ¶3. | The District does not dispute that plaintiffs were arrested and charged with firearms-related offenses; the District disputes the remainder of this paragraph, which improperly asserts a | SMF # 112 is deemed admitted, *Grimes v. District of Columbia*, 794 F.3d 83, 96-97 (2015) ("deemed admitted" rules apply to facts in party's statement material facts despite Fed. R. |

| | legal conclusion rather than a factual allegation. Fed. R. Civ. P. 56(c)(4); Fed. R. Evidence 701, 702; Waldie, 509 F.2d at 510 | Civ. P. 56(a); *Vines v. Hodges*, 422 F. Supp. 1292, 1296 n.2 (1976), so there is no genuine dispute. |
|---|---|---|
| | | Plaintiffs' SMF is "factually supported" by "citing to particular parts of materials in the record," the Grabowsky Decl., ¶3, Fed. R. Civ. P. 56(c)(1)(A). |
| | | The District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c). *Vines*, 422 F. Supp. at 1296 n.2. |
| | | The issue of "moving force" is obviously a fact issue rather than a legal conclusion because the issue is usually a jury question. *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 285 (D.D.C. 2011). |
| | | Plaintiffs discuss the District's objections and the other issues in the sections on moving force in the Reply/ Opposition under the discussion of Claim 1, the Second Amendment claim. |
| 113. During the Class Period the policy and practice of the District was for the MPD to | Disputed. The assertion in this | SMF deemed admitted because |

| | | |
|---|---|---|
| arrest persons suspected of violating the District's gun laws on D.C. Code § 4504(a), CPWL/CP. Haines depo, p. 33. | paragraph is not substantiated by the cited exhibit. See Pls.' Ex. 33 at 32:22-33:15 (referring to MPD policy and practice for officers encountering persons "and the person was in violation of the CPWL statute"). | District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 114. Reserved. | This paragraph does not contain a statement of fact. Fed. R. Civ. P. 56(c)(l)(a); Local Civ. R. 7(h)(l). | |
| 115. Reserved. | RESPONSE: This paragraph does not contain a statement of fact. Fed. R. Civ. P. 56(c)(l)(a); Local Civ. R. 7(h)(l). | |
| 116. Virtually all arrests of persons for violations of the District's gun laws are booked and processed by MPD regard of which agency makes the arrest. Haines depo, pp. 105-06. | Disputed. The District does not dispute that most of the law enforcement agencies in the District took arrestees to MPD for booking during the Class Period, but the allegations in this paragraph are not substantiated by the cited evidence. See Pls.' Ex. 33 at 105:17-107:2. | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 117. U.S. Park Police and U.S. Capitol Police have their own facilities and booked their own arrests for violations of the District of Columbia gun laws. Haines depo, pp. 105-06. | The District does not dispute that the U.S. Park Police and U.S. Capitol Police have their own facilities and booked their own arrests for violations of the District of Columbia gun laws. | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is |

| | | |
|---|---|---|
| | | unfounded.* |
| 118. During the Class Period MPD arresting officers were not required by any policy or practice to run criminal history checks on persons arrested on gun charges during the Class Period. Haines depo, p. 42. | Undisputed. | |
| 119. During the Class Period there was no District policy which required either the arresting officer or cellblock technician to do criminal history background checks to see if an arrestee arrested on gun charges during the Class Period fell into one of the categories of D.C. Code § 4503(a)(l) to (a)(6) or any of the District's other gun enhancement statutes. Haines depo, p. 54. | Undisputed. | |
| | | |
| 120. During the Class Period neither arresting officers nor cellblock technicians who booked arrestees followed a practice of running to do criminal history background checks on persons arrested on gun charges. Haines depo, p. 54. | Undisputed. | |
| 121. Even if somehow an arresting officer were made aware by another person such as a cellblock technician that an arrestee arrested on CPWL/ UF/ UA fell into one of the restricted categories of D.C. Code§ 4503(a)(l) to (a)(6) it was entirely discretionary within the arresting officer to add, or not to add, the charge. Haines depo, p. 50. | Undisputed. | |
| 122. If arresting officer found out that an arrestee arrested for CPWL/ CP fell into one of the restricted categories under D.C. Code § 4503(a)(l) to (a)(6) the officer had no obligation to charge under D.C. Code§ 4503(a)(l). Haines depo, p. 66. | Undisputed. | |
| 123. The District's policy was for the MPD to refer every arrest on gun charges to the prosecutor unless the arrestee were released under the Detention Journal (arrest lacked probable cause). Haines depo, p. 67. | Disputed. The District's policy for arrests for Carrying a Pistol Without License was to either release the arrestee or refer them to the prosecutor. See Pls.' | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), *Grimes*, 794 |

| | Ex. 33 at 65:19-66:3. | F.3d at 96-97, and the District's objection is unfounded. |
|---|---|---|
| 124. Deciding which gun offenses to charge an arrestee with was within the discretion of the arresting officer. Haines depo, p. 32-33. | Disputed in part. The final determination of all appropriate charges is made by the prosecutor. See Pls.' Ex. 33 at 52-55. | This objection is non-responsive. Plaintiffs SMF avers what the arresting officers did and their discretion to bring charges. The arresting officers' charging discretion is the moving force of at least arrestees' arrests and detentions.<br><br>The prosecutors' charges came after the arrests and initial detentions so it was not the moving force of the arrests and initial detentions.<br><br>The D.C. Circuit has held that an even that occurs after plaintiff's injury cannot be the cause of plaintiff's injury. *Blue v. District of Columbia*, 811 F.3d 14, 19 (2015)(rejected plaintiff's failure-to-fire claim because District's decision to retain teacher after the investigation (which began after sexual relationship with student) could not have caused the specific injury that plaintiff relied upon as the basis for her section 1983 claim—the sexual relationship |

| | | with teacher). |
|---|---|---|
| **Property claim** | | |
| 125. The Property Clerk is the custodian of all property seized by or coming into the possession of the Metropolitan Police Department. D.C. Code§ 5-119.01, et seq. (the Property Clerk statute); DCMR § Section 6-A805.l. | Undisputed. | |
| 126. The Metropolitan Police Department ("MPD") classifies property coming into the possession of the MPD generally into 13 categories including found, evidence, hold for civil forfeiture, and prisoner's property, based on written directives promulgated by the MPD. Recording, Handling and Disposition of Property Coming into the Custody of the Department, G0-601.01, p.3 (property classifications listed at p. 6 (a. to m.), e.g., evidence, found, civil forfeiture, prisoner's property). MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, MPD General Order 601.1, p.3 (property classifications listed at p. 6 ("a." to "m."), p. 26 (III,F,1 to 4). https://go.mpdconline.com/GO/G0_601_01.pdf | Undisputed. | |
| 127. During the Class Period the MPD seized handguns and evidence from persons arrested on District gun offenses. Manigault depo., p. 13; 23-24. | Undisputed. | |
| 128. The MPD classified handguns and ammunition seized in connection with District gun offenses as evidence. Manigault depo., p. 23-24. | Undisputed. | |
| 129. The MPD classified all handguns coming into the possession of the department as evidence. Pls.'s Ex. # 32, MPD "Teletype," TT-80-31-13_Carrying-aPistol_ 080913. | Disputed. The allegation in this paragraph is not substantiated by the cited exhibit. MPD policy was for firearms recovered in outdoor locations to be classified as evidence. | The District concedes that "[a]ll firearms recovered in outdoor locations, whether or not an arrest is made, must be classified as 'Evidence'." |

| | See Pls.' Ex. 32 at *1. | |
|---|---|---|
| 130. The MPD decided what property to seize as evidence, and the MPD, not the U.S. Attorney, made the initial classification of property as evidence according to criteria set forth in written directives of the MPD which are District of Columbia policy. MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, MPD General Order 601.1, p.3 (property classifications listed at p. 6 ("a." to "m."), p. 26 (III,F,1 to 4). | Undisputed. | |
| 131. The U.S. Attorney confirms that the procedure for release of seized property held pursuant to D.C. Code § 5-119.06(d) (Property Clerk statute) is as follows: the MPD officer "makes the decision to release the seized property," and then presents a Form 81-C to a supervisor at the USAO to sign "indicating that the USAODC has no objection to that release and that said property is not needed to be retained as evidence." Avila v. Dailey, 2017 U.S. Dist. LEXIS 47596, *8 (D.D.C. Mar. 30, 2017); P. Ex. 31, Giovanneli Decl.) ¶¶ 3-7. 66. The U.S. Attorney's determination on whether to object is "handled on a case by case basis." (P. Ex. 31, Giovanneli Decl.) ¶¶ 3-7). | The allegation in this paragraph is not substantiated by the cited exhibit. See Pls.' Ex. 31 (Giovanneli Decl.) ¶ 3a ("When MPD makes the decision to release seized property, they will present an MPD Form 81c to a supervisor in our office to sign indicating that the USAO-DC has no objection to that release and that said property is not needed to be retained as evidence."). | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded. |

132. Named Plaintiffs' guns seized by MPD:

The following chart shows Named plaintiffs from whom the District seized guns as evidence, the dates the U.S. Attorney dismissed their cases, and he date the District returned their guns (if ever):

| Named Plaintiffs | Date U.S. Attorney / OAG indictment dismissed | Date gun returned |
|---|---|---|

| Ms. Smith | September 29, 2014<br><br>Pls.'s Ex. # 41, Smith U.S. Attorney docket, 2014 CF2 011408 | Never[1] |
| --- | --- | --- |
| Mr. Cassagnol | July 29, 2014<br><br>Pls.'s Ex. # 51, 2013 CF2 017982 | Never |
| Mr. Rouse | April 22, 2015<br><br>OAG docket, 2014 CDC 015375 docket, p. 3 | July 28, 2017 |
| Mr. Davis | 1/16/2015<br><br>Pls.'s Ex. # 71, 2014 CF2 005034 docket | Never<br><br>Pls.'s Ex. # 13 |
| Ms. Buffaloe | No gun | No gun |
| Mr. Atkinson | No gun | No gun |

RESPONSE: Disputed, in part. The date of the return of Mr. Rouse's gun is not substantiated by citation to record evidence. Fed. R. Civ. P. 56(c)(l)(a); Local Civ. R. 7(h)(l).

RESPONSE

The burden is on the District in this Fourth Amendment claim to show that it returned the hand gun to Mr. Rouse.

---

[1] District Answer [117] admitting ¶ 143 in the Third Amended Complaint, "[Ms. Smith's] pistol has remained in the custody of the Property Clerk since the date of her arrest."

| | | |
|---|---|---|
| 133. The MPD classify guns seized incident to arrest as evidence upon seizure on the PD 81 (property record). Manigault depo., p. 20, 23-24; MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, G0-601.01, p.3 (property classifications listed at p. 6 ("a." to "m."). https://go.mpdconline.com/GO/G0_601_01.pdf. | Undisputed. | |
| 134. The ECB would not release a gun from evidence without a PD 81-C from the prosecuting authority, Manigault depo., p. 23, U.S. Attorney or OAG. | Undisputed. | |
| 135. The U.S. Attorney stopped prosecuting violations under D.C. Code § 4504(a) in 2014. SMF # 1. RESPONSE: This allegation is not substantiated by citation to record evidence. Fed. R. Civ. P. 56(c)(l)(a); Local Civ. R. 7(h)(l). | Undisputed. | |
| 135. The U.S. Attorney stopped prosecuting violations under D.C. Code § 4504(a) in 2014. SMF # 1. | This allegation is not substantiated by citation to record evidence. Fed. R. Civ. P. 56(c)(l)(a); Local Civ. R. 7(h)(l). | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 136. The MPD General Orders provide for the officer in charge of the gun as evidence to get a signed PD 81-C from the USAO handling the case when the case is dismissed. MPD General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department, G0-601.01, p. 26 (III,F,4). https://go.mpdconline.com/GO/G0_601_01.pdf. RESPONSE: Undisputed. | Undisputed. | |
| 137. The District did not send notice to gun owners telling them when or if they could retrieve their guns. Manigault depo., p. 39. | Disputed and immaterial. The allegations in this paragraph are not material because they | Relevant to Plaintiffs' claim to show Plaintiffs had no knowledge of the District's secret |

| | | |
|---|---|---|
| | cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. See Smith, 387 F. Supp. 3d at 31-32. The District was not required to provide plaintiffs notice of this state-law remedy. See Brown, 115 F. Supp. 3d at 69-70. Additionally, this assertion is not substantiated by the cited exhibit. See Pls.' Ex. 34 at 41:6-8 ('I'm not going to say that they didn't ever send letters to anybody whose gun was taken who wasn't supposed to have it."). | procedures allowing some out of state owners to arrange for return of their handguns by Fed Ex. The side by side comparison of the sentence the District cherry picks from Lt. Manigault's response with the entire response shows the text supports the SMF. Also, p. 41 of Lt. Manigault's deposition that the District did not cite disproves the District's objection that the District did not send leterrs. |
| District's cites to Lt. Manigault's deposition transcript, **Pls.' Ex. 34 at 41:6-8:** | Entire passage from Lt. Manigault's deposition transcript, pp. 41-42 | |
| **'I'm not going to say that they didn't ever send letters to anybody whose gun was taken who wasn't supposed to have it."**. | I'm not going to say that they didn't 7 ever send a letter to anybody whose gun was taken 8 who wasn't supposed to have it. **But to my 9** | |

| | |
|---|---|
| | knowledge when I got here, I don't remember - - I 10 don't recall a lot of letters being sent for 11 people to come and get their weapon. 12 |
| | Q Well, when you say letters, how many did 13 you see during the period until it became possible 14 to get a license to carry a gun? |
| | 15 A Again, I think — I haven't because I'm 16 not that closely into that process, but I do 17 recall having a conversation with a couple of my 18 staff people, and they were talking about they 19 sent people a letter. They sent a letter for 20 someone who owned a gun to respond to them, and it 21 did not happen. 22 But I'm not sure if the case was — if the situation was the same in terms of the weapon being 2 taken because they didn't have a license. It could 3 have been because the weapon was taken for 4 safekeeping. (emphasis added) |

| | | |
|---|---|---|
| 138. The ECB waited for owners to call or come by. Manigault depo., p. 39. | RESPONSE: Disputed and immaterial. The allegations in this paragraph are not material because they cannot "affect the outcome of [this] suit under the governing law" and, thus, "do not affect the summary judgment determination." Lindell, 714 F. Supp. 2d at 105. As this Court held, D.C. Superior Court Rule of Criminal Procedure 41(g) provides a constitutionally adequate process, including a hearing, for retrieval of firearms and ammunition seized incident to arrest. See Smith, 387 F. Supp. 3d at 31-32. The District was not required to provide plaintiffs notice of this state-law remedy. See Brown, 115 F. Supp. 3d at 69-70. Additionally, while the District does not dispute | Relevant to Plaintiffs' claim to show Plaintiffs had no knowledge of the District's secret procedures allowing some out of state owners to arrange for return of their handguns by Fed Ex. The side by side comparison of the sentence the District cherry picks from Lt. Manigault's response with the entire response shows the text supports the |

| | | |
|---|---|---|
| | that the MPD Evidence Control Branch (ECB) would respond to owners of seized firearms who called or came by, to the extent this paragraph asserts that the ECB never contacted owners it is not substantiated by the cited exhibit. See Pls.' Ex. 34 at 41:6-8. | SMF. |
| 139. The ECB would not call the prosecutor for a PD 81(c) unless the owner came to ECB and said their attorney told them their case was over. Manigault depo., p. 24. | Disputed. The allegation in this paragraph is not substantiated by the cited exhibit. In cases in which a claimant called or physically visited the MPD Evidence Control Branch and requested retrieval of a seized item, MPD would contact the U.S. Attorney's office to verify that the case was dismissed or adjudicated. See Pls.' Ex. 34 at 25:3-19. | If and only if: (1) the claimant went to the Property Clerk office to ask about their gun, and (2) satisfied the condition that: "they were told by their attorney or their representative that they could come and reclaim their weapon. See Pls.' Ex. 34 at 25:11-13.<br><br>It is ludicrous to believe that the District would arrest, detain and prosecute people for having an unregistered gun, seize their guns for not having a license, and then simply hand the gun over when the case was over. The only people who could obtain the return of their guns were people who satisfied the evidentiary hold conditions, had an out of District license or registration, went to the Property Clerk's Office, and found out about the Fed Ex return |

| | | program.[2] |
|---|---|---|
| | | SMF deemed admitted because District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c), Grimes, 794 F.3d at 96-97, and the District's objection is unfounded.* |
| 140. Sometimes the ECB would ship a gun via Fed Ex to an owner or police station or gun dealer shop outside the District if the owner set up the account. Manigault depo., p. 29, 36. | Undisputed. | |
| 141. The ECB would not release guns to District residents without a registration certificate or a District license. Id at 31. | Undisputed. | |
| 142. So during the Class Period | Disputed. This paragraph | This is a factual |

---

[2] Q So if somebody called out wanting their 5 gun during this period, what would you tell them 6 or what would they be told?

7 A They would probably be told it's 8 unlawful for them to have it.

9 Q Then what?

10 A And the gun would stay with MPD.

11 Q What was the rationale for keeping the 12 gun with MPD?

13 A Because it was unlawful for them to have 14 it.

15 Q Seems like a catch 22. 16 So then during this period if a person 17 didn't have a registration for the pistol, if they 18 didn't have a license, then the disposition of the 19 pistol was that it was not returned to the owner; is 20 that correct?

21 A Yes.

Pls.'s Ex. # 34, lt. Manigault depo., p. 32.

| | | |
|---|---|---|
| there was no way for owners to get their guns back because guns were illegal. Manigault depo., p. 31-32. | improperly asserts a legal conclusion rather than a factual allegation. See Fed. R. Civ. P. 56(c)(l). Additionally, the allegation in this paragraph is not substantiated by the cited exhibit. The District would release guns to owners if it received a completed form PD 81(c) from the prosecuting attorney, verified the status of any outstanding arrest warrants for the claimant, and received valid proof of ownership or purchase. See Pls.' Ex. 34 at 27:21- 29:7 If the claimant had a license to carry a firearm, their seized firearm would be returned to them. Id. at 35:3-5. | conclusion, not a legal conclusion.<br><br>The conditions for return of a gun were an illusory because they were a classic Catch-22.<br><br>D.C. residents could not get licenses until 2017 after Wrenn was decided because the District's gun control laws in effect during the Class Period and until 2017 were total bans on carrying a hand gun in public.<br><br>The return policy for non-Residents – establish a Fed Ex account – was secret so non-Residents did not know about it. |
| 143. Such guns were kept at ECB or destroyed. Manigault depo., p. 33-34. | The District does not dispute that firearms that were not returned were kept or destroyed. | |

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579
Counsel for Plaintiffs

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com