UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, et al., | |
| Plaintiffs, | |
| v. | |
| GOVERNMENT OF THE DISTRICT OF | Civil Action No.:  15-737 (RCL) |
| COLUMBIA, | |
| Defendant. | |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION**

**FOR SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S**

**CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs submits this combined Reply in support of their Partial Motion for Summary Judgment [ECF No. 121] and Opposition to Defendant's Cross Motion For Summary Judgment [ECF 134].

Plaintiffs made out a *prima facie* case on each of their claims. There are no genuine disputes as to any material fact and Plaintiffs' Maggie Smith, Gerard Cassagnol, Frederick Rouse, Delontay Davis, Kimberly Buffaloe and Carl Atkinson (sometimes the "Named Plaintiffs" or "Plaintiffs" or "Second Amendment Named Plaintiffs") are entitled to judgment as a matter of law on all claims as to liability and their claim to expunge their arrest records. *See* Fed. R. Civ. P. 56(a).

Therefore, this Court should enter summary judgment in favor of all Plaintiffs on all claims as to liability and their claim to expunge their arrest records.

Defendant is not entitled to judgment as a matter of law on any of Plaintiffs' claims as to liability and their claim to expunge their arrest records. *See* Fed. R. Civ. P. 56(a).

I.   **Claim 1: Plaintiffs Are Entitled To Summary Judgment On Their Second Amendment Claim Against The District; District Not Entitled To Summary Judgment.**

Plaintiffs are entitled to summary judgment on their Second Amendment claim against the District because: (1) Plaintiffs have carried their burden of establishing there are no "genuine disputes" of "material" fact, *Djourabchi v. Self*, 571 F. Supp. 2d 41, 44 (D.D.C. 2008)(moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact); and (2) Plaintiffs are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("the inquiry ... is whether ... one party must prevail as a matter of law.").

Plaintiffs easily carry carried their burden of establishing there are no "genuine disputes" of "material" fact because defendant either admitted the necessary facts or they were deemed admitted by defendant because defendant did not oppose Plaintiffs' facts with its own facts as Rule 56(c) requires. *Grimes v. District of Columbia*, 794 F.3d 83, 96-97 (2015) ("deemed admitted" rules apply to facts in party's statement material facts despite Fed. R. Civ. P. 56(a)); *Vines v. Hodges*, 422 F. Supp. 1292, 1296 n.2 (1976).

Moreover, the District bears the burden at trial on several key issues, and thus the District bears the burden at the summary judgment stage as well even if the District is not the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Figueroa v. Pompeo*, 923 F.3d 1078, 1094 (2019)(party that bears the burden at trial bears the burden at summary judgment); Subdivision (c)(1)(B); Committee Notes on Rules — 2010 Amendment. The District failed to carry its burden on these issues because Named plaintiffs and

class members – people in general – are presumed to be law abiding persons, and law abiding persons are presumed to carry their hand guns for self-defense, and the District did not rebut these presumptions. These presumptions obtain class wide in favor of all Named plaintiffs and all class members.

Plaintiffs also easily satisfy the "must prevail as a matter of law" standard because the rulings in *Palmer* have claim preclusion effect in this case. *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 182-83 (D.D.C. 2014). The District's gun control statutes – the District's official policies – **are themselves unconstitutional**. *Id.*; *see Smith*, 387 F. Supp. 3d at 25-26.

### A. Plaintiffs Established In Their Statement of Material Facts That There Are No "Genuine Disputes" Of "Material" Fact Preventing Resolution of Plaintiffs' Second Amendment Claim on Summary Judgment.

Plaintiffs established in their Statement of Material Facts as to Which There Is No Genuine Dispute [121-1] that there are no "genuine disputes" of "material" fact that the Court must resolve before it applies the legal principles Plaintiffs identified and established in their Motion. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250; *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 151 (D.D.C. 2013).

The District did not make a serious effort to controvert any of Plaintiffs SMFs on the Claim 1 issues by putting on material facts to create a genuine dispute as Rule 56(c) requires. Instead, the District merely made objections without putting on facts of its own to create genuine disputes. Such objections do not satisfy the standard for controverting Plaintiffs' SMFs. *See, e.g., Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996)(standards for disputing facts under Rule 56 requires party disputing an asserted fact to support that dispute with citation to "particular parts of materials in the record[.]"). So, the Court may take the failure to controvert as deemed admissions. LCvR 7(h)(1) formerly (identical) Local Rule 108(h); *Grimes v. District of Columbia*, 794 F.3d 83, 96-97 (2015) ("deemed admitted" rules

apply to facts in party's statement material facts despite Fed. R. Civ. P. 56(a)); *Vines v. Hodges*, 422 F. Supp. 1292, 1296 n.2 (1976).  Moreover, since the District chose to make objections rather than to controvert Plaintiffs SMFs the District did not set out facts, so there are no genuine disputes. Rule 56(c).

Plaintiffs' Responses to Defendant's Objections to Plaintiffs' SMFs is a chart showing in three columns Plaintiffs SMFs, the District's objections, and Plaintiffs explanations for why the District's objections are invalid and do not create genuine disputes.

For some SMFs because the District made numerous legal arguments and objections Plaintiffs address the legal arguments and objections in the motion. Plaintiffs identify where they do this, SMF # 112.

### 1. *Facts Establishing Plaintiffs' Arrests, Detentions, Prosecutions and Re-Prosecutions.*

The table in SMF # 1 listed for each of the Named Plaintiffs their MPD charged offenses from Cobalt, the dates of their initial prosecutions commenced, and the date of re-prosecution if any. Grabowsky Decl., ¶ 1. SMF # 2 established that all Plaintiffs were detained from time of arrest until at least First Appearance in Superior Court. Haines depo, p. 57 (all arrestees prosecuted in Superior Court on their arrest charges were detained from time of arrest until at least First Appearance in Superior Court). *See also* Defendant's SMFs establishing same for Named plaintiffs: # 8 (Ms. Smith); # 13-15 (Mr. Cassagnol); # 19 (Mr. Rouse); # 22 (Mr. Davis); # 25 (Ms. Buffaloe).

### 2. *Each Named Plaintiff was law abiding.*

Each Named Plaintiff and class member was, prior to their arrest, presumptively law abiding.[1] Generally, for Second Amendment purposes law abiding means any person not convicted of a felony, *Heller*, 554 U.S. at 627 n.26 (practice of barring convicted felons from possessing firearms is a "presumptively lawful regulatory measure[].''), or at least a violent felony. *cf. Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)(felons protected by Second Amendment and the felon-in-possession ban applies only to violent felonies)(Barrett J., dissenting); *with Medina v. Whitaker*, 913 F.3d 152, 159-60 (2019) (felon-in-possession ban triggered by all felonies not just violent felons; felons fall outside the scope of the Second Amendment).

---

[1] Plaintiffs' and the other class members' arrests on their gun charges do not affect this presumption. A person prosecuted under a criminal law can challenge its constitutionality regardless of whether they consciously committed the offense, and regardless of whether their prosecution proceeded to conviction. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 21 (D.D.C. 2019); *Class v. United States*, 138 S. Ct. 798, 802 (2018)(guilty plea by itself does not bar defendant from challenging on appeal the constitutionally of statute under which convicted).

A person is presumed to be a law abiding person (no felony convictions) for Second Amendment purposes. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)("*Heller I*") (ordering the District of Columbia to issue a license to plaintiff Heller, as long as he is "not disqualified from the exercise of Second Amendment rights"). "Being a felon in possession of a firearm is not the default status." *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013). In *Black* the Fourth Circuit held that where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention even though other laws prevent convicted felons from possessing guns. *Id.* at 539-40. Although this and the following cases are Fourth Amendment cases, they still support Plaintiffs' position that person in general, including an armed, may not be assumed to be a felon or a person prohibited from carrying a gun by a court order. *Id.*; *accord Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015)(where it is lawful to possess a firearm, unlawful possession "is not the default status.") *(quoting Black, 707 F.3d at 540)*; *United States v. King, 990 F.2d 1552 (10th Cir.1993)* (investigatory detention initiated by an officer after he discovered that the defendant lawfully possessed a loaded firearm lacked sufficient basis because the firearm alone did not create a reasonable suspicion of criminal activity); *United States v. White*, 2016 U.S. Dist. LEXIS 142861, at *10 (D. Kan. Oct. 13, 2016)(police may not assume an armed individual of being a felon or a person prohibited from carrying a gun by a court order); *State v. Knudsvig*, 2018 Wash. App. LEXIS 2049, at *32 (Ct. App. Aug. 30, 2018); *Commonwealth v. Hicks*, 208 A.3d 916, 934-35 (2019); *Pulley v. Commonwealth*, 481 S.W.3d 520, 527 (Ky. Ct. App. 2016).

In fact, the "law presumes that every citizen is law abiding, that he lives in the peace and dignity of the state, and that he will not lie." *Pickford v. Hudson*, 32 App. D.C. 480, 486-487, 1909 U.S. App. LEXIS 6122, **10 (D.C. Cir.)(Court of Appeals for the District of Columbia 1909) (law presumes that every citizen is law abiding).[2]

Therefore, because of the presumption every person is law abiding, for Plaintiffs' motion, even though Plaintiffs are movants, the District still bears the burden of putting on facts to establish that Plaintiffs and class members were not law abiding, such as evidence of felony conviction prior to their arrests in this case. Fed. R. Civ. P. 56(c)(1)(B); *Figueroa v. Pompeo*, 923 F.3d 1078, 1094 (2019)(party that bears the burden at trial bears the burden at summary judgment); *Tech 7 Sys. v. Vacation Acquisition*, LLC, 594 F. Supp. 2d 76, 80 (D.D.C. 2009)(JDB); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 73-74 (D.D.C. 2015); Committee Notes on Rules — 2010 Amendment.

And of course the District bears the burden on its own cross motion as movant. *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 155 n.3 (D.D.C. 2005) (citing Moore's; each individual summary judgment motion must be evaluated independently and cross-motions for summary judgment are no different than solitary summary judgment motion).

Of course, for the purpose of the District's cross motion for summary judgment the Plaintiffs' statements are deemed true. *Robinson v. Pezzat*, 818 F.3d 1, 8 (2016)(under the summary judgment standard "[t]he evidence of the non-movant is to be believed.").

---

[2] The court was named the "Court of Appeals of the District of Columbia."  The Bluebook indicates that it was the predecessor of the D.C. Circuit, not the D.C. Court of Appeals, and should be designated as "(D.C. Cir.)."  *See* The Bluebook at 236 (19th ed. 2010).
*See also* The 1948 act (62 Stat. 869) https://www.fjc.gov/history/courts/courts-district-columbia#:~:text=Congress%20first%20established%20judicial%20courts,appeals%20from%20U.S.%20district%20courts.

Nonetheless, the Named Plaintiffs established in their SMFs that each Named Plaintiff with a handgun (Ms. Smith, Mr. Cassagnol. Mr. Rouse, and Mr. Davis) was law abiding. Named Plaintiffs established in their SMFs that even Ms. Buffaloe and Mr. Atkinson who were not carrying hand guns were law abiding persons. In fact, Mr. Cassagnol satisfied both the federal and the District "safe harbor" because his gun was locked in a gun locker in his company van. *See* D.C. Code 22-4504.02; 18 U.S.C. § 926A.

Plaintiffs established in their SMFs that none had felony convictions prior to their arrests. In fact, Plaintiffs established in their SMFs that prior to their arrests, none had convictions for any offense more serious than reckless driving.

The District did not put on any facts showing any plaintiff or class member had a prior felony conviction (or any other restricted category offense) even though the District had the burden created by the presumption established in *Heller I* and the general presumption that people are law abiding. *Heller I*, 554 U.S. at 635 (ordering the District of Columbia to issue a license to plaintiff Heller, as long as he is "not disqualified from the exercise of Second Amendment rights"). *Pickford*, 32 App. D.C. 480, 486-487, 1909 U.S. App. LEXIS 6122, **10 (the law presumes that every citizen is law abiding).

Moreover, the District is estopped from arguing that a felony conviction or other conviction excludes any Named Plaintiff or class member from the category of law abiding persons because the District took the position in response to Plaintiffs' motion to compel the District to provide signed responses to written discovery about persons who fell into one or more of the "restricted categories" of people prohibited from owning or possessing a firearm by D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) ("restricted category offenses") that the information Plaintiffs were seeking "would be irrelevant to the question of liability." Defendant's Opposition to Plaintiffs' Motion to Compel Responses to Interrogatory and Document Production Requests [ECF 107],

ECF p. 1 ("In their motion to compel, plaintiffs seek information that ... would be irrelevant to the question of liability ..."); ECF p. 2 ("whether putative class members have a disqualifying condition is irrelevant to the current determination of liability"); p. 10 ("plaintiffs seek the information here apparently not for purposes of establishing liability").

Finally, by opting to stand on its claimed privilege instead of providing the information the District forfeited the right to oppose class members' claims based on whether they are law abiding persons. *Id.* at ECF pp. 1-2; pp. 5-6; pp. 8-10.

### 3. Each Named Plaintiff with a handgun carried their handgun for self-defense.

The cases cited in the previous section also establish that being a law abiding person is a proxy for carrying a weapon for self-defense. Because the Named Plaintiffs are presumptively law abiding persons, Ms. Smith, Mr. Cassagnol, Mr. Rouse, and Mr. Davis also presumptively carried their handguns for self-defense.[3] *See e.g., Heller I,* 554 U.S. at 635 (ordering the District of Columbia to issue a license to plaintiff Heller, as long as he is "not disqualified from the exercise of Second Amendment rights"); *Black,* 707 F.3d at 540 ("Being a felon in possession of a firearm is not the default status."); *Pickford,* 32 App. D.C. 480, 486-487, 1909 U.S. App. LEXIS 6122, **10 (law presumes that every citizen is law abiding).

Therefore, even though Plaintiffs are movants, the District still bears the burden of putting on facts to rebut the presumption of carrying their handguns for self-defense at summary judgment. *Tech 7 Sys. v. Vacation Acquisition,* LLC, 594 F. Supp. 2d 76, 80 (D.D.C. 2009)(JDB); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* 79 F. Supp. 3d 60, 73-74 (D.D.C. 2015). In such a case, Plaintiffs as the moving party can meet its burden by showing there

---

[3] In fact, Mr. Cassagnol satisfied both the federal and the District "safe harbor" because his gun was locked in a gun locker in his company van. See D.C. Code 22-4504.02.

is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Of course, for the purpose of the District's cross motion for summary judgment the Plaintiffs' statements are deemed true. *Robinson*, 818 F.3d at 8 (under the summary judgment standard "[t]he evidence of the non-movant is to be believed.").

Nonetheless, Plaintiffs established in their SMFs that each Named Plaintiff with a handgun carried their handgun for self-defense. SMF ##: 5 (Ms. Smith); 23 (Mr. Cassagnol); 53, 57 (Mr. Rouse); 66 (Mr. Davis).

Plaintiffs' statements in their declarations and depositions that they owned and carried their handgun for self-defense are not conclusory. *Johnson v. Perez*, 823 F.3d 701, 710 (2016)("particularity of the statements" required to establish to establish a fact depends on the complexity of the fact).

For example, colloquy about self-defense in Mr. Cassagnol's case established that he was carrying his gun for self-defense:

> Q Why did you have the gun with you? A Can you rephrase the question?
> Q Sure. Why was the gun in your truck? A For self defense.
> Q And were there any specific incidents you were worried about? Have you been threatened
> before?
> A No.
> Q Okay. Did you ever use the gun in self defense?
> No.

District's Ex. 4 [134-3] at 25:10-26:5.

The degree of particularity required to elevate a party's statement above the realm of the conclusory depends on factors such as the particularity of the statements it is offered to rebut, if any, *Johnson*, 823 F.3d at 710 (co-workers' accounts that plaintiff employee offered to show that he was treated more harshly than white employees were insufficient because their statements either

too general to controvert the employer's particular concerns about Johnson's job performance), and other facts in the party's affidavit or the record. Fed. R. Civ. P. 56(c)(1).

First, "self-defense" is a commonly used term that has a definite meaning. The dictionary meaning is "the act of defending oneself, one's property, or a close relative." https://www.merriam-webster.com/dictionary/self-defense   When the *Heller* Court used the term it felt no need to define it even though the term is a significant limitation on the ownership and carriage of hand guns and the Court noted that "the inherent right of self-defense [is] central to the Second Amendment right." *Heller I*, at 628. Nor did the D.C. Circuit in *Heller II* feel the need to define the term even though the panel members used the term at least 50 times in the opinions (majority and dissent). *Heller v. District of Columbia*, 670 F.3d 1244 (2011).[1] Therefore, the term does not require a high degree of particularity to pass muster under the "conclusory" standard.

Second, in *Wrenn* the D.C. Circuit struck down as a total ban on the fundamental Second Amendment right to carry a hand gun in public for self-defense the District's "good reason" law which condition exercise of the right on a showing of a "special need for self-defense." *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (2017). The *Wrenn* Court held that, "the Amendment's core at a minimum shields the typically situated citizen's ability to carry common arms generally." *Id.* The court explained, "the law destroys the ordinarily situated citizen's right to bear arms ... by design: it looks precisely for needs "distinguishable" from those of the community." *Id.* at 666. Because the *Wrenn* Court rejected a showing of a "special need for self-defense" in favor of "the typically situated citizen's ability to carry common arms generally," the "particularity of the

---

[1] The dissent in *Heller II* cited a law review article on implementing the right to keep and bear arms for self-defense, *Symposium: The Second Amendment and the Right to Bear Arms After D.C. V. Heller: Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (June, 2009). Number of times the term appears in the article? 148. Number of times defined? Zero.

statements" required to establish carrying for self-defense is also "general." *Johnson*, 823 F.3d at 710.

Third, a statement lacking specific facts may be supported by other facts in the affidavit or support from the record that make it sufficient to create a genuine factual issue. *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 375 (2020). Each of the Named Plaintiffs described their conduct at their arrests and their positions in the community in sufficient detail to establish facts sufficient to satisfy their evidentiary burden.

The District did not put on any facts on this issue even though the District had the burden created by the presumption establish in *Heller I* and the general presumption that people are law abiding. *Heller I*, 554 U.S. at 635 (ordering the District of Columbia to issue a license to plaintiff Heller, as long as he is "not disqualified from the exercise of Second Amendment rights"). *Pickford*, 32 App. D.C. 480, 486-487, 1909 U.S. App. LEXIS 6122, **10 (the law presumes that every citizen is law abiding).

At any rate, the District is estopped from arguing that a felony conviction or other convictions on any of the District's restricted category offenses excludes any Named Plaintiff or class member from the category of law abiding persons for the reasons given in the previous section. First, the District took the position in response to Plaintiffs' motion to compel the District to provide signed responses to written discovery about persons who fell into one or more of the "restricted categories" of people prohibited from owning or possessing a firearm by D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) ("restricted category offenses") that the information Plaintiffs were seeking "would be irrelevant to the question of liability." Defendant's Opposition to Plaintiffs' Motion to Compel Responses to Interrogatory and Document Production Requests [ECF 107], ECF pp. 1, 2, and 10.

Second, by opting to stand on its claimed privilege instead of providing the information the District forfeited the right to oppose class members' claims based on whether they are law abiding persons. *Id.* at ECF pp. 1-2; pp. 5-6; pp. 8-10.

### 4. *Facts regarding effect of District's gun laws during the Class Period.*

Plaintiffs also established in their SMFs the facts needed to establish a municipal violation.

"At the time of plaintiffs' arrests and seizures, no person - resident or non-resident - could carry a handgun or ammunition outside the home." "Defendant's Statement of the Bases for its Defenses," Meet and Confer Statement [73], p. 5. SMF 108 (undisputed).

### 5. *The three code sections of D.C. Code § 7-2502.01, § 7-2506.01 and§ 22- 4504 and D.C. Code§ 22-4504(a) were the moving force behind most arrests pursuant to the District's gun laws during the Class Period.*

The three code sections of D.C. Code § 7-2502.01, § 7-2506.01 and§ 22- 4504 and D.C. Code§ 22-4504(a) were the moving force behind most arrests pursuant to the District's gun laws during the Class Period. Grabowsky Decl., ¶3. SMF # 112 (deemed admitted by the District because it did not put on facts to contest the facts in the Grabowski Declaration and Plaintiffs' motion)(discussion below).

The Grabowski Declaration shows that at least 65% of the arrests on gun charges are for one or more of CPWL UF/ UA. Grabowski Declaration, ¶¶ 3-5; Plaintiffs SMF # 112.[5] The

---

[5] The District objects to the Grabowski Declaration under Fed. R. Civ. P. 56(c)(4)(requirements of affidavit or declaration). But, Fed. R. Civ. P. 56(c)(4) is not applicable to the Grabowski Declaration. Rule 56(c)(4) provides that affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Grabowsky Decl. is a summary of voluminous records, data exports from the District's own MPD booking database and CourtView (the Superior Court database) governed by FRE 1006. See 6 Weinstein's Federal Evidence § 1006.04 (2021). It is not a narrative of facts that Mr. Grabowski observed.

percentage is probably much higher. One reason for difference in the numbers between arrests and CPWU UF/ UA offenses is the MPD sometimes used a different descriptor for the CPWU UF/ UA offense, *e.g.*, Possession of a Prohibited Weapon. And, as the District points out, Ms. Buffaloe was charged by the arresting officer with Carrying a Pistol as well as a violation of National Firearms Act. Defendant's Objections to Plaintiffs' SMFs [ECF 133-], # 1 (District's response). There are 55 arrests where the arrest charge is "National Firearms Act," Grabowski Declaration, ¶ 5(d), but, as Ms. Buffaloe's case shows, many of these are likely arrests on one or more of CPWL UF/ UA. Therefore, arrests on CPWL UF/ UA are undercounted in the Grabowski Declaration. Actual arrests of felons is probably over-counted in the data as Mr. Davis' case shows. Plaintiffs' SMF # 1, [ECF 121], p. 2 n.1.

Moreover, many of the arrests described in Paragraph 5 are proxies for CPWL UF/ UA as Ms. Buffaloe's arrest charges show.

A corollary of both of these principles is that the District's statutes are the moving force of the arrests and pretrial detentions and re-prosecutions even if the arrestee were a felon or fell into one of the District's restricted category offenses (e.g., D.C. Code § 4503(a)(1) to (a)(6)) because the MPD did not enforce these restricted category offenses at arrest. Alternative, if the This Court were to rule that felons, or at least violent felons, have no Second Amendment rights, then the

---

A summary of voluminous records has the same evidentiary value as the records themselves. *See United States v. Hemphill*, 514 F.3d 1350, 1358–1359 (D.C. Cir. 2008) (government is not required to introduce documents on which it bases summary chart; "[t]o the contrary, the point of Rule 1006 is to avoid introducing all the documents. As long as a party has laid a foundation for the underlying documents, a chart summarizing them can itself be evidence under Rule 1006"); 6 Weinstein's Federal Evidence § 1006.04 (2021).

In fact, the summary declaration is itself evidence, serving as substitute for underlying records. *United States v. Weaver*, 281 F.3d 228, 232–233 (D.C. Cir. 2002) (no jury instruction was needed for chart that summarized payroll records, since records had been made available to defendant for inspection before trial in accordance with Rule 1006; summary chart was itself evidence, serving as substitute for underlying records).

District's statutes are the moving force of the arrests and pretrial detentions and re-prosecutions even if the arrestee fell into one of the District's restricted category offenses (e.g., D.C. Code § 4503(a)(1) to (a)(6)) other than a felon-in-possession restricted category offenses. The District's restricted category offenses were part and parcel of a gun control regime that acted as a total ban on carrying a gun outside the home. Alternatively, these statutes burden Plaintiffs' and the other class members' Second Amendment rights and so the District bears the burden of showing that they are not unconstitutional, but the District did not do so. Heller II; Smith, 387 F. Supp. 3d at 25 (gun control regulation "enjoys no presumption of validity" where it "implicates plaintiffs' fundamental right to have a handgun for individual self-defense.").

Moreover, whether a person fell into one of the District's restricted category offenses such as D.C. Code § 4503(a)(1) to (a)(6), or had a prior violent felony conviction, or felony conviction, does not undercut the fact that the District's gun control statutes were the moving force behind Named plaintiffs' and the other class members' arrests, pre-presentment detentions, and re-prosecutions by the District, as Plaintiffs detailed in their Motion, [ECF 121], ECF p. 18 *et seq.*

First, the number of persons charged at arrest on those potentially "disqualifying offenses" so small as to be *de minimis* in percentage terms. Grabowski Declaration, ¶¶ 3-8; Pls.' Mot., ECF pp. 20-21.

Second, the MPD had no policy or practice of looking up arrestees' criminal histories to fee whether they fell into a restricted category, and even if an officer or their supervisor reviewing charge decisions did discover that an arrestee did fall into a restricted category, the MPD still had no policy or practice requiring the MPD to charge that person with a disqualifying offense. Pls.' Mot., ECF pp. 19-20.

As the District has repeatedly pointed out, the District outsourced investigations into arrestees' criminal histories to the U.S. Attorney who conducted the investigations after a person

had been arrested and detained. District's objection to Plaintiffs SMF # 24 ("The final determination of all appropriate charges is made by the prosecutor." (quoting Pls.' Ex. 33, Haines depo., at 52-55); Plaintiffs' SMF ## 118-122 (all Undisputed.); Pls.' Mot., ECF pp. 19-20. Deciding which gun offenses to charge an arrestee with **at arrest** was within the discretion of the arresting officer. Haines depo, p. 32-33; see Plaintiffs' response to District's objection to Plaintiffs' SMF # 124.

Because the prosecutors' criminal history investigations and charging decisions came after the arrests and initial detentions by the MPD, they were not the moving force of the arrests and initial detentions. The D.C. Circuit has held that an event that occurs after a plaintiff's injury cannot be the cause of plaintiff's injury. *Blue v. District of Columbia*, 811 F.3d 14, 19 (2015)(rejected plaintiff's failure-to-fire claim because District's decision to retain teacher after the investigation (which began after sexual relationship with student) could not have caused the specific injury that plaintiff relied upon as the basis for her section 1983 claim—the sexual relationship with teacher).

Therefore, Plaintiffs' SMF # 112 is deemed admitted by defendants. *Grimes v. District of Columbia*, 794 F.3d 83, 96-97 (2015) ("deemed admitted" rules apply to facts in party's statement material facts despite Fed. R. Civ. P. 56(a); *Vines v. Hodges*, 422 F. Supp. 1292, 1296 n.2 (1976). Therefore, there is no genuine dispute on SMF # 112.

Plaintiffs' SMF # 112 is "factually supported" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), the Grabowski Declaration and the other facts in Plaintiffs' motion for summary judgment. And, the District did not oppose Plaintiffs' showing of facts with its own facts as required by Rule 56(c). *Vines*, 422 F. Supp. at 1296 n.2. The District did not put on any facts to controvert Plaintiffs' numbers in the Grabowski Declaration on which they based their conclusion.

Instead of putting on facts as Rule 56(c) required, the District merely objected to Plaintiffs' SMF # 112 as "a legal conclusion." But, the issue of "moving force" is obviously a fact issue rather than a legal conclusion because the issue is usually a jury question. *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 285 (D.D.C. 2011).[6]

Ordinarily whether a policy is the moving force of the plaintiffs' constitutional rights is a fact question for the jury except. *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 285 (D.D.C. 2011). So obviously the issue of moving force is not a legal conclusion. It is not a jury question here because there exists no genuine issue of material fact regarding the question of whether the District's deliberate indifference was the moving force behind arrests pursuant to the District's gun laws during the Class Period because the District did not put on any facts to controvert Plaintiffs' SMF # 112.

In *Barnes*, the District failed to rebut Plaintiffs' overdetention numbers for the first 16 months of the class period with its own numbers, so there was no genuine issue of material fact regarding the question of whether the District's deliberate indifference was the moving force behind overdetentions for the period. *Barnes v. District of Columbia*, 793 F. Supp. 2d at 284 ("the District hasn't provided any competent evidentiary support for this claim that would apply to the first 16 months of the class period [between September 1, 2005 to December 31, 2006]). Here, the District put on no arrest numbers for any of the Class Period to rebut Plaintiffs' numbers in the Grabowski Declaration, so there was no genuine issue of material fact regarding the question of whether the District's deliberate indifference was the moving force behind arrests, detentions,

---

[6] *Waldie v. Schlesinger*, 509 F.2d 508, 510 (D.C. Cir. 1974), which the District relies on for its "legal conclusion" objection, is distinguishable. Unlike the conclusory opinion at issue in Waldie, which failed to distinguish between the two key groups of women soldiers at issue, Plaintiffs presented unambiguous and clearly explained facts to support their factual contention in the form of the Grabowski Declaration, Commander Haines' deposition testimony, and the District's own admissions.

prosecutions and re-prosecutions for the period. And the District's own admissions and the Plaintiffs' undisputed SMFs show that investigations into arrestees' criminal histories and charging decisions based on them came (except for *de minimis* amounts) after the District had already arrested and detained Named plaintiffs and the other class members. Therefore, under *Blue*, could not be any part of the moving force of their arrests and pre-presentment detentions. *Blue*, 811 F.3d at 19 (post-injury events cannot be the cause of an injury).

### B.  Plaintiffs are "entitled to judgment as a matter of law."

Plaintiffs are "entitled to judgment as a matter of law" on their Second Amendment claim. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("the inquiry ... is whether ... one party must prevail as a matter of law.").

### 1.  Plaintiffs easily satisfy the "must prevail as a matter of law" standard because the rulings in Palmer have claim preclusion effect in this case.

Plaintiffs easily satisfy the "must prevail as a matter of law" standard because the rulings in *Palmer* have claim preclusion effect in this case. *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 182-83 (D.D.C. 2014). The District's gun control statutes – the District's official policies – **are themselves unconstitutional**. *Id.*

Moreover, this Court's holding in *Palmer* that the "home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period violated the Second Amendment because they effected a "complete ban on the carrying of handguns in public" has issue preclusion effect against the District. *Palmer*, 59 F. Supp. 3d at 183. The District was a party in *Palmer*, and Judge Scullin entered a judgment in *Palmer* which became final because the District dismissed its appeal of the judgment. *Palmer v. District of Columbia*, No. 14-7180, 2015 U.S. App. LEXIS 6414 (D.C. Cir. Apr. 2, 2015) (mem., appeal dismissed); *Hurd v. District of Columbia*, 864 F.3d 671, 679 (2017)("[i]ssue preclusion makes 'the determination of a question directly involved in one

action . . . conclusive as to that question in a second suit.'"); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (1992).

The District's contention that the Second Amendment right to carry a handgun in public did not exist before *Palmer* is wholly lacking in support as is evident from the District's failure to support any authority in support of its contention. *See e.g., Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017) (striking down District's ban on carrying handguns outside of the home unless the person carrying the handgun has a "good[]reason"). The D.C. Circuit in *Wrenn* was not inventing a new right; it was merely applying existing constitutional law. *Wrenn*, 864 F.3d at 659-661 (rejecting District's contention that so-called Northampton laws and surety laws show that Second Amendment does not extend to carrying hand guns in public for self-defense; holding individual right to carry common firearms beyond the home for self-defense—even in densely populated areas, even for those lacking special self-defense needs—falls within the core of the Second Amendment's protections). In fact, the right to keep and bear arms existed before ratification of the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)("the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right").

Moreover, *Owen v. Independence* and *Harper v. Virginia Department of Taxation* and other Supreme Court cases teach that municipalities and other defendants will be held liable retroactively for their unconstitutional policies even when the policies have not previously been held unconstitutional by the courts. *Owen v. Independence*, 445 U.S. 622, 651-52 (1980)(in accordance with Section 1983 principles the municipality should err on the side of caution in enforcing laws, and if there has been a constitutional deprivation as a result of a municipal policy, even where government officials have acted in good faith, the injured plaintiffs should not bear the brunt of the resulting loss); *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993)( when

this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect). In other words, government is strictly accountable for legal evolution. *Id.*

And the quote from *DeFillippo* the District cites, Def.'s Opp'n ECF p. 18, applies to individual "beat" officers not municipalities for the reasons explained in *Owen*. Cf. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)("Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.") with *Owen*, 445 U.S. at 651-52 (no qualified immunity for municipalities because of the compensation rationale and to create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights).

There is nothing unfair about making the District compensate the People whose Constitutional rights it violated because the District doubled down and stripped the Chief of Police of the authority to issue licenses just months after the Court's decision in *Heller 1*. D.C. Code § 22-4506, repealed by Inoperable Pistol Amendment Act of 2008, § 2(f), 56 D.C. Reg. 1162 (May 20, 2009).

## 2. *The District violated Plaintiffs' Second Amendment rights by enforcing its unconstitutional gun control laws against Plaintiffs.*

The District enforced its unconstitutional gun control laws against Plaintiffs and the other class members by arresting, detaining, prosecuting, and in some cases re-prosecuting them on "District" statutes after the U.S. Attorney abandoned its prosecutions in the light of *Palmer*. This establishes a predicate constitutional violation on Plaintiffs' Second Amendment claim. Plaintiffs' SMF # 1.

### 3. The District remains liable even if Plaintiffs consciously violated the District's gun control statute.

The District remains liable even if it were true that Plaintiffs consciously violated the District's gun control statute. A person prosecuted under a criminal law can challenge its constitutionality regardless of whether they consciously committed the offense, and regardless of whether their prosecution proceeded to conviction. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 21 (D.D.C. 2019). In fact, a guilty plea by itself does not bar a criminal defendant from later appealing their conviction on the ground that the statute of conviction violates the Constitution (where plea agreement did not waive right to raise on direct appeal a claim that the statute of conviction was unconstitutional). *Class v. United States*, 138 S. Ct. 798, 802 (2018).

But, although not lawyers, as part of "the People," Plaintiffs knew that they had some right to carry their handguns in public for self-defense. Moreover, as further evidence of their law abiding, when stopped by the police the Plaintiffs carrying guns told the police they had had guns as they had been taught.

### 4. During the Class Period whether any Plaintiff attempted to register a handgun was irrelevant because there was no registration or licensing scheme in existence in the District for carrying handguns in public.

During the Class Period whether any Plaintiff attempted to register a handgun was irrelevant because there was no registration or licensing scheme in existence in the District for carrying handguns in public.

To the extent that the District argues that the language in *Heller I* to the effect that "longstanding" licensing and registration regulations allows a municipality to impose a total ban on the carriage of handguns in public for self-defense, *see e.g.*, Def.'s Opp'n, ECF pp. 6, 16, 20,  this argument was carefully analyzed and rejected by the D.C. Circuit in *Wrenn*. *Wrenn*, 864 F.3d at 659-661.

In *Wrenn* the D.C. Circuit analyzed and rejected the District's arguments that legal regulations of possession or carrying that are "longstanding" reflect limits to the preexisting right protected by the Amendment which "so shrank the right later enshrined by the Amendment as to leave good-reason laws beyond its reach." *Wrenn*, 864 F.3d at 659-661 (rejecting District's contention that so-called Northampton laws and surety laws show that Second Amendment does not extend to carrying hand guns in public for self-defense; holding individual right to carry common firearms beyond the home for self-defense—even in densely populated areas, even for those lacking special self-defense needs—falls within the core of the Second Amendment's protections).

During the Class Period there was not even a provision for registering a handgun outside the home in the District's laws whether an applicant established good cause or not. *Palmer*, 59 F. Supp. 3d at 183 ("home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period effected a "complete ban on the carrying of handguns in public"). The law restricted registration of handguns to homeowners for use in the home. The Firearms Control Emergency Amendment Act of 2008 (amending § 7-2502.02(a)(4) to allow residents to register handguns for use in the home). Moreover, less than six months after the Supreme Court decided Heller (June 26, 2008), the District of Columbia's City Council and Mayor amended D.C. Code§ 4504(a)(2) (Carrying a Pistol without a License, or "CPWL") by repealing the Police Chiefs authority under D.C. Code § 22- 4504(a) to issue handgun carry licenses thus establishing beyond any doubt that the D.C. Council intended its ban on carrying handguns in public to be a total ban. D.C. Code§ 22-4506, repealed by Inoperable Pistol Amendment Act of 2008, § 2(f), 56 D.C. Reg. 1162 (May 20, 2009), revived and amended by License to Carry a Pistol Amendment Act§ 3(b); *Palmer*, 59 F. Supp. 3d at 176.

5.  *As a matter of law the District's unconstitutional gun laws were the moving force behind the violations of Plaintiffs and other class members' Second Amendment rights.*

The District's unconstitutional gun laws are also  the moving force of Plaintiffs' Second Amendment rights as a matter of law because they are unconstitutional policy statements of the District. The District's three code sections of D.C. Code § 7-2502.01, § 7-2506.01 and § 22- 4504 and D.C. Code§ 22-4504(a) and the other statutes that served as proxies for § 7-2502.01, § 7-2506.01 and § 22- 4504 (such as possession of a prohibited weapon when used to charge persons carrying hand guns in public) were the moving force of the District's arrest, detention, prosecution and re-prosecution of persons during the Class Period because the statutes were unconstitutional policy statements of the District.

First, as a matter of law, the three code sections of D.C. Code § 7-2502.01, § 7-2506.01 and§ 22- 4504(a) were unconstitutional policy statements of the District. *Barnes v. District of Columbi*a, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (unconstitutional policy found in *Barnes* where the DOC's statute implementing policy of refusing to release inmates after 10 p.m. violated their constitutional rights); *Barnes*, 793 F. Supp. 2d at 290-91 (District liable for strip-searches because strip-search policy promulgated by an official with final authority to establish such policies for the District and policy caused plaintiffs' and class members' constitutional deprivations); *see also Baker v. District of Columbia*, 326 F.3d 1302, 1306 (2003)(explicit setting of policy by government that violates Constitution is a municipal policy under § 1983); *Hurd v. District of Columbia*, 2021 U.S. App. LEXIS 14324, at *18-22 (D.C. Cir. May 14, 2021)(facially neutral policy that is unconstitutional as applied to re-incarcerations, even though the policy on its face does not expressly mention re-incarcerations); *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 579 (D.D.C. 2018) (issue of causation is straightforward when employees acted pursuant to a Mayor's Order which constitutes a policy for purposes of § 1983).

Establishing that an unconstitutional policy is the moving force behind plaintiff's constitutional rights is "straightforward." *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 579 (D.D.C. 2018) (issue of causation is straightforward when employees acted pursuant to a Mayor's Order which constitutes a policy for purposes of § 1983). Enforcing the unconstitutional policy against the plaintiff is the moving force of the plaintiff's constitutional injuries. *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (DOC's enforcement of the District's "10 p.m. cut-off" rule violated the due process rights of class members who were overdetained, during all parts of the class period, because of that rule); *Hurd v. District of Columbia*, 2021 U.S. App. LEXIS 14324, at *22 (D.C. Cir. May 14, 2021) (*quoting Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278-1280 (10th Cir. 2009) (holding if the relevant ordinances were unconstitutional, "whether on their face or as applied" to the plaintiff, the liability would fall on the city)).

The District's three code sections -- D.C. Code § 7-2502.01, § 7-2506.01 and§ 22-4504 and D.C. Code§ 22-4504(a) -- the District's official policies, are themselves unconstitutional. *Palmer*, 59 F. Supp. 3d at 183; *see Smith, 387 F. Supp. 3d at 25-26.* As a matter of law, the three code sections of D.C. Code § 7-2502.01, § 7-2506.01 and§ 22-4504 and D.C. Code§ 22-4504(a) were unconstitutional policy statements of the District. *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (unconstitutional policy found in Barnes where the DOC's statute implementing policy of refusing to release inmates after 10 p.m. violated their constitutional rights); *Barnes*, 793 F. Supp. 2d at 290-91 (District liable for strip-searches because strip-search policy promulgated by an official with final authority to establish such policies for the District and policy caused plaintiffs' and class members' constitutional deprivations); *see also Baker v. District of Columbia*, 326 F.3d 1302, 1306 (2003)(explicit setting of policy by government that violates Constitution is a municipal policy under § 1983); *Hurd v. District of Columbia*, 2021 U.S. App. LEXIS 14324, at *18-22 (D.C. Cir. May 14, 2021)(facially neutral policy that is unconstitutional as

applied to re-incarcerations, even though the policy on its face does not expressly mention re-incarcerations); *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 579 (D.D.C. 2018) (issue of causation is straightforward when employees acted pursuant to a Mayor's Order which constitutes a policy for purposes of § 1983).

Establishing that an unconstitutional policy is the moving force behind plaintiff's constitutional rights is "straightforward." *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 579 (D.D.C. 2018) (issue of causation is straightforward when employees acted pursuant to a Mayor's Order which constitutes a policy for purposes of § 1983). Enforcing the unconstitutional policy against the plaintiff is the moving force of the plaintiff's constitutional injuries. *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (DOC's enforcement of the District's "10 p.m. cut-off" rule violated the due process rights of class members who were overdetained, during all parts of the class period, because of that rule); *Hurd v. District of Columbia*, 2021 U.S. App. LEXIS 14324, at *22 (D.C. Cir. May 14, 2021) (*quoting Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278-1280 (10th Cir. 2009) (holding if the relevant ordinances were unconstitutional, "whether on their face or as applied" to the plaintiff, the liability would fall on the city)).

Second, the District's other gun control statutes such as Unlawful Discharge of a Firearm and Possession of a Prohibited Weapon, are also unconstitutional as applied to the same conduct covered in D.C. Code § 7·2502.01, § 7·2506.01 and§ 22· 4504 and D.C. Code§ 22·4504(a) during the Class Period. As the District pointed out, such statutes are presumptively unconstitutional as applied. District's Opposition to Plaintiffs' partial motion for summary judgment [133], ECF p. 16. The District did not defend the constitutionally of any of these statutes by establishing that the statutes are "substantially related to an important government objective" so they are deemed unconstitutional as applied to the same conduct covered in D.C. Code § 7·2502.01, § 7·2506.01 and§ 22· 4504 and D.C. Code§ 22·4504(a).

The District's restricted category offenses such as D.C. Code § 4503(a)(1) to (a)(6) and D.C. Code § 22-4504(a)[7] are deemed unconstitutional for the same reason: the District did not defend the constitutionally by establishing that the statutes are "substantially related to an important government objective" so they are deemed unconstitutional as applied to the same conduct covered in D.C. Code § 7-2502.01, § 7-2506.01 and§ 22- 4504 and D.C. Code§ 22-4504(a).

An additional, alternative, reason these statutes regulating gun ownership and carriage are unconstitutional is because they are of recent origin. *Heller I*, 554 U.S. at 626-27 ("longstanding prohibitions on the possession of firearms by felons"); *See Heller v. District of Columbia*, 341, 670 F.3d 1244, 1271 (2011) (regulations on the sale, possession, or use of guns are permissible if they are within the class of traditional, "longstanding" gun regulations in the United States) (then Judge Kavanagh dissenting; rejecting tiers of scrutiny as not provided for in *Heller I*). The only "traditional, 'longstanding prohibition'" on the possession of firearms in the District governed violent felons. The 1932 Act[8]; *cf. Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)(felons protected by Second Amendment and the felon-in-possession ban applies only to violent

---

[7] (a) No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon. Whoever violates this section shall be punished as provided in § 22-4515, except that:

(1) A person who violates this section by carrying a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon, in a place other than the person's dwelling place, place of business, or on other land possessed by the person, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 5 years, or both; or

(2) If the violation of this section occurs after a person has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or another jurisdiction, the person shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 10 years, or both.

[8] D.C. Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, approved July 8, 1932 (47 Stat. 650; D.C. Official Code§ 22- 4501 et seq.).

felonies)(Barrett J., dissenting); *with Medina v. Whitaker*, 913 F.3d 152, 159-60 (2019) (felon-in-possession ban triggered by all felonies not just violent felons; felons fall outside the scope of the Second Amendment). Most of the other restricted category offenses in D.C. Code § 4503(a)(1) to (a)(6) and D.C. Code § 22–4504(a) are of recent origin having been added in 2009. Bill 18-138, the "Omnibus Anti-Crime Amendment Act of 2009" (the "Omnibus"), Bill-18-151, the "Public Safety and Justice Amendments Act of 2009" (established D.C. Code § 4503(a)(1) to (a)(6) in substantially  present form).

The same is true for federal laws. The federal "felon" disability—barring any person convicted of a crime punishable by more than a year in prison from possessing any firearm—is less than fifty years old. Article: Why Can't Martha Stewart Have A Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 698 (Spring, 2009). This was 177 years after the adoption of the Second Amendment, and less than a decade before the D.C. handgun ban was enacted in 1976

In fact, the District took the position in in response to Plaintiffs' motion to compel the District to provide signed responses to written discovery about persons who fell into one or more of the "restricted categories" of people prohibited from owning or possessing a firearm by D.C. Code § 4503(a)(1) to (a)(6) or D.C. Code § 4504(a)(2) ("restricted category offenses") that the information Plaintiffs were seeking "would be irrelevant to the question of liability." Defendant's Opposition to Plaintiffs' Motion to Compel Responses to Interrogatory and Document Production Requests [ECF 107], ECF p. 1 ("In their motion to compel, plaintiffs seek information that ... would be irrelevant to the question of liability ..."); ECF p. 2 ("whether putative class members have a disqualifying condition is irrelevant to the current determination of liability"); p. 10 ("plaintiffs seek the information here apparently not for purposes of establishing liability"). Moreover, by opting to stand on its claimed privilege instead of providing the information the

District forfeited the right to oppose class members' claims based on whether they are law abiding persons. *Id.* at ECF pp. 1-2; pp. 5-6; pp. 8-10.

The other arrest charges used by the MPD were either unconstitutional on other grounds or inapplicable. For example, Presence in a Motor Vehicle Containing a Firearm was declared unconstitutional in 2013 in *Conley v. United States*, 79 A.3d 270 (D.C. 2013), and Unlawful Transportation of a Firearm is not a substantive criminal offense as the District's own prosecutor has conceded. *See e.g., Motion to Vacate Convictions for Attempted Unlawful Transportation of a Firearm under D.C Code §§ 22-1803, -4504.02, Akeem Beatrice, Timothy O. Bandy v. United States of America.* Pls.'s Ex. # 20.

And the District's own admissions and the Plaintiffs' undisputed SMFs show that investigations into arrestees' criminal histories and charging decisions based on them came (except for *de minimis* amounts) after the District had already arrested and detained Named plaintiffs and the other class members. Therefore, under *Blue*, could not be any part of the moving force of their arrests and pre-presentment detentions. *Blue*, 811 F.3d at 19 (post-injury events cannot be the cause of an injury).

## II.  Claim 3: The non-Resident Plaintiffs Are Entitled To Summary Judgment On Their Equal Protection And Right-To-Travel Claims; District Not Entitled To Summary Judgment.

The non-Resident Plaintiffs are entitled to summary judgment on their Equal Protection claim and their right to travel claim.

The District's cross motion for summary judgment on the non-Resident Plaintiffs' right to travel claim should be denied because §§ 7-2502.01, 7-2506.01, and 22-4504 in effect during the Class Period penalized plaintiffs for traveling interstate by treating D.C.-resident gun owners differently from non–D.C.-resident gun owners, Smith, 387 F. Supp. 3d at 29, and the District failed to carry its burden of justifying the classification under the applicable strict scrutiny standard. *Id.* at 30 (prove the infringement is narrowly tailored to serve a compelling state interest).

The District did not move for summary judgment on the non-Resident Plaintiffs' Equal Protection claim.

### A.  *The non-Resident Plaintiffs are entitled to summary judgment on their Equal Protection claim.*

The District did not challenge plaintiffs' Fifth Amendment claim on equal protection grounds in its Opposition or in its cross motion for summary judgment.

Plaintiffs Maggie Smith, Gerard Cassagnol, Frederick Rouse and Delontay Davis, the "non-Resident Plaintiffs," are entitled to summary judgment on their Equal Protection claims because §§ 7-2502.01, 7-2506.01, and 22-4504 distinguish between D.C. residents and non-D.C. residents at the expense of the latter's fundamental rights, Smith, 387 F. Supp. 3d at 27, because they make it impossible for law-abiding non-D.C. residents to have a handgun for individual self-defense in D.C. Smith, 387 F. Supp. 3d at 29 Because this *de facto* residency requirement did restrict plaintiffs' fundamental right to have a handgun for individual self-defense, it thereby triggered strict scrutiny for the classification, Smith v. District of Columbia, 387 F. Supp. 3d 8, 28 (D.D.C. 2019),

and the District failed to carry its burden of justifying the classification under the applicable strict scrutiny standard. *Id.* at 30 (prove the infringement is narrowly tailored to serve a compelling state interest).

The non-Resident Plaintiffs are entitled to summary judgment on their Equal Protection claim because the District had the burden at summary judgment of showing that §§ 7-2502.01, 7-2506.01, and 22-4504 are narrowly tailored to effectively advance a compelling interest, but the District waived any argument on these two issues in its Opposition.[9] *Catawba Cnty. v. EPA*, 571 F.3d 20, 38 (2009) (petitioners waive those arguments that they fail to raise in their opening briefs). The "Non-resident Plaintiffs" are entitled to summary judgment on their equal protection claims for the reasons given in their Motion. [ECF 121].

### B.  *The non-Resident Plaintiffs are entitled to summary judgment on their right to travel claim.*

The non-Resident Plaintiffs are entitled to summary judgment on their right to travel claim because §§ 7-2502.01, 7-2506.01, and 22-4504 in effect during the Class Period penalized plaintiffs for traveling interstate by treating D.C.-resident gun owners differently from non—D.C.-resident gun owners, *Smith*, 387 F. Supp. 3d at 29, this *de facto* residency requirement did restrict plaintiffs' fundamental right to have a handgun for individual self-defense, thereby triggering strict scrutiny, *Id.*, and the District failed to carry its burden of justifying the classification under the applicable strict scrutiny standard. *Id.* at 30 (prove the infringement is narrowly tailored to serve a compelling state interest).

---

[9] Waiver is the "intentional relinquishment or abandonment of a known right or privilege," whereas forfeiture is the "failure to make the timely assertion of a right." *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 94 (D.D.C. 2019).

The District's cross motion for summary judgment fails for the same reason. At the end of the day the District failed to put on facts to justify the classification under the applicable strict scrutiny standard as Rule 56(c) required.

In both Plaintiffs' motion and the District's cross-motion the District had the burden of proving that the classification is narrowly tailored to serve a compelling state interest. *Celotex Corp.*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Figueroa*, 923 F.3d at 1094 (party that bears the burden at trial bears the burden at summary judgment); *Tech 7 Sys. v. Vacation Acquisition*, LLC, 594 F. Supp. 2d 76, 80 (D.D.C. 2009)(JDB)(party asserting affirmative defense has burden of establishing the defense on summary judgment even when it is the non-movant); Subdivision (c)(1)(B); Committee Notes on Rules — 2010 Amendment.

The District injured the non-Resident Plaintiffs by enforcing its gun laws against them. SMF # 1. The District does not challenge any of the fact components Plaintiffs' SMFs relating to its discriminatory gun laws in effect during the Class Period. *See e.g.*, Plaintiffs' SMF ## 109-111. See also Defendant's SMF# 8 (Ms. Smith); # 13-15 (Mr. Cassagnol); # 19 (Mr. Rouse); # 22 (Mr. Davis); #  25 (Ms. Buffaloe).

Moreover, as a matter of law, Plaintiffs established that §§ 7-2502.01, 7-2506.01, and 22-4504 impinge on their fundamental right to travel interstate, and thus merit strict scrutiny. *Smith*, 387 F. Supp. 3d at 29. Plaintiffs established that the laws use a classification — gun ownership — to penalize exercising the right. *Id.*

As a result, the District had the burden under strict scrutiny to prove the infringement is narrowly tailored to serve a compelling state interest. Smith v. District of Columbia, 387 F. Supp. 3d 8, 30 (D.D.C. 2019).

The District waived its right in its Opposition to put on facts establishing that the infringement is narrowly tailored to serve a compelling state interest by failing to put on any facts as Rule 56(c) required.

The District concedes this claim for both Plaintiffs' motion and its own cross motion for summary judgment by conceding that this Court found that "strict scrutiny" applied, because the laws discriminated between residents and non-residents in allowing the exercise of a "fundamental right," i.e., carrying a handgun for self-defense.[10] Id. at 27-29.

But, the District effectively asks the Court to reconsider this legal ruling because the District contends in its Opposition/ Cross Motion the right to carry a gun outside the home for self-defense is not a fundamental right. Def.'s Opp'n, ECF p. 20. But, the time for reconsideration of the court's ruling has passed. Moreover, the District does not establish grounds for reconsideration. Under the standard for reconsideration the movant must show that the Court "patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, an error not of reasoning, but of apprehension, or where a controlling or

---

[10] The District relies on the legal argument that "... plaintiffs fail to argue or provide any evidence that their travel into or through the District has been impeded or even discouraged by the former laws." This Court rejected this argument at the motion to dismiss stage. "Plaintiffs do not argue the laws actually deter or try to impede interstate travel." Smith, 387 F. Supp. 3d at 29. "But plaintiffs do adequately contend the laws use a classification—gun ownership—to penalize exercising the right." Id. The "home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period and its other gun laws "penalize the exercise of the right to travel interstate when they prohibit a person who has recently traveled to the state from enjoying a right available to a longer-term resident of that state." Id. at 30 (cleaned up). §§ 7-2502.01, 7-2506.01, and 22-4504 take away the fundamental right to have a handgun for individual self-defense from non-D.C. residents who enter the District. Id. (law forcing plaintiffs to surrender a fundamental right before traveling interstate impacts the right to travel).

significant change in the law or facts has occurred since the submission of the issue to the Court."
*Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)(cleaned up). But, the District shows none of
these reasons.

Rather, the District asks this Court (Def.'s Opp'n, ECF p. 20.), to reject its holding that
Plaintiffs have a fundamental right to carry a hand gun in public for self-defense on the basis of
arguments certain regarding regulatory measures the *Wrenn* Court analyzed and reelected, and an
out of Circuit decision that was decided six years before this Court ruled on the District's motion
to dismiss. *See Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)( there is no constitutional
right to carry a concealed handgun in public).

First, the argument that the District advances, "longstanding" licensing and registration
regulations referenced in *Heller I* demonstrate that the right to carry handguns in in public is not a
fundamental right protected by the core Second Amendment right, Def.'s Opp'n, ECF p. 20, was
carefully analyzed and rejected by the D.C. Circuit in *Wrenn*. *Wrenn*, 864 F.3d at 659-661.

In *Wrenn* the D.C. Circuit analyzed and rejected the District's arguments that legal
regulations of possession or carrying that are "longstanding" reflect limits to the preexisting right
protected by the Amendment which "so shrank the right later enshrined by the Amendment as to
leave good-reason laws beyond its reach." *Wrenn*, 864 F.3d at 659-661 (rejecting District's
contention that so-called Northampton laws and surety laws show that Second Amendment does
not extend to carrying hand guns in public for self-defense; holding individual right to carry
common firearms beyond the home for self-defense—even in densely populated areas, even for
those lacking special self-defense needs—falls within the core of the Second Amendment's
protections).

Second, the central legal premise the District fails to grasp on this issue is that this Court's
holding in *Palmer* that the District's gun control laws violated fundamental Second Amendment

right to carry a hand gun in public, *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 182-83 (D.D.C. 2014), has claim and issue preclusion effect on the District in this case. *Hurd v. District of Columbia*, 864 F.3d 671, 679 (2017)("[i]ssue preclusion makes 'the determination of a question directly involved in one action . . . conclusive as to that question in a second suit.'"); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (1992). So even if the Supreme Court were to hold at some point in the future that there is no Second Amendment right to carry a hand gun in public that holding would not save the District from the legal consequences of its decision to dismiss its appeal in *Palmer. Palmer v. District of Columbia*, No. 14-7180, 2015 U.S. App. LEXIS 6414 (D.C. Cir. Apr. 2, 2015) (mem., appeal dismissed).

Moreover, at all times after *Heller I* during the Class Period the District had a total ban on registering and licensing guns for carriage outside the home. The District's policy making body – the D.C. Council – specifically limited the right to register a hand gun outside the home. The Firearms Control Emergency Amendment Act of 2008 (amending § 7-2502.02(a)(4) to allow residents to register handguns for use in the home). And the same Council, less than six months after the Supreme Court decided *Heller I*, erased the Chief of Police's authority to grant licenses to carry a hand gun outside the home. D.C. Code § 22-4506, repealed by Inoperable Pistol Amendment Act of 2008, § 2(f), 56 D.C. Reg. 1162 (May 20, 2009), revived and amended by License to Carry a Pistol Amendment Act § 3(b); Palmer, 59 F. Supp. 3d at 176. And, of course, during the Class Period, non-Residents were banned from even owning or registering guns for any purpose. Smith v. District of Columbia, 387 F. Supp. 3d 8, 26 (D.D.C. 2019); *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 182-83; SMF ## 109 (Undisputed).

So there was simply no regulatory measure for the Plaintiffs and other class members to comply with. Moreover, registration and licensing are not preconditions to the fundamental right to carry a handgun in public for self-defense. *Heller I*, 554 U.S. at 626-27 & n. 26 (no indication that

registration and licensing are preconditions to exercise of Second Amendment). In fact, in *Heller II*, then Judge Kavanaugh (dissenting) argued that basic registration requirements violate the Second Amendment because they are not "longstanding." *Heller II*, 670 F.3d at 1271-72.

Finally, the safe harbor provisions do not undercut Plaintiffs' statement that prior to the current licensing scheme, "nonresidents could not own guns in the District," as the District contends. Def.'s Opp'n, ECF p. 23.

First, as a matter of fact, the District has admitted in a judicial admission that "[a]t the time of plaintiffs' arrests and seizures, no person—resident or non-resident—could carry a handgun or ammunition outside the home."[11] "Defendant's Statement of the Bases for its Defenses," Meet and Confer Statement [73], p. 5.

Second, as a matter of law, the safe harbor only permitted a person to transport weapons unloaded and locked up or otherwise inaccessible from the passenger compartment of a car which defeats the purpose of safe defense. *See D.C. Code 22-4504.02; 18 U.S.C. § 926A*. Moreover, the safe harbor only allowed a person carrying a handgun to transit the District, not to remain in the District. The safe harbor did not allow public carriage outside the prescribed locations for a person remaining in the District. *Id.* Moreover, the District failed to establish that the safe harbors were sufficiently broad to convert the complete ban on carrying a handgun in person that obtained in the District during the Class Period into a constitutionally permissible regulatory scheme. *See Smith*, 387 F. Supp. 3d at 25.

---

[11] *Taylor v. Blakey*, 490 F.3d 965, 973 (D.C. Cir. 2007), *rev'd on other grounds*, 553 U.S. 880 (2008) (party's statement in his motion for discovery, however, may be treated as an 'admission on file' under Fed. R. Civ. P. 56(c)[(A)]. Earlier versions of Fed. R. Civ. P. 56(c) used the term "admissions on file."

Another key point that the District failed to address is that the claim applies across the board to all non-Resident class members with the possible exception of violent felons or felons without regard to restricted category offenses.

### III. Claim 6: Plaintiffs Ms. Smith, Mr. Cassagnol, Mr. Rouse And Mr. Davis Are Entitled To Summary Judgment On Their Wrongful Detention Of Property Claim; District Not Entitled To Summary Judgment.

Plaintiffs Ms. Smith, Mr. Cassagnol, Mr. Rouse and Mr. Davis are entitled to summary judgment on their Claim 6 because the record shows the MPD seized their guns, ammunition, and gun-related property incident to arrest, classified it as evidence, and held it long after their U.S. Attorney cases were over, and the District did not justify the wrongful detention.

Moreover, the District's cross motion for summary judgment on this claim should be denied because the District's "long and significant intrusion on plaintiffs' possessory rights" violated their Fourth Amendment rights, and the District failed to carry its burden of justifying the intrusion. Smith, 387 F. Supp. 3d at 25 (burden on District to justify the intrusion).

Therefore, as for plaintiffs' motion, even though Plaintiffs are movants, the District still bears the burden of putting on facts to establish a justification at summary judgment for both Plaintiffs' motion and the District's own cross-motion. *Figueroa v. Pompeo*, 923 F.3d 1078, 1094 (2019)(party that bears the burden at trial bears the burden at summary judgment); Subdivision (c)(1)(B); Committee Notes on Rules – 2010 Amendment; *Tech 7 Sys. v. Vacation Acquisition*, LLC, 594 F. Supp. 2d 76, 80 (D.D.C. 2009)(JDB); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 73-74 (D.D.C. 2015). And of course the District bears the burden on its own cross motion as well as movant. *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 155 n.3 (D.D.C. 2005) (citing Moore's; each individual

summary judgment motion must be evaluated independently and cross-motions for summary judgment are no different than solitary summary judgment motion).

As with their arguments in Claim 3, the District bases its opposition to Plaintiffs' Claim 6 on arguments that this Court rejected in the Memorandum Opinion.

The District contends:

... plaintiffs fail to demonstrate that the Fourth Amendment is even applicable to the disposition of property lawfully seized by the government. Neither the Supreme Court nor the D.C. Circuit has embraced the "continuing seizure" of property theory espoused by plaintiffs here.

Def.'s Opp'n, ECF pp. 24-25.

But, this Court held that "the Fourth Amendment permits seizures only for as long as necessary. Once a justification loses force, the government must cease the seizure or come up with a new justification." *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019); *Avila v. Dailey*, 246 F. Supp. 3d 347, 358 (D.D.C. 2017); *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017) (plaintiff states a claim under the 4th Amendment where the government seized their vehicle under an administrative forfeiture statute and held it after probable cause evaporated even though the original seizure was supported by probable cause)*cert. denied Los Angeles v. Brewster*, 138 S. Ct. 1284 (2018).

Moreover, the burden to justify continuing seizure after the ongoing prosecutions ended falls on the District. *Smith*, 387 F. Supp. 3d at 25. To carry this burden the District must show that "the nature and quality of the intrusion on the individual's Fourth Amendment interests [outweighs] the importance of the governmental interests alleged to justify the intrusion." *Id.*

The District's only asserted interest in retaining the handguns after a case is over is its generalized "interest in public safety, prevention of crime and the protection of law enforcement officers" which, the District claims, is threatened by allowing the "People" to own and to carry

handguns. Def.'s Opp'n, ECF p. 26. But the District's only basis for classifying handguns as too "dangerous" for the "People" to own and carry in public is its own statutes defining handguns as "dangerous items" which, if carried without being registered, should be destroyed. D.C. Code § 22-4517.

The District assumes the validity of the statute; but, as this Court held D.C. Code § 22-4517 "enjoys no presumption of validity" because it "implicates plaintiffs' fundamental right to have a handgun for individual self-defense." *Smith*, 387 F. Supp. 3d at 25. The burden was on the District to justify the statute. But the District failed. Therefore the premise of the District's argument – unregistered handguns are too dangerous for the People to own and carry, fails.

First, the statute fails because it functioned during the Class Period as part of the District's total ban on owning and carrying guns outside the home because the "home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period effected a "complete ban on the carrying of handguns in public."

Moreover, the registration regulation violates the Second Amendment because it is not "longstanding," and as a total ban it has more than a *de minimis* effect upon the Second Amendment right. *Heller II*, 670 F.3d at 1270, 1271-72 (then Judge Kavanaugh dissenting).

Even applying the test "strict scrutiny" test the two judge majority adopted in *Heller II* the statute fails because "the registration requirements plainly implicate the core Second Amendment right" but, the District did not carry its burden of showing that, applying intermediate scrutiny, there is a substantial relationship or reasonable "fit" between, on the one hand, the total ban on and owning and carting handguns outside the home, and, on the other, its important interests in protecting police officers and controlling crime. *Heller II*, 670 F.3d at 1262.

In fact, as the Supreme Court held in *Heller I*, "the [home] handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that

lawful purpose" of self-defense. *Heller I*, 554 U.S. at 628-29. The Court further defined the handgun as ""the most preferred firearm in the nation to 'keep' and use for protection of one's home and family." *Id.*

The District points to nothing that makes a handgun more dangerous simply from being outside the home. And there is nothing. This Court in *Palmer* and *Smith*, and the D.C. Circuit in *Wrenn* held that there is a Second Amendment right of the "People" to carry a handgun in public for self-defense. *See e.g., Wrenn*, 864 F.3d at 659, 667 (the Second Amendment's core generally covers carrying in public for self-defense; striking down District's good-reason law as an unconstitutional total ban on carrying handguns outside of the home).

Therefore, the District's asserted safety interest based on D.C. Code § 22-4517's classification of handguns as "dangerous" is insufficient to justify the continued retention of handguns given the presumption of unconstitutionally of D.C. Code § 22-4517.*See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019).

And to the extent the District contends that an unregistered handgun is "dangerous" merely because it was not registered because from long before the start of the class period until the D.C. Circuit's decision in *Wrenn* there was no way for anyone to register a handgun for carriage outside the home. Moreover, the Wrenn Court rejected the District's argument that longstanding regulations on handguns reduced the right to have a hand gun to the home. *Wrenn*, 864 F.3d at 659-661.

And the quote from *DeFillippo* the District cites, Def.'s Opp'n ECF p. 27, applies to individual "beat" officers not municipalities for the reasons explained in *Owen*. Cf. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)("Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.") with *Owen*, 445 U.S. at 651-52 (no qualified immunity for municipalities because

of the compensation rationale and to create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights).

The District also argues that "Plaintiffs offer no compelling counterbalancing interest." Def.'s Opp'n, ECF p. 27. But Plaintiffs do not have to. The burden is on the District, *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019), even at summary judgment. *Tech 7 Sys., 594 F. Supp. 2d at 80; Paleteria La Michoacana, Inc., 79 F. Supp. 3d at 73-74.*

And whether the "the unlawful retention of specific firearms does not violate the Second Amendment," Def.'s Opp'n, ECF p. 27, is irrelevant to Plaintiffs' Fourth Amendment claim. *Soldal v. Cook County*, 506 U.S. 56, 70 (1992). The Supreme Court and the D.C. Circuit have rejected the proposition that just because municipal conduct passes muster under one Constitutional provision means the Constitution bars recovery for the same conduct under a different constitutional provision. *Id.* Certain wrongs affect more than a single right and so they can implicate more than one of the Constitution's commands, and so each claim based on a different constitutional provision must be analyzed separately. *Soldal*, 506 U.S. at 70. Nor does the Court look for a "dominant" provision. *Id.* So, when the same conduct affects more than a single right, each claim based on each right is independently actionable without satisfying all the elements of the other claims based on the other rights. *Id.*; *Hedgepeth v. Washington Metropolitan Area Transit Auth.*, 386 F. 3d 1148, 1156 (D.C. Cir. 2004)( "simply because a practice passes muster under the Fourth Amendment (arrest based on probable cause does not mean that unequal treatment with respect to that practice is consistent with equal protection."). This rule is especially strong where, as here, plaintiffs sue a municipality for injuries flowing from an arrest caused by a municipal policy. *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1951, 1954-55 (2018); *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

The Second Amendment is relevant to show that the statute that the District relies on as the basis for its "safety" interest is unconstitutional under the Second Amendment and thus does not support a safety interest. But it does not bar Plaintiffs' Fourth Amendment claim.

Nor does whether any Plaintiff made a demand for their handgun affect liability or any other aspect of the claim. See Def.'s Opp'n, ECF p. 28. The statute by its terms required a District registration certificate to reclaim the gun and those were not available for owners until after the *Wrenn* decision in 2017. In fact, during the Class Period there was not even a provision for registering a handgun outside the home in the District's laws whether an applicant established good cause or not. *Palmer*, 59 F. Supp. 3d at 183 ("home limitations" of § 7-2502.02(a)(4) and D.C. Code § 22-4504(a) in effect during the Class Period effected a "complete ban on the carrying of handguns in public"). Therefore, the District is wrong to say that: "Plaintiffs acknowledge that such efforts would not have been futile" as the District contends. *Id.*  In fact, even an appeal to Superior Court during the Class Period would have been futile because the District of Columbia Court of Appeals took the position throughout the class period -- and still does -- that the Second Amendment does not give persons the right to carry hand guns outside the home. *Hooks v. United States*, 191 A.3d 1141, 1144, n.3 (D.C. 2018)(assuming without deciding that *Wrenn* was decided correctly, and noting that the court "has consistently held, contrary to *Wrenn*, that 'there is no Second Amendment right to carry a concealed firearm in public.'"); *Golden v. United States*, 2021 D.C. App. LEXIS 100, at *36 (Apr. 15, 2021)(same).

Moreover, Plaintiffs and other owners had no way of knowing that the District had a secret procedure for returning handguns to residents of other states by Fed Ex. Actual knowledge of a seizure is not the same as actual knowledge of a forfeiture determination hearing. *Jones v. Flowers*, 547 U.S. 220, 234 (2006); *Small v. United States*, 136 F.3d 1334, 1335 (D.C. Cir. 1998) (defendant's actual knowledge that his property was seized by the DEA did not preclude a

challenge to the forfeiture of his property based on lack of notice of the forfeiture proceedings). To be sure, a person must be charged with knowledge of "published, generally available state statutes and case law." *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999). But, a person is not charged with secret or internal administrative procedures. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 (1978); *Gates v. City of Chicago*, 623 F.3d 389, 400 (7th Cir. 2010) (property owners not charged with knowledge of procedures for return of seized property the police department actually employed which were not available in documents that are published and generally available).

Also, whether Plaintiffs directly or through counsel asked for their guns back is a mitigation of damages defense irrelevant at the damages phase. But, in any event, no mitigation of damages defense is available to the District even at the damages phase because Plaintiffs' claim was in the nature of an intentional wrongful detention not a negligence claim. *See Restatement Second*, § 931.[12]

Mitigation principles do not apply to the tort of wrongful detention of personal property. *Adenariwo v. FMC*, 808 F.3d 74, 79 (2015) (substitution is a mitigation of damages principle, and

---

[12] Because § 1983 does not provide remedies for violations of constitutional provisions, the starting point for determining the measure of damages for § 1983 claims is the "analogous common law cause of action," and the "common-law tort rules of damages" using common law principles found in treatises and the Restatement, not the law of the state where the district court is sitting. *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978); Michael Wells, *Constitutional Remedies, Section 1983 and the Common Law*, 68 Miss. L.J. 157 (1998)(in § 1983 cases Supreme Court looks to treatises and the Restatement for common-law tort rules of damages to deciding the appropriate measure of damages). For example, in *Carey* the Court relied on F. Harper & F. James, *Law of Torts* § 25.1, p. 1299 (1956) and D. Dobbs, *Law of Remedies* § 3.1, pp. 135-138 (1973) for the principle that compensation for the injury caused to plaintiff by defendant is the measure of damages, *Carey*, 435 U.S. at 255, and it also expressly cited *Restatement (Second) of Torts* (1977) and other treatises for analogous common law tort and types of damages. *Carey*, 435 U.S. at notes 7, 17, 18, and 23.

*Restatement 2d Torts* § 924 through § 932 deal with the specific rules of damages peculiarly applicable to the torts listed in these sections.

[m]itigation does not allow a wrongdoer to shift the cost of its malfeasance to the injured party").

So, Plaintiffs do not have to prove that the period of detention was reasonable, or they actually ever used their vehicles or rented a substitute vehicle in order to receive the daily fair market rental rate, because are mitigation of damages principles. Id.

Also, since the District did not plead the mitigation of damages doctrine or ever even raise it, the District waived it. *Lennon v. US Theatre Corp*, 920 F.2d 996, 1000 (D.C. Cir. 1990). The District waived any affirmative defenses to this claim because the District asserted no affirmative defenses to this claim in its Answer to Plaintiffs' Third Amended Complaint. *Harris v. Secretary, U.S. Department of Veterans Affairs*, 126 F.3d 339, 343, 345 (D.C. Cir. 1997)"["A"] party's failure to plead an affirmative defense . . . generally results in the waiver of that defense and its exclusion from the case," and that under Rule 8(c) "a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Id.* (cleaned up).

## IV. Conclusion.

Wherefore Plaintiffs move this Court to grant Plaintiffs' partial motion for summary judgment on all claims as to liability and their claim to expunge their arrest records.

Respectfully submitted,

/s/ William Claiborne
William Claiborne
DC Bar # 446579
Counsel for Plaintiffs

717 D Street, NW
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email clairbornelaw@gmail.com