UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAGGIE SMITH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 15-737 (RCL) |

## DEFENDANT'S REPLY IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs' reply and opposition brief primarily addresses arguments the District of Columbia (the District) did not make in its cross-motion for summary judgment. The Court should deny plaintiffs' motion for summary judgment and grant the District's cross-motion, because plaintiffs fail to dispute the District's key material facts, and the District is entitled to judgment as a matter of law.

On plaintiffs' Second Amendment claim, the District's actions did not violate the Constitution because plaintiffs were never deprived of a fundamental right under the Second Amendment, and the statute at issue was not the driving force of plaintiffs' alleged injuries. The District did not violate plaintiffs' Fifth Amendment rights because such claims are duplicative of their Second Amendment claims, and the purported impermissible "classification" did not exist at the time of their arrests. Finally, judgment on plaintiffs' Fourth Amendment claims should be awarded to the

District because there was no "continuing seizure" of property, or, if the Fourth Amendment does apply, any "reasonableness" balancing tips in favor of the District because the seized property was dangerous to public safety and plaintiffs failed to take advantage of any codified or informal channel to seek retrieval of that property.

## ARGUMENT

I. <u>The District is Entitled to Summary Judgment on Plaintiffs' Second Amendment Claim.</u>

   A. <u>There Are No Genuine Disputes of Material Fact.</u>

Plaintiffs begin on the wrong foot, claiming that their facts should be "deemed admitted" because the District "did not oppose the Plaintiffs' facts with its own facts … ." *See* Pls.' Reply and Opp. [136] at 2 (citing *Grimes v. District of Columbia*, 794 F.3d 83, 96–97 (D.C. Cir. 2015) (Griffith, J., concurring)). Plaintiffs are incorrect. The District submitted its own statement of undisputed material facts, and additionally responded to each and every statement of undisputed material facts submitted by plaintiffs, indicating which facts are disputed, irrelevant, or legal conclusions rather than facts. *See* Def.'s Statement of Undisputed Material Facts (Def.'s SMF) [134-1].

In any case, "the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case … ." *Grimes*, 794 F.3d at 93; *see also id.* ("[T]he Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), made clear that any suggestion in [*Adickes v. Kress*, 398 U.S. 144 (1970)] that a defendant seeking summary judgment must come forward with evidence was a misreading of Rule 56."). The Circuit in *Grimes* merely confirmed that "a district

court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* at 95.

On the other hand, plaintiffs themselves fail substantively to dispute any of the District's material facts and point to no evidence in the record that would give rise to a genuine dispute of material fact. *See* District's Statement of Material Facts as to Which There Is No Genuine Dispute and Pls.' Objections (Pls.' Objections) [137-1]. Plaintiffs purport to dispute Def.'s SMF ¶ 7, *see* Pls.' Objections at 2–3, as a "legal argument," but the operative, material fact—that the Council of the District of Columbia passed a series of acts to maintain a public-carry regime—cannot be reasonably disputed because it is a matter of public record.

Thus, the Court can consider the District's facts "undisputed" because plaintiffs "fail[ed] to properly address [them]." *Dutton v. Dep't of Justice*, 302 F. Supp. 3d 109, 126 n.6 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56). Indeed, in plaintiffs' response to the District's SMF, there are no citations to record evidence in the second column of plaintiffs' table. *See* Pls.' Objections. In contrast, the District's response to plaintiffs' asserted material facts pointed to specific evidence in the record—directly after each assertion by plaintiffs—supporting its claims that the fact was disputed. *See generally* Def.'s Response to Pls.' Statement of Material Facts as to Which There Is No Genuine Dispute (Def.'s Response Pls.' SMF) [133-1] at 2, 5, 6, 9, 12, 19, 20, 26, 27, 28, 29, 31, 32, 33.

### B. Plaintiffs' "Law Abiding" and "Felon-in-Possession" Arguments are Irrelevant.

In response to the District's Second Amendment arguments, plaintiffs expend several pages asserting their "law abiding" nature and contesting the "felon-in-possession" ban in federal law, Pls.' Reply and Opp. at 5–14, arguing that "the District is estopped from arguing that a felony conviction or other conviction excludes any Named Plaintiff or class member from the category of law abiding persons … ." *Id.* at 8. Plaintiffs' argument that a person is "presumed" to be law-abiding for purposes of the Second Amendment, *id.* at 6, is unsupported and irrelevant. *Heller v. District of Columbia*, 554 U.S. 570 (2008) (*Heller I*) simply stands for the proposition that the Second Amendment protects law-abiding, responsible gun owners, and that not every person enjoys the full scope of rights under that amendment. *Id.* at 626. Plaintiffs' citation to *United States v. Black*, 707 F.3d 531 (4th Cir. 2013) is also unpersuasive. There, the Fourth Circuit held only that openly carrying a firearm in a jurisdiction in which that act was legal does not provide probable cause for an investigatory detention. *Id.* at 539–40. But here, no plaintiff was arrested for a non-weapons charge, *see* Def.'s Response Pls.' SMF at 2, and the District has not argued that plaintiffs have prior criminal convictions. In sum, the District's argument does not rely on asserting that the named plaintiffs were barred from gun ownership due to not being "law abiding."[1]

---

[1] In any case, it is settled law that the government may constitutionally prohibit felons and even certain misdemeanants from gun ownership. *See Schrader v. Holder*, 704 F.3d 980, 989–91 (D.C. Cir. 2013) (applying "intermediate scrutiny" and holding that a federal law "disarming common-law misdemeanants" survives Second

Plaintiffs then argue that the District's "deliberate indifference was the moving force behind arrests, detentions, prosecutions and re-prosecutions for the period." *Id.* at 17–18. But this line of argument is another red herring—plaintiffs have never raised a "deliberate indifference" theory here, in any version of their complaint.

Plaintiffs disagree with the District's conclusion that the Second Amendment right to carry a handgun in public did not exist prior to *Palmer v. District of Columbia,* 59 F. Supp. 3d 173 (D.D.C. 2014), *see* Pls.' Reply and Opp. at 19, but they remain incorrect. In every practical sense, the "right" did not exist until Judge Scullin pronounced it and the District subsequently dismissed its appeal. *See Palmer v. District of Columbia*, No. 14-7180, 2015 WL 1607711 (D.C. Cir. Apr. 2, 2015) (dismissing appeal). Prior to that date, it was illegal for anyone—resident and non-resident alike—to carry a gun in public in the District, licensed or otherwise. Plaintiff cannot point to any controlling case prior to *Palmer* saying otherwise because there are none.[2]

The ban on public carrying of handguns was in place in the District for decades. If a particular firearm regulation is "longstanding," it is "presumptively lawful," *i.e.*,

---

Amendment challenge) (citing, among others, *United States v. Salerno*, 481 U.S. 739, 750 (1987) (The "general interest in preventing crime is compelling.")).

[2]  Plaintiffs are correct in noting that the Supreme Court found that "the Second Amendment … codified a pre-existing right." Pls.' Reply and Opp. at 19 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). But that assertion misses the point; the District's laws prohibiting public carry were not unconstitutional *until* Judge Scullin so found. The District is not arguing that it cannot be liable for its unconstitutional laws, only that nobody knew the laws were unconstitutional until *Palmer*.

it is "presumed not to burden conduct within the scope of the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) (*Heller II*) (quoting *Heller I*, 554 U.S. at \*\*);[3] *see also Heller II*, 670 F.3d at 1253–54 (early 20th century state handgun-registration laws are presumptively lawful).

This is the backdrop against which the disputed arrests were made. And while "unconstitutional criminal laws [may] besiege free-standing substantive rights," *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 27 (D.D.C. 2019), the public-carry right did not exist pre-*Palmer*. Even after *Palmer*, there is no free-standing Second Amendment right to carry a firearm without needing to acquire any permit whatsoever. *See Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017). Plaintiffs fail to dispute or rebut this conclusion.

Relatedly, plaintiffs argue that "registration and licensing are not preconditions to the fundamental right to carry a handgun in public for self-defense." Pls.' Reply and Opp. at 34. But that argument is flatly contracted by *Heller I*. There, the Supreme Court did not order the District to allow Mr. Heller to carry his handgun wherever he wanted, it said the District must permit him "to *register* his handgun." *Heller I*, 554 U.S. at 635 (emphasis added); *see also Heller II*, 670 F.3d at 1254–55 (upholding basic registration requirement for handguns); *Heller v. District of Columbia*, 801 F.3d 264, 273–74 (D.C. Cir. 2015) (*Heller III*) (upholding basic

---

[3] The Act of July 8, 1932, Pub. L. No. 72-275, 47 Stat. 651, prohibited the public carrying of weapons in the District without a license. *Cf. Bshara v. United States*, 646 A.2d 993, 996 n.2 (D.C. 1994) ("It is common knowledge, however, that with very rare exceptions licenses to carry pistols have not been issued in the District of Columbia for many years and are virtually unobtainable.").

registration requirement for long guns); *Wrenn*, 864 F.3d at 667 (reiterating that licensing requirements are one of the "traditional limits" of the Second Amendment right).

### C. The Challenged Laws Were Not the "Moving Force" Behind Plaintiffs' Arrests and Prosecutions.

Plaintiffs' conduct—carrying firearms in public in the District without a license—is not now (and never has been) constitutionally protected by the Second Amendment, even if some of the statutes they were charged under were unconstitutional. *See Wrenn*, 864 F.3d at 667. Put another way, if plaintiffs' conduct was not protected, there was no constitutional violation or injury in their arrest, and therefore whatever the "moving force" was behind their arrests is irrelevant. *See* Pls.' Reply and Opp. at 14–15. *Cf., e.g., Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 261 (D.D.C. 2017) ("[A] municipality 'is not liable under § 1983 unless a municipal "policy" or "custom" is the moving force behind the constitutional violation.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 3809 (1989) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

To reiterate, the District does not dispute that the referenced statues were held unconstitutional, or that municipalities can be liable for statutes later deemed unconstitutional. But plaintiffs' conduct here has always been *outside* the protection of the Second Amendment, *see* D.C. Code § 22-4504(a) (2020), hence the District is not liable under 42 U.S.C. § 1983.

## II. Plaintiffs Are Not Entitled to Summary Judgment on Their Fifth Amendment Claim.

Plaintiffs argue that because the challenged laws "use a classification—gun ownership—to penalize exercising the right" to travel, "strict scrutiny" applies to the District's actions. Pls.' Reply and Opp. at 31–32. Not so.

Although it is true that *Palmer* extended the reach of the Second Amendment to carry handguns outside the home, the D.C. Circuit clarified that that right was "subject to longstanding restrictions" such as "licensing requirements[.]" *Wrenn*, 864 F.3d at 667. As shown, "gun ownership" itself is not "fundamental" in this sense, because even in *Heller I*, the Supreme Court implicitly authorized the District to require registration prior to the exercise of the right. 554 U.S. at 635. *Cf. Heller II*, 670 F.3d at 1257–58 ( "intermediate scrutiny … is the more appropriate standard for review of gun registration laws.").

"[T]he inherent risk that firearms pose to the public distinguishes their regulation from that of other fundamental rights." *Young v. Hawaii*, 992 F.3d 765, 827 (9th Cir. 2021) (citing *Bonidy v. U.S. Postal Svc.*, 790 F.3d 1121, 1126 (10th Cir. 2015)), *petition for certiorari docketed*, No. 20-1639 (May 25, 2021); *see also id.* ("Where the public square is concerned, states have always enjoyed broader authority to regulate firearms than speech.").

Plaintiffs fail to mention or distinguish *Culp v. Raoul*, 921 F.3d 646 (7th Cir. 2019). There, the Seventh Circuit rejected the argument that "the Second Amendment confers a fundamental right to carry a firearm in public for self-defense" and that Illinois's prohibition foreclosing "the law-abiding residents of 45 states from

8

acquiring" such a license must therefore be subject to "strict scrutiny." *Id.* at 654; *see also id.* at 658 (holding that the challenged law does not "impermissibly discriminate[] against a suspect class or deprive[] out-of-state residents of a fundamental right."). Even Illinois's almost complete ban on non-residents acquiring public-carry licenses was not subject to strict scrutiny. *Cf. Fisher v. University of Tex. at Austin*, 136 S. Ct. 2198, 2208 (2016) ("Narrow tailoring does not require exhaustion of every conceivable [permissible] alternative.") (quoting *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003)). *Cf. Heller II*, 670 F.3d at 1262–63 (applying intermediate scrutiny and upholding prohibitions on assault weapons and large-capacity magazines).

### III. The District is Entitled to Summary Judgment on Plaintiffs' Fourth Amendment Claim.

The Fourth Amendment is not applicable to the continuing retention of plaintiffs' weapons. *See* Defs.' Opp'n to Pls.' Motion for Summ. J. and Cross-Mot. for Summ. J. (Def.'s MSJ) [134] at 20–22. As this Court held, the District lawfully seized plaintiffs' guns because "police can seize weapons found in plain view or following a lawful search incident to arrest," and "plaintiffs do not dispute the weapons were either in plain view or found during a lawful search." *Smith*, 387 F. Supp. 3d at 25. Plaintiffs' challenge to the District's retention of their guns is more properly analyzed under other constitutional provisions, such as due process. *E.g.*, *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) (procedural due process), *Lee v. City of Chicago*, 330 F.3d 456, 465–66 (7th Cir. 2003) (substantive due process).

Here, the Court held that Superior Court Rule of Criminal Procedure 41(g) provides an adequate post-deprivation hearing for plaintiffs to seek the retrieval of their property. *Smith*, 387 F. Supp. 3d at 31–32; *see also Jenkins v. District of Columbia*, Civil Case No. 16-118, 2017 WL 6211103, at *4–5 (D.D.C. Mar. 28, 2017). Plaintiffs' opposition does not argue that Rule 41(g) does not satisfy due process, or that plaintiffs are incapable of utilizing it to seek the return of their property. Instead, plaintiffs accuse the District of utilizing a "secret procedure" by shipping weapons to out-of-District claimants by FedEx. Pls.' Reply and Opp. at 41. Plaintiffs do not argue that Rule 41(g) is a "secret procedure," because it plainly is not. And the fact that the District has additionally assisted individual claimants who directly requested retrieval of their property does not render Rule 41(g) "secret."

Even if the Fourth Amendment was applicable, however, to MPD's continued possession of plaintiffs' guns, such retention would be reasonable. Firearms are inherently dangerous articles, and it is reasonable for MPD to require verification that a claimant was authorized to possess a weapon before returning it to them.[4] *McIntosh v. Washington*, 395 A.2d 744, 756 (D.C. 1978) ("The Supreme Court has indicated that dangerous or deleterious devices or products are the proper subject of regulatory measures adopted in the exercise of a state's 'police powers.'") (citations omitted).

---

[4]   MPD additionally had to verify whether the claimant actually owned the claimed weapon or had other impediments to gun ownership such as an arrest warrant. *See* Pls.' Ex. 34 (Manigault Dep.) at 28:2–13.

In opposition, plaintiffs cite to *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) and *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017), but both cases are inapposite. Pls.' Reply and Opp. at 37. In *Brewster*, the police refused to release a vehicle after the owner appeared at a hearing to claim it and provided proof of ownership, registration, and a valid driver's license. 859 F.3d at 1195. Similarly, in *Avila*, the claimant repeatedly made efforts to retrieve his seized vehicle, which had been seized as evidence for the criminal prosecution of a third party. 246 F. Supp. 3d at 352–54. In both cases, the seized property was a vehicle, not a firearm, and there was no dispute that claimants were authorized to possess them.

Plaintiffs attack the premise that "unregistered handguns are too dangerous for the People to own and carry," Pls.' Reply and Opp. at 38, but pre- and post-*Palmer* cases have held that basic registration requirements are constitutional. See *Heller II*, 670 F.3d at 1254–55; *Heller III*, 801 F.3d at 273–74; *Wrenn*, 864 F.3d at 667. Though the District registration laws in effect at the time were later held unconstitutional, "police are charged to enforce laws until and unless they are declared unconstitutional … ." *Smith*, 387 F. Supp. 3d at 23 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)).[5] Leaving aside *Heller I*, whether or not a statute in question is "longstanding," Pls.' Reply and Opp. at 38, has no bearing on whether or not a police officer is charged to enforce it.

---

[5] Had plaintiffs elected to request MPD to ship their weapon to their state, those states' laws regarding gun possession would be applicable rather than the District's, and plaintiffs nowhere argue that any other state had unconstitutional restrictions on gun ownership or possession, or that the District would have been obligated to ship weapons to them *regardless* of their compliance with their home state's gun laws.

11

Plaintiffs additionally urge this Court to disregard any evidence that they failed to ask for the return of their guns, either directly, through counsel, or through Rule 41(g). Plaintiffs characterize that fact as, at most, evidence of their failure to mitigate damages. Pls.' Reply and Opp. at 42–43. But the District did not argue mitigation. Instead, the District pointed out that under the Fourth Amendment reasonableness standard, plaintiffs' complete failure to avail themselves of any procedure, formal or informal, to retrieve their weapons demonstrates that the "nature and quality of the intrusion on the individual's Fourth Amendment interests," *Smith*, 387 F. Supp. 3d at 25 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)), was minimal at most, compared to the significant governmental interest in ensuring that destructive weapons are possessed only by those authorized to do so. Def.'s MSJ at 24–26.

## CONCLUSION

For the foregoing reasons, and those in the District's cross-motion for summary judgment, the Court should grant judgment to the District on all remaining claims.

Dated:  June 14, 2021.        Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

*/s/ Andrew J. Saindon*
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General

BRENDAN HEATH [1619960]
Assistant Attorney General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (fax)
andy.saindon@dc.gov

*Counsel for Defendant*