## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No. 15-737 (RCL)** |
| **DISTRICT OF COLUMBIA,** | |
| *Defendant.* | |

### PLAINTIFFS' CONSENT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I.  Introduction.

Plaintiffs Maggie Smith, Gerard Cassagnol, Frederick Rouse, Delontay Davis, Kimberly Buffaloe and Carl Atkinson (sometimes the "Named Plaintiffs" or "Plaintiffs" or "Second Amendment Named Plaintiffs") hereby respectfully move this Court to finally certify the class defined in the Settlement Agreement and preliminarily certified in the Preliminary Approval Order [ECF No. 170] and to finally approve the class action settlement this Court preliminarily approved in its Preliminary Approval Order.

Maggie Smith, Gerard Cassagnol, Frederick Rouse, Delontay Davis, Kimberly Buffaloe and Carl Atkinson and the other class members are persons who:

> (i) in the period from May 15, 2012 (three years before the date of filing of the original complaint in this case) until October 10, 2014; (ii) was arrested or prosecuted, or whose prosecution started before the Class Period and continued during and after the Class Period; (iii) in the District of Columbia; (iv) for a violation of any of the District's gun control laws; (v) outside their home or place of business; except that the following groups of people are excluded from the class:

1) persons who were convicted of a felony before their arrests or prosecutions;

2) persons who were convicted of a domestic violence misdemeanor within the five-year period before their arrests or prosecutions;

3) persons who were subject to a judicial order compelling them to relinquish any firearms in their possession or barring them from possessing any firearms at the time of their arrests or prosecutions; and

4) persons who were convicted of at least one felony or violent misdemeanor charge arising out of the arrest.

Ms. Smith filed this class action lawsuit on May 5, 2015, challenging what she contended was the systematic violation of hers and the putative class members' constitutional rights by the District of Columbia's ("District") police department's ("MPD") in arresting them for alleged violations of the District's gun control laws in violation of their Second Amendment and in the case of non-Residents, their Fifth Amendment rights. The complaint was amended three times to add more claims and more Named Plaintiffs. [ECF No. 22], September 15, 2015, [ECF No. September 18, 2018, and [ECF No. 114], respectively. The operative complaint is the Third Amended Complaint [ECF No. 114]. This Court granted Plaintiffs' summary judgment on liability on their Second Amendment and Fifth Amendment claims on September 29,2021. [ECF No. 142], p. 1. This Court also declared each of the Named Plaintiffs' arrests a legal nullity and ordered the District to expunge their arrests in the same order. *Id.*

This settlement asks for damages and non-monetary relief. The Settlement Agreement [ECF No. 169-1] provides that the District agrees not to oppose a motion, brought individually or by Class Counsel on a Class-wide basis, to expunge and treat as a legal nullity the arrests of Class Members covered by this Settlement Agreement [ECF No. 169-1], para. 52(g).

This Motion asks the Court to finally approve the settlement this Court preliminarily approved in the Preliminary Approval Order [ECF No. 170]. There is no question that the Settlement is "fair, reasonable, and adequate" as required by existing case law and Fed. R. Civ. P. 23(e). *Rogers v. Lumina Solar, Inc.*, 2020 U.S. Dist. LEXIS 108259, at *10 (D.D.C. June 19, 2020); *Hardy v. District of Columbia*, 49 F. Supp. 3d 48, 49-50 (D.D.C. 2014); Fed. R. Civ. P. 23(e)(2).

This Motion asks the Court to finally approve the settlement this Court preliminarily approved in the Preliminary Approval Order because the Second Amendment class satisfies all of the relevant F.R.C.P. 23(a) and (b) elements. [ECF No. 170], p.2.

This motion also includes a request for the Court to approve Class Counsel's attorney's fees and the incentive award for Named Plaintiffs, the Class Representatives. The District does not oppose the requests. Plaintiffs previously filed a separate Motion to Approve the Attorneys' Fees and Costs [ECF No. 171] in this case.

Notice and claim forms were sent out on October 12 and 13, 2023. The Claims Administrator is sending out a second round of notices and claim forms on a rolling basis to class members whose initial notices and claim forms, were returned as undeliverable and for whom the Claims Administrator can find updated addresses. The Parties do not expect this will require any changes in the deadlines.

As of the last report, dated November 16, 2023, the Claims Administrator has received and processed, and expects to approve, about 71 claim forms. About 1,882 claim forms were mailed so about roughly 4% of class members have filed claim forms. Plaintiffs expect this percentage to increase as the claims period goes on because the period for submitting claim forms extends until February 10, 2024. Thus, this class is on track to meet or exceed the approximately 8% reaction rate in both *Bynum* and *Barnes*.

The deadline for submitting objections and opt-outs is November 27, 2023. So far, as of the last report, there have been no objections and no opt-outs.

The Parties will advise the Court of the reaction of the class prior to the Final Fairness Hearing, currently scheduled for December 4, at 12:30 p.m. in the Preliminary Approval Order [ECF No. 71], p. 2.

## II.  Terms of the Settlement and Final Allocation of Funds.

The terms of the settlement are set forth in greater detail in the exhibits attached to the original Proposed Preliminary Approval Order, [ECF 169], and more specifically in the Settlement Agreement, [ECF 169-1]. In summary, the proposed settlement's basic terms, as they relate to damages, are that Defendant will pay a total of $5,100,000. A total of $2,361,285.17 is allocated for distribution to the class. Each of the 1,882 class members who submits an approved claim will receive a *pro rata* share of this amount, subject to a maximum of $1,200 for one or more arrests, and an additional $1,200 for one or more prosecutions. Each class member who submits an approved claim may elect to receive their payment via check or an electronic payment method, either Venmo or Paypal. The option to elect an electronic payment method will save check cashing fees for class members who are "unbanked."

The proposed allocation in the Settlement Agreement is:

➢ $300,000 ($50,000 each) for the Class Representative as an incentive award in addition to the compensation received from the Class Fund;

➢ $2,361,285.17 is allocated to the Class Fund. Each member of the class shall receive compensation from the Class Fund if a timely notice of claim is submitted to and approved by the Class Administrator. The amount of each share shall be determined on a *pro rata* basis from the Class Fund, subject to a maximum of $1,200 for one or more arrests and $1,200 for one or more prosecutions;

➢ $1,900,000.00 for Attorney's Fees;

➢ Claims Administration - The settlement agreement provided that $25,000 be paid to the claims administrator and that payment has already been made by the District.  JND now estimates the total cost will be $[xxx][to be provided at the Final Fairness Hearing] and agrees that any additional amount will be paid in accordance with the settlement agreement;

➢ The District shall receive reversion of any undistributed funds.

### III.      The Standards for Final Approval of the Settlement Have Been Met.

In 2018 Congress adopted changes to Fed. R. Civ. P. 23(e) which basically codified prior case law. *See generally, 4 Newberg on Class Actions*, § 13:13 (Standard for granting preliminary approval—Generally).[1] But Judges in this Circuit continue to evaluate settlements under the factors established under prior case law. The touchstone remains whether the settlement is "fair, reasonable, and adequate[.]" *Roger*, 2020 U.S. Dist. LEXIS 108259, at *10; Fed. R. Civ. P. 23(e)(2).

Courts in this jurisdiction consider "a variety of factors, including: (a) whether the settlement is the result of arm's-length negotiations; (b) the terms of the settlement in relation to

---

[1] Rule 23(e) now provides that the Court may approve a class action settlement only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:
**(A)**      the class representatives and class counsel have adequately represented the class;
**(B)**      the proposal was negotiated at arm's length;
**(C)**      the relief provided for the class is adequate, taking into account:
(i)      the costs, risks, and delay of trial and appeal;
(ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)      the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)      any agreement required to be identified under Rule 23(e)(3); and
**(D)**      the proposal treats class members equitably relative to each other.
Fed. R. Civ. P. 23(e)(2).

the strengths of plaintiffs' case; (c) the status of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Roger*, 2020 U.S. Dist. LEXIS 108259, at \*10; *see also Hardy*, 49 F. Supp. 3d at, 49-50 (pre-Amendment case evaluating same five factors in finally approving class action settlement: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel").

### A.  The settlement is the Result of Arm's-Length Negotiations.

This settlement is the result of arm's length negotiations conducted by counsel with experience in civil rights class actions. Motion for Preliminary Approval, p, 13. Defense counsel likewise has litigated numerous complex civil rights class actions on behalf of the District. The Parties vigorously litigated the case for several years and entered into negotiations only after the Court issued its Order denying in part the District's motion to dismiss, a long period of discovery, summary judgment motions, consultation by Plaintiffs' counsel with an expert who reviewed District's data exports from three databases (the MPD's booking database, the Superior Court docketing database, and the District of Columbia's inmate tracking database), and after over a year of mediation in the Court's mediation program with the assistance of an experienced mediator.

### B.  The Amount of the Settlement in Relation to the Strength of Plaintiffs' Claims.

Plaintiffs addressed this issue in the submissions in support of their Motion for Preliminary Approval. Motion for Preliminary Approval [ECF No. 169], p. 10.

The terms of the settlement are favorable to the plaintiffs in relation to the strength of their case. The recovery here is in line with those in other similar cases both in the District and in

other major metropolitan areas such as Los Angeles. The terms of the settlement provide damages for all qualifying class members. Moreover, The Settlement Agreement also provides that the District agrees not to oppose a motion, brought individually or by Class Counsel on a Class-wide basis, to expunge and treat as a legal nullity the arrests of Class Members covered by this Settlement Agreement.

This case is practically unique in that it obtained damages for violations of Second Amendment rights, and expungement for arrests. Plaintiffs are not aware of any other cases anywhere that have obtained any other similar relief for persons arrested and/ or prosecuted in Second Amendment cases.

Settlement of the case was extremely difficult because of the antipathy many people in the District feels towards guns.

## C. The Status of the Litigation at the Time of the Settlement.

This case was litigated extensively. The case spanned over 8 years from date of filing (May 15, 2015) to the date of the settlement, about August 28, 2023. The District filed a motion to dismiss which Plaintiff contested vigorously. The Parties vigorously litigated the case for several years and entered into negotiations only after the Court issued its Order denying in part the District's motion to dismiss, a long period of discovery, summary judgment motions, consultation by Plaintiffs' counsel with an expert who reviewed District's data exports from three databases (the MPD's booking database, the Superior Court docketing database, and the District of Columbia's inmate tracking database), and after over a year of mediation in the Court's mediation program with the assistance of an experienced mediator.

Plaintiffs still faced a battle to certify a class and to try damages.

## D. The Complexity and Potential Costs of Trial.

This case would have presented complex issues regarding certification, especially regarding a method of trying general damages on a class-wide basis.

Thus, a complex issue arose regarding the handling of class member damages if the Class Representatives and absent class members were required to appear at individual hearings for damages.

This case would have presented complex issues regarding certification and *Monell* liability.

**E.  Reaction of the Class: The Number and Content of Claims, Objections and Opt-Outs.**

Starting on about October 12, 2023, the Claims Administrator mailed Notice Packets to the 1,882 Class Member's for whom the Claims Administrator had a mailing address.

The Claims Administrator is attempting to locate addresses for persons whose notices are returned as undeliverable.

Plaintiffs' counsel also posted about the class on the Superior Court Trial Lawyers' Association website and they informed the District of Columbia Public Defender Service ("PDS") about the case and PDS have attempted to inform their clients.

The Parties will provide the Class's reaction to the settlement in the case after the Deadline for Class Members to submit any objections to the proposed Settlement (which is November 27, 2023) at the Final Fairness Hearing. There have been no objections to date.

**F.  The Opinion of Experienced Counsel.**

As detailed in the Motion for Preliminary Approval, Class Counsel believe that this settlement is the best result achievable in the circumstances of the case. Class Counsel have based their approval of settlement on the risks of certification, trial, especially trial of damages. and appeal. Moreover, even if Plaintiffs were to win at trial and on appeal, the protracted litigation would result in considerable delay to Plaintiffs' recovery. A lower, guaranteed sum today over the

possibility of getting a larger amount (with risk of getting nothing) in the future is a rational balance, especially in today's troubled economic environment. This settlement is based upon a reasonably-anticipated claims rate of 10% which is very high in this type of case and very unlikely to be exceeded. Further, the notice contains sufficient notice provisions, and the Settlement Agreement provides a simple claims process. The risk that the Court might not certify the class as to damages which would necessitate Settlement Class Members to come forward and prove damages in mini-trials is a significant factor in Class Counsel's opinion.

### IV. The Class Administration Costs Should Be Paid.

The settlement agreement provided that $25,000 be paid to the claims administrator and that payment has already been made by the District and an additional approximately $100,000 with any overage to be paid from the class fund.  JND will provide and invoice for expenses to date plus an estimate of the total cost at the Final Fairness hearing and agrees that any additional amount will be paid in accordance with the Settlement Agreement. The Class Administrator, JND Legal Administration, will submit a declaration after the administration process is over, detailing their administration.

### V.  Attorneys' fees and Incentive awards.

Class Counsel are seeking fees in the amount of $1,900,000 inclusive of amounts paid to the expert who analyzed the arrests for probable cause. This amounts to about 37% of the class fund.

The percentage of the fund fee is reasonable considering the highly risky nature of the case, the number of hours expended, the exceptional result, the quality of representation and other factors.

This percentage is well within the range of fees awarded by District Courts in the D.C. Circuit, where District Courts have found awards of up to 45% of the fund to be reasonable. *See*

*generally, Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7-9 (D.D.C. 2008) (awarding attorneys' fee of 45% of the settlement fund); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-MS-276 (TFH), 2003 WL 22037741, *7 (D.D.C. June 16, 2003) (finding that percentage of the fund fee awards range from 15-45%); and *In re Ampicillin Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981) (finding that courts have awarded percentage of the fund attorneys' fees greater than 45% and awarding plaintiffs attorneys' fees equal to 45%).

Class Counsel filed a separate Motion for Award of Attorneys' Fees which was promptly posted on the settlement website.

The settlement also provides for an award (including both the compensatory award and an incentive award) for the Class Representatives in the amount of $50,000 each from the Class Fund. Such awards are common in class action litigation and the amount is in line with amounts paid in other cases in this District. *See e.g., Razmyar v. Bombay Club, Inc.*, 2016 U.S. Dist. LEXIS 106465, at *7-8 (D.D.C. June 13, 2016); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("Such incentive awards are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

Each Named Plaintiff has diligently fulfilled their duties and responsibilities as a Class Representative during every phase of the litigation.

### Conclusion.

For the foregoing reasons, Plaintiffs ask that the Court enter the proposed Final Approval Order to be provided at or shortly after the Final Fairness Hearing with any revisions consistent with the material provisions of the Settlement Agreement that the Court deems necessary or appropriate.

Respectfully submitted,

 /s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
717 D Street, N.W.
Suite # 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com

Counsel for Plaintiffs and the Settlement Class