# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No. 15-737 (RCL)** |
| **DISTRICT OF COLUMBIA,** | |
| *Defendant.* | |

## PLAINTIFFS' SUBMISSION ON NOTICE

At the Final Fairness hearing on December 4, 2002, this Court asked Plaintiffs to make a submission in writing about certain issues related to the proposed settlement.

One of the issues that concerned the Court was the reaction rate of the class and whether any steps could be taken to improve the reaction rate. Tr. p. 9 ("THE COURT: Are there any other steps that could be taken to try to track down the missing class members?").

Another set of issues that concerned the Court was the amount of the settlement going to the Class Counsel and the District, and the caps on individual recoveries, and other features of the proposed settlement in light of cases such as *Reynolds vs. Beneficial National Bank*, 288 F.3d 277, 282 (7th Cir.  2002)(settlement agreement looked to be product of a "reverse auction") and *Sylvester vs. Cigna Corporation*, 369 F.Supp.2d 34 (D. Me. 2005). Tr. pp. 4-5.

Plaintiffs propose addressing these two sets of issues in stages because the Parties are still discussing the issues the Court raised at the hearing.

In this memorandum Plaintiffs address the reaction rate of the class and steps Plaintiffs have taken, and can still take, to ensure notice reaches all class members to increase the reaction rate. In a subsequent memorandum, after completing discussions with the District, Plaintiffs will address the Court's concerns with the features of the proposed settlement in light of cases such as *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir.  2002) and *Sylvester v. Cigna Corporation*, 369 F.Supp.2d 34 (D. Me. 2005).

## INTRODUCTION

The two primary ways that Fed. R. Civ. P. 23 guards against class representatives and class counsel entering a settlement which does not protect the interests of absent class members are: (1) providing class members with notice of any proposed settlement, and the opportunity to object to it or, to opt out of it. *Newberg and Rubenstein on Class Actions* § 13:1 (6th ed.); Fed. R. Civ. P. 23(e)(1); Fed. R. Civ. P. 23(e)(5); Fed. R. Civ. P. 23(e)(4); and (2) the supervisory role of the Court acting as a fiduciary for the absent class members. Fed. R. Civ. P. 23(e)(2); *see Reynolds*, 288 F.3d at 280; *Newberg and Rubenstein on Class Actions* § 13:40 ("judicial review 'aims to ensure that the interests of these absent class members are safeguarded'").

### I. Plaintiffs' robust notice procedure will get notice to as many class members as practicable.

Plaintiffs' robust notice procedure provide class members with notice of the proposed settlement, and the opportunity to object to it or, to opt out of it, and a simple claim form process.

This Court ruled in the Preliminary Approval Order that's Plaintiffs' notice plan satisfies due process, the requirements of Federal Rule of Civil Procedure 23, and the Class Action Fairness Act. Preliminary Approval Order [ECF No. 170], ¶ 12. Plaintiffs are working to find

addresses for the approximately 376 class members whose notices were returned as undeliverable. As detailed below, after the first mailing JND had 713 "undeliverable" notices, but using Post Office and other resources JND has whittled that number down to 367 undeliverable notices.

Absent class members who have received notice and claim forms with identifying numbers can submit their claim forms either online or by mail, and they can elect to receive their proposed payments either by check or by electronic payment (Venmo or Paypal).

### A. Plaintiffs conducted exhaustive discovery into the District's databases and procedures to identify each class member, their charges, their convictions, and how long each was detained.

Plaintiffs conducted extensive discovery into three separate District of Columbia agency databases to identify each class members. Plaintiffs obtained and analyzed three District of Columbia databases: (1) to identify class members arrested for firearms charges (Metropolitan Police Department ("MPD") arrest booking database); (2) to identify whether the person was prosecuted, and the outcome of the prosecution (District of Columbia Superior Court docketing database); and (3) to determine whether and for how long a potential class member was held in the DC Jail (District of Columbia Department of Corrections ("DOC") inmate accounting database, JACCS. Plaintiffs conducted several depositions of persons knowledgeable the District's databases, and the District's arrest practices. Plaintiffs filed a Motion to compel the criminal history of class members and to obtain the data and to preserve the issue. Motion to Compel [ECF No. 96]; Order [ECF No. 143].

Plaintiffs worked with their data analysts to identify each class member, their charges, their convictions, and how long each was detained. Plaintiffs' data analysts have been Bennett Borden, Esq. and his team of data analysts. When the case began Mr. Borden was a partner at Faegre Drinker Biddle & Reath LLP. Mr. Borden and his team are now at DLA Piper. This

3

analysis allowed Plaintiffs to identify class members and to exclude putative class members who

had disqualifying a charge or other status such as prior felony convictions, violent

misdemeanors, and felony convictions arising from their arrests. *See* D.C. Code § 22-4503.

Plaintiffs ultimately identified about 1,882 class members.

**B. Plaintiffs' notice process satisfies both due process, Rule 23(c)(2)(B) and Rule 23(e)(1) and the Class Action Fairness Act.**

Both the due process clause of the Constitution and Rule 23 require that absent class

members in class action lawsuits receive individualized (Fed. R. Civ. P. 23(c)(2)(B)) notice that

a case has been settled, Fed. R. Civ. P. 23(e)(1) or a fee petition Fed. R. Civ. P. 23(h)(1) has been

filed.

Plaintiffs' notice process satisfies both due process and Rule 23(c)(2)(B) and Rule

23(e)(1). Notice of a proposed settlement is adequate and satisfies Rule 23 and due process if it

"fairly apprise[s] the prospective members of the class of the terms of the proposed settlement

and of the options that are open to them in connection with the proceedings." *In re Domestic

Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68(D.D.C. 2018).

Plaintiffs' notice procedure is the "best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B). *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d at 68.

Plaintiffs' notice plan also satisfies the Class Action Fairness Act.

JND Legal Administration ("Class Administrator"), a third-party Class Administrator

well known to this Court, mailed via first class mail class notices to all reasonably identifiable

class members with pre-filled, detachable, and postage-prepaid claim forms. For any physical

addresses that the District did not have or that are incomplete, the Class Administrator searched

the National Change of Address Database. The notice includes a summary of the claims and the

settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. Each of the notices contains a claim form which class members can mail or submit online.

Mailed paper notice is supplemented by a settlement website created and administered by JND by which provides a summary of the settlement, and the key terms, the class definition, and access to the important settlement documents such as the motions for preliminary approval (including attachments such as a copy of the Settlement Agreement) and final approval, copies of the notice and claim form, the motion for attorney's fees, and important deadlines, and a function for submitting claims online. https://www.smithvdcsettlement.com

Plaintiffs' original notice plan also provides for a post card reminder sent by mail, and by email where Plaintiffs have an email address, later in the claims period. The plan also provides for a 1-800 number staffed aby a live person for persons with questions or who need help in submitting a claim form. As described below, the 1-800 number helped the class action identify and fix a bug in the online claim form feature which generated a confusing error message when class members entered their identification numbers from their claim forms into the online claim form feature.

Plaintiffs submitted copies of the Notice and Claim form with their Motion for Preliminary Approval and the Court approved them. [ECF No. 169; 169-2 (notice) and 169-3 (claim form)] which this Court approved. Preliminary Approval Order [ECF No. 170], ¶¶ 12-13. There was a typographical error in the notice [ECF No. 169-2] which the Claims Administrator corrected after discussions with Plaintiffs' counsel pursuant to ¶ 13 of the Preliminary Approval Order.

Additionally, Plaintiffs provided information about the case and the settlement and the website to the District of Columbia Public Defender Service ("PDS ") (which represented many of the class members) which agreed to inform its members about the settlement and Plaintiffs also posted notice and an explanation of the case and the settlement on the Superior Court Trial Lawyers Association ("SCTLA") listserve, that is the list serve of the lawyers who represent criminal defendants in Superior Court. Many of the PDS and SCTLA lawyers represented class members, both indigent and retained class members.

      **C.**   **Plaintiffs have taken, and will continue to take, steps to ensure notice reaches as many class members as is practicable in the circumstances to increase the reaction rate.**

Plaintiffs have taken, and will continue to take, steps to ensure notice reaches as many class members as is practicable in the circumstances to provide notice and to increase the reaction rate. Plaintiffs face certain challenges such as the nature of the class and the age of the case, and thus the age of the addresses from MPD arrest and court databases.

    **1.**  **Results of JND's most recent administrative report.**

As of Friday, December 28, JND, the Claims Administrator, reports that out of 1,882 class members the total number of claims received and processed is 148. (report attached)

This breaks down into 123 total claims approved, and 25 claims processed but still pending approval. JND provides the reports every two weeks on Friday evening.

That comes out to a reaction rate of about 8% thus far. JND suggests based on its many years of experience that the reaction rate will increase after the holiday period as the original deadline nears.

There are still no objections or opt-outs.

The claims period remains open until February 10, 2024, but as discussed below, the Parties with the consent of the District plan to file a motion asking the Court to extend the claims period by 90 days.

**2. Plaintiffs are addressing the large number of "undeliverable" notices.**

Based on the calculations above there remain 1,734 class members who have not submitted claims.

After the first mailing JND had 713 "undeliverable" notices. Using the National Change of Address Database and other resources JND has whittled that number down to 367 undeliverable notices, or 367 class members for whom Plaintiffs do not have valid addresses.

Mail returned as "undeliverable," technically "Undeliverable-as-Addressed," is mail the Postal Service cannot deliver or forward or provide another address for. Typically, mail is "undeliverable" because the addressee has moved, or because the address is incomplete, incorrect or illegible. https://postalpro.usps.com/address-quality-solutions/undeliverable-addressed-uaa-mail; *Reynolds*, 288 F.3d at 282 (several million of the notices, moreover, were undeliverable, "presumably because the addressees had moved and left no forwarding address"). Thus "undeliverable" is typically returned by the Postal Service without a suggested forwarding address.

Working to identify current addresses for undeliverable notices is important not only because it may help increase the reaction rate, but it also shows that Plaintiffs have a robust notice procedure which helps dispel any suggestion that the settlement is collusive, because notice guards against class representatives and class counsel entering a settlement which does not protect the interests of absent class members. *Newberg and Rubenstein on Class Actions* § 13:1.

Attached is an email from JND discussing the Notice program including JND's analysis of the notices and the number that were returned as undeliverable by the Postal Service and what JND has done about. The main points regarding "undeliverable" notices are:

- Of the 1,882 notices originally mailed:
  - **1,436** have been delivered
  - 713 were initially returned as undeliverable Postal Service
  - **446** are currently undeliverable (though 79 are currently going through JND's advanced address research and will be remailed if new addresses are found)

- Of the 713 initially undeliverable:
  - 79 are currently going through updated address research
  - 634 went through updated addresses research; of those:
    - **290 had updated addresses and were remailed**
    - **263 have been delivered**
    - 27 were returned a second time as undeliverable (4 with updated addresses – these are being remailed)
    - **367 remain undeliverable (these are included in the list for further research)**

To address the 367 notices that remain undeliverable because of address issues Plaintiffs have developed the following plan.

**a)  District will cross ask MPD and DOC to check the names and addresses of the undeliverable notices.**

The District has agreed to provide a spreadsheet of the names and addresses of the undeliverable notices (prepared by JND) to the MPD and the DOC to ask them to look in their databases for more information about those absent class members, including cross checking for Social Security numbers for people on the list that Plaintiffs do not already have SSNs for.

**b)  Parties agree to move to extend the period for submitting claim forms.**

Plaintiffs and the District have agreed to move the Court to extend the period for submitting claim forms by bout 90 days from the current deadline of February 10, 2024, to about May 10, 2024.

**c) JND can run reverse social security cross checks.**

After the District checks for better addresses and SSNs, JND can run reverse social security cross checks (searching for addresses using SSNs like searching for names in a reverse phone book using phone numbers) for notices returned as undeliverable for whom Plaintiffs, the District and JND cannot otherwise find good addresses. Using reverse social security cross checks costs more than the usual searches using names and addresses so Plaintiffs will reserve the process for undeliverable notices.

**d) JND can send notice by email to the lawyers who represented class members in Superior Court criminal cases.**

Plaintiffs are also investigating the practicality of sending notice to the lawyers who represented class members in Superior Court criminal cases. In practice this is limited to sending notice to the lawyers of class members who were prosecuted because class members in the arrest "bucket" were "no papered" (no criminal case instituted) and in most no-papered cases no lawyer is assigned or retained. Plaintiffs have already done this generally by providing notice and an explanation of the case and the settlement to PDS and posting notice and an explanation of the case and the settlement on the "SCTLA listserve, that is the list serve of the lawyers who represent criminal defendants in Superior Court.

**e) The parties are considering other targeted media campaigns.**

The parties are considering a targeted media campaign, such as sending notices to groups of people who are class members or who have connections to class members. Sending notices to lawyers who have represented class members is a targeted media campaign. The problem of sending to a targeted group is they reach people who are not class members and that requires additional hours to screen and process such claim forms.

**f) JND has made submitting claims easier.**

JND already fixed a bug reported by class members submitting claims online regarding entering claim numbers into the on-line claim form submission function on the website.

With respect to simplifying the online claim form portal process, JND is looking into the following:

- highlighting the "File A Claim" button
- adding further directions on the homepage
- making error messages more specific (i.e., to indicate that credentials were entered incorrectly or that a claim form was already submitted)

JND considered providing simpler, alternate ID numbers or PINs for class members that have not yet filed claims but rejected the proposal because of security concerns.

**g) Mailing post card reminders to class members who have not yet submitted claim forms.**

Plaintiffs' original notice plan calls for mailing (or emailing when JND has email addresses) post card reminders to class members who have not yet submitted claim forms later in the class period. JND will send the reminders after getting updated address information from the District and the reverse social security number look ups.

Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiffs on behalf of themselves and the Settlement Class Members

717 D Street, NW
Suite 300
Washington, DC 20006
Phone 202/824-0700
Email claibornelaw@gmail.com