# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAGGIE SMITH** *et al*<br><br>On behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br><br>Defendant. | Civil Action No.: **15-737 (RCL)** |

## DECLARATION OF JOSEPH SCROFANO IN SUPPORT OF PLAINTIFF'S SUBMISSION IN RESPONSE TO THE COURT'S CONCERNS REGARDING THE FAIRNESS OF THE SETTLEMENT.

I, Joseph Scrofano, pursuant to 28 U.S.C. §1746, state under penalty of perjury that the foregoing is true and correct.

1. My name is Joseph Scrofano, and I am the founder of Scrofano Law PC, a small criminal defense firm with offices in the District of Columbia, Rockville, Maryland, and Fairfax, Virginia.

2. At Scrofano Law PC, we focus almost exclusively on representing individuals under investigation or charged with a crime in the District of Columbia, Maryland, and Virginia.

3. A large part of our practice in the District of Columbia office involves representing individuals seeking to have their arrest or conviction records sealed or expunged pursuant to the District of Columbia Code.

4. Since 2017, as part of the ordinary course of business, the firm documents incoming potential new clients through our contact management software and additional details about intake.

1

5. These details include, among other things, the type of matter, the cost we quote for each individual matter, and whether the potential new client shows up to the consultation and/or hires the firm for their matter.

6. In 2023, Scrofano Law PC was hired 40 times to prepare and file a Motion to Seal for an individual in the District of Columbia Superior Court. The numbers for previous years include 48 times in 2022, 21 times in 2021, and 37 times in 2020.

7. In total, since 2017, internal firm records reflect approximately 854 potential new clients have contacted the firm regarding sealing or expungement in D.C. Superior Court since 2017. Of those 854 individuals, 262 individuals have hired the firm to prepare a Motion to Seal in the last seven years.

8. These motions contained a mix of matters that include most aspects of the District of Columbia Code involving sealing and expungement, including Motions to Seal based on Actual Innocence pursuant to D.C. Code § 16-802, Motions to Seal based on Subsequent Legalized or Decriminalized Conduct pursuant to D.C. Code § 16-803.02, Motions to Seal based on the Interest of Public Justice § 16-803, and Motions to Set Aside Convictions under the Youth Rehabilitation Act D.C. Code § 24-901 *et seq.*

9. The firm, consistent with the prevailing custom in the District of Columbia market, charges flat fees for filing Motions to Seal in the District of Columbia Code. In setting pricing, the firm considers a variety of factors including the complexity of the previous charge or charges; the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the market rate for similar services provided; the value to the client to receive the high quality representation with the high quality customer service; the experience, reputation, and ability of the lawyer or lawyers handling the case; and

the value to the client of the predictability the individual attorney may provide them based on the individual attorney's experience dealing with the client's type of matter

10. Based on these factors, the firm sets a range of permissible fees to charge depending on the type of matter each year.  Individual attorneys therefore have discretion to set a fee within the range set by the firm.

11. The firm's most recent pricing schedule for flat fee matters for Motions to Seal based on Actual Innocence filed in the District of Columbia Superior Court are $2,500.00 to $3,500.00.

12. In addition to Motions to Seal based on Actual Innocence, I have been engaged twice to specifically file a Motion to Seal based on Subsequent Legalized or Decriminalized Conduct for individuals with a firearms related conviction prior to the class period but post-*Heller* and prior to *Palmer* when the District of Columbia had no legal mechanism to permit carrying a pistol in violation of the Second Amendment.

13. In these cases, I have made the novel argument that the effect of the *Palmer* decision subsequently legalized or decriminalized conduct previously criminalized by that specific unconstitutional iteration of the District of Columbia Code regarding carrying a pistol.  The argument is that because the Court in *Palmer* declared the statute unconstitutional and enjoined the District of Columbia from enforcing it, that had the legal effect of subsequently legalizing or decriminalizing the constitutionally protected conduct of carrying a pistol for self-defense.

14. Ordinarily, the Subsequent Legalized or Decriminalized statute is used for more clear-cut cases like possession of marijuana where the City Council explicitly legalized the conduct of possession circumscribed amounts of cannabis for personal use in 2015 by legislation.

15. Due to the complex nature of the briefing, I charge a $5,000.00 flat to file a Motion to Seal based on Subsequent Legalized or Decriminalized Offense pursuant to D.C. Code § 16-803.02

3

involving firearms offenses prior to *Palmer*. The briefing is complicated because the movant must first overcome the threshold definitional question of whether carrying a pistol pursuant to a later deemed unconstitutional statute constitutes conduct that was subsequently legalized or decriminalized.

16. In one of the motions I filed, the Chief Judge of the District of Columbia Superior Court agreed that the movant who was convicted of a firearms related offense post-*Heller* but pre-*Palmer* did engage in conduct that was subsequently legalized or decriminalized when the Court ruled that the CPWL statute was unconstitutional in *Palmer*.[1]

17. The two relevant statutes to the effect of the Proposed Final Order in this case are D.C. Code §§ 16-802 (actual innocence) and 16-803.02 (subsequent legalized or decriminalized). These two statutes are the most relevant for three reasons.

18. First, in my opinion, the only potential relief class members would be eligible to seek if they filed motions to seal on their own in the Superior Court would be § 16-803.02. Even under that statute, however, there is no guarantee that every Superior Court judge (or the District of Columbia Court of Appeals for that matter) would agree with the Chief Judge's reasoning that carrying a firearm prior to *Palmer* was subsequently legalized or decriminalized. In addition, individuals charged with other collateral, non-firearms offenses may not meet the "interest of

---

[1] The Court denied the motions on other grounds. D.C. Code § 16-803.02 is intended to apply to only offenses that were subsequently legalized or decriminalized. When the only charge was subsequently legalized or decriminalized, the burden is on the government to show the conduct was *not* subsequently legalized or decriminalized. However, the statute has a safe-harbor provision under D.C. Code § 16-803.02 (a)(2)(A) where individuals charged with additional offenses could still get relief by demonstrating its in the "interest of public justice" to seal the records. In the specific case, the Superior Court Chief Judge held the conduct was subsequently legalized or decriminalized. However, the movant had additional charges along with CPWL and the Court found it was not in the "interest of justice" to seal the records. The second motion on the same topic I filed is still pending before a different Superior Court judge.

justice" threshold even where the Court agreed with the Chief Judge on the definitional questions. It would also likely take class members substantial time to obtain relief even if they were successful.[2]

19. It is unclear and, in my view, unlikely that class members could seek relief pursuant to § 16-802 because that law does not have any explicit provision that actual innocence includes being guilty of a statute later deemed unconstitutional. Instead, the statute requires the movant to demonstrate that: "(1) The offense for which the person was arrested or charged did not occur; or (2) The movant did not commit the offense." D.C. Code § 16-802(b).

20. D.C. Code 16-802, however, is relevant because the Proposed Final Order in this case provides equivalent relief to class members as if they were granted a Motion to Seal based on Actual Innocence in Superior Court.

21. The Proposed Final Order [E.C.F. 174-1, p. 9-10] states, in relevant part:

> In accordance with the law of the District of Columbia, *see* D.C. Code § 16-802(i), the effect of this relief shall be to restore [insert name], in the contemplation of the law, to the status they occupied before being arrested or charged. No person as to whom such relief has been granted shall be held hereafter under any provision of law to be guilty of perjury or otherwise giving a false statement by reason of failure to recite or acknowledge their arrest, or charge, or trial in response to any inquiry made of them for any purpose.

22. This language cites to and is identical to D.C. Code § 16-802(i), which is important for two reasons. First, it permits the class members to legally deny arrest and conviction for "any purpose." This broad language is only contained in the Actual Innocence and Subsequent Legalized or Decriminalized Offense statute.[3]   Second, and most

---

[2] For example, the motion I filed before the Chief Judge that was ultimately denied took just under a year to be resolved. The second motion I filed has been pending since October 21, 2022.

[3] Both Set Asides under the Youth Act and Motions filed pursuant to D.C. Code § 16-803 have numerous exceptions that legally require a successful movant to still disclose arrest and/or

important, it contains the language "the effect of this relief shall be to *restore [insert name], in the contemplation of the law, to the status they occupied before being arrested or charged*" (emphasis added).  This language and relief is only available to a movant who successfully obtains an Order under D.C. Code § 16-802(i).  D.C. Code § 16-803.02 (subsequent legalized or decriminalized offense) does not contain this express language.

23. Accordingly, as part of the settlement, class members are getting "gold standard" expungement relief based on the statute they would likely otherwise be ineligible to apply for relief pursuant to.

24. The cost of obtaining such an Order at least at my firm which handles dozens of D.C. Superior Court motions to seal per year would therefore be a minimum of $2,500.00 per class member.  In addition, it is unlikely class members could obtain the same relief the Proposed Final Order provides even if they went out into the free market and sought an attorney to file a Motion to Seal based on Actual Innocence.

25. Finally, given the fact class members would be unlikely to even seek relief under the Actual Innocent statute, the cost to pursue lesser relief that does not "restore" class members to the "status they occupied before being arrested or charged" through the Subsequent Legalized or Decriminalized statute would be substantially higher due to the complexity of the briefing and approximately $5,000.00 per motion.  And, even if successful, which is not guaranteed, would provide lesser relief than what class members receive in this case.

---

conviction under certain circumstances.  In addition, Orders pursuant to the Interest of Public Justice standard do not fully seal the individuals arrest or court records.

Respectfully submitted,

/s/ Joseph A. Scrofano
JOSEPH A. SCROFANO
D.C. Bar # 994083